LATHAM & WATKINS LLP
    Daniel M. Wall (Bar No. 102580)
    Belinda S Lee (Bar No. 199635)
    Brendan A. McShane (Bar No. 227501)
    Connie D. Sardo (Bar No. 253892)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

Attorneys for Defendants
Toshiba Corporation; Toshiba Samsung Storage
Technology Corporation; and Toshiba Samsung
Storage Technology Korea Corporation

[*Additional Moving Defendants and Counsel Listed
on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>INDIRECT PURCHASER ACTIONS | CASE NO. 3:10-MD-02143 RS<br><br>MDL NO. 2143<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:          Dec. 16, 2010<br>Time:           1:30 p.m.<br>Judge:         The Honorable Richard Seeborg<br>Location:      Courtroom 3, 17th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1

## TABLE OF CONTENTS

2

**Page**

3   STATEMENT OF THE ISSUES PRESENTED ................................................................ 1

4   MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

5   I.      INTRODUCTION .................................................................................................... 2

6   II.     BACKGROUND ...................................................................................................... 4

7          A.    The Parties ................................................................................................... 4

8          B.    Summary of Allegations ............................................................................. 5

9   III.    LEGAL STANDARD............................................................................................... 6

10  IV.    ARGUMENT ........................................................................................................... 7

11        A.    Indirect Purchasers' Complaint Fails to State a Claim ............................. 7

12             1.    Indirects' Patent Pool Allegations Do Not Support Their
13                  Claims. ........................................................................................... 7

14             2.    Indirects' Allegations of Market Effects Do Not Support
                  Their Claims................................................................................... 10

15                  a.    The Alleged Decline in the Rate of Price Declines. ................... 11

16                  b.    The Alleged Decrease In Technological Innovation. ................. 12

17        B.    Indirect Purchasers Lack Article III Standing to Sue in States
18             Where No Indirect Purchaser Resides or Claims Injury (District of
             Columbia, Hawaii, Nebraska, New Hampshire and North Dakota).................. 14

19        C.    As Purchasers of Finished Products Containing the Allegedly
20             Price-Fixed ODDs, Indirect Purchasers Lack Antitrust Standing. ..................... 15

21              1.    The *AGC* Multi-Factor Test for Antitrust Standing Applies
                  to the Majority of Indirect Purchasers' State Law Claims..................... 15

22              2.    Indirect Purchasers Have Not (and Cannot) Allege Facts
23                  Sufficient To Establish Antitrust Standing Under *AGC*. ........................ 16

24                  a.    Indirect Purchasers Cannot Plead "Antitrust Injury"
                  Because They Were Not Participants in the
25                  Relevant Market of Allegedly Price-Fixed ODDs..................... 17

26                  b.    Indirect Purchasers' Alleged Injuries From
                  Purchases of ODD Products Are Too Remote and
27                  Indirect. ....................................................................................... 19

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

        c.    Indirect Purchasers' Injury Claims Are Inherently Speculative, Would Be Unreasonably Complex, and Are Likely Duplicative. ............................................................. 20

D.    Indirect Purchasers' Claims Also Must be Dismissed for Lack of Subject Matter Jurisdiction. ................................................................... 22

    1.    Indirect Purchasers Have Even Less Basis to Claim Jurisdiction Under the FTAIA Because of the Indirect and Speculative Nature of Their Claims........................................ 22

    2.    Indirect Purchasers' State Law Claims Should Also Be Dismissed For Lack Of Jurisdiction. ........................................ 23

E.    Indirect Purchasers' Attempt to Impose California State Law on a Putative Nationwide Class is Unconstitutional...................................... 23

F.    Many Individual State Claims are Additionally Flawed...................................... 25

    1.    Failure To Plead A Sufficient "Nexus" or "Substantial Effect" on *Intra*state Commerce (District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, West Virginia, and Wisconsin Antitrust Claims)............................................................................. 25

    2.    No Retroactive Application of State *Illinois Brick* Repealer Statutes (New Hampshire, Oregon, and Utah Antitrust Claims)............................................................................. 27

        a.    *New Hampshire*: No Claims Prior to January 1, 2008............................................................................. 27

        b.    *Oregon*: No Claims Prior To January 1, 2010. ...................... 27

        c.    *Utah*: No Claims Prior to May 1, 2006.................................. 28

    3.    Failure to Serve State Attorney General (Utah Antitrust Claim). ............................................................................. 28

    4.    Indirect Purchasers Do Not Meet the Heightened Pleading Requirement of the Florida Deceptive & Unfair Trade Practices Act (Florida Consumer Protection Claim). ............................ 28

    5.    Failure to Plead Misrepresentations that Were Directed at Consumers and Materially Deceptive (New York Consumer Protection Claim)............................................... 29

    6.    No Class Actions (South Carolina Consumer Protection Claim). ............................................................................. 31

V.    CONCLUSION................................................................................. 31

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1

## TABLE OF AUTHORITIES

2
**Pages**

3                                **CASES**

4    *Am. Ad Mgmt., Inc. v. General Tel. Co.*,
         190 F.3d 1051 (9th Cir. 1999) ........................................................................ 17
5

6    *Ashcroft v. Iqbal*,
         129 S. Ct. 1937 (2009)........................................................................................ 6

7    *Assoc. Gen. Contractors of California, Inc. v. California State Council of
         Carpenters*,
8        459 U.S. 519 (1983)...................................................................................passim

9    *Beckler v. Visa U.S.A., Inc.*,
         No. 09-04-C-000030, 2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004) .......... 16
10

11   *Beltone Electronics Corp. v. Selbst*,
         1977 WL 18398 (N.Y. Sup. Ct. 1977) ................................................................ 26

12   *Bhan v. NME Hosps., Inc.*,
         772 F.2d 1467 (9th Cir. 1985) .......................................................................... 18
13

14   *Boisjoly v. Morton Thiokol, Inc.*,
         706 F. Supp. 795 (D. Utah 1988) ...................................................................... 16

15   *Cargill, Inc. v. Monfort of Colorado, Inc.*,
         479 U.S. 104 (1986)........................................................................................... 17
16

17   *Cornelison v. Visa U.S.A., Inc.*,
         No. CIV 03-1350 (S.D. Cir. Ct. Sept. 29, 2004).................................................. 16

18   *Daraee v. Microsoft Corp.*,
         No. 0004 03311, 2000 WL 33187306 (Or. Cir. June 27, 2000) .......................... 27
19

20   *Datel Holdings, Ltd. v. Microsoft Corp.*,
         No. C-09-05535, 2010 WL 1691790 (N.D. Cal. Apr. 23, 2010)........................... 18

21   *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*,
         678 S.E.2d 430 (S.C. 2009) .............................................................................. 31
22

23   *Freeman Indus., LLC v. Eastman Chem. Co.*,
         172 S.W.3d 512 (Tenn. 2005)........................................................................... 26

24   *Fucile v. Visa U.S.A., Inc.*,
         No. S1560-03, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004)...................... 16
25

26   *Gunnells v. Healthplan Servs., Inc.*,
         348 F.3d 417 (4th Cir. 2003) ............................................................................ 31

27   *Harrah's Vicksburg Corp. v. Pennebaker*,
         812 So. 2d 163 (Miss. 2001)............................................................................. 16
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

*Harris v. Option One Mortgage Corp.*,
    261 F.R.D. 98 (D.S.C. 2009) ....................................................................... 31

*Ho v. Visa U.S.A. Inc.*,
    787 N.Y.S.2d 677, 2004 WL 1118534 (N.Y. Sup. April 21, 2004) ..................................... 16

*Ho v. Visa U.S.A., Inc.*,
    793 N.Y.S.2d 8 (NY App. Div. 2005) ................................................................ 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ......................................... 16, 19, 20, 26

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ......................................... 16, 17, 18

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ......................................... 14, 29, 30

*In re G-Fees Antitrust Litig.*,
    584 F. Supp. 2d 26 (D.D.C. 2008) .................................................................. 16

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................... 13, 24

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007) ................................................................. 16

*In re Intel Microprocessor Antitrust Litig.*,
    476 F. Supp. 2d 452 (D. Del. 2007) ............................................................ 22, 23

*In re Microsoft Corp. Antitrust Litig.*,
    No. MDL 1332, 2003 WL 22070561 (D. Md. Aug. 22, 2003).............................. 26

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) ................................................................. 30

*In re Potash Antitrust Litig.*,
    667 F. Supp. 2d 907 (N.D. Ill. 2009) .......................................... 15, 19, 28

*In re Relafen Antitrust Litig.*,
    225 F.R.D. 14 (D. Mass. 2004)....................................................................... 27

*In re Silk*,
    937 A.2d 900 (N.H. 2007) .............................................................................. 27

*In re SRAM*,
    580 F. Supp. 2d 896 (2008) ............................................................................ 24

*In re Tamoxifen Citrate Antitrust Litig.*,
    466 F.3d 187 (2d Cir. 2006).............................................................................. 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2010 U.S. Dist. LEXIS 65037 (N.D. Cal. June 28, 2010)....................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

*In re Vitamins Antitrust Litig.*,
　No. 99-197, 2001 U.S. Dist. LEXIS 8903, (D.D.C. June 7, 2001) ..................................... 15

*In re Wal-Mart Stores*,
　765 A.2d 168 (N.H. 2000) ............................................................................................... 27

*In re Wiring Device Antitrust Litig.*,
　498 F. Supp. 79 (E.D.N.Y. 1980) .................................................................................... 26

*Japan Line, Ltd. v. County of Los Angeles*,
　441 U.S. 434 (1979) ........................................................................................................ 23

*Kanne v. Visa U.S.A., Inc.*,
　723 N.W.2d 293 (Neb. 2006) .......................................................................................... 16

*Kendall v. Visa U.S.A., Inc.*,
　518 F.3d 1042 (9th Cir. 2008) ........................................................................................... 6

*Knowles v. Visa U.S.A., Inc.*,
　No. Civ. A CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ........................ 15

*Lantz v. Am. Honda Motor Co.*,
　No. 06 C 5932, 2007 U.S. Dist. Lexis 34948 (N.D. Ill. May 14, 2007) .............................. 24

*Lorenzo v. Qualcomm, Inc.*,
　603 F. Supp. 2d 1291 (S.D. Cal. 2009) .................................................................. 17, 18, 21

*Lovinger v. Lane County*,
　138 P.3d 51 (Or. Ct. App. 2006) ..................................................................................... 28

*Lucas v. Automotive Eng., Inc. v. Bridgestone/Firestone, Inc.*,
　140 F.3d 1228 (9th Cir. 1998) ......................................................................................... 15

*Meyers v. Bayer AG, et al.*,
　735 N.W.2d 448 (Wis. 2007) .......................................................................................... 26

*Norwest Mortgage, Inc. v. Superior Ct.*,
　72 Cal. App. 4th 214 (1999) ........................................................................................... 25

*Olsen v. Samuel McIntyre Inv. Co.*,
　956 P.2d 257 (Utah 1998) ............................................................................................... 28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
　647 N.E.2d 741 (N.Y. 1995) ........................................................................................... 30

*Paltre v. Gen. Motors Corp.*,
　810 N.Y.S.2d 496 (2006) ................................................................................................ 30

*Pecover v. Elec. Arts Inc.*,
　633 F. Supp. 2d 976 (N.D. Cal. 2009) ............................................................................. 15

