1  CHRISTOPHER B. HOCKETT (Bar No. 121539)
NEAL A. POTISCHMAN (Bar No. 254862)
2  SANDRA WEST (Bar No. 250389)
JEREMY M. BRODSKY (Bar No. 257674)
3  DAVIS POLK & WARDWELL LLP
1600 El Camino Real
4  Menlo Park, California 94025
Telephone: (650) 752-2000
5  Facsimile: (650) 752-2111

6  *Attorneys For Defendants*
*LG ELECTRONICS, INC. and*
7  *LG ELECTRONICS USA, INC.*

8  IAN SIMMONS (admitted *pro hac vice*)
THOMAS BROWN (Bar No. 182916)
9  PATRICK HEIN (Bar No. 254431)
O'MELVENY & MYERS LLP
10  Two Embarcadero Center, 28th Floor
San Francisco, California 94111
11  Telephone: (415) 984-8700
Facsimile: (415) 984-8701

12

13  *Attorneys For Defendants*
*SAMSUNG ELECTRONICS CO., LTD. and*
*SAMSUNG ELECTRONICS AMERICA, INC.*
14

15  [*Additional Counsel Listed on Signature Page*]

16

17          **UNITED STATES DISTRICT COURT**

18         **NORTHERN DISTRICT OF CALIFORNIA**

19           **SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION** | Case No. M:10-cv-02143 RS |
| | MDL No. 2143 |
| | **CONSOLIDATED NOTICE OF MOTION AND MOTION TO DISMISS DIRECT AND INDIRECT PURCHASER COMPLAINTS ON BEHALF OF VARIOUS PARENT AND SUBSIDIARY DEFENDANTS** |
| | **ORAL ARGUMENT REQUESTED** |
| | Date: December 16, 2010
Time: 1:30 p.m.
Judge: The Honorable Richard Seeborg
Location: Courtroom 3, 17th Floor |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

I.     STATEMENT OF THE ISSUES PRESENTED ..............................................2

II.    INTRODUCTION ...........................................................................................2

III.   ALLEGATIONS RELATED TO THE PARENT AND SUBSIDIARY DEFENDANTS .....4

IV.   ARGUMENT ....................................................................................................5

     A.    The Complaints Fail To Allege That The Parent and Subsidiary Defendants Joined Any Purported Conspiracy ..................................5

          1.   *Twombly* requires Plaintiffs to plead plausible grounds to infer that each named defendant entered into an agreement to fix prices ...........................5

          2.   The Complaints contain no factual allegations tying the Parent and Subsidiary Defendants to the alleged conspiracy ...........................8

     B.    Plaintiffs Do Not Adequately Plead That The Parent or Subsidiary Defendants Are Vicariously Liable For Actions Of The Joint Ventures .......................................9

          1.   Specific allegations of extensive control are required to overcome the presumption of separateness ...........................10

          2.   Plaintiffs cannot proceed against the Parent and Subsidiary Defendants based merely upon conclusory allegations of agency and control ...........................11

     C.    Individual Parent and Subsidiary Defendants Provide Additional Support For Dismissal ...........................12

          1.   LG Electronics, Inc. ("LGE") ...........................12

          2.   LG Electronics USA, Inc. ("LG-US") ...........................15

          3.   Hitachi, Ltd. ("Hitachi") ...........................17

          4.   Samsung Electronics Co., Ltd. ("SEC") ...........................20

              a.   The Complaints Do Not Sufficiently Allege That SEC Was Involved In The Alleged Conspiracy ...........................20

              b.   The Complaints Do Not Sufficiently Allege That SEC Is Vicariously Liable For TSST's or TSST-K's Alleged Conduct ........24

          5.   Samsung Electronics America, Inc. ("SEAI") ...........................26

          6.   Toshiba Corporation ("Toshiba Corp.") ...........................27

| | | | |
|---|---|---|---|
| | a. | There Are No Facts to Suggest that Toshiba Corp. Was Involved in the Alleged Conspiracy | 27 |
| | b. | The Complaints' Conclusory Allegations of Agency and Control Are Insufficient to Impose Vicarious Liability on Toshiba Corp. | 29 |
| 7. | | Toshiba America Information Systems, Inc. ("TAIS") | 30 |

CONCLUSION ................................................................................................................32

# <u>TABLE OF AUTHORITIES</u>

Page

## Cases

*Am. Nat'l Red Cross v. United Way Cal. Capital Region*, No. 07-1236, 2007 U.S. Dist. LEXIS 95296 (E.D. Cal. Dec. 18, 2007) .............................................................. 11, 17

*Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172 (E.D.N.Y. 2006) ...................... 10, 18

*Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937 (2009) ...................................................... 6, 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007 ................................................... *passim*

*Bowoto v. Chevron Texaco Corp*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004)....................................... 24

*Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127 (N.D. Cal. 2005)........................................ 6

*California v. NRG Energy, Inc.*, 391 F.3d 1011 (9th Cir. 2004), *rev'd on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411 (2007) .................... 10, 13, 17, 30

*Canam Steel Corp. v. Mayo*, No. 2:09-00672, 2009 U.S. Dist. LEXIS 44059 (E.D. Cal. May 22, 2009) ................................................................................................... 12

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ..................................... 26

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ..................................................... 10

*Dole Food. Co. v. Patrickson*, 538 U.S. 468 (2003) ............................................... 12, 25

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. 03-5412, 2008 U.S. Dist. LEXIS 46927 (E.D. Cal. May 23, 2008).......................................................................... *passim*

*Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Labs., Inc.*, No. 09-00914, 2009 U.S. Dist. LEXIS 110030 (E.D. Cal. Nov. 25, 2009) .................................................. 13

*In re ATM Fee Antitrust Litig.*, No. 04-02676, 2009 U.S. Dist. LEXIS 83199 (N.D. Cal. Sept. 4, 2009) ............................................................................. 7, 15, 27, 31

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2010 U.S. Dist. LEXIS 98739 (Mar. 30, 2010) ...................................................................................... 7

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009) .................... 9

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2nd Cir. 2007)..................................... 9, 15, 23

*In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007).......*passim*

*In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953 (N.D. Cal. 2007) .................... 8, 21, 22

*In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203 (N.D. Cal. 2005)................................. 23, 29

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2010 U.S. Dist. LEXIS 65023
    (N.D. Cal. June 28, 2010) .................................................................................. 9, 15, 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) .................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............ *passim*

*Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119 (D.D.C. 2004).......................................... 6, 8

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143 (9th Cir. 2004)............... 12, 25

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ..................................................... *passim*

*Maloney v. Scottsdale Ins. Co.*, 256 Fed. App'x 29 (9th Cir. 2007)................................................. 13

*Mednansky v. U.S.D.A. Forest Service Employees*, No. 07-1425, 2008 U.S. Dist. LEXIS
    76236 (S.D. Cal. Sept. 30, 2008) ............................................................................. 13, 16

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................... 26

*Neu v. Terminix Int'l, Inc.*, No. 07-6472, 2008 U.S. Dist. LEXIS 32844 (N.D. Cal. Apr. 8,
    2008) ........................................................................................................................ 11, 13

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006), *abrogated on other
    grounds by Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal.
    2008) ...................................................................................................... 11, 13, 17, 30

*Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449 (9th Cir. 1983).......................... 22

*Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429 (9th Cir. 1979)............................. 10, 17, 29

*Sumitomo Mitsubishi Silicon Corp. v. MEMC Elecs. Materials, Inc.*, No. C 05-2133 SBA, C
    01-4925, 2007 WL 2318903 (N.D. Cal. Aug. 13, 2007) .......................................... 21

*Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) ....................................................................................... 22

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430
    (6th Cir. 2008)........................................................................................................................ 6

*U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) ................................... 21

*United States v. Bestfoods*, 524 U.S. 51 (1998) ...................................................................... *passim*

## Statutes and Rules

Fed. R. Civ. P. 8(a)(2)............................................................................................... 26, 31

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 18

## Other Authorities

RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006)…………………………………….25, 30

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 16, 2010, at 1:30 p.m., or as soon thereafter as the matter may be heard, the undersigned Defendants will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing (1) the Direct Purchaser Plaintiffs' Consolidated Amended Complaint and (2) the Indirect Purchaser Plaintiffs' First Amended Complaint, as to the undersigned Defendants without leave to amend.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in these consolidated actions, oral argument of counsel, and such other and further matters as the Court may consider.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  STATEMENT OF THE ISSUES PRESENTED

Defendants Hitachi, Ltd. ("Hitachi"); LG Electronics, Inc. ("LGE"); Samsung Electronics Co., Ltd. ("SEC") and Toshiba Corporation ("Toshiba Corp.") (collectively the "Parent Defendants"); along with LG Electronics USA, Inc. ("LG-US"), Samsung Electronics America, Inc. ("SEAI") and Toshiba America Information Systems ("TAIS") (collectively the "Subsidiary Defendants"), independently and jointly move to dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC") and the Indirect Purchaser Plaintiffs' First Amended Complaint ("IP-FAC") (jointly "Complaints") on the following grounds:

-   Plaintiffs fail to plead sufficient facts to plausibly suggest that the Parent or Subsidiary Defendants joined in any alleged conspiracy.

-   Plaintiffs do not and cannot plead sufficient facts to hold the Parent and Subsidiary Defendants vicariously liable for the alleged actions of separate joint venture companies in which they hold partial interests.

The Parent and Subsidiary Defendants also join in the bases for dismissal set forth in Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DP-CAC Joint Motion") and Defendants' Motion to Dismiss the Indirect Purchaser Plaintiffs' First Amended Class Action Complaint ("IP-FAC Joint Motion").

## II.  INTRODUCTION

These actions spring from a limited DOJ investigation into alleged instances of price-fixing and bid-rigging of Optical Disk Drives ("ODDs").  But Plaintiffs in both the Direct and Indirect Purchaser actions have included more than two dozen defendants – including the Parent and Subsidiary Defendants – that have no alleged involvement in, or responsibility for, the core conduct at issue.  And none of them have been subpoenaed by the ODD grand jury.  As explained below, Plaintiffs' claims against these extraneous defendants are based on generic, sweeping and conclusory conspiracy allegations that cannot pass muster under any law, either pre- or post-*Twombly*.  Accordingly, the Court should dismiss these claims and defendants.

