Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
George W. Sampson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
george@hbsslaw.com

Interim Lead Counsel for Indirect
Purchaser Plaintiffs

[*Additional Counsel Listed on
Signature Page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION <br><br><br><br><br><br><br><br><br><br><br> _____ <br><br> This Document Relates to: <br><br> ALL INDIRECT PURCHASER ACTIONS _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

MDL No. 3:10-md-2143 RS

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO VARIOUS "PARENT" DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

Date:          January 20, 2011
Time:          1:30 p.m.
Courtroom:  3, 17th Floor
Judge:         Honorable Richard Seeborg

DATE ACTION FILED: Oct. 27, 2009

**TABLE OF CONTENTS**

I.      INTRODUCTION AND STATEMENT OF ISSUES ...........................................................1

II.     ARGUMENT ...........................................................................................................2

      A.      Hitachi, LG Electronics, Samsung and Toshiba Are Liable for the Actions
            of Their Joint Ventures ...........................................................................................2

            1.      The Co-Venturer Defendants are Liable for Their Joint Ventures'
                 Actions...........................................................................................................3

            2.      Defendants Are Also Liable Under General Agency Principles ...................5

                 a.      The Joint Ventures Merely Perform Elements of the Co-
                      Venturer Defendants' Pre-Existing ODD Operations ......................6

                 b.      The Joint Ventures (HLDS and TSST) Are Mere
                      Instrumentalities of the Co-Venturer Defendants..............................7

      B.      Hitachi, LG Electronics, Samsung and Toshiba Are also Directly Liable
            for Participating in the Price-Fixing Conspiracy .........................................................8

            1.      Hitachi, Samsung and Toshiba Facilitated the ODD Price-Fixing
                 Conspiracy Using Patent Pools .................................................................9

            2.      Hitachi Played a Role in the Conspiracy by Facilitating
                 Conspiratorial Communications ..............................................................11

            3.      Hitachi, LG Electronics, Samsung and Toshiba's Participation in
                 Trade Associations and Industry Events Show the Opportunity and
                 Means to Develop the Conspiracy............................................................11

            4.      Hitachi, LG Electronics, Samsung and Toshiba Participated in
                 Price-Fixing Conspiracies in Related Industries, Making the
                 Existence of a Conspiracy Here More Plausible ..........................................12

III.    CONCLUSION .........................................................................................................13

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*ACORN v. Household Int'l, Inc.*
   211 F. Supp. 2d 1160 (N.D. Cal. 2002) ............................................................ 7, 8

*Al-Kidd v. Ashcroft*
   580 F.3d 949 (9th Cir. 2009) ................................................................................ 4

*APL Co. v. UK Aerosols Ltd.*
   2006 U.S. Dist. LEXIS 70731 (N.D. Cal. Sept. 27, 2006) .................................. 3, 4

*Bd. of Trs. of the W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson, Inc.*
   830 F.2d 1009 (9th Cir. 1987) .............................................................................. 3

*Bowoto v. Chevron Texaco Corp.*
   312 F. Supp. 2d 1229 (N.D. Cal. 2004) .............................................................. 6, 7

*CutCo Indus., Inc. v. Naughton*
   806 F.2d 361 (2d Cir. 1986) ................................................................................. 3

*Gallagher v. Mazda Motor of Am., Inc.*
   781 F. Supp. 1079 (E.D. Pa. 1992) ....................................................................... 6

*Harris Rutsky & Co. Ins. Srvs., Inc. v. Bell & Clements Ltd.*
   328 F.3d 1122 (9th Cir. 2003) ............................................................................ 5, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2010 U.S. Dist. LEXIS 98739 (N.D. Cal. Mar. 30, 2010) ................................... 8, 9

*In re Fine Paper Antitrust Litig.*
   685 F.2d 810 (3d Cir. 1982) ................................................................................. 8

*In re Flash Memory Antitrust Litig.*
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................................... 8, 11, 12

*In re OSB Antitrust Litig.*
   2007 U.S. Dist. LEXIS 56573 (E.D. Pa. Aug. 3, 2007) ...................................... 8, 9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ............................................................... 9, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
   2009 U.S. Dist. LEXIS 17792 (N.D. Cal. Mar. 3, 2009) ....................................... 9

*John Doe I v. Unocal Corp.*
   395 F.3d 932 (9th Cir. 2002) .............................................................................. 3, 4

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Miller v. IBM*
    2006 U.S. Dist. LEXIS 73715 (N.D. Cal. Sept. 26, 2006) ............................................4

*Monaco v. Liberty Life Assur. Co.*
    2007 U.S. Dist. LEXIS 31298 (N.D. Cal. Apr. 17, 2007) ..........................................6

*Parvin v. Davis Oil Co.*
    655 F.2d 901 (9th Cir. 1979) ............................................................................. 4, 5

*Todd v. Exxon Corp.*
    275 F.3d 191 (2d Cir. 2001) ..................................................................................12

*United States v. Andreas*
    216 F.3d 645 (7th Cir. 2000) ................................................................................12

*United States v. Bestfoods*
    524 U.S. 51 (1998) ..........................................................................................3, 7

**STATE CASES**

*Christensen v. Superior Court*
    820 P.2d 181 (Cal. 1991)..........................................................................................3

*Sonora Diamond Corp. v. Superior Court*
    83 Cal. App. 4th 523 (2000) .............................................................................5, 7

*Weiner v Fleischman*
    816 P.2d 892 (Cal. 1991) .........................................................................................4

**FEDERAL RULES**

Federal Rule of Evidence 404(b) ........................................................................12

## I.     INTRODUCTION AND STATEMENT OF ISSUES

Indirect Purchaser Plaintiffs plead sufficient facts to support indirect and direct theories of liability against the Defendants.  At the pleading stage, this is sufficient to deny Defendants' motion.[1]

*First*, Plaintiffs plead facts demonstrating the Defendants are liable for the acts of the joint ventures which they created and own.  Although seven Defendant entities jointly move to dismiss both indirect and direct purchasers' claims, the indirect purchaser complaint only names four of these entities:  Hitachi, Ltd. ("Hitachi"); LG Electronics, Inc. ("LG Electronics"); Samsung Electronics Co., Ltd. ("Samsung"), and Toshiba Corporation ("Toshiba") (collectively "Co-Venturer Defendants).[2]

Important to understand is that these four Defendants formed joint ventures with each other to sell optical disk drives ("ODDs").  Defendants Hitachi and LG Electronics created a joint venture named Hitachi LG Data Storage, Inc. ("HLDS").  Defendants Samsung and Toshiba created a joint venture named Toshiba Samsung Storage Technology ("TSST").  The Co-Venturer Defendants created these joint ventures to consolidate their pre-existing ODD operations (and the ODD industry).  Moreover, each Co-Venturer Defendant continued to control its intellectual property (e.g., patents) or manufacturing responsibility in the ODD distribution and sales process.  Under these circumstances, as a matter of law, each Co-Venturer Defendant is liable for their respective joint venture's actions.

