1  LATHAM & WATKINS LLP
       Daniel M. Wall (Bar No. 102580)
2      Belinda S Lee (Bar No. 199635)
       Brendan A. McShane (Bar No. 227501)
3      Connie D. Sardo (Bar No. 253892)
   505 Montgomery Street, Suite 2000
4  San Francisco, California 94111-6538
   Telephone:    +1.415.391.0600
5  Facsimile:    +1.415.395.8095

6  Attorneys for Defendants
   Toshiba Corporation; Toshiba Samsung Storage
7  Technology Corporation; and Toshiba Samsung
   Storage Technology Korea Corporation
8
   [*Additional Moving Defendants and Counsel Listed*
9  *on Signature Page*]

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13

14                                    |  CASE NO. 3:10-MD-02143 RS

15                                    |  MDL NO. 2143
   IN RE OPTICAL DISK DRIVE
16 ANTITRUST LITIGATION              |  **DEFENDANTS' REPLY MEMORANDUM
                                         IN SUPPORT OF MOTION TO DISMISS
17 _____    INDIRECT PURCHASER PLAINTIFFS'
                                         FIRST AMENDED CLASS ACTION
18 This document relates to:            COMPLAINT**

19 INDIRECT PURCHASER ACTIONS         |  **ORAL ARGUMENT REQUESTED**

20                                    |  Date:      January 20, 2011
                                         Time:      1:30 p.m.
21                                       Judge:     The Honorable Richard Seeborg
                                         Location:  Courtroom 3, 17th Floor
22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

# TABLE OF CONTENTS

**Page**

I. PLAINTIFFS HAVE NOT PLEADED AN INDUSTRY-WIDE CONSPIRACY .................................................................................. 1

    A. The Electronic Auction Allegations Do Not Support Indirect Purchasers' Claim Of An Industry-Wide ODD Conspiracy. ........................ 1

    B. Indirect Purchasers' Circumstantial Case Fails To Plead An Industry-Wide ODD Conspiracy. ............................................... 3

II. INDIRECT PURCHASERS LACK ARTICLE III STANDING IN STATES WHERE NO NAMED PLAINTIFF RESIDES OR MADE ANY PURCHASES ............................................................................ 4

III. INDIRECT PURCHASERS LACK STANDING UNDER *AGC* .................... 5

    A. Eleven (11) States Expressly Follow *AGC* And There Is Strong Authority For Applying *AGC* In Another Seven (7) States With Harmonization Statutes. ........................................................ 5

IV. PLAINTIFFS CANNOT EVADE THE FTAIA'S JURISDICTIONAL BAR ....................................................................................... 6

V. INDIRECT PURCHASERS' ATTEMPT TO IMPOSE CALIFORNIA STATE LAW ON A PUTATIVE NATIONWIDE CLASS IS UNCONSTITUTIONAL ............................................................... 8

VI. MANY INDIVIDUAL STATE LAW CLAIMS ARE ADDITIONALLY FLAWED ................................................................................ 10

    A. Indirect Purchasers Fail To Plead A Sufficient "Nexus" Or "Substantial Effect" On *Intra*state Commerce. ............................. 10

    B. No Retroactive Application Of State *Illinois Brick* Repealer Statutes. ...................................................................... 11

    C. Failure To Serve Utah Attorney General. .............................. 12

    D. Indirect Purchasers Do Not Meet The Heightened Pleading Standard For Their Florida Consumer Protection Claim. ............... 12

    E. Failure To Plead Misrepresentations That Were Directed At Consumers And Materially Deceptive (New York Consumer Protection Claim). ............................................................ 13

    F. No Class Actions (South Carolina Consumer Protection Claim). ...... 14

VII. CONCLUSION .................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

**CASES**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ................................................................................................ 11

*Associated General Contractors of California, Inc. v. California State Council of
Carpenters,* 459 U.S. 519 (1983) ...........................................................................*passim*

*Bearden v. Honeywell Int'l, Inc.,*
No. 3:09-1035, 2010 U.S. Dist. LEXIS 83996 (M.D. Tenn. Aug. 16, 2010) ...................... 15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................*passim*

*F. Hoffmann-La Roche Ltd. v. Empagran,*
542 U.S. 155 (2004) .......................................................................................................... 7

*Freeman Indus. LLC v. Eastman Chem. Co.,*
172 S.W.3d 512 (Tenn. 2005) ......................................................................................... 10

*Golden Bridge Tech., Inc. v. Motorola, Inc.,*
547 F.3d 266 (5th Cir. 2008) ............................................................................................ 4

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
492 U.S. 229 (1989) ...................................................................................................... 1, 2

*Hartford Fire Ins. Co. v. California,*
509 U.S. 764 (1993) .......................................................................................................... 7

*In re Auto. Refinishing Paint Antitrust Litig.,*
515 F. Supp. 2d 544 (E.D. Pa. 2007) .............................................................................. 13

*In re Chocolate Confectionary Antitrust Litig.,*
602 F. Supp. 2d 538 (M.D. Pa. 2009) ............................................................................. 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................................... 10

*In re Flash Memory Antitrust Litig.,*
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....................................................................... 5, 14

*In re Graphics Processing Units Antitrust Litig.,*
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................................. 1

*In re Graphics Processing Units Antitrust Litig.,*
540 F. Supp. 2d 1085 (N.D. Cal. 2007) ........................................................................... 10

*In re Intel Corp. Microprocessor Antitrust Litig.,*
452 F. Supp. 2d 555 (D. Del. 2006) .................................................................................. 8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  476 F. Supp. 2d 452 (D. Del. 2007)................................................................7, 8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  496 F. Supp. 2d 404 (D. Del. 2007)................................................................10

*In re K-Dur Antitrust Litig.*,
  Civil Action No. 01-1652 (JAG), 2008 WL 2660782 (D.N.J. March 10, 2008)................14

