SAVERI & SAVERI, INC.
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

September 17, 2012

Honorable Joseph C. Spero
United States Magistrate Judge
Phillip Burton Federal Building & United States Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re: *In Re: Optical Disk Drive Products Antitrust Litigation*,
No. 3:10-md-02143RS (JCS) (N.D. Cal.)

Your Honor:

In accordance with Your Honor's Standing Order on Discovery Disputes, the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs ("Plaintiffs") and undersigned Defendants jointly submit this letter brief regarding a dispute concerning the presumptive location for depositions of witnesses residing in foreign countries.

### Plaintiffs' Position

Over the course of the past month the parties have met and conferred, had multiple telephonic conferences, exchanged extensive letters setting forth our respective positions, participated in one joint telephone call with all parties and have come to an impasse. Accordingly, the parties respectfully request this Court's assistance in resolving this disagreement.

Depositions will need to be taken of numerous witnesses residing overseas, including such locations as Japan, Taiwan, and South Korea. Plaintiffs thus proposed in their discovery plan to Defendants a deposition protocol that depositions be presumptively taken in the Northern District of California. Defendants never responded to the proposed language. Instead, after Plaintiffs noticed basic Rule 30(b)(6) depositions of Defendants on August 10, 2012, Defendants raised a whole host of objections to the notices and all but one Defendant refused to identify or produce a witness for deposition. Specifically, Defendants Sony and Hitachi refuse to produce any individual for deposition in the United States, instead demanding that Plaintiffs arrange for depositions in Japan, where many of these Defendants are based.[1] Similarly, Plaintiffs would have to travel to Taiwan and Korea for depositions of those Defendants situated in those locations. Basically, Defendants would require Plaintiffs to spend hundreds of thousands if not millions of dollars on international travel when Defendants neither objected to Plaintiffs' deposition protocol nor proposed any other location that would be agreeable to Plaintiffs. For the reasons articulated below, Plaintiffs respectfully ask that the Court require Defendants' foreign witnesses be deposed in the Northern District of California.

---

[1] A third of the Defendants named in the Second Amended Consolidated Direct Purchaser Class Action Complaint are located in Japan. Another third of the Defendants are located in the United States. Defendants are also located in Taiwan, South Korea, and the Netherlands.

While "[t]he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business," Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2112 at 84-85 (1994 rev.), "a number of factors serve to dissipate the presumption...." *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628-9 (C.D. Cal. 2005) (quoting *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D.N.C. 1988)). "These factors include location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court; whether the persons sought to be deposed often engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship." *Id.* (quoting *Armsey v. Medshares Mgmt. Servs.*, 184 F.R.D. 569, 571 (W.D.Va. 1998); *Resolution Trust Corp. v. Worldwide Ins. Management Corp.*, 147 F.R.D. 125, 127 (N.D.Tex. 1992)). As such, "[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum [where the action is pending], for the convenience of all parties and in the general interests of judicial economy." *Id.* (quoting *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985)).

Japan, Taiwan, and South Korea impose extremely burdensome restrictions on parties seeking to take depositions on their soil. Indeed, depositions in these countries "could not be more inconsistent with the overarching purpose of the Federal Rules of Civil Procedure." *See New Medium Technologies LLC v. Barco N.V.*, 242 F.R.D. 460, 467 (N.D. Ill. 2007) (Japan). For the following reasons, United States courts, including courts in this District,[2] routinely order foreign defendants to produce their witnesses here because the hurdles involved with taking a deposition at these locations are "daunting" and "constitute a substantial obstacle to the smooth conduct of proceedings." *Dean Foods Co. v. Eastman Chem. Co.*, No. C 00-4379 WHO (JL), 2001 U.S. Dist. LEXIS 25447, at *23-24 (N.D. Cal. Aug. 13, 2001) (Japan).

