United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>HITACHI-LG DATA STORAGE, INC., et al.<br><br>　　　　　　　　Defendants. | Lead Case No. 3:10-md-02143-RS<br><br>MDL No. 2143<br><br>Case No. 3:13-cv-1877-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS STATE OF FLORIDA'S COMPLAINT** |

I. INTRODUCTION

The State of Florida filed a complaint to join in this Multi-District Litigation, which alleges a conspiracy among defendants to fix the prices of "Optical Disc Drives" ("ODDs"). Although Florida stipulated to having its case "fully consolidated" for all purposes with the existing Indirect

1 Purchaser action, the parties apparently contemplate that Florida will maintain a separate complaint.
2 The present motion tests the pleading sufficiency of certain claims in that complaint. For the
3 reasons set forth below, the motion will be granted in part, with leave to amend, and otherwise
4 denied.

## II. BACKGROUND

The general background relating to ODDs and the alleged price fixing conspiracy among defendants has been described in prior orders in this MDL proceeding and will not be recounted here. For purposes of the present motion, there are no material differences between the basic factual allegations made by Florida as to the purported conspiracy and those set out by the Direct and Indirect purchasers.

Florida's complaint advances four counts. Count I seeks injunctive relief under the Florida Antitrust Act ("FAA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and federal antitrust law. Defendants do not challenge Count I.

Count II seeks damages under the Sherman Act. Florida pursues these "direct purchaser" claims under the ostensible authority of written assignments from entities such as Dell and HP, from whom Florida governmental agencies purchased computers.

Count III is brought under the FAA. Florida contends it encompasses both the assigned "direct purchaser" claims and "sovereign enforcement claims" – i.e. the state's right to enforce its own statutes.

Count IV advances claims under the FDUTPA. Florida asserts the claims both as an indirect purchaser of ODDs and as a sovereign seeking to enforce the State's consumer protection law.

Defendants' motion presents three basic arguments; (1) the FAA and FDUTPA claims are mostly time-barred, (2) absent a sufficient connection to the state, application of the FAA to defendants' alleged conduct violates Due Process, and (3) Florida has pleaded insufficient facts regarding the alleged assignments to give it standing to pursue claims as a "direct purchaser" under either the Sherman Act (Count II) or the FAA (Count III).

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### IV. DISCUSSION

A. <u>Statute of Limitations</u>

There is no dispute that a four year statute of limitations governs both the FAA and FDUTPA claims. The complaint alleges wrongful conduct occurred from "at least January 1, 2004 through at least June 30, 2009." Seizing on the June 30, 2009 date, and the filing date of the operative complaint of June 28, 2013, defendants argue that claims arising from all but two days (i.e., June 29th and 30th of 2009) are time-barred.[1]

As in the case of the class complaints, it would be inappropriate at this juncture to begin parsing the claims for relief as to what might or might not be time-barred. *See* Order Denying

---

[1] On reply, defendants acknowledge that Florida's original complaint was filed some two months earlier, and that therefore as to the subset of the current defendants who were named in that complaint, the cutoff date would be earlier.

Motions to Dismiss (Master Dkt. # 531 at 12 ("Issuing a naked statement that plaintiffs['] claims are barred prior to various specific dates would serve little purpose at this stage of the proceedings, in the absence of more clarity as to what, if any, effect that would have on the scope of the recoverable damages or other matters.)

Additionally, concluding that a portion of the claims are time-barred as a matter of law would require a finding that Florida may not rely on alleged fraudulent concealment as a basis for tolling the limitations period. Defendants argue that even though fraudulent concealment doctrine exists in the Florida common law, it is simply unavailable to toll the limitations period on these statutory claims. Defendants further contend that while equitable estoppel might theoretically be available, it is a conceptually separate doctrine, the elements of which do not exist here.

However sound defendants' analysis as to the distinctions between equitable estoppel and tolling based on fraudulent concealment might be as a technical matter, it does not account for the fact that courts have sometimes characterized fraudulent concealment as a "species" of equitable estoppel, and treated the acts of concealment as satisfying the elements of estoppel. Most germanely, in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 4387812 (N.D.Cal., 2011), the court expressly analyzed the interplay between the two concepts and became, "convinced that the Florida Supreme Court would recognize the doctrine of fraudulent concealment." *Id.* at *4. The TFT-LCD court therefore denied a summary judgment motion premised on the same argument defendants are making here.

Nothing in this order is intended to be a conclusive determination as to whether or not fraudulent concealment is available to toll the limitations period for FAA and FDUTPA claims. The existence of authority such as *TFT-LCD*, however, presents an additional reason that it would be premature to conclude that some portion of the claims are time-barred.

