Daniel A. Sasse (CSB No. 236234)
  dsasse@crowell.com
Angela J. Yu (CSB No. 263212)
  ayu@crowell.com
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California  92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414

Attorneys for Plaintiffs
Ingram Micro Inc. and Synnex Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | MDL Docket No. 3:10-md-02143-RS-JCS |
| This document relates to: | Case No. 3:13-cv-05372-RS |
| Ingram Micro Inc., et al., | **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT** |
| Plaintiffs, | Hon. Richard Seeborg |
| v. | |
| LG Electronics, Inc., et al., | |
| Defendants. | |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A.  Because the Amended Complaint properly alleges Quanta Storage, Inc.'s contacts with the United States, this Court has personal jurisdiction over Quanta Storage, Inc. ................................................................................... 2

        1.  Given the Amended Complaint's allegations that Quanta Storage, Inc. committed intentional anticompetitive acts expressly aimed at the United States, causing injury to victims located in the United States, exercise of personal jurisdiction over Quanta Storage, Inc. is proper ................................................................................................. 4

        2.  Personal jurisdiction over Quanta Storage, Inc. is appropriate, in light of allegations showing a direct nexus between Quanta Storage, Inc.'s collusive actions and Plaintiffs' antitrust claims premised on paying inflated prices in the United States ................................................ 6

        3.  Quanta has made no case whatsoever that this Court's exercise of personal jurisdiction over Quanta Storage, Inc. would be unreasonable ............................................................................................ 7

    B.  Because the Amended Complaint pleads that Plaintiffs directly purchased price-fixed products from the defendants and their co-conspirators, Illinois Brick does not bar Plaintiffs' federal antitrust claims ................................ 9

    C.  The Amended Complaint states a claim to relief that is plausible, with factual allegations that plausibly suggest an illegal agreement involving Quanta and that give fair notice of the nature of the claims against Quanta ......... 9

    D.  Plaintiffs have adequately pled facts that satisfy the requirements of the FTAIA ................................................................................................... 12

III. CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004)................................................................................................3

*Animal Sci. Prods. v. China Minmetals Corp.*,
    654 F.3d 462 (3d Cir. 2011)................................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................9, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ..............................................................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944-SC, 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014) ......................................5

*Continental Bank, N.A. v. Meyer*,
    10 F.3d 1293 (7th Cir. 1993)................................................................................................2

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)..............................................................................................3

*Google Inc. v. Egger*,
    No. C-08-03172 RMW, 2009 WL 1228485 (N.D. Cal. Apr. 30, 2009) ................................8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)........................................................................................................1, 9

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)............................................................................................10

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003)..............................................................................................8

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000)............................................................................................16

*Marcial Ucin, S.A. v. SS Galicia*,
    723 F.2d 994 (1st Cir. 1983) ................................................................................................2

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2012)..............................................................................................14

*Mitan v. Feeney*,
    497 F. Supp. 2d 1113 (C.D. Cal. 2007)................................................................................8

CROWELL
& MORING LLP
ATTORNEYS AT LAW

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

*MSGI Sec. Solutions, Inc. v. Hyundai Syscomm Corp.*,
  No. C 09-03330 RS, 2009 WL 4254457 (N.D. Cal. Nov. 24, 2009) ..........................................8

*Newcal Indus. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) ...............................................................................................9, 10

*Nw. Aluminum Co. v. Hydro Aluminum Deutschland GMBH*,
  No. Civ. 02-398-JE, 2003 WL 23571743 (D. Or. July 3, 2003) ...............................................6

*In re Optical Disc Drive Antitrust Litig.*,
  No. 13-cv-4991, 2014 WL 3378336 (N.D. Cal. July 10, 2014) ...............................................13

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ..................................................................................................7

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ....................................................................................................................2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  785 F. Supp. 2d 835 (N.D. Cal. 2011) ....................................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  822 F. Supp. 2d 953 (N.D. Cal. 2011) ....................................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-1827, 2014 WL 4652126 (N.D. Cal. Sept. 18, 2014) ............................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. C 11-0829, 2011 WL 5444261 (N.D. Cal. Nov. 9, 2011) ...................................................5

*United States v. Hsiung*,
  758 F.3d 1074 (9th Cir. 2014) ...........................................................................................12, 13

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) ........................................................................................ *passim*

**FEDERAL STATUTES**

15 U.S.C.
  § 6a ..........................................................................................................................................12
  § 6a(1)–(2) ...............................................................................................................................13
  § 22 ............................................................................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ....................................................................................................................9

Plaintiffs Ingram Micro Inc. ("Ingram Micro") and Synnex Corporation ("Synnex") hereby oppose Defendants Quanta Storage, Inc.'s and Quanta Storage America, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 35] (the "Motion").

## I.     **INTRODUCTION**

Defendants Quanta Storage, Inc. and Quanta Storage America, Inc. (collectively, "Quanta") participated in a long-running conspiracy to rig bids and fix prices of optical disk drives ("ODD"). Plaintiffs Ingram Micro and Synnex are victims of this conspiracy, overcharged not only for ODDs that they purchased, but also for products containing ODDs that they purchased. In an attempt to avoid liability for its unlawful conduct, Quanta has filed the instant Motion, cobbling together a hodgepodge of arguments, all but one of which have already been specifically rejected by this Court. Quanta offers four bases for dismissal. This Court should reject them all.

