Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In Re Optical Disk Drive Products Antitrust Litigation* | Case No: 3:10-MD-2143-RS <br><br> MDL 2143 |

## OBJECTIONS OF CONNER ERWIN

### PRELIMINARY STATEMENT

In 2010, this Court invited various plaintiffs' counsel to submit applications to be lead counsel on behalf of the indirect purchaser class. Lead counsel, Hagen Berman Sobol Shapiro LLP ("Hagens Berman") submitted fee and expense proposals (Dkt. 51). In that proposal, Hagens Berman acknowledged that even where courts allow the proposal to remain sealed (which happened here), that proposal would ultimately be disclosed to the class (which did not happen here). (Dkt. 51, at 2). Without disclosure of the Hagens Berman proposal, the class has no way of knowing whether Hagens Berman proposed a lower fee to get the appointment as

lead counsel, but now seeks a much higher fee (25%) after a settlement has been achieved. Although the record does not disclose whether Hagens Berman used that kind of bait and switch tactic, it does disclose that Hagens Berman seeks fees of 25% ($31,125,000) of the $124.5 million settlement fund. That fee request is simply too high in a "megafund" settlement such as this.

## STANDING AND PROCEDURES TO OBJECT

Objectors' full names, addresses and telephone numbers are as follows:

Conner Erwin
10239 Scull Creek Dr.
Austin, Texas 33730
Tel: (727) 403-8884
Email: surfsolution@gmail.com

Objector is a class members who timely filed a claim and therefore has standing to make their objections. *See* Declaration of Conner Erwin, Exhibit A hereto, incorporated by reference as though set forth in full herein.

Objector is represented by Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP and BANDAS LAW FIRM, PC. Christopher A. Bandas of Bandas Law Firm, P.C does not intend on making an appearance for himself or his firm. Objectors rely upon the documents contained in the Court's file in support of these objections.

Objectors incorporate by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and

adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

## OBJECTIONS

A.  **25% Is Excessive for a Megafund Settlement**

The Ninth Circuit's benchmark for counsel's award in a percentage-of-fund recovery is 25%. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). That is what class counsel seeks here, without acknowledgement that the 25% Ninth Circuit benchmark is inapplicable to megafund settlements..

One factor the Court must consider in determining the reasonableness of the lawyers' award is the size of the fund itself. *Vizcaino* v. Microsoft, 290 F.3d 1043, at 1047 (9th Cir. 2002). Class counsel are entitled to a fee—a reasonable fee, one "that is sufficient to induce a capable attorney to undertake the representation" but not produce a lawyer's windfall. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

And while 25% of a $10 million recovery, may be appropriate, this case involves a settlement many times that size. It isn't ten times as hard to try a $100 million case as it is a $10 million case; more to the point, it isn't ten times easier to try a $100 million case than a billion-dollar case. *See In re NASDAQ Marketmakers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("It is generally not 150 times

more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case.").

As the Seventh Circuit recently recognized, one of the effects of those economies of scale is that it is almost as expensive to conduct discovery in a $100 million case as in a $200 million case.... There may be some marginal costs of bumping the recovery from $100 million to $200 million, but as a percentage of the incremental recovery these costs are bound to be low. It is accordingly hard to justify awarding counsel as much of the second hundred million as of the first. *Silverman v. Motorola Solutions, Inc.*, No. 12-2339, ___ F.3d. ___, 2013 WL 4082893 at *3 (7th Cir. Aug. 14, 2013).

Because many of the costs of proving liability in a large case are relatively fixed, the marginal cost of proving additional damages is low—and, frequently, declining. That is why private litigants would almost certainly not agree to a fee like the one the Class Counsel now seeks and that is presumably why this Court asked Plaintiffs' counsel in 2010 to submit fee proposals.

The fee request here suffers from the same flaw that the Seventh Circuit criticized: it "does not identify suits seeking more than $100 million in which solvent clients agree *ex ante* to pay their lawyers a flat portion of all recoveries, as opposed to a rate that declines as the recovery increases." *Id.*

4

This is not a car-wreck case, or a worker's compensation case, or even a relatively valuable medical-malpractice case. It is a major, international antitrust case where the damages, if proven, could total billions.

