Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Lead Counsel for Indirect
Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | No. 3:10-md-2143 RS |
| | INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO OBJECTORS |
| | Date:   December 8, 2016 |
| | Time:   1:30 p.m. |
| | Dept:   Courtroom 3, 17th Floor |
| | Judge:  Hon. Richard Seeborg |
| This Document Relates to: | DATE ACTION FILED: Oct. 27, 2009 |
| ALL INDIRECT PURCHASER ACTIONS | |

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   RESPONSE TO OBJECTIONS ..............................................................................1

  A.   Four of Eight Objectors Are "Professional" Objectors Repeatedly Sanctioned By Courts ..........................................................................................2

       1.   Conner Erwin Is Represented by Christopher Bandas, a Serial Objector Who Has Been Sanctioned Multiple Times ....................................3

       2.   Objector Andrews Has Been Sanctioned Due to His "Vexatious Use of the Judicial System" and Whose Objections Are Without Merit ...................5

       3.   Patrick Sweeney Is Serial Objector Who Files the Same Objections Untailored to Actual Settlements ...................................................................5

       4.   Steven Helfand Is a Serial Objector .............................................................6

  B.   The Objections to IPPs' Request for Attorneys' Fees Are Without Merit ................6

       1.   IPPs' Request for Attorneys' Fees Is Reasonable Under Both the Lodestar and Percentage-of-Fund Calculation ..............................................7

       2.   Objections by the Professional Objectors Should Be Viewed With Skepticism ....................................................................................................8

            a.   Plaintiffs' Lead Counsel Submission to Judge Walker Never Contemplated More than One Certification Proceeding and Two Additional Years of Litigation to Successfully Certify a Class After the Initial Denial of Class Certification ...................................8

            b.   This Court Does Not Need to Unseal Hagens Berman's Application When the Court Itself Has Access ..............................11

            c.   A 1.29 Multiplier Is Modest And Not an Error of Law ....................12

            d.   Even if This Case Were a "Megafund," No Automatic Reduction in a Fee Award Is Supported by Ninth Circuit Caselaw ..................13

            e.   Hagens Berman Has Agreed to Reimburse Two Firms for Assisting in Very Limited Discovery – as Contemplated in Judge Walker's Original Order ..................................................................13

            f.   Hagens Berman's Hourly Rates Are Reasonable .............................14

            g.   Hagens Berman's Use of Contract Attorneys Is Reasonable ...........16

            h.   IPPs Have Made Information Available to the Class, Including Class Certification Papers, Expert Reports, Damages Numbers and the Complaints ........................................................................17

            i.   Quick Pay Provisions Are Common and Accepted in the Ninth Circuit .........................................................................................19

C.   This Court Should Overrule Objections by Professional Objectors to the Fairness of the Settlement, Plan of Allocation, and Adequacy of Notice to the Class .................................................................................................................20

1.   Andrews' Objection to the Adequacy of the Panasonic Settlement Is Misplaced .................................................................................................20

2.   Andrews' Objections to *Cy Pres* Are Premature...........................................21

3.   Andrews' Other Litany of Objections Are Without Merit ............................21

4.   Hagens Berman Will Oversee Claims Administration in This Action..........22

D.   The Requested Service Awards for the Class Representatives Are Justified Given Their Extraordinary Participation in the Case ....................................22

E.   IPPs' Expenses Are Reasonable ..........................................................................22

F.   IPPs' Responses to the Objections of the Non-Professional Class Members ...........23

1.   Response to Kelly Campbell ........................................................................23

2.   Response to Barbara Cochran ......................................................................24

3.   Response to Yury Sacrificial .......................................................................24

4.   Response to James Nellen II.........................................................................25

G.   This Court Should Strike All Improper Joinders by Objectors ..................................25

III.   CONCLUSION .................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Blue Growth Holdings Ltd. v. Mainstreet Ltd. Ventures, LLC*,
    2014 U.S. Dist. LEXIS 97425 (N.D. Cal. July 16, 2014) ......................................14

*Boeing Co. v. Van Gamert*,
    444 U.S. 472 (1980) ....................................................................................................1

*Brown v. Hain Celestial Grp., Inc.*,
    2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18, 2016) ........................................5

*Chambers v. Whirlpool Corp.*,
    2016 U.S. Dist. LEXIS 140839 (C.D. Cal. Oct. 11, 2016) ....................................16

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................................................................7

*Conroy v. 3M Corp.*,
    2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006) ........................................3

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) ...........................................................................12

*Embry v. ACER Am. Corp.*,
    2012 U.S. Dist. LEXIS 127813 (N.D. Cal. Aug. 29, 2012) ......................................3

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) ...................................................................................2

*Green v. Cal.Court Apartments LLC*,
    321 F. App'x 589 (9th Cir. 2009)............................................................................25

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ............................................................................14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...................................................................................................7

*In re "Agent Orange" Prod. Liab. Litig.*,
    800 F.2d 14 (2d Cir. 1986) ......................................................................................19

*In re AOL Time Warner S'holder Derivative Litig.*,
    2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Feb. 1, 2010) .......................................17

*In re Auction Houses Antitrust Litig.*,
    197 F.R.D. 71 (S.D.N.Y. 2000)...............................................................................11

*In re Auction Houses Antitrust Litig,*
   158 F. Supp. 2d 364 (S.D.N.Y. 2001) ...................................................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   ("*CRT I*"), 281 F.R.D. 531 (N.D. Cal. 2012) ............................................... passim

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug 3, 2016) .......................................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 U.S. Dist. LEXIS 24951 (N.D. Cal. Jan. 28, 2016)................................16, 25

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 U.S. Dist. LEXIS 88665 (N.D. Cal. July 7, 2016) ...............................21, 25

*In re Checking Acc't Overdraft Litig.,*
   830 F.Supp.2d 1330 (S.D. Fla. 2011).......................................................................2

*In re Citigroup Inc. Secs. Litig.,*
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) .....................................................................16

*In re Corn Derivatives Antitrust Litig.,*
   748 F.2d 157 (3d Cir. 1984) ....................................................................................19

*In re Gen. Elec. Co. Secs. Litig.,*
   998 F. Supp. 2d 145 (S.D.N.Y. 2014) .......................................................................3

*In re Google Referrer Header Privacy Litig.,*
   87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015).............................................................2

*In re Heritage Bond Litig.,*
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .......................................24

*In re Hydroxycut Mktg. & Sales Practices Litig.*
   2013 U.S. Dist. LEXIS 133413 (S.D. Cal. Sept. 17, 2013)..................................3, 4

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
   2014 U.S. Dist. LEXIS 27670 (S.D. Cal. Mar. 3, 2014) ..........................................4

*In re Ins. Brokerage Antitrust Litig.,*
   579 F.3d 241 (3d Cir. 2009) ...................................................................................22

*In re McKesson HBOC, Inc. Secs. Litig.,*
   126 F. Supp. 2d 1239 (N.D. Cal. 2000)...................................................................19

*In re Mego Fin. Corp. Secs. Litig.,*
   F.3d 454, 459 (9th Cir. 2000) .................................................................................24

*In re Netflix Privacy Litig.*,
  2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ...................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................... 1, 7, 13

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  2010 U.S. Dist. LEXIS 34882 (N.D. Ill. Apr. 7, 2010) ...................................... 19

*In re Polyurethane Foam Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 49592 (N.D. Ohio Apr. 13, 2016) ................................. 6, 5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  965 F. Supp. 2d 104 (D.D.C. 2013) ............................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD I")*,
  2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011)...................... 10, 19, 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 1, 2013) ...................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 51271 (N.D. Cal. Mar. 29, 2013) ................................... 13

*In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*,
  2016 U.S. Dist. LEXIS 17837 (D. Me. Feb. 10, 2016) ......................................... 5

*In re UnitedHealth Group Inc. PSLRA Litig.*,
  643 F.Supp.2d 1107 (D. Minn. 2009) ............................................................... 2

*Lane v. Facebook, Inc.*,
  2010 U.S. Dist. LEXIS 57765 (N.D. Cal. May 24, 2010)..................................... 13

*Larsen v. Trader Joe's Co.*,
  2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ....................................... 5

*McGrath v. Cty. of Nevada*,
  67 F.3d 248 (9th Cir. 1995) ........................................................................... 24

*Miller v. Ghirardelli Chocolate Co.*,
  2014 U.S. Dist. LEXIS 141111 (N.D. Cal. Oct. 2, 2014) ...................................... 19

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) ................................................................... 12

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Penn. 2003) ................................................................... 4

*Officers for Justice v. Civil Service Comm'n. of the City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .................................................................................24

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
   627 F.3d 402 (9th Cir. 2010) .................................................................................25

*Roberts v. Electrolux Home Prods., Inc.*,
   2014 U.S. Dist. LEXIS 130163 (C.D. Cal. Sept. 11, 2014) ....................................5

*Rodriguez v. W. Publ. Corp.*,
   602 Fed. Appx. 385 (9th Cir. 2015) ...............................................................7, 21

*Ruch v. Am Retail Grp., Inc.*,
   2016 U.S. Dist. LEXIS 133832 (N.D. Cal. Sept. 28, 2016) ...........................10, 11

*Satchell v. Wallace*,
   439 Fed. App'x. 644 (9th Cir. 2011) .....................................................................24

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ......................................................................4

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ...............................................................................10

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ...................................................................................7

*Swanson v. U.S. Forest Serv.*,
   87 F.3d 339 (9th Cir. 1996) ...................................................................................25

*Thomas v. MagnaChip Semiconductor Corp.*,
   2016 U.S. Dist. LEXIS 93342 (N.D. Cal. July 18, 2016) ......................................12

*Vizcaino v. Microsoft Cor*p.,
   290 F.3d 1043 (9th Cir. 2002) .........................................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................12

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*,
   2014 U.S. Dist. LEXIS 167563 (S.D. Cal. Dec. 3, 2014) ......................................14

## STATE CASES

*Atari v. Superior Court*,
   166 Cal. App. 3d 867 (1985) .................................................................................19

*City of San Diego v. Haas*,
   207 Cal. App. 4th 472 (2012) ................................................................................19

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ................................................................ 1, 9

## SECONDARY AUTHORITIES

Brian T. Fitzpatrick, *The End of Objector Blackmail?*,
    62 Vand. L. Rev. 1623, 1641 (2009) ........................................................ 19

## I.    INTRODUCTION

Indirect Purchaser Plaintiffs (IPPs) submit this response to the eight objectors who have filed statements objecting to IPPs' request for attorneys' fees, reimbursement of litigation expenses, service awards for the class representatives, the fairness of the settlement and the plan of distribution.

This case posed an enormous risk to the indirect purchaser class and their counsel, Hagens Berman Sobol Shapiro LLP (Hagens Berman). This litigation has lasted six years, class certification was once denied, and defendants have opposed nearly every request made by the IPPs. Discovery has lasted for many years, resulted in dozens of depositions spanning three countries, four languages and thousands of deposition exhibits. Hagens Berman's lodestar of $24,199,800.20, and request for reimbursement of $$3,704,323.97 in out-of-pocket expenses reflect how hard-fought this litigation has been, and how much Hagens Berman has invested in vindicating the rights of consumers.

The bulk of objections relate to the IPPs' request for an award of attorneys' fees. The Supreme Court "has recognized consistently that . . . a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[1] To assess the reasonableness of a fee award, courts in this Circuit consider the totality of the circumstances, including the work done, risks borne, and results achieved for the class.[2] All of these factors support the reasonableness of Hagens Berman's fee request. The $124.5 million recovery represents 31 percent of the estimated total damages for the indirect purchaser class – with fifty percent of the ODD market remaining in the case. IPPs request attorneys' fees of 25 percent (the benchmark in the Ninth Circuit), or a 1.29 multiplier on their lodestar. Under any analysis, this request is well-supported by the record and case law.

## II.    RESPONSE TO OBJECTIONS

In their motion for attorneys' fees, reimbursement of expenses and approval of service awards for the class representatives, IPPs presented detailed affidavits from one of the lead trial counsel in this litigation, as well as each class representative, explaining the procedural history of

---

[1] *Boeing Co. v. Van Gamert*, 444 U.S. 472, 478 (1980). *See also* Fed. R. Civ. P. 23(h) (authorizing reasonable fee award).

[2] *See In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 954- 55 (9th Cir. 2015).

1   this litigation and the extraordinary effort by IPPs.[3] IPPs have also addressed all of the factors which

2   the Ninth Circuit instructs courts to consider when weighing the reasonableness of a settlement.[4]

3   Given this showing, the burden is with the objectors to show the settlement and requested fees are

4   not fair and reasonable.[5] The objectors have failed to carry this burden.

5   **A.**    **Four of the Eight Objectors Are "Professional" Objectors**

6        Four objectors – Conner Erwin (represented by Christopher Bandas), Christopher Andrews,

7   Michael Helfand (sharing the same last name as his attorney Steven Helfand), and Patrick Sweeney –

8   are serial objectors whose objections to the settlement should be discounted based on their historical

9   conduct. These lawyers repeatedly show up in class action settlements, hoping to extract payment

10   through frivolous delay and burden. Such "professional" objectors have become increasingly

11   common in class action litigation and have been widely denounced by courts across the country.[6]

12   Professional objectors do not assist the court's evaluation of a class action settlement, but only delay

13   providing real benefits to bona fide class members and add burdensome transaction costs to all

14   involved. These four objectors raise a host of issues, many untailored to the facts of this case.

---

[3] Indirect Purchaser Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Mot. for Fees"), Oct. 5, 2016, ECF No. 1963; Declaration of Jeff D. Friedman in Support of Indirect Purchaser Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Friedman Fee Decl."), Oct. 5, 2016, ECF No. 1963-1.

[4] *See* Notice of Motion and Motion for Final Approval of Settlements with Panasonic, NEC, Sony and HLDS Defendant Families, filed concurrently herewith.

[5] *See Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.; *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015) ("[O]bjectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement." ).

[6] *See, e.g.*, *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d 1330, 1361 n.30 (S.D. Fla. 2011) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.") (Alteration in original; internal citation omitted.); *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F.Supp.2d 1107, 1109 (D. Minn. 2009) (reprimanding professional objectors whose "goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement"); *In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT I*"), 281 F.R.D. 531, 533 (N.D. Cal. 2012) (reprimanding objector for working with attorney who "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct") (footnote omitted).

1

### 1.    Conner Erwin Is Represented by Christopher Bandas, a Serial Objector Who Has Been Sanctioned Multiple Times

Conner Erwin's attorney, Christopher A. Bandas, "is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country."[7] He has objected in dozens of cases, frequently earning criticism from the courts faced with his manufactured objections.[8] As one court explained, "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."[9] As another court explained, he is a "professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'"[10] A motion filed in the Seventh Circuit by Mr. Bandas's co-counsel shed light on Mr. Bandas's behind the scene schemes. Theodore Frank, Mr. Bandas's former business associate, describes Mr. Bandas as a "for-profit objector[] who voluntarily dismiss[es] the vast majority of [his] appeals."[11] Mr. Frank told the Seventh Circuit that he viewed Mr. Bandas's actions in some cases as "putting him at risk of sanctions."[12]

---

[7] Declaration of Jeff D. Friedman in Support of Final Approval of Settlements ("Friedman Final App. Decl."), Ex. 1-1, concurrently filed herewith.

[8] *See, e.g.*, *In re Gen. Elec. Co. Secs. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) ("[Objector's] relationship with Bandas, a known vexatious appellant, further supports a finding that [objector] brings this appeal in bad faith."); *In re Hydroxycut Mktg. & Sales Practices Litig.* ("*Hydroxycut I*"), No. 09-md-2087, 2013 U.S. Dist. LEXIS 133413, at *70 (S.D. Cal. Sept. 17, 2013) (finding "credible" testimony that Mr. Bandas told plaintiffs' counsel that he "didn't care about changing one word of the settlement" and "that he was willing to wager that [plaintiff] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away – otherwise, he could hold the settlement process up for two to three years through the appeal process"); *Dennings v. Clearwire Corp.*, No. 10-cv-1859 (W.D. Wash. Aug. 20, 2013), ECF No. 166 (minute entry sanctioning Mr. Bandas by revoking his authority to practice in the Western District of Washington); *Embry v. ACER Am. Corp.*, No. 09-cv-1808, 2012 U.S. Dist. LEXIS 127813 (N.D. Cal. Aug. 29, 2012) (holding Mr. Bandas in contempt); *Conroy v. 3M Corp.*, No. C 00-2810, 2006 U.S. Dist. LEXIS 96169, at *10-11 (N.D. Cal. Aug. 10, 2006) (ordering Bandas Law Firm to post $431,167 appellate costs bond to pursue "unfounded" and "patently frivolous" objections to settlement).

[9] *CRT I.*, 281 F.R.D. at 533 (footnote omitted).

[10] Friedman Final App. Decl., Ex.1 at 2.

[11] *Id.*, Ex. 2 at 4.

[12] *Id.*, Ex. 3 at 7.

1        Mr. Bandas frequently declines to file a notice of appearance or a *pro hac vice* application in

2   district courts, a practice that appears designed to avoid the sanctions power of the courts.[13] Here,

3   Mr. Bandas has expressly stated that he does not intend to file a notice of appearance in this action.[14]

4        As many courts have explained, professional objectors make a practice of objecting to

5   settlements or intervening in class actions after a settlement is reached in an attempt to "extract a fee

6   by lodging generic, unhelpful protests."[15] "Federal courts are increasingly weary of professional

7   objectors,"[16] whose practice wastes judicial resources and delays classes' recoveries (thereby

8   reducing their time value) without contributing anything of value to the litigation or the development

9   of the law. Even meritless objections can still coerce payment due to the injuries to class members

10  from delay, the often uncompensated costs to class counsel for responding to objections and appeals,

11  and the risk (however small) that the class's recovery will be upended. Mr. Bandas's objections here

12  are as meritless as ever. And "[a]lthough the bad motive does not necessarily mean that the

13  objections themselves are invalid, the motive does bear upon the credibility of [the objectors]."[17]

14       Conner Erwin and his wife, Diane Erwin, have filed multiple objections in class action cases

15  with Mr. Bandas as their counsel, including *In re TFT-LCD (Flat Panel) Antitrust Litigation* price-

16  fixing litigation and *Edwards, et al. v. Nat'l Milk Producers Federation* price-fixing litigation, where

17  Mr. Bandas represented Conner Erwin, and *In re Electronic Books Antitrust Litig.*, No. 11-md-02293

18  (DLC) (S.D.N.Y.) where Bandas represented Diane Erwin.[18]

19

20       [13] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2014 U.S. Dist. LEXIS 27670, at *69 (S.D. Cal. Mar. 3, 2014) (denying sanctions for lack of jurisdiction).

21       [14] Objections of Conner Erwin at 2, Oct. 19, 2016, ECF No. 1970 ("Erwin Obj.") ("Christopher
22  A. Bandas of Bandas Law Firm, P.C. does not intend on making an appearance for himself or his firm.").

23       [15] *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000).

24       [16] *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Penn. 2003).

25       [17] *See, e.g.*, *Hydroxycut I*, 2013 U.S. Dist. LEXIS 133413, at *72.

26       [18] Objections of Class Members Ira Conner Erwin, Luis Mario Santana, and Stefan Rest to
    Settlement and Attorney-Fee Request, *In re TFT-LCD (Flat Panel) Antitrust Litig.*No. 07-md-1827
27  (N.D. Cal. Oct. 9, 2012), ECF No. 6932; Objection of Ira Conner Erwin, *Edwards v. Nat'l Milk Producers Fed., et al.*, No. 11-cv-04766 (N.D. Cal. Oct. 28, 2016), ECF No. 441; Class Member
    Dianne Young Erwin's Objection to Proposed Settlement, *In re Electronic Books Antitrust Litig.*,
28  No. 11-md-02293 (DLC) (S.D.N.Y. Oct. 31, 2014), ECF No. 670; Friedman Final App. Decl., Ex. 4.

### 2.  Objector Andrews Has Been Sanctioned Due to His "Vexatious Use of the Judicial System" and Whose Objections Are Without Merit

Although Christopher Andrews represents he is not a "serial objector,"[19] he filed three objections in three separate cases last month in this District alone – in *In re Optical Disk Drive Antitrust Litig.*, *In re Lithium Ion Batteries Antitrust Litig.*, and *Edwards, et al. v. Nat'l Milk Producers Federation* price-fixing litigation.[20] In truth, Mr. Andrews is a serial objector who has recently been sanctioned by the Northern District of Ohio. In the *In re Polyurethane Foam Antitrust Litig.*, the Sixth Circuit dismissed Andrews' appeal, characterizing him as a "[p]rofessional objector," whose objections "lack merit" and whose appeal had "the practical effect of prejudicing the [class] by delaying the disbursement of settlement funds."[21] Recently, Judge Zouhary of the Northern District of Ohio then sanctioned Andrews $15,303 – the amount of interest lost by the class due to his frivolous filings – because of Andrews "vexatious use of the judicial system" which was motivated "either to extort a pay-off from the [class] or as a delay tactic to prolong his coercion attempt."[22] Mr. Andrews makes a laundry list of objections to the settlement, the notice, and the request for attorneys' fees.

### 3.  Patrick Sweeney Is Serial Objector Who Files Untailored Objections

Multiple courts in this district (and elsewhere) have specifically identified Patrick Sweeney as a professional objector and overruled his meritless objections.[23] In the last year alone, Sweeney has

---

[19] Christopher Andrews Supplement Objection ("Andrews Obj."), Oct. 21, 2016, ECF No. 1978. Andrews' supplemental objection numbers 98 pages and includes his original objection. Plaintiffs address all arguments, but refer only to this later-filed objection.

[20] Friedman Final App. Decl., Exs. 5-8.

[21] Friedman Final App. Decl., Ex. 9 at 3.

[22] *Id.*, Ex. 10 at 2.

[23] *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082, 2016 U.S. Dist. LEXIS 20118, at *28 (N.D. Cal. Feb. 18, 2016) (identifying Sweeney as part of a group of "professional objectors" and finding that "courts across the country (including in the Ninth Circuit) have repeatedly turned aside [his] efforts to upend settlements"); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2014 U.S. Dist. LEXIS 95538, at *7 n.4 (N.D. Cal. July 11, 2014) (stating that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings" and overruling the objections of Sweeney and his wife and daughter in that case); *Roberts v. Electrolux Home Prods., Inc.*, No. SACV12-1644, 2014 U.S. Dist. LEXIS 130163, at *34 (C.D. Cal. Sept. 11, 2014) (noting Sweeney's history of making objections that were "not made for the purpose of benefitting the Class" and were "meritless in all respects"); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, No. 13-md-2426, 2016 U.S. Dist. LEXIS 17837,

filed at least eight objections, none of which have been sustained and several of which have prompted courts to rebuke him for his conduct.[24] These objections all followed substantially the same format and, as recognized by some of the courts above, appeared to be form objections that recycled – in many cases, word for word – the same arguments. Mr. Sweeney has clearly copied his objections to the *ODD* settlements from another case, as he objects to an attorneys' fees request of $5.85 million – a request found nowhere.[25]

### 4. Steven Helfand Is a Serial Objector

Steven Helfand is a serial objector. IPPs have identified four objections in the last twelve months.[26] And Helfand's routine objections recycle used, unsuccessful arguments, including the same objections raised in this case.[27]

## B. The Objections to IPPs' Request for Attorneys' Fees Are Without Merit

This Court should view the objections of the four professional objectors with skepticism against the backdrop of their prior conduct. But regardless of the source, each of the objections to IPPs' requests for attorneys' fees is without merit.

---

at *21 n.16 (D. Me. Feb. 10, 2016) (ruling that Sweeney's "listed objections are without merit and appear to be a form document . . . that he has filed in other class action settlements"); *In re Polyurethane Foam Antitrust Litig.*, No. 10 MD 2196, 2016 U.S. Dist. LEXIS 49592, at *11 (N.D. Ohio Apr. 13, 2016) (describing Sweeney's objection as "pure boilerplate language, wholly untethered from the actual terms of the settlement," calling his conduct "vexatious," and imposing an appeal bond on him).

[24] Friedman Final App. Decl., Exs. 11-17.

[25] Objections of Patrick S. Sweeney, Pro Se to the Proposed Settlement and Notice of Intent Not to Appear at Fairness Hearing at 3 Sweeney Obj."), Oct. 25, 2016, ECF No. 1983.

[26] *Brown v. Hain Celestial Grp.*, 11-cv-03082 (N.D. Cal. Feb. 2, 2016), ECF No. 368; *Gay v. Tom's of Maine*, No. 14-cv-60604 (S.D. Fla. Dec. 1, 2015), ECF No. 27; *Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038 (N.D. Cal., Jan. 10, 2016), ECF no. 196 (as signer).

[27] *Compare* Objection and Notice of Intent to Appear, *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082 (N.D. Cal. Dec. 23, 2015), ECF. No. 361 (arguing that when attorneys' fees are paid before the deal is confirmed on appeal, it "creates a conflict of interest and raises questions of both adequacy and collusion."); *with* Amended Order Approving Class Action Settlement, Dismissing Case, and Entering Final Judgement at 17-18, *Brown v. Hain Celestial Grp., Inc.*, No.11-cv-03082 (N.D. Cal. Feb. 18, 2016), ECF No. 374 (Courts in this district approve these 'quick pay' provisions routinely.").

**1.     IPPs' Request for Attorneys' Fees Is Reasonable Under Any Measurement**

This Court has broad discretion to determine the reasonable and fair amount of attorneys' fees. Great weight is accorded to the district judge's views because "he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly."[28] The Ninth Circuit gives district courts "broad deference" on "determinations on fee awards because of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'"[29] In the Ninth Circuit, the district court has discretion in a common fund case to choose either the "percentage-of-the-fund" or the "lodestar" method in calculating fees.[30] But the touchstone of the analysis is whether the award for attorneys' fees "like the settlement itself, is reasonable."[31] To ensure reasonableness, the Ninth Circuit encourages district courts to conduct "a cross-check using the other method."[32]

As IPPs demonstrated in their motion for attorneys' fees, whether the Court looks at the percentage of the fund or lodestar method (or both) the request for fees is reasonable. The request for $31,125,000 equates to 25 percent of the common fund – the "benchmark" of reasonableness in the Ninth Circuit.[33] And IPPs' request for fees equates to a 1.29 multiplier – also well within the range of multipliers awarded in other, similar litigation – and supported by all *Kerr* reasonableness factors.[34]

---

[28] *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (internal quotation marks and citation omitted).

[29] *Rodriguez v. W. Publ. Corp.*, 602 Fed. Appx. 385, 386 (9th Cir. 2015); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), *rev'd in part*, *City of Burlington v. Dague*, 505 U.S. 557 (1992) ("the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters"); *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) ("the decision to enhance or reduce the lodestar under the *Kerr* factors is within the district court's discretion").

[30] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

[31] *Id.*

[32] *Id.*

[33] *Id.* at 955. *See also* Indirect Purchaser Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Mot. for Fees.") at 11-16, Oct. 5, 2016, ECF No. 1963 (addressing all factors to assess reasonableness under a percent-of-fund analysis).

[34] *See* Mot. for Fees at 16-20.

No objector addresses any particular factor under either analysis which would require reduction in IPPs' proposed lodestar.

### 2. Objections by the Professional Objectors Should Be Viewed With Skepticism

#### a. Plaintiffs' Lead Counsel Submission to Judge Walker Never Contemplated More than One Certification Proceeding and Two Additional Years of Litigation to Successfully Certify a Class After the Initial Denial of Class Certification

Objector Erwin – in truth his serial objector counsel, Christopher Bandas – objects that Hagens Berman made a fee proposal to Judge Walker at the beginning of the case and requests that the proposal now be made public.[35] IPPs cited multiple times to Judge Walker's appointment order in their request for attorneys' fees.[36] The leadership application itself remains under seal, because Judge Walker ordered that given the work product included in the applications, it should remain under seal "during the pendency of this litigation."[37]

Hagens Berman's leadership application to Judge Walker included not only a potential fee structure but also analyses of the market and other work product. The potential fee structure contemplated a "fee percentage which increases with the stages of litigation and declines as the amount of the recovery rises."[38] The fee structure listed only four stages: (1) From Pleading Through Decision on Motion to Dismiss; (2) After Motion to Dismiss Through Adjudication of Class Certification; (3) After Adjudication of Summary Judgment; and (4) Through Trial Verdict and Final Appellate Determination.

In his decision to appoint lead counsel six years ago, Judge Walker expressly recognized that, "potential recovery by indirect purchaser plaintiffs in this litigation is subject to a greater variety of imponderables" than other types of litigation (in particular securities litigation).[39] IPPs have always understood that ultimately the Court retained discretion to determine the reasonable amount of fees – *i,e.,* either up or down from IPPs fee structure – based on the specific facts and the types of

---

[35] Objections of Conner Erwin ("Erwin Obj."), Oct. 19, 2016, ECF No. 1970.

[36] Mot. for Fees at 2; Friedman Fees Decl. at 1.

[37] Order at 1, June 4, 2010, ECF No. 96.

[38] *Id*. at 6.

[39] *Id*. at 8.

"imponderables" which came to pass. And if the Court believes receiving context from Judge Walker would assist the Court whatsoever, IPPs have no objection to the Court receiving such input concerning Judge Walker's June 4, 2010 order. Of course, whether the Court believes such information would be helpful is within the Court's discretion in determining fair and reasonable fees.

The most significant imponderable not contemplated back in 2010 was the denial of class certification more than four years later and then the years of litigation after to seek certification a second time. It was more than ***two years and three months*** from the time the Court denied certification until the Ninth Circuit ultimately denied defendants' Rule 23(f) appeal of this Court's subsequent order granting class certification. During this very unique and heightened risk period, the extensive, expensive, time-intensive, hard-fought litigation continued. Responding to IPPs' request to renew its motion for class certification, the Court made clear that it did not want IPPs to simply "re-package" the class certification submission that the Court denied. Rather, IPPs took the Court's admonishment seriously – that the same input would result in the same output (denial of certification again).[40] As a result, IPPs dedicated thousands of hours to submit extensive new factual and economic submissions, and deposed and defended numerous additional economist depositions. Moreover, the rest of the litigation was not stayed during this two-year period. The exact opposite occurred – with litigation ongoing regarding recordings made of certain co-conspirators, an appeal, and forty-six days of depositions of fourteen participants in this conspiracy.[41] All of this took place after the Court denied certification – IPPs were proceeding as a small band of individual plaintiffs during this period – with counsel dedicating $5.6 million in lodestar and over 15,000 hours in attorney and staff time.[42] This $5.6 million in lodestar during this period equates to a 33 percent additional investment in the case over the $17 million already expended up to the point the Court denied certification. This lodestar occurred when many believed it was a low probability of ever certifying a class. As evidence of the risk proposition, the 25 firms involved as direct purchaser

[40] Jan. 29, 2015 Hr'g. Tr. at 21:8-9 (cautioning IPPs that if they submitted "the same ingredients in a nice new package, then they are going to get the same decision" for the renewed motion for class certification).

[41] Mot. for Fees at 7-9.

[42] *Id.* at 9.

counsel – a robust sampling of the plaintiffs' bar – believed that the risk was too great to continue to litigate and settled all claims instead of renewing their motion for class certification and continuing to invest resources to litigate. Notably, Hagens Berman committed to continue to litigate this case during this period as the sole lead counsel – shouldering all risk, attorney time, and advancing all costs and expenses on its own. Put in context compared to other MDLs in the district, in *CRT*, 49 law firms worked on the indirect purchaser case;[43] in *LCD*, there were 116 firms;[44] in *DRAM*, 63 firms participated in the indirect purchaser action;[45] and in *SRAM*, 70 firms.[46]

Plaintiffs noted in their motion for attorneys' fees that had the case proceeded on a similar path as many of the recent similar cases in this district and elsewhere – and class certification granted initially – the fee request would have been lower.[47] But given the unanticipated, extended, time and resource intensive path down which this case proceeded, IPPs are seeking a fair and reasonable fee under the specific, unique circumstances. Class representatives feel the same way.[48]

And where "special circumstances indicate that the percentage recovery would be either too small or too large," the Ninth Circuit recommends that the benchmark percentage be replaced by a lodestar calculation.[49] Thus, even if the Court used the fee proposal as a guide, by applying the lodestar to the special circumstances here for the heightened risk period after class certification was initially denied, plaintiffs' fee request would award only a 2.76 multiplier for the hours expended

---

[43] Indirect Purchaser Plaintiffs' Reply re: Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards at 15, Feb. 4, 2016, ECF No. 4373.

[44] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 U.S. Dist. LEXIS 49885, at *9 (N.D. Cal. Apr. 1, 2013).

[45] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-01486-PJH, (N.D. Cal. Feb. 28, 2014), ECF No. 2183.

[46] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, MDL No. 1819 (N.D. Cal.).

[47] Mot. for Fees at 16.

[48] *See* Declarations of: Anbessa Tufa (MN), Chris Johnson (CA), John McKee (WI), Michael Reilly (NM), and Sandra Steffen (MI) in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlements, concurrently filed herewith.

[49] *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Ruch v. Am Retail Grp., Inc.*, No. 14-cv-05352, 2016 U.S. Dist. LEXIS 133832, at *31 (N.D. Cal. Sept. 28, 2016) (accord).

after denial of class certification during the heightened risk period.[50] Such multiplier is modest for such an unanticipated heightened risk period and below many approved multipliers associated with lower risk. Under this analysis, IPPs' requested award for the hours before and after this heightened risk period would equate to receiving a negative multiplier of 0.86 – and would equate to the fee proposal structure's 12 to 13 percent. Plaintiffs' request is thus fundamentally aligned with the ultimate benefit to class – which is goal of fee proposals.[51] Erwin relies on *In re Auction Houses Antitrust Litig.* in support of his objection and requests that a smaller benchmark than the 25 percent be applied. But in *In re Auction Houses*, the fee proposals were submitted ***after a class was certified***; and ***the Court retained discretion*** to adjust the fee awards.[52] The Court here has such discretion.

Erwin also speculates that class counsel may "double dip" as new settlements are achieved. Erwin Obj. at 7. Of course this Court will always remain free to assess any future requests for attorneys' fees when they are made to ensure that the total award is fair and reasonable. The Court and class counsel will have an opportunity to assess – if and when future resolutions occur – appropriate fees with full body of information, taking into account the lodestar and effort further expended by class counsel, the amount of the settlements, and the stage of the litigation.

> ### b. This Court Does Not Need to Unseal Hagens Berman's Application When the Court Itself Has Access

Erwin points to the Southern District of New York's decision in *In re Auction Houses Antitrust Litig.* to suggest that the Court should now unseal the 2010 bid of Hagens Berman. Erwin Obj. at 11-12. But the court in *Auction Houses* did not unseal the bids until the case had been settled.[53] And here, Judge Walker contemplated the bid should remain under seal during the

---

[50] This assumes an award of $15.685 million pursuant to the fee proposal, and a multiplier of 2.76 to the lodestar of $5,601,103.00 resulting in $15,440,000 – for a total of $31,250,000 (the total requested award).

[51] *See In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 77 (S.D.N.Y. 2000) (criticizing as "suboptimal" the percentage-of-recovery method as potentially leading to early settlements after costs begin to mount to collect a large fee).

[52] *Id.*, at *71, *73 ("the Court reserved the right to compensate lead counsel on a different basis in the event the litigation were resolved in a manner that did not permit determination of a gross recovery by the class or if justice otherwise required").

[53] *In re Auction Houses Antitrust Litig*, 158 F. Supp. 2d 364, 367 (S.D.N.Y. 2001).

pendency of the litigation.[54] In addition to Judge Walker's order, and the Court having the

application, the IPPs have herein detailed the structure of the application and percentage applicable

had the Court certified the case in the first instance. But fifty percent of the market still remains –

some of the most aggressive defendants in the case. Allowing access to the bid would provide

strategic information regarding settlements that they are not entitled to have.[55] For that reason, IPPs

request that the application remain under seal.

### c.    A 1.29 Multiplier Is Modest and Not an Error of Law

Erwin and Helfand suggest that awarding Class Counsel a 1.29 (or any) multiplier would be

"an error of law." Erwin Obj. at 8-9, 11; Helfand Obj. at 3.[56] Erwin cites a concern over "billing

inefficiencies" only, but make no other specific objection to the work of class counsel. Objectors'

criticisms of any fee award must be viewed in light of the vast resources dedicated to this case by

defense counsel. Panasonic's counsel has attested in the *In re Lithium Ion Batteries Litig.* that it

expends an estimated $742,828 for the review of only one custodian's files.[57] Applying this same

calculation to only the 12 custodians produced by the Panasonic defendants – this would be

attorneys' fees of $8.91 million for just this single defendant for a single portion of the case alone.

Multiplied across the four settling defendants, this would total a lodestar of $35.7 million – already

in excess of what is requested by IPPs. Given the context of this litigation, class counsel's request of

a 1.29 multiplier is within reason and well within the range contemplated by the Ninth Circuit.[58]

---

[54] Order at 1.

[55] *See, e.g.*, *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160, 2016 U.S. Dist. LEXIS 93342, at *24-*25 (N.D. Cal. July 18, 2016) (allowing settlements to remain under seal given "compelling reasons to keep this information confidential, in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts").

[56] "Helfand Obj." refers to Notice of Objection and Intention to Appear, Oct. 19, 2016, ECF No. 1971.

[57] Joint Letter Brief re Hiroshi Shimokomaki at 5, *In re Lithium Ion Batteries Litig.*, No. 13-md-02420 YGR, Aug. 31, 2016, ECF No. 1424 ("Sanyo estimates that adding Mr. Shimokomaki as a document custodian would cost approximately $742,828.").

[58] *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (upholding 3.65 multiplier); *id.* at 1052-54 (noting district court cases in the Ninth Circuit approving multipliers as high as 6.2, and citing only 3 of 24 decisions with approved multipliers below 1.4); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 96 (2d Cir. 2005) (finding 3.5 multiplier reasonable); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (finding 1.6 multiplier reasonable); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (finding a 2.83 multiplier appropriate); *In*

1

          **d.**       **Even if This Case Were a "Megafund," No Automatic Reduction in a Fee**

2
                     **Award Is Supported by Ninth Circuit Caselaw**

3
       Andrews and Erwin both objects that this case is a "mega-fund" case, requiring an automatic

4
reduction in attorneys' fees.[59] Andrews encourages this Court to apply the lodestar crosscheck to

5
ensure the reasonableness of the fees. But there is no automatic rule in the Ninth Circuit which

6
requires an automatic percentage – instead, the Ninth Circuit requires a comprehensive analysis of

7
the reasonableness of any award.[60] IPPs provided this Court with a detailed analysis of their lodestar,

8
which would yield a reasonable 1.29 multiplier.[61] As recognized by the court in *CRT*, "[r]ather than

9
abandon the percentage-of-recovery method, the best way to guard against a windfall is first to

10
examine whether a given percentage represents too high a multiplier of counsel's lodestar."[62] In

11
*CRT*, the court decided that a 2.89 multiplier for the lead counsel was reasonable and rejected

12
objections based on the "megafund" principle.[63]

13
          **e.**       **Hagens Berman Has Agreed to Reimburse Two Firms for Assisting in**
                     **Limited Discovery – as Contemplated in Judge Walker's Original Order**

14
       Under the original order approving Hagens Berman as interim lead counsel, Judge Walker

15
gave class counsel leave to "coordinate its efforts with additional counsel."[64] Erwin objects that

16
Hagens Berman does not disclose whether other plaintiffs' counsel will be provided with a portion of

17
the fee award. Erwin Obj. at 12-13. Because Hagens Berman's lodestar more than adequately

18

19
*re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 U.S. Dist. LEXIS 37286, at *31 (N.D. Cal. Mar. 18,

20
2013) (finding multiplier of 1.66 reasonable; *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 U.S.
Dist. LEXIS 57765, at *10 (N.D. Cal. May 24, 2010) (applying 2 multiplier).

21
   [59] Andrews Obj. at 18-21; Erwin Obj. at 3.

22
   [60] *See Vizcaino*, 290 F.3d at 1047 (rejecting categorical "megafund" rule); *Online DVD-Rental*
779 F.3d at 949 (courts should avoid "mechanical or formulaic" rules in awarding fees in favor of

23
totality of circumstances analysis); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827,
2013 U.S. Dist. LEXIS 51271, at *67 (N.D. Cal. Mar. 29, 2013) (rejecting similar megafund
objections).

24
   [61] Mot. for Fees at 16-20.

25
   [62] *In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT II*"), No. C-07- 5944 JST, 2016 U.S.
Dist. LEXIS 102408, at *70 (N.D. Cal. Aug 3, 2016).

26
   [63] Corrected Special Master's Report & Recommendation re Allocation of IPP Class Counsel

27
Attorneys' Fees, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal. Oct. 24,
2016), ECF No. 4976.

28
   [64] Order at 8.

1    supported the requested award, it was not necessary to put in the limited lodestar from other firms.

2    "[F]ederal courts routinely . . . have recognized that lead counsel are better suited than a trial court to

3    decide the relative contributions of each firm and attorney."[65] Regardless, Hagens Berman has

4    agreed two firms will be paid for their assistance in responding to discovery and defending the

5    depositions of two class representatives. If this Court approves IPPs' request for attorneys' fees in

6    the full amount, Stoll Berne LLP (counsel for Michael Bishop, the Oregon plaintiff) will be paid

7    $90,000; and Shapiro Haber & Urmy LLP (counsel for James Ito-Adler, the Massachusetts plaintiff)

8    will be paid $85,000. These fees would come out the fee award to Hagens Berman.

9                    **f.       Hagens Berman's Hourly Rates Are Reasonable**

10                  Andrews and Helfand both object that the hourly rates of class counsel are not reasonable.

11   Andrews attaches an article with billing rates from the District of Columbia (Andrews Obj., Ex. 2),

12   an abbreviated set of San Francisco rates from 2014 (*id.*) and a billing survey from 2012 in support

13   of his argument (*id.*, Ex. 4). Andrews proposes that $277 an hour would be a reasonable hourly rate

14   for attorneys. Andrews Obj. at 6. Helfand objects merely that the rates are "unreasonable" and that

15   the Court should impose "an across board rate cap of $625 per hour." Helfand Obj. at 3. Helfand

16   provides no support for this arbitrary cap. But IPPs have submitted the most recent survey of market

17   rates – a survey accepted by many district courts.[66] Hagens Berman's rates are well within that

18   market survey, and within the range approved by this Court for the direct purchasers.[67] For example,

19

20

21   [65] *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011), *aff d in part*, 473 F. App'x 716 (9th Cir. 2012).

22   [66] Friedman Fees Decl., Ex. A; *Blue Growth Holdings Ltd. v. Mainstreet Ltd. Ventures, LLC*, No.
23   CV 13-1452, 2014 U.S. Dist. LEXIS 97425, at *9 (N.D. Cal. July 16, 2014) ("The hourly rates for
     the attorneys that performed the bulk of the work are well-within the average range contemplated by
24   the NLJ survey."); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-cv-0541, 2014 U.S.
     Dist. LEXIS 167563, at *15 (S.D. Cal. Dec. 3, 2014) (relying on the NLJ Survey in finding that the
25   "attorney rates charged by Plaintiffs are reasonable.").

26   [67] *See, e.g.*, Declaration of Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for
     an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive
27   Awards, Mar. 16, 2015, ECF No. 1535-1 (senior attorney Guido Saveri charging $950 per hour);
     Declaration of Michael P. Lehmann in Support of Motion for Attorneys' Fees, Reimbursement of
28   Expenses, and Incentive Awards, Mar. 16, 2015, ECF No. 1535-4 (senior attorney Michael Hausfeld
     charging $975 per hour).

1   in *CRT* and *LCD*, senior antitrust attorneys were compensated at $1,000 per hour – significantly

2   more than the $950 requested for Hagens Berman's most senior partner (Steve Berman).[68]

3       Andrews suggests that the class purposefully withheld the numbers of years of experience of

4   each attorney. Andrews Obj. at 6. But IPPs submitted a detailed resume of their firm, which includes

5   the year each attorney from Hagens Berman graduated from law school, as well as calculating the

6   years of experience for each attorney.[69] Andrews has either purposely ignored the record or failed to

7   read any of the documents submitted to the Court and made available to the class.

8       Andrews objects to the $265 hourly rate charged by Hagens Berman's two Bay-area based

9   paralegals, relying on a 2013 survey of market rates. Andrews Obj. at 6. But the most recent market

10  survey shows paralegal rates in the range of $25 to $325 with a median rate of $125.[70] The two

11  paralegals based in the Bay area are long-term, highly experienced employees of Hagens Berman

12  who have devoted 2,800 and 3,900 hours to the *ODD* litigation. These two paralegals have

13  performed the vast majority of professional assistance on this case – including preparing all motions

14  for filing with the Court, overseeing the document productions of these defendants, coordinating the

15  translation of documents for use in motion practice and deposition, and overseeing all document

16  productions and discovery responses from the named representatives. The two Bay-area paralegals

17  are critical members of the litigation team, highly skilled in antitrust and complex litigation.[71] Given

18  their expertise, the proposed rate of $265 is reasonable.

19      Sweeney objects that class counsel should submit detailed billing records. Sweeney Obj. at 3.

20  Class Counsel is willing to make detailed billing records available at the Court's request, consistent

21  with this District's Procedural Guidance for Class Action Settlements.[72] Given the detailed

---

[68] Special Master's Report & Recommendation re Allocation of IPP Class Counsel Attorney's Fees at 11, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal. Oct. 20, 2016), ECF No. 4971 (applying a $1,000 per hour rate for Francis Scarpulla, a senior antitrust attorney).

[69] *See, e.g.*, Friedman Fees Decl., Ex. B at 30 (listing Steve Berman's 1980 graduation from law school and 35 years of experience).

[70] Friedman Fees Decl., Ex. A.

[71] Friedman Final App. Decl., ¶ 3.

[72] Procedure Guidance for Class Action Settlements, United States District Court for the Northern District of California, http://www.cand.uscourts.gov/ClassActionSettlementGuidance ("Declarations of class counsel as to hours spent on various categories of activities related to the

description of the time dedicated to this case, the hourly rates of the Hagens Berman attorneys, and

the number of hours per attorney, IPPs do not believe such a voluminous submission is necessary.

### g.    Hagens Berman's Use of Contract Attorneys Is Reasonable

Andrews and Helfand object to the use of contract attorneys. Andrews argues that contract

attorneys should be billed at hourly rates of approximately $32 per hour, attaching an advertisement

from Craigslist and a letter submitted in 2013 by the Association of Corporate Counsel in the

Southern District of New York. Andrews Obj. at 23. Helfand suggests that contract attorneys are not

members of the firm and should be billed at their actual cost. Helfand Obj. at 3-5. Andrews and

Helfand misunderstand the role that these contract attorneys have played.

Courts throughout the country have accepted the use of contract attorneys in this type of

complex litigation.[73] As the court in *Chambers v. Whirlpool Corp.* recently noted – rejecting

objections by Patrick Sweeney who has also objected here – "regardless of whether a task is

performed by a law firm partner, a contract attorney, or a paralegal, the reasonableness of the fees

depends on 'the difficulty and skill level of the work performed, and the result achieved, not the title

of the person who did the work."[74] The *Chambers* court noted that "the court does not agree that

document review is menial or mindless work; in complex civil litigation such as the instant case, it is

a critically important and challenging task."[75] One court has opined that courts "should no more

attempt to determine a correct spread between the contract attorney's cost and his or her hourly rate

---

action, together with hourly billing rate information may be sufficient, provided that the declarations
are adequately detailed. Counsel should be prepared to submit copies of billing records themselves at
the court's order."); Friedman Fees Decl., ¶ 30 ("Detailed and contemporaneously prepared time
records supporting this summary are available, if requested by the Court.").

[73] *See e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT III*"), MDL No. 1917, 2016 U.S.
Dist. LEXIS 24951, at *310 (N.D. Cal. Jan. 28, 2016) ("[T]he legal community now commonly uses
contract attorneys. There is not the slightest justification to downgrade their billing rates or not apply
a multiplier to them."); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369, 398-399 (S.D.N.Y.
2013) (applying a blended hourly rate of $200 for contract attorneys in 2013).

[74] *Chambers v. Whirlpool Corp.*, No. CV 11-1733, 2016 U.S. Dist. LEXIS 140839, at *47 (C.D.
Cal. Oct. 11, 2016).

[75] *Id.*

than it should pass judgment on the differential between a regular associate's hourly rate and his or her salary."[76]

Hagens Berman has employed only six contract attorneys in this case.[77] Two of these attorneys were retained for specific language skills and discrete projects – Jay Perez is fluent in Portuguese and Sheri Tang is fluent in Japanese. The remaining four contract attorneys are all experienced attorneys – for the most part hired by Hagens Berman for their antitrust experience and to work on the *ODD* litigation. These attorneys were not treated as "uncouth parasites" as Helfand so insultingly suggests. Each contract attorney worked from Hagens Berman's offices, was provided computers and resources by Hagens Berman, and maintained regular contact with all members of the *ODD* team via email and telephone. Each of these contract attorneys attended regular meetings with partners on the *ODD* litigation team. These attorneys did not perform mere document review, but worked closely with more senior attorneys to identify and isolate critical documents for use in motion practice, strategy, mediation and as deposition exhibits. The contract attorneys assisted IPPs' experts and non-testifying consultants throughout the class certification briefing. And the number of hours billed by some attorneys (for example, over 4,000 billed by Christine Glenn) demonstrates the commitment and role that these attorneys played in this litigation.[78]

### h.   IPPs Have Made Information Available to the Class, Including Class Certification Papers, Expert Reports, and the Complaints

Andrews objects that a number of documents were either missing or sealed from the public record. But regardless, Andrews fails to articulate **why** access to these documents would change the outcome for any class members, where the notice to the class and the existence of detailed "frequently asked questions" on the website provided the class with sufficient information to make an adequate determination of whether to stay in the class or whether to opt-out.

---

[76] *In re AOL Time Warner S'holder Derivative Litig*., No. 02-Civ.-6302, 2009 U.S. Dist. LEXIS 124372, at *78 (S.D.N.Y. Feb. 1, 2010); *see also* ABA Comm. on Ethics & Prof. Resp. Formal Op. 00-420 (Nov. 29, 2000) (opining that a firm may charge a markup to cover overhead and profit if the contract attorney charges are billed as fees for legal services).

[77] Friedman Fees Decl., ¶ 29. The 27 hours billed by Karthik Murthy were actually worked by a separate timekeeper, Staff Attorney Patrick Ryan. This inadvertent error does not materially change the lodestar calculation.

[78] Friedman Final App. Decl., ¶ 4.

Regardless, Andrews is simply wrong on the facts:

- **IPPs' Damages Estimates**: *Andrews* objects that IPPs have not filed their expert damage reports publicly, and that IPPs have not provided the class with an estimated damages figure. This is incorrect. Not only have IPPs filed the most-unredacted-version possible of the four reports of Dr. Kenneth Flamm,[79] in the motion for preliminary approval, IPPs also publicly stated the total estimated amount of damages, as well as the percent recovery by the class due to these four settlements.[80]

- **The Settlement Agreements**: Andrews objects that two settlement agreements were not available on the www.opticaldiskdriveantitrust.com website until five days after the notice campaign began. Andrews Obj. at 5. This is incorrect.[81]

- **The Complaints:** Andrews objects that the complaints were not publicly available. Andrews Obj. at 5. Although they were not posted to the www.opticaldiskdriveantitrust.com website, they have been publicly available on PACER for the six years this MDL has been pending, and both the original complaint from 2010 and the operative Fifth Amended Complaint have been available on Hagens Berman's website for many years.[82]

- **The Fee Petition and Request for Incentive Awards:** Andrews originally objected that IPPs' fee petition and request for incentive awards were not available. Andrews Obj., ECF No. 1978-3 at 6. They were filed, however, on October 5, 2016 (fourteen days before the objection deadline), and posted the same day to the www.opticaldiskdriveantitrust.com website.

Andrews objects that IPPs have not provided the claims rate of the class. Andrews Obj., ECF No. 1978-3 at 7. But the claims period does not close until July 1, 2017, making it impossible to know the claims rate at this time.

Sweeney objects that notice is not adequate and that "almost nothing" can be found on Pacer regarding this case. Sweeny Obj. at 2. This objection seems completely unrelated to this case – as Sweeney's objection itself is numbered as 1,983 on the docket.

---

[79] [Corrected] Declaration of Dr. Kenneth Flamm in Support of Plaintiffs' Motion for Class Certification, Oct. 25, 2013, ECF No. 1049; Declaration of Dr. Kenneth Flamm in Further Support of Indirect Purchaser Plaintiffs' Motion for Class Certification, Mar. 7, 2014, ECF No. 1161; Declaration of Dr. Kenneth Flamm in Support of Indirect Purchaser Plaintiffs' Revised Motion for Class Certification, Mar. 2, 2016, ECF No. 1808-4.Declaration of Dr. Kenneth Flamm in Further Support of Revised Motion for Class Certification on Behalf of Indirect Purchaser Class, Mar. 2, 2016, ECF No. 1808-8.

[80] Prelim. App. Mot. at 7.

[81] Declaration of Ramon Qiu Regarding Implementation of Class Notice Plan ("Qiu Decl."), ¶ 4.

[82] *See* Cases: Optical Disc Drives (ODD), Hagens Berman Sobol Shapiro LLP, https://www.hbsslaw.com/cases/optical-disc-drives-odd---all-devices-with-cd-or-dvd-players (last visited Oct. 31, 2016).

i.     **Quick Pay Provisions Are Common and Accepted in the Ninth Circuit**

Helfand objects to IPPs' settlements because they contain quick pay provisions. Quick pay provisions are common practice in the Ninth Circuit.[83] This is for good reason – the quick pay provision is a recognized method to disincentive blackmail objectors.[84] Helfand argues the quick-pay provisions create a conflict of interest between class members and class counsel and violates the Rules of Professional Responsibility.[85] The Rules of Professional Conduct, however, are not easily forced onto the class counsel-absent class member relationship.[86] Unnamed class members are not typically deemed "clients" of a law firm.[87] This is especially true in the conflicts context, where the only parties in a class action for conflicts purposes are the named plaintiffs and named defendants.[88]

---

[83] *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD I*"), No. 07-md-1827, 2011 U.S. Dist. LEXIS 154288, at *1 (N.D. Cal. Dec. 27, 2011); *Miller v. Ghirardelli Chocolate Co.*, No. C-12-04936, 2014 U.S. Dist. LEXIS 141111, at *16 (N.D. Cal. Oct. 2, 2014) ("Such 'quick pay' provisions are routinely approved by courts in this district.").

[84] Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1641 (2009) ("[Q]uick-pay provisions may discourage objectors from filing meritless appeals in the first place because the provisions increase the ability of class counsel to credibly threaten to ride an appeal out to fruition.").

[85] Helfand Obj. at 5-6.

[86] *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 163 (3d Cir. 1984) ("[C]ourts cannot mechanically transpose to class actions the rules developed in the traditional lawyer-client setting context.") (concurring); *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986) ("[T]he traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation.").

[87] *Atari v. Superior Court*, 166 Cal. App. 3d 867, 873 (1985) ("We cannot accept the suggestion that a potential (but as yet unapproached) class member should be deemed 'a party . . . represented by counsel' even before the class is certified.")(ellipsis in original); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) ("While lead counsel owes a generalized duty to unnamed class members, the existence of such a fiduciary duty does not create an inviolate attorney-client relationship with each and every member of the putative class.").

[88] *See City of San Diego v. Haas*, 207 Cal. App. 4th 472, 502 (2012) ("[U]nnamed class members are not considered to be clients of the proposed class counsel for purposes of applying the professional rule that restricts representation when there are concurrent conflicts of interests."; *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2010 U.S. Dist. LEXIS 34882, at *9-13, *18 (N.D. Ill. Apr. 7, 2010) ("[A]bsent class members do not create conflicts."); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 112 (D.D.C. 2013) (finding no adverse relationship between a firm and their client (Oxbow) because "Oxbow is only an unnamed class member; and nothing about Latham's relationship with UP or Oxbow's unusually active participation in the MDL gives the Court reason to stray from the general rule that unnamed class members are not firm clients for conflict purposes.").

1    Renowned legal ethics expert Professor Geoffrey Hazard found that "[a] member of a class, other

2    than named representatives, is not a 'client' for purposes of the rules of conflict of interest."[89]

3         Helfand argues that class counsel takes a possessory interest in money that belongs to the

4    class, and that Hagens Berman "agrees to return the money that should not have been improperly

5    removed from the trust fund in the first place." But if settlement approval is reversed, the fees would

6    be paid back under the terms of the settlement – a contractual clause in the settlement.[90] Professional

7    Rules of Conduct 3-300 provide that an attorney shall not "knowingly acquire an ownership,

8    possessory, security, or other pecuniary interest adverse to a client" unless particular requirements

9    are satisfied.[91] But not only is Helfand not a client of class counsel, as explained above, the ethics

10   rules do not apply in the conflicts context.

11   **C.    This Court Should Overrule Objections by Professional Objectors to the Fairness of the Settlement, Plan of Allocation, and Adequacy of Notice to the Class**

12        The objectors make a number of objections that could be construed as objecting to the

13   fairness of the settlement, the plan of allocation and adequacy of notice. IPPs address these below.

14        **1.    Andrews' Objection to the Adequacy of the Panasonic Settlement Is Misplaced**

15        Andrews objects to the recovery of 16 percent against Panasonic, compared to the recovery

16   of 42 percent from Sony/NEC and 33 percent from HLDS. Andrews Obj., ECF No. 1978-3 at 8, 25.

17   But this is just another version of the "the class should recover more" which has long been rejected.

18   Regardless, Andrews ignores that the Panasonic settlement was reached at a time when the first

19   motion for class certification had been denied, and when the revised motion for class certification

20   was still pending – a time of extraordinary risk for the class receiving no recovery at all – as well as

21   Panasonic's position as the first IPP settlement in the case. These two reasons certainly explain the

22   lower rate of recovery for the class in the Panasonic settlement.

---

[89] Friedman Final App. Decl., Ex. 18, ¶¶ 5(b).

[90] Declaration of Jeff D. Friedman in Support of Motion for Preliminary Approval of Settlements with Panasonic, NEC, Sony, and HLDS Defendant Families and Dissemination of Class Notice, Ex. A, ¶¶ 29-30 (IPP-Panasonic Settlement Agreement), Ex. B, ¶¶ 28-29 (IPP-NEC Settlement Agreement), Ex. C, ¶¶ 27-28 (IPP-Sony Settlement Agreement), Ex. D, ¶ 31 (IPP-HLDS Settlement Agreement), June 28, 2016, ECF No.1898.

[91] Rule of Professional Conduct 3-300.

**2.      Andrews' Objections to *Cy Pres* Are Premature**

Andrews objects to a cy pres beneficiary (Andrews Obj. ECF No. 1978-3 at 8), when none is contemplated at this time. IPPs intend on distributing as much money as possible to the class – whether it be through multiple rounds of distribution or otherwise. At the time that either a *cy pres* award or escheatment of the settlement becomes necessary, IPPs will ask for this Court's approval. Other courts have declined to consider what will happen to the residue of a fund until it is ripe.[92]

**3.      Andrews' Other Litany of Objections Are Without Merit**

Andrews objects that the claims administrator has the ability to audit and disallow claims if fraud is suspected. Andrews Obj. at 8-9. But given the amount of money at issue – $124.5 million – it is only prudent (and an accepted policy) to require documentation and auditing of large or suspicious claims.

Andrews objects to the indirect class period of April 1, 2003 through December 31, 2008 – but ignores that this is the class period certified by the Court in its certification order (as plaintiffs' pointed out in the motion for preliminary approval).[93]

Andrews objects that class members should be given an exact amount for their recovery. Andrews Obj. at 10. But without knowing the number of claimants (which will not be known until June 2017), IPPs cannot provide this number. IPPs did provide an estimate of $10 to give class members of the minimum that might be expected as recovery in this case.

Andrews objects that requests for exclusion were sent to class counsel and not the claims administrator. Andrews Obj. at 11. He is wrong.[94]

Andrews makes several objections to the notice plan – that he requires the total number of email addresses for the class to verify damages; that the notice was fatally flawed; that there is no

---

[92] *See Rodriguez*, 563 F.3d at 966 (declining to consider the propriety of cy pres where "no cy pres disbursement[was] imminent"); *In re Cathode Ray Tube (CRT) Antitrust Litig*. ("*CRT IV*"), MDL No. 1917, 2016 U.S. Dist. LEXIS 88665, at *217 (N.D. Cal. July 7, 2016) (declining to consider objection to *cy pres* when "Perhaps the parties will designate a cy pres recipient; perhaps there will [be] a supplemental distribution; perhaps another approach will be most appropriate.").

[93] Prelim. App. Mot. at 3 ("The proposed settlement classes mirror the class certified by this Court").

[94] Declaration of Alan Vasquez Regarding Implementation of Class Notice Plan ("Vasquez Decl."), Ex. 5.

proof of the success of the notice program. Andrews Obj. at 13-16. As addressed above, however, the preliminary approval papers outlined the total estimated damages for the class.[95] Andrews points to no piece of information missing from the notice itself which makes the notice defective. And with the filing of this motion, IPPs provide the Court with declarations from the notice administrators attesting to the success of the program.[96]

### 4. Hagens Berman Will Oversee Claims Administration in This Action

Sweeney suggests that a portion of class counsel's fee should be withheld until distribution is complete, as IPPs are not currently committed to oversee the settlement process to its completion. Sweeney Obj. at 1. Nonsense. Hagens Berman is a respected firm, specializing in complex class actions, and responsible for overseeing the distribution of hundreds of millions of dollars to many classes. The firm and its attorneys are aware of their obligations to the class and committed to ensuring the distribution of these settlement funds.

### D. The Requested Service Awards for the Class Representatives Are Justified Given Their Extraordinary Participation in the Case

Andrews objects to the $4,500 service awards requested on behalf of the named representatives. Andrews Obj. ECF No. 1978-3 at 30. But Andrews fails to address the declaration submitted by each class member detailing their efforts and involvement over the past six years.[97] The incentive awards are appropriate and well within the range awarded by other courts in this district.[98]

### E. IPPs' Expenses Are Reasonable

Helfand objects to $72,420.09 for certain professional services by vendors retained by IPPs. Helfand Obj. at 7. Nearly $40,000 of this amount was for a graphics vendor who prepared IPPs'

---

[95] Prelim. App. Mot. at 7.

[96] Qiu Decl., ¶¶ 3-4; Vasqez Decl., ¶¶ 10-28.

[97] Friedman Fees Decl., Exs. C-Y.

[98] Order Granting Direct Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Awards, July 23, 2015, ECF No. 1658 (awarding $10,000); Order Granting Direct Purchaser Plaintiffs' Second Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards, Apr. 14, 2016, ECF No. 1851 (awarding $5,000); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 253 (3d Cir. 2009) (approving service award of $10,000).

1    presentation at the first motion for class certification. The remaining amounts specifically relate to

2    marketing for this case to reach plaintiffs to represent the proposed state classes.

3         Helfand objects to the $3,103,648.81 paid to IPPs' experts and consultants. This amount,

4    however, was paid to IPPs' testifying expert Dr. Flamm and the economists supporting him for the

5    preparation of his four expert reports. In a similar context, the court in *CRT* approved payment of

6    approximately $5.7 million for the IPPs' experts and consultants.[99] Given the critical role the

7    testimony of economists played at class certification, IPPs' requested reimbursement for this expense

8    is reasonable.

9         Sweeney objects that IPPs have not submitted receipts for litigation expenses. Sweeney Obj.

10   at 3. But there is no legal requirement for IPPs to do so. IPPs have attested that they have prepared

11   their request for reimbursement of litigation expenses from the books and records of the firm, which

12   are prepared from expense vouchers, expenses records, and which are an accurate record of the

13   expenses incurred.[100] No more is required.

14   **F.    IPPs' Responses to the Objections of the Non-Professional-Objector Class Members**

15        In addition to the four professional objectors, four individual class members have objected to

16   the settlement and attorneys' fees. IPPs respond to each of these below.

17        **1.    Response to Kelly Campbell**

18        Kelly Campbell objects to the amount of attorneys' fees, and to her estimated recovery of $10

19   per ODD.[101] Ms. Campbell raises no specific objection to attorneys' fees. As for the amount of the

20   settlement, it is axiomatic that class members recover only for the overcharge and not the entire

21   purchase price of the computer. And even then, $10 represents an estimate of the amount class

22   members may recover, not the outside limit. Regardless, "[i]t is well-settled law that a cash

23   settlement amounting to only a fraction of the potential recovery [does] not *per se* render the

24

25        [99] Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for
     Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards at 46, *In re Cathode*
26   *Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal. Sept. 23, 2015), ECF No. 4071-1
     (requesting reimbursement of $5,767,600.46 for experts/consultants/investigators).

27        [100] Friedman Fees Decl., ¶ 34.

28        [101] Objection of Kelly Campbell, Oct. 25, 2016, ECF No. 1982.

settlement inadequate or unfair."[102] As argued in the accompanying motion for final approval of the settlement, this settlement falls well within the range approved by other courts in this district.

### 2. Response to Barbara Cochran

Barbara Cochran objects that the notice does not explain the procedure for submitting claims.[103] Ms. Cochran voices her concern that the settlement may impose "unreasonable documentation requirements." Not only was the claims form submitted to this Court and approved in connection with preliminary approval, the claims process also does not require proof of purchase.[104] Ms. Cochran's concerns here are unfounded.

Ms. Cochran also objects to the attorneys getting paid more than their lodestar, without raising any further specific objection to the request for attorneys' fees. An objector "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged."[105]

### 3. Response to Yury Sacrificial

Yury Sacrificial, "computer enthusiast" objects to the settlement because ODDs have declined in price over the class period, "there is no 'injury to the consumer."[106] Mr. Sacrificial's objection is that the class should recover nothing. If Mr. Sacrificial believes this case is without merit, he is free to opt-out and litigate on his own. But depriving millions of other consumers of compensation is not a legitimate objection.

---

[102] *Officers for Justice v. Civil Service Comm'n. of the City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *29 (C.D. Cal. June 10, 2005).

[103] Objection of Barbara S. Cochran, Oct. 27, 2016, ECF No. 1986.

[104] Declaration of Alan Vasquez, Ex. 7, June 28, 2016, ECF No. 1898-2 ("You do not need to submit proof of your purchase(s) with your Claim Form.").

[105] *McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995); *see also Satchell v. Wallace*, 439 Fed. App'x. 644, 645 (9th Cir. 2011) (accord).

[106] Objection to settlement by Yury Sacrificial, computer enthusiast, Oct. 14, 2016, ECF No. 1977.

**4.      Response to James Nellen II**

James Nellen II objects to the claims procedure which requires attesting under penalty of perjury that the information submitted on the claims form is true and correct.[107] Mr. Nellen suggests that class counsel should be required to identify class members and the number of purchases by each ODD member. In a perfect world, class counsel would attempt to do so. But here there is no perfect set of information that identifies all class members, as well as the number of products each class member purchased. IPPs do intend to provide automatic distribution to class members where possible. As for Mr. Nellen's objection regarding the statement under "penalty of perjury," requiring this statement is to protect against fraud is reasonable. Other courts in this district have required similar attestations that the information provided is accurate.[108]

**G.      This Court Should Strike All Improper Joinders by Objectors**

Many of the objectors have improperly joined in all other objections.[109] Combined, the four professional objectors have filed 130 pages of objections. "A district court has inherent authority to control its own docket and may enforce limitations on briefing or incorporation by reference."[110] IPPs request that this Court strike all objectors' incorporation by reference.

### III.      CONCLUSION

Respectfully, IPPs request that this Court approve the four proposed settlements, Hagens Berman's request for attorneys' fees, expenses, and service awards for the class representatives.

DATED: November 2, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP


By    s/ Jeff D. Friedman
                        JEFF D. FRIEDMAN

---

[107] Objection to Settlement by James W. Nellen II, Oct. 11, 2016, ECF No. 1967.

[108] *CRT III*, 2016 U.S. Dist. LEXIS 24951, at *230 n.26 (requiring a claims form with "an attestation under penalty of perjury that the information provided is accurate").

[109] *See* Sweeny Obj. at 3; Cochran Obj. at 1; Erwin Obj. at 2-3; Andrews Obj., ECF No. 1978-2 at 27.

[110] *CRT IV*, 2016 U.S. Dist. LEXIS 88665, at *233; *see also Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (collecting cases detailing a Court's inherent powers); *Green v. Cal.Court Apartments LLC*, 321 F. App'x 589, 591 (9th Cir. 2009) (upholding a decision to strike a brief filed with pages exceeding the limit set by local rules); *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) (denial of incorporation by reference upheld).

1

2       Shana E. Scarlett (217895)
        715 Hearst Avenue, Suite 202
3       Berkeley, CA 94710
        Telephone: (510) 725-3000
        Facsimile: (510) 725-3001
4       jefff@hbsslaw.com
        shanas@hbsslaw.com
5
        Steve W. Berman (*Pro Hac Vice*)
6       HAGENS BERMAN SOBOL SHAPIRO LLP
        1918 Eighth Avenue, Suite 3300
7       Seattle, WA 98101
        Telephone: (206) 623-7292
8       Facsimile: (206) 623-0594
        steve@hbsslaw.com
9
        *Lead Counsel for Indirect Purchaser Class*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28