1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | No.  3:10-md-2143 RS |
|---|---|
| | [~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL OF INDIRECT PURCHASER PLAINTIFFS' SETTLEMENTS WITH PANASONIC, NEC, SONY AND HLDS DEFENDANT FAMILIES, GRANTING MOTION FOR ATTORNEY FEES, EXPENSES AND SERVICE AWARDS, AND OVERRULING OBJECTIONS |
| | **AS MODIFIED BY COURT** |
| | DATE ACTION FILED: Oct. 27, 2009 |
| This Document Relates to: ALL INDIRECT PURCHASER ACTIONS | |

This matter comes before the Court on indirect purchaser plaintiffs' motion for final approval of settlements (ECF No. 1994), motion for payment of attorney fees, reimbursement of expenses, and payment of service awards to the named representatives (ECF No. 1963). A hearing was held on December 8, 2016.

The Court has carefully reviewed and considered the record in this matter, including the memoranda and supporting declarations submitted in support of the motion for preliminary approval and the exhibits attached thereto, including the proposed settlement agreements and each of the class notices; indirect purchaser plaintiffs' (IPPs) motion for final approval of the Settlement Agreement; the memoranda in support of the motion for final approval submitted by IPPs; the memoranda and declarations submitted in support of the fee petition; all objections submitted to the  Court and IPPs' responses to those objections.

Good cause appearing, the Court orders as follows:

## I.    BACKGROUND

Indirect purchaser plaintiffs (IPPs) move for final approval of their settlements with the Panasonic, NEC, Sony and HLDS defendant families.[1] On July 21, 2016, this Court granted preliminary approval of these settlements, provisionally certifying the settlement class, preliminarily approving the settlements, and ordering dissemination of notice to class members (ECF No. 1916).

Two notice administrators provided notice in accordance with this Court's order. Out of the millions of class members, only fifteen class members requested exclusion from the class, and a total of eight objections were filed. These four settlements will result in recovery of $124.5 million for the indirect purchaser class. Under the proposed schedule, the class is able to make claims until July 1, 2017, at which point IPPs propose a well-accepted distribution plan – a pro-rata calculation taking into account how many ODDs were purchased by each class member.

---

[1] "Panasonic" refers to Panasonic Corporation and Panasonic Corporation of North America. "NEC" refers to NEC Corporation. "Sony" refers to Sony Corporation; Sony Optiarc Inc. (formerly known as Sony NEC Optiarc Inc.); and Sony Optiarc America Inc. "HLDS" refers to Hitachi-LG Data Storage, Inc. and Hitachi-LG Data Storage Korea, Inc. (collectively "HLDS").

## II.     SUMMARY OF SETTLEMENTS

**A.     Settlement Terms**

The proposed settlements resolve all claims against these four defendant families stemming from the alleged conspiracy to restrain competition for ODDs. The settlement classes are defined as follows (ECF No. 1898-3 at Ex. A, ¶ A(1); Ex. B, ¶ A(1); Ex. C, A(1); Ex. D, ¶ A(1)):

> All persons and entities who, as residents of Arizona, California, District of Columbia, Florida, Hawaii, Kansas, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Tennessee, Utah, Vermont, West Virginia and Wisconsin and during the period April 2003 to December 2008, purchased new for their own use and not for resale: (i) a computer with an internal ODD; (ii) a stand-alone ODD designed for internal use in computers; or (iii) an ODD designed to be attached externally to a computer. ODD refers to a DVD-RW, DVD-ROM, or COMBO drive manufactured by one or more Defendants or their coconspirators. Excluded from the class are any purchases of Panasonic-branded computers.

The proposed settlement classes mirror the class certified by this Court on February 8, 2016 (ECF No. 1783).

**B.     The Settlement Consideration**

Under the proposed settlements, defendants will pay a total of $124.5 million in cash. The Panasonic defendants will contribute $16.5 million; NEC will contribute $6.5 million; the Sony defendants will contribute $28.5 million; the HLDS defendants will contribute $73 million. In addition, each of the settlement agreements provides for cooperation from these defendants to assist in the prosecution of claims against the remaining defendants and at trial.

**C.     Release of Claims**

Plaintiffs and class members will release all federal and state-law claims against the Panasonic, NEC, Sony and HLDS defendants if the settlements become final, relating to the conduct alleged in plaintiffs' complaint, including "claims under foreign antitrust or competition laws . . . that relate to or arise out of the sale of any of the ODDs or any of the products containing ODDs" (ECF No. 1898-3 at Ex. A, ¶ 13; Ex. B, ¶ 13; Ex. C, ¶ 12; Ex. D, ¶ 13) that are the subject of the complaint. The release does not preclude plaintiffs from pursuing their claims against the other defendants (ECF No. 1898-3 at Ex. A, ¶ 13; Ex. B, ¶ 13; Ex. C, ¶ 12; Ex. D, ¶ 12). The settlements release only those

1   claims of class members who will recover under the terms of the settlement. The HLDS settlement

2   also releases claims against LG Electronics, Inc., LG Electronics USA, Inc., and Hitachi, Ltd.

3   (related companies to HLDS).

4              **III.    THE SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE**

5              In order to approve a settlement in a class action, the court must conduct a three-step inquiry.

6   *First*, it must assess whether defendants have met the notice requirements under the Class Action

7   Fairness Act (CAFA). *See* 28 U.S.C. § 1715(d). *Second*, it must determine whether the notice

8   requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. *Finally*, it must

9   conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate."

10  *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing the

11  Rule 23(e)(2) standard); *Adoma v. Univ. of Phoenix. Inc.*, 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012)

12  (conducting three-step inquiry). Each of these requirements are met here.

13  **A.    The Parties Have Complied with the Class Action Fairness Act**

14             CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is

15  filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the

16  proposed settlement] upon the appropriate State official of each State in which a class member

17  resides and the appropriate Federal official[.]" *See* 28 U.S.C. § 1715(b).The court may not grant final

18  approval of a class action settlement until the CAFA notice requirement is met. *See* 28 U.S.C.

19  § 1715(d). Here, the NEC, Panasonic, Sony and HLDS defendants provided the required CAFA

20  notice (ECF Nos. 1987, 1990, 1991, 1992). No Attorneys General have submitted statements of

21  interest or objections in response to these notices.

22  **B.    The Settlement Class Meets All Requirements of Rule 23(e)**

23             In its order granting preliminary approval, and its order certifying the class on February 8,

24  2016 (ECF No. 1783), the Court certified the class pursuant to Rule 23(b)(3) (ECF No. 1916). The

25  same analyses apply here, and the Court affirms its order certifying the class for settlement purposes

26  under Rule 23(e).

27

28

## C.     The Parties Have Complied with Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b )(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(l). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. The notice administrators provided direct notice via e-mail (obtained from retailers of the products at issue in this case) to approximately 14.7 million consumers. On August 20, 2016, The notice administrators made a case website publicly available which contained the full settlement agreements, the Court's order granting preliminary approval to these settlements, the long form notice, and the claims form (in both electronic and PDF version). On October 5, 2016, the website was updated to include IPPs' motion for attorney fees, expenses and service awards for class representatives, as well as the accompanying attorney declaration. A toll-free automated telephone support line was activated to provide answers to frequently asked questions by class members. The notice administrators engaged in an extensive public notice campaign, including:

a.   Publishing summary notice in the national edition of *USA Today*;

b.   Publishing summary notice in the national edition of *People* magazine;

c.   Implementing a text link advertising campaign on Google.com which served 4,593,972 impressions with 8,092 clicks through to the case website;

d.   Developing creative banner advertisements that utilizes behavioral audience targeting, contextual targeting, mobile inventory, and prospecting to reach likely class members – which resulted in 196,122,505 impressions with 158,556 clicks through to the case website;

e.   Developing banner advertising and text link advertising on Facebook.com, resulting in 4,481,222 impressions with 89,327 clicks through to the case website;

f.   Advertising through Twitter.com, resulting in 1,770,199 impressions with 16,209 clicks through to the case website;

g.   Case write-up and inclusion in the Top Class Action website and monthly newsletter, and;

1

2    h.   Releasing a national, party-neutral press release.

3        In total, the indirect notice efforts generated over 207,530,045 impressions, directing over

4    272,184 clicks through to the case website.  The volume of impressions generated was nearly 11

5    million more than estimated in the Notice plan. The notice administrator confirms that at least 70

6    percent of the class has received notice of these settlements.

7        The Court previously found that the notice itself informed class members of the nature of the

8    action, the terms of the proposed settlements, the effect of the action and the release of claims, as

9    well as class members' right to exclude themselves from the action and their right to object to the

10   proposed settlements (ECF No. 1783). The Court finds that plaintiffs have complied with all of the

11   requirements of Rule 23.

12   **D.    The Proposed Panasonic, NEC, Sony and HLDS Settlements Are Fair, Adequate and Reasonable**

13       This Court is entitled to exercise its "sound discretion" when deciding whether to grant final

14   approval. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

15   939 (9th Cir. 1981) ("Dismissal or compromise of a class action is left to the sound discretion of the

16   trial judge."). It is also well established in the Ninth Circuit that "voluntary conciliation and

17   settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*

18   *of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public

19   interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van*

20   *Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary

21   settlement agreements" exists, and "'this presumption is especially strong in class actions and other

22   complex cases . . . because they promote the amicable resolution of disputes and lighten the

23   increasing load of litigation faced by the federal courts.'" *Sullivan v. DB Invs.*, 667 F.3d 273, 311 (3d

24   Cir. 2011) (internal citation omitted; ellipsis in original).

25       The four settlements reached between IPPs and four defendant families – NEC, Panasonic,

26   Sony and HLDS – satisfy all criteria for a fair, adequate, and reasonable settlement. In determining

27   whether a settlement agreement is fair, adequate, and reasonable, the Court must weigh some or all

28

1    of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

2    likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

3    (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

4    proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;

5    and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod.*

6    *Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

### 1.    Strength of Plaintiffs' Case

8    The Court finds that the "strength of the plaintiffs' case" weighs in favor of approving the

9    settlement. *Bluetooth*, 654 F.3d at 946. Plaintiffs' claims implicate legal and factual issues that are

10   vigorously disputed, including the scope of the conspiracy, the impact from the conspiracy, whether

11   the overcharge due to the conspiracy was passed-through, and whether IPPs will prove a conspiracy

12   that is larger than the one outlined in the criminal guilty pleas by HLDS. The novelty of these issues

13   created uncertainty as to IPPs' likelihood of success on their claims, as well as to defendants'

14   defenses to those claims.

### 2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

16   The Court finds that the "risk, expense, complexity, and likely duration of further litigation"

17   (*Bluetooth,* 654 F.3d at 946 ) supports final approval of these settlements. "'An antitrust class action

18   is arguably the most complex action to prosecute. . . . The legal and factual issues involved are

19   always numerous and uncertain in outcome.'" *In re Linerboard Antitrust Litig.*, MDL No. 1261,

20   2004 U.S. Dist. LEXIS 10532, at *34 (E.D. Pa. June 2, 2004) (citations omitted). IPPs took on

21   substantial risk in bringing this case. Antitrust class actions are one of the most complex types of

22   litigation – this one involves eleven defendant families, multiple continents, four languages, and

23   alleges a global conspiracy that purportedly started over a decade ago. The risk inherent in this

24   litigation was evidenced by this Court's denial of the IPPs' first motion for class certification (ECF

25   No. 1444).

26   The continued litigation against the remaining defendants underscores that allowing some

27   recovery for the IPP class brings certain value to these claims. The remaining defendants intend on

28   bringing multiple motions for summary judgment, decertification, and likely further motions to

exclude expert testimony. In the face of both the historic risk faced by the IPPs, as well as the future risk to the class, this factor certainly supports final approval of these settlements.

### 3.    The Risk of Maintaining Class Action Status Throughout the Trial

The Court finds that the "risk of maintaining class action status throughout the trial," (*Bluetooth*, 654 F.3d at 946) weighs in favor of approving the settlements. The defendants have already suggested that they intend to bring a motion for decertification (ECF No. 1972).  Although this Court has already found that the class met the requirements of Rule 23, a court may decertify a class at any time. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (citing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

### 4.    The Amount Offered in Settlement

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). Here, recovery from these four defendants represents 31 percent of the damages attributable to the market share of these defendants, and 15 percent of the total damages ($840 million) suffered by the indirect purchaser class, as calculated by their experts and which they would have claimed at trial.  The litigation will continue against defendants responsible for approximately fifty percent of the commerce at issue. This factor strongly weighs in favor of granting final approval.

### 5.    The Extent of Discovery Completed and Stage of Proceedings

The extent of the discovery conducted to date and the stage of the litigation are both indicators of counsel's familiarity with the case and of plaintiffs having enough information to make informed decisions. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *See Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009).

The parties here conducted extensive discovery, thoroughly testing the claims and defenses available in this case. Discovery included dozens of depositions, hundreds of written interrogatories, and the production and review of millions of pages of documents. IPPs and the Panasonic and Sony

1    defendants also reached these settlements with the assistance of Magistrate Judge Corley, further

2    supporting the presumption that they were genuine, arms-length settlements. Given that the parties

3    entered into these settlements with a substantial understanding of the strengths and weaknesses of

4    their case, this factor further supports final approval here.

5    **6.     The Experience and Views of Class Counsel Support Approval**

6    "The recommendations of plaintiffs' counsel should be given a presumption of

7    reasonableness." *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007)

8    (internal quotation marks and citation omitted). Here, counsel for IPPs – experienced antitrust

9    lawyers with many years of experience – support the settlement. This factor weighs in support of

10   final approval.

11   **7.     The Presence of a Government Participant**

12   The Class Action Fairness Act requires notice of a settlement be given to the Department of

13   Justice and affected states with time to comment prior to final approval of the settlement. *See* 28

14   U.S.C. § 1715(b). This allows the appropriate state or federal official the chance to voice concerns if

15   they believe that the class action is not in the best interest of their citizens. *See* S. REP. 109-14, 5,

16   2005 U.S.C.C.A.N. 3, 6. The State of Florida is a participant in this litigation. Here, no government

17   participant has raised an objection or concern regarding the settlements. This fact supports final

18   approval of the settlement.

19   **8.     The Reaction of Class Members**

20   IPPs' notice program reached millions of consumers who purchased the computers and

21   ODDs involved in this case. Only eight objections and fifteen requests for exclusion were received

22   out of the millions of class members. The reaction of the class thus strongly favors approval of the

23   settlement. *See, e.g.*, *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004)

24   (affirming settlement with 45 objections out of 90,000 notices sent); *In re Linkedin User Privacy*

25   *Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (finding "an overall positive reaction" by the class

26   where only 57 class members opted out and six objected out of a class of 798,000).

27

28

1       **9.**       **Whether the Settlement Was the Product of Collusion**

2       The Ninth Circuit recently identified three factors that may indicate a disregard for the

3 interests of the class: (1) when counsel receive a disproportionate distribution of the settlement, or

4 when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the

5 parties negotiate a "clear sailing" arrangement providing for payment of attorney fees separate and

6 apart from class funds, which carries the potential of enabling a defendant to pay class counsel

7 excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the

8 class; and (3) when the parties arrange for sums not awarded to the Class to revert to defendants

9 rather than be added to the class fund. *Bluetooth*, 654 F.3d at 947. None of these factors are present

10 here.

11                              \*        \*        \*

12       In summary, the Court finds that the four proposed settlements are fair, reasonable and

13 adequate and gives these settlements final approval.[2] The Court will enter the final proposed

14 judgments provided by the settling parties.

15

16                          **IV.**     **ATTORNEY FEES**

17       IPPs request: (1) an award of attorney fees in the amount of 25 percent of the $124.5 million

18 settlement fund; (2) reimbursement of expenses IPPs' counsel have advanced to date on behalf of the

19 class; and (3) service awards for the twenty-three class representatives.

20       In the Ninth Circuit, the district court has discretion in a common fund case to choose either

21 the "percentage-of-the-fund" or the "lodestar" method in calculating fees. *In re Online DVD-Rental*

22 *Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Regardless of what method is chosen as the

23 primary method to calculate attorney fees, the Ninth Circuit encourages district courts to conduct "a

24 cross-check using the other method." *Id.*

25

26         [2]   The majority of the objections relate to the attorney fee petition, rather than the fairness,
adequacy, or other terms of the settlement itself. For convenience, the objections are all addressed in
27 a separate section below. As discussed in that section, all of the objections to the settlement itself are
overruled, for the reasons stated.
28

Hagens Berman requests 25 percent of the common fund – $31,125,000. Applying a lodestar cross-check, this would represent a 1.29 multiplier from Hagens Berman's lodestar of $24,199,800.20. The Court finds these fees to be fair and reasonable under either method.[3]

## A.       The Twenty-Five Percent Benchmark

When considering a request for attorney fees that is calculated using the percentage-of-recovery method, the Ninth Circuit instructs courts to consider the following factors: (1) whether counsel "achieved exceptional results for the class;" (2) whether the case was risky for class counsel; (3) whether counsel's performance "generated benefits beyond the cash settlement fund;" (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and (6) whether the case was handled on a contingency basis. *Online DVD*, 779 F.3d at 954-55. The Ninth Circuit has instructed that although the benchmark of 25 percent "is not per se valid, it is a helpful 'starting point.'" *Id.*at 955.

### 1.       Results for the Class

Recovery of $124.5 million for the indirect purchaser class – with only 50 percent of the ODD defendants – is an exceptional result. At class certification, plaintiffs' damages expert estimated that nationwide, indirect purchaser damages totaled $1.67 billion for the period of April 2003 through December 2008 (ECF No. 1808-4). This Court certified 24 jurisdictions under California law (which are the same jurisdictions covered by each of the four settlements), representing approximately 50 percent of the population; the best estimate of damages is approximately $840 million. Considering each of these defendants' market share, the percent of recovery is as follows:

---

[3]   At the hearing, the Court suggested it might be appropriate to apply a "holdback" of some percentage, so that a final determination of the total fees to be awarded for this phase of the litigation could be made in light of the entire record at the conclusion of the case.  Given counsel's assurances that any future fee requests will be made with care to avoid double recovery, and because whatever the value of future work may be, it will not diminish the value of what has been obtained to date, the Court concludes a "holdback" is unnecessary.

[PROPOSED] ORDER FINAL APPROVAL OF SETTLEMENTS -
Case No.: 3:10-md-2143 RS

| Defendant Family | Contribution to Settlement Fund | Percent Share of ODD Market | Damages Attributed to Defendant Family | Percent Recovery for IPPs |
|---|---|---|---|---|
| Panasonic | $16,500,000 | 12% | $100,784,612.82 | 16% |
| NEC/Sony (Joint Venture) | $35,000,000 | 10% | $83,987,177.35 | 42% |
| HLDS | $73,000,000 | 26% | $218,366,661.11 | 33% |
| **Total** | **$124,500,000** | **48%** | **$403,138,451.28** | **31%** |

These settlements represent recovery of 31 percent of the estimated damages attributable to the market share of these defendants, and 15 percent of total estimated damages ($840 million) suffered by indirect purchasers. Compared more generally against other similar litigation, in *LCD*, after settlements with all defendants, the indirect purchasers recovered approximately 50 percent of potential damages. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2013 U.S. Dist. LEXIS 49885, at *70 (N.D. Cal. Apr. 1, 2013). In *CRT*, the indirect purchasers recovered 20 percent of potential single damages after settlements with all defendants. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 (JST), 2016 U.S. Dist. LEXIS 88665, at *185 (N.D. Cal. July 7, 2016). This Court finds the results here to be excellent on behalf of the IPP class.

**2.      Risk for Class Counsel**

The risk associated with this case plays an important role in determining a fair fee award. *Online DVD*, 779 F.3d at 955. A number of risks made this case unique – and made the actions of class counsel unique. *First*, defendants have used the very factor which some might point to as a strength in plaintiffs' case – the criminal guilty pleas of HLDS and its executives – as an affirmative tactical weapon. IPPs have devoted many hours both to developing evidence outside of the guilty pleas, as well as economic evidence demonstrating that HP and Dell form the floor of the ODD market. IPPs' theory is that even if the conspiracy targeted only HP and Dell, it would still have the effect of moving the entire market. *Second*, the very real risk existed that no class would ever be certified. Not only did IPPs need to convince this Court that a measureable overcharge existed due to the actions of the cartel, but IPPs also needed to demonstrate that this overcharge was passed-through to class members. *Third*, collectively, these defendants have enormous resources to devote to this litigation. *Fourth*, risk still remains. Two defendants have declared bankruptcy – Quanta Storage

America, Inc. and TSST-Korea (ECF Nos. 1643, 1906). Even if the IPPs prevail at trial, they may not be able to collect the full amount of their damages. The enormous risk posed by this case, and Hagens Berman's committed perseverance even in the face of this risk, deserves recognition.

### 3.  Benefits for the Class Beyond Cash

These four settlements offer the class benefits – and have realized benefits – beyond just cash. Each settlement agreement provides for certain cooperation provisions, including producing witnesses for deposition (ECF No. 1898-3 at Ex. A, ¶ 25, Ex. B, ¶¶ 24, 26, 27, Ex. C, ¶¶ 24-26, Ex. D, ¶ 28. Because the vast majority of witnesses are located overseas, the testimony of these witnesses at deposition is the testimony that will be used at trial. This factor provides significant benefit to the class.

### 4.  Market Rates

Hagens Berman's hourly rates are in line with market rates in this district. The most senior attorney on the case, Steve Berman, bills at an hourly rate of $950. This is well within the range of $200 to $1,080 charged by partners in California (ECF No. 1963-2). Other partners at Hagens Berman have hourly rates ranging between $525 to $735. Associates at Hagens Berman have hourly rates ranging from $250 to $605. Staff and contract attorneys have hourly rates ranging from between $300 to $350. A number of these staff and contract attorneys were specifically hired because of their unique language skills (Korean, Japanese and Chinese). Finally, translators, paralegals, and paralegal assistants have rates ranging between $125 to $265. All of these ranges are within the ranges accepted by other Courts in this District and market surveys (ECF No. 1963-2).

### 5.  Burdens on Class Counsel

The Ninth Circuit instructs district courts to consider the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work). Here, this litigation has been pending for six years – and trial is not scheduled until February 2018. Hagens Berman has spent $3,704,323.97 in out-of-pocket expenses to date. Many team members have been almost exclusively assigned to this litigation, billing thousands of hours reviewing documents, translating documents, and preparing for depositions – even in the face of the denial of class certification and the prospect that recovery of attorneys' fees was unlikely. This factor also supports the requested fee award.

### 6.    Litigation on a Contingency Basis

Hagens Berman accepted this case on a contingency basis. In negotiating the guilty pleas, the DOJ pointed to this civil litigation as the place where consumers would recover from their financial injury – emphasizing the importance of private litigation within the larger context of the enforcement of the antitrust laws. The contingent nature of this case means that Hagens Berman has a balanced set of interests – both to achieve excellent results for the class, and to achieve those results in as efficient manner as possible.

As former Judge Walker, the original judge assigned to this matter, recognized at the outset of this case, "potential recovery by indirect purchaser plaintiffs in this litigation is subject to a greater variety of imponderables" than other pieces of litigation such as securities litigation under the PSLRA (ECF No. 96). This has certainly turned out to be the case. IPPs brought two successive motions for class certification, increasing their lodestar beyond what it would have been. If IPPs settled on the same terms as the direct purchaser class with ***all defendants*** after the denial of the initial motion for class certification, without investing any additional resources and risk, the total recovery to the indirect purchaser class would have been a little more than half what they are receiving here. IPPs' willingness to seek recertification, if the requested fees are granted, nearly doubles the recovery to the IPP class while settling with only one half of the market in this case. Hagens Berman's prosecution of this case on a contingency basis warrants consideration.

### B.    Lodestar As a Cross-Check

Indirect purchaser counsel submit they have invested $24,199,800.20 in attorney fees in this litigation. IPPs request a 1.29 multiplier which is well within the range of multipliers awarded in other, similar litigation.

Lodestar is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. A court may give an upwards adjustment to a lodestar (through a positive multiplier) to reflect a host of "reasonableness" factors, including: (1) the amount involved and the results obtained, (2) the time and labor required, (3) the novelty and difficulty of the questions involved, (4) the skill requisite to perform the legal

service properly, (5) the preclusion of other employment by the attorney due to acceptance of the case, (6) the customary fee, (7) the experience, reputation, and ability of the attorneys, and (8) awards in similar cases. *Id.* at 941-42. These are referred to as the *Kerr* "reasonableness" factors after the Ninth Circuit's opinion in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Each of the factors supports the positive multiplier requested by IPPs' counsel.

### 1.   Awards in Similar Cases

The first factor, the results for the class, strongly supports an upwards adjustment from lodestar. As outlined above, the results achieved on behalf of the class are exceptional and are on par with other similar pieces of litigation.

### 2.   Resources Expended

Hagens Berman was appointed as sole lead counsel on behalf of the IPP class. As a result, Hagens Berman has staffed this case entirely with its own resources during the pendency of the six years of litigation. Hagens Berman committed the time of experienced antitrust litigators to this case, in addition to countless hours from staff attorneys to review documents and assist in the prosecution of this litigation. Hagens Berman attests that it committed internal resources to the document review in this case – over 2.9 million documents, many of which were produced in foreign languages such as Chinese, Korean, and Japanese. As of the end of August 2016, the firm has spent 47,807 hours of attorney time and 18,492 hours of para-professional time. Hagens Berman has also spent $3,704,323.97 in expenses and $39,295.01 in costs to date in this litigation. This commitment of time, personnel, and money to the indirect purchaser class supports the requested award.

### 3.   Novelty, Difficulty and Skill

The third and fourth *Kerr* factors – the novelty of the questions presented by the litigation and the skill required to perform the legal services properly – both support the requested award. This litigation has presented unique and challenging questions unaddressed by many other courts. Even the defendants, in their petition for permission to appeal the granting of class certification to the Ninth Circuit Court of Appeals, acknowledged the uniqueness of many of the issues faced by plaintiffs and this Court. Defendants stated that to their knowledge, "no case has certified a class" on

the same basis and record as this case.[4] Regarding this Court's choice-of-law analysis, defendants argued to the Ninth Circuit that "[n]either this Court nor the California Supreme Court has ever addressed whether the Cartwright Act can be applied across-the-board to all jurisdictions with '*Illinois Brick* repealer' statutes."[5]  Class certification has not been the only "novel" and difficult question presented here. In litigating against TSST-Korea and the TSST-Korea employee "John Doe," IPPs addressed the unique issue of whether the DOJ recordings were "grand jury" materials. IPPs have also spent a significant amount of time and resources on discovery regarding the structure and liability of parent companies involved in the many joint ventures at issue in this litigation. All of these issues have required advocacy and skill beyond routine litigation.

### 4.    Preclusion of Other Employment

Hagens Berman has dedicated a core team of individuals to the litigation of this action. The consequence of dedicating a team of experienced antitrust attorneys has meant that many of these professionals worked nearly exclusively on this case for some number of years. Nine attorneys have dedicated over a thousand hours each to this litigation, and many of those attorneys have devoted many thousands of hours (ECF No. 1963-1). Hagens Berman's choice to commit a significant number of attorneys almost exclusively to this litigation, forgoing other cases and other projects, further supports the request for fees.

### 5.    Comparable Fees in Similar Litigation

The sixth and eight *Kerr* factors – the customary fee and awards in similar cases – both support Hagens Berman's fee request. IPPs request a multiplier of 1.29, which is well within the range of other similar cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (upholding a 28% fee award that constituted a 3.65 multiple of lodestar); *id.* at 1052-54 (noting district court cases in the Ninth Circuit approving multipliers as high as 6.2, and citing only 3 of 24 decisions with approved multipliers below 1.4); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 96 (2d Cir. 2005) (finding 3.5 multiplier reasonable); *In re Cathode Ray Tube (CRT)*

---

[4] Petition for Permission to Appeal the District Court's Order Granting Class Certification at 1, *Wagner, et al. v. Hitachi Ltd., et al*., No. 16-80026 (9th Cir. Feb. 22, 2016), ECF No. 1.

[5] *Id.* at 20.

[PROPOSED] ORDER FINAL APPROVAL OF SETTLEMENTS -
Case No.: 3:10-md-2143 RS

1    *Antitrust Litig.*, No. C-07-5944 JST, 2016 U.S. Dist. LEXIS 102408, at *71 (N.D. Cal. Aug 3, 2016)

2    (finding that a multiplier of 1.96 was well within the range of acceptable multipliers); *Noll v. eBay,*

3    *Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (finding that the lodestar cross check, with a 1.6

4    multiplier, confirmed the reasonableness of the percentage-based calculation); *Dyer v. Wells Fargo*

5    *Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (finding a 2.83 multiplier appropriate*); In re*

6    *Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *31 (N.D. Cal.

7    Mar. 18, 2013) (finding that a lodestar multiplier of 1.66 confirms the reasonableness of the

8    percentage-based attorney fees calculation, 25% of the settlement fund); *Lane v. Facebook, Inc.*, No.

9    C 08-3845 RS, 2010 U.S. Dist. LEXIS 57765, at *10 (N.D. Cal. May 24, 2010) (finding that a

10   multiplier of 2 should be applied).

11           **6.      Experience, Reputation, and Ability**

12           Hagens Berman is a highly-respected class action litigation firm and has litigated some of the

13   largest class actions in history, including the tobacco litigation,  *In re Visa MasterCard Litigation*,[6]

14   and the *In re Toyota Motor Corp. Unintended Acceleration Litigation*.[7] It has demonstrated

15   exceptional ability in this case.

16                                          *       *       *

17           In conclusion, the Court tentatively finds that under either measurement – lodestar or

18   percentage-of-the-fund – the IPPs' request for attorney fees is fair and reasonable.  Hagens Berman

19   is therefore awarded $31,125,000 in attorney fees

20                           **V.      EXPENSES**

21           Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed

22   for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are

23   reasonable, necessary and directly related to the prosecution of the action. *Vincent v. Hughes Air W.,*

24   *Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  Reasonable reimbursable litigation expenses include: those

25           [6] *In re Visa-MasterCard Litig.*, No. CV-96-5238 (E.D.N.Y.). Hagens Berman was co-lead

26   counsel in a case alleging antitrust violations by Visa and MasterCard. The case settled for $3 billion
     in cash and changes in practices valued at $20 billion.

27           [7] *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab.*

28   *Litig.*, No. 8:10ML2151 JVS (C.D. Cal.). Hagens Berman recovered $1.6 billion for the class.

1  for document production, experts and consultants, depositions, translation services, travel, mail and

2  postage costs. *See In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1366 (N.D. Cal. 1995)

3  (Court fees, experts/consultants, service of process, court reporters, transcripts, deposition costs,

4  computer research, photocopies, postage, telephone/fax); *Thornberry v. Delta Air Lines*, 676 F.2d

5  1240, 1244 (9th Cir. 1982), *remanded on other grounds*, 461 U.S. 952 (1983) (travel, meals and

6  lodging).

7          Hagens Berman requests reimbursement of $3,704,323.97 in expenses. Hagens Berman does

8  not request reimbursement of costs which may be recoverable as taxable costs after a successful jury

9  verdict. Most of the expense for which Hagens Berman requests reimbursement is attributable to

10  expert fees ($3,103,648.81), translation costs ($71,417.03) and hosting defendants' document

11  productions in an online database ($241,160.00) ECF No. 1963-1). These expenses are reasonable

12  and well within the limits of other cases.

13                     **VI.    SERVICE AWARDS FOR CLASS REPRESENTATIVES**

14          Plaintiffs also request that the Court approve the service awards in the amount of $4,500 each

15  for the twenty-three class representatives, to be deducted from the settlement funds with HLDS,

16  Panasonic and Sony. Service awards for class representatives are routinely provided to encourage

17  individuals to undertake the responsibilities and risks of representing the class and to recognize the

18  time and effort spent in the case. "Incentive *awards* are fairly typical in class action cases."

19  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis in original). In the Ninth

20  Circuit, service awards "compensate class representatives for work done on behalf of the class, to

21  make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

22  recognize their willingness to act as a private attorney general." *Id.* at 958-59. Courts have discretion

23  to approve service awards based on, *inter alia*, the amount of time and effort spent, the duration of

24  the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See Van Vraken v.*

25  *Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

26          Here, the twenty-three representatives have spent a significant amount of time assisting in the

27  litigation of this case. All but four plaintiffs has responded to written discovery and produced

28  documents. Each plaintiff was deposed by defense counsel. Each plaintiff has consulted with and

assisted counsel in this litigation. Each plaintiff submits a declaration detailing the time he or she spent involved in this litigation ECF Nos. 1963-4). The requested awards of $4,500 are consistent with service awards in other cases and the Court approves them here.

## VII.    THE OBJECTIONS ARE OVERRULED

Eight objections have been filed objecting to the fairness of the settlements, the request for attorneys' fees, the adequacy of notice, and the service awards requested on behalf of the class representatives.

The IPPs have presented evidence that four of the objectors – Conner Erwin (represented by Christopher Bandas) (ECF No. 1970), Christopher Andrews (ECF No. 1978), Steven Helfand (ECF No. 1983), and Patrick Sweeney (ECF No. 1983) – frequently file objections in class action settlement proceedings.  Collectively, these four objectors have filed hundreds of pages of objections in this action– many which do not appear well-tailored to the facts of the case. To the extent that an objection is not directly addressed below, this Court has considered the objection and it is overruled.

### A.    Objections to Attorney Fees

#### 1.    Erwin's Objection Regarding Hagens Berman's Lead Counsel Submission

Objector Erwin objects that Hagens Berman made a fee proposal to Judge Walker at the beginning of the case and requests that the proposal now be made public. Judge Walker ordered that the lead counsel submissions should remain under seal "during the pendency of this litigation" (ECF No. 96 at 1). IPPs have settled with approximately half the defendants in this litigation. This Court finds that unsealing the record now would provide the remaining defendants with work product of counsel for IPPs and insight into how Hagens Berman sees the valuation of this case at certain stages. This Court rules that the requirements of the local rules have been met, and these materials shall continue to remain under seal.

The original order from Judge Walker, however, revealed that the potential fee structure contemplated a "fee percentage which increases with the stages of litigation and declines as the amount of the recovery rises" (ECF No. 96). Hagens Berman has further revealed that the proposed fee structure listed four stages: (1) From Pleading Through Decision on Motion to Dismiss; (2) After

1   Motion to Dismiss Through Adjudication of Class Certification; (3) After Adjudication of Summary

2   Judgment; and (4) Through Trial Verdict and Final Appellate Determination.

3           This Court has broad discretion to determine the reasonable and fair amount of attorney fees.

4   Great weight is accorded to a district judge's views because "he is exposed to the litigants, and their

5   strategies, positions and proofs. He is aware of the expense and possible legal bars to success.

6   Simply stated, he is on the firing line and can evaluate the action accordingly." *Class Plaintiffs v.*

7   *Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (internal quotation marks and citation omitted). This

8   Court finds that under the circumstances, the original fee structure does not apply. As Judge Walker

9   noted, there were many "imponderables" that might impact this litigation. The IPPs' litigation of

10  both an original motion for class certification, as well as a renewed motion for class certification, and

11  multiple appeals to the Ninth Circuit, certainly qualifies as such an "imponderable."

12          **2.      The 1.29 Multiplier**

13          Erwin and Helfand suggest that awarding Class Counsel a 1.29 (or any) multiplier would be

14  "an error of law." Erwin cites a concern over "billing inefficiencies" only, but make no other specific

15  objection to the work of class counsel.  Given the context of this litigation, however, class counsel's

16  request of a 1.29 multiplier is within reason and well within the range contemplated by the Ninth

17  Circuit.

18          **3.      The "Megafund" issue**

19          Andrews and Erwin both object that this case is a "mega-fund" case, requiring an automatic

20  reduction in attorney fees. But there is no automatic rule in the Ninth Circuit which requires an

21  automatic percentage – instead, the Ninth Circuit requires a comprehensive analysis of the

22  reasonableness of any award. *See Vizcaino*, 290 F.3d at 1047 (rejecting categorical "megafund"

23  rule); *Online DVD-Rental* 779 F.3d at 949 (courts should avoid "mechanical or formulaic" rules in

24  awarding fees in favor of totality of circumstances analysis); *In re TFT-LCD (Flat Panel) Antitrust*

25  *Litig.*, No. 07-md-1827, 2013 U.S. Dist. LEXIS 51271, at *67 (N.D. Cal. Mar. 29, 2013) (rejecting

26  similar megafund objections). IPPs provided this Court with a detailed analysis of their lodestar,

27  which would yield a reasonable 1.29 multiplier. As recognized by the court in *CRT*, "[r]ather than

28  abandon the percentage-of-recovery method, the best way to guard against a windfall is first to

1  examine whether a given percentage represents too high a multiplier of counsel's lodestar." *In re*

2  *Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT II*"), No. C-07- 5944 JST, 2016 U.S. Dist. LEXIS

3  102408, at *70 (N.D. Cal. Aug 3, 2016). That analysis here establishes that applying the 25 percent

4  benchmark here results in no undue windfall to counsel.

5      **4.**    **Other counsel**

6      Under the original order approving Hagens Berman as interim lead counsel, Judge Walker

7  gave class counsel leave to "coordinate its efforts with additional counsel" (ECF No. 96). Erwin

8  objects that Hagens Berman does not disclose whether other plaintiffs' counsel will be provided with

9  a portion of the fee award. Because Hagens Berman's lodestar more than adequately supported the

10  requested award, it was not necessary to put in the limited lodestar from other firms. "[F]ederal

11  courts routinely . . . have recognized that lead counsel are better suited than a trial court to decide the

12  relative contributions of each firm and attorney." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D.

13  Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012). Regardless, Hagens Berman has agreed

14  two firms will be paid for their assistance in responding to discovery and defending the depositions

15  of two class representatives.  These two payments are appropriate at the discretion of lead counsel.

16      **5.**    **Hourly Rates**

17      Andrews and Helfand both object that the hourly rates of class counsel are not reasonable.

18  IPPs submitted the most recent survey of market rates – a survey accepted by many district courts

19  (ECF No. 1963-2). Hagens Berman's rates are well within that market survey, and within the range

20  approved by this Court for the direct purchasers.

21      Andrews suggests that the class lacked information regarding the experience of each Hagens

22  Berman attorney. But IPPs submitted a detailed resume of their firm, which includes the year each

23  attorney from Hagens Berman graduated from law school, as well as calculating the years of

24  experience for each attorney (ECF No. 1963-3).

25      Andrews objects to the $265 hourly rate charged by Hagens Berman's two Bay-area based

26  paralegals, relying on a 2013 survey of market rates. Hagens Berman has provided detail regarding

27  the depth of experience and involvement of these paralegals. Give their expertise, the proposed rate

28  of $265 is reasonable.

[PROPOSED] ORDER FINAL APPROVAL OF SETTLEMENTS -
Case No.: 3:10-md-2143 RS

1   Sweeney objects that class counsel should submit detailed billing records. The Court finds

2   that given the detailed description of the time dedicated to this case, the hourly rates of the Hagens

3   Berman attorneys, and the number of hours per attorney provided by Hagens Berman, such a

4   submission is <u>not</u> necessary.

5   ### 6.   Contract Attorneys

6   Andrews and Helfand object to the use of contract attorneys as well as the rates charged for

7   these attorneys. Courts throughout the country have accepted the use of contract attorneys in this

8   type of complex litigation. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT III*"),

9   MDL No. 1917, 2016 U.S. Dist. LEXIS 24951, at *310 (N.D. Cal. Jan. 28, 2016) ("[T]he legal

10   community now commonly uses contract attorneys. There is not the slightest justification to

11   downgrade their billing rates or not apply a multiplier to them."). Hagens Berman has provided an

12   explanation regarding the expertise, language skills, and involvement of these contract attorneys with

13   other members of the trial team, making these attorneys more valuable than just a first-line document

14   reviewer. Given this, the objection to the use and hourly rates of the contract attorneys are overruled.

15   ### 7.   Information Available to Class Members

16   Andrews objects that a number of documents were allegedly either missing or sealed from the

17   public record. Andrews has not shown how access to these documents would change the outcome for

18   any class members, where the notice to the class and the existence of detailed "frequently asked

19   questions" on the website provided the class with sufficient information to make an adequate

20   determination of whether to stay in the class or whether to opt-out. Regardless, IPPs have

21   demonstrated that ample information was available to all class members upon which to make a

22   decision whether to exclude themselves from the class. *See, e.g.,* ECF No. 1049, 1161, 1808-4, 1808-

23   8.

24   ### 8.   Quick Pay

25   Helfand objects to IPPs' settlements because they contain quick pay provisions. Quick pay

26   provisions are common practice in the Ninth Circuit. *In re TFT-LCD (Flat Panel) Antitrust Litig.*

27   (*"LCD I"*), No. 07-md-1827, 2011 U.S. Dist. LEXIS 154288, at *1 (N.D. Cal. Dec. 27, 2011); *Miller*

28   *v. Ghirardelli Chocolate Co.*, No. C-12-04936, 2014 U.S. Dist. LEXIS 141111, at*16 (N.D. Cal.

1   Oct. 2, 2014) ("Such 'quick pay' provisions are routinely approved by courts in this district."). This

2   Court finds that the inclusion of quick-pay provisions here are appropriate, and do not violate the

3   Rules of Professional Responsibility.

4   **B.       Objections to the Fairness of the Settlement, Plan of Allocation, and Adequacy of Notice**

5   **1.       The Panasonic Settlement**

6   Andrews objects to the recovery of 16 percent against Panasonic, compared to the recovery

7   of 42 percent from Sony/NEC and 33 percent from HLDS.  Effectively, this is just another version of

8   the complaint that "the class should recover more," which has long been rejected. Regardless, the

9   Panasonic settlement was reached at a time when the first motion for class certification had been

10  denied, and when the revised motion for class certification was still pending – a time of

11  extraordinary risk for the class receiving no recovery at all – as well as Panasonic's position as the

12  first IPP settlement in the case. These two reasons are more than adequate to explain the lower rate

13  of recovery for the class in the Panasonic settlement.

14  **2.       *Cy Pres***

15  Andrews objects to a *cy pres* beneficiary (Andrews Obj. ECF No. 1978-3 at 8), when none is

16  contemplated at this time. IPPs intend on distributing as much money as possible to the class –

17  whether it be through multiple rounds of distribution or otherwise. At the time that either a *cy pres*

18  award or escheatment of the settlement becomes necessary, this Court will address the issue. *See*

19  *Rodriguez*, 563 F.3d at 966 (declining to consider the propriety of *cy pres* where "no *cy pres*

20  disbursement[was] imminent"); *In re Cathode Ray Tube (CRT) Antitrust Litig*., MDL No. 1917,

21  2016 U.S. Dist. LEXIS 88665, at *217 (N.D. Cal. July 7, 2016) (declining to consider objection to *cy*

22  *pres* when "Perhaps the parties will designate a cy pres recipient; perhaps there will [be] a

23  supplemental distribution; perhaps another approach will be most appropriate.").

24  **C.       Service Awards**

25  Andrews objects to the $4,500 service awards requested on behalf of the named

26  representatives.  The declarations submitted by each class member detailing their efforts and

27  involvement over the past six years are adequate.  The incentive awards are appropriate and well

28  within the range awarded by other courts in this district.

**D.      Expenses**

Helfand objects to $72,420.09 for certain professional services by vendors retained by IPPs. Helfand Obj. at 7. The Court finds this request reasonable. Nearly $40,000 of this amount was for a graphics vendor who prepared IPPs' presentation at the first motion for class certification. The remaining amounts specifically relate to marketing for this case to reach plaintiffs to represent the proposed state classes.

Helfand objects to the $3,103,648.81 paid to IPPs' experts and consultants. This amount, however, was paid to IPPs' testifying expert Dr. Flamm and the economists supporting him for the preparation of his four expert reports. In a similar context, the court in *CRT* approved payment of approximately $5.7 million for the IPPs' experts and consultants.[8] Given the critical role the testimony of economists played at class certification, IPPs' requested reimbursement for this expense is reasonable.

Sweeney objects that IPPs have not submitted receipts for litigation expenses. Sweeney Obj. at 3. The Court finds that receipts are not necessary. IPPs have attested that they have prepared their request for reimbursement of litigation expenses from the books and records of the firm, which are prepared from expense vouchers, expenses records, and which are an accurate record of the expenses incurred (ECF No. 1963).

**E.      Other Objections**

In addition to the four objectors mentioned above, four additional individual class members have objected to the settlement and attorney fees.

**1.      Kelly Campbell**

Kelly Campbell objects to the amount of attorney fees, and to her estimated recovery of $10 per ODD (ECF No. 1982). Ms. Campbell raises no specific objection to attorney fees. Class members recover only for the overcharge and not the entire purchase price of the computer.  Even

---

[8] Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards at 46, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal. Sept. 23, 2015), ECF No. 4071-1 (requesting reimbursement of $5,767,600.46 for experts/consultants/investigators).

1    then, $10 represents an estimate of the amount class members may recover, not the outside limit.

2    Regardless, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the

3    potential recovery [does] not *per se* render the settlement inadequate or unfair." *Officers for Justice*,

4    688 F.2d at 628. As found above, this settlement falls well within the range approved by other courts

5    in this district.

6        **2.    Barbara Cochran**

7        Barbara Cochran objects that the notice does not explain the procedure for submitting claims

8    (ECF No. 1986). Ms. Cochran voices her concern that the settlement may impose "unreasonable

9    documentation requirements." Receipts, however, are not required to make a claim in this litigation

10   (ECF No. 1898-2). Ms. Cochran also objects to the attorneys getting paid more than their lodestar,

11   without raising any further specific objection to the request for attorney fees. An objector "bears the

12   burden of providing specific evidence to challenge the accuracy and reasonableness of the hours

13   charged." *McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995); *see also Satchell v. Wallace*,

14   439 Fed. App'x. 644, 645 (9th Cir. 2011) (accord).

15       **3.    Yury Sacrificial**

16       Yury Sacrificial objects to the settlement because ODDs have declined in price over the class

17   period, "there is no 'injury to the consumer" (ECF No. 1977). Mr. Sacrificial's contends the class

18   should recover nothing. If Mr. Sacrificial believes this case is without merit, he was free to opt-out.

19   Courts consistently recognize the value of this option. *See, e.g., Eisen v. Porsche Cars N. Am., Inc.*,

20   No. 2:11-CV-09405-CAS, 2014 WL 43900, at *7 (C.D. Cal. Jan. 30, 2014), appeal dismissed (Sept.

21   22, 2014) ("In any event, class members could have opted out if they objected to the benefits offered

22   by the settlement. . . . Federal courts routinely hold that the opt-out remedy is sufficient to protect

23   class members who are unhappy with the negotiated class action settlement terms.")

24       **4.    James Nellen II**

25       James Nellen II objects to the claims procedure which requires attesting under penalty of

26   perjury that the information submitted on the claims form is true and correct (ECF No. 1967). Other

27   courts in this district have required similar attestations that the information provided is accurate.

28   *CRT*, 2016 U.S. Dist. LEXIS 24951, at *230 n.26 (requiring a claims form with "an attestation under

[PROPOSED] ORDER FINAL APPROVAL OF SETTLEMENTS -
Case No.: 3:10-md-2143 RS

penalty of perjury that the information provided is accurate"). Mr. Nellen suggests that class counsel should be required to identify class members and the number of purchases by each ODD member. Here there is no perfect set of information that identifies all class members, as well as the number of products each class member purchased. Mr. Nellen's objections are overruled.[9]

IT IS SO ORDERED.

DATED:  December 19, 2016

_____
HONORABLE RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

Submitted by:

HAGENS BERMAN SOBOL SHAPIRO LLP

By ____/s / Jeff D. Friedman_____
        JEFF D. FRIEDMAN

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Lead Counsel for*
*Indirect Purchaser Class*

_____
    [9]  To the extent any of the objectors have joined in the objections of others and/or incorporated other objections by reference, the objections are all overruled.