*Phillips Petroleum Co. v. Shutts*,
　472 U.S. 797 (1985) .............................................................................................. 3, 23, 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,*
  890 F.2d 139 (9th Cir. 1989) ........................................................................... 17, 19

*Rattlesnake Coal. v. E.P.A.,*
  509 F.3d 1095 (9th Cir. 2007) ................................................................................. 6

*Shepherd v. Boeing Co.,*
  No. 07-2208-CM, 2008 WL 360580 (D. Kan. Feb. 8, 2008) ................................. 15

*Southard v. Visa U.S.A. Inc.,*
  734 N.W. 2d 192 (Iowa 2007) ............................................................................... 15

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.,*
  No. CV F 09-0560, 2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ........................ 29

*Stark v. Visa U.S.A., Inc.,*
  No. 03-055030, 2004 WL 1879003 (Mich. Cir. Ct . July 23, 2004) ..................... 16

*State ex rel. Spitzer v. Daicel Chem. Indus. Ltd.,*
  42 A.D.3d 301 (N.Y. App. Div. 2007) .................................................................. 16

*Strang v. Visa U.S.A. Inc.,*
  No. S1560-03, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ........................... 16

*Stutman v. Chem. Bank,*
  95 N.Y.2d 24 (2000) .............................................................................................. 29

*Sun Dun, Inc. v. Coca-Cola Co.,*
  740 F. Supp. 381 (D. Md. 1990) ............................................................................ 26

*Tidwell v. Thor Industries,*
  No. 05-CV-2088-L(BLM), 2007 U.S. Dist. Lexis 21819 (S.D. Cal., Mar. 26,
  2007) ....................................................................................................................... 24

*United Phosphorous, Ltd. v. Angus Chemical Co.,*
  322 F.3d 942 (7th Cir. 2003) ................................................................................... 6

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
  131 F. Supp. 2d 1003 (N.D. Ill. 2001) .................................................................. 23

*Vinci v. Waste Mgmt., Inc.,*
  36 Cal. App. 4th 1811 (1995) ................................................................................ 15

*Walsh v. Microsoft Corp.,*
  No. JFM-05-1277, 2005 U.S. Dist. Lexis 38871 (D. Md. Dec. 29, 2005) ........... 31

*Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.,*
  No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859 (M.D. Fla. Aug. 4, 2008) ..... 28

**STATUTES**

15 U.S.C. § 15b ....................................................................................................... 8

15 U.S.C. § 6a .................................................................................................. passim

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

Ariz. Rev. Stat. § 44-1412 .................................................................................. 16

Cal. Bus. & Prof. Code § 16720 ........................................................................... 2

Cal. Bus. & Prof. Code § 17200 ..................................................................... 2, 25

Fla. Stat. § 501.201 ............................................................................................. 28

Kan. Stat. Ann. § 60-512 ...................................................................................... 8

M.G.L.A. 93A, § 11 ............................................................................................ 26

N.C. Gen. Stat. § 75-1 ........................................................................................ 26

N.H. Rev. Stat. § 356:11 ..................................................................................... 27

N.M. Stat. Ann. § 57-1-15 .................................................................................. 16

N.Y. Gen. Bus. Law § 349 ..................................................................... 29, 30, 31

Nev. Rev. Stat. § 598A.050 ................................................................................. 16

Nev. Rev. Stat. Ann. § 598A.060(1) ................................................................... 26

S.C. Code Ann. § 39-5-10 ................................................................................... 31

S.C. Code Ann. § 39-5-140(a) ............................................................................ 31

Utah Code Ann. § 68-3-3 .................................................................................... 28

Utah Code Ann. § 76-10-919 .............................................................................. 28

Utah Code Ann. § 76-10-919(9) ......................................................................... 28

Utah Code Ann. § 76-10-926 (2010) .................................................................. 16

W. Va. Code § 47-18-16 ..................................................................................... 16

W. Va. Code § 47-18-3(a) ................................................................................... 27

Wisc. Stat. Ann. § 133.18(2) ................................................................................ 8

**OTHER AUTHORITIES**

2007 N.H. S.B. 52 ............................................................................................... 27

H.B. 2584, 75th Leg., Reg. Sess. (Or. 2009) ..................................................... 28

Oregon Bill Summary, 2009 Reg. Sess. H.B. 2584 (May 18, 2009) ................. 28

**RULES**

Fed. R. Civ. P. 8 ................................................................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1  **NOTICE OF MOTION AND MOTION**

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3  PLEASE TAKE NOTICE that on December 16, 2010, at 1:30 p.m., or as soon thereafter

4  as the matter may be heard, the undersigned Defendants will and hereby do move the Court,

5  pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing the

6  Indirect Purchaser Plaintiffs' First Amended Class Action Complaint as to the undersigned

7  Defendants without leave to amend.

8  This motion is based upon this Notice of Motion, the accompanying Memorandum of

9  Points and Authorities, the complete files and records in these consolidated actions, oral

10  argument of counsel, and such other and further matters as the Court may consider.

11  *        *        *

12  **STATEMENT OF THE ISSUES PRESENTED**

13  The undersigned Defendants independently and jointly move to dismiss the Indirect

14  Purchaser Plaintiffs' First Amended Class Action Complaint, and present the following issues:

15
16  • Whether the IP-FAC has alleged a plausible conspiracy under Fed. R. Civ. P. 8 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007);

17
18  • Whether Indirect Purchaser Plaintiffs have Article III standing to bring claims under the laws of certain states in which no putative class representative resides, nor claims to have suffered injury while residing;

19
20  • Whether Indirect Purchaser Plaintiffs have alleged facts sufficient to establish subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a

21
22
23  • Whether Indirect Purchasers Plaintiffs have antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983);

24
25  • Whether the IP-FAC may assert nationwide claims under California's Cartwright Act (Cal. Bus. & Prof. Code §§ 16720, *et seq.*) and Unfair Competition Laws (*Id.* at 17200, *et seq.*); and

26  • Whether the IP-FAC has alleged cognizable state antitrust and restraint of trade, or consumer protection and unfair competition, claims under the laws of various states.

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

With near duplicate allegations, Indirect Purchaser Plaintiffs' First Amended Class Action Complaint ("IP-FAC") suffers from the same deficiencies which are addressed in Defendants' Joint Motion to Dismiss the Direct Purchasers' Consolidated Amended Complaint ("Joint DP Motion") and, for the same reasons, should also be dismissed.[1]  There are, however, several aspects of the IP-FAC that are unique to it.  As this brief demonstrates, those unique aspects do not save the complaint from dismissal, and in some instances provide independent grounds for its dismissal:

*First*, the Indirect Purchaser Plaintiffs have inserted additional details concerning (a) Defendants' alleged participation in patent pools, and (b) allegations relating to pricing and market effects.  None of these additional allegations is sufficient to save the IP-FAC because they point to nothing more than parallel conduct that is equally consistent with competition as with any claimed conspiracy.  Allegations of this sort no longer suffice under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

*Second*, Indirect Purchasers lack Article III standing to assert claims under District of Columbia, Hawaii, Nebraska, New Hampshire, and North Dakota law because no Indirect Purchaser currently resides in or claims injury while residing in those states.

*Third*, Indirect Purchasers have not—and cannot—plead the required "antitrust standing" because as purchasers of "ODD *Products*" only they are not participants in the relevant alleged ODD market; any injuries they suffered are too remote from the alleged price fixing; and any recovery based on purchases of finished products would be highly speculative, complex to calculate, and duplicative of any recovery that an indirect purchaser of an ODD (whether alone or in the form of a directly purchased finished product) would obtain.  This test for antitrust standing, first articulated in the seminal case of *Associated General Contractors of California,*

---

[1]   For the sake of efficiency, this brief incorporates by reference the arguments from Defendants' Joint DP Motion and does not repeat them.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

*Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), dooms the majority of Indirect Purchasers' state law claims.

*Fourth*, Indirect Purchasers plead a wildly broad "international" conspiracy to fix the price of ODDs but admit they have only purchased "ODD Products" that contain the allegedly price-fixed ODDs as one component of the finished goods. This fact, coupled with Indirect Purchasers' failure to plead any facts about where or how these foreign-manufactured and foreign-sold ODDs were ultimately incorporated into ODD Products and then traveled through the chain of commerce, means that Indirect Purchasers have not met their burden of establishing jurisdiction under the Foreign Trade Antitrust Improvement Act, 15 U.S.C. § 6a ("FTAIA"). This same jurisdictional bar applies to Indirect Purchasers' state antitrust and consumer protection claims by virtue of the Commerce and Supremacy Clauses of the United States Constitution.

*Fifth*, Indirect Purchasers' second and third causes of action fail because they cannot assert nationwide claims under California's Cartwright Act and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 16270, et seq., and 17200, et seq. Applying California law to the claims of purported class members across the country violates due process under the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). *Shutts* precludes application of California law to the claims of non-California residents where: (1) California law and the laws of other states conflict; and (2) the claims of non-California residents lack "significant contact or aggregation of contacts" with California. That is the case here, and the nationwide claims under California law should be dismissed.

*Sixth*, several additional substantive flaws provide independent bases for dismissing many of Indirect Purchasers' state law claims: (a) Indirect Purchasers have failed to plead a sufficient "nexus" to intrastate commerce, as is required under District of Columbia, Mississippi, Nevada, New York, North Carolina, Tennessee, West Virginia, and Wisconsin law; (b) Indirect Purchasers cannot assert claims that pre-date the *Illinois Brick* repealer statutes that permit them to sue in New Hampshire, Oregon, and Utah; (c) the Utah Plaintiff has not satisfied his pre-filing requirement of serving the Utah State Attorney General; (d) the Florida Plaintiff has not met the

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1   pleading requirement under Florida's consumer protection law; (e) the New York Plaintiff has

2   failed to plead misrepresentations that were both directed at the consumer and materially

3   deceptive; and (f) South Carolina consumer protection claims cannot be brought as class actions.

4        The IP-FAC should be dismissed.

5   **II.   BACKGROUND**

6        **A.   <u>The Parties</u>**

7        The Indirect Purchaser Plaintiffs are a group of twenty-six individuals who reside in

8   twenty-three different states and the District of Columbia,[2] and claim to have indirectly

9   purchased an "ODD Product" for their own use and not for resale.  (IP-FAC ¶¶ 14-38.)  "ODD

10  Products" is defined broadly to "include computers, videogame consoles, ODDs designated to be

11  attached externally to devices such as computers (e.g., through a USB cable), CD

12  players/recorders, DVD players/recorders and BD players-recorders."  (*Id.* ¶ 6.).[3]  The IP-FAC

13  does not identify which type of ODD Product any one of the Indirect Purchasers allegedly

14  purchased, or from whom the purchase was made.

15       Defendants are twenty-two entities headquartered across Japan, South Korea, Taiwan and

16  the United States, and each of whom the Indirect Purchasers allege "manufactured, sold, and

17  distributed ODDs and ODD Products throughout the United States."  (*Id.* ¶¶ 39-64.)  Defendants

18  encompass a wide variety of entities which compete in different potential markets, including

19  markets for ODDs themselves and markets for different finished products which contain an ODD

20  as a component.  Consistent with this mixture of entities and products, Indirect Purchasers do not

21  allege that all Defendants compete with each other.  The IP-FAC also does not identify, as either

22  a Defendant or putative co-conspirator, dozens of other entities that also sell ODD Products.

---

23

24  [2]   There are two sets of putative class representative plaintiffs who purport to reside in Oregon and Massachusetts.  (IP-FAC ¶¶ 21-22, 31.)

25  [3]   Unlike Direct Purchasers, the Indirect Purchasers define "ODD Products" to include only

26  products containing ODDs, and not ODDs themselves.  (*Compare* IP-FAC ¶ 6 *with* DP-CAC ¶ 3 (defining ODD Products as both ODDs and products containing ODDs).)  Whereas the

27  Direct Purchasers' pleading is undoubtedly designed to obscure the fact that they really are not direct purchasers at all, the Indirect Purchasers plainly do not allege that they purchased any ODDs, not even indirectly.

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

### B.   Summary of Allegations

Like the Direct Purchasers, the Indirect Purchasers purport to allege "an international conspiracy to fix the prices of Optical Disk Drives ('ODD')," which Defendants accomplished through "customer allocations and rigged auction bidding for procurement contracts" to "some of the largest Original Equipment Manufacturers ('OEMs') in the United States."  (IP-FAC ¶¶ 1-2.) This alleged conspiracy, ongoing "[s]ince at least 2004," is claimed to be global in scope and facilitated by Defendants' "rigging [of] electronic auctions conducted by the OEMs to award ODD supply contracts to Defendants."  (*Id.* ¶¶ 1, 3.)  At times, the Indirect Purchasers plead inconsistently with references to "ODD Products" thrown into the scope of the conspiracy.[4]  Yet, similar to the failings of Direct Purchasers' complaint, Indirect Purchasers plead no facts to actually substantiate those conclusory allegations.

Instead, the overwhelming majority of the IP-FAC is devoted to familiar boilerplate paragraphs alleging "specific characteristics of the ODD market [which] made it ripe for collusion" (*id.* at Section V., B.), and variously alleges the existence of (i) market concentration, (*id.* ¶¶ 84-87), (ii) barriers to entry, facilitated by the formation of patent pools, (*id.* ¶¶ 140-69), (iii) Defendants' participation in collaborations, such as joint ventures, (*id.* ¶¶ 88-108), trade shows and standards-setting activities, (*id.* ¶¶ 170-200), (iv) Department of Justice ("DOJ") subpoenas (alleged to have been issued to four of the twenty-two Defendants, (*id.* ¶¶ 243-47)), (v) alleged misconduct by certain Defendants in unrelated product markets (*id.* ¶¶ 257-76), and (vi) price trends (even though, admittedly, ODD prices have dropped throughout the putative class period), (*id.* ¶¶ 201-11).  As with the Direct Purchaser Complaint ("DP-CAC"), the Indirect Purchasers include only a handful of facts purporting to describe isolated incidents of potential bid rigging in connection with two computer manufacturers (Dell Inc. and Hewlett-Packard) in

---

[4]   *Compare* IP-FAC ¶¶ 1, 229 ("Defendants' *conspiracy to raise, fix or maintain the price of ODDs* at artificial levels resulted in harm to Indirect Purchaser Plaintiffs and the proposed classes because it resulted in them paying higher prices for ODD Products than they would have") (emphasis added), *with id.* ¶¶ 314-315, 324 ("Defendants have combined and conspired to raise, fix, maintain or stabilize the prices of ODD Products sold in the United States").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    three ODD procurement auctions—each of which involved communications between no more

2    than two Defendants, and purports to have included only four of the twenty-two Defendants.  (*Id.*

3    ¶¶ 131-39.)  The Indirect Purchasers do not allege that these three unrelated auctions—which

4    purportedly took place in August 2006, December 2008 and February 2009—share any common

5    nexus, or that any Indirect Purchaser purchased an ODD or any type of ODD Product from either

6    Dell or HP.

7            In sum, the IP-FAC's allegations in support of the purported global conspiracy to fix

8    prices on ODD Products largely mirror the DP-CAC with only two differences:  the IP-FAC

9    includes:  (1) a longer description of the Indirect Purchasers' patent pool allegations, (IP-FAC ¶¶

10   146-56); and (2) citations to different pricing data and supposed market effects, (*id.* ¶¶ 201-228).

11   Neither is sufficient to save the IP-FAC.

12   **III.    LEGAL STANDARD**

13           <u>Failure to State A Claim</u>.  Dismissal is appropriate when a complaint fails to allege

14   "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

15   In antitrust cases, courts must dismiss a complaint that alleges facts equally consistent with

16   competition as with conspiracy.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir.

17   2008) ("Allegations of facts that could just as easily suggest rational, legal business behavior by

18   the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of

19   the antitrust laws.").  These pleading standards apply not only to the Indirect Purchasers' federal

20   antitrust claim, but also to their state law claims.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1953

21   (2009) (holding that the *Twombly* pleading standard applies "in all civil actions and proceedings

22   in the United States district courts") (internal quotations omitted); *see also In re Tamoxifen*

23   *Citrate Antitrust Litig.*, 466 F.3d 187, 198-99 (2d Cir. 2006) (affirming dismissal of state law

24   claims where plaintiffs failed to state a federal antitrust claim).

25           <u>Lack of Subject Matter Jurisdiction</u>.  "[T]he party asserting subject matter jurisdiction has

26   the burden of proving its existence."  *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102, n. 1 (9th

27   Cir. 2007); *United Phosphorous, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003)

28   (affirming dismissal of claim on FTAIA grounds).  "A complaint will be dismissed if, looking at

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    the complaint as a whole, it appears to lack federal jurisdiction either 'facially' or 'factually.'"

2    *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 U.S. Dist. LEXIS 65037,

3    at *9-10 (N.D. Cal. June 28, 2010) (citation omitted) (finding no jurisdiction and granting motion

4    to dismiss plaintiff's claims based on foreign-sold LCD panels that were subsequently

5    incorporated into its products).

6    **IV.    ARGUMENT**

7          **A.    <u>Indirect Purchasers' Complaint Fails to State a Claim</u>**

8          Defendants have moved to dismiss the Direct Purchaser complaint ("DP-CAC") because

9    the Direct Purchasers (1) fail to plead facts in support of the alleged vast conspiracy to fix prices

10   of ODDs and ODD Products sufficient to satisfy *Twombly*; and (2) lack standing, among other

11   grounds.  (*See* Joint DP Motion at Sections I, II, III, IV.)  Aside from the few additional legally

12   irrelevant allegations discussed below, the IP-FAC is essentially a carbon copy of the DP-CAC,

13   and is deficient for the same reasons.[5]  This brief incorporates Defendants' Joint Motion to

14   Dismiss the DP-CAC by reference and does not repeat its *Twombly* and other arguments.  This

15   Section addresses the few allegations in the IP-FAC that were not included in the DP-CAC.

16   These allegations, like the common allegations, are make-weight and fail to create a reasonable

17   inference of a conspiracy.

18          **1.    Indirects' Patent Pool Allegations Do Not Support Their Claims**.

19          In support of their arguments that patent pools charge "discriminatory" royalties and

20   facilitate "cartel monitoring," (IP-FAC ¶¶ 140-69), the Indirect Purchasers offer a variety of

21   allegations concerning the operation of a number of the patent pools that go beyond what the

22   Direct Purchasers allege.  For the most part, these allegations concern the history of the pools.

---

23   [5]    *Compare* DP-CAC ¶¶ 114-180 *with* IP-FAC ¶¶ 84-111, 140-200 (alleging that the structure

24   of the ODD/ODD Products industry "contributed to" or "facilitate[d]" a conspiracy because
     the industry was concentrated, included joint ventures, had barriers to entry (including patent

25   pools) and that defendants had opportunities to conspire at trade association meetings);
     *compare* DP-CAC ¶¶ 236-244 *with* IP-FAC ¶¶ 201-217 (alleging that ODD prices stabilized

26   over time); *compare* DP-CAC ¶¶ 181-199 *with* IP-FAC ¶¶ 259-266 (alleging that defendants
     have a "history of collusion," citing the TFT-LCD, DRAM, and CRT investigations as

27   alleged examples); *compare* DP-CAC ¶ 235 *with* IP-FAC ¶ 254 (quoting and bolding the
     same statement by Toshiba counsel).

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    (See, e.g., IP-FAC ¶¶ 146-56.)  None support the Indirect Purchasers' claims nor suggest that

2    there was any conspiratorial conduct.  Rather, they describe features of the pools that were

3    disclosed over a decade ago, and that the DOJ, the European Commission, and the courts have

4    all found pose no anticompetitive threat.[6]

5          First, Indirect Purchasers aver that the CD-R and DVD patent pools facilitate conspiracy

6    because they "license [their] patents externally in a discriminatory fashion; pool members … paid

7    no royalties to other patent pool members for licensed products."  (Id. ¶ 144.)[7]  As a result,

8    Indirect Purchasers say this "prohibitive royalty" deters market entry.  (Id. ¶ 145.)  Indirect

9    Purchasers also claim that the DVD patent pools are anti-competitive because they do not share

10   certain features of the MPEG patent pool.  (Id. ¶ 154.)  These allegations of "discrimination,"

11   however, amount to nothing more than the charge that the patent holders pay either nothing or less

12   than non-patent-holding licensees.  This is not an antitrust violation, nor is it a fact that in any way

13   supports the conclusory allegations of conspiracy.  Cross-licensing is commonplace among patent

14   holders.  And as Indirect Purchasers themselves acknowledge, "setting a high royalty is not per se

15   illegal."  (Id. ¶ 160.)  While a high royalty may be a barrier to entry, it is not a sign of an anti-

16   competitive conspiracy.  On the contrary, the patent holders formed a pool and procompetitively

17   expanded output by licensing the patents to third parties—the opposite of the output-reducing

18   conspiracy plaintiffs imagine.  The related allegation that royalties became "prohibitive" over time

19   for non-patent-holder licensees relative to manufacturing costs and prices as costs and prices

20   declined, (Id. ¶¶ 157-58), demonstrates not collusion, but rather intense competition weeding out

21   higher-cost producers.[8]  Indirect Purchasers do not—and cannot—identify an obligation to index

---

[6]   Given that the patent pools were publicly disclosed more than a decade ago via, among other things, DOJ business review letters, the time has long passed for any antitrust challenge to the structure or operation of the pools. See, e.g., 15 U.S.C. § 15b (four-year statute of limitations); Kan. Stat. Ann. § 60-512 (three-year statute of limitations); Wisc. Stat. Ann. § 133.18(2) (six-year statute of limitations).

[7]   Unlike the Direct Purchasers, the Indirect Purchasers make no argument that the Blu-Ray patent pool was anticompetitive.

[8]   In any event, the DOJ's Business Reviews noted that the DVD pools' royalties—imposed as to patents that are complementary rather than representing competing technology—were originally "sufficiently small relative to the total costs of manufacture that it is unlikely to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1  royalties to manufacturing costs or prices so that royalties decline as costs or prices do.[9]  Nor do

2  they allege that "good" patent pools apply royalties to manufacturing costs, or that it is practical or

3  even plausible for pools to apply royalties to a licensee's confidential internal costs.

4         Similarly, Indirect Purchasers' allegation that requiring licensees to provide certain

5  information facilitated "cartel monitoring," describes only benign conduct that does not support

6  their conspiracy claims.  (*Id.* ¶¶ 162-64.)  Indirect Purchasers allege that DVD patent pool

7  licensees must report the quantities of products for which royalties are due, the identities of

8  buyers, and the net selling price of DVD players (but not ODDs).  (*Id.* ¶¶ 163-64.)  Indirect

9  Purchasers do not allege that these information sharing requirements applied to pool members

10  (which comprise only a minority of the companies named as Defendants), but claim that the

11  requirements permitted members to determine "whether one of the six conspirators who are also

12  members of the patent pool must be cheating."  (*Id.* ¶ 162.)  The conclusion cannot follow from

13  the premise.  If the information-sharing requirements applied ***only*** to non-members, they could

14  not have facilitated "cartel monitoring" because they did not require any Defendant—patent pool

15  members (who allegedly account for 95% of production, (*Id.* ¶ 162))—to share *any* information

16  with each other.  Indeed, requiring licensees to report this type of information has an obvious

17  legitimate purpose:  to enable patent holders to determine whether the proper amount of royalty

18  has been paid and to verify the numbers submitted by licensees.  Moreover, Indirect Purchasers

19  never even allege that licensees were required to report anything more than units produced.

20  Indirect Purchasers do not allege that Defendants had access to the type of product produced

21

22  enable collusion." (Dec. 16, 1998 DOJ Business Review, *available at*
   http://www.justice.gov/atr/public/busreview/2121.htm (reviewing DVD 3c patent pool); June

23  10, 1999 DOJ Business Review Letter, *available at*
   http://www.justice.gov/atr/public/busreview/2485.htm (reviewing DVD 6c patent pool)

24  ("Business Reviews").)  The Business Reviews also contradict plaintiffs' claims that ODD
   patent pools' licensing was "discriminatory," as they note that the patent pool license

25  agreements require the pools to "license on a *non-discriminatory basis* to all interested
   parties" and thus "cannot impose disadvantageous terms on competitors, let alone refuse to
   license to them altogether."  (Business Reviews (emphasis added).)

26  [9]  Moreover, given that marginal costs of producing ODDs tend to decline as volume increases,

27  (as Indirect Purchasers acknowledge), linking royalty fees to production costs would so
   diminish royalties as to deter patent holders from investing in new products.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1   (*e.g*., DVD player, television with built-in DVD player, DVD Recorder, video game console),

2   prices or costs—the critical information that Defendants would need to monitor ODD prices.[10]

3   In sum, Indirect Purchasers have not alleged that the patent pools facilitated any anti-competitive

4   "monitoring."

5        Finally, Indirect Purchasers' allegation that the DVD patent pools lack three handpicked

6   features of another patent pool (the MPEG pool) is meaningless.  (*Id.* ¶ 154.)  The purported

7   absence of three particular features does not suggest that the patent pools do not safeguard

8   competition.  Courts and the DOJ, considering all aspects of the patent pools—not just the three

9   factors selected by Indirect Purchasers—have determined that they adequately safeguard

10   competition.  (*See* Joint DP Motion at Section II.C.; *see also* Business Reviews (finding pool

11   administrators' discretion to be limited, because they must license on a "non-discriminatory

12   basis").)[11]

13        Indirect Purchasers' tardy attempt to target these 10+ year old patent pools falls short, as

14   they do not and cannot allege that the pools facilitated the purported conspiracy.

15             **2.**      **Indirects' Allegations of Market Effects Do Not Support Their Claims.**

16        Indirect Purchasers, like Direct Purchasers, claim that certain market data support their

17   conspiracy theories.  Despite the Indirect Purchasers' attempt to dress up the same allegations in

18   an array of tables, line charts, bar charts, and bubble charts, their allegations are just as empty as

19   the Direct Purchasers'.  And, like Direct Purchasers, Indirect Purchasers' theory is based on

20   inconclusive data, some of which are misrepresented, and ignores far more plausible,

21   procompetitive explanations for that data.  Indirect Purchasers argue that market data reveal two

22   _____

23   [10]  The Business Reviews also recognized that the DVD patent pools' licensee-reporting
   requirements were unlikely to facilitate collusion because patent pool members would have
   no access to licensees' "competitively sensitive proprietary information, such as cost data."

24   [11]  Plaintiffs take issue with the fact that one member of the patent pool serves as administrator.

25   The DOJ and the courts reviewing the pools were cognizant of this feature, which did not
   alter their overall analysis.  Moreover, Plaintiffs' perception that the MPEG pool is different

26   from the DVD pools because it has "non-discriminatory" licensing terms is unfounded; the
   Business Reviews in fact noted that the DVD pools must license on a "non-discriminatory

27   basis," and that charging non-patent holders royalties is entirely permissible, as explained
   above.

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    alleged trends, each of which they say suggests a conspiracy:  (1) that the rate of decline of

2    prices slowed over time (the same argument made by the Direct Purchasers, but using different

3    data); and (2) that the rate of technological innovation, measured by their own nonsensical

4    metrics, declined.  Neither supports a plausible inference of conspiracy.

5                    a.    The Alleged Decline in the Rate of Price Declines.

6            Indirect Purchasers offer three charts purporting to show the changing prices of ODDs

7    and hard disk drives manufactured in Japan over time, claiming that these charts show that ODD

8    prices stabilized while hard-disk drive prices continued to fall, supposedly indicating a price-

9    fixing conspiracy.  (IP-FAC ¶¶ 203-09.)  The inference fails. The data do not support an

10   inference of an industry-wide ODD conspiracy, and certainly not an even broader ODD Products

11   conspiracy, if that is what Indirect Purchasers are trying to allege.

12           First, Indirect Purchasers' alleged data are inconclusive, inconsistent, and misrepresented.

13   Indirect Purchasers rely on prices only of ODDs manufactured in Japan, but do not allege that

14   Japanese manufacturing accounts for any meaningful proportion of ODD manufacturing and

15   pricing overall.  (*Id.* ¶ 203.)[12]  Other data show increasingly steep price declines from 2007 to

16   2008, right in the middle of the alleged conspiracy.  (*Id.* ¶ 211.)  The comparison between ODDs

17   and hard disk drives ("HDD") is an inconsequential diversion.[13]

18           But most egregious is Indirect Purchasers' claim that "price declines in ODDs not only

19   came to a complete halt in 2008, but prices even increased substantially during the 2008 to 2009

20   period." (*Id.* ¶ 208.)  This allegation is disingenuous—the claim that prices rose does not reflect

21   higher actual ODD prices, but is instead because of a rise in the value of the yen relative to the

22   dollar.  If the Indirect Purchasers had not converted the Bank of Japan's data from yen into

23   _____

24   [12]   In fact, Indirect Purchasers allege that most of the Defendant ODD manufacturers delegated
         manufacturing to Taiwan or Korea.  (IP-FAC ¶ 97 (PBDS); ¶ 100 (HLDS, TSST) ¶108

25       (PLDS).)

26   [13]   For example, Indirect Purchasers do not say whether there were equivalent introductions of
         new higher-priced HDD products, whether HDD may have faced greater competition from

27       substitutes such as NAND flash memory, or whether HDD innovations permitting greater
         storage perhaps may have caused HDD prices to drop especially sharply (especially if those

28       prices are measured per gigabyte of storage).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1  dollars, those data would show that prices (reported by the Bank of Japan in yen) continued to

2  decline through the end of 2009.  (*Id.* ¶ 209).[14]  This kind of legerdemain obviously provides no

3  support as an allegation of conspiracy, and renders all of Indirect Purchasers' Bank of Japan

4  data, (*id.* ¶¶ 205, 207, 209), meaningless.

5      Second, Indirect Purchasers' claim that a conspiracy must be behind the purported price

6  stabilization ignores common-sense explanations for the trend.  For example, any stabilization

7  during 2008-2009 could be explained by the resolution of "vigorous competition" between the

8  battling next-generation standards, HD-DVD and Blu-Ray, after the HD-DVD producers'

9  decision to abandon HD-DVD, an allegedly lower-cost technology than Blu-Ray.  (IP-FAC ¶¶

10  213-17.)  A lower-cost technology's exit from the market would of course push average prices

11  up.  More fundamentally, the Indirect Purchasers fail to acknowledge that price declines must at

12  some point hit a floor (indeed, Indirect Purchasers fail to address at all the movement of

13  component costs during this period); companies can only cut costs so much.  Had the rate of

14  price decline depicted in the early years of Indirect Purchasers' charts continued, companies

15  would be charging *negative dollars* for these DVD and Blu-Ray players by now—that is, paying

16  consumers to take their products.  This, of course, makes no economic sense.

17          b.      The Alleged Decrease In Technological Innovation.

18      Indirect Purchasers' allegations regarding a purported decrease in technological

19  innovation also lack substance and are insufficient to state any claim.  Indirect Purchasers allege

20

21  [14]  The analysis in the IP-FAC is based on Bank of Japan indexes, which measure prices in yen,
     converted into dollar terms (IP-FAC ¶ 203 ("These price indices can therefore be converted

22  to a common currency basis (dollars), and be used as measures of price movements in global
     markets").)  The yen strengthened substantially against the dollar from 2007-2009, from

23  117.76 yen per dollar in 2007 to 103.39 yen per dollar in 2008 and 93.68 yen per dollar in
     2009 (the same period for which plaintiffs claim that ODD prices increased), according to the

24  Federal Reserve.  *See http://tokyo.usembassy.gov/e/acs/tacs-7126b.html*.  As a result, because
     the value of yen increased by over 20% during this time period, any price decrease of under

25  20% would appear as an *increase* when measured in terms of dollars, simply because yen
     would equate to an increased number of dollars over that time period, and the decrease in

26  price in terms of yen would be outweighed by an increase in the number of dollars that yen
     would buy.  As Plaintiffs allege that the price decreases in ODDs were well under 20% in the

27  2004-2009 time period (IP-FAC ¶ 207), this shift in the exchange rate, for which Indirect
     Purchasers do not account, is more than enough to explain the slight uptick in their chart.

28

12

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1   only that "reduced price competition resulting from a price-fixing conspiracy *may have* further

2   reduced rates of technological innovation."  (IP-FAC ¶ 226 (emphasis added); *see also id.* ¶¶

3   220-23 (charts purporting to show that new product introductions dwindled over time).)  Their

4   formulation—that conspiracy only "may have" reduced innovation—reveals that these

5   allegations are speculation.  Moreover, Indirect Purchasers have not alleged any plausible link

6   between the alleged rate of new product innovations and their allegations of bid-rigging.

7         Even on their own terms, Indirect Purchasers' data are also incomplete, and what data

8   there are do not support Indirect Purchasers' claims.  There is no data measuring product

9   introductions after 2007—the entire second half of the alleged six-year conspiracy.[15]  (*Id.* ¶¶

10  220-23.)  One chart even ends in 2004, excluding nearly all of the alleged conspiracy.  (*Id.* ¶

11  222.)  Moreover, Indirect Purchasers allege that innovation declined *before* the supposed

12  conspiracy began in 2004.  (IP-FAC ¶ 220 ("the absence of major new innovations with an

13  impact on the industry since 2002), ¶ 222 ("noticeable reduction in the number of relevant new

14  patents issued in all technology areas after 2001").)  When plaintiffs cannot show any contrast

15  with an appropriate competitive benchmark, the data cannot be used to show conspiracy.  *See In*

16  *re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1022 (N.D. Cal. 2007)

17  ("*GPU*") (comparing data before and after the alleged conspiracy necessary to show unnatural

18  market behavior).  Indirect Purchasers cannot even show an allegedly declining rate of

19  innovation within the alleged conspiracy period.[16]  Finally, Indirect Purchasers' metrics are

20  ultimately meaningless.  Indirect Purchasers rely heavily on charts that measure the introduction

21  of competing *formats*, such as DVD+R and DVD-R, which necessarily narrowed based on

22  market acceptance as ODDs matured, and ignore the introduction of new products within those

23  standards, such as new types of DVD and CD disk drives that were, for example, faster, quieter,

24

25  [15]   For example, the chart at IP-FAC ¶ 222 has differently-sized bubbles with no explanation of
      what bubble size means.

26  [16]   The chart for Blu-Ray shows that the number of filed patents for Blu-Ray peaked during
      2003 and 2004 (in other words, during the first year of the conspiracy), and then dropped.

27  (IP-FAC ¶ 223.)  The chart for HD-DVD actually shows that the number of patents doubled
      from 2005 to 2006, right in the middle of the conspiracy.  (*Id.*)

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    slimmer, held more capacity (dual layers, (IP-FAC ¶ 74)), or more energy-efficient, (*Id*. ¶ 220-

2    21.).  These charts do not show that the rate of new product introductions declined.

3         Even if the rate of new product introductions slowed, independent explanations abound.

4    It is natural that fewer patents would be filed for over time as a product matures.  Indirect

5    Purchasers' charts show that the number of patents fell off after Blu-Ray and HD-DVD were

6    introduced to the market.  (IP-FAC ¶ 223.)[17]  Indirect Purchasers offer no allegations that would

7    displace the most obvious, rational explanation for why this occurred:  technology companies

8    independently chose to focus their resources on new generations of technology, rather than to

9    what were likely to be marginal improvements in mature technologies.  These allegations are just

10   as consistent with independent action as with conspiracy and are insufficient to state a claim

11   under *Twombly*.  550 U.S. at 553-554.

12        Indirect Purchasers' claims of reduced innovation do not suggest the existence of any

13   conspiracy and do not save their claims from dismissal.[18]

14        **B.    Indirect Purchasers Lack Article III Standing to Sue in States Where No
                 Indirect Purchaser Resides or Claims Injury (District of Columbia, Hawaii,
15               Nebraska, New Hampshire and North Dakota).**

16        No Indirect Purchaser Plaintiff either resides in or is alleged to have indirectly purchased

17   an ODD Product while residing in the District of Columbia, Hawaii, Nebraska, New Hampshire

18   or North Dakota.  Accordingly, Indirect Purchasers lack Article III standing to sue for either

19   antitrust or consumer protection violations under those states' laws.  *See In re Flash Memory*

20   *Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("*Flash*") ("Where, as here, a

21   representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are

22   subject to dismissal.") (emphasis in original); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907,

---

23

24   [17]   Plaintiffs allege that Blu-Ray was introduced in 2003 and that HD-DVD was introduced in
           2006.  (IP-FAC ¶ 221.)  It is hardly surprising, then, that the number of Blu-Ray patents
25         declined after 2004, and HD-DVD patents fell off after 2006.  (*Id*. ¶ 223.)

26   [18]   Moreover, to the extent that Plaintiffs have alleged a restraint in the market for innovation,
           they allege no specific facts suggesting any restraint.  In addition, as consumers, they do not
27         participate in the market for innovation, and lack proof of injury and causation based on
           research and development's uncertain results.  (Herbert Hovenkamp, *et al*., *IP & Antitrust* §
           4.3d (2009).)

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

924 (N.D. Ill. 2009) ("Indirect Purchaser Plaintiffs fail to satisfy their burden of showing Article III standing for states where they do not reside."); *Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) ("The named plaintiffs in this action purchased the video game at issue in California and the District of Columbia and have alleged no basis for standing to bring claims under the laws of other states.").  Accordingly, Indirect Purchasers' claims under District of Columbia, Hawaii, Nebraska, New Hampshire, and North Dakota law should be dismissed.

### C. As Purchasers of Finished Products Containing the Allegedly Price-Fixed ODDs, Indirect Purchasers Lack Antitrust Standing.

Even if the Indirect Purchasers had sufficiently pled a conspiracy, they have failed to carry their burden to plead facts demonstrating that they possess antitrust standing.  *See AGC*, 459 U.S. at 535.  Antitrust standing is separate and distinct from Article III standing—even if an antitrust plaintiff demonstrates injury-in-fact, courts must still determine whether the plaintiff is a proper party to bring a private antitrust action.  *See id*. at 535 n.31.

### 1. The *AGC* Multi-Factor Test for Antitrust Standing Applies to the Majority of Indirect Purchasers' State Law Claims.

In *AGC*, the Supreme Court instructed courts to take a multi-factor balancing approach to determine whether a plaintiff has antitrust standing.  *Id*. at 537-44.  The Ninth Circuit has embraced *AGC* and has articulated the factors as:  (1) the nature of the plaintiffs' injury; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages.  *Lucas v. Automotive Eng., Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998).  While *AGC* addressed antitrust standing under federal law, courts in California, the District of Columbia, Iowa, Kansas, Maine, Michigan, North Dakota, Vermont and Wisconsin have expressly adopted and applied the *AGC* test as a pre-requisite for standing under their state antitrust laws.[19]  Additionally,

---

[19]   The states that expressly follow *AGC* are:  (1) California, *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 (1995); (2) D.C., *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 U.S. Dist. LEXIS 8903, at *26-27 (D.D.C. June 7, 2001); (3) Iowa, *Southard v. Visa U.S.A. Inc.*, 734 N.W. 2d 192, 198 (Iowa 2007); (4) Kansas, *Shepherd v. Boeing Co.*, No. 07-2208-CM, 2008 WL 360580, at *3 (D. Kan. Feb. 8, 2008); (5) Maine, *Knowles v. Visa U.S.A., Inc.*, No. Civ. A CV-03-707, 2004 WL 2475284, at *4-5 (Me. Super. Ct. Oct. 20, 2004); (6) Michigan, *Stark v. Visa U.S.A., Inc.*, No. 03-055030, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

Nebraska and New York have expressly applied *AGC* as the standing requirement applicable to their state consumer protection laws, in addition to their state antitrust laws.[20]  Finally, federal courts applying Arizona, Mississippi, Nevada, New Mexico, South Dakota, Utah, West Virginia and Wisconsin laws have applied *AGC* to those states' antitrust laws based on those states' harmonization statutes, which instruct courts to look to federal antitrust authorities in the absence of controlling state authorities.[21]

### 2.    Indirect Purchasers Have Not (and Cannot) Allege Facts Sufficient To Establish Antitrust Standing Under *AGC*.

As set forth below, the fact that Indirect Purchasers have indirectly purchased only ODD *Products* (IP-FAC ¶ 5)—which simply contain the allegedly price-fixed ODD as one of countless other components in the finished goods that they indirectly purchased—is fatal to their ability to plead antitrust standing.

---

2004); (7) North Dakota, *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-000030, 2004 WL 2115144, at *3 (N.D. Dist. Ct. Aug. 23, 2004); (8) Vermont, *Fucile v. Visa U.S.A., Inc.*, No. S1560-03, 2004 WL 3030037, at *2-3 (Vt. Super. Ct. Dec. 27, 2004); and (9) Wisconsin, *Strang v. Visa U.S.A. Inc.*, No. S1560-03, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005).

[20]  The states that apply *AGC* to both state antitrust and consumer protection claims are:  (1) Nebraska, *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 301-02 (Neb. 2006); and (2) New York, *Ho v. Visa U.S.A., Inc.*, 793 N.Y.S.2d 8, 8-9 (NY App. Div. 2005) (affirming dismissal of indirect purchaser claims for lack of standing under the *AGC* test in *Ho v. Visa U.S.A. Inc.*, 787 N.Y.S.2d 677, 2004 WL 1118534, at *3 (N.Y. Sup. April 21, 2004)); *State ex rel. Spitzer v. Daicel Chem. Indus. Ltd.*, 42 A.D.3d 301, 303-304 (N.Y. App. Div. 2007); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1142 (N.D. Cal. 2008) ("*DRAM II*").

[21]  The states where federal courts have applied *AGC*, including based on harmonization statutes, are:  (1) Arizona, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) ("*DRAM I*"); Ariz. Rev. Stat. § 44-1412; (2) Mississippi, *DRAM I*, 516 F. Supp. 2d at 1095 (citing *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163 (Miss. 2001)); (3) Nevada, *DRAM I*, 516 F. Supp. 2d at 1095; Nev. Rev. Stat. § 598A.050; (4) New Mexico, *DRAM I*, 516 F. Supp. 2d at 1095; N.M. Stat. Ann. § 57-1-15; (5) South Dakota, *DRAM I*, 516 F. Supp. 2d at 1094 (citing *Cornelison v. Visa U.S.A., Inc.*, No. CIV 03-1350 (S.D. Cir. Ct. Sept. 29, 2004)); (6) Utah, Utah Code Ann. § 76-10-926 (2010); *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 804-805 (D. Utah 1988); (7) West Virginia, *DRAM II*, 536 F. Supp. at 1142; W. Va. Code § 47-18-16; and (8) Wisconsin, *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 41-42 (D.D.C. 2008); *DRAM*, 516 F. Supp. 2d at 1094; *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 409 (D. Del. 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

a.   Indirect Purchasers Cannot Plead "Antitrust Injury" Because They Were Not Participants in the Relevant Market of Allegedly Price-Fixed ODDs.

The first *AGC* factor looks at the nature of the plaintiff's injury and asks whether it is the type of injury that the antitrust laws were intended to prevent; this is commonly referred to as "antitrust injury" and is the factor that is given "great weight" by the courts. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Indeed, as the Supreme Court has observed, a plaintiff cannot have antitrust standing without antitrust injury. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing."). Because the antitrust laws were created to "protect[] the economic freedom of participants in the *relevant market*," *AGC*, 459 U.S. at 538 (emphasis added), "the injured party [must] be a participant in the same market as the alleged malefactors" to establish an antitrust injury, *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 148 (9th Cir. 1989). "'Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.'" *Lorenzo v. Qualcomm, Inc.,* 603 F. Supp. 2d 1291, 1300 (S.D. Cal. 2009) (quoting *Am. Ad Mgmt., Inc.,* 190 F.3d at 1057). A "narrow exception" to the market participant requirement exists "for parties whose injuries are 'inextricably intertwined' with the injuries of market participants …." *Id.*

An ODD is not in the same market as a computer, television, camcorder, or video-game console. Indirect Purchasers have alleged only that they participated in the ODD Products market; they have not alleged that they participated in the market where the isolated alleged incidents of bid-rigging occurred (*i.e.*, the ODD market). In *DRAM II*, the court addressed the same type of claim presented here. 536 F. Supp. 2d at 1141. The plaintiffs alleged that the defendants had conspired to fix the price of DRAM, a component in computers that they had purchased. The court held that indirect-purchaser plaintiffs who had purchased computers containing DRAM – but not DRAM itself – lacked standing, even though the markets in which they purchased products were "interlinked" with the DRAM market. *See id.* at 1141-42.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

As in *DRAM II*, any injury Indirect Purchasers here allegedly suffered, whether they purchased a computer, a television or a game system, occurred in the secondary markets for products *containing* ODDs, not in the ODD market itself, and only after the ODD was incorporated or transformed into something altogether different.  With an earlier ruling, the *DRAM* court observed that "plaintiffs who are purchasing products in which DRAM is a component, rather than DRAM itself, are participating in a secondary market that is incidental to the primary price-fixed market (i.e., the market for DRAM modules themselves)."  *In re Dynamic Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d at 1091 (N.D. Cal. 2007) (*DRAM I*).  The same is true here:  each Indirect Purchaser participates in only one of the numerous downstream secondary markets for products, such as computers, of which ODDs are but one component.  Indirect Purchasers are thus not market participants in the ODD market and lack standing to sue.

The Ninth Circuit has specifically held that plaintiffs and defendants participate in the same market for purposes of an *AGC* analysis only if the products or services at issue are reasonably interchangeable or have cross-elastic demand.  *See Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470-71 (9th Cir. 1985).  ODD Products, such as televisions, computers, or camcorders, are not interchangeable with ODDs.  Nor have Indirect Purchasers alleged any cross-elasticity of demand between such products and ODDs.  Instead, each "Plaintiff's allegations center on its injury in the secondary market, even though [each] Plaintiff attempts to convert spillover effects in the secondary market into an injury in the primary market."  *Datel Holdings, Ltd. v. Microsoft Corp.*, No. C-09-05535, 2010 WL 1691790, at *17 (N.D. Cal. Apr. 23, 2010).

Moreover, purchases of ODD Products do not confer standing to sue for a conspiracy to fix the prices of ODDs under the "inextricably intertwined" exception to the relevant market requirement.  This exception applies where the injury to the plaintiff is "necessary for the creation or implementation of the trade restraining scheme."  *Id.*, at *16.  Injury to end purchasers of finished ODD Products is not a necessary step in a scheme to fix the prices of ODDs.  Such a scheme could succeed irrespective of whether inflated ODD prices were passed on to purchasers of ODD Products.  *See Lorenzo*, 603 F. Supp. 2d at 1301 (holding that "the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    simple invocation of the phrase 'inextricably intertwined'" will not allow a plaintiff to avoid the

2    "fundamental requirement" of antitrust injury) (citation and brackets omitted).

3                    b.    Indirect Purchasers' Alleged Injuries From Purchases of ODD
                           Products Are Too Remote and Indirect.

4         Indirect Purchasers' alleged injuries are also too remote and attenuated to satisfy the

5    second *AGC* factor.  In analyzing remoteness, courts look "to the chain of causation between

6    [Indirect Purchasers'] injury and the alleged restraint in the [alleged] market" to determine

7    whether the alleged injury is too remote to confer antitrust standing.  *DRAM I*, 516 F. Supp. 2d at

8    1091 (citations omitted); *see also R.C. Dick Geothermal Corp.*, 890 F.2d at 147.  "[V]aguely

9    defined links" in the chain of causation are insufficient to establish the directness of the injury.

10   *AGC*, 459 U.S. at 540.

11        These Indirect Purchasers' purchases are even more remote than the ones that were held

12   insufficient to confer standing in *DRAM I* and *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907

13   (N.D. Ill. 2009).  In those cases, the indirect plaintiffs purchased products containing the

14   allegedly price-fixed item (DRAM and potash) as a component of a finished product (computers

15   and fertilizer, respectively) from direct customers of the alleged conspirators.  Here, Indirect

16   Purchasers have purchased even that finished product only indirectly – from customers of the

17   alleged conspirators' customers – inserting another layer of remoteness between them and the

18   alleged price-fixing of ODDs.  And, by their own definition, Indirect Purchasers could not have

19   directly purchased any products from HP and Dell, the only two companies who Indirect

20   Purchasers allege purchased any products subject to alleged bid-rigging.[22]

21        In any event, the causal connection between Indirect Purchasers' alleged injuries and

22   Defendants' purported wrongdoing is even more attenuated than even the inadequate finished-

23   product purchases in *DRAM I* and *Potash*.  Many layers—including finished-product

24

25   _____

     [22]   If anything, purchases of computers from HP and Dell would be direct purchases of finished
26          products containing ODDs as a component (and indirect purchases of ODDs themselves), not
            indirect purchases of ODD Products – the purchases which Indirect Purchasers allege they
27          have made.  This is yet another example of the confusion bred by both plaintiff classes'
            contorted use of the term "ODD Products."
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19    DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
      PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
      Case Number: 3:10-MD-02143 RS

manufacturing and distribution—separate Indirect Purchasers' allegations of injury stemming from purchases of ODD Products from alleged constraints in the sale of ODDs themselves. Moreover, the inconsistent definitions of their purchases that Indirect Purchasers provide, coupled with their failure to specify any products they purchased from any Defendant, renders the chain of causation even more "vaguely defined."  (*Compare* IP-FAC ¶ 5 *with* ¶¶ 14-38); *AGC*, 459 U.S. at 540.  The remoteness of Indirect Purchasers' claimed injuries defeats standing here.

           c.      <u>Indirect Purchasers' Injury Claims Are Inherently Speculative, Would Be Unreasonably Complex, and Are Likely Duplicative</u>.

As in *AGC*, Indirect Purchasers' claim rests on a "speculative measure of harm." *AGC*, 459 U.S. at 543 (internal citations and quotes omitted).  Claims based on the prices of ODD Products also create "the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other." *Id.*  The "strong interest" in "keeping the scope of complex antitrust trials within judicially manageable limits" militates against blessing the wide-ranging finished products conspiracy that Indirect Purchasers have alleged by permitting these purchasers of ODD Products to sue. *Id.*

The problem of speculative damages claims is particularly relevant here "in view of the fact that the plaintiffs in question purchased their [ODD] in the form of a component product." *DRAM I*, 516 F. Supp. 2d at 1092.  That is because a variety of factors, such as the cost of other components and manufacturing and competition in the finished ODD product markets, influenced the price that each Indirect paid for the ODD Product, especially a product as complex as a laptop computer, whose price is also determined by its processor, software, visual display panel, hard drive and memory, among other things.  Each product in which an ODD is merely a component "contains numerous other components, all of which *collectively* determine the final price actually paid by plaintiffs for the final product." *Id.* (emphasis in original).  Moreover, accounting for the wide variety of products and market participants in the transactions that yield ODD Products, measuring any alleged overcharge contained in each different product, and attributing any overcharge to ODDs, as opposed to other components, would be a highly complex process that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

threatens to produce only speculative results.[23]  Based on this reasoning, the court in *Lorenzo* dismissed indirect purchaser claims for lack of antitrust standing.  603 F. Supp. 2d at 1301.  Here, because the Indirect Purchasers purchased ODD Products only indirectly, their damages require yet another level of calculations to account for the additional layer of pass-through.  Under these circumstances, Indirect Purchasers could, at best, show only a theoretical link between any alleged overcharge for ODDs and the prices they paid for a different downstream product.

Moreover, those highly complex, speculative calculations are particularly unwarranted given that damages flowing from indirect purchases of ODD Products are duplicative of any damages available for indirect purchasers of ODDs, the products allegedly involved in the online Dell and HP auctions.  A lawsuit involving parallel claims by indirect purchasers of ODDs (who may have resold the ODDs as a component of finished products to the plaintiffs) and indirect purchasers of products containing ODDs will produce redundant results because both parties could claim damages based on overcharges of the same product, the ODDs.[24]

Indirect Purchasers have failed to satisfy their pleading burden to establish that they purchased optical disk drives. Their alleged "ODD Products" purchases do not confer standing, and their claims must be dismissed.

---

[23]  Factors that would further complicate the analysis, include, for example, whether any alleged overcharge was necessarily passed down (if at all) uniformly; the bargaining power of the parties; the effect of geographic discrepancies on pricing; discounts, rebates, and additional services offered by ODD manufacturers and ODD Products manufacturers and/or retailers; and the other costs and components in the manufacture of the derivative products (*e.g.*, LCD screens, cathode ray tubes used in televisions, or SRAM, DRAM, or flash memory in a computer).  *See, e.g.*, *AGC*, 459 U.S. at 545 n.51 (internal citations and quotes omitted) ("the task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system").

[24]  For example, if BestBuy purchased a laptop from HP containing an ODD manufactured by a Defendant (or purchased an ODD Product manufactured by a Defendant), BestBuy would be an indirect purchaser of ODDs.  A Plaintiff who purchased that same laptop at Best Buy would receive a duplicative recovery.  BestBuy would be the better plaintiff here because its purchase is closer to the actual manufacture of ODDs.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

D.   **Indirect Purchasers' Claims Also Must be Dismissed for Lack of Subject Matter Jurisdiction.**

As discussed in the companion Motion to Dismiss filed in the Direct Purchaser case, the FTAIA applies to Indirect Purchasers' claim for injunctive relief under Section 1 of the Sherman Act.  (Joint DP Motion at Section V.)  Indeed, Indirect Purchasers' inability to plead how the alleged "international" conspiracy had "direct, substantial, and reasonably foreseeable effects on U.S. commerce" is even clearer because of the more attenuated and speculative nature of Indirect Purchasers' claimed injuries.  Similarly, this Court should dismiss Indirect Purchasers' various state antitrust and consumer protection claims because applying those states' laws to foreign commerce in a manner inconsistent with the FTAIA would violate the Commerce and Supremacy Clauses of the Constitution.  *See In re Intel Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) (dismissing class plaintiffs' state law claims because "the Court is persuaded that Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not").

1.   **Indirect Purchasers Have Even Less Basis to Claim Jurisdiction Under the FTAIA Because of the Indirect and Speculative Nature of Their Claims.**

The failures in pleading that defeat subject matter jurisdiction over Directs' claims are equally applicable to Indirect Purchasers' claims.  The FTAIA requires a "direct, substantial and reasonably foreseeable" effect on U.S. commerce; but like the Direct Purchasers, the Indirect Purchasers allege neither where the claimed ODD price fixing occurred, or where or how the allegedly price-fixed ODDs were sold, distributed or incorporated into finished ODD Products. And, as indirect purchasers who are at least one step further removed from the alleged ODD price-fixing, the Indirect Purchasers must—but fail to—allege facts about the second international chain of distribution and manufacturing that the ODD Products traveled through before eventually being purchased by them in the United States.  Emphasizing the added speculative and inherently indirect nature of component-based claims, such as those alleged here, several courts have found the FTAIA to bar indirect purchaser claims.  As one court observed: "The FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs . . .

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

that are used abroad to manufacture downstream products . . . that may later be imported into the United States.  Clearly, the domestic effects in such a case, if any, would obviously not be 'direct,' much less 'substantial' and 'reasonably foreseeable.'"  *United Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001).  *See also In re Intel*, 476 F. Supp. 2d at 456 ("That this speculative chain of events is insufficient to create the direct, substantial and foreseeable effects on commerce required by the FTAIA has been confirmed by other courts who have considered similar allegations concerning the downstream effects on commerce of component products.").  The same result should apply here and warrants dismissal of the IP-FAC.

> ### 2.    Indirect Purchasers' State Law Claims Should Also Be Dismissed For Lack Of Jurisdiction.

In adopting the FTAIA, Congress intended to set boundaries on the geographic reach of American antitrust laws.  Preemption by the Commerce and Supremacy Clauses, not to mention international comity, require that this Court apply the same jurisdictional test set by Congress in the FTAIA to Indirect Purchasers' state law claims as well.  Indeed, to allow state laws to regulate where the FTAIA does not permit the Sherman Act to go, would lead to the absurd result of imposing more than twenty state antitrust laws on wholly foreign transactions.  As the *Intel* court observed:  "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not."  *Id.* at 457.  This reasoning was rightly based on the Supreme Court's recognition that "'[f]oreign commerce is pre-eminently a matter of national concern,' and therefore, it is important for the Federal Government to speak with a single, unified voice."  *Id.* (quoting *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 (1979)).  For all of the reasons that Indirect Purchasers have not pled jurisdiction under the FTAIA, their state law claims must also be dismissed.

> ### E.    Indirect Purchasers' Attempt to Impose California State Law on a Putative Nationwide Class is Unconstitutional

Indirect Purchasers' second and third causes of action should be dismissed because they have not—and cannot—meet the Supreme Court's *Shutts* test to justify applying California law to the claims of absent class members from 50 states.  *See In re SRAM*, 580 F. Supp. 2d 896, 905

LATHAM&WATKINS⁷ᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

(2008) (dismissing California Cartwright Act and Unfair Competition claims asserted on behalf of non-California plaintiffs); *GPU*, 527 F. Supp. 2d at 1027-28 (citing *Shutts* in dismissing California causes of action).

In *Shutts,* the Supreme Court held that the application of Kansas law to the claims of plaintiffs in a nationwide class who were not from Kansas violated the defendants' due process rights because: (1) applying Kansas law would yield a different outcome than would otherwise result if the non-resident plaintiffs brought their claims in their states of residence, and (2) the absence of the non-resident plaintiffs' connection to Kansas meant the parties had no reason to believe that Kansas law would control their conduct.  Thus, before a nationwide class can invoke the law of a particular state under *Shutts,* that state's law must both: (1) not conflict with the law of another jurisdiction that has an interest in the case, and (2) "have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, 'contacts creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair."  *Shutts*, 472 U.S. at 821-822.  As discussed below, the IP-FAC fails on both scores.

First, there are substantial conflicts among the antitrust and consumer laws of the various states.  As the *GPU* court recognized, California law is in direct conflict with the antitrust laws of more than half of all states, many of which preclude indirect purchasers from bringing a private claim at all.  *GPU*, 527 F. Supp. 2d at 1027-28.  Some of those states, unlike California, permit indirect purchaser suits for antitrust violations to be brought only by the Attorney General of that state, while other states have chosen to limit the damages in indirect purchaser suits to restitution or injunctive relief.  *Id.*  These conflicts are material and irreconcilable.  Similarly, courts have recognized that "state consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *Lantz v. Am. Honda Motor Co.*, No. 06 C 5932, 2007 U.S. Dist. Lexis 34948, at *11 (N.D. Ill. May 14, 2007) (citation omitted) (denying nationwide class under § 17200); *see also Tidwell v. Thor Industries*, No. 05-CV-2088-L(BLM), 2007 U.S. Dist. Lexis 21819, at *23-24 (S.D. Cal. Mar. 26, 2007) (denying nationwide class under California consumer protection law

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1  and rejecting outright plaintiffs' contention that "there is no material variance in the state

2  consumer protection laws.").

3      Second, California's contacts with the claims of out-of-state residents are insufficient to

4  justify the imposition of California's antitrust and consumer protection laws on a nationwide

5  basis. Indeed, Indirect Purchasers do not even attempt to allege that anyone other than the

6  California Plaintiffs or the California Indirect Purchaser Class suffered injury in California. (IP-

7  FAC ¶¶ 14-38.) Finally, Indirect Purchasers' conclusory allegations that *Defendants* supposedly

8  conduct substantial business in California and have availed themselves of California law is

9  irrelevant to the issue of California's contacts with the absent class *Plaintiffs* in states outside of

10 California. Rather, "*each member of the Plaintiff class*" must demonstrate their claims have

11 sufficient contacts with California before California law can be invoked. *See Norwest Mortgage,*

12 *Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 225 (1999) (emphasis in original) (rejecting argument

13 that defendant's presence in California was sufficient to justify application of California's UCL,

14 Cal. Bus. & Prof. Code § 17200, to non-residents' claims).

15     Indirect Purchasers cannot overcome the material conflicts between California antitrust

16 and consumer protection laws and the laws of the other 49 states. Nor have they pled sufficient

17 contacts between California and the out-of-state residents to justify imposing California law on

18 their claims. Indirect Purchasers' second and third causes of action should be dismissed.

19      **F.    Many Individual State Claims are Additionally Flawed.**

20     Beyond the implausibility of the ODD Products conspiracy that has been pled, or the

21 standing and jurisdictional defects in their claims, many of Indirect Purchasers' individual state

22 law claims should be dismissed and/or limited because of several fundamental failures to plead

23 all of the elements and pre-requisites of the claims asserted.

24         **1.    Failure To Plead A Sufficient "Nexus" or "Substantial Effect" on**
               ***Intra*state Commerce (District of Columbia, Mississippi, Nevada, New**
25             **York, North Carolina, South Dakota, Tennessee, West Virginia, and**
               **Wisconsin Antitrust Claims).**
26

27     Indirect Purchasers have failed to plead a sufficient "nexus" to or "substantial effect"

28 from Defendants' alleged anticompetitive conduct and *intra*state commerce. In other words,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

they have not pled a conspiracy that occurred wholly within those states.  This is fatal to their state antitrust claims in:  (1) the District of Columbia, *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 396 (D. Md. 1990) ("[I]t clearly would be unconstitutional under the Commerce Clause to apply the D.C. Code to claims which, though bearing some connection to the District of Columbia, are in fact interstate in nature and are thus regulated by federal antitrust provisions.") (citations omitted); (2) Mississippi, *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (dismissing Mississippi antitrust claims where plaintiffs failed to allege that "at least some conduct was performed wholly intrastate"); (3) Nevada, Nev. Rev. Stat. Ann. § 598A.060(1) (2007) ("[I]t is unlawful to conduct any part of [a conspiracy in restraint of trade] in this state."); (4) New York, *In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 84 (E.D.N.Y. 1980) (quoting *Beltone Electronics Corp. v. Selbst*, 1977 WL 18398, at *1 (N.Y. Sup. Ct. 1977), *aff'd*, 61 A.D.2d 966) ("[W]here interstate commerce is involved, the Federal antitrust laws operate to preempt the field and to oust the State courts of jurisdiction [over antitrust causes of action], even though the acts complained of may violate State antitrust laws such as [New York's] Donnelly Act."); (5) North Carolina, N.C. Gen. Stat. § 75-1 (2010) (making unlawful "[e]very . . . conspiracy in restraint of trade or commerce *in the State of North Carolina*") (emphasis added); (6) South Dakota, *DRAM*, 516 F. Supp. 2d at 1098 (dismissing claims under the South Dakota antitrust statute where plaintiffs only alleged that the conduct had "a substantial effect on the foreign and interstate commerce of the United States"); (7) Tennessee, *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523-24 (Tenn. 2005) (dismissing claim where plaintiff failed "to establish how the defendant's anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in [plaintiff] paying higher prices to retailers"); (8) West Virginia, W. Va. Code § 47-18-3(a) ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce *in this State* shall be unlawful.") (emphasis added); and (9) Wisconsin, *Meyers v. Bayer AG, et al.*, 735 N.W.2d 448, 451 (Wis. 2007) (requiring allegations of price fixing that "substantially affects the people of Wisconsin and has impacts in this state when the challenged conduct occurs predominately or exclusively outside [Wisconsin]."

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

Indeed, the IP-FAC pleads the precise opposite of what is required under these state laws. Rather than plead a conspiracy that transpired wholly within these states, Indirect Purchasers have alleged "an international conspiracy" to fix ODD prices, (IP-FAC ¶ 1), and these state claims should be dismissed.

### 2. No Retroactive Application of State *Illinois Brick* Repealer Statutes (New Hampshire, Oregon, and Utah Antitrust Claims).

Indirect Purchasers are precluded from seeking damages in New Hampshire, Oregon and Utah for alleged purchases pre-dating the passage of those states' statutes permitting certain indirect purchaser suits.

### a. *New Hampshire*:  No Claims Prior to January 1, 2008.

New Hampshire did not allow indirect purchaser standing until January 1, 2008.  *See* 2007 N.H. S.B. 52 (cited in LexisNexis as 2007 NH ALS 336) (adding the language "regardless of whether that person dealt directly or indirectly with the defendant" to N.H. Rev. Stat. § 356:11).  The amended provision has no retroactive application and bars claims that accrued prior to 2008.  *See In re Wal-Mart Stores*, 765 A.2d 168, 172 (N.H. 2000) ("When the legislature is silent as to whether a statute should apply prospectively or retrospectively, our interpretation turns on whether the statute affects the parties' substantive or procedural rights. Where the rights affected by the statute are substantive, there is a presumption of prospectivity.") (internal citations and quotations omitted); *In re Silk*, 937 A.2d 900, 904 (N.H. 2007) (statute creating new substantive rights have no retroactive application).

### b. *Oregon*:  No Claims Prior To January 1, 2010.

Oregon passed its *Illinois Brick* repealer in 2009 to permit indirect purchaser standing as of January 1, 2010.  *See* H.B. 2584, 75th Leg., Reg. Sess. (Or. 2009); *see also* Oregon Bill Summary, 2009 Reg. Sess. H.B. 2584 (May 18, 2009).  Prior to that, Oregon law did not allow indirect purchasers to sue for antitrust damages.  *See In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 25 (D. Mass. 2004) (citing *Daraee v. Microsoft Corp.*, No. 0004 03311, 2000 WL 33187306, *1 (Or. Cir. June 27, 2000) ("The indirect purchaser rule of *Illinois Brick v. Illinois*, 431 U.S. 720 (1977)[,] applies to Oregon's Antitrust Act.")).  Given the absence of any retroactivity

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

clause, this substantive amendment does not apply to claims accruing prior to January 1, 2010. *See Lovinger v. Lane County*, 138 P.3d 51, 56-57 (Or. Ct. App. 2006) ("Whether a statute applies prospectively or retroactively is a question of legislative intent[.] . . . [I]n the absence of any direct evidence of the legislature's intentions, the courts presume that statutes that are 'substantive' in nature are to apply prospectively.").

c.     <u>*Utah*:  No Claims Prior to May 1, 2006</u>.

Utah's repealer, Utah Code Ann. § 76-10-919, became effective May 1, 2006, and does not apply retroactively.  *See* Utah Code Ann. § 68-3-3 (laws in Utah have no retroactive application unless the legislature expressly says so); *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 261 (Utah 1998).

**3.**     **Failure to Serve State Attorney General (Utah Antitrust Claim)**.

The Utah Plaintiff also has not alleged that he provided Utah's attorney general with notice and an opportunity to prosecute a claim on their behalf, as is required under its state antitrust statute.  *See* Utah Code Ann. § 76-10-919(9).  This alone is a sufficient basis for dismissal.

**4.**     **Indirect Purchasers Do Not Meet the Heightened Pleading Requirement of the Florida Deceptive & Unfair Trade Practices Act (Florida Consumer Protection Claim).**

Claims under Fla. Stat. § 501.201, *et seq.*, must be pled with particularity.  *See, e.g.*, *Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008) (dismissing claim under the Florida Deceptive and Unfair Trade Practices Act because general allegation that defendant "engaged in unfair methods of competition" did not meet heightened pleading requirement applied to FDUTPA claims) (internal quotations omitted); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 946-947 (N.D. Ill. 2009).  Indirect Purchasers do not meet this standard because they merely allege the conclusion – without any specific factual support – that "Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices."  (IP-FAC ¶ 366.)

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

28

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

5.   **Failure to Plead Misrepresentations that Were Directed at Consumers and Materially Deceptive (New York Consumer Protection Claim).**

The New York Plaintiff asserts a claim for relief under New York's Consumer Protection Law, N.Y. Gen. Bus. Law § 349 *et seq.*, prohibiting deceptive acts and practices.  To prevail on this claim, the New York Plaintiff "'must prove three elements:  first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.'"  *Flash*, 643 F. Supp. 2d at 1160 (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).  None of these three elements are properly alleged and this claim should be dismissed.

First, the New York Plaintiff alleges no particular conduct specifically directed at the consuming public in New York, or indirect purchasers in New York.  It is alleged that "Defendants made certain statements about ODDs and ODD Products that they knew would be seen by New York residents."  (IP-FAC ¶ 374c.)  But the New York Plaintiff does not identify these "certain statements," nor does he claim that they were *directed at* New York consumers.  Even if the New York Plaintiff were to rely on allegations set forth in previous paragraphs of the Complaint (*e.g.*, *id.* ¶¶ 288-293), which is improper,[25] these allegations are insufficient because they either allege statements made by industry press, not Defendants, or statements directed at investors, not consumers.  Moreover, any statements regarding OEM prices and prices for mere components of consumer products were not directed at New York consumers.  A similar claim in *Flash* was dismissed for failure to allege specific misconduct directed at indirect purchasers in New York.  "Other than the supposed statements made to the 'public,' there are no specific allegations that the misconduct was directed *at* any particular group, let alone Indirect Purchasers

---

[25]   *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, No. CV F 09-0560, 2010 WL 3521979, at *31 n.16 (E.D. Cal. Sept. 3, 2010) ("Allegations ... which incorporate each preceding paragraph, regardless of relevancy, are not permitted.  This practice has been harshly criticized as a form of 'shotgun pleading' that violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice.  The allegations in this [price-fixing complaint] are complex and span a significant time period.  Avoidance of 'shot-gun' pleadings goes hand-in-hand with the Court's ruling that plaintiff must allege conduct, by conspiracy and by defendants.  Generalized grouping of allegations and overall incorporation will not survive an appropriate motion.") (internal citations omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1  in New York." *Flash*, 643 F. Supp. 2d at 1160-61 (emphasis in original). Here the claim should

2  be dismissed also.

3    Second, the statements alleged in previous paragraphs of the Complaint are not materially

4  deceptive acts or practices under N.Y. Gen. Bus. Law § 349. "An act or practice is deceptive if it

5  is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *In re*

6  *New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 197 (D. Me. 2004)

7  ("*New Motor Vehicles*") (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland*

8  *Bank*, 647 N.E.2d 741, 745 (N.Y. 1995)). The statements alleged in previous paragraphs of the

9  Complaint do not satisfy this requirement because any such statements did not affect the price of

10  ODDs or consumers' decisions to purchaser ODD-containing products. *See id.* (dismissing New

11  York Consumer Protection Act claim where plaintiffs "do not allege any practice that could be

12  considered deceptive or likely to mislead a reasonable consumer under section 349 . . . [T]he

13  failure to reveal the conspiracy did not affect the price of the vehicles or the consumer's decision

14  to purchase the vehicle.").

15    Third, the New York Plaintiff does not allege that he suffered injury as a result of

16  Defendants' alleged public statements. He does not even allege that he read or relied upon the

17  public statements, let alone saw them, when deciding to purchase an ODD-containing product.

18    Because the New York Plaintiff has failed to adequately allege materially deceptive

19  conduct directed at indirect purchasers in New York and that he thereby suffered injury, the New

20  York Consumer Protection Law claim should be dismissed. *See Flash*, 643 F. Supp. 2d at 1160-

21  61; *New Motor Vehicles*, 350 F. Supp. 2d at 196-97; *Paltre v. Gen. Motors Corp.*, 810 N.Y.S.2d

22  496, 498 (2006) (affirming dismissal of New York consumer protection law claims because

23  "plaintiffs failed to set forth a viable cause of action to recover damages for deceptive business

24  practices under General Business Law § 349 [for alleged price fixing among automobile

25  manufacturers] because the alleged misrepresentations were either not directed at consumers or

26  were not materially deceptive").

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

30

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

### 6.    No Class Actions (South Carolina Consumer Protection Claim).

Indirect Purchasers seek to recover on behalf of a class of South Carolina indirect purchasers under South Carolina's Unfair Trade Practices Act, which declares unfair methods of competition and unfair or deceptive acts or practices unlawful.  *See* IP-FAC ¶ 375 (citing S.C. Code Ann. § 39-5-10).)  This claim fails because the statute permits only individual actions for damages:  plaintiffs "may bring an action individually, but not in a representative capacity, to recover actual damages."  S.C. Code Ann. § 39-5-140(a).  The Supreme Court of South Carolina recently affirmed the dismissal of a class action filed under this statute "because SCUTPA claims may not be maintained in a class action law suit …."  *See Dema v. Tenet Physician Servs.-Hilton Head, Inc*., 678 S.E.2d 430, 434 (S.C. 2009); *see also Harris v. Option One Mortgage Corp*., 261 F.R.D. 98, 111 (D.S.C. 2009) ("It seems clear from the language of SCUTPA that class action suits are forbidden under the Act, and the Fourth Circuit has acknowledged this rule ….") (citing *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 423 (4th Cir. 2003)); *Walsh v. Microsoft Corp*., No. JFM-05-1277, 2005 U.S. Dist. Lexis 38871, at *9-10 (D. Md. Dec. 29, 2005) (noting that § 39-5-140(a) "bars [plaintiff's] class allegations under SCUTPA" and granting defendant's motion to dismiss).

## V.    CONCLUSION

For all of the above reasons, the Indirect Purchaser Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Dated:  October 12, 2010                    Respectfully submitted,


                                By:    */s/ Belinda S Lee*_____
                                       Daniel M. Wall
                                       Belinda S Lee
                                       Brendan A. McShane
                                       Connie D. Sardo
                                       Latham & Watkins LLP
                                       505 Montgomery Street, Suite 2000
                                       San Francisco, CA 94111-6538
                                       Tel: +1.415.391.0600
                                       Fax: +1.415.395.8095

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

31

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1       Dan.Wall@lw.com
        Belinda.Lee@lw.com
2       Brendan.McShane@lw.com
        Connie.Sardo@lw.com
3

4       *Attorneys for Defendants Toshiba Corporation,*
        *Toshiba Samsung Storage Technology*
5       *Corporation, and Toshiba Samsung Storage*
        *Technology Korea Corporation*
6

7
        By:    */s/ Christopher B. Hockett*
8              Christopher B. Hockett (Bar No. 121539)
               Neal A. Potischman (Bar No. 254862)
9              Sandra D. West (Bar No. 250389)
               Jeremy M. Brodsky (Bar No. 257674)
10             DAVIS POLK & WARDWELL LLP
               1600 El Camino Real
11             Menlo Park, California 94025
               Telephone: (650) 752-2000
12             Facsimile: (650) 752-2111
               christopher.hockett@davispolk.com
13             neal.potischman@davispolk.com
               sandra.west@davispolk.com
14             jeremy.brodsky@davispolk.com
15

16             *Attorneys for Defendant LG Electronics, Inc.*

17
        By:    */s/ Craig P. Seebald*
18             Craig P. Seebald (admitted *Pro Hac Vice*)
               Pamela J. Marple (admitted *Pro Hac Vice*)
19             MCDERMOTT WILL & EMERY LLP
               600 13th Street, NW
20             Washington, DC 20005
               Telephone: (202) 756-8000
21             Facsimile:  (202) 756-8087
               E-mail:    cseebald@mwe.com
22             E-mail:    pmarple@mwe.com
23

24             Matthew J. Jacobs (Bar No. 171149)
               MCDERMOTT WILL & EMERY LLP
25             275 Middlefield Road, Suite 100
               Menlo Park, CA  94025
26             Telephone: (650) 815-7400
               Facsimile:  (650) 815-7401
27             E-mail:    mjacobs@mwe.com
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
        PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
        Case Number: 3:10-MD-02143 RS

1        *Attorneys for Defendant Hitachi, Ltd.*

2

3   By:   /s/ John F. Cove
           John F. Cove, Jr. (State Bar No. 212213)

4          Steven C. Holtzman (State Bar No. 144177)
           Beko O. Reblitz-Richardson

5          (State Bar No. 238027)
           BOIES, SCHILLER & FLEXNER LLP

6          1999 Harrison Street, Suite 900

7          Oakland, California 94612
           Telephone:   (510) 874-1000

8          Facsimile:   (510) 874-1460
           E-mail:      jcove@bsfllp.com

9                       sholtzman@bsfllp.com

10                      brichardson@bsfllp.com

11         *Attorneys for Defendants Sony Corporation, Sony*
           *Optiarc Inc., and Sony Optiarc America Inc.*

12

13  By:   /s/ Thomas Brown
           Thomas Brown

14         O'MELVENY & MYERS LLP

15         Two Embarcadero Center, 28th Floor
           San Francisco, CA 94111-3823

16         Telephone: (415) 984-8700
           Facsimile: (415) 984-8701

17         Email: tbrown@omm.com

18         Ian Simmons

19         (Admitted Pro Hac Vice)
           O'MELVENY & MYERS LLP

20         1625 Eye St. NW
           Washington, D.C. 20006

21         Telephone: (202) 383-5300
           Facsimile: (202) 383-5414

22         Email: isimmons@omm.com

23         *Attorneys for Defendants Samsung Electronics*

24         *Co., Ltd.*

25

26  By:   /s/ David H. Bamberger
           David H. Bamberger (admitted pro hac vice)

27         Deana L. Cairo (admitted pro hac vice)
           DLA PIPER LLP (US)

28         500 8th Street, N.W.

Washington, D.C. 20004
Phone: (202) 799-4000
Fax: (202) 799-5000
Email: david.bamberger@dlapiper.com
          deana.cairo@dlapiper.com

Paolo Morante (admitted pro hac vice)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 335-4500
Fax: (212) 335-4501
Email: paolo.morante@dlapiper.com

Erin Frazor (Bar No. 251324)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
Phone: (415) 836-2500
Fax: (415) 836-2501
E-mail: erin.frazor@dlapiper.com

*Attorneys for Defendants TEAC Corporation and TEAC America, Inc.*

By:  */s/ Mark S. Popofsky*
     Mark S. Popofsky (admitted pro hac vice)
     ROPES & GRAY LLP
     One Metro Center
     700 12th Street NW, Suite 900
     Washington, DC 20005-3948
     Telephone: (202) 508-4600
     Facsimile: (202) 508-4650
     E-mail: Mark.Popofsky@ropesgray.com

     Jane E. Willis (admitted pro hac vice)
     ROPES & GRAY LLP
     Prudential Tower
     Boston, MA 02119
     Telephone: (617) 951-7000
     Facsimile: (617) 951-7050
     E-mail: Jane.Willis@ropesgray.com

     Thad A. Davis (SBN 220503)
     Thad.Davis@ropesgray.com
     ROPES & GRAY LLP
     Three Embarcadero Center

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

34

DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS

1    San Francisco, CA 94111-4006
      Telephone: (415) 315-6300
2    Facsimile: (415) 315-6350

3

4    *Attorneys for Defendants*
      *Hitachi-LG Data Storage, Inc. &*
      *Hitachi-LG Data Storage Korea, Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35    DEFENDANTS' MOTION TO DISMISS INDIRECT PURCHASER
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
Case Number: 3:10-MD-02143 RS