The 30 defendants now named in one or both of the Complaints fall into at least three distinct groups based upon the types of claims that have been pled against them.  The first group comprises the joint ventures and other entities that are alleged to have participated in instances of bid-rigging and market allocation in connection with electronic auctions conducted by Hewlett-Packard ("HP") and Dell (the "Joint Venture Defendants").  Whether the bid-rigging allegations are sufficient to state a claim against the Joint Venture Defendants is not at issue in this motion, because none of the Parent and Subsidiary Defendants are alleged to have been involved in those activities.

The remaining defendants fall into two groups:  (1) the foreign parent entities that hold or at one point held stock in the joint ventures named in the bid-rigging allegations (the Parent Defendants) and (2) the U.S. subsidiaries of those foreign parent entities (the Subsidiary Defendants).  Despite the obvious involvement of a cooperating witness or party who has given Plaintiffs information about alleged bid-rigging relating to certain proposed contracts, Plaintiffs offer – and clearly have – no evidence about misconduct involving any of the Parent or Subsidiary Defendants.  Indeed, it appears that these defendants were added based upon little more than their alleged corporate connections to the Joint Venture Defendants.  Not surprisingly, therefore, the Complaints are legally deficient as to the Parent and Subsidiary Defendants.

*First*, the Complaints lack any factual allegations suggesting that the Parent and Subsidiary Defendants joined in the alleged conspiracy, making them legally deficient under Civil Rule 8(a), as interpreted by *Twombly*.

*Second*, Plaintiffs cannot conceal the absence of meaningful factual allegations against the Parent and Subsidiary Defendants through impermissible group pleading or by making conclusory statements that the Parent and Subsidiary Defendants "control" the joint ventures, or are otherwise vicariously liable for their actions.

These deficiencies require dismissal of the Parent and Subsidiary Defendants from the Complaints.

# III.    ALLEGATIONS RELATED TO THE PARENT AND SUBSIDIARY DEFENDANTS

In the opening lines of the Complaints, Plaintiffs allege broadly that all Defendants "have engaged in an international conspiracy to fix the prices of Optical Disk Drives" (IP-FAC ¶ 1) and have "formed an international cartel to restrict illegally any competition for ODD Products that they sold" (DP-CAC ¶ 5).

The crux of the factual cartel allegations appear in ten specific paragraphs of the Complaints, where Plaintiffs allege that five defendants conspired to rig bids and allocate market share in connection with three auctions hosted by HP and Dell.  (DP-CAC ¶¶ 214-216; IP-FAC ¶¶ 132-138.)  The Parent and Subsidiary Defendants nowhere appear in those cartel allegations.

Regarding the Parent and/or Subsidiary Defendants, Plaintiffs instead allege generically that they:

- Manufactured, sold, distributed and/or imported ODDs and finished products in the U.S (DP-CAC ¶¶ 33 (Hitachi), 34 (LGE), 35 (LG-US), 40 (Toshiba), 41 (TAIS), 43 (SEC), 44 (SEAI); IP-FAC ¶¶ 39 (Hitachi), 40 (LGE), 56 (SEC), 57 (Toshiba));

- Were members of a concentrated market for ODDs that exhibited high barriers to entry and stable prices over the relevant period (DP-CAC ¶¶ 115-120, 124, 142, 236-243; IP-FAC ¶¶ 85-111, 140, 157-160, 201-209);

- Were involved in joint ventures and manufacturing arrangements that opened channels of communication among competitors (DP-CAC ¶¶ 124-128; IP-FAC ¶¶ 112-117);

- Participated in "patent pools," through which members licensed technology to other market participants (DP-CAC ¶¶ 133-141; IP-FAC ¶¶ 143-169);

- Attended trade association events and trade shows (DP-CAC ¶¶ 144-175; IP-FAC ¶¶ 170-200); and

- Complied with industry standards for ODD product specifications (DP-CAC ¶¶ 176-180).

The only other direct factual allegations pled against the Parent and Subsidiary Defendants are that certain of them or their affiliates were the subject of prior government antitrust investigations in other industries.  (DP-CAC ¶¶ 182, 183, 187-199, 202; IP-FAC ¶¶ 257-266.)

## IV.    ARGUMENT

Both Complaints should be dismissed as to the Parent and Subsidiary Defendants because they (A) lack factual allegations sufficient to raise a plausible inference that the Parent and Subsidiary Defendants joined the alleged conspiracy and (B) fail to plead adequately any basis for holding the Parent and Subsidiary Defendants vicariously liable for the alleged conduct of the Joint Venture Defendants.  Additional individual arguments on behalf of particular Parent and Subsidiary Defendants are briefly set forth in Part C below.

**A.    The Complaints Fail To Allege That The Parent and Subsidiary Defendants Joined Any Purported Conspiracy**

Plaintiffs' claims against the Parent and Subsidiary Defendants are utterly inadequate under the law.  Plaintiffs fail to allege any facts suggesting that the Parent and Subsidiary Defendants joined in or had knowledge of any alleged agreement to fix the prices of ODDs or finished products.  Instead, Plaintiffs attempt to hold these defendants in the case using a handful of conclusory allegations of conspiracy, generic group pleading, and general claims about the characteristics of the alleged ODD market.  Controlling case law establishes that this kind of pleading is both improper and ineffectual.

**1.    *Twombly* requires Plaintiffs to plead plausible grounds to infer that each named defendant entered into an agreement to fix prices**

The Ninth Circuit has explained a plaintiff's pleading obligations in price-fixing suits as follows, quoting the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007):

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.
>
> In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough

1  fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal
2  agreement . . . [A]n allegation of parallel conduct and a bare assertion of conspiracy
   will not suffice.

3  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at

4  556) (omissions and alterations in original).  Antitrust plaintiffs must therefore plead sufficient

5  facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at

6  570; *see also Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial

7  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

8  inference that the defendant is liable for the misconduct alleged.").  In considering whether a

9  complaint meets this standard, a court is "not bound to accept as true a legal conclusion couched as

10  a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50 (internal quotation marks omitted).

11      Consistent with *Twombly*, a complaint must contain enough specific factual allegations to

12  show that a plaintiff is "entitled to relief" as to *each named defendant*.  *See Twombly*, 550 U.S. at

13  555, 557.  To satisfy this burden, a plaintiff "must allege that each individual defendant joined the

14  conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an

15  agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel)*

16  *Antitrust Litig. ("TFT-LCD")*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (Illston, J.) (internal

17  quotation marks and citation omitted).  If a plaintiff cannot "specifically connect[]" a particular

18  defendant to the alleged conspiracy, then that defendant must be dismissed from the case.  *Brennan*

19  *v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005) (Walker, J.).

20      Antitrust plaintiffs "cannot escape their burden of alleging that each defendant participated

21  in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties

22  without any specific allegations." *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163

23  (D.D.C. 2004); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,

24  552 F.3d 430, 436 (6th Cir. 2008) ("Generic pleading, alleging misconduct against defendants

25  without specifics as to the role each played in the alleged conspiracy, was specifically rejected by

26  *Twombly*.").

27      Nor can a plaintiff circumvent the requirement that it offer specific factual allegations

28  against each named defendant by addressing allegations to corporate "families" as a whole, as

6

Plaintiffs have done here.[1]  This practice of grouping separate but affiliated corporate entities together under a generic label is precisely the type of lazy pleading that courts in this district have rejected.  *See In re ATM Fee Antitrust Litig.*, No. 04-02676, 2009 U.S. Dist. LEXIS 83199, at *55-56 (N.D. Cal. Sept. 4, 2009) (Breyer, J.) (dismissing complaint as to a set of corporate parent defendants where the complaint "merely lump[ed] together allegations against the holding company and its subsidiary," e.g., a parent and subsidiary collectively referred to as "Bank of America," because there were "no allegations in the complaint that tie[d] the holding companies to the alleged conspiracy").

To the extent that the decisions in *TFT-LCD*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) (Illston, J.) and *In re Cathode Ray Tube (CRT) Antitrust Litig. ("CRT")*, No. 07-5944, 2010 U.S. Dist. LEXIS 98739 (Mar. 30, 2010) (Conti, J.) can be read to permit group pleading against corporate families, those decisions misread *Twombly*, *Iqbal* and *Kendall*.  Calling two separate entities by one name for the purpose of avoiding specificity about who did what does not meet the requirement that a plaintiff plead "factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct at 1949 (emphasis added).  Moreover, in those cases there were additional allegations that served to put the defendants on notice of the claims against them, including detailed, specific allegations of illegal agreements reached during meetings attended by employees at multiple levels of the defendant corporations, that allegedly were reported to other members of the so-called corporate families.  *See TFT-LCD*, 599 F. Supp. 2d at 1184-85; *CRT*, 2010 U.S. Dist. LEXIS 98739, at *45-48.  No similar allegations are present here.  Indeed, Plaintiffs nowhere allege that any of the Parent or Subsidiary defendants attended any meetings where any improper agreements were reached.  Plaintiffs should

---

[1]  *See* DP-CAC ¶¶ 123, 134, 146, 148, 150, 154, 156, 161, 165-167, 169, 176, 193, 195, 200, and 202 (allegations addressed generically to "LG" as opposed to specifying which corporate entity – LGE or LG-US – is intended); DP-CAC ¶¶ 146, 148, 150, 169, 176, 182, 187, 189, 193, 200, and 202 (allegations addressed generically to "Hitachi"); DP-CAC ¶¶ 123, 135, 146, 148, 150, 154, 156, 166-167, 169, 176, 188-191, 193, 200, 202, 219, 226, 244 (allegations addressed generically to "Samsung" as opposed to specifying which corporate entity – SEC or SEAI – is intended); DP-CAC ¶¶ 101-102, 122-23, 135-136, 141, 146, 151, 154, 156, 161, 165-167, 173, 176, 189-191, 193, 198, 200, 228, 244 (allegations addressed generically to "Toshiba" as opposed to specifying which corporate entity – Toshiba Corp. or TAIS – is intended).

1  not be permitted to use group pleading to avoid the requirement that they make specific allegations

2  against each of the Parent and Subsidiary Defendants.

3      **2.    The Complaints contain no factual allegations tying the Parent and Subsidiary Defendants to the alleged conspiracy**

4

5      The opening allegations in the Complaints, which claim that all "Defendants" entered into

6  an "international conspiracy to fix the prices of Optical Disk Drives" (IP-FAC ¶ 1) and formed "an

7  international cartel to restrict illegally any competition for ODD Products" (DP-CAC ¶ 5), are the

8  epitome of "bare assertion[s] of conspiracy" and do not advance Plaintiffs' claims against the

9  individual Parent and Subsidiary Defendants.  *Twombly*, 550 U.S. at 556; *see also Jung*, 300 F.

10 Supp. 2d at 163 (rejecting similar allegations and requiring plaintiffs to plead specific facts to show

11 that *each* defendant joined in the alleged conspiracy).  Yet remarkably, these bare assertions of

12 conspiracy are all that Plaintiffs have.

13     Plaintiffs' allegations that the Parent and/or Subsidiary Defendants participated in joint

14 venture arrangements, trade association events, standard setting bodies, and patent pools in a

15 concentrated market – apart from potentially describing any market participant – do not come close

16 to alleging that the Parent and Subsidiary Defendants joined in any alleged conspiracy to fix prices.

17 Allegations such as these that "could just as easily suggest rational, legal business behavior by the

18 defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the

19 antitrust laws."  *Kendall*, 518 F.3d at 1049.

20     Indeed, decisions in this district consistently hold that allegations that certain market

21 conditions or industry events provided market participants with *an opportunity* to collude – as

22 opposed to specific allegations that collusion in fact occurred – do not advance a plaintiff's

23 conspiracy claims to the point of plausibility and, therefore, cannot defeat a motion to dismiss.  *See,*

24 *e.g.*, *In re Graphics Processing Units Antitrust Litig. ("GPU")*, 527 F. Supp. 2d 1011, 1024 (N.D.

25 Cal. 2007) (Alsup, J.) (dismissing claims where "[p]laintiffs have not pleaded that defendants ever

26 met and agreed to fix prices; they plead at most that defendants had the opportunity to do so

27 because they attended many of the same meetings."); *In re Late Fee & Over-Limit Fee Litig.*, 528

28 F. Supp. 2d 953, 964 (N.D. Cal. 2007) (Armstrong, J.) ("[E]ven if the alleged market were

8

1  concentrated, this would not render the asserted conspiracy plausible"); *see also* DP-CAC Joint

2  Motion, Sections II.A-D; IP-FAC Joint Motion, Section IV.A.1.

3      Plaintiffs' last attempt to state a claim against the Parent and Subsidiary Defendants – by

4  alleging that certain of them or their affiliates were the subject of prior government investigations

5  into price-fixing activities in other industries – also fails.  Absent specifically pled allegations that

6  common individuals were involved in both alleged conspiracies, or that the conspiracies were part

7  of a common scheme to fix prices in the markets for related products, courts have refused to infer

8  the existence of a conspiracy based upon allegations of investigations, or even guilty pleas, in other

9  cases.  *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2nd Cir. 2007) (rejecting assertions that

10  allegations of anticompetitive conduct in Europe could render plausible a U.S. conspiracy "absent

11  any evidence of linkage between such foreign conduct and conduct here"); *TFT-LCD*, No. 07-1827,

12  2010 U.S. Dist. LEXIS 65023, at *18 (N.D. Cal. June 28, 2010) (Illston, J.); *see also* DP-CAC

13  Joint Motion, Section II.F.  Plaintiffs have alleged no facts here that would suggest that

14  investigations into the actions of unrelated individuals in markets for unrelated products[2] are in any

15  way probative of the existence of a conspiracy to fix the prices of ODDs, much less that the Parent

16  and Subsidiary Defendants joined any such conspiracy.

**B.   Plaintiffs Do Not Adequately Plead That The Parent or Subsidiary Defendants Are Vicariously Liable For Actions Of The Joint Ventures**

19      Having failed to set forth allegations sufficient to infer that any of the Parent or Subsidiary

20  Defendants joined any alleged conspiracy, Plaintiffs apparently hope to keep these defendants in

---

[2]  Plaintiffs' claim that the ODD market is somehow related to the markets in which these government investigations occurred boils down to allegations that the markets share common characteristics, including that (a) major manufacturers of ODDs also manufacture finished products containing ODDs, as in the TFT-LCD market, and (b) the so-called ODD industry has a similar structure to that of the TFT-LCD, CRT, and DRAM industries.  (DP-CAC ¶¶ 200-201.)  These purported similarities, which could describe any number of product markets, do not render ODDs and CRTs or LCD panels "related" such that a court could plausibly infer that the alleged conspiracies are somehow linked.  *Compare TFT-LCD*, 2010 U.S. Dist. LEXIS 65023, at *18 (refusing to infer conspiracy to fix the prices of STN-LCD panels based on plausible allegations of conspiracy to fix the prices of TFT-LCD panels) *with In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 553-55, 576-77 (M.D. Pa. 2009) (allegations of price-fixing in Canadian chocolate market could support allegations of price-fixing in the U.S. market for the same product where plaintiffs alleged that the two markets were integrated).

9

the case by asserting that they are responsible for the alleged actions of joint ventures in which they hold (or at some point held) shares.  This tactic also fails.  Plaintiffs' conclusory allegations – which reduce to vague claims of guilt by association – do not even begin to satisfy the stringent legal standards for pleading liability against a defendant under an agency relationship.

### 1. Specific allegations of extensive control are required to overcome the presumption of separateness

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Indeed, the independence of a subsidiary from a parent corporation "is to be presumed." *California v. NRG Energy, Inc.*, 391 F.3d 1011, 1024 (9th Cir. 2004), *rev'd on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411 (2007); *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. 03-5412, 2008 U.S. Dist. LEXIS 46927, at *16 (E.D. Cal. May 23, 2008).  Separateness of corporate entities is a bedrock principle of U.S. corporate law.

Thus, antitrust liability cannot attach to a corporation simply by virtue of the fact that it owns shares in a subsidiary or joint venture that is claimed to have engaged in illegal conduct.  *See, e.g., Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) (holding that the "relationship of parent and subsidiary" is "not enough" to attach antitrust liability to a parent company due to the actions of its subsidiary); *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178 (E.D.N.Y. 2006) ("[I]n the antitrust context, courts have held that absent allegations of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged antitrust violation of its subsidiary").

A plaintiff can overcome this strong presumption of independence only by showing that a corporate entity is "so extensively controlled by its owner that a relationship of principal and agent is created." *NRG Energy, Inc.*, 391 F.3d at 1025.  Allegations that a parent exercises routine oversight over a subsidiary or shares directorships with a subsidiary are not enough to plead an agency relationship.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 925-26 (9th Cir. 2001) (citing *Bestfoods*, 524 U.S. at 69, 71-72); *see also Bestfoods*, 524 U.S. at 62-63 (holding that a parent

corporation may be held liable for the acts of its subsidiary only where "stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose . . . of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company") (internal quotation marks and citation omitted, alteration in original).

Conclusory allegations regarding control and the existence of an agency relationship between a parent and subsidiary are also not enough; rather, to overcome the presumption that no agency exists, "specific factual allegations" of control over the subsidiary are required. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1103 (N.D. Cal. 2006) (Patel, J.), *abrogated on other grounds by Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 993 (C.D. Cal. 2008); *see also Am. Nat'l Red Cross v. United Way Cal. Capital Region*, No. 07-1236, 2007 U.S. Dist. LEXIS 95296, at *30 (E.D. Cal. Dec. 18, 2007) (rejecting complaint that alleged the existence of an agency relationship but did not allege "one fact that suggests such an agency relationship.  This bare legal conclusion is not sufficient to withstand a motion to dismiss.").

### 2. Plaintiffs cannot proceed against the Parent and Subsidiary Defendants based merely upon conclusory allegations of agency and control

Plaintiffs have failed to include *any* specific factual allegations in the Complaints that would suggest that the joint ventures acted as the agents of the Parent or Subsidiary Defendants, relying instead upon (i) conclusory allegations of agency directed at all "Defendants"[3] and (ii) rote allegations that the Parent Defendants "jointly controlled" or "exert[ed] significant direct control" over the joint ventures by virtue of their status as voting shareholders and board members.[4]

These are *precisely* the types of agency allegations that courts have rejected as inadequate to defeat the presumption of independence afforded parent corporations. *See Neu v. Terminix Int'l*,

---

[3]  *See* DP-CAC ¶ 66 ("The conduct alleged herein was carried out by Defendants' officers, agents, employees, or representatives, while engaged in the usual management of Defendants' business"); DP-CAC ¶ 69 ("Each of the Defendants named herein acted as the agent of, co-conspirator with, or joint venturer of other Defendants and Co-Conspirators with respect to the acts, violations, and common course of conduct alleged herein"); DP-CAC ¶ 223 ("The joint ventures operated by the corporate Defendants . . . provided a structure by which the individual joint venturers can collude in furtherance of the conspiracy").

[4]  *See* IP-FAC ¶¶ 88, 99, 101-102, 106, 108.

1    *Inc.*, No. 07-6472, 2008 U.S. Dist. LEXIS 32844, at *18-19 (N.D. Cal. Apr. 8, 2008) (Wilken, J.)

2 (dismissing agency claims against parent company where the plaintiff alleged in conclusory fashion

3 that the parent "directly participate[d], guide[d], and manage[d] all of the activities of the

4 [subsidiary]"); *Canam Steel Corp. v. Mayo*, No. 2:09-00672, 2009 U.S. Dist. LEXIS 44059, at *6–

5 8 (E.D. Cal. May 22, 2009) (rejecting conclusory allegations that each defendant "was functioning,

6 at least at times, as the agent, servant, partner, alter ego and/or employee of one or more of the

7 other defendants, and in doing and/or not doing the actions mentioned below was acting within the

8 course and scope of his or her or its authority as such agent, servant, partner, and/or employee with

9 the permission and consent of one or more of the other defendants"). Thus, Plaintiffs' agency

10 allegations fail to state a claim against the Parent and Subsidiary Defendants.[5]

11 **C. Individual Parent and Subsidiary Defendants Provide Additional Support For**
    **Dismissal**

12

13     In addition to the foregoing generally applicable arguments, individual Parent and

14 Subsidiary Defendants set forth below the allegations against them (if any), providing

15 individualized support that the Complaints should be dismissed as to them.

16     **1.     LG Electronics, Inc. ("LGE")**

17     The handful of allegations in the Complaints that name LGE serve only to underscore that

18 this case has nothing to do with LGE. LGE was named as a defendant for the sole reason that it

19 holds shares in a joint venture, Hitachi-LG Data Storage, Inc. ("HLDS"),[6] that is alleged to have

20 engaged in specific bid-rigging activities in connection with certain ODD sales to OEMs.

21

22 _____

23     [5] Plaintiffs do not attempt to plead – nor could they – that any of the joint ventures acted as the
alter ego of the Parent or Subsidiary Defendants. Indeed, the term "alter ego" is not found anywhere in

24 the Complaints. Piercing the corporate veil is highly unusual and places on the plaintiff the heavy
burden of alleging facts that one company essentially is a mere shell of, and under the complete control

25 of, another. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (noting that the doctrine of veil
piercing "is the rare exception, applied in the case of fraud or certain other exceptional circumstances");

26 *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (explaining
that alter ego is a limited doctrine, and may be invoked only when "corporate separateness is illusory").

27 Plaintiffs' allegations that the joint ventures are co-owned by multiple Parent Defendants that share
control over them are fatal to any claim that the joint ventures acted as the alter ego of either parent
entity.

28     [6] Plaintiffs plead identical allegations as to Hitachi-LG Data Storage Korea, Inc., which is a
wholly-owned subsidiary of HLDS.

CONSOLIDATED MOTION TO DISMISS ON BEHALF OF VARIOUS PARENT AND SUBSIDIARY DEFENDANTS
MDL No. 2143

However, because Plaintiffs have not alleged and cannot allege that HLDS was acting as an "agent" of LGE, and cannot otherwise tie LGE to the alleged conspiracy, the Complaints must be dismissed as to LGE.

Plaintiffs allege that LGE is a minority owner of HLDS, holding 49% of its stock, with Hitachi owning the remaining 51%. (DP-CAC ¶ 37; IP-FAC ¶ 41.) As explained in Part B above, allegations of LGE's minority stock ownership cannot subject it to liability for the acts of HLDS, which is presumed to be an independent entity. *See E. & J. Gallo Winery*, 2008 U.S. Dist. LEXIS 46927, at *16; *see also Bestfoods*, 524 U.S. at 61 (reaffirming general principle that a parent corporation is not liable for the acts of its subsidiaries); *Sherman*, 601 F.2d at 441 (holding that stock ownership in a subsidiary or affiliate is "not enough" to attach antitrust liability to a parent company).

Further, Plaintiffs specifically allege that an entity *other than* LGE controls HLDS. (IP-FAC ¶ 89 ("Hitachi . . . effectively controlled the operation [of HLDS], through both its ownership and its control of key technologies.") This allegation, standing alone, refutes any claim that LGE itself "so extensively controlled" HLDS that an agency relationship was created. *NRG Energy, Inc.*, 391 F.3d at 1025. To the extent that Plaintiffs also allege that LGE and Hitachi jointly control HLDS (*see* IP-FAC ¶¶ 41, 88), such "[d]irectly contradictory factual allegations . . . do not fairly put [LGE] on notice of the claims against" it and should be disregarded. *Mednansky v. U.S.D.A. Forest Service Employees*, No. 07-1425, 2008 U.S. Dist. LEXIS 76236, at *25 n.6 (S.D. Cal. Sept. 30, 2008); *see also Hartford Cas. Ins. Co. v. Am. Dairy and Food Consulting Labs., Inc.*, No. 09-00914, 2009 U.S. Dist. LEXIS 110030, at *35 (E.D. Cal. Nov. 25, 2009) ("[I]f a pled claim is internally inconsistent with itself, the inconsistencies may cancel each other out and render the claim subject to dismissal") (citing *Maloney v. Scottsdale Ins. Co.*, 256 Fed. App'x 29, 31-32 (9th Cir. 2007)).

In any event, Plaintiffs' boilerplate agency claims lack the "specific factual allegations" required to establish dominance and control by LGE. *Nordberg*, 445 F. Supp. 2d at 1103. Well-pleaded facts evincing such dominance are essential to overcoming the strong presumption of independence between a parent and a joint venture in which it holds stock. *See Neu*, 2008 U.S.

Dist. LEXIS 32844, at *18-19 (rejecting boilerplate allegations that the parent "directly participate[d], guide[d], and manage[d] all of the activities" of the subsidiary as insufficiently specific to defeat a motion to dismiss).  Thus, Plaintiffs cannot hold LGE in this case based upon the alleged actions of HLDS.

The remaining allegations against LGE fare no better, as Plaintiffs fail to allege that LGE joined in or had any knowledge of any conspiracy.  Instead of alleging involvement in and knowledge of the conspiracy, the Complaints allege that LGE:

- Participated in one of three patent pools for ODD technology (DP-CAC ¶ 134);

- Participated in various ODD-related trade associations and events, including meetings of the DVD Forum, RAM Promotion Group, Blu-ray Disc Association, Optical Storage Technology Association, International Symposium of Optical Memory, and RW Products Promotion Initiative (DP-CAC ¶¶ 146-151, 154-168; IP-FAC ¶¶ 172-200);

- Manufactured ODDs sold by HLDS pursuant to the joint venture agreement with Hitachi (IP-FAC ¶¶ 112-117); and

- Agreed with 17 other ODD manufacturers in March 2000 to comply with OSTA's "MultiRead" product specification (DP-CAC ¶ 176).

As discussed in Part A above, these generic allegations of participation in legitimate business activities – which Plaintiffs do *not* allege involved any agreement by any defendant to fix prices – do not state an antitrust claim as to LGE.  *See Kendall*, 518 F.3d at 1049 (rejecting allegations that "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy").

The only other allegations in the Complaints that name LGE relate to governmental investigations into the markets for ODDs and other products.  Interestingly, both sets of Plaintiffs studiously avoid alleging that LGE actually received a subpoena from the DOJ regarding its investigation into the ODD market, no doubt because they know that they cannot make such an allegation consistent with Rule 11.  But to create the appearance of potential impropriety, the Direct Purchasers coyly allege that unnamed "news sources" reported on October 26, 2009 that LGE, along with Toshiba, Hitachi, and SEC, received DOJ subpoenas.  (DP-CAC ¶ 226.)  The allegation

1      that an unnamed news source asserted something is meaningless, a point Plaintiffs implicitly

2      acknowledge via their CMC Statement, which does not list LGE as receiving a DOJ subpoena.[7]

3             Finally, Plaintiffs allege that LG Display Co. Ltd. and LG Philips Displays Korea Co. –

4      joint ventures between LGE and Philips – were found to have engaged in misconduct in connection

5      with government investigations in the TFT-LCD and CRT markets. (DP-CAC ¶¶ 190-195; IP-FAC

6      ¶¶ 260-264, 274.) Despite Plaintiffs' strident claim that these allegations reflect the "established

7      illegal conduct" of LGE (DP-CAC ¶ 202), it is plain that claims regarding the actions of separate

8      companies in unrelated product markets can have no bearing on whether Plaintiffs have stated a

9      claim against LGE in this case. *See In re Elevator Antitrust Litig.*, 502 F.3d at 52; *TFT-LCD*, 2010

10     U.S. Dist. LEXIS 65023, at *18; *see also* Part A, *supra* at 9, DP-CAC Joint Motion, Section II.F.

11            Because Plaintiffs cannot "specifically connect[]" LGE to the alleged conspiracy, either

12     directly or through allegations of vicarious liability, LGE must be dismissed from the case. *See*

13     *Brennan*, 369 F. Supp. 2d at 1136.

14         **2.**      **LG Electronics USA, Inc. ("LG-US")**

15            LG-US is a defendant in only one of these actions (the Direct Purchaser case) and Plaintiffs

16     allege no link to the challenged activities. Lacking any specific factual allegations tying LG-US to

17     the alleged conspiracy, Plaintiffs rely upon impermissible group pled allegations addressed to the

18     fictional entity "LG," which Plaintiffs define to include both LGE and LG-US. General allegations

19     that lump different, affiliate corporations together in this fashion are insufficient to state a claim as

20     to LG-US. *See In re ATM Fee Antitrust Litig.*, 2009 U.S. Dist. LEXIS 83199, at *55-56

21     (dismissing claims against holding companies where the complaint "merely lump[ed] together"

22     allegations against various affiliated defendants because there were "no allegations in the complaint

23     that tie[d] the holding companies to the alleged conspiracy"); *TFT-LCD*, 586 F. Supp. 2d at 1117

24

25     _____

26           [7] *See* 9/22/10 CMC Statement, Section 2(a) ("Plaintiffs are aware that the following Defendants have been subpoenaed in connection with the United States Department of Justice's ('DOJ')

27     investigation of price-fixing in the Optical Disk Drive Product market: Defendant Sony Optiarc America Inc. (the American subsidiary of Defendant Sony Optiarc Inc.), Defendant Hitachi-LG Data Storage Inc. ('HLDS') (the joint venture of Defendants Hitachi, Ltd. and LG Electronics, Inc.), and

28     Defendant Toshiba Samsung Storage Technology Corp. (the joint venture of Defendants Toshiba Corp. and Samsung Electronics Co., Ltd.).").

(holding that a plaintiff must allege that "*each individual defendant* joined the conspiracy and played some role in it") (emphasis added); *see also* Part A, *supra*, at 5-8.

The weakness of Plaintiffs' case against LG-US is underscored by the fact that LG-US is named in only a *single* substantive allegation.[8]  In the context of describing, in conclusory fashion, how bids were supposedly rigged in connection with unspecified auctions for HP and Dell, Plaintiffs allege that the agreements were conducted by various sales and account managers for HLDS and others.  Both the Direct Purchasers and the Indirect Purchasers then drop nearly identical footnotes naming three individuals "identified from public sources," including "Luke Choi, who served as Account Manager or Global Account Manager for Dell on behalf of *HLDS or LGUSA* from February of 2000 to December of 2007."  (DP-CAC ¶ 209, fn 2; IP-FAC ¶ 125, fn 1.) (emphasis added.)  As an initial matter, Plaintiffs obviously cannot keep LG-US in this case based solely upon an allegation that Mr. Choi may, or may not, have been employed by LG-US.  This is particularly so given that Plaintiffs' allegation contains no information about the role Mr. Choi purportedly played in any alleged conspiracy and no suggestion that Mr. Choi had any authority to set the prices of ODDs (much less that he had such authority for LG-US).  *See Twombly*, 550 U.S. at 555 (requiring sufficient factual allegations to "raise a right to relief above the speculative level"); *see also* DP-CAC Joint Motion, Section III.

Regardless, in the same footnote in which Plaintiffs mention LG-US, Plaintiffs specifically allege that Mr. Choi was an HLDS employee during the relevant time period, from 2000 to 2007. (DP-CAC ¶ 209, fn 2; IP-FAC ¶ 125, fn 1.)  The specific allegation, which contradicts the prior vague reference to LG-US, confirms that Plaintiffs have failed to state a claim relating to LG-US. *See, e.g., Mednansky*, 2008 U.S. Dist. LEXIS 76236, at *25 n.6.

Thus, the claims against LG-US must also be dismissed.

---

[8]  The only other allegation naming LG-US identifies its principal place of business and alleges that it manufactured, sold, distributed, and/or imported ODD Products in the United States.  (DP-CAC ¶ 35.)

CONSOLIDATED MOTION TO DISMISS ON BEHALF OF VARIOUS PARENT AND SUBSIDIARY DEFENDANTS
MDL NO. 2143

### 3. Hitachi, Ltd. ("Hitachi")

Like LGE, *supra,* the Complaints appear to name Hitachi as a defendant because it holds shares in HLDS, a joint venture alleged to have engaged in bid-rigging activities. Both Complaints, however, fail to state a valid legal claim based on that relationship because they do not, and cannot, allege facts showing that HLDS acted as an "agent" of Hitachi. Further, the Complaint's other attempts to link Hitachi to the alleged "ODD Products" conspiracy also fail as a matter of law and the Complaints should be dismissed as to Hitachi.

The Direct Complaint alleges that Hitachi "controls an integrated global enterprise comprised of itself and other entities, including Defendant [HLDS.]" (DP-CAC ¶ 33). The Indirect Complaint alleges that Hitachi "jointly controlled" HLDS with LGE while alleging at the same time that Hitachi "effectively controlled" HLDS by itself. (*Compare* IP-CAC ¶¶ 41, 42, 88 *with* IP-FAC ¶89.) Adding to the confusion is Plaintiffs' view that Hitachi "effectively controlled" HLDS although the CEO of HLDS "was Korean, from LG Electronics." (IP- FAC ¶¶ 88-89.) To support these conclusory (as well as contradictory) statements, the Complaints allege that Hitachi (1) owned a 51% stake in HLDS during the alleged conspiracy; (2) retained ownership of unspecified ODD patents and licenses; and (3) reported "HLDS financial data in its consolidated annual financial results." (DP-CAC ¶¶ 37-39; IP-FAC ¶¶ 41-42, 88-89.)

These boilerplate allegations do not come close to satisfying the basic legal requirements for setting forth a claim against Hitachi based on the alleged conduct of HLDS. *See, e.g.*, *Sherman*, 601 F.2d at 441 (holding the "relationship of parent and subsidiary" by itself "is not enough" to attach antitrust liability to a parent company due to the actions of its subsidiary). Indeed, to state such a claim against a Parent like Hitachi, Plaintiffs must make "specific factual allegations" showing that the subsidiary (or joint venture like HLDS) was "so extensively controlled by its owner that a relationship of principal and agent is created" or, similarly, that HLDS was the alter ego of Hitachi. *NRG Energy, Inc.*, 391 F.3d at 1024-25; *see also Nordberg*, 445 F. Supp. 2d at 1103; *Am. Nat'l Red Cross*, 2007 U.S. Dist. LEXIS 95296 at *30. Specifically, an agency claim requires (a) a manifestation by the parent that the subsidiary/agent acts on its behalf; (b) acceptance by the subsidiary; and (c) an understanding between the parent and subsidiary that the parent is in

1  control.  Because the Complaints provide none of these, they do not state a claim against Hitachi

2  based on the allegations against HLDS.[9]

3       Nor do the other allegations mentioning Hitachi succeed in setting forth a legally cognizable

4  antitrust claim.  First, Plaintiffs do not (and could not) allege that Hitachi received a grand jury

5  subpoena or that it sells ODDs in the U.S.  Second, to the extent they mention Hitachi, the

6  Complaints follow a pattern of listing generic business facts and then providing, instead of factual

7  support for a conspiracy, only Plaintiffs' conjecture and spin about "opportunities" and "possible"

8  anticompetitive effects, including in their conjecture business activities that for years have received

9  well known antitrust clearance and market acceptance.

10      Thus it is not surprising that the allegations pertaining to Hitachi boil down to four

11  innocuous topics: (1) the "manufacture, sale or distribution" of so-called "ODD Products,"

12  including Hitachi's sale of Blu Ray camcorders, desktops and notebook computers; (2) the supply

13  of an ODD component to unspecified ODD manufacturers; (3) the participation in patent pools,

14  trade associations, and other industry activities; and (4) allegations regarding government

15  investigations.[10]

16      Regarding the manufacturing of finished products containing ODDs, it goes without saying

17  that merely noting that Hitachi manufactured and supplied certain electronic products does nothing

18  to state an antitrust claim.  (*See* DP-CAC Joint Motion, Section I.A.)  Plaintiffs go no further.  For

19  example, Plaintiffs allege Hitachi manufactured and sold Blu Ray camcorders in the U.S. but

20  following this, there are no further allegations, such as any alleged facts that would support

---

22

23  [9]  Unlike Hitachi, HLDS is alleged to be one of the four principle ODD market participants and is included by Plaintiffs in the core "market" and "bid-rigging" allegations that also do not involve Hitachi.  (*See* DP-CAC ¶¶ 117-120, 142, 209-214; 37-39; IP-FAC ¶¶ 131-139).  Plaintiffs may respond

24  that Hitachi should remain a defendant based on the HLDS allegations because discovery *could* uncover evidence that Hitachi exerted substantial day-to-day control over HLDS.  This argument, however,

25  "puts the cart before the horse and ignores the fact that discovery has to be tied to a pleading which passes muster under Rule 12(b)(6)."  *Arnold Chevrolet*, 418 F. Supp. 2d at 178.  Indeed, imposing

26  costly and burdensome discovery on Hitachi based on insufficient allegations contradicts the principle and purpose behind the presumption of independence between a parent and its subsidiary.

27  [10]  For manufacturing allegations, *see* DP-CAC ¶¶ 33, 76,123; IP-FAC ¶¶ 39. For supply allegations, *see* DP-CAC ¶ 265; IP-FAC ¶ 114.  For patent and association allegations, *see* DP-CAC ¶¶

28  101, 135, 148-50, 152-56, 166-69, 176; IP-FAC ¶¶ 89-95, 148, 150, 155, 156, 162, 165, 180-200.  For investigation allegations, *see* DP-CAC ¶¶ 182-83, 187, 189, 192-96, 200, 202, 226, 228, 231; IP-FAC ¶¶ 245, 258, 265, 267, 273.

18

collusion involving camcorders. In fact, the complaint does not even identify any other competitors in the camcorder business, let alone set forth any allegations of collusive camcorder behavior between Hitachi and any other camcorder company. The complaint is also devoid of any allegations of how a camcorder conspiracy could be plausible. Indeed, a conspiracy involving just Blu Ray camcorders makes no sense, unless, among other things, it is alleged that that HLDS was supplying the ODDs to Hitachi (which is not alleged and cannot be alleged); that the ODDs make up a significant input cost of the camcorder (which is not alleged and cannot be alleged); and that Blu Ray camcorders compete only against other Blu Ray camcorders (which is not alleged and is not the case as Blu Ray camcorders compete against flash, hard disk drive and tape camcorders). Plaintiffs provide only conjecture and spin, hoping it will be passed off as fact or inference.

Plaintiffs also allege that Hitachi was a component supplier to the ODD competitors. (*See* DP-CAC ¶ 265; IP-FAC ¶114 (Hitachi sold optical pickup units to unnamed ODD producers)). The Indirect Purchasers further allege in conclusory fashion that this supply relationship led to information exchanges, but provide no further allegations. The fact that companies are in a vertical supplier-purchaser relationship and that a supplier and a purchaser exchanged information in no way justifies a complaint standing against Hitachi. This is just another example of the plaintiffs taking a legitimate fact (here, a vertical supply arrangement) and spinning a tale of supposed conspiracy.

Regarding industry activities, Plaintiffs note Hitachi's membership in patent pools and other industry activities but again provide little else.[11] In fact, they provide not one actual fact that would demonstrate collusion behind the listed (and well-established and well-monitored) patent pools, or one fact that Hitachi engaged in collusive conduct at any of the association meetings or trade shows. Once again, Plaintiffs provide conjecture and spin instead of facts.

---

[11] Plaintiffs allege Hitachi is a member of the following organizations: CDs21 Solutions; the DVD Forum; the Recordable DVD Council; the RAM Promotion Group; the Blu-ray Trade Association; the International Symposium of Optical Memory; the RW Products Promotion Initiative (DP-CAC ¶¶ 145, 146, 148, 152, 154, 156, 166-67, 169; IP-FAC ¶¶ 180-200). Plaintiffs list Hitachi as a presenter at the Optical Storage Symposium held in Tokyo, Japan on October 5, 2006. (DP-CAC ¶ 173). Plaintiffs allege only that participation in trade associations and trade shows provided an "opportunity" to price fix, not that price-fixing actually took place. (*See, e.g.,* DP-CAC ¶¶ 168, 172; IP-CAC ¶ 170).

Plaintiffs excel at their method of pleading when they approach the final category of allegations – those setting forth government investigations. (*See* DP-CAC ¶¶ 182, 183, 187, 189, 192, 193-99; IP-CAC ¶¶ 258, 265, 267, 273.) Although perfectly aware that it was HLDS, a separately named and represented defendant, that received a grand jury subpoena pertaining to ODDs, not Hitachi, Plaintiffs nonetheless formulate their allegations to imply that Hitachi was a recipient, citing news sources and disclosure reports. (*See* DP-CAC ¶¶ 226, 228.) The allegations and their relevance get thinner from there, such as those related to prior antitrust investigations involving certain Hitachi affiliates in other markets. Ultimately, of course, such allegations, even combined with all the allegations noted above, fail to set forth any legally insufficient antitrust claim under Rule 12. (DP-CAC Joint Motion, Section II.F.)

### 4. Samsung Electronics Co., Ltd. ("SEC")

Plaintiffs' claims against SEC should be dismissed because the Complaints are devoid of any allegations suggesting that SEC is liable for the alleged conspiracy. Plaintiffs named SEC in this action merely because it is a minority shareholder of the joint venture Toshiba Samsung Storage Technology Corp. ("TSST"), which allegedly participated in big-rigging with respect to certain ODD sales to OEMs. But Plaintiffs have not and cannot allege facts supporting a theory that SEC joined the alleged conspiracy. And they have not and cannot allege that TSST acted as an agent or alter ego of SEC, as is required to find SEC vicariously liable for TSST's alleged conduct. Thus, Plaintiffs' claims against SEC should be dismissed.

### a. The Complaints Do Not Sufficiently Allege That SEC Was Involved In The Alleged Conspiracy

Plaintiffs' specific allegations against SEC fail to show that SEC joined the alleged conspiracy. [12] Plaintiffs allege (1) that SEC participated in legitimate ODD business organizations;

---

[12] Almost all of the Direct Purchasers' allegations are actually against "Samsung" rather than SEC. These allegations are deficient because they do not specify which Samsung defendant—SEC or SEAI—participated in the alleged conduct. (*See, e.g.,* DP-CAC ¶¶ 123, 135, 146, 148, 150, 154, 156, 166-67, 169, 176, 188-91, 193, 200, 202, 219, 226, 244.) This failure is a sufficient ground upon which to dismiss the Direct Purchasers' complaint. *See, e.g., TFT-LCD*, 586 F. Supp. 2d at 1117 ("The Court agrees that general allegations as to . . . a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them").

(2) that SEC has been the subject of prior government investigations in other, unrelated product markets; and (3) erroneously, and without providing a source, that SEC has received a DOJ subpoena related to the government's investigation into the ODD industry. But none of these allegations -- even if assumed true -- indicates that SEC joined or was involved in the alleged conspiracy.

With respect to SEC's participation in ODD business organizations, the Complaints allege that SEC:

- Participated in various ODD-related trade associations and events, including meetings of the DVD Forum, Recordable DVD Council, RAM Promotion Group, Blu-ray Disc Association, Optical Storage Technology Association ("OSTA"), International Symposium of Optical Memory, and RW Products Promotion Initiative (DP-CAC ¶¶ 146-169; IP-FAC ¶¶ 172-200);

- Participated in one of three patent pools for ODD technology (DP-CAC ¶ 135; IP-FAC ¶ 156);

- Manufactured ODDs sold by TSST pursuant to a joint venture agreement with Toshiba (IP-FAC ¶ 113); and

- Agreed with 17 other ODD manufacturers in March 2000 to comply with OSTA's "MultiRead" product specification (DP-CAC ¶ 176).

As discussed in Section II of the DP-CAC Joint Motion, courts repeatedly have held that participation in trade associations, patent pools, joint ventures, and standard-setting bodies is lawful and pro-competitive. *In re Late Fee & Over-Limit Fee Litigation* held that "courts have consistently refused to infer the existence of a conspiracy from . . . averments [of trade association membership]." 528 F. Supp. 2d at 963 (citing *Twombly*, 550 U.S. at 567 n.12). Similarly, this Court and other courts have acknowledged "the many pro-competitive benefits and efficiencies of patent pools, including 'integrating complementary technologies, reducing transaction costs, clearing blocking positions, and avoiding costly infringement.'" *Sumitomo Mitsubishi Silicon Corp. v. MEMC Elecs. Materials, Inc.*, No. C 05-2133 SBA, C 01-4925, 2007 WL 2318903, *15 (N.D. Cal. Aug. 13, 2007) (Armstrong, J.) (quoting *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424

21

F.3d 1179, 1193 (Fed. Cir. 2005). And the Supreme Court has held that joint ventures are a form of "legitimate business collaboration," *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006), while the Ninth Circuit explained that "[s]etting minimum standards to insure quality increases competition and is entirely reasonable." *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1455 (9th Cir. 1983).

Furthermore, courts refuse to infer a conspiracy from participation in such organizations without specific factual allegations of agreements or invitations to conspire. The Complaints are completely devoid of any allegations of that nature. In particular, Plaintiffs' allegations listing specific SEC representatives and the dates on which they allegedly attended trade association meetings are insufficient to raise an inference of a conspiracy. Even if SEC's participation in trade organizations might have provided them with the opportunity to collude, opportunity, without more, is not a plausible basis to suggest a conspiracy. *See GPU*, 527 F. Supp. 2d at 1024 ("At most, [plaintiffs] have suggested that defendants' employees and executives attended the same meetings, and thereafter, defendants engaged in parallel behavior that could be explained by each firm acting in their own self-interest"); *Kendall*, 518 F.3d at 1049 (rejecting allegations that "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy").[13]

Plaintiffs' allegations that SEC was the subject of prior government investigations in other, unrelated product markets also fail to suggest that SEC joined the alleged conspiracy. SEC's alleged misconduct in other markets is irrelevant to Plaintiffs' claims regarding the ODD market. Plaintiffs allege that SEC was involved in antitrust misconduct in the DRAM, CRT, and TFT-LCD markets,[14] and that the structure of these markets and SEC's conduct in them are similar to the

---

[13] Plaintiffs' remaining allegation of collusion arising out of trade association membership is also purely speculative and unsupported by any facts suggesting involvement in a conspiracy. (*See* DP-CAC ¶ 219) (alleging that the pricing of some Defendants was used as a reference for Samsung and other Defendants). As this Court has explained, "even if there were a pattern of price leadership, a section 1 violation cannot be inferred from an industry's follow-the-leader pricing strategy." *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d at 964 (citation omitted).

[14] Moreover, Plaintiffs' allegations show that "Samsung" has pled in only one of these cases (DRAM), and they qualify their other allegations because, for example, it is public record that the JFTC fined Samsung SDI (a publicly traded company in which SEC holds only an approximately 20 percent stake) and not SEC in relation to CRTs.

market structure and conduct in the ODD industry.  (DP-CAC ¶¶ 188-91, 193, 197, 200-02; IP-FAC ¶¶ 258, 261, 266-68, 271, 272, 274.)  But "guilt by association" with an unrelated industry is not a permissible basis for antitrust liability.  Plaintiffs have not alleged common individuals involved in both alleged conspiracies, or that the conspiracies are part of a common scheme.  Thus, none of these allegations is relevant to Plaintiffs' claims in this case.

Indeed, courts consistently reject the inference of a conspiracy in one market based on unrelated alleged misconduct in another market or region.  *See, e.g., TFT-LCD*, 2010 U.S. Dist. LEXIS 65023, at *18 (holding that it could not "infer the existence of such an expanded conspiracy [in the STN-LCD panel market] based solely on allegations of price-fixing in the TFT-LCD market"); *In re Elevator Antitrust Litig.*, 502 F.3d at 52 (holding that allegations of misconduct in Europe were insufficient because "absent any evidence of a linkage between such foreign conduct and conduct here -- is merely to suggest . . . that 'if it happened there, it could have happened here'").  The inference of a conspiracy in the ODD industry that Plaintiffs ask this Court to draw from SEC's alleged past misconduct is even more attenuated than in the two cases above.  While *TFT-LCD* addressed two closely related LCD markets and *In re Elevator* addressed investigations into the same market in different regions, here Plaintiffs ask the Court to infer a conspiracy in one market based on conduct in *entirely* different markets.  *See In re Elevator Antitrust Litig.*, 502 F.3d at 52.  This illogical inference should be rejected.

Finally, Plaintiffs' allegation that SEC received a DOJ subpoena as part of a governmental investigation into the ODD industry is both false and irrelevant.  (DP-CAC ¶ 226.)  SEC has informed Plaintiffs on numerous occasions that it has not received a DOJ subpoena, and Plaintiffs implicitly acknowledge this fact in their CMC Statement.  (*See* 9/22/10 CMC Statement, Section 2(a) (listing all Defendants that Plaintiffs are aware received a DOJ subpoena, but not including SEC).)  In any event, even if SEC had received a DOJ subpoena, courts have specifically refused to attach any significance to a parallel government investigation, explaining that a plaintiff must "undertake his own reasonable inquiry and frame his complaint with allegations of his own design. Simply saying 'me too' after a governmental investigation does not state a claim."  *In re Tableware Antitrust Litig.*, 363 F. Supp. 2d 1203, 1205 (N.D. Cal. 2005) (Walker, J.); *see also GPU*, 527 F.

Supp. 2d at 1024 ("The investigation . . . carries no weight in pleading an antitrust conspiracy claim. . . . [It] is a non-factor.").

### b. The Complaints Do Not Sufficiently Allege That SEC Is Vicariously Liable For TSST's or TSST-K's Alleged Conduct

Plaintiffs' allegations not only fail to suggest that SEC was directly involved in the alleged conspiracy; they also fail to suggest that SEC was vicariously liable for the alleged conduct of TSST or TSST's subsidiary, Toshiba Samsung Storage Technology Corp. Korea ("TSST-K"). The Direct Purchasers allege that SEC is a 49 percent shareholder of TSST and that it "controls an integrated global enterprise comprised of itself and other entities, including Defendants [TSST] and [TSST-K]." (DP-CAC ¶¶ 43, 46.) The Indirect Purchasers similarly allege that SEC owns 49 percent of TSST and TSST-K, and that SEC and Toshiba "jointly control" these entities and "jointly retain the possibility to exercise decisive influence over [TSST]." (IP-FAC ¶¶ 58, 59, 99.)

Plaintiffs may mean to suggest with these assertions that SEC can be held vicariously liable for TSST's or TSST-K's participation in the alleged conspiracy by virtue of its supposed "control[]" of these entities. That theory – if that is Plaintiffs' theory – is without merit. As discussed in detail in Part B above, Plaintiffs bear a heavy burden to overcome the presumption that SEC, TSST, and TSST-K are separate corporate entities, particularly given that SEC owns only a minority stake in these ventures. *See Bestfoods,* 524 U.S. at 61 (holding that even when a parent corporation owns 100 percent of a subsidiary, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries"); *E.& J. Gallo Winery,* 2008 U.S. Dist. LEXIS 46927, at *16 ("The independence of a subsidiary from the parent corporation is to be presumed."); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004) ("Only in unusual circumstances will the law permit a parent corporation to be held either directly or indirectly liable for the acts of its subsidiary.").

1    Plaintiffs fail to overcome the presumption of corporate separateness because they do not

2    allege facts suggesting that TSST or TSST-K was acting as an agent or alter ego of SEC.[15]  *See*

3    *Bestfoods,* 524 U.S. at 62-63 (explaining that a parent corporation may be held liable for the acts of

4    its subsidiary only "where stock ownership has been resorted to, not for the purpose of participating

5    in the affairs of a corporation in the normal and usual manner, but for the purpose of controlling a

6    subsidiary company so that it may be used as a mere agency or instrumentality of the owning

7    company").

8        The few facts Plaintiffs allege do not provide sufficient support for any of the necessary

9    elements of agency:  (1) a manifestation by the principal that the agent shall act for him; (2) that the

10   agent has accepted the undertaking; and (3) that there is an understanding between the parties that

11   the principal is to be in control of the undertaking.  *E. & J. Gallo Winery*, 2008 U.S. Dist. LEXIS

12   46927, at *16; RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006).  Plaintiffs allege that TSST-K

13   "operates through the common relevant organization for mutual consent" and "is the result of close

14   cooperation between [SEC] and Toshiba."  (DP-CAC ¶ 47.)  They also allege that TSST-K's

15   principal place of business is located at an address that "is part of the Samsung Digital Complex."

16   (*Id.*; IP-FAC ¶ 100.)  But rather than supporting Plaintiffs' allegation of control, these statements

17   do little more than acknowledge that the entities are related in some fashion.  Moreover, certain

18   facts Plaintiffs allege demonstrate that *TSST-K* maintains control over its business.  Namely,

19   Plaintiffs allege that TSST-K is "responsible for the product development, marketing and sales"

20   and has been "taking advantage of [SEC's] existing network for manufacturing, sales and after-

21   sales service."  (DP-CAC ¶ 47.)

---

25   [15]  Plaintiffs do not allege, neither could they succeed in alleging, an alter-ego theory of liability
as to SEC.  Piercing the corporate veil is unusual and places on the plaintiff the heavy burden of
alleging facts that one company essentially is a mere shell of, and controlled by, another. *See, e.g., Dole
Food Co.*, 538 U.S. at 475 ("The doctrine of piercing the corporate veil . . . is the rare exception,
applied in the case of fraud or certain other exceptional circumstances"); *see also Katzir's Floor &
Home Design, Inc.*, 394 F.3d at 1149 (explaining alter ego is a limited doctrine, and may be invoked
only when "corporate separateness is illusory").  Here, SEC owns a minority share (49 percent) of
TSST and in any event, Plaintiffs have not alleged any of the other "critical facts" identified by courts,
including "inadequate capitalization [or] commingling of assets," which may warrant an extraordinary
result like piercing a corporate veil.  *Id.*

Because Plaintiffs plead merely the legal conclusion that SEC "controls" TSST and TSST-K, rather than any facts to support that conclusion, their vicarious liability theory must fail and their claims should be dismissed. *See Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 116 (C.D. Cal. 2003) ("In order to overcome the presumption of separateness afforded to related corporations, [a plaintiff] is required to plead . . . specific facts supporting its claims, not mere conclusory allegations.") (internal citation omitted); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if these conclusions cannot reasonably be drawn from the facts alleged").

In sum, Plaintiffs have not made and cannot make evidentiary allegations that SEC directly joined the alleged conspiracy or is vicariously liable for TSST's or TSST-K's alleged conduct, and thus their claims against SEC should be dismissed.

### 5.    Samsung Electronics America, Inc. ("SEAI")

SEAI should be dismissed from the direct purchaser case because the Complaint does not allege that SEAI is directly or indirectly liable for the alleged conspiracy.[16]  In fact, the Complaint mentions SEAI in only *one* paragraph, in which it identifies SEAI's principal place of business and alleges that it manufactured, sold, distributed, and/or imported ODD Products in the United States. DP-CAC ¶ 44.  This *single* allegation generally describing SEAI's business operations is utterly insufficient to meet the pleading standard of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim *showing that the pleader is entitled to relief*") (emphasis added); *Twombly*, 550 U.S. at 555 (requiring sufficient factual allegations to "raise a right to relief above the speculative level").

Furthermore, Plaintiffs should not be permitted to improperly rely on allegations against a fictional entity, "Samsung," which Plaintiffs define to include both SEC and SEAI, to keep SEAI in this case.  *See* DP-CAC ¶ 45.  General allegations grouping different, affiliated corporations together in this way are insufficient to state a claim as to SEAI.  *See TFT-LCD*, 586 F. Supp. 2d at

---

[16]  SEAI is not named as a defendant in the Indirect Purchaser Complaint.

CONSOLIDATED MOTION TO DISMISS ON BEHALF OF VARIOUS PARENT AND SUBSIDIARY DEFENDANTS
MDL NO. 2143

1117 ("The Court agrees that general allegations as to . . . a single corporate entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against them"); *In re ATM Fee Antitrust Litig.*, 2009 U.S. Dist. LEXIS 83199, at *55-56 (dismissing claims against holding companies where the complaint "merely lump[ed] together" allegations against various affiliated defendants because there were "no allegations in the complaint that tie the holding companies to the alleged conspiracy").

Because Plaintiffs do not make *any* allegations with respect to SEAI's involvement in the alleged conspiracy or its control over TSST or TSST-K, their claims against SEAI should be dismissed.

### 6. Toshiba Corporation ("Toshiba Corp.")

The Complaints' allegations against Toshiba Corp. are insufficient to avoid dismissal. Like SEC, *supra*, Toshiba Corp. appears to be named as a defendant solely because it holds shares in Toshiba Samsung Storage Technology Corp. ("TSST"), a joint venture which is the parent and 100 percent shareholder of Toshiba Samsung Storage Technology Corp. Korea ("TSST-K").[17] Plaintiffs make no attempt to distinguish between these two companies, referring to each as simply "TSST" (DP-CAC ¶ 48; IP-FAC ¶ 60), and alleging that "TSST" was involved in rigging a February 2009 ODD procurement bid to HP. However, the Complaints do not allege any facts to suggest that Toshiba Corp. joined the alleged conspiracy, nor do they show that TSST acted as an "agent" or "alter ego" of Toshiba Corp. – a required condition precedent to asserting vicarious liability for TSST's alleged conduct. Accordingly, dismissal is appropriate.

### a. There Are No Facts to Suggest that Toshiba Corp. Was Involved in the Alleged Conspiracy

Plaintiffs do not plead any facts sufficient to show how Toshiba Corp. was involved in the narrow bid rigging allegations underlying their Complaints. Instead, Plaintiffs shift the focus and variously allege that Toshiba Corp.: (1) participated in business collaborations, such as trade

---

[17] The Indirect Purchasers allege that Toshiba Corp. is the 51% shareholder in TSST-K. (IP-FAC ¶ 59.) Even with this incorrect allegation assumed as true for purposes of this Motion to Dismiss, the Indirect Purchasers still cannot allege a basis for holding Toshiba Corp. liable.

shows, patent pools and standards-setting activities;[18] (2) had been the subject of prior government investigations in unrelated product markets; and (3) had received a DOJ subpoena related to an investigation into the ODD industry (an erroneous claim). None of these allegations, even if assumed true, are sufficient to show that Toshiba Corp. joined or participated in any alleged conspiracy.

First, Plaintiffs' mere recitation of various business collaborations and industry activities in which Toshiba Corp. participated does not plead an antitrust conspiracy. Joint ventures, trade associations, patent pools, and standards-setting bodies are lawful, reasonable and pro-competitive business activities. (*See* DP-CAC Joint Motion, Sections II.B-D.) For that reason, Plaintiffs must provide specific allegations about collusive agreements reached through these activities. Unable to do so, Plaintiffs instead reel off paragraphs of publicly-available information about dates and "Toshiba" participants at various industry trade shows and meetings – ultimately able to plead only that such meetings provided an "opportunity" to reach an illegal agreement. Without more, this does not plead an adequate conspiracy. *See GPU*, 527 F. Supp. 2d at 1024 ("At most, [plaintiffs] have suggested that defendants' employees and executives attended the same meetings, and thereafter, defendants engaged in parallel behavior that could be explained by each firm acting in their own self-interest"); *Kendall*, 518 F.3d at 1049 (rejecting allegations that "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy").

Plaintiffs' separate allegations that Toshiba Corp. was the subject of prior government investigations in unrelated product markets are equally deficient.[19] Courts have consistently rejected the inference of a conspiracy in one market based on unrelated (not to mention unproven)

---

[18] Plaintiffs allege that Toshiba Corp. participated in (i) certain ODD-related trade associations and activities, including meetings of those groups (*see* DP-CAC ¶¶ 146, 148, 150, 152, 154, 156, 161, 165-66; IP-FAC ¶¶ 172-200); (ii) two of three patent pools for ODD technology (DP-CAC ¶¶ 135-36; IP-FAC ¶¶ 155-56); and (iii) a standards-setting process whereby, in March 2000, it agreed with seventeen other ODD manufacturers to comply with OSTA's "MultiRead" product specification (DP-CAC ¶ 176).

[19] Plaintiffs plead the existence of previous antitrust investigations into the television, gas insulated switchgears, DRAM, CRT, and TFT-LCD markets. (DP-CAC ¶¶ 182, 187, 189, 191, 193, 198, 200-02; IP-FAC ¶¶ 258, 266-67, 273.)

misconduct in a separate market or region.  (*See* Part A, *supra*, at 9; DP-CAC Joint Motion, Section II.F.)  Similarly, the allegation that Toshiba Corp. received a DOJ subpoena as part of an investigation into the ODD market, is both misleading and irrelevant.  First, as Plaintiffs know, it was TSST (a separate entity in which Toshiba Corp. is a shareholder), and not Toshiba Corp. itself, which received the subpoena.  (*See* DP-CAC ¶¶ 226, 228.)  In any event, receipt of an investigatory subpoena, without specific facts to demonstrate involvement in a conspiracy, is insufficient to withstand dismissal.  *See*, *e.g.*, *In re Tableware Antitrust Litig.*, 363 F. Supp. 2d at 1205 ("Simply saying 'me too' after a governmental investigation does not state a claim"); *GPU*, 527 F. Supp. 2d at 1024 ("The investigation . . . carries no weight in pleading an antitrust conspiracy claim. . . . [It] is a non-factor.").

        **b.**     **The Complaints' Conclusory Allegations of Agency and Control Are Insufficient to Impose Vicarious Liability on Toshiba Corp.**

Plaintiffs also fail to state a claim against Toshiba Corp. based upon its 51 percent stock ownership of TSST, a joint venture alleged to have rigged a February 2009 ODD procurement bid to HP.  While not actually pleading it, Plaintiffs appear to proceed on a theory of vicarious liability against Toshiba Corp. for the alleged actions of TSST – or TSST's subsidiary, Toshiba Samsung Storage Technology Corp. Korea ("TSST-K").  The Direct Complaint alleges that Toshiba Corp. "controls an integrated global enterprise comprised of itself and other entities, including Defendants [TSST] and [TSST-K]."  (DP-CAC ¶¶ 40, 46.)  The Indirect Complaint similarly alleges that "Toshiba," along with SEC, "jointly control[s] … [and] jointly retain[s] the possibility to exercise decisive influence over [these entities]."  (IP-FAC ¶¶ 58, 59, 99.)

These conclusory allegations of "control" do not satisfy the threshold legal requirements for bringing a claim against Toshiba Corp. based on the alleged conduct of TSST or TSST-K.  As discussed in Part B, above, Plaintiffs must meet a heavy burden to overcome the presumption of corporate separateness.  *See*, *e.g.*, *Sherman*, 601 F.2d at 441 (holding the "relationship of parent and subsidiary" by itself "is not enough" to attach antitrust liability to a parent company due to the actions of its subsidiary).  Plaintiffs were required to make "specific factual allegations" showing that TSST (or TSST-K) was "so extensively controlled by its owner that a relationship of principal

29

and agent is created" or, similarly, that these joint ventures acted as the alter ego of Toshiba Corp. *See NRG Energy, Inc.*, 391 F.3d at 1024-25; *see also Nordberg*, 445 F. Supp. 2d at 1103; *Am. Nat'l Red Cross*, 2007 U.S. Dist. LEXIS 95296 at *30.

The few facts Plaintiffs allege cannot support an agency claim, which requires (a) a manifestation by the parent that the subsidiary/agent acts on its behalf; (b) acceptance by the subsidiary; and (c) an understanding between the parent and subsidiary that the parent is in control. *See E. & J. Gallo Winery*, 2008 U.S. Dist. LEXIS 46927, at *16; RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006). Plaintiffs allege that TSST-K operates through the "common relevant organization for mutual consent" and "is the result of close cooperation between Samsung Electronics and Toshiba." (DP-CAC ¶ 47.) They also allege that TSST's principal place of business is "the same address as Toshiba's." (DP-CAC ¶ 46; *see also* IP-FAC ¶ 58.) These few facts, taken from TSST-K's website (*see* DP-CAC ¶ 47), are plainly insufficient to plead control or show that TSST or TSST-K was formed and operated solely as a "mere instrumentality" or "alter ego" of Toshiba Corp.[20]

Accordingly, because Plaintiffs have pled only the legal conclusion that Toshiba Corp. "controls" TSST and TSST-K, rather than any facts to support that conclusion, dismissal is warranted. *See Neilson,* 290 F. Supp. 2d at 1116 ("In order to overcome the presumption of separateness afforded to related corporations, [a plaintiff] is required to plead . . . specific facts supporting its claims, not mere conclusory allegations.") (internal citation omitted).

### 7. Toshiba America Information Systems, Inc. ("TAIS")

TAIS is named as a defendant in only one of these actions (the Direct Purchaser case) and Plaintiffs allege no connection to the alleged conspiracy. Instead, Plaintiffs appear to rely only on impermissible group pled allegations addressed to the fictional entity "Toshiba," which Plaintiffs

---

[20] While Plaintiffs do not plead under an alter-ego theory of liability, the limited factual allegations do not support the exceptional step of piercing the corporate veil. There are no allegations that TSST or TSST-K operated as an "illusory" or "undercapitalized" entity, or that Toshiba Corp., which owned only 51 percent of TSST's stock, disregarded corporate formalities or otherwise used these entities as its alter ego. *See* fn. 15, above, for supporting authorities.

CONSOLIDATED MOTION TO DISMISS ON BEHALF OF VARIOUS PARENT AND SUBSIDIARY DEFENDANTS
MDL No. 2143

define to include both Toshiba Corp. and TAIS, its United States subsidiary. (DP-CAC ¶ 42.)[21] As set forth above, these general allegations which lump separate, affiliate entities together are insufficient to state a claim as to TAIS. *See In re ATM Fee Antitrust Litig.*, 2009 U.S. Dist. LEXIS 83199, at *55-56 (dismissing claims against holding companies where the complaint "merely lump[ed] together" allegations against various affiliated defendants because there were "no allegations in the complaint that tie[d] the holding companies to the alleged conspiracy"); *TFT-LCD*, 586 F. Supp. 2d at 1117 (holding that a plaintiff must allege that "*each individual defendant joined the conspiracy and played some role in it*") (emphasis added).

Dismissal is appropriate for TAIS because there is not a single allegation that it directly or indirectly participated in the alleged conspiracy. Indeed, TAIS is mentioned in only one paragraph of the Direct Complaint, which identifies its principal place of business and alleges that it manufactured, sold, distributed, and/or imported ODD Products in the United States. (DP-CAC ¶ 41.) This *single* allegation, which describes only TAIS's business address and operations, cannot possibly meet the pleading standard required under the Federal Rules. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim *showing that the pleader is entitled to relief*") (emphasis added); *Twombly*, 550 U.S. at 555-56 (requiring sufficient factual allegations to "raise a right to relief above the speculative level"). Accordingly, because no facts are pled alleging TAIS's involvement in the conspiracy, or its control over TSST or TSST-K (a separate joint venture, in which its parent has a partial stock ownership), TAIS should be dismissed from the Direct Purchaser action.

---

[21] Nearly all of the Direct Purchasers' allegations identify "Toshiba" – rather than specify which particular entity, Toshiba Corp. or TAIS, is alleged to have participated in the conduct. (*See, e.g.,* DP-CAC ¶¶ 101-02, 122-23, 135-36, 141, 146, 151, 154, 156, 161, 165-67, 173, 176, 189-91, 193, 198, 200, 228, 244.)

CONSOLIDATED MOTION TO DISMISS ON BEHALF OF VARIOUS PARENT AND SUBSIDIARY DEFENDANTS
MDL No. 2143

## CONCLUSION

For these reasons, the Complaints should be dismissed with prejudice as to the Parent and

Subsidiary Defendants.

Dated: October 12, 2010            Respectfully submitted,

By:    */s/ Christopher B. Hockett*

       Christopher B. Hockett (Bar No. 121539)
       Neal A. Potischman (Bar No. 254862)

       Sandra D. West (Bar No. 250389)
       Jeremy M. Brodsky (Bar No. 257674)

       DAVIS POLK & WARDWELL LLP
       1600 El Camino Real

       Menlo Park, California 94025
       Telephone: (650) 752-2000

       Facsimile: (650) 752-2111

       christopher.hockett@davispolk.com
       neal.potischman@davispolk.com

       sandra.west@davispolk.com
       jeremy.brodsky@davispolk.com

       *Attorneys for Defendants LG Electronics, Inc. and*
       *LG Electronics USA, Inc.*

By:    */s/ Craig P. Seebald*

       Craig P. Seebald (admitted *Pro Hac Vice*)
       Pamela J. Marple (admitted *Pro Hac Vice*)

       MCDERMOTT WILL & EMERY LLP
       600 13th Street, NW

       Washington, DC 20005
       Telephone: (202) 756-8000

       Facsimile: (202) 756-8087

       E-mail:     cseebald@mwe.com
       E-mail:     pmarple@mwe.com

       Matthew J. Jacobs (No. 171149)
       MCDERMOTT WILL & EMERY LLP

       275 Middlefield Road, Suite 100
       Menlo Park, CA 94025

       Telephone: (650) 815-7400
       Facsimile: (650) 815-7401

       E-mail:     mjacobs@mwe.com

       *Attorneys for Defendant Hitachi, Ltd.*

By:   */s/ Thomas Brown*
Thomas Brown
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
Email: tbrown@omm.com

Ian Simmons (admitted *Pro Hac Vice*)
O'MELVENY & MYERS LLP
1625 Eye St. NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: isimmons@omm.com

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

By:   */s/ Belinda S. Lee*
Daniel M. Wall
Belinda S. Lee
Brendan A. McShane
Connie Sardo
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: +1.415.391.0600
Fax: +1.415.395.8095

*Attorneys for Defendants Toshiba Corporation, Toshiba Samsung Storage Technology Corporation, Toshiba Samsung Storage Technology Korea Corporation, and Toshiba America Information Systems, Inc.*

Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.