*Second,* the indirect purchasers' complaint alleges sufficient facts to show each Co-Venturer Defendant is directly liable for playing a role in the conspiracy to fix ODD prices.  Plaintiffs' detailed allegations connect each Defendant with the alleged conspiracy.  Defendants ignore these specific allegations and instead choose to frame their arguments as though the direct and indirect purchaser plaintiffs make carbon-copy allegations.  They do not.

---

[1]     Consolidated Notice of Motion and Motion to Dismiss Direct and Indirect Purchaser Complaints on Behalf of Various Parent and Subsidiary Defendants ("Parent Defs.' Mot. to Dismiss"), ECF No. 258.

[2]     Indirect Purchaser Plaintiffs did not name as Defendants LG Electronics USA, Inc., Samsung Electronics America, Inc. or Toshiba America Information Systems.

For all of these reasons, Plaintiffs adequately allege facts to support both indirect and direct theories of liability against Hitachi, LG Electronics, Samsung and Toshiba.

## II.    ARGUMENT

### A.    Hitachi, LG Electronics, Samsung and Toshiba Are Liable for the Actions of Their Joint Ventures

Co-Venturer Defendants avoid the facts Plaintiffs allege, hoping to portray themselves merely as arms-length, corporate shareholders. This defies the salient and detailed facts in the complaint. The indirect purchaser complaint extensively lays out the creation of these joint ventures and their role in consolidating the industry and the conspiracy to fix ODD prices. IPP-FAC, ¶¶ 88-108.[3] In short, prior to joint venturing, the Co-Venturer Defendants each operated ODD business units. *Id.*, ¶¶ 88, 99. Then, each Co-Venturer Defendant populated these joint ventures with their own ODD personnel, the ostensible purpose of which was to perform research and development, and marketing functions. *Id.*

In forming these joint ventures, the Co-Venturer Defendants ***retained control*** over elements critical to the viability of ongoing ODD business operations. As they had before creating the joint ventures, the Co-Venturer Defendants maintained control over the intellectual property (key patents) and manufacturing responsibility for ODDs. *Id.*, ¶¶ 88-90, 99-100. Under this arrangement, therefore, not only have the Co-Venturer Defendants co-mingled themselves in the daily affairs of HLDS and TSST, these Co-Venturer Defendants have been providing the oxygen for the joint ventures to exist day-to-day. Without continued access to the Co-Venturer Defendants' intellectual property and manufacturing resources, the joint ventures could not (and would not) exist.

So, while it is true that the law generally respects the corporate form, this is an empty generalization here. Instead, the fundamental principle is that corporations structuring their businesses to benefit from exerting substantial control over a business enterprise must accept concomitant liabilities.

---

[3]    "IPP-FAC" refers to the Indirect Purchaser Plaintiffs' First Amended Class Action Complaint, ECF No. 239.

1

**1.      The Co-Venturer Defendants are Liable for Their Joint Ventures' Actions**

2          In their complaint, Plaintiffs detail three representative examples of Defendants' price-

3  fixing behavior.  IPP-FAC, ¶¶ 131-39.  These price-fixing examples detail conduct by the joint

4  ventures HLDS, TSST, PLDS and Sony Optiarc.  *Id.*  In seeking dismissal, Hitachi, LG

5  Electronics, Samsung and Toshiba seek to distance themselves from the price-fixing activities of

6  their joint ventures, suggesting they lacked sufficient control over HLDS's and TSST's actions to

7  be imputed with the illegal conduct.  But the Co-Venturer Defendants, owning roughly 50 percent

8  of the joint ventures, are liable as a matter of law for the actions of the joint ventures.

9          Participants in a joint venture are deemed to be a species of "partners," liable for the actions

10  of the joint venture as a matter of law.  *See Bd. of Trs. of the W. Conference of Teamsters Pension*

11  *Tr. Fund v. H.F. Johnson, Inc.*, 830 F.2d 1009, 1015 (9th Cir. 1987).[4]  Importantly, "[e]ach partner

12  is an agent of the partnership for the purpose of its business."  *APL Co. v. UK Aerosols Ltd.*, No. C

13  05-0646, 2006 U.S. Dist. LEXIS 70731, at *15-*16 (N.D. Cal. Sept. 27, 2006).

14          The business relationship between participants in a joint venture establishes sufficient

15  control over the venture to warrant imposing liability on each for the venture's acts.  The legal

16  theory of joint venturer (or common enterprise) liability is well-established and repeatedly

17  recognized by the Supreme Court, the Ninth Circuit and other circuit courts.[5]  Once a joint venture

18  is found, the participants will be liable for its acts without needing to demonstrate the same degree

19  of control over the joint venture that is required under general agency principles.  As noted by the

20  Second Circuit in *CutCo,* it is error to apply traditional agency factors when a joint venture exists,

21  because to do so "overstat[es] the degree of control necessary."  *Cutco*, 806 F.2d at 366.

22          [4]      *See also Christensen v. Superior Court*, 820 P.2d 181, 195 (Cal. 1991) ("A joint venture is
sort of a mutual agency, akin to a limited partnership.").  All internal quotations and citations

23  omitted and all emphasis added, unless otherwise indicated.

24          [5]      *See e.g., United States v. Bestfoods*, 524 U.S. 51, 71 (1998) ("a parent can be held directly
liable when the parent operates the facility in the stead of its subsidiary or alongside the subsidiary

25  in some sort of a joint venture"); *John Doe I v. Unocal Corp.*, 395 F.3d 932, 970 (9th Cir. 2002)
("It is well-established as a federal common law principle that a member of a joint venture is liable

26  for the acts of its co-venturers.") (Reinhardt, J., concurring); *Bd. of Trustees*, 830 F.2d at 1015
(upholding liability of two investors in joint venture under theory of joint venture liability);

27  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (observing that "under traditional
agency law, joint participation in a partnership or joint venture establishes control sufficient to

28  make each partner or joint venturer an agent of the others").

Whether a joint venture exists is a fact-intensive inquiry, unsuitable for resolution on a motion to dismiss.[6]  Here, however, accepting as true all facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff (*see Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009)), the complaint's allegations make clear that TSST and HLDS are joint ventures between the Co-Venturer Defendants.[7]  The Co-Venturer Defendants acknowledge this joint venture relationship with HLDS and TSST in their motion to dismiss, referring to these separate Defendants as the "Joint Venture Defendants."[8]

But even if this Court delves into a fact-intensive inquiry at the pleading stage, Plaintiffs meet the applicable test.  A joint venture is "an undertaking by two or more persons jointly to carry out a single enterprise for profit."  *Parvin*, 655 F.2d at 904.  A joint venture exists when there is: (1) a community of interest in the subject of the undertaking; (2) a sharing in profits and losses; (3) an equal right or a right in some measure to control the conduct of each other and of the enterprise; and (4) a fiduciary relation between or among the parties.  *Id.*[9]

Here, the Co-Venturer Defendants had a community of interest in forming and investing in the ventures:  the design, development and marketing of ODDs.  IPP-FAC, ¶¶ 88, 99.  The nature

---

[6]   *See, e.g.*, *Weiner v Fleischman,* 816 P.2d 892, 894 (Cal. 1991) (explaining that the existence of a joint venture agreement is a question of fact determined by a preponderance of the evidence).  *See also Parvin v. Davis Oil Co.*, 655 F.2d 901, 904 (9th Cir. 1979) ("Whether a joint venture exists rests primarily on the facts of the individual case"); *Miller v. IBM*, No. C02-2118, 2006 U.S. Dist. LEXIS 73715, at *27 (N.D. Cal. Sept. 26, 2006) ("the existence or non-existence of a joint venture is a question of fact to be determined by the jury").

[7]   *See, e.g.*, IPP-FAC, ¶ 4 ("Defendants dramatically reduced the number of competitors in the industry by entering into a series of joint venture agreements."); *Id.* ("These joint venture agreements not only reduced the number of competitors . . . [they] also forged relationships and avenues of communication which further enabled Defendants' ability to fix prices."); ¶ 113 ("Each of the joint ventures includes a manufacturing parent and an intellectual-property-holder parent."); ¶ 139 ("On information and belief, the heads of sales for ODD at each of the joint ventures (HLDS, PLDS, TSST and Sony Optiarc) were aware of and approve of the bid-rigging agreements generally."); ¶ 221 ("A slackening in the pace of innovation seems to have coincided with the formation of the patent pool and joint ventures. . . .").  *See also id.*, ¶¶ 41, 42, 48, 53, 54, 58, 59 (defining joint venture parties); ¶¶ 88-108 (describing formation of joint ventures).

[8]   Parent Defs.' Mot. to Dismiss at 3.

[9]   While Defendants may object to the application of California law, the tests to determine whether a joint venture exists and the application of agency principles to joint ventures are "general in nature and widely adopted."  *See APL*, 2006 U.S. Dist. LEXIS 70731, at *15.  Application of federal common law would not change the outcome here.  *See Unocal*, 395 F.3d at 970 ("It is well-established as a federal common law principle that a member of a joint venture is liable for the acts of its co-venturers.").

of the relationship between the Co-Venturer Defendants and the joint venture inescapably requires that a community of interest exists – each joint venture had two parents, a manufacturing parent and an intellectual property parent. *Id.*, ¶ 113.  After the formation of the joint venture, the intellectual property parent continued to hold the relevant patents, while the manufacturing parent continued to manufacture the ODDs. *Id.*, ¶¶ 88, 99.  In the case of HLDS (Hitachi's and LG Electronics' joint venture), Hitachi continued to hold the patents, while LG Electronics continued to manufacture the ODDs. *Id.*, ¶¶ 89, 113.  With TSST (Toshiba's and Samsung's joint venture), Toshiba continued to hold the intellectual property and Samsung manufactured the ODDs. *Id.*, ¶¶ 99-100, 113.

Given the Co-Venturer Defendants' continued patent ownership and manufacturing of ODDs, the Co-Venturer Defendants clearly participate in the profits and losses. *See Parvin*, 655 F.2d at 904.  And each Co-Venturer Defendant shares a degree of control over the conduct of the joint venture in which it has invested, through a 49/51 percent ownership.  IPP-FAC, ¶¶ 88, 99.

Finally, fiduciary relationships exist between the Co-Venturer Defendants through these joint ventures, including pooling of patents and granting patent licenses, shared board memberships, joint control of the joint venture operations, and contracting-back manufacturing responsibilities to one of the co-venturer corporations. *Id*.

Because Hitachi and LG Electronics, and Samsung and Toshiba formed HLDS and TSST as joint ventures, they are each liable for the actions of their joint ventures (HLDS and TSST) as agents of each other and of the joint venture.

### 2. Defendants Are Also Liable Under General Agency Principles

Plaintiffs also plead facts sufficient to establish indirect liability under general agency principles.  Agency liability exists if either: (a) the joint venture/subsidiary performs a function that the parent would have otherwise performed in the absence of the joint venture/subsidiary; or (b) the parent exercises control over the joint venture so that the joint venture/subsidiary is a mere instrumentality of the parent.[10]  These inquiries are factually intensive, ill-suited for disposition on

---

[10]    *See Harris Rutsky & Co. Ins. Srvs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2003); *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (2000).

1   a motion to dismiss.[11]  As set forth below, however, the complaint pleads sufficient facts to meet

2   both standards.

      a.   **The Joint Ventures Merely Perform Elements of the Co-Venturer**
3             **Defendants' Pre-Existing ODD Operations**

4        An agency relationship exists where a subsidiary performs services sufficiently important to

5   the parent, such that the parent would undertake the same services if the subsidiary did not.  *See*

6   *Harris*, 328 F.3d at 1134-35.  The Ninth Circuit in *Harris* acknowledged this doctrine in the

7   personal jurisdiction context; other courts recognize this doctrine in the context of liability.  *Id.* at

8   1134.[12]

9

10       Here, Hitachi, LG Electronics, Samsung and Toshiba each undoubtedly would have

11  continued performing the marketing, and research and development functions in the absence of the

12  joint ventures.  Essentially, the joint ventures/subsidiaries marry pre-existing resources and

13  functions that were housed inside the Co-Venturer Defendants.  IPP-FAC, ¶ 100.  The Co-Venturer

14  Defendants formed the joint ventures/subsidiaries for the design, development and marketing of

15  ODDs, while retaining nearly 49/51 percent control.  *Id.*, ¶¶ 88, 99.  The Co-Venturer Defendants

16  retained the patent and royalties rights for ODDs; manufacturing is retained by the Korean "parent"

17  corporations (LG Electronics and Samsung); and the ODDs are then supplied from the joint

18  ventures back to the "parent" corporations who market them under their own brands.  *See*, *e.g.*, *id.*,

19  ¶ 100.

20       Clearly, without the creation of the joint venture/subsidiaries, each of the Co-Venturer

21  Defendants would have continued to perform the functions relegated to the joint ventures – design,

22  development and marketing.  The ODD industry – worth roughly 6.8 billion dollars in sales in

23  2009 alone (*id.*, ¶ 109) – is sufficiently material to each of these Defendants that without the

24

25       [11]   *See Monaco v. Liberty Life Assur. Co.*, No. C06-07021, 2007 U.S. Dist. LEXIS 31298, at
26  *20-*21 (N.D. Cal. Apr. 17, 2007) (noting that agency liabilities are factually intensive, and not
     suitable for resolution on a motion to dismiss).

27       [12]   *See also Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1241-42 (N.D. Cal. 2004)
     (explaining and applying test); *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1084-
28  1085 (E.D. Pa. 1992) (collecting cases).

creation of these joint ventures/subsidiaries, the Co-Venturer Defendants would have continued to perform these functions internally.

### b. The Joint Ventures (HLDS and TSST) Are Mere Instrumentalities of the Co-Venturer Defendants

Further, a parent corporation is liable for the actions of its subsidiary if it retains extensive control over the subsidiary's business operations. Notwithstanding the maintenance of separate corporate formalities:

> [W]here the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities, jurisdiction over the parent may be grounded in the acts of the subsidiary/agent.

*Sonora Diamond*, 83 Cal. App. 4th at 541.[13] The touchstone of this inquiry is the parent's day-to-day control over the subsidiary. *See Bowoto*, 312 F. Supp. 2d at 1241-42 & n.8. Tests of general agency evaluate "numerous and varied indicia." *Id.* at 1243. Again, such factually intensive questions are not suitable for resolution on a motion to dismiss.[14]

Here, a number of factors support a finding that the joint venture/subsidiaries were agents of the "parent" corporations. *First*, the parent and joint ventures/subsidiaries continued to have a "single, unitary" purpose and structural entanglement through the patent and manufacturing relationships. *Id.* Although the Co-Venturer Defendants created the joint ventures/subsidiaries to design, develop and market ODDs, the Co-Venturer Defendants own the patent and royalty rights. IPP-FAC, ¶¶ 88-89, 99-100. Indeed, Co-Venturer Defendants are members of the patent pools, not the joint ventures/subsidiaries. *Id.*, ¶¶ 155-56. Moreover, the joint ventures/subsidiaries do not manufacture ODDs; instead, the Korean "parent" corporations (LG Electronics and Samsung) do. *Id.*, ¶ 113. Thus, the joint ventures are entirely dependant on the Co-Venturer Defendants – a fact that strongly speaks to the "single, unitary" nature of these corporations.

---

[13]   *See also Bestfoods*, 524 U.S. at 71 (remarking that "a dual officer or director might depart so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary").

[14]   *See ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1165 (N.D. Cal. 2002).

1    *Second*, these companies share common management.  After the creation of HLDS, the

2    chief executive officer of the joint venture was from LG Electronics, while the chief financial

3    office was from Hitachi.  *Id.*, ¶ 88.  The company headquarters of TSST are at Toshiba's head

4    office in Japan.  *Id.*, ¶ 100.  TSST Korea's head office is at the Samsung Digital Complex.  *Id.*

5    Although overlapping control structures are not sufficient alone to establish agency, "several courts

6    have found such overlapping control structures to be probative of a broader principal/agent

7    relationship."  *ACORN*, 211 F. Supp. 2d at 1167.

8    *Third*, the importance of the joint venture/subsidiary activities to the Co-Venturer

9    Defendants' overall activities further supports a finding of agency.  As described above, the Co-

10   Venturer Defendants each participated in the ODD industry prior to the creation of the joint

11   venture/subsidiaries, continued to hold the patent rights on ODDs, continued to manufacture ODDs

12   and would have undertaken to continue to perform the "design, development and marketing of

13   ODDs in the absence of the joint venture/subsidiaries.  *See* section II.A.2.a, *supra*.  The importance

14   of these joint ventures further supports a finding of agency here.

15   **B.    Hitachi, LG Electronics, Samsung and Toshiba Are also Directly Liable for
         Participating in the Price-Fixing Conspiracy**

16

17   Separate and apart from the Co-Venturer Defendants being indirectly liable based on the

     conduct of their respective joint ventures, Plaintiffs also sufficiently allege facts to show the Co-

18   Venturer Defendants are directly liable for playing a role in the conspiracy.  Contrary to the Co-

19   Venturer Defendants' arguments, courts in this District and elsewhere have repeatedly emphasized

20   that antitrust conspiracy allegations must be viewed as a whole and "need not be detailed on a

21   defendant by defendant basis."  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1142

22   n.7 (N.D. Cal. 2009).[15]  Rather, to survive a motion to dismiss, plaintiffs "only need to make

23

24   ───────────────

25       [15]  *See also In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982) (district court
     should not "compartmentalize" a conspiracy claim by conducting "a seriatim examination of the
26   claims against each of five conspiracy defendants as if they were separate lawsuits"); *In re Cathode
     Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2010 U.S. Dist. LEXIS 98739, at *46 (N.D. Cal.
27   Mar. 30, 2010) ("Courts in this district do not require plaintiffs in complex, multinational, antitrust
     cases to plead detailed, defendant-by-defendant allegations"); *In re OSB Antitrust Litig.*, No. 06-
28   826, 2007 U.S. Dist. LEXIS 56573, at *13 (E.D. Pa. Aug. 3, 2007) ("Antitrust conspiracy
     allegations need not be detailed defendant by defendant.").

1  allegations that plausibly suggest that each Defendant participated in the alleged conspiracy."

2  *CRT*, 2010 U.S. Dist. LEXIS 98739, at *46.[16]  The Court should therefore view an antitrust

3  complaint as a whole, and Plaintiffs need only allege that each Defendant played a role in the

4  conspiracy.  Plaintiffs have done exactly this.

### 1. Hitachi, Samsung and Toshiba Facilitated the ODD Price-Fixing Conspiracy Using Patent Pools

Defendants Hitachi, Samsung and Toshiba played a key role in effectuating the ODD price-

fixing conspiracy.  Defendants structured patent pools to act as both a barrier to entry into the ODD

industry (thus protecting the price-fixing actions of certain defendants) and a device to monitor

cartel enforcement through the exchange of sensitive business information.  Three Defendants at

issue in this motion – Hitachi, Samsung and Toshiba – are patent pool members.  IPP-FAC,

¶¶ 155-56.

Defendants' patent pools create barriers to entry into the ODD industry, providing the

industry structure important to the success of the cartel's price-fixing scheme.  A patent pool is an

agreement between two or more patent owners to license one or more of their patents to one

another and/or third parties.  *Id.*, ¶ 146.  Whereas royalties for these patent pools were originally a

small portion of the price of an ODD, they have since grown to be the dominant cost (nearly 68

percent of the average selling price of a DVD recorder).  *Id.*, ¶¶ 145-46.  These prohibitive

royalties have prevented potential industry entrants from exerting downward pressure on the prices

fixed by the conspirators, and have sheltered Defendants from any external competitive challenge.

*Id.*, ¶ 145.

Further, because members of the patent pools (and their affiliates and subsidiaries) do not

appear to pay royalties to the pools, by virtue of their network of cross licenses, Defendants shelter

---

[16]  *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2009 U.S. Dist. LEXIS 17792, at *14 (N.D. Cal. Mar. 3, 2009) ("Although Plaintiffs will need to provide evidence of each Defendants' participation in any conspiracy, they now only need to make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy."); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008) (same); *OSB*, 2007 U.S. Dist. LEXIS 56573, at *12-*14 (plaintiffs satisfied post-*Twombly* pleading requirement where complaint contained only "one lone paragraph" that alleged that each named defendant joined the alleged overall price-fixing conspiracy and committed acts in furtherance of it).

each other – and their joint ventures – from competition by companies external to the pools.  *Id.*, ¶ 145.  Unsurprisingly, this structure, which Defendants constructed, has led to patent pool members controlling over 95 percent of global ODD sales in the first half of this decade.  *Id.*

Moreover, Defendants structured the patent pools in a unique manner – providing a vehicle to exchange unit and revenue information.  The ODD patent pools require licensees to report confidential business information, including the unit sales, net-sales prices, product categories, model numbers, and supplier and customer information.  *Id.*, ¶¶ 163-64, 166.  By having access to this sensitive business information, the six conspirator members of the patent pools are able to determine whether shifts in industry output and prices are being caused by non-conspirator licensees or whether such fluctuations are due to cartel members cheating on cartel agreements.  *Id.*, ¶ 162.  Defendants' conduct enables systemic access to information to facilitate and enforce the ODD cartel.  *Id.*, ¶ 146.  Moreover, each cartel member is aware that other cartel members have access to such information, which helps deter potential cheating on cartel agreements.

A highly significant feature of these patent pools is that the majority owner in each joint venture is a pool administrator.  *Id.*, ¶ 165.  This "self-policing" contrasts with every other patent pool scholars have examined, each of which have an ***independent or third-party administrator*** for the pool.  *Id.*, ¶ 168.  By granting pool members direct access to licensees' production and pricing information, the ODD patent pools allow conspirators to monitor external ODD sales and pricing, thereby facilitating a more effective price-fixing conspiracy.  *Id.*, ¶ 169.

While patent pools, in the abstract, may or may not have "pro-competitive benefits and efficiencies,"[17] Plaintiffs specifically allege additional facts demonstrating why the patent pools in this case have been used as "a mechanism to suppress competition," create barriers to entry and as a means to facilitate cartel enforcement.  IPP-FAC, ¶¶ 153, 162.  These unique factors are sufficient to demonstrate that Defendants Hitachi, Samsung and Toshiba played a role in the conspiracy.

---

[17]   Parent Defs.' Mot. to Dismiss at 21.

**2.      Hitachi Played a Role in the Conspiracy by Facilitating Conspiratorial Communications**

Hitachi directly participated in the price-fixing conspiracy by exchanging sensitive business information.  As alleged in the complaint, the ODD market is characterized by incestuous relationships between competitors and suppliers, facilitating the exchange of competitive information.  IPP-FAC, ¶ 112.  Hitachi was a major supplier of OPUs (known either as optical pickup units or optical processing units), and sold these parts to other manufacturers.  *Id.*, ¶ 114.  Hitachi's supply of these component parts to its competitors became an important channel for information exchange in furtherance of the conspiracy during the class period.  *Id.*  These allegations are a part of a larger description of the exchange of proprietary business information amongst competitors, through face-to-face meetings, telephone calls, personal relationships and manufacturing relationships.  *Id.*, ¶¶ 112-18, 124-130.  Information exchange is a critical component of any conspiracy, and courts recognize that where such information exchange is a part of a pattern of collusive behavior, it raises a plausible inference of a conspiracy.  *See Flash*, 643 F. Supp. 2d at 1143-44.

**3.      Hitachi, LG Electronics, Samsung and Toshiba's Participation in Trade Associations and Industry Events Show the Opportunity and Means to Develop the Conspiracy**

In addition to the above allegations regarding the channels through which Defendants exchanged sensitive business information, Plaintiffs plead in great detail the multitude of trade association and industry events Defendants Hitachi, LG Electronics, Samsung and Toshiba attended, including the Optical Storage Technology Association, the DVD Forum, the International Symposium of Optical Memory and the Blu-Ray Disc Association.  IPP-FAC, ¶¶ 170-200.  Plaintiffs detail the dates and locations of over 100 days of meetings attended by the Defendants.  *Id.*  Where possible, Plaintiffs identify individual employees of each Defendant who attended these meetings.  *Id.*, ¶¶ 172, 174, 176, 178, 193-97.  In one instance, Plaintiffs detail Toshiba's reaction to Sony's absence from a Steering Committee meeting of the DVD forum, and introduction of resolution that would have required Sony to withdraw as a Steering Committee member.

1   *Id.*, ¶ 183.  In reaction, Sony did not miss another Steering Committee meeting in the following

2   five years.  *Id.*

3        Although these activities alone do not demonstrate the existence of a conspiracy, "courts

4   have recognized that trade association affiliations and attendance at industry events may be alleged

5   to show that putative conspirators had the opportunity and means to develop and/or further their

6   alleged collusive scheme."  *Flash*, 643 F. Supp. 2d at 1148.[18]  And while "these allegations cannot

7   alone support Plaintiffs' claims, . . . such participation demonstrates how and when Defendants had

8   opportunities to exchange information or make agreements."  *SRAM*, 580 F. Supp. 2d at 903.

9       **4.**    **Hitachi, LG Electronics, Samsung and Toshiba Participated in Price-Fixing Conspiracies in Related Industries, Making the Existence of a Conspiracy Here More Plausible**

10

11        Plaintiffs also allege Defendants Hitachi, LG Electronics, Samsung and Toshiba were

12   participated in price-fixing conspiracies in related industries, including liquid crystal displays

13   (LCD), dynamic random access memory (DRAM) and cathode ray tubes (CRT).  IPP-FAC,

14   ¶¶ 257-276.  Evidence of Defendants' other price-fixing crimes are admissible pursuant to Federal

15   Rule of Evidence 404(b), as Defendants' past criminal acts tend to show a specific pattern of price-

16   fixing behavior and planning between Defendants repeated throughout very similar technology

17   industries, among repeat players in these industries.  IPP-FAC, ¶ 257.  Plaintiffs detail the

18   relationship between the corporations implicated in other price-fixing conspiracies and the

19   Defendants in this case.  *Id.*, ¶ 258.  While of course the existence of these related price-fixing

20   conspiracies alone does not prove a price-fixing conspiracy here, they tend to make the existence of

21   a conspiracy more likely, and hence more plausible.[19]

22

23       [18]  *See also Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir. 2001) ("the frequency of the meetings is itself problematic for the same reason that the exchange of current price data is suspect: It tends to facilitate the policing of price conspiracies").

24
25       [19]  *See United States v. Andreas*, 216 F.3d 645 (7th Cir. 2000) (recognizing that evidence concerning a prior conspiracy may be relevant and admissible to show the background and development of a current conspiracy"); *Flash*, 643 F. Supp. 2d at 1149 (recognizing that while the existence of a price-fixing conspiracy in a related industry may not "prove the existence of a conspiracy with respect to NAND flash memory, they are properly pleaded for the purpose of establishing the plausibility that such a conspiracy existed"); *SRAM*, 580 F. Supp. 2d at 903 ("[a]lthough the DRAM guilty pleas are not sufficient to support Plaintiffs' claims standing on their own, they do support an inference of a conspiracy in the SRAM industry").

26

27

28

1

### III.   CONCLUSION

2    For all the reasons stated above, Indirect Purchaser Plaintiffs respectfully request that this

3  Court deny the Co-Venturer Defendants' motion to dismiss the Indirect Purchaser Plaintiffs'

4  complaint.

5  DATED:  November 19, 2010                HAGENS BERMAN SOBOL SHAPIRO LLP

6

7                                             By _____/s/ Jeff D. Friedman_____
                                                       JEFF D. FRIEDMAN

8                                             Shana E. Scarlett (217895)
                                              715 Hearst Avenue, Suite 202
9                                             Berkeley, CA  94710
                                              Telephone: (510) 725-3000
10                                            Facsimile: (510) 725-3001
                                              jefff@hbsslaw.com
11                                            shanas@hbsslaw.com

12                                            Steve W. Berman (*Pro Hac Vice*)
                                              George W. Sampson (*Pro Hac Vice*)
13                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                              1918 Eighth Avenue, Suite 3300
14                                            Seattle, WA  98101
                                              Telephone: (206) 623-7292
15                                            Facsimile: (206) 623-0594
                                              steve@hbsslaw.com
16                                            george@hbsslaw.com

17                                            Interim Lead Counsel for Indirect
                                              Purchaser Plaintiffs

18
                                              Thomas V. Girardi (36603)
19                                            Stephen G. Larson (145225)
                                              Michael M. Kowsari (186899)
20                                            GIRARDI & KEESE
                                              1126 Wilshire Blvd.
21                                            Los Angeles, CA  90017
                                              Telephone: (213) 977-0211
22                                            Facsimile: (213) 481-1554
                                              tgirardi@girardikeese.com
23                                            slarson@girardikeese.com
                                              mkowsari@girardikeese.com

24

25

26

27

28

Charles E. Tompkins
Robert E. Ditzion
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA  02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ctompkins@shulaw.com
rditzion@shulaw.com

Steve D. Larson
Mark A. Friel
STOLL STOLL BERNE LOKTING
& SHLACHTER P.C.
209 Southwest Oak Street
Portland, OR  97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
slarson@stollberne.com
mfriel@stollberne.com

Additional Counsel for Indirect
Purchaser Plaintiffs

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on November 19, 2010, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-

4  mail addresses registered, as denoted on the attached Electronic Mail Notice List.  I hereby certify

5  that I have caused the foregoing document or paper to be mailed via United States Postal Service to

6  the non-CM/ECF participants indicated on the attached Manual Notice List.

7                                                    /s/ Jeff D. Friedman
                                                        JEFF D. FRIEDMAN
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 3:10-md-02143-RS

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lee Albert**
  lalbert@murrayfrank.com

- **Joseph M. Alioto , Sr**
  jmalioto@aliotolaw.com,esexton@aliotolaw.com

- **Mario N. Alioto**
  malioto@tatp.com

- **U.S. Department of J Antitrust Division**
  sidney.majalya@usdoj.gov

- **Arthur Nash Bailey , Jr**
  abailey@hausfeldllp.com

- **David H. Bamberger**
  david.bamberger@dlapiper.com,jessica.green-johnson@dlapiper.com

- **Brian Joseph Barry , Esq**
  bribarry1@yahoo.com

- **Steve W. Berman**
  steve@hbsslaw.com,robert@hbsslaw.com,heatherw@hbsslaw.com

- **John Dmitry Bogdanov**
  jdb@coopkirk.com

- **W. Joseph Bruckner**
  wjbruckner@locklaw.com,sipeem@locklaw.com,pottehn@locklaw.com

- **Cullen Byrne**
  whparish@parishsmall.com

- **Deana Louise Cairo**
  deana.cairo@dlapiper.com

- **William G. Caldes**
  bcaldes@srkw-law.com

- **Henry A. Cirillo**
  hcirillo@steyerlaw.com,lrorem@steyerlaw.com

- **Craig C. Corbitt**
  ccorbitt@zelle.com

- **Joseph W. Cotchett**
  jcotchett@cpmlegal.com

- **John F. Cove , Jr**
  jcove@bsfllp.com,dscott@bsfllp.com,brichardson@bsfllp.com,sphan@bsfllp.com,aloeb@bsfllp.com,vpooni@bsfllp.com,cduong@bsfllp.com,dnasca@bsfllp.com,jlipton@bsfllp.co

- **Michael E. Criden**
  meriden@cridenlove.com

- **Thad Alan Davis**
  Thad.Davis@ropesgray.com,michelle.visser@ropesgray.com,mark.popofsky@ropesgray.com,jane.willis@ropesgray.com,CourtAlert@RopesGray.com,rachel.rubenson@ropesgray.

- **Manuel Juan Dominguez**
  mdominguez@bermandevalerio.com,ecf@bermandevalerio.com,eavila@bermandevalerio.com

- **Mary Jane Edelstein Fait**
  fait@whafh.com,curro@whafh.com

- **Eric B. Fastiff**
  efastiff@lchb.com,aruiz@lchb.com,btroxel@lchb.com

- **Linda M. Fong**
  lfong@kaplanfox.com,kweiland@kaplanfox.com

- **Erin Gail Frazor**
  erin.frazor@dlapiper.com

- **Jeff D Friedman**
  jefff@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Mark A. Friel**
  mfriel@stollberne.com,dhaner@stollberne.com,slarson@stollberne.com

- **Qianwei Fu**
  qfu@zelle.com

- **Jeffrey B. Gittleman**
  jgittleman@barrack.com,rbranch@barrack.com

- **Brendan Patrick Glackin**
  bglackin@lchb.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com

- **Marc Jeffrey Greenspon**
  mgreenspon@bermandevalerio.com

- **Francis M. Gregorek**
  gregorek@whafh.com

- **Paul R. Griffin**
  pgriffin@winston.com,DocketSF@winston.com

- **Terry Gross**
  terry@gba-law.com,monique@gba-law.com,joann@grossbelsky.com,adam@gba-law.com

- **Laura Ann Guillen**
  lguillen@winston.com,lschuh@winston.com,RPringle@winston.com,JSwartz@winston.com,docketsf@winston.com,PGriffin@winston.com,ndelich@winston.com

- **Daniel E. Gustafson**
  dgustafson@gustafsongluek.com,sdensmore@gustafsongluek.com

- **Amy Harrington**
  amy@amyharringtonlaw.com

- **Casey Ann Hatton**
  chatton@wilkesmchugh.com

- **Michael D. Hausfeld**
  mhausfeldllp@hausfeldllp.com,firmfilings@hausfeldllp.com

- **Christopher T. Heffelfinger**
  cheffelfinger@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Christopher B. Hockett**
  chris.hockett@dpw.com,ecf.ct.papers@dpw.com,felicia.yu@davispolk.com

- **Steven Christopher Holtzman**
  sholtzman@bsfllp.com,jchavez@bsfllp.com,irivera@bsfllp.com,cseki@bsfllp.com,cduong@bsfllp.com,sphan@bsfllp.com

- **Derek G. Howard**
  dhoward@minamitamaki.com,muhl@minamitamaki.com,lbattista@minamitamaki.com,jlee@minamitamaki.com,byamauchi@minamitamaki.com,cparker@minamitamaki.com,sear

- **Patrick Howard**
  phoward@smbb.com,cdfonda@smbb.com

- **Matthew J. Jacobs**
  mjacobs@mwe.com,aleonetti@mwe.com

- **Lisa Marie Kaas**
  KaasL@dicksteinshapiro.com,AndersonP@dicksteinshapiro.com

- **Robert N. Kaplan**
  rkaplan@kaplanfox.com

- **Sherman Kassof**
  heevay@att.net,heevay@yahoo.com

- **Jeffrey L. Kessler**
  jkessler@dl.com,rskridul@dl.com,kcullen@dl.com,mlo@dewey.ballantine.com,courtalert@dl.com

- **Jason Kilene**
  jkilene@gustafsongluek.com

- **Laurence D. King**
  lking@kaplanfox.com,kweiland@kaplanfox.com

- **Andrew Scirica Kingsdale**
  akingsdale@lchb.com

- **Kimberly Ann Kralowec**
  kkralowec@kraloweclaw.com,ggray@kraloweclaw.com,enewman@kraloweclaw.com

- **James G. Kress**
  kressj@howrey.com

- **Lara Meredith Kroop**
  Lara.Kroop@usdoj.gov

- **Manish Kumar**
  manish.kumar@usdoj.gov

- **Susan Gilah Kupfer**

skupfer@glancylaw.com,jbarton@glancylaw.com,sfreception@glancylaw.com

- **Stephen Gerard Larson**
  slarson@girardikeese.com,shayesteh@girardikeese.com,tfaust@girardikeese.com

- **Andrew David Lazerow**
  lazerowa@howrey.com,bennettc@howrey.com,kellyj@howrey.com

- **Christopher L. Lebsock**
  clebsock@hausfeldllp.com,asandberg@hausfeldllp.com

- **Belinda S. Lee**
  Belinda.Lee@lw.com,#SFDocket@LW.com

- **Jack Wing Lee**
  jlee@MinamiTamaki.com,muhl@minamitamaki.com,lbattista@minamitamaki.com,pdomin@MinamiTamaki.com,cparker@MinamiTamaki.com,seant@MinamiTamaki.com

- **Michael Paul Lehmann**
  mlehmann@hausfeldllp.com

- **Aron K. Liang**
  aliang@cpmlegal.com,edetert@cpmlegal.com,oszeto@cpmlegal.com,jperez@cpmlegal.com

- **Alexis Jane Loeb**
  aloeb@bsfllp.com

- **Sarah Robin London**
  slondon@lchb.com

- **Kevin Bruce Love**
  klove@cridenlove.com

- **Sidney A. Majalya**
  sidney.majalya@usdoj.gov,liliana.vallejo@usdoj.gov

- **Pamela J. Marple**
  pmarple@mwe.com

- **Emily L. Maxwell , Esq**
  MaxwellE@howrey.com,jamesjimmy@howrey.com

- **Kevin C. McCann**
  kevinmccann@paulhastings.com,bellasatra@paulhastings.com,ingridholthuis@paulhastings.com,rebeccatorres@paulhastings.com,seanunger@paulhastings.com

- **Timothy Charles McHugh**
  timmchugh@wilkesmchugh.com

- **Brendan Andrew McShane**
  brendan.mcshane@lw.com,coleen.byrne@lw.com,#sfdocket@lw.com,gina.tercero@lw.com

- **Douglas A. Millen**
  doug@fklmlaw.com

- **Samuel R. Miller**
  srmiller@sidley.com,hebalogi@sidley.com

- **Theresa Driscoll Moore**
  TMoore@aliotolaw.com

- **Paolo Morante**
  paolo.morante@dlapiper.com,grissell.kessler@dlapiper.com

- **Gregg Aaron Myers**
  myersa@howrey.com,MarkowitzK@howrey.com,amyers777@yahoo.com

- **Elizabeth R. Odette**
  erodette@locklaw.com,jmware@locklaw.com

- **Steig David Olson**
  solson@hausfeldllp.com

- **Simon Bahne Paris**
  sparis@smbb.com,cdfonda@smbb.com,alafontaine@smbb.com

- **William Henry Parish**
  whparish@parishsmall.com,toup@parishsmall.com

- **Robert M. Partain**
  rpartain@oslaw.com,aowen@oslaw.com

- **Joseph Mario Patane**
  jpatane@tatp.com

- **Mark Samuel Popofsky**
  Mark.Popofsky@ropesgray.com

- **Robert Benard Pringle**
  rpringle@winston.com,jmlopez@winston.com

- **Elizabeth Cheryl Pritzker**
  ecp@girardgibbs.com,tie@girardgibbs.com,act@girardgibbs.com,smq@girardgibbs.com,amv@girardgibbs.com,ale@girardgibbs.com,cme@girardgibbs.com

- **Julio J Ramos**
  ramosfortrustee@yahoo.com

- **Beko Osiris Ra Reblitz-Richardson**
  brichardson@bsfllp.com

- **Rosemary M. Rivas**
  rrivas@finkelsteinthompson.com,srenwick@finkelsteinthompson.com,mpunzalan@finkelsteinthompson.com,arivas@finkelsteinthompson.com,ttien@finkelsteinthompson.com,jdit

- **Matthew W Ruan**
  mruan@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Lauren Clare Russell**
  laurenrussell@tatp.com

- **George W. Sampson**
  george@hbsslaw.com

- **Jennifer Sarnelli**
  jsarnelli@gardylaw.com

- **Guido Saveri**
  guido@saveri.com

- **Joseph Richard Saveri**
  jsaveri@lchb.com,dclevenger@lchb.com

- **Richard Alexander Saveri**
  rick@saveri.com

- **Shana E. Scarlett**
  shanas@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Francis Onofrei Scarpulla**
  fscarpulla@zelle.com,mdavis@zelle.com

- **Todd Anthony Seaver**
  tseaver@bermandevalerio.com

- **Craig P. Seebald**
  cseebald@mwe.com

- **Aaron M. Sheanin**
  ams@girardgibbs.com,ras@girardgibbs.com,amv@girardgibbs.com

- **Ian T Simmons**
  isimmons@omm.com,phein@omm.com

- **Bruce Lee Simon**
  bsimon@pswplaw.com,nhalpern@pswplaw.com,bpouya@pswplaw.com,yberry@pswplaw.com,dwarshaw@pswplaw.com,jwatkins@pswplaw.com,cpearson@pswplaw.com,eklisur

- **Joshua D. Snyder**
  jsnyder@bonizack.com

- **Sylvia M. Sokol**
  sokol@mesllp.com,omar@mesllp.com

- **Eugene A. Spector**
  espector@srkw-law.com

- **Jeffrey Lawrence Spector**
  jspector@srkw-law.com

- **Allan Steyer**
  asteyer@steyerlaw.com,lrorem@steyerlaw.com,behrhart@steyerlaw.com

- **Jonathan Edward Swartz**
  jswartz@winston.com,pstruble@winston.com,DocketSF@winston.com,ndelich@winston.com

- **Neil Swartzberg**
  nswartzberg@cpmlegal.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,lcuesta@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Casandra Leann Thomson**
  casandra.thomson@lw.com

- **Charles E. Tompkins**
  ctompkins@shulaw.com,jhaney@shulaw.com

- **Clinton Paul Walker**
  cwalker@damrell.com,nweston-dawkes@damrell.com,ewelsch@damrell.com

- **Daniel Murray Wall**

dan.wall@lw.com,#sfdocket@lw.com

- **Lawrence Walner**
  walner@walnerlawfirm.com

- **Matthew McDonnell Walsh**
  mwalsh@dl.com,courtalert@dl.com

- **Ernest Warren**
  walwar@qwestoffice.net

- **Sandra D West**
  swest@dpw.com

- **Jonathan Whitcomb**
  JWhitcomb@dmoc.com

- **James Lewis Wilkes**
  jwilkes@wilkesmchugh.com

- **Steven Noel Williams**
  swilliams@cpmlegal.com,jverducci@cpmlegal.com,cwalker@cpmlegal.com,rjit@cpmlegal.com,aliang@cpmlegal.com,medling@cpmlegal.com,pmenzel@cpmlegal.com,lclark@cp

- **Jane E. Willis**
  Jane.Willis@ropesgray.com

- **Lingel Hart Winters**
  sawmill2@aol.com

- **Brad Yamauchi**
  byamauchi@MinamiTamaki.com,muhl@minamitamaki.com,lbattista@minamitamaki.com,pdomin@MinamiTamaki.com,cparker@MinamiTamaki.com,dhoward@minamitamaki.c

- **Cadio R. Zirpoli**
  zirpoli@saveri.com

- **Jason Allen Zweig**
  jzweig@kaplanfox.com,rkilsheimer@kaplanfox.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Daniel Bushell
Berman DeValerio
4280 Professional Center Drive, Ste 350
Palm Beach Gardens, FL 33410

Adam J. Levitt
Wolf Haldenstein Adler Freeman Herz LLC
55 West Monroe Street, Ste 1111
Chicago, IL 60661

Michael D Yanovsky
Wolf Haldenstein Adler Freeman Herz LLC
55 West Monroe Street, Ste 1111
Chicago, IL 60603
```