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  350 F. Supp. 2d 160 (D. Me. 2004) ................................................................14

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009) ................................................................5, 13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. M 07-1827 SI, 2010 WL 2610641 (N.D. Cal. June 28, 2010)................................6

*In re Urethane Antitrust Litig.*,
  663 F. Supp. 2d 1067 (D. Kan. 2009) ................................................................11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010)................15

*Japan Line Ltd. v. County of Los Angeles*,
  441 U.S. 434 (1979)................................................................7

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000) ................................................................13

*Leider v. Ralfe*,
  387 F. Supp. 2d 283 (S.D.N.Y. 2005)................................................................14

*Lovinger v. Lane County*,
  138 P.3d 51 (Or. Ct. App. 2006)................................................................12

*McKinney v. Bayer Corp.*,
  No. 10-CV-224, 2010 U.S. Dist. LEXIS 103516 (N.D. Ohio Sept. 30, 2010)................15

*Medison Am., Inc. v. Preferred Med. Sys., LLC*,
  548 F. Supp. 2d 567 (W.D. Tenn. 2007)................................................................10

*Meyers v. Bayer AG*,
  735 N.W.2d 448 (Wis. 2007)................................................................11

*Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*,
  657 F. Supp. 2d 1279 (M.D. Fla. 2009) ................................................................13

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

*Pecover v. Elec. Arts Inc.*,
    633 F. Supp. 2d 976 (N.D. Cal. 2009) ..................................................................... 5

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................ 8, 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    130 S. Ct. 1431 (2010) ............................................................................................... 15

*Siever v. BW Gaskets, Inc.*,
    No. 6:08-cv-1388-Orl-19GJK, 2009 U.S. Dist. LEXIS 20691 (M.D. Fla. Mar.
    2, 2009) ..................................................................................................................... 13

*U.S. Phillips Corp. v. Int'l Trade Comm'n*,
    424 F.3d 1179 (Fed. Cir. 2005) ................................................................................... 3

*United Phosphorus, Ltd. v. Angus Chemical Co.*,
    131 F. Supp. 2d 1003 (N.D. Ill. 2001) ......................................................................... 7

*Vacco v. Microsoft Corp.*,
    793 A.2d 1048 (Conn. 2002) ........................................................................................ 9

*WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*,
    No. 8:07-cv-2093-JDW-MSS, 2008 U.S. Dist. LEXIS 61428 (M.D. Fla. Aug.
    4, 2008) ..................................................................................................................... 12

## STATUTES

N.Y. Gen. Bus. Law § 349 ............................................................................................... 13, 14

Or. Rev. Stat. § 646.780 .......................................................................................................... 11

Or. Rev. Stat. § 646.800(2) ...................................................................................................... 12

S.C. Code Ann. § 39-5-140(a) .................................................................................................. 14

Utah Code Ann. § 76-10-919(9) ............................................................................................... 12

## OTHER AUTHORITIES

H.B. 2584, 75th Leg., Reg. Sess. (Or. 2009) .......................................................................... 11

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

Defendants respectfully submit this Reply Memorandum in support of their Motion to Dismiss Indirect Purchasers' First Amended Complaint ("MTD IP-FAC").

## I.    PLAINTIFFS HAVE NOT PLEADED AN INDUSTRY-WIDE CONSPIRACY

Indirect Purchasers refuse to allege a case solely on behalf of those who purchased products containing the ODDs that Dell and H-P purchased subsequent to three discrete "electronic auctions." That is understandable since they do not represent any such plaintiff. But Indirect Purchasers have not properly pleaded the single, broader conspiracy case they want.

### A.    The Electronic Auction Allegations Do Not Support Indirect Purchasers' Claim Of An Industry-Wide ODD Conspiracy.

A plaintiff must sufficiently allege the case it wants to pursue. If a plaintiff wants the court to entertain a case about narrow and specific conduct, a narrow pleading may suffice. But the same narrow pleading, with allegations of isolated events, will not suffice if the plaintiff is trying to pursue a broader case about a pattern of interrelated conduct. The law does not presume just because a plaintiff says so that discrete events are part of a much larger pattern. *See, e.g., H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-40 (1989) (pleading RICO "pattern of racketeering activity" requires allegations that predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events") (citations omitted).

Here, Indirect Purchasers have written a complaint that in essence has two parts: (1) a few pages alleging facts about three discrete Dell and H-P "e-auctions" in August 2006, December 2008 and February 2009, and (2) a much larger, entirely conclusory set of allegations about a supposedly industry-wide conspiracy lasting many years. The latter is based on trade association meetings, patent pools, standard setting, joint ventures and supposedly "unnatural" price trends—the same stock story that courts have held deficient to allege a conspiracy. *E.g., In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) ("*GPU I*").

Indirect Purchasers' primary argument is that the Court should let the larger case go forward by accepting their claim that the three alleged incidents involving Dell and H-P constitute

"*specific representative agreements*," (Indirect Purchaser Opposition Brief ("IP Opp.") at 1 (emphasis in original)), *i.e.*, that they illustrate and validate the much larger scope of this case. The allegations in the complaint regarding the Dell and H-P e-auctions, however, are not logically or plausibly probative of the conspiracy Plaintiffs put forward, which allegedly was aimed at increasing the price of all "ODD Finished Products" over a much longer period of time. Thus, the allegations concerning three Dell and H-P e-auctions do not validate *this complaint*, where:

- *The Plaintiff class* is not confined to Dell and H-P computer buyers or indirect purchasers of ODDs, but encompasses anyone who bought anything from anyone that embedded an ODD into their products;

- *The product scope* is not confined to the PCs and Laptops implicated by the three e-auctions, but includes game consoles, CD players, DVD players and other devices; and

- *The Defendants* are not confined to those who allegedly participated in these three e-auctions, but include companies that took no part in them.

These are fundamental issues that go to the identity of plaintiffs (who can sue), the identity of defendants (who can be sued), and the products at issue (sued about what?). *Ipse dixit* cannot tie everything together. The logical and factual connection between the three alleged instances of bid-rigging and the rest of the complaint must be pleaded. *Northwestern Bell Tel. Co.*, 492 U.S. at 239-40.

Indirect Purchasers argue that under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), their specific allegations, regardless how narrow, insulate the conclusory allegations of a lengthy industry-wide conspiracy from further scrutiny. In essence they are saying that the Court must accept their assertion that the e-auction allegations are "representative" of something much broader. No authority is cited for this other than *Twombly* itself, but that case hardly helps Indirect Purchasers. First, when the Supreme Court said in *Twombly* that there must be "enough factual matter (taken as true) to suggest that an agreement was made," *id.* at 556, it did not mean *any* agreement but rather, obviously, the particular agreement pleaded. So here, where Indirect Purchasers insist on alleging the broadest possible agreement, they must allege enough factual matter to suggest that an agreement *of that scope and duration* was indeed made. The complaint

contains no such factual allegations. Second, the Supreme Court's point in *Twombly* was that slapping the conclusory label of "conspiracy" on parallel conduct should not suffice to state a Section 1 claim. *Id.* at 555-57. It makes no sense to suggest that the same Court would be perfectly sanguine about expanding the scope of a conspiracy claim in exactly the same way, by slapping the terms "industry-wide" or "six-year" conspiracy on what, as alleged, is narrow and targeted behavior.[1]

Defendants are not saying that a substantial conspiracy cannot in the right circumstances be inferred from discrete incidents. However, the connection has to be pleaded, and under *Twombly*, the allegations must plausibly indicate the connection. Here, the narrow specifics pleaded are so different in scope and kind from the balance of the complaint that they impeach rather than validate the claim of an omnibus conspiracy. So long as Indirect Purchasers are intent on pursuing the broader mega-case, this is insufficient.

## B.  Indirect Purchasers' Circumstantial Case Fails To Plead An Industry-Wide ODD Conspiracy.

On its own, Indirect Purchasers' circumstantial case—the allegations about patent pools, industry meetings, "unnatural" price trends and so forth—amounts to the claim that an industry-wide ODD conspiracy is "plausible" in the sense that it *could happen*. (IP Opp. at 4-8.) This argument confuses "plausible" with "possible" and thereby runs directly against the holding of *Twombly*. *Twombly* requires "plausible grounds to infer an agreement," 550 U.S. at 556, which means grounds to believe that the "plausible" conspiracy actually materialized. Indirect Purchasers argue next to nothing on this key point.

Indirect Purchasers spend most of their brief arguing that patent pools make conspiracy plausible. (IP Opp. at 4-6.) This proves Defendants' point. Patent pools are ubiquitous in high-tech industries and their procompetitive potential is well-recognized by courts. *U.S. Phillips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1192 (Fed. Cir. 2005). Nevertheless, Indirect

---

[1] Even if Plaintiffs had confined the conspiracy alleged to the three bids, their claims would still fail for, among other things, a lack of standing. This is addressed below.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

Purchasers would infer the most pernicious of all antitrust offenses from participation in patent pools—and on an industry-wide scale to boot. There is no legal basis for that. Perhaps in some circumstances patent pools, by bringing industry participants together, may provide a potential forum for collusion and generate information that could facilitate collusion, and thus make a conspiracy "possible" in some sense. But that comes nowhere close to a basis for inferring industry-wide collusion in this or any other particular case. *See Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 273 (5th Cir. 2008) (informal communications among participants in industry standard-setting could not be used to infer unlawful conspiracy; "[t]o hold otherwise would stifle the beneficial functions of such organizations").

Indirect Purchasers also argue that price-trend allegations reasonably support an inference of conspiracy. (IP Opp. at 6-8.) In a sleight of hand, Indirect Purchasers try to make this a contest of factual inferences, glossing over the question of under what conditions this kind of evidence is sufficient to validate a claim of industry-wide conspiracy. The primary case Indirect Purchasers cite, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ("*LCD I*"), relied on a combination of pricing evidence and overt invitations and acknowledgements of coordinated capacity reductions. *See id.* at 1116 ("[T]he complaint also alleges specific instances of invitations to agree and subsequent agreements."). Nothing like that is found in the complaint here—even though the pricing allegations are nearly verbatim copies of the *LCD* complaints.

Finally, it makes no difference that Indirect Purchasers' circumstantial case is longer and more detailed than the Direct Purchasers' allegations. (IP Opp. at 8-9.) That may be a matter of pride to Indirect Purchasers, but there are no points for a longer version of a deficient story.

## II.   INDIRECT PURCHASERS LACK ARTICLE III STANDING IN STATES WHERE NO NAMED PLAINTIFF RESIDES OR MADE ANY PURCHASES

No Indirect Purchaser Plaintiff either resides in or is alleged to have indirectly purchased an ODD Product while residing in the District of Columbia, Hawaii, Nebraska, New Hampshire or North Dakota. (*See* IP-FAC.) Indirect Purchasers nevertheless claim standing on behalf of residents of these states, arguing there is no "residency requirement" under Article III or the states' statutory schemes. (IP Opp. at 33.) Their argument entirely ignores the authorities cited in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

Defendants' opening papers, which instruct that dismissal of state claims is appropriate where no named plaintiff resides or is alleged to have purchased the offending product in that state. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("*Flash*") ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal") (emphasis in original);[2] *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009) ("Indirect Purchaser Plaintiffs fail to satisfy their burden of showing Article III standing for states where they do not reside."); *accord Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009). It is apparent that Indirect Purchasers have no substantive argument for establishing standing and dismissal of these state claims is appropriate.

## III.    INDIRECT PURCHASERS LACK STANDING UNDER *AGC*

Indirect Purchasers did not purchase ODDs indirectly from Defendants. Instead, they purchased a variety of unidentified consumer electronic products that included an allegedly price-fixed ODD as one of hundreds of other components in those products. Accordingly, any alleged injury is too speculative and remote to justify proceeding with this action.

### A.    Eleven (11) States Expressly Follow *AGC* And There Is Strong Authority For Applying *AGC* In Another Seven (7) States With Harmonization Statutes.

California, the District of Columbia, Iowa, Kansas, Maine, Michigan, Nebraska, New York, North Dakota, Vermont and Wisconsin expressly follow *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). (MTD IP-FAC at 15-16, n.19, 20.) Additionally, there is strong persuasive authority (federal courts interpreting state antitrust laws based on state-federal harmonization statutes) to apply *AGC* to Arizona, Mississippi, Nevada, New Mexico, South Dakota, Utah and West Virginia state law claims. (*Id.* at 16, n.21.) Tellingly, Indirect Purchasers do not dispute any of this case law. Instead, they try to distract with sarcasm and the disingenuous claim that they do not understand what claims Defendants seek to dismiss for lack of antitrust standing. (IP Opp. at 10.) Without a

---

[2]    Indeed, the *Flash* court found that plaintiffs lacked standing with respect to three states at issue here—Hawaii, Nebraska and New Hampshire.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

1    substantive response to Defendants' motion, Indirect Purchasers have no basis for asserting

2    standing under these 18 states' laws.

3         Indirect Purchasers claim that applying *AGC*—even to those states that have expressly

4    adopted *AGC* or have adopted state-federal harmonization statutes—would undo the effect of the

5    states' *Illinois Brick* repealer statutes. In the same vein they claim that so long as they can plead

6    a convincing "pass-through" case, *AGC* cannot be a bar. No authority is cited for either

7    proposition; nor does any exist. This is because *AGC* and *Illinois Brick* reflect two separate

8    doctrines. The remoteness concept that animates *AGC* is broader and about more than just the

9    pass-through issues addressed by *Illinois Brick*. If Indirect Purchasers' co-extensive reading of

10   these two cases were correct, there would have been no need for the Supreme Court to articulate

11   the *AGC* doctrine six years after its *Illinois Brick* decision. *AGC* embodies prudential concerns

12   that govern who has standing to sue, such as the existence of better or more appropriate plaintiffs

13   and the potential social consequences of certain claims. *AGC*, 459 U.S. at 541-42. None of

14   these standing issues are addressed by economic allegations of pass-through.

15        For the sake of efficiency, Defendants cross-refer and do not repeat the discussion in their

16   companion brief addressing *AGC*'s multi-factor test. (Direct Purchaser Reply Brief ("DP

17   Reply") at Section III.B.) The Court should dismiss Indirect Purchasers' component-based

18   claims for lack of antitrust injury under *AGC*.

19   **IV.    PLAINTIFFS CANNOT EVADE THE FTAIA'S JURISDICTIONAL BAR**

20        Indirect Purchasers' contention that the FTAIA does not bar their claims, (IP Opp. 23-

21   28), fails for the same reason as the Direct Purchasers' similar arguments, (*see* DP Reply at

22   Section IV). The additional points Indirect Purchasers advance fare no better.

23        Indirect Purchasers wrongly argue that the FTAIA's "import commerce" exception applies

24   because of an alleged "purpose" to affect imports. (IP Opp. at 23-25.) As explained in *In re TFT-

25   LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 WL 2610641, at *5 (N.D. Cal. June

26   28, 2010) ("*LCD II*"), when, as here, the alleged conspiracy does not involve instrumentality of

27   commerce, the "import" exception requires the actual importation of price-fixed products.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

Because the IP-FAC does not plausibly allege a conspiracy extending to **any** imported product—ODDs or Finished ODD Products—the "import" proviso cannot save the deficient complaint.[3]

Indirect Purchasers' argument that they meet the FTAIA's requirement of direct, substantial, and reasonably foreseeable effects on United States commerce hinges on the sufficiency of their conspiracy allegations extending to Finished ODD Products. Like the Direct Purchasers, this argument fails for a variety of reasons. (*See* DP Reply at Section IV.) *First*, the IP-FAC does not sufficiently allege a conspiracy extending to Finished ODD Products. *Second*, insofar as the Indirect Purchasers assert claims based on the incorporation abroad of ODDs into Finished ODD Products which are later imported into the United States, any effect is indirect as a matter of law under *United Phosphorus, Ltd. v. Angus Chemical Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001). (*See* MTD IP-FAC at 23.) Thus, at a minimum, this Court should rule that the FTAIA bars Indirect Purchasers' claims to the extent they are based on foreign procurement of allegedly price-fixed ODDs that are later sold into the U.S., either alone or as part of Finished ODD Products. *Third*, with respect to ODDs shipped on a stand-alone basis into the U.S., no substantial direct effect is alleged from the three isolated bid rigging incidents Indirect Purchasers identify. Although the OEMs involved might account as a whole for 40% of U.S. computer sales (IP Opp. at 25), there is no allegation that the three incidents affected **any** U.S. sales.

Indirect Purchasers' separate argument that state antitrust laws may validly have a broader territorial scope than the FTAIA permits is specious. (IP Opp. at 27-28.) The FTAIA's limitations reflect prescriptive comity, meaning a decision by Congress to refrain from applying this Nation's laws to conduct other countries' laws might reach. *See F. Hoffmann-La Roche Ltd. v. Empagran*, 542 U.S. 155, 164-69 (2004). Indirect Purchasers concede that the Foreign Commerce Clause cabins state laws that "'impair federal uniformity.'" (IP Opp. at 27 (quoting *Japan Line Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 (1979)).) As *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) ("*Intel II*"), teaches,

---

[3] *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 n.23 (1993), invoked by Indirect Purchasers, expressly declined to grapple with the FTAIA and is accordingly inapposite.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Congress' will "would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not." The nationality of the *Intel* plaintiffs, the only basis advanced for distinguishing *Intel II*, (IP Opp. at 28), is a distinction without difference. "Whether plaintiffs are United States citizens is irrelevant to our inquiry." *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006) ("*Intel I*") (internal quotations omitted).

## V. INDIRECT PURCHASERS' ATTEMPT TO IMPOSE CALIFORNIA STATE LAW ON A PUTATIVE NATIONWIDE CLASS IS UNCONSTITUTIONAL

Ironically, after wrongly[4] accusing Defendants of trying to ignore individual state laws, Indirect Purchasers ask the Court to ignore those states that have affirmatively chosen ***not*** to repeal *Illinois Brick*. They do so by asking that California law be applied to everyone. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), does not allow this, and to the contrary compels this Court to dismiss Indirect Purchasers' second and third causes of action.

Indirect Purchasers want this Court to ignore *Shutts*' first inquiry of whether there are serious conflicts of law. *See id.* at 816 ("We must first determine whether Kansas law conflicts in any material way with any other law which could apply."). The reason is clear: there are significant and undeniable conflicts between various state antitrust and consumer protection laws—including the fundamental question of whether an indirect purchaser may even assert a cause of action. Even beyond the repealer versus non-repealer conflict that Indirect Purchasers acknowledge, there are significant conflicts amongst states which do allow indirect purchaser claims, including limitations on who can sue (private plaintiffs or just the Attorney General) and limitations to available relief (just restitution or injunctive relief). These are far more significant than the conflict in *Shutts* (a million dollar difference in liability caused by a conflict in state laws regarding applicable interest rates) that the Supreme Court found sufficient to render unconstitutional an attempt to apply Kansas law to a nationwide class. *Shutts*, 472 U.S. at 818.

---

[4] As discussed in Section III, far from overriding state laws, Defendants simply seek to follow the express instructions of the state courts and state harmonization statutes that apply *AGC* to assess antitrust standing under their respective state laws.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

*Shutts*' second factor is whether there are sufficient significant contacts with California that create "state interests" such that applying California law would not be arbitrary or unfair. Indirect Purchasers first attempt to assert the inverse—that non-repealer states do not have a significant interest in limiting liability for Defendants. (IP Opp. at 28-30.) But limiting liability is precisely the decision those states made in choosing not to repeal *Illinois Brick* and to refuse an indirect purchaser cause of action. *See, e.g.*, *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1059-60 (Conn. 2002) (noting that Connecticut's legislature had voted at least seven times against adopting an *Illinois Brick* repealer statute, which evidenced the legislature's intent to preclude indirect purchaser causes of action).

Next, Indirect Purchasers argue that "Defendants do not establish (or even offer) a significant interest that non-repealer states have in applying their laws **to the parties here**." (IP Opp. at 30 (emphasis in original).) This misconstrues the applicable burden. Defendants are not trying to apply a different state's law on a nationwide basis and so bear no burden here. Rather, it is Indirect Purchasers who seek to apply California law to a nationwide class and, thus, they are the ones who bear the burden of establishing an interest by California so great that it should override the interests of 49 other states. While Indirect Purchasers cleverly focus only on how California law can provide punishment and recovery that is otherwise unavailable for claimants in non-repealer states, a nationwide class based on California law shortchanges absent class members from states which provide for more aggressive recovery than California.

Finally, Indirect Purchasers argue that it is not unfair or arbitrary to apply California law because four of the 22 Defendants are headquartered in California and the supposed conspiracy allegedly occurred in and targeted a California resident (H-P). That is not a basis for applying California law to claimants outside California. *See Shutts*, 472 U.S. at 819-21 (applying Kansas law to nationwide class was unconstitutional even when defendant owned and conducted substantial business in Kansas and hundreds of Kansans were affected by the conduct at issue).[5]

---

[5] Indirect Purchasers miscite Defendants' Motion and decry Defendants for wrongly claiming that each putative class member must demonstrate sufficient contacts with California. (IP Opp. at 32.) Defendants' Motion plainly states that each class member "must demonstrate

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

## VI. MANY INDIVIDUAL STATE LAW CLAIMS ARE ADDITIONALLY FLAWED

### A. Indirect Purchasers Fail To Plead A Sufficient "Nexus" Or "Substantial Effect" On *Intra*state Commerce.

Throughout their Opposition, Indirect Purchasers ignore the limitations that states have chosen to place on their own laws. Their request that this Court read away nine states' statutory requirement of *intra*state commerce is just another example of that.

In South Dakota, their own cases demonstrate that the antitrust "statute is ambiguous regarding whether part of the conspiracy or part of the trade or commerce must be within the state," *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 414 (D. Del. 2007) ("*Intel III*"), and that, even with sufficient trade and commerce allegations, defendants must have sold the price-fixed product within the state. *See In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1099 (N.D. Cal. 2007) ("*GPU II*"); *see also In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 581 n.53 (M.D. Pa. 2009) (relying in part on in-state sales to distinguish *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ("*DRAM I*")). Tennessee law also rebuts Indirect Purchasers' claim that they only need to allege artificially inflated prices to satisfy Tennessee's "substantial effects" test. *See Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (finding "bare allegation[s]" that anticompetitive conduct resulted in Tennessee consumers paying higher prices to be insufficient); *see also Medison Am., Inc. v. Preferred Med. Sys., LLC*, 548 F. Supp. 2d 567, 585 (W.D. Tenn. 2007), *aff'd*, 357 Fed. Appx. 656 (6th Cir. 2009) ("Bare allegations that prices were raised as a result of conduct is insufficient to establish that Tennessee commerce was substantially affected."). Indirect Purchasers' only authority was not decided by a Tennessee court and pre-dated the Tennessee Supreme Court's *Freeman* decision. (IP Opp. at 36, n.61.)

Likewise, Indirect Purchasers' allegations of impact in Wisconsin are too conclusory to suggest a substantial effect in Wisconsin. In *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d

*their claims* have sufficient contacts with California before California law can be invoked" and analyzes the IP-FAC on those grounds. (MTD IP-FAC at 25 (emphasis added).)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

1067, 1083-84 (D. Kan. 2009), the complaints alleged that plaintiffs "are located in or have a facility in Wisconsin," that they purchased products from defendants for use in Wisconsin, and that defendants "shipped millions of dollars of products into Wisconsin." Following the ruling in *Meyers v. Bayer AG*, 735 N.W.2d 448 (Wis. 2007), however, the court gave "no weight to plaintiffs' recitation of the *Olstad* standard in the complaint" and stated that "plaintiffs' nonconclusory factual allegations do not demonstrate a substantial effect on Wisconsin commerce generally." *Urethane* at 1084 (citations omitted). Accordingly, the court granted defendants' motion to dismiss the claims by Wisconsin plaintiffs. *Id.* at 1085.

Finally, even if you credit Plaintiffs' attempt to do away with these states' intrastate commerce requirement and accept the argument that they need only plead an effect on commerce generally in those states, Indirect Purchasers have not met that burden. Intentionally silent, the IP-FAC does not allege where **any** of the Plaintiffs purchased their ODD Products, let alone that the applicable Plaintiffs made their purchases in these nine states. They make no well-pled factual allegations demonstrating the "nexus" or "substantial effect" this alleged conspiracy has had in each of these states, and their conclusory allegations (repeated verbatim for each state) are insufficient under *Twombly* and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

**B.     No Retroactive Application Of State *Illinois Brick* Repealer Statutes.**

Indirect Purchasers concede that the *Illinois Brick* repealer statutes in New Hampshire and Utah cannot be applied retroactively and, therefore, their claims under New Hampshire and Utah antitrust laws must be limited to claims since January 1, 2008 and May 1, 2006, respectively. (IP Opp. at 36-37.)

With respect to Oregon, Indirect Purchasers offer only their own speculation about the legislature's intent. Oregon passed its *Illinois Brick* repealer statute in 2009, which amended Oregon Revised Statute section 646.780 to permit indirect purchaser standing as of January 1, 2010. *See* H.B. 2584, 75th Leg., Reg. Sess. (Or. 2009). Indirect Purchasers point to language in section 2 of that bill which provides that section 1 applies to "actions commenced on or after the effective date of this 2009 Act," and then argue that the legislature must have meant to allow indirect claims which *accrued prior* to that time. (IP Opp. at 36.) They cite no statutory

language or legislative history, however, showing an intent to allow retroactive application. Indirect Purchasers' speculation is insufficient to rebut the presumption against retroactive application.[6] *See Lovinger v. Lane County*, 138 P.3d 51, 56-57 (Or. Ct. App. 2006) ("Whether a statute applies prospectively or retroactively is a question of legislative intent[.] . . . [I]n the absence of any direct evidence of the legislature's intentions, the courts presume that statutes that are 'substantive' in nature are to apply prospectively.").

C.      **Failure To Serve Utah Attorney General.**

Indirect Purchasers' Opposition cites only to the original complaint as being served on the Utah Attorney General.  (IP Opp. at 36, n.67.)  However, Indirect Purchasers did not serve their First Amended Class Action Complaint—the operative complaint—on the Utah Attorney General, as required under Utah law:  "The attorney general shall receive a copy of *each filing* from each plaintiff."  Utah Code Ann. § 76-10-919(9) (emphasis added).

D.      **Indirect Purchasers Do Not Meet The Heightened Pleading Standard For Their Florida Consumer Protection Claim.**

Indirect Purchasers concede that claims brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") must be pled with particularity.  They argue, however, that Rule 9(b)'s heightened standard applies only "to claims sound[ing] in fraud" and assert that their claims do not.  (IP Opp. at 37.)  They are wrong on both counts.  First, as articulated in *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, a case which Indirect Purchasers cite, "claims arising under the FDUTPA must be pled with particularity."  No. 8:07-cv-2093-JDW-MSS, 2008 U.S. Dist. LEXIS 61428, at *7 (M.D. Fla. Aug. 4, 2008) (following "[m]ost courts" and finding that "claims arising under the FDUTPA" must meet the "heightened pleading standard requirements of Rule 9(b)") (internal citations omitted).  Indirect Purchasers' authorities

---

[6] At a minimum, any claims which accrued prior to February 4, 2006—four years prior to the filing of the first constituent complaint in this action—are time barred under Oregon law. *See* Or. Rev. Stat. § 646.800(2) ("An action under ORS 646.780 to recover damages shall be commenced within four years after the cause of action accrued . . . .").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

1  to the contrary are inapposite.[7]  Second, Indirect Purchasers' attempts to divorce themselves

2  from any fraud or deception-based claims are belied by the IP-FAC's own allegations.[8]

3       Similarly, Indirect Purchasers' reliance on *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232

4  F.3d 979 (9th Cir. 2000), a pre-*Twombly* decision, for the quote that "[a]ntitrust cases are not to be

5  judged by a higher or different pleading standard than other cases," is misplaced.  (IP Opp. at 37,

6  n.69.)  They have alleged a Florida consumer protection claim and must meet its applicable

7  pleading requirements.  *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 946-948 (dismissing

8  FDUTPA claim in price-fixing case because plaintiffs failed to meet Rule 9(b)'s heightened

9  pleading standard).  Ultimately, Indirect Purchasers' failure to plead any, let alone particular,

10 facts—as opposed to legal conclusions—is insufficient to meet their heightened burden and their

11 Florida consumer protection claim must be dismissed.

12       **E.    Failure To Plead Misrepresentations That Were Directed At Consumers And
13            Materially Deceptive (New York Consumer Protection Claim).**

14       Indirect Purchasers' allegation of a secret price fixing scheme, standing alone, does not

15 plead a claim under New York's Consumer Protection Law, N.Y. Gen. Bus. Law § 349 *et seq*.

16 But deceptive acts or misleading statements directed to New York consumers must also be pled

17 to state a claim under Section 349.  The New York Plaintiff has not done so.

18       The alleged price fixing scheme itself cannot be the deceptive act required under Section

19 349.[9]  Likewise, merely alleging concealment or failure to reveal the alleged price fixing scheme

20

21 [7]  Plaintiffs cite two other cases, one which acknowledges that its decision is "in the minority,"
   and another where the pleading standard was not an issue.  (IP Opp. at 37, n.68 (citing

22 *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290 (M.D.
   Fla. 2009); *Siever v. BW Gaskets, Inc.*, No. 6:08-cv-1388-Orl-19GJK, 2009 U.S. Dist. LEXIS
   20691, at *7, n.1 (M.D. Fla. Mar. 2, 2009)).)

23 [8]  (*See, e.g.*, IP-FAC ¶¶ 284-301 ("Fraudulent Concealment" allegations); *see also id.* ¶ 367(d)

24 (alleging that "Defendants' acts or practices are fraudulent or deceptive"); ¶ 366
   ("Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

25 fraudulent acts or practices in violation of the state consumer protection and unfair
   competition statutes listed below [which include the FDUTPA].").)

26 [9]  *E.g., In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 555 (E.D. Pa. 2007)
   ("[B]oth New York state courts and federal courts have opined that mere anticompetitive

27 conduct alone does not constitute deceptive conduct under § 349 and that to come within the
   scope of the statute, the Complaint must allege some additional deception or

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

1  cannot be the deceptive act under Section 349.[10]  Rather, the New York Plaintiff must allege

2  other materially deceptive acts or practices that were directed at New York indirect purchasers

3  and caused injury to the New York Plaintiff.[11]

4      Unable to meet Section 349, the New York Plaintiff instead rests his claim on alleged

5  "misleading public statements Defendants made about competition in the ODD market."  (IP

6  Opp. at 39 (citing IP-FAC ¶¶ 288-293).)  These "public" statements (which addressed pricing to

7  OEMs and statements made to investors) were not directed at New York indirect purchaser

8  consumers—a Section 349 requirement.[12]  For these reasons, the New York Plaintiff has not met

9  his burden of alleging consumer-oriented, deceptive conduct, as required under Section 349, and

10  his New York Consumer Protection Law claim should therefore be dismissed.

11      **F.    No Class Actions (South Carolina Consumer Protection Claim).**

12      Indirect Purchasers concede that South Carolina's consumer protection statute bars them

13  from bringing their claims as a class action.  *See* S.C. Code Ann. § 39-5-140(a) (plaintiffs "may

14  bring an action individually, but not in a representative capacity, to recover actual damages").

15  Instead, Indirect Purchasers argue only that federal law should apply because, under the Supreme

16  Court's recent decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct.

17

18      misrepresentation."); *Leider v. Ralfe*, 387 F. Supp. 2d 283, 294-95 (S.D.N.Y. 2005) ("[A
19      Section 349] deceptive acts and practices claim requires the use of deception. . . .  Mere
        anticompetitive conduct alone will not suffice.") (internal citations omitted).

20  [10]  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 908 (N.D.
        Cal. 2008) ("*SRAM*") (dismissing Section 349 claim and rejecting concealment of a price
21      fixing conspiracy as a deceptive act under Section 349); *In re New Motor Vehicles Canadian
        Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 197 (D. Me. 2004) (dismissing Section 349 claim
22      in an antitrust conspiracy action where "failure to reveal the conspiracy did not affect the
        price of the vehicles or the consumer's decision to purchase the vehicle").

23  [11]  *Flash*, 643 F. Supp. 2d at 1160; *New Motor Vehicles*, 350 F. Supp. 2d at 197; *see also SRAM*,
24      580 F. Supp. 2d at 908.

25  [12]  *SRAM*, 580 F. Supp. 2d at 908 (dismissing Section 349 claim where "there is nothing to
        suggest that Defendants must have provided false justifications for price increases to the IP
        Plaintiffs. Rather, any such justifications would have been directed at the DP Plaintiffs.");
26      *Flash*, 643 F. Supp. 2d at 1160 (allegations of "public" statements not directed at indirect
        purchasers in New York insufficient to state a claim under Section 349); *In re K-Dur Antitrust
27      Litig.*, No. 01-1652 (JAG), 2008 WL 2660782, at *9 (D.N.J. March 10, 2008) (dismissing
        Section 349 claim because alleged misleading statements were not directed at consumers).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

1431 (2010), "when a case is pending in federal court, federal procedural law determines class

certification, not state law." (IP Opp. at 39-40.) Plaintiffs are incorrect.

As Justice Stevens made plain with his *Shady Grove* concurrence, he joined the holding

only because the state provision at issue "is a procedural rule that is not part of [the state's]

substantive law." *Shady Grove*, 130 S. Ct. at 1448 (Stevens, J., concurring).[13] Thus, consistent

with several district courts which have subsequently applied *Shady Grove*, state law continues to

apply where, as here, the provision barring class actions is not a separate procedural rule, but is

instead part of the statute's substantive framework of rights and remedies.[14] *See Bearden*, 2010

U.S. Dist. LEXIS 83996, at *23-30 (distinguishing *Shady Grove* and finding that the bar on class

actions under Tennessee's Consumer Protection Act, which included language virtually identical

to the South Carolina statute at issue, "is so intertwined with that statute's rights and remedies

that it functions to define the scope of the substantive rights").

## VII. CONCLUSION

For all of the above reasons, the Indirect Purchaser Plaintiffs' First Amended Class

Action Complaint should be dismissed with prejudice.

Dated: December 10, 2010                    Respectfully submitted,


                                   By:    */s/ Belinda S Lee*
                                          Daniel M. Wall
                                          Belinda S Lee
                                          Brendan A. McShane

---

[13] Rather, Justice Stevens agreed with the four Justices in dissent that a federal court in diversity must follow state procedural rules that "function as a part of the State's definition of substantive rights and remedies." *Shady Grove*, 130 S. Ct. at 1448 (Stevens, J., concurring). Accordingly, five Justices—a majority—took this view.

[14] *See McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 U.S. Dist. LEXIS 103516, at *15-34 (N.D. Ohio Sept. 30, 2010) (applying state law and dismissing plaintiff's class action claim); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-1035, 2010 U.S. Dist. LEXIS 83996, at *23-31 (M.D. Tenn. Aug. 16, 2010) (applying state law and striking plaintiff's class allegations); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254, at *5-8 (N.D. Ohio July 12, 2010) (applying state law and denying class certification).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

Connie D. Sardo
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel:     +1.415.391.0600
Fax:    +1.415.395.8095
Dan.Wall@lw.com
Belinda.Lee@lw.com
Brendan.McShane@lw.com
Connie.Sardo@lw.com

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba Samsung Storage Technology*
*Corporation, and Toshiba Samsung Storage*
*Technology Korea Corporation*


By:  /s/ Christopher B. Hockett_____
      Christopher B. Hockett (Bar No. 121539)
      Neal A. Potischman (Bar No. 254862)
      Sandra D. West (Bar No. 250389)
      Jeremy M. Brodsky (Bar No. 257674)
      DAVIS POLK & WARDWELL LLP
      1600 El Camino Real
      Menlo Park, California 94025
      Telephone:    (650) 752-2000
      Facsimile:    (650) 752-2111
      christopher.hockett@davispolk.com
      neal.potischman@davispolk.com
      sandra.west@davispolk.com
      jeremy.brodsky@davispolk.com

      *Attorneys for Defendant LG Electronics, Inc.*


By:  /s/ Craig P. Seebald_____
      Craig P. Seebald (admitted *Pro Hac Vice*)
      Pamela J. Marple (admitted *Pro Hac Vice*)
      MCDERMOTT WILL & EMERY LLP
      600 13th Street, NW
      Washington, DC 20005
      Telephone:    (202) 756-8000
      Facsimile:    (202) 756-8087
      E-mail:       cseebald@mwe.com
      E-mail:       pmarple@mwe.com

      Matthew J. Jacobs (Bar No. 171149)
      MCDERMOTT WILL & EMERY LLP

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone:     (650) 815-7400
Facsimile:     (650) 815-7401
E-mail:        mjacobs@mwe.com

*Attorneys for Defendant Hitachi, Ltd.*

By:  */s/ John F. Cove*
     John F. Cove, Jr. (State Bar No. 212213)
     Steven C. Holtzman (State Bar No. 144177)
     Alexis J. Loeb (State Bar No. 269895)
     Beko O. Reblitz-Richardson
     (State Bar No. 238027)
     BOIES, SCHILLER & FLEXNER LLP
     1999 Harrison Street, Suite 900
     Oakland, California 94612
     Telephone:     (510) 874-1000
     Facsimile:     (510) 874-1460
     E-mail:        jcove@bsfllp.com
                    sholtzman@bsfllp.com
                    aloeb@bsfllp.com
                    brichardson@bsfllp.com

*Attorneys for Defendants Sony Corporation, Sony
Optiarc Inc., and Sony Optiarc America Inc.*

By:  */s/ Thomas Brown*
     Thomas Brown
     O'MELVENY & MYERS LLP
     Two Embarcadero Center, 28th Floor
     San Francisco, CA 94111-3823
     Telephone:     (415) 984-8700
     Facsimile:     (415) 984-8701
     Email:         tbrown@omm.com

     Ian Simmons
     (Admitted Pro Hac Vice)
     O'MELVENY & MYERS LLP
     1625 Eye St. NW
     Washington, D.C. 20006
     Telephone:     (202) 383-5300
     Facsimile:     (202) 383-5414
     Email:         isimmons@omm.com

*Attorneys for Defendants Samsung Electronics*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

*Co., Ltd.*

By:   */s/ David H. Bamberger*
David H. Bamberger (admitted pro hac vice)
Deana L. Cairo (admitted pro hac vice)
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
Phone: (202) 799-4000
Fax:    (202) 799-5000
Email: david.bamberger@dlapiper.com
        deana.cairo@dlapiper.com

Paolo Morante (admitted pro hac vice)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY  10020
Phone: (212) 335-4500
Fax:    (212) 335-4501
Email: paolo.morante@dlapiper.com

Erin Frazor (Bar No. 251324)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105
Phone:  (415) 836-2500
Fax:    (415) 836-2501
E-mail: erin.frazor@dlapiper.com

*Attorneys for Defendants TEAC Corporation and TEAC America, Inc.*

By:   */s/ Mark S. Popofsky*
Mark S. Popofsky (admitted pro hac vice)
ROPES & GRAY LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
Telephone: (202) 508-4600
Facsimile:  (202) 508-4650
E-mail:    Mark.Popofsky@ropesgray.com

Jane E. Willis (admitted pro hac vice)
ROPES & GRAY LLP
Prudential Tower
Boston, MA 02119

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS

Telephone: (617) 951-7000
Facsimile:  (617) 951-7050
E-mail:  Jane.Willis@ropesgray.com

Thad A. Davis (SBN 220503)
Thad.Davis@ropesgray.com
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Telephone:  (415) 315-6300
Facsimile:   (415) 315-6350

*Attorneys for Defendants*
*Hitachi-LG Data Storage, Inc. &*
*Hitachi-LG Data Storage Korea, Inc.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS (INDIRECT PURCHASER PLAINTIFFS)
Case Number: 3:10-MD-02143 RS