The Court should require witnesses residing in Japan to come to the United States for deposition. <u>First</u>, Japan is not a party to the Hague Convention on the taking of evidence abroad. *New Medium Technologies*, 242 F.R.D. at 463 n.4. It is illegal for a judge in the United States to intervene in any way in a deposition occurring in Japan. *Id.*; *see also Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000) ("If the depositions do take place in Japan, the court's authority to intervene . . . is compromised whether there are stipulations or not.").[3]

---

[2] *See* Declaration of Cadio Zirpoli In Support of Letter Brief Ordering Deposition Location of Foreign Witnesses to Presumptively be in the Northern District of California, dated September 17, 2012 ("Zirpoli Decl."), Exs. A-C (*In re TFT-LCD (Flat Panel) Antitrust Litig.*, Master File No. M07-18247 SI, Dkt. 1546 (N.D. Cal. May 13, 2009) (requiring Japanese deponents be deposed in the United States); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Dkt. 1092 (N.D. Cal. Mar. 19, 2012) (recommending that the Northern District of California be the presumptive location for the taking of depositions of witnesses who are residents of foreign countries) and Dkt. 1128 (N.D. Cal. Apr. 3, 2012) (ordering that the Northern District of California be the presumptive location for the taking of depositions of witnesses who are residents of foreign countries)).

[3] "Japan has advised the United States that it will not permit the participation of foreign judges in the deposition of a witness located in Japan." U.S. State Department, "Participation of Judges From the United States," *Japan Judicial Assistance,* available at: http://travel.state.gov/law/judicial/judicial_678.html, attached as Exhibit D to the Zirpoli Decl.

Aside from the practical difficulties of a 16-hour time difference, the parties are legally barred from seeking assistance from the Court to resolve disputes regarding depositions. The inability to control depositions occurring in Japan caused Magistrate Judge Larson and Judge Orrick, in *Dean Foods*, to order a Japanese defendant to produce its managing agents for deposition in San Francisco. *Dean Foods*, *21-25; *see also In re Vitamin Antitrust Litig.*, No. 99–197 TFH, MDL No. 1285, 2001 WL 35814436, at *6 & n. 25 (D.D.C. 2001) (following *Dean Foods*, ordered Japanese witnesses to be deposed in Washington D.C.); *Delphi Automotive Systems LLC v. Shinwa Intern. Holdings, LTD*, No. 1:07-cv-0811-SEB-JMS, 2008 WL 2906765, at *2 (S.D. Ind. July 23, 2008) (ordering Japanese defendants to be deposed in the United States because "[t]he most significant factor in making the determination as to where the depositions at issue should take place, in this Court's view, is the ability of the Court to intervene should a dispute rise"); *Invensas Corp. v. Renesas Elec. Corp.*, No. CA 11-448-GMS-CJB, 2012 WL 2501106, at *3 (D. Del. June 27, 2012) (ordering Japanese witnesses be deposed in the United States, noting "detrimental impact" on the discovery process if deposition takes place in Japan).

  Second, the Federal Rules of Civil Procedure do not apply to a deposition in Japan. That is because Japanese law is mandatory; "[a]ny effort to conduct a deposition in Japan in any other way [aside from under Japanese rules] could be viewed as a violation of the judicial sovereignty of Japan…." *See Obtaining Evidence in Japan*, Practicing Law Institute, Litigation and Administrative Practice Course Handbook Series, 2006, available at: Westlaw 740 PLI/Lit 27.[4] Thus, in ordering Japanese witnesses to come to the United States, courts have relied on the fact that, while on Japanese soil, a witness may refuse to disclose any information designated a trade secret by his or her employer, even if doing so violates a U.S. court order to the contrary. *Custom Form Mfr*, 196 F.R.D. at 336.

  Third, depositions in Japan are mired in procedural and onerous rules. Attorneys taking depositions and participants attending a deposition in Japan must obtain special "deposition visas," which must be cleared by the Japanese Foreign Ministry, in order to legally depose an individual in Japan.[5] Scheduling a deposition in Japan also requires the deposing party to apply for and receive a court order authorizing the deposition at least one month in advance of the date of the deposition.[6] Depositions must also take place on U.S. consular premises.[7] The deposition

---

[4] *See also* Zirpoli Decl., Ex. D (U.S. State Department, "Japanese Sovereignty," *Japan Judicial Assistance* ("The Government of Japan has advised the United States that it opposes deviations from these conditions, and that it would consider any action beyond the strictures of the U.S.-Japan understanding to be a violation of its judicial sovereignty.")).

[5] *See* Zirpoli Decl., Ex. E (U.S. State Department, U.S. Embassy in Tokyo, "Visas for Attorneys Taking Depositions in Japan," *Visas to Japan for Americans*, available at: http://japan.usembassy.gov/e/acs/tacs-7108b.html). *See also* Zirpoli Decl., Ex. D (U.S. State Department, "Special Japanese Deposition Visas," *Japan Judicial Assistance*). It takes the Japanese Government two to four weeks to process the deposition visa application.

[6] *See* Zirpoli Decl., Ex. F (U.S. State Department, U.S. Embassy in Tokyo, *Depositions in Japan*, available at: http://japan.usembassy.gov/e/acs/tacs-7116.html).

[7] Consular Convention and Protocol, Mar. 22, 1963, U.S.-Japan, art. 17(1)(e)(ii), 15 U.S.T. 768; Fed. R. Civ. P. 28(b); 22 C.F.R. §§ 92.49-92.71; *New Medium*, 242 F.R.D. at 463 n.4. *See also* Zirpoli Decl., Ex. D (U.S. State Department, *Japan Judicial Assistance*).

room is small,[8] and for security and other reasons, there is neither a live phone line nor internet feed that can be broadcast from the building, making remote participation impossible.[9] The State Department also severely restricts the hours that a deposition can occur; depositions must be terminated well before five o'clock every day and the reporter and videographer do not have early access to the room for set-up. As a result, it is nearly impossible to take seven hours of record testimony per day in Japan. And, if a deposition is continued or adjourned, it may well take several months to obtain a new time and date.[10]

Similar reasons compel the same conclusion with respect to witnesses residing in Taiwan.[11] Where a witness residing in Taiwan is willing to conduct a voluntary deposition, private litigants would need to make arrangements concerning the location of the deposition, as well as for stenographers, interpreters, videotape operators, etc. *Id.* Taiwan also imposes onerous restrictions on foreign depositions should a witness be forced to take an otherwise involuntary deposition. In those cases, a litigant would need to seek and obtain a letter rogatory, with certified translations in Chinese, requesting the taking of evidence, and must "specifically" request a "full transcription of the deposition." *Id.* Furthermore, "the Taiwan court will not permit examination of witnesses by attorneys." *Id.* As such, witnesses "would be examined by the court on the basis of written questions." *Id.* The transcription of the examination would be in Chinese, *id.*, and would thus require certified translations thereafter.

The Court should also compel witnesses residing in South Korea to be deposed in the United States.[12] Even willing witnesses cannot be deposed except pursuant to a letter of request. *Id.* The U.S. party must obtain a letter of request "transmitted directly by a court in the United States to the Korean Central Authority," with certified translations in Korean. *Id.* Moreover, evidence "must be taken before a Korean court." *Id.* This is unnecessarily burdensome and time-consuming.[13] Thus, in requiring the Korean defendant to produce its witnesses in the United

---

[8] The Tokyo consular premises are particularly small, and can accommodate only a handful of attorneys in addition to the witness, reporter, and videographer. *See* Zirpoli Decl., Ex. F (U.S. State Department, U.S. Embassy in Tokyo, *Depositions in Japan*, available at: http://japan.usembassy.gov/e/acs/tacs-7116.html).

[9] *See also* Zirpoli Decl., Ex. D (U.S. State Department, "Telephone or Video teleconference testimony," *Japan Judicial Assistance* ("Japanese authorities have informed the United States that Japan does not permit the taking of telephone or video teleconference testimony.")).

[10] As of September 14, 2012, the first available date for the "Deposition Room" in the U.S. Embassy in Tokyo is November 21, 2012. *See* Zirpoli Decl., Ex. F. (U.S. State Department, U.S. Embassy in Tokyo, *Depositions in Japan*). The State Department notes that **"The American Embassy in Tokyo is generally booked six months in advance."** *See* U.S. State Department, "Scheduling depositions," *Japan Judicial Assistance* (emphasis in original), attached as Exhibit D to the Zirpoli Decl.

[11] *See* Zirpoli Decl., Ex. G (U.S. State Department, *Taiwan Judicial Assistance*, available at http://travel.state.gov/law/judicial/judicial_669.html).

[12] *See* Zirpoli Decl., Ex. H (U.S. State Department, *South Korea Assistance*, available at: http://travel.state.gov/law/judicial/judicial_669.html).

[13] Indeed, the letter rogatory process can take up to a year if "transmitted via diplomatic channel, a time-consuming means of transmission." *See* U.S. State Department, "Time Frame for Execution of Letters Rogatory," *Preparation of Letters Rogatory*, available at:

States, the court in *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 268 F.R.D. 45, 54-56 (E.D. Va. 2010), points out that the "nature of discovery and the equities" favor conducting depositions in the United States, presumptively in the forum of the lawsuit.

Most importantly, it would be <u>less</u> expensive for a single witness to come to the United States. For instance, to take a deposition in Japan, the parties must pay a non-refundable deposition scheduling fee of $1,283.00 (per daily appointment) to the U.S. Embassy, whether or not the deposition actually goes forward. *See* 22 C.F.R. § 22.1. Further, each hour of deposition time at the U.S. Embassy costs $309, plus other administrative and consular fees. *Id.* This does not take into account costs associated with stenographers, interpreters, airfare, and accommodations, and other expenses.[14]

Moreover, this case involves over 30 different defendants, with offices in at least five countries, and, at a minimum, 11 different law firms representing the various defendants. Even if only one lawyer per defendant and per direct and indirect plaintiff attended a deposition, this would involve at least 13 lawyers traveling to at least three different countries. The scheduling challenges alone would be monumental - setting aside the tremendously unnecessary costs incurred. This is especially burdensome where all the parties have counsel in the United States. *In re Honda American Motor Co., Inc.*, 168 F.R.D. 535, 539 (D. Md. 1996) ("plaintiffs persuasively argue that the travel costs of deposing Honda's four managing agents in Baltimore would be far less than if all plaintiffs and their attorneys (as well as other defendants and their counsel) were required to travel to Japan").

Here, the relevant factors all weigh in favor of conducting depositions of "overseas" witnesses here in San Francisco. *See Cadent Ltd.*, 232 F.R.D. at 629 (ordering corporate plaintiff's deposition in Los Angeles rather than Israel or New York). The time difference between the U.S. and Asia would make it virtually impossible for the Court to rule on emergent issues such as the attorney-client privilege. The cost of taking depositions abroad is orders of magnitude greater than taking them here. Transporting boxes of exhibits internationally is also a substantial burden and impedes effective deposition-taking. The process in which to obtain the orders and assistance from foreign authorities would unreasonably delay the litigation. The foreign defendants all do business in the United States, either directly or through domestic subsidiaries. The majority of counsel defending their depositions are located in the San Francisco Bay Area, as are all Plaintiffs' counsel. And, finally, it would clearly be inequitable to require Plaintiffs to fly around the world for the sake of convenience to Defendants - the same entities that have violated, and pleaded guilty to violating, the U.S. antitrust laws. In short, the Northern District is the fairest and most efficient location for depositions of foreign witnesses in this case.

## Defendants' Position

The undersigned Defendants oppose Plaintiffs' proposed protocol for the location of depositions. Plaintiffs offer a one-sided deposition protocol which applies solely to Defendants' foreign witnesses. When combined with the provisions of the CMO, Plaintiffs' proposal gives them the unfettered ability to compel as many as 180 foreign witnesses (plus many more

---

http://travel.state.gov/law/judicial/judicial_683.html, attached as Exhibit I to the Zirpoli Decl. This is exactly the process which Plaintiffs would have to utilize in order to depose a Korean resident.

[14] The costs to depose an individual in Korea or Taiwan are comparable.

corporate witness designees) to travel halfway around the world on as little as two weeks' notice to attend never-ending depositions in the United States.

Defendants instead offer the following alternative protocol, which applies to all parties, and adheres to the Federal Rules and recognized principles of deposition practice:

1. The parties shall meet and confer in good faith regarding the appropriate location of depositions of all party witnesses and shall cooperate to cluster overseas depositions.[15]

2. Depositions of individual party witnesses are presumed to take place where a witness resides or, for deponent corporations noticed under Fed. R. Civ. P. 30(b)(6), at the corporation's principal place of business, unless the deposing party can demonstrate good cause to take a deposition at an alternate location.

3. If good cause is shown and the deponent is required to travel to an alternate location, the deposing party shall be responsible for payment of the deponent's reasonable travel and lodging expenses.

4. Consistent with Rule 30(d)(1), a deposition is limited to one day of seven hours absent agreement or court order, and the parties shall meet and confer in good faith regarding whether or how the use of any translator should affect time extensions for each deposition.

Defendants' proposal adopts well-established standards of practice, and should be adopted by this Court.

A. **Plaintiffs Failed to Meet and Confer on This Significant Issue.**

As a threshold matter, Plaintiffs failed to meaningfully meet and confer on this issue.[16] The Case Management Order required the parties to exchange discovery plans on August 13, 2012, with a list of proposed custodians and the location of documents, and permitted the parties to "propose a protocol for the production of electronically stored information, a protocol for the use of search terms, and/or a protocol for the translation of documents."[17] On their own,

---

[15] Any protocol entered by this Court is limited to party depositions. Third party witnesses and corporate employees who are not current officers, directors, or managing agents of parties are not subject to deposition by notice. See *Avago Techs. Gen. IP Pte Ltd. v. Elan Microelectronics Corp.*, 2007 WL 1140450, at *2 (N.D. Cal. 2007) (denying motion to compel corporate party to produce witnesses in response to deposition notices where individuals were not representatives of the corporation for purposes of Rule 30 and therefore could not be compelled by mere deposition notices). These witnesses must be subpoenaed pursuant to Rule 45 or, if the witness is overseas, the procedures of the Hague Convention or other applicable treaty. *U.S. v. Afram Lines (USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994). Those depositions must also "proceed as for an[y] ordinary nonparty witness." 4A Moore's Federal Practice ¶ 30.03 [2].

[16] See Civil Standing Orders for Magistrate Judge Joseph C. Spero at 2, August 1, 2012 ("In lieu of filing formal discovery motions, [Plaintiffs and Defendants] shall meet and confer **in person** regarding the subject matter of the Motion(s) in an effort to resolve these matters.") (emphasis in original).

[17] Case Management Order, July 17, 2012 (Dkt. 606) ("CMO"), at 1.

however, Plaintiffs also included a proposed "deposition protocol" in their joint Discovery Plan. Then, over the course of multiple weeks of individual and joint meet and confers, Plaintiffs never once raised the issue of a deposition protocol. In fact, the first time Plaintiffs mentioned a deposition protocol was on Sept. 7, 2012, when they announced their intention to move the Court within 5 business days to enter an order granting their deposition protocol. Given the significant costs and business interruption that would occur if their proposed protocol was adopted, Plaintiffs' failure to engage in any meet and confer on this issue before bringing this motion is plainly improper.[18]

### B. Depositions Are Presumed to Take Place Where a Party Witness Resides or at a Corporate Party's Principal Place of Business.

Courts apply a "general presumption that the deposition of a corporate party should be taken at its place of business." *HTC Corp. v. Tech Properties*, 2008 WL 5244905, *2 (N.D. Cal. 2008); *Sheehy v. Ridge Tool Co.*, 2006 WL 3592941, at *1 (W.D. Tex. 2006) ("A plaintiff seeking to depose a corporate defendant anywhere other than its principal place of business has the affirmative burden of demonstrating peculiar circumstances which compel the court to order the depositions to be held in an alternate location.") (quotations omitted). The same presumption applies to individual party witnesses. *See Farquhar v. Sheldon*, 116 F.R.D. 70, 72 (E.D. Mich. 1987) (requiring defendant's deposition be taken in The Netherlands in accordance with "the general rule requiring a defendant to be deposed where he resides."). Courts afford defendants this accommodation because they are involuntary participants to the litigation and have no ability to control a plaintiff's choice of forum. *See, e.g., Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943, *9 (N.D. Cal. 1999) (Spero, M.J.) ("The underlying rationale … is that because the plaintiff rather than the defendant chooses the forum, the defendant and its representatives should not be required to travel to the forum for deposition.").

These principles are only enhanced when the deponents reside abroad. Courts routinely apply this presumption to foreign witnesses, including those located in Japan, Taiwan, and Korea. *See, e.g., Tailift USA, Inc. v. Tailift Co., Ltd.*, 2004 U.S. Dist. LEXIS 28648 (N.D. Tex. 2004) (holding that a deposition must be taken at a corporation's principal place of business in Taiwan); *Dwelly v. Yamaha Motor Corp., USA*, 214 F.R.D. 537, 541 (D.Minn. 2003) (holding that a 30(b)(6) deposition should be held in the defendant's principal place of business in Japan); *Six W. Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 108 (S.D.N.Y. 2001) (holding that the depositions of Japanese Sony employees must be held in Japan); *Chris-Craft Indus. Products, Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605, 607 (N.D.Ill. 1999) (holding that deposition of Japan-based defendant must be held in Japan); *Oxford Industries, Inc. v. Luminco, Inc.*, 1990 U.S. Dist. LEXIS 15685 (E.D.Pa. 1990) (granting defendant's motion for protective order and prohibiting plaintiff from seeking to depose Korean witness in the U.S.). Moreover, when a foreign defendant objects to the location of a deposition noticed "at a place

---

[18] Notably, Plaintiffs did not raise this issue until nearly two weeks after the Aug. 27, 2012 deadline to meet and confer regarding discovery disputes under the CMO. *See also* Order re: Deposition Scheduling at 2, Aug. 31, 2012 (Dkt. 631) ("[O]nly after every effort has been made to resolve those disputes through meet and confer negotiations conducted in good faith. *Any controversy* remaining after the issuance of this order should be addressed in that manner.") (emphasis added).

other than its principal place of business, the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation."[19]

Plaintiffs have not offered any unusual circumstances which overcome this presumption, and the mere convenience of their Bay Area-based counsel is alone insufficient. The interests of witnesses are paramount and "the convenience of counsel is less compelling than any hardship to the witnesses." *Six W. Retail Acquisition*, 203 F.R.D. at 108. Courts have also found the expense and logistical burden of holding depositions abroad, and any attendant impact on the discovery schedule, likewise insufficient to compel testimony from a foreign witness in the U.S. *See, e.g.*, *Oxford Industries*, 1990 U.S. Dist. LEXIS 15685 at *3-4 (finding that even the "burdensome expense on the plaintiff to conduct a deposition in Korea," coupled with the "tight discovery schedule," do not "constitute special circumstances that would require departure from the general rule."). The law firms representing Plaintiffs here are among the most successful and well-funded firms in the world, and are well-versed in pursuing discovery abroad.

That certain Defendants conduct business within the United States is also insufficient to overcome the strong presumption that witnesses be deposed where they reside. *See Dwelly*, 214 F.R.D. at 541 (requiring that a deposition be taken at corporate party's place of business in Japan despite plaintiffs' argument that "it is appropriate to compel the deponent to travel to this country" because "the corporation, for whom the deponent works, does business in the United States, and is subject to this Court's jurisdiction"). This established presumption is particularly important where, as here, Defendants' foreign employees have significant business responsibilities in their countries of residence. *Id.*; *see also Oxford Industries*, 1990 U.S. Dist. LEXIS 15685 at *3-4 ("The fact that [the foreign witness] has some conceivable reason for visiting the United States does not mean that he should be required to do so.")

Concerns that certain countries are not signatories to the Hague Convention or adhere to laws that place significant limitations on discovery and deposition procedures are no reason to adopt Plaintiffs' proposed protocol.[20] The Federal Rules and this Court's Standing Orders include very specific requirements regarding the procedure and conduct of depositions[21] and carry the same authority over the parties whether the deposition is conducted at Plaintiffs' offices or in a foreign jurisdiction. Nor can Plaintiffs rely on the hypothetical and unlikely need to reach the Court to settle disputes during a deposition as the basis for obtaining a blanket order requiring hundreds of foreign-located witnesses to travel to the U.S. *See Dwelly*, 214 F.R.D. at 541 (finding Defendants' representation that overseas depositions would proceed in accordance with the Federal Rules sufficient to dispel any concerns about procedural limitations in Japan).

Given the substantial burdens and costs inherent in Plaintiffs' proposal, the *LCD* and *CRT*

---

[19] *See, e.g., Chris-Craft*, 184 F.R.D. at 607 (granting Japanese defendant's protective order and noting that "the purposes underlying the general rule that the depositions should proceed at the corporation's principal place of business create a presumption that the corporation has good cause for a protective order.") (quotations omitted).

[20] To the extent that Plaintiffs raise concerns regarding the reservation of deposition space at a U.S. Consulate, which is an issue particular to Japan, Plaintiffs have had ample time to reserve dates and should not be accommodated by the Court for sitting on their hands. In any event, several Defendants have already reserved multiple dates over the next several months for potential depositions at the U.S. Consulate in Tokyo.

[21] Civil Standing Orders for Magistrate Judge Joseph C. Spero at 3-4.

courts which have shifted certain of the presumptions to require some foreign witnesses to travel to the U.S. have done so only with substantial safeguards to protect these witnesses—none of which are present in this case. Their protections included: (1) a requirement that plaintiffs provide the defendant with a list of potential employee deponents at least 21 days prior to noticing such depositions; (2) adherence to Civil L.R. 30-1, which requires the parties to confer about scheduling prior to serving deposition notices; (3) the acknowledgement that 30(b)(6) depositions of foreign corporations should be deposed at the principal place of business when the subject matter makes preparation of the witness difficult elsewhere; (4) a cost-shifting provision whereby the deposing party agrees to cover the expenses of foreign witnesses forced to travel to the U.S.; (5) and a rule that the parties meet and confer regarding locations within the U.S.[22] Plaintiffs' proposed protocol lacks any such safeguards. Moreover, when coupled with Plaintiffs' interpretation of the CMO in this case, their protocol would provide them carte blanche to summon hundreds of Defendants' foreign employees to the U.S. in as little as 14 days, and at no expense to Plaintiffs.

On the other hand, the expense and burden of Plaintiffs' proposal on Defendants is plain. Plaintiffs' recent actions with respect to a dozen Rule 30(b)(6) deposition notices demonstrates precisely why Plaintiffs' protocol is unworkable here. Claiming a Court-ordered presumption that depositions take place within two weeks of the noticed date, Plaintiffs recently served Rule 30(b)(6) deposition notices—with 26 separate and overbroad topics—on each Defendant, demanding a deposition within just over a week of service.[23] Under the Plaintiffs' proposal here, Defendants (some of whom exited the ODD business years ago) would be forced to review these topics, identify and prepare responsive witnesses to testify on the company's behalf, and then have those witnesses travel around the world in order to testify within a two week period. The business interruption alone of forcing these witnesses to travel from Asia to the U.S. on short notice is incredibly burdensome. And putting aside the 15-16 hour difference in time zones, even a single day of deposition testimony would require, at a minimum, one day of a witness' time to travel to the U.S., a second day to prepare for the deposition, a third day to sit for the deposition, and a fourth day to return home. Scheduling return flights, however, would be impossible under Plaintiffs' protocol because witnesses must "remain available day-to-day" with the prospect of additional days of deposition testimony hanging over their heads. This threat of prolonged absence of Defendants' employees, with little advance warning, is substantially burdensome and disruptive to Defendants' business operations and these witnesses' lives.[24] Moreover, for 30(b)(6) depositions where witnesses may need to consult with other corporate employees to adequately prepare, the logistical difficulties are compounded.

---

[22] *See*, Order re: Discovery and Case Management Protocol §§ I(A), IV(C), VI, In re *Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 (N.D. Cal. Apr. 3, 2012) ; Order re: Deposition Protocol §§ III, V, In re *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1782 (N.D. Cal. Feb. 17, 2010); Report and Recommendations Regarding Scheduling Order, and Discovery and Case Management Protocol at 7, In re *CRT*, (N.D. Cal. Mar. 19, 2012) ("[i]f a request for a 30(b)(6) deposition includes such a scope of subject matters as to make preparation of the witness difficult outside his principal place of business that deposition should be taken at his principal place of business.")

[23] A copy of Plaintiffs' Rule 30(b)(6) deposition notice is attached as Exhibit A. Nearly identical versions of this notice were served on every Defendant.

[24] The likelihood of harassment and business disruption are factors that a court must consider in deciding whether to allow discovery of corporate executives. *See Six W. Retail Acquisition*, 203 F.R.D. at 102.

Hon. Joseph C. Spero
September 17, 2012
Page 10

      Defendants do not claim that every deposition will be taken abroad. When Plaintiffs notice witnesses who can reasonably schedule travel to the U.S. for deposition, Defendants will make every effort to do so.[25] However, consistent with established precedent, depositions should be presumed to be taken where a witness resides or at a corporate party's principal place of business. If a deposing party is able to show good cause for a deposition elsewhere, that party should bear the reasonable travel and lodging cost for the deponent, as is commonly required in such circumstances.[26]

    C.    **The One-Day / Seven-Hour Rule Should Apply and It Should be the Noticing Party's Burden to Justify the Need for an Extension of Time.**

      Finally, the timing requirements under Rule 30(d)(1) should apply to this case. *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours"). This is consistent with the practice required by this Court, and Plaintiffs' vague and unspecified proposal that "witnesses remain available day-to-day until their depositions have been completed" should be rejected. *See Pratt v. Archstone Willow Glen Apts.*, 2009 WL 2032469 (N.D. Cal. July 10, 2009) ("[The deposing party] should complete their first seven hour deposition before seeking leave for additional time.") Defendants recognize that individual circumstances may dictate a change in this schedule, including, in some cases, when the use of a translator is necessary for examination, but these considerations should be addressed on an individual basis and not subject to some undefined deposition length. If the parties are unable to reach a reasonable compromise regarding such an extension of time, the party seeking an extension bears the burden of showing good cause to justify such an order. *Id.* ("A party seeking a court order to extend the examination must show 'good cause' to justify such an order."). Plaintiffs cannot alter the default rule by claiming good cause exists over the hypothetical circumstances of unnoticed depositions.

    D.    **Conclusion**

      Plaintiffs' failure to meet and confer on this issue notwithstanding, their proposed protocol for the location of depositions serves no interest other than the convenience of Plaintiffs' counsel and to drive up the defense costs of this litigation. They cannot overcome the established presumption that depositions take place at the witnesses' location or the Defendant's principal place of business, and their proposed protocol should be rejected. To the extent any witnesses are forced to travel abroad to sit for a deposition in this action, the noticing party should be responsible for the reasonable costs of travel in order to curb the potential for harassment and abuse and to ensure both parties cooperate on deposition locations in good faith.

                                Respectfully submitted,

---

[25] The Sony Defendants will, of course, produce U.S.-based witnesses in the United States but stand by their rights under applicable law with regard to depositions of Japanese nationals. *See id.* at 108 (requiring depositions of Japanese national Sony employees to take place in Japan).

[26] *See, e.g.*, Order re: Discovery and Case Management Protocol § VI, In re *CRT Antitrust Litig.*, (N.D. Cal. Apr. 3, 2012) ; Order re: Deposition Protocol § V , In re *TFT-LCD Antitrust Litig.*, (N.D. Cal. Feb. 17, 2010).

Hon. Joseph C. Spero
September 17, 2012
Page 11

SAVERI & SAVERI. INC.

By    /s/ Cadio Zirpoli
      Cadio Zirpoli (179108)

Guido Saveri (23349)
R. Alexander Saveri (173102)
Cadio Zirpoli (179108)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
guido@saveri.com
rick@saveri.com
cadio@saveri.com

Member of the Executive Committee for the
Direct Purchaser Plaintiffs

HAGENS BERMAN SOBOL SHAPIRO LLP

By    /s/ Jeff D. Friedman
      JEFF D. FRIEDMAN

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
George W. Sampson (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
george@hbsslaw.com

          Lee Gordon
          HAGENS BERMAN SOBOL SHAPIRO LLP
          301 North Lake Ave., Suite 203
          Pasadena, CA 91101
          Telephone: (213) 330-7150
          Facsimile: (213) 330-7152
          lee@hbsslaw.com

          Interim Lead Counsel for the
          Indirect Purchaser Plaintiffs


By:          /s/ Belinda S Lee
          Belinda S Lee
          LATHAM & WATKINS LLP
          505 Montgomery Street, Suite 2000
          San Francisco, CA 94111-6538
          Tel:   +1.415.391.0600
          Fax:  +1.415.395.8095
          Belinda.Lee@lw.com

          *Counsel for Defendants Toshiba America Information Systems, Inc., Toshiba Corporation, Toshiba Samsung Storage Technology Corporation, Toshiba Samsung Storage Technology Korea Corporation and as Liaison Counsel for Defendants BenQ America Corporation; BenQ Corporation; Hitachi, Ltd.; Hitachi-LG Data Storage, Inc.; Hitachi-LG Data Storage Korea, Inc.; LG Electronics, Inc.; LG Electronics USA, Inc.; NEC Corporation; Panasonic Corporation; Panasonic Corp. of North America; Quanta Storage Inc.; Quanta Storage America, Inc.; Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Sony Optiarc, Inc.; Sony Optiarc America, Inc.; Sony Corporation; Sony Electronics, Inc.; Sony Computer Entertainment America LLC; TEAC Corporation; and TEAC America, Inc.*

cc: All Counsel via Electronic mail