### B. Due Process

The Due Process Clause of the United States Constitution prohibits application of a state law unless that state has a "significant contact or significant aggregation of contacts" with "the parties and the occurrence or transaction" giving rise to the litigation. *Allstate Ins. Co. v. Hague*,

4

449 U.S. 302, 308 (1981). The Ninth Circuit recently clarified that the "relevant transaction or occurrence in a price-fixing case involves both the conspiracy to illegally fix prices and the sale of price-fixed goods." *AT&T Mobility LLC v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*), 707 F.3d 1106, 1113-14 (9th Cir. 2013) (remanding for further individual due process inquiry regarding whether plaintiffs had alleged sufficient conspiratorial conduct within California with respect to each defendant). *AT&T Mobility* held that, where purchases of price fixed goods did not take place within a state, state antitrust law could be constitutionally applied to a defendant without violating due process only "when more than a *de minimis* amount of that defendant's alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in [that state]." *Id*. at 1113.  Additionally, "the requirements of the Due Process Clause must be satisfied individually with respect to each defendant in a case." *Id.* at 1113 n.15.

Here, Florida has effectively conceded that the complaint lacks allegations that any of the purportedly assigned ODD purchases (on which Florida's claims are based) were made in Florida, that any defendant had offices, ODD sales employees or any type of relevant presence in Florida, or that any alleged misconduct took place in Florida.  Instead, relying on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), Florida opposes dismissal by arguing that defendants have failed to meet their burden to show any conflict between Florida law and that of some other state.

Florida mistakes choice-of-law issues for the due process question presented here. "The Due Process Clause . . . requires a court to invalidate the application of a state's law . . . where the state has 'no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction.'" *AT&T Mobility*, 707 F.3d  at 1111 (citing *Hague*, 449 U.S. 302).  "Objections based on the interests of other states are more properly raised under a choice of law analysis." *Id; see also State of Florida v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*) 2011 WL 1100133 (N.D. Cal. 2011) (rejecting substantially identical argument from Florida).[2]

---

[2] While other aspects of this decision are likely undermined by the holding in *AT&T Mobility*, the rejection of any necessity to apply a choice of law analysis under *Shutts* is not.

Finally, Florida's invocation of its "sovereign enforcement" powers do not lessen its obligation to establish connections sufficient to satisfy due process. Whether Florida is enforcing its laws as a damage claimant or a sovereign, the constitutional issues are the same.[3] Accordingly, Count III must be dismissed for failure to allege sufficient facts showing that "more than a *de minimis* amount" of each defendant's "alleged conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took place in [Florida]." *AT&T Mobility*, 707 F.3d at 1113. While there is little indication that Florida will be able to amend to allege that direct sales occurred to its assignors in Florida, or other alleged conspiratorial activity related to those sales took place in the state, leave to amend will be granted. Florida should exercise the right to amend only if it has a good faith basis to do so.

C. Assignments

Defendants contend Florida has alleged insufficient facts regarding the assignments on which it relies to establish standing for both its Sherman Act claim (Count II) and its FAA claim (Count III).[4] Defendants clearly hope to show that, at least until a certain point in time, the language of the assignments cannot be read to encompass the claims Florida is seeking to pursue. For pleading purposes, Florida has made adequately detailed and plausible allegations that assignments exist. The legal sufficiency of those assignments will present questions not readily adjudicatable on a motion to dismiss in any event.[5] Defendants may use discovery to elicit any further details they

---

[3]  Florida suggests that because defendants have not raised a due process challenge to Count I (seeking injunctive relief under state and federal statutes) or to Count IV (the FDUTPA claim), its attack on Count III must fail. Even assuming the portion of Counts I and IV that would involve applying Florida law to the purportedly-assigned "direct purchases" may be barred, defendants' election not to parse those counts does not preclude them from challenging Count III, which *only* arises from "direct purchases" and state law.

[4]  This argument is moot as to the FAA claim unless and until Florida amends to allege a sufficient connection to the state.

[5]  In different factual circumstances, the court in *Sanctuary Surgical Centre, Inc. v. United Healthcare, Inc.*, 2011 WL 6935289, at *4 (S.D. Fla. Dec. 30, 2011) required the plaintiff to allege the specific terms of assignments it contended created standing. While imposing such a requirement may be appropriate in some instances, *Sanctuary Surgical* does not compel a conclusion that the allegations are insufficient here.

6

may need as to Florida's contentions and the precise assignments on which it rests its claims, and then bring a summary judgment motion on the standing issue, if they in good faith believe the assignments are legally insufficient.[6]

## V.  CONCLUSION

The motion to dismiss is granted as to Count III, with leave to amend, for failure to allege sufficient facts to permit application of Florida law. The motion is otherwise denied.

IT IS SO ORDERED.

Dated: 4/8/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[6] The scheduling of any such motion, however, must be appropriately addressed in the case management process.