First, Quanta argues that this Court lacks personal jurisdiction over Quanta Storage, Inc. ("QSI"), the Taiwanese parent corporation. This argument fails, however, because QSI purposefully directed its illegal conspiratorial activities at the United States and Plaintiffs' claims arise out of those very same activities, thereby establishing specific personal jurisdiction over QSI. Asserting personal jurisdiction over QSI is indeed reasonable, as QSI is already actively defending against related litigations of other victims of the defendants' conspiracy in this Court. And QSI has never challenged personal jurisdiction in those related litigations and has waived the right to challenge personal jurisdiction in this litigation.

Second, Quanta asserts that Plaintiffs fail to allege direct purchases from the defendants or their co-conspirators, such that *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) bars all claims brought under federal antitrust laws. Given that the Amended Complaint [Doc. No. 30] in fact does allege that Plaintiffs purchased price-fixed ODDs and products containing price-fixed ODDs both directly from the defendants and their co-conspirators and directly from others, there is no *Illinois Brick* issue for the Court to decide.

Third, Quanta contends that Plaintiffs fail to state a claim against Quanta. The Amended Complaint, however, pleads enough factual allegations to allow the Court to draw the reasonable

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1  inference that Quanta is liable for the anticompetitive conduct alleged and to raise a reasonable

2  expectation that discovery will reveal evidence of an illegal price-fixing agreement involving

3  Quanta. In fact, this Court has already found that such allegations state a claim against Quanta

4  that is plausible on its face, in permitting related class action complaints to proceed against

5  Quanta.

6  Fourth, Quanta argues that the Amended Complaint fails to adequately plead facts that

7  meet the requirements of the Foreign Trade Antitrust Improvements Act (the "FTAIA"). This

8  argument fails because Plaintiffs have set forth at the pleading stage sufficient allegations to

9  satisfy both the "import exclusion" and "domestic effects exception" to the FTAIA.

10  **II.    ARGUMENT**

11      **A.    Because the Amended Complaint properly alleges Quanta Storage, Inc.'s
             contacts with the United States, this Court has personal jurisdiction over
12           Quanta Storage, Inc.**

13  Quanta asks this Court to dismiss Plaintiffs' claims against QSI, the Taiwanese parent

14  corporation, for lack of personal jurisdiction. It does so, notwithstanding that QSI is a defendant

15  in related class actions and an action brought by the State of Florida, all of which are pending in

16  this Court and in none of which QSI has ever challenged personal jurisdiction. In fact, QSI has

17  and continues to vigorously litigate those cases in this Court.[1] Here, Quanta asks the Court to

18  misapply the law on personal jurisdiction and look only at contacts with California as opposed to

19  all contacts with the United States. A proper application of the governing law affirms that the

20  uncontroverted allegations in the Amended Complaint establish this Court's jurisdiction over

21  QSI.

22  ───────────────
   [1] QSI has waived the right to challenge personal jurisdiction at this juncture, having fully
23  participated and litigated in this multi-district litigation (the "MDL") for nearly four years. *See
   Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (noting that the "defense of lack of
24  jurisdiction over the person [is] waivable" and that a defendant may "effectively consent[] to the
   court's exercise of adjudicatory authority"); *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 996
25  (1st Cir. 1983) ("Lack of personal jurisdiction is a privileged defense that can be waived by
   failure to assert it seasonably, by formal submission in a cause, or by submission through
26  conduct." (internal quotation marks and citation omitted)); *Continental Bank, N.A. v. Meyer*, 10
   F.3d 1293, 1297 (7th Cir. 1993) (concluding that the defendants had waived the defense of
27  personal jurisdiction where the defendants "fully participated in litigation of the merits for over
   two-and-a-half years without actively contesting personal jurisdiction").

28

The court may exercise personal jurisdiction over a defendant where:  1) a statute confers jurisdiction over the defendant; and 2) exercise of jurisdiction over the defendant comports with "constitutional principles of due process" and "traditional notions of fair play and substantial justice." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177, 1180 (9th Cir. 2004) (internal quotation marks and citations omitted).  Where, as here, an action is brought against a corporation pursuant to federal antitrust laws, Section 12 of the Clayton Act confers personal jurisdiction over the corporate defendant.  *See* 15 U.S.C. § 22.  And the first, statutory requirement for exercising personal jurisdiction is met.

As to the second, constitutional requirement, exercise of personal jurisdiction satisfies due process where a non-resident defendant has "minimum contacts" with the forum.  *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013).  In an action, such as this one, brought under Section 12 of the Clayton Act, the forum with which the defendant must have "minimum contacts" is the United States, not – as Quanta suggests – any individual state.  *Action Embroidery*, 368 F.3d at 1180.  The pertinent inquiry is therefore "whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country."  *Id.*  That is, personal jurisdiction is assessed on the basis of the defendant's aggregate contacts with the **United States as a whole** and not, as Quanta suggests, the defendant's contacts with the state where the district court sits.

A plaintiff need only make a "*prima facie* showing of jurisdictional facts" to defeat a motion to dismiss for lack of personal jurisdiction.  *Natural Gas*, 715 F.3d at 741 (internal quotation marks omitted).  In assessing whether the plaintiff has made such a showing, the court accepts as true all uncontroverted allegations in the complaint and "resolves all disputed facts in favor of the plaintiff."  *Action Embroidery*, 368 F.3d at 1177; *Natural Gas*, 715 F.3d at 741 (internal quotation marks and citations omitted).

General personal jurisdiction over a defendant exists where the defendant's activities within the forum are "substantial" or "continuous and systematic."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).  The uncontroverted allegations of the Amended Complaint explain that throughout the six-year duration of the price-fixing conspiracy

1   in which it participated, QSI "manufactured, sold, and/or distributed ODDs throughout the United

2   States and directly caused ODDs to be imported into the United States." Am. Compl. ¶ 54. The

3   Amended Complaint further pleads that QSI "controls an integrated global enterprise comprising

4   itself and other entities, including [Defendant] Quanta Storage America, Inc.," which is a wholly-

5   owned subsidiary of QSI based in California. Am. Compl. ¶¶ 54, 55. These allegations are

6   sufficient to support this Court's exercise of general personal jurisdiction over QSI.

7       Specific personal jurisdiction over QSI also exists. To permit exercise of specific

8   personal jurisdiction over the defendant:

9       1) [t]he non-resident defendant must purposefully direct his activities or
10      consummate some transaction with the forum or resident thereof; or perform some
        act by which he purposefully avails himself of the privilege of conducting
11      activities in the forum, thereby invoking the benefits and protections of its laws;

12      2) the claim must be one which arises out of or relates to the defendant's forum-
        related activities; and

13      3) the exercise of jurisdiction must comport with fair play and substantial justice,
        i.e. it must be reasonable.
14

15  *Natural Gas*, 715 F.3d at 741–742. Once a plaintiff establishes the first two prongs of this three-

16  prong personal jurisdiction test, the burden shifts to the defendant to "make a 'compelling case'

17  that the exercise of jurisdiction would be unreasonable." *Natural Gas*, 715 F.3d at 745 (quoting

18  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–477 (1985)).

19          1.      **Given the Amended Complaint's allegations that Quanta Storage, Inc.
                    committed intentional anticompetitive acts expressly aimed at the
20                  United States, causing injury to victims located in the United States,
                    exercise of personal jurisdiction over Quanta Storage, Inc. is proper.**
21

22          The first prong of the specific personal jurisdiction test is met here. Where the defendant

23  1) "committed an intentional act" 2) "expressly aimed at the forum" 3) "causing harm that the

24  defendant knows is likely to be suffered in the forum," the defendant purposefully directed its

25  activities at the forum. *Natural Gas*, 715 F.3d at 743 (internal quotation marks omitted).

26  Allegations that the defendant's anticompetitive actions were "intended to have, and did have, a

27  direct, substantial[,] and reasonably foreseeable effect on commerce in [the forum]" demonstrate

28  that the defendant committed an intentional act expressly aimed at the forum. *Natural Gas*, 715

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

F.3d at 743–744 (internal quotation marks omitted).  And allegations that "each defendant committed one or more acts or omissions . . . , which caused an injury to person or property within [the forum]" establish that the defendant's intentional act caused harm that the defendant knows is likely to be suffered in the forum.  *Natural Gas*, 715 F.3d at 744 (internal quotation marks omitted).

These are precisely the kinds of allegations pled in the Amended Complaint in this action. The uncontroverted allegations in the Amended Complaint show that:  1) QSI intentionally joined and committed acts in furtherance of a price-fixing conspiracy directed at purchasers of ODDs in the United States[2]; 2) QSI and its co-conspirators expressly aimed their conspiratorial acts at the United States,[3] exchanging information on pricing for major ODD purchasers based in the United States[4]; and 3) QSI conspired to charge entities in the United States supracompetitive prices for ODDs.[5]  These allegations are more than sufficient to make a *prima facie* showing that QSI committed intentional anticompetitive actions directed at the United States, with full knowledge that those acts would cause harm to ODD purchasers located in the United States.  *See Natural Gas*, 715 F.3d at 743–744; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 1091589, at *6 (N.D. Cal. Mar. 13, 2014) (holding that allegations that a French company had engaged "in price-fixing discussions concerning products actually sold to and purchased in the United States" were sufficient to show purposeful direction); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-0829, 2011 WL 5444261, at *5 (N.D. Cal. Nov. 9, 2011) (holding that a Taiwanese corporation was subject to personal jurisdiction where the plaintiffs

---

[2]  *See, e.g.*, Am. Compl. ¶ 230 ("The conduct alleged herein was directed specifically at customers throughout the United States, including customers in California.").

[3]  *See, e.g.*, Am. Compl. ¶ 12 ("[E]ach Defendant . . . was part of an illegal conspiracy to engage in cartel activity . . . that was directed at and was intended to have and did have a direct, substantial, and reasonably foreseeable effect of causing injury to the business or property of . . . entities residing in . . . the United States, including in California.").

[4]  *See, e.g.*, Am. Compl. ¶¶ 136, 162, 170, 173, 177, 178, 187.

[5]  *See, e.g.*, Am. Compl. ¶¶ 136, 162, 170, 173, 177, 178, 187.  *See also* Am. Compl. ¶ 121 ("Defendants and their co-conspirators reached agreements, the object of which was to stabilize the prices for ODDs in numerous ways throughout the Conspiracy Period.").

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1  demonstrated that it exchanged competitor pricing information for products sold in the United

2  States); *Nw. Aluminum Co. v. Hydro Aluminum Deutschland GMBH*, No. Civ. 02-398-JE, 2003

3  WL 23571743, at \*4 (D. Or. July 3, 2003) (concluding that the exercise of personal jurisdiction

4  over a German corporation was proper based on allegations that it "participated in a conspiracy to

5  fix prices of carbon cathode block around the world, and caused its wholly owned subsidiary to

6  raise its prices in the American market").

7          **2.**     **Personal jurisdiction over Quanta Storage, Inc. is appropriate, in light**

8                  **of allegations showing a direct nexus between Quanta Storage, Inc.'s**
                   **collusive actions and Plaintiffs' antitrust claims premised on paying**

9                  **inflated prices in the United States.**

10        The second prong of the specific personal jurisdiction test is also satisfied here.  A claim

11  arises out of the defendant's forum-related activities where a "direct nexus exists between [the

12  defendant's] contacts [with the forum] and the cause of action."  *Natural Gas*, 715 F.3d at 742

13  (internal quotation marks and citation omitted).  Placing this but-for inquiry in the antitrust

14  context, a complaint demonstrates that the plaintiff's claim arises out of the defendant's forum-

15  related activities where it sets forth allegations that the defendant's collusive actions "resulted in

16  the plaintiff[] paying inflated prices" in the forum and that the plaintiff "paid higher prices . . .

17  than [it] otherwise would have paid if the defendants' conspiracy had not existed."  *Natural Gas*,

18  715 F.3d at 742–743, 743 n.23.

19        Plaintiffs in this case allege just that.  The Amended Complaint states claims that stem

20  directly from the participation of QSI and its co-conspirators in a price-fixing conspiracy that

21  caused ODD purchasers based in the United States to pay artificially inflated prices for ODDs.[6]

22  In fact, but for QSI's and its co-conspirators' collusive actions, Plaintiffs would not have been

23  injured in purchasing ODDs.[7]  A clear and direct nexus between QSI's forum-related

---

24  [6]  *See, e.g.*, Am. Compl. ¶ 1 ("Plaintiffs paid higher prices for ODDs and products containing

25  ODDs . . . than they would have paid in a competitive market as a direct result of Defendants' and
   their co-conspirators' unlawful conduct.").

26  [7]  *See, e.g.*, Am. Compl. ¶¶ 253, 260 ("As a proximate result of Defendants' and their co-
   conspirators' unlawful conduct, Plaintiffs have suffered injury to their business or property in that

27  they paid higher prices for ODDs and ODD Products than they otherwise would have paid in the
   absence of the unlawful conduct of Defendants and their co-conspirators.").

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW
-6-
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1    anticompetitive activities and Plaintiffs' causes of action therefore exists.  *See Natural Gas*, 715

2    F.3d at 742–743, 743 n.23.  And in turn, specific jurisdiction over QSI exists.

3           **3.**      <u>**Quanta has made no case whatsoever that this Court's exercise of**</u>
     <u>**personal jurisdiction over Quanta Storage, Inc. would be**</u>
4                  <u>**unreasonable.**</u>

5         Because Plaintiffs have established the first two prongs of the three-prong specific

6    personal jurisdiction test, the burden on the third prong shifts to Quanta.  *Natural Gas*, 715 F.3d

7    at 745.  To meet that burden, Quanta must "make a compelling case that the exercise of

8    jurisdiction would be unreasonable."  *Id.* (internal quotation marks and citation omitted).  Quanta,

9    however, has made no case whatsoever that the exercise of personal jurisdiction would be

10   unreasonable here, let alone a "compelling" one.

11        In determining whether the exercise of jurisdiction would be reasonable, the court

12   considers seven factors:

13       (1) the extent of the defendant's purposeful interjection into the forum state,
     (2) the burden on the defendant in defending in the forum, (3) the extent of the
14   conflict with the sovereignty of the defendant's state, (4) the forum state's interest
     in adjudicating the dispute, (5) the most efficient judicial resolution of the
15   controversy, (6) the importance of the forum to the plaintiff's interest in
     convenient and effective relief, and (7) the existence of an alternative forum.
16

17   *Natural Gas*, 715 F.3d at 745 (internal citation omitted).  Unless the defendant's burden in

18   litigating in the forum is "so great as to constitute a deprivation of due process, it will not

19   overcome clear justifications for the exercise of jurisdiction."  *Panavision Int'l, L.P. v. Toeppen*,

20   141 F.3d 1316, 1323 (9th Cir. 1998) (internal quotation marks and citations omitted).

21        Although Quanta fails to present any affirmative case for why it would be unreasonable

22   for this Court to exercise personal jurisdiction over QSI, Plaintiffs highlight that a number of

23   these factors weigh against such a finding.[8]  First, as discussed in Section II.A.1. above, QSI

24   purposefully interjected its activities into the United States in knowingly and intentionally joining

25   a price-fixing conspiracy aimed at ODD purchasers in the United States.  Second, the burden on

26

27   [8]  Plaintiffs reserve all rights to address these factors in more detail if Quanta attempts to make
     any case that the exercise of jurisdiction would be unreasonable.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1    QSI in defending this litigation in this Court is minimal.  This case does not present a situation

2    where compelling QSI to remain before this Court will force it to litigate in a distant and

3    unknown forum.  QSI is already vigorously litigating substantially similar claims in related cases

4    coordinated in this multi-district litigation (the "MDL").  And there will be common discovery

5    across the various cases.  Third, with the MDL and all other defendants – including QSI's U.S.

6    affiliate – already before this Court, this Court undoubtedly represents the most convenient and

7    efficient forum for Plaintiffs to bring their claims.  Fourth, any concerns over Taiwanese

8    sovereignty or interest in adjudicating this dispute are outweighed by the strong interest U.S.

9    federal courts have in enforcing the antitrust laws, particularly where key victims of the

10   conspiracy reside in the United States and where the defendants have specifically targeted their

11   illegal activities at the United States.

12          For all of the reasons articulated above, the Court should assert personal jurisdiction over

13   QSI and should deny Quanta's motion to dismiss pursuant to Federal Rule of Civil Procedure

14   12(b)(2).  Should the Court conclude otherwise, Plaintiffs respectfully request that the Court

15   permit Plaintiffs to conduct jurisdictional discovery.  To obtain discovery on jurisdictional facts, a

16   plaintiff must make a "colorable showing that the court can exercise personal jurisdiction over the

17   defendant."  *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) (internal quotation

18   marks and citation omitted).  *See also Google Inc. v. Egger*, No. C-08-03172 RMW, 2009 WL

19   1228485, at *1 (N.D. Cal. Apr. 30, 2009).  This "colorable showing" requires only that the

20   plaintiff offer " 'some evidence' tending to establish personal jurisdiction over the defendant."

21   *Id.* (internal citation omitted).  Plaintiffs have done that here.  And the Court should grant the

22   opportunity to develop a "more satisfactory showing of the facts."  *Laub v. U.S. Dep't of Interior*,

23   342 F.3d 1080, 1093 (9th Cir. 2003) (internal quotation marks omitted).  *See also MSGI Sec.*

24   *Solutions, Inc. v. Hyundai Syscomm Corp.*, No. C 09-03330 RS, 2009 WL 4254457, at *4 (N.D.

25   Cal. Nov. 24, 2009) (granting leave to conduct jurisdictional discovery where the record was

26   "insufficient to determine whether a sound basis for exercising jurisdiction" existed).

27   / / /

28   / / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

**B.**   **Because the Amended Complaint pleads that Plaintiffs directly purchased price-fixed products from the defendants and their co-conspirators, _Illinois Brick_ does not bar Plaintiffs' federal antitrust claims.**

Quanta claims that Plaintiffs "fail to adequately allege that they purchased the allegedly price-fixed ODDs directly from the defendants or their co-conspirators." Mot. at 7. Quanta misreads the Amended Complaint. In the Amended Complaint, Plaintiffs make clear that they purchased price-fixed ODDs and products containing price-fixed ODDs both directly from the defendants and their co-conspirators **_and_** directly from others.[9] _See_ Am. Compl. ¶¶ 15, 18 ("During the Conspiracy Period, [Plaintiff] purchased price-fixed ODDs and ODD Products containing price-fixed ODDs manufactured by Defendants and their co-conspirators directly from Defendants and their co-conspirators . . . **_and_** others." (emphasis added)). _Illinois Brick Co. v. Illinois_, 431 U.S. 720 (1977) thus has no application here.

**C.**   **The Amended Complaint states a claim to relief that is plausible, with factual allegations that plausibly suggest an illegal agreement involving Quanta and that give fair notice of the nature of the claims against Quanta.**

Under Federal Rule of Civil Procedure 8, a pleading must comprise a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not mandate "heightened fact pleading of specifics." _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007). That is, a complaint need not plead "detailed factual allegations." _Twombly_, 550 U.S. at 555. It need only set forth "enough facts to state a claim to relief that is plausible on its face." _Twombly_, 550 U.S. at 570. A complaint meets this plausibility standard where it contains factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009). And in assessing a motion to dismiss a complaint, the court draws **_all_** reasonable inferences in favor of the plaintiff. _See Newcal Indus. v. Ikon Office Solution_, 513 F.3d 1038, 1043 n.2 (9th

---

[9] Quanta's stray remarks that the Amended Complaint "concedes that Plaintiffs never purchased the specific ODD and ODD Products that were the focus of the alleged antitrust conspiracy" are misguided and incorrect. Mot. at 7. Indeed, these remarks point to allegations in the Amended Complaint that are substantially identical or similar to allegations in the Direct Purchaser Plaintiffs' operative complaint. _See, e.g._, Third Consolidated Direct Purchaser Class Action Compl. ¶ 379.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1    Cir. 2008).  Likewise, the court not only accepts as true all factual allegations in the complaint,

2    but also construes the complaint "in the light most favorable to the [plaintiff]."  *Knievel v. ESPN*,

3    393 F.3d 1068, 1072 (9th Cir. 2005).

4         Quanta contends that the Amended Complaint lacks "specific factual allegations

5    concerning [Quanta's] alleged participation in a price-fixing conspiracy" or "any anticompetitive

6    acts."  Mot. at 9.  This contention is untenable.  In fact, Quanta's stance rests on a myopic read of

7    the Amended Complaint that mischaracterizes factual allegations and ignores others.

8         Quanta, for example, dubs deficient the Amended Complaint's Paragraph 136.  Paragraph

9    136 offers factual allegations of a September 2004 e-mail that a competitor of Quanta sent to two

10   Quanta employees, whom the Amended Complaint identifies by name.  This e-mail confirmed

11   that an agreement with another competitor of Quanta was "still in place."  Am. Compl. ¶ 136.

12   Likewise, Quanta takes issue with the factual allegations in Paragraph 173.  These allegations

13   plead an August 2008 e-mail that a competitor of Quanta sent to a named Quanta employee,

14   disclosing pricing of competitors.  In Quanta's estimation, "none of those allegations indicate"

15   that Quanta "reached any agreement with competitors" or "otherwise committed any

16   anticompetitive acts" – simply because Quanta was the recipient, rather than the sender, of the

17   suspect e-mail communications.  Mot. at 9, 10–11.  Yet at this stage of the litigation, all

18   reasonable inferences are to be drawn in favor of Plaintiffs, not Quanta.  *See Newcal*, 513 F.3d at

19   1043 n.2.  And factual allegations that Quanta received – from its competitors – pricing

20   information of its competitors and confirmation of an agreement in place with its competitors

21   plausibly suggest an illicit accord involving Quanta.

22        Then there are the well-pleaded allegations that Quanta ignores.  Paragraph 162, for

23   example, sets forth factual allegations of an October 2007 e-mail explicitly stating that Quanta

24   provided pricing information to its competitor.

25        Paragraph 170 quotes a May 2008 e-mail, in which Quanta admits to speaking with a

26   competitor to obtain information on multiple competitors' pricing.  In an exercise in selective

27   hearing, Quanta claims that Paragraph 170 "accuses [Quanta] of nothing more than being

28   informed of pricing information."  Mot. at 9–10.  Quanta is wrong.  Paragraph 170 in fact also

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1   alleges Quanta's express statement that based on that competitor pricing information, Quanta

2   "can keep as high as possible" its own pricing.

3       The Amended Complaint goes on to present further factual allegations specific to Quanta

4   and its misconduct.  In Paragraphs 177 and 178, Plaintiffs plead internal Quanta communications,

5   avowing an in-person meeting with a competitor where Quanta gathered information on its

6   competitor's bidding strategies and pricing.  Quanta portrays these Paragraphs as inconsequential.

7   According to Quanta, absent are allegations that it furnished its own information to its competitor

8   or that it "reached any agreement concerning . . . pricing."  Mot. at 10.  Quanta is once again

9   wrong, exhibiting willful blindness toward factual allegations that Quanta divulged its own

10   pricing to its competitors (Am. Compl. ¶ 162) and glossing over factual allegations that Quanta

11   identified obtaining "consensus" on pricing as the aim of the in-person meeting with its

12   competitor (Am. Compl. ¶ 177).  Indeed, elsewhere in the Amended Complaint are factual

13   allegations that a named Quanta employee specifically instructed another Quanta employee to

14   "work out some kind of agreement with [Quanta's competitor], not to be too extreme" in its

15   bidding strategy.  Am. Compl. ¶ 187.

16       None of these allegations are "conclusory" or "general."  Mot. at 8, 9.  Nor do these

17   allegations comprise mere "formulaic recitation[s] of the elements of a cause of action."  Mot. at

18   8.  Quanta's attempts to suggest otherwise are simply disingenuous.  Far from "mere 'labels and

19   conclusions,'" the Amended Complaint's allegations are sufficiently detailed to give Quanta fair

20   notice of the nature of the claims against it and to give Quanta a fair opportunity to defend against

21   those claims.  *Id.*  And the Amended Complaint offers "enough fact to raise a reasonable

22   expectation that discovery will reveal evidence of illegal agreement" involving Quanta.

23   *Twombly*, 550 U.S. at 556.  Operative pleading standards require no more.  *See Twombly*, 550

24   U.S. at 555, 556.

25       When taken together, rather than mischaracterized, the Amended Complaint's factual

26   allegations allow this Court to draw the reasonable inference that Quanta is liable for the

27   anticompetitive conduct alleged.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp.

28   2d 1011, 1019 (N.D. Cal. 2010) ("In complex, multinational, conspiracy cases, courts in this

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1    district review specific allegations in the context of the complaint taken as a whole[,] . . .

2    consistent with the Supreme Court's admonition . . . that the 'character and effect of a conspiracy

3    are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as

4    a whole.'").  This Court has indeed already found that these allegations state a claim against

5    Quanta that is plausible on its face, in permitting class action complaints alleging the same

6    conspiracy in the same industry in the same time period to proceed against Quanta.  *See* Second

7    Consolidated Direct Purchaser Class Action Compl. ¶ 279 and Indirect Purchaser Plaintiffs' Third

8    Amended Class Action Compl. ¶¶ 67, 83, 96, 97, 98, 107 (containing allegations substantially

9    identical or similar to those in the Amended Complaint's Paragraphs 136, 162, 170, 173, 177, and

10   178).  Accordingly, the Court should deny Quanta's motion to dismiss pursuant to Federal Rule

11   of Civil Procedure 12(b)(6).

12          **D.     Plaintiffs have adequately pled facts that satisfy the requirements of the
             FTAIA.**

13

14          Quanta is the only Defendant in this case to argue that the Amended Complaint fails to

15   adequately plead the requirements of the FTAIA.  Specifically, Quanta asserts that Plaintiffs –

16   entities that purchased, paid for, and took delivery of all of the ODDs at issue in this litigation in

17   the United States – have failed to allege even a colorable case for application of the FTAIA's

18   "import exclusion" or "direct effects exception."  This Court recently rejected that same argument

19   with respect to similarly-situated plaintiffs in a related litigation, and should do so again here.

20          As this Court is well aware, the FTAIA declares that conduct involving wholly-foreign

21   commerce generally falls outside of the Sherman Act, while at the same time reaffirming that

22   certain such conduct remains within the Act's reach.  First, "conduct involving . . . import trade or

23   import commerce" remains subject to the Sherman Act.  15 U.S.C. § 6a (introductory clause).

24   Under the so-called "import exclusion," conduct "involving" U.S. import trade or commerce is

25   not subject to the special requirements of the FTAIA.  *See United States v. Hsiung*, 758 F.3d

26   1074, 1086 (9th Cir. 2014).  Second, conduct involving wholly-foreign commerce nonetheless

27   remains subject to the Sherman Act if it "has a direct, substantial and reasonably foreseeable

28   effect" on ***either*** U.S. import ***or*** domestic commerce, and that effect "gives rise to a [Sherman

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1    Act] claim." 15 U.S.C. § 6a(1)–(2).  Under the so-called "direct effects exception," even purely

2    foreign commerce falls under the Sherman Act if it has a sufficiently proximate, anticompetitive

3    effect on U.S. markets.  *See Hsiung*, 758 F.3d at 1086.  Plaintiffs have adequately alleged that

4    both the "import exclusion" and "direct effects exception" apply here.

5         The Amended Complaint asserts that Plaintiffs purchased ODDs at inflated prices and

6    also makes clear that:  1) Plaintiffs made all of their ODD and ODD product purchasing and

7    pricing decisions in their respective offices in the United States; 2) all of Plaintiffs' negotiations

8    for the purchase of ODDs and ODD products took place in the United States and were ultimately

9    controlled at Plaintiffs' respective headquarters in the United States; 3) all Plaintiffs' purchase

10   orders for ODDs and ODD products were issued in the United States; 4) all invoices for ODDs

11   and ODD products were sent to Plaintiffs' respective offices in the United States; 5) all of the

12   ODDs and ODD products that Plaintiffs purchased from Defendants, their co-conspirators, and

13   others were delivered to Plaintiffs' respective warehouses in the United States; and/or 6) all of the

14   ODDs and ODD products that Plaintiffs purchased from Defendants, their co-conspirators, and

15   others were paid for by Plaintiffs in the United States.  *See* Am. Compl. ¶¶ 16, 19.

16        These allegations mirror those made by the Acer plaintiffs, which recently faced – and

17   successfully defeated – a similar motion before this Court.  *See In re Optical Disc Drive Antitrust*

18   *Litig.*, No. 13-cv-4991, 2014 WL 3378336, at *1 (N.D. Cal. July 10, 2014) ("Each plaintiff

19   alleges that it made ODD purchases pursuant to negotiations that took place in California, with

20   purchase orders issued in California, and where they took possession of the ODDs in California.")

21   (the "Acer Decision").  In the Acer Decision, the Court stated that, with respect to the import

22   exclusion, an allegation that a plaintiff  "'took possession' of the ODDs in California" is

23   "consistent with a state of facts in which defendants were the importers, or at least sufficiently

24   involved in the importation, for the exclusion to apply."  *See id*. at *2.  And, with respect to the

25   direct effects exception, the Court noted that the plaintiffs' "status as domestic entities doing

26   business in this country" made the defendants' request for dismissal at the pleading stage

27   "substantially less compelling."  *See id*. at *3.  On these bases, the Court rejected the defendants'

28   motion to dismiss Acer's claims based on the FTAIA.  *See id*.  It should do the same here.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

Moreover, contrary to what Quanta asserts, application of the import exclusion has not been limited to only those situations where Defendants, themselves, import the price-fixed product at issue into the United States. *See* Mot. at 12. Courts that have recently addressed the issue have applied the exclusion more broadly. For example, in *Animal Science Products v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011), the Third Circuit made clear that "[f]unctioning as a physical importer **may** satisfy the import trade or commerce exception, but it is not a necessary prerequisite." *Id*. at 470 (emphasis added). Instead, the exclusion "requires that the defendants' conduct target import goods or services." *Id*.[10] Therefore, allegations that "defendants' conduct is directed at a U.S. import market" can satisfy the exclusion at the pleading stage. *See id*. at 471. The Amended Complaint contains these types of allegations. *See, e.g.*, Am. Compl. ¶¶ 9, 13 ("Defendants and their co-conspirators maintained agents and representatives in California who supported sales of ODDs and ODD Products to customers in California and elsewhere."); ¶ 230 ("[T]he conduct of Defendants and their co-conspirators was directed both at customers in the United States and at United States import commerce for ODDs and ODD Products . . . [and] was directed specifically at customers throughout the United States, including customers in California."). Further, a Court in this District just held that the import exclusion is satisfied even where the defendants, themselves, did not import the particular product that forms the basis of the plaintiff's claim, because the defendants' underlying conduct involved at least some direct sales to the United States and was intended to "suppress and eliminate competition" in the United States. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2014 WL 4652126, at *2 (N.D. Cal. Sept. 18, 2014) (citing *Hsiung*, 758 F.3d at 1091).

Further, Quanta's claim that Plaintiffs' allegations fail to allege an effect that is sufficiently "direct" under the direct effects exception to the FTAIA should also be rejected. Plaintiffs' core allegation is that Defendants' illegal conspiracy had the direct and immediate consequence of causing Plaintiffs to pay higher prices for ODDs and ODD products in the United

---

[10] This "targeting" standard was also cited with approval by the Seventh Circuit in *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 855 (7th Cir. 2012).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

States.[11] *See, e.g.*, Am. Compl. ¶ 11 ("During the Conspiracy Period, Defendants' and their co-conspirators' conspiracy adversely affected the prices of ODDs and ODD Products in the United States, which moved through, were sold in, or used in California.  In particular, Defendants' and their co-conspirators' conspiracy directly and adversely affected the prices of ODDs and ODD Products that Plaintiffs purchased."); ¶ 231 ("Plaintiffs have suffered direct, substantial, and reasonably foreseeable injuries as a result of their purchases of ODDs and ODD Products at supra-competitive levels due to Defendants' and their co-conspirators' conspiracy to raise, fix, stabilize, or maintain the price of ODDs.  Defendants' and their co-conspirators' conspiracy artificially inflated the price of ODDs, including ODDs incorporated into ODD Products, causing Plaintiffs to pay higher prices for such products than they would have in the absence of Defendants' and their co-conspirators' conspiracy."); ¶ 248 ("Plaintiffs paid higher prices for ODDs and ODD Products than they would have paid in a competitive market as a direct result of Defendants' and their co-conspirators' unlawful conduct."); ¶ 254 ("As a direct result of Defendants' and their coconspirators' conduct, the injury that Plaintiffs sustained is the payment of supra-competitive prices for ODDs and ODD Products.").  As Courts in this District have recognized, "it is difficult to imagine" the price-fixing of component products abroad having a more "direct" effect on U.S. domestic commerce than "caus[ing] the prices of the finished products in the United States to increase."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F. Supp. 2d 953, 966 (N.D. Cal. 2011).

      For the reasons set forth above, Plaintiffs have adequately alleged the requirements of the FTAIA in its Amended Complaint.[12]

---

[11]  Contrary to what Quanta claims, Plaintiffs' allegations relating to HP and Dell pricing creating a benchmark for other pricing in the industry has no bearing on the "directness" of adverse effects alleged by Plaintiffs.  Those allegations simply assert that ODD pricing across the industry was interrelated, not that the inflated prices that Plaintiffs paid were dependent on certain decisions or conduct by Dell or HP.

[12]  Plaintiffs do not concede that the FTAIA also applies to its state law antitrust claims for the same reasons set forth by Acer in its Response in Opposition to Defendants' Motion to Dismiss (MDL Doc. No. 1288).  But if the FTAIA were to be applied to such claims, for all the reasons set forth above, Plaintiffs' allegations are sufficient.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 785 F. Supp. 2d 835, 844 (N.D. Cal. 2011) (ruling that state law claims satisfy the FTAIA to the same extent satisfied by federal law claims).

1

**III.    CONCLUSION**

2       For the foregoing reasons, the Court should dismiss Quanta's Motion in its entirety.

3   Although they believe that their allegations with respect to Quanta meet all applicable standards,

4   Plaintiffs Ingram Micro and Synnex respectfully request leave to amend their complaint to the

5   extent necessary to address any deficiencies that the Court identifies. *See Lopez v. Smith*, 203

6   F.3d 1122, 1130 (9th Cir. 2000) (The Ninth Circuit has "repeatedly held that a district court

7   should grant leave to amend even if no request to amend the pleading was made, unless it

8   determines that the pleading could not possibly be cured by the allegation of other facts."

9   (internal quotation marks and citations omitted)).

10

11  Dated:  September 29, 2014                    CROWELL & MORING LLP

12

13                                       By:   **/S/ Daniel A. Sasse**

14                                             Daniel A. Sasse
                                               Angela J. Yu
15
                                               Attorneys for Plaintiffs
16                                             Ingram Micro Inc. and Synnex Corporation

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

In accordance with Rule 5-5 of the Local Rules of Practice in Civil Proceedings Before the United States District Court for the Northern District of California, I, Daniel A. Sasse, hereby certify under penalty of perjury under the laws of the United States of America that on September 29, 2014, a true copy of the above document was filed through the Court's Case Management/Electronic Case Filing ("CM/ECF") System and served by that System upon all counsel of record registered for the System and deemed to have consented to electronic service in the above-captioned case.  Any other counsel of record will be served by electronic mail and/or first-class mail on the same date.

Dated:        September 29, 2014              CROWELL & MORING LLP


By:   **/S/ Daniel A. Sasse**

Daniel A. Sasse

Attorneys for Plaintiffs
Ingram Micro Inc. and Synnex Corporation

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-17-

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AMENDED COMPLAINT;
CASE NO. 3:13-CV-05372-RS