The market rate for cases like this is nowhere near 25% of the class's recovery. High-quality counsel are willing to work on high-stakes antitrust cases like this one in exchange for less than ten percent of a recovery. *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 84 (S.D.N.Y. 2000) (awarding lead-counsel status to Boies, Schiller & Flexner LLP); 2001 WL 170792 at *1 (Feb. 22, 2001) (revealing counsel's fee as 4.7% of total recovery). They are even willing to negotiate a hard cap that prevents their fees from rising over 14% of the recovery and allowing the class to recover 100% of any recovery over a set amount. *In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190, 1198 (N.D. Ill. 1996) (sliding-scale recovery at capped $3.5 million with no additional fees for recovery over $25 million).

Noted class action commentator Brian Fitzpatrick concedes that typical awards for settlements a magnitude lower than this one are far less than 25%. *See* Brian Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. EMPIRICAL L. STUD. 811, 839 (2010).

The Ninth Circuit has not yet taken the step of requiring a sliding scale. Nevertheless, this Court should adopt such an approach now, which should ultimately be adopted in the Ninth Circuit. Other lawyers in cases that were riskier

and more complex got less. Perhaps most striking are the lawyers in the long-running *Cobell v. Salazar Indian-trust* litigation, who won almost $3.5 billion in direct and indirect relief for their clients. 679 F.3d 909, 914–15 (D.C. Cir. 2012). That case lasted for sixteen years and involved 24 written opinions and multiple appeals to the D.C. Circuit, a court with a higher benchmark—20% to 30% percent—that the Court. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993).

*Cobell* involved unprecedented, cutting-edge issues of rarely litigated Indian law statutes. The litigation, and its resolution, were complex enough that Congress had to pass a statute to approve the settlement. For all of this time, for all of that recovery, and for all of that risk, the *Cobell* lawyers received $99 million. *Cobell*, 679 F.3d at 916 n.5.

Certainly, a $99 million-dollar award is nothing to sneeze at, but that represented 6.5% of the direct benefit of the settlement and only 2.8% of the total value. For recovering 28 times as much for their class, the *Cobell* lawyers received only 4 times as much as the lawyers seek here.

Although courts have some discretion over attorneys' awards, such awards typically "involve a sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increasesy." Court Awarded Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237, 256 (1985).

There is yet another recent example of where a court in this Circuit has followed this approach. In *In re High-Tech Employee Antitrust Litig.*, 11-CV-02509-LHK, (N.D. Cal. Sept. 2, 2015), 2015 WL 5158730, at *3, *13, Class Counsel requested 19.54% of a $415 million common fund, but the court reduced their fees to 9.8% of the fund. As the court explained, the fee award was "below the 25% benchmark typically awarded in the Ninth Circuit but is consistent with fee awards for megafund settlements." (*Id.* at 13). This was consistent with a study cited that identified the "median attorneys' fees award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%[.]" (Id. at 14 [citing Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action Settlements: 1993–2008, 7 J. Empirical Legal Stud. 248, 265 tbl.7 (2010)]).

There is simply no justification for Class Counsel's request for 25% of a megafund settlement. It would be unprecedented in this Circuit and conflict with the well established law of sister Circuits. There is also a very real concern that Class Counsel will double-dip as new settlements are achieved. Surely the work already done is useful and materially helps the case against remaining defendants. If Class Counsel again seeks 25% of those future settlements, then, in the aggregate, Class Counsel will be correspondingly overpaid as a percentage of the aggregate, megafund amounts that are ultimately paid in this case. Sure, Class Counsel will incur more time and expenses moving forward against those remaining defendants,

but the marginal "cost" of the litigation to Class Counsel (in both terms of time, expense, risk, etc.) will continue to decrease. That cannot be ignored in connection with the present fee request. In other words, the current 25% fee request is, independently and on a stand-alone basis out of bounds. But when considered in the context of future settlements (assuming Class Counsel makes another 25% fee request), the present 25% request is particularly offensive. Finally, without disclosure of Class Counsel's sealed fee proposal (presumably the low bidder and presumably well below the 25% now requested), the current fee request has all the earmarks of a wholesale swindle of money that should go to the class..

**B.     Class Counsel Should Not Be Awarded a 1.29 Multiplier.**

Class Counsel make much of the fact that their fee request represents a modest 1.29 multiplier. Presumably, that number includes billing inefficiencies and overlaps that this Court should look at carefully. Even without inefficiencies in billing, that request ignores the Supreme Court's analysis in *Perdue v. Kenny A.*, which emphasized that a "lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee'" and reminded trial courts that "an

enhancement may not be awarded on a factor that is subsumed in the lodestar calculation." 559 U.S. at 55.[1]

In particular, the novelty and complexity of a case generally may not be used" to enhance a fee award award because they are, presumably, reflected in the number of hours the lawyer spent on the case. *Id.* Nor can the quality of a lawyer generally be used because the quality of the lawyer is typically reflected in the lawyer's billing rate. *Id.* Other "reasonableness" factors are similarly precluded. The customary fees in the jurisdiction, the lawyer's opportunity costs, and the risks involved—whether an agreed-upon fee is hourly or contingent—all affect the determination of a reasonable hourly rate. *See McAfee v. Boczar*, 906 F. Supp. 2d 484, 492 (E.D. Va. 2012)(applying reasonableness factors post-*Perdue*).

*Perdue* itself specifically noted that risk is subsumed within the reasonableness consideration; a lawyer taking representation in a fee-shifting case frequently "understands that payment of fees will generally not come until the end of the case, if at all." 559 U.S. at 556. The time and labor expended and the time limitations imposed by the client go to the number of hours reasonably spent on the matter. *McAfee*, 906 F. Supp. 2d at 492. And time limitations imposed by the client

---

[1] Though *Perdue* was a civil-rights case, rather than an antitrust class-action settlement, the Court noted that its lodestar jurisprudence was applicable to all "federal fee-shifting statutes[.]" 559 U.S. at 552. There is no reason to treat "reasonable" as meaning something different in 42 U.S.C. Sec. 1988 than in Rule 23(h); there is certainly no reason a treat a risk-averse attorney who settles on the back of the DOJ's anti-trust efforts better than one who prevails on the merits to judgment.

also go to a reasonable hourly rate; a client demanding extra attention from a lawyer or emergency action from a lawyer could reasonably expect to be charged more than a client who didn't impose such demands.

What is left, then? The amount in controversy, the results obtained, the undesirability of the case, and fee awards in similar cases. *See McAfee*, 906 F. Supp. 2d at 492. The amount in controversy and the results obtained have already been dealt with—the former is very large; the latter is, at best, average. Similar cases, as already noted, also counsel a fee reduction. Lawyers doing more work for longer to greater benefit for the class have recovered fractions of what these lawyers seek, and those fractions are fractions of fractions of the fund percentage that these lawyers seek. And, too, this class does not involve sophisticated institutional investors who can negotiate sophisticated representation contracts but who have no apparent problem with the lawyers' deductions from the settlement fund. *Cf. Silverman*. It involves individual purchasers of optical disk drive products who can—and should—expect that the lawyers' marginal efforts are not being rewarded with windfall fees.

Finally, undesirability means nothing here: The class here was not represented by a few hardy souls willing to take on a difficult case for unlikeable clients who were unpopular in the jurisdiction. No; there was no shortage of lawyers willing to kick over the bricks that the Department of Justice's wrecking ball hadn't

already demolished. This case attracted several excellent firms that showed what some might call an eagerness to be involved in the case, and it counsels a reduction in the fee.

Enhancing a lodestar award should be limited to "extraordinary cases [ ] presented only in the rarest circumstances." *Perdue*, 559 U.S. at 560 (Kennedy, J., concurring). There is nothing "exceptional" about the results here not already captured in the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). By itself, the lodestar incorporates all of the factors that this Court should consider.

If this Court awards Class Counsel an enhanced multiplier, it will be an error of law. This is evident from the language of *Perdue* itself and cognized by sister courts in the Ninth Circuit. *See, e.g., Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401, at *12-*16 (C.D. Cal. March 29, 2012)(citing Perdue and denying enhancement multiplier of 1.5); and *Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011)(citing Perdue and finding "little basis for an application of a multiplier" when calculating lodestar cross-check).

## C. Request for Disclosure of the Sealed Bid of Hagens Berman.

In *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 85 (2000), the court allowed the terms of the successful fee bid to remain under seal until a final determination (a proposed settlement), at which time the court said it would order

notice to the class to disclose the fee arrangement. *See also In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190, 1192 (N.D. Ill. 1996)(allowing sealed bids).

Even taking into account the concern that Class Counsel expressed in their sealed bid that the structure of their proposed fee would disclose sensitive information about their strategy that defendants could exploit, Class Counsel fails to articulate or explain why no information whatsoever about their sealed proposal should be disclosed to their clients, the class, in this case. In this regard, there is zero transparency to the class about how their lawyers were able to secure their lead counsel status through their fee and expense proposal. *See In re Oracle Sec. Litig.*, 136 F.R.D. 639, 644-647 (N.D. Cal. 1991).

Because of the lack of transparency in Class Counsel's fee request, at minimum, this Court should require that the sealed bid of Class Counsel be disclosed in whole, or at least in part (excluding the most sensitive aspects that reasonably relate to strategy) to the class and that new notice be issued to the settlement class with this information and an attendant opportunity to object after the disclosure of this crucial information.

D. **There Is No Disclosure As To Whether Fees Will Be Shared with Other Plaintiffs Counsel.**

Prior to the appointment of Hagens Berman as lead counsel, there were other attorneys and firms representing plaintiffs in this matter. There is no mention in Class Counsel's fee petition on how those other firms will be paid. There is no

mention as to whether there are any deals in place between Hagens Berman and other Plaintiffs' counsel on how to divide fees. This implicates serious due process concerns for the class.

To be sure, this Court's fiduciary obligation on behalf of the Class does not end after calculating a fair fee. Instead, in "a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." (*See In re High Sulfur Content Gasoline Prods. Litig.* (5th Cir. 2008) 517 F.3d 220, 227–28 ; *In re "Agent Orange" Prods. Liab. Litig.* (2d Cir. 1987) 818 F.2d 216, 223. The district court "must not ... delegate that duty to the parties." (*High Sulfur*, 517 F.3d at 228 [internal quotation omitted]).

Thus, the Court should oversee the allocation of funds among the various law firms that have worked on this case and expect compensation. It should not simply trust that Class Counsel will do so fairly. While "lead counsel may be in a better position . . . to evaluate the contributions of all counsel seeking recovery of fees[,]" the allocation should be supervised by the court in light of inherent conflicts among the attorneys. (Id. at 234-35 [citing *In re Diet Drugs Prods. Liab. Litig.* (3d Cir. 2005) 401 F.3d 143, 173 (Ambro, J., concurring)]) ("They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'").

To be clear, Objector is not aware nor suggests that there is any kind of side agreement between Hagens Berman and any other law firm. Rather, Objector is simply pointing out that this Court's fiduciary obligations to the class would seem to require Hagens Berman to disclose to the Court one way or another whether any side deals exist. Again, there is no mention one way or another in Class Counsel's fee petition and knowing this is an important component of any settlement involving fees.

[//]

## CONCLUSION

Objector requests that this settlement be rejected. In the alternative, Objector requests that the proposed award of attorneys' fees be rejected or, at minimum, substantially reduced.

DATED:  October 19, 2016                                    Respectfully submitted,

/s/ Timothy R. Hanigan
Timothy R. Hanigan (125791)
LANG, HANIGAN &
CARVALHO, LLP,
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

Attorney for Objectors/Class Members

## Certificate of Service

The undersigned certifies that today he filed the foregoing First Amended Objections and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: October 19, 2016

                                                  /s/ *Timothy R. Hanigan*
                                                  Timothy R. Hanigan