Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| *In Re Optical Disk Drive Products Antitrust Litigation* | Case No: 3:10-MD-2143-RS<br><br>MDL 2143 |

## OBJECTIONS OF CONNOR ERWIN

The latest round of settlements reinforces Conner Erwin's objections to the fixed-percentage fee recovery from the now $180 million megafund. "Because many of the costs or proving liability in a large case are relatively fixed, the marginal cost of proving additional damages is low—and, frequently, declining[.]"[1] As a result, fees for megafunds should diminish as the value of the settlement rises. This is particularly so when, as here, class counsel status was secured with a bid promising a sliding-scale methodology. Anything else produces a windfall to class counsel at the expense of the class.

---

[1] ECF Doc. 1970, at 4.

Thus, 25% of the $124.5 million from the first group of settlements was too much. So is 21% of the next $55.5 million, which in the aggregate, amounts to 23.8% of $180 million.

Class counsels' lodestar is the proof in the pudding. The labor needed to secure the latest $55.5 million *is a fraction* of the labor from the first $124.5 million. **Class counsels' latest $3.7 million lodestar is just 15% of the $24.1 million lodestar from the first round of settlements.** Thus, class counsels' requested 21% (or $11.6 million), more than three times their lodestar from the latest settlements, is a meager concession at best.

As this Court previously recognized, there is a pressing need "to take an overall look at this case" in considering class counsels' fees from the aggregate settlements.[2] In this context, class counsels' fees should be reduced to an amount commensurate with the labor expended, and in line with their promised fee paradigm.

## STANDING AND PROCEDURES TO OBJECT

Objectors' full name, addresses and telephone numbers are as follows:

Conner Erwin
10239 Scull Creek Dr.
Austin, Texas 33730
Tel: (512) 552-8333[3]
Email: surfsolution@gmail.com

---

[2] Exhibit B, Transcript from December 8, 2016 Fairness Hearing, at 38.

[3] Mr. Erwin's phone number changed between the filing of his first objection and this objection.

Objector is a class members who timely filed a claim on the initial settlements with Panasonic, NEC, Sony, and HLDS, and therefore has standing to make his objections. *See* Declaration of Conner Erwin, incorporated by reference as though set forth in full herein, attached hereto as Exhibit A.[4] *See also* ECF Doc. 1970-1. Mr. Erwin is represented by Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP and BANDAS LAW FIRM, PC. Christopher A. Bandas of Bandas Law Finn, P.C does not intend on making an appearance for himself or his firm. Objectors rely upon the documents contained in the Court's file in support of these objections.

Objector incorporates by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

## OBJECTIONS

### A. The Substantial Drop in Class Counsels' Lodestar Between the First and Second Settlements ($24 Million to $3.7 Million) Demonstrates a 21% Fee Here is Excessive.

An attorneys' fee award of 21% (or $11.6 million) from the latest round of settlements with PLDS, Pioneer, and TEAC with a $55.5 million common fund

---

[4] According to the settlement website, "if you previously filed a claim on the initial settlements with Panasonic, NEC, Sony and HLDS, you do not need to file a new claim now and your previously filed claim will automatically be counted toward the new settlements with PLDS, Pioneer and TEAC, as well as any future settlements that may be reached with any of the remaining defendants in the case[.]" *See* https://www.opticaldiskdriveantitrust.com/#faq8 (last visited on July 13, 2017).

would be even more improper than the initial 25% (or $31.1 million) from the earlier $124.5 million settlements. The first round of settlements crossed well into megafund territory. The additional $55.5 million pushes the aggregate to $180 million, which presents an even more compelling need to consider the economies of scale.

The rationale for a diminishing fee in this context — *i.e.,* that costs diminish as the size of the settlement increases — is clearly present here. It took class counsel $24 million in lodestar to achieve the first $124 million.[5] Yet, it only took them $3.7 million to get the next $55 million.[6] That is only 15% of the prior lodestar for nearly half of the prior settlement.

A fee just a few percentage points off the prior 25% fee is not warranted considering the dramatic drop-off in labor invested. This Court's decision not "to apply a 'holdback' of some percentage"[7] from the first settlements demands a considerable holdback here.

The diminishing costs revealed by class counsel are the exact predicate for insisting on a sliding scale, which of course, was promised by Hagens Berman. *See Silverman v. Motorola Solutions, Inc.,* 739F.3d 956, 959 (7th Cir.2013) ("[t]here may be some marginal costs of bumping the recovery . . . but as a percentage of the incremental recovery these costs are bound to be low." Thus, in a $200 million

---

[5] ECF Doc. 2133, at 10.
[6] ECF Doc. 2326, at 6.
[7] ECF Doc. 2133, at 10 n.3.

settlement, it is "hard to justify awarding counsel as much of the second hundred" as the first); *In re NASDAQ Marketmakers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case."). A diminishing fee methodology recognizes that megafund settlements are, at some margin, a product of the magnitude of the class action rather than the work of the attorneys.

With this Court's prior 25% award from the $124 million settlement, class counsel have already been overcompensated. Class counsels' concession of 21% here, while below the 25% benchmark, is still too much for a megafund. Further, the aggregate $42.9 million fee from the two rounds of settlements is 23.8% of $180 million, a figure not within the range of reasonable fees for a megafund. And, the subsequent fees from forthcoming settlements will only expand the windfall.

"[T]he 25 percent 'benchmark' is of little assistance in a case such as this." *In re Washington Public Power Supply System Sec. Litig.*, ("*WPPS*") (9th Cir. 1994) 19 F.3d at 1295–96 (emphasis added); *see also Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047–48. Thus, "where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011) 654 F.3d 935, 942.

Following that admonition, courts in the Ninth Circuit have refused to award 20% for megafund settlements, even in the context of hard-fought litigation and

exemplary results achieved by class counsel. For example, one court recently refused to allow 20% of a $415 million megafund, and reduced fees to less than 10% of the fund. *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *3, *13 (N.D. Cal. Sept. 2, 2015). This fee award was "below the 25% benchmark typically awarded in the Ninth Circuit but . . . consistent with fee awards for megafund settlements" based on the court's review of empirical data. *Id.* at 13; *see also Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187–88 (D. Mass. 1998) ("[d]istrict courts have awarded fees of 4 to 16 percent as the so-called megafund baseline"); *In re Prudential Ins. Co. of American Sales Practices Litig.*, 962 F.Supp. 450, 458 (D.N.J.1997) (percentage awards in megafund cases range from 4.1 percent to 17.92 percent of fund); *Duhaime v. John Hancock Mut. Life Ins.*, 989 F.Supp. 375 (D. Mass 1997) (O'Toole, J.) (applying 9.3 percent to a fund over $300 million).

### B. Empirical Data Confirms the Fee Request as Excessive.

The empirical data is unmistakable. An aggregate fee of $42.9 million from a $180 settlement[8] – or 23.8% – is not within the range of reasonable attorneys' fees for megafund settlements.

In fact, Judge Lucy Koh of the Northern District of California observed that the data reveals that "the median attorney's fee award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%." *High-Tech*, 11-CV-02509-LHK, 2015 WL 5158730, at *3, *14 (N.D. Cal. Sept. 2, 2015) (citing Theodore

---

[8] ECF Doc. 2326, at 1.

Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008,* (2010) 7 J. Empirical Legal Stud. 248, 265 tbl.7). That data arises from multiple studies of fee awards in class actions, indexed to class settlements.

One study showed an average fee of 17% for settlements between $100 million and $250 million. Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,*7 J. Empirical Legal Stud. 811, 839 (2010). A second study, published in 2010, surveying a greater number of cases over a longer period, identified an average recovery of 19.4% for settlements between $69.6 and $175.5 million, and a 12% recovery for settlements above $175.5 million. Eisenberg and Miller, *supra,* at 265 tbl.7. A third study covering a six-year period, found a 20.9% average fee recovery for settlements over $44.6 million, with the percentages declining from there. *William B. Rubenstein,* NEWBERG ON CLASS ACTIONS §15.18 (5th ed.).

Class counsel reference a more recent study by Eisenberg, Miller, and Germano, which describes mean and median fee percentages for settlements over $100 million between 16.6% and 25.5% depending on the year.[9] Yet, in the most recent year of the study, 2013, the median fees for $100 million settlements fell well below 20%. Eisenberg, Miller, and Germano, at 9. Further, that study does not break down settlements far exceeding the $100 million mark, such as the $180 aggregate settlements here. In this regard, the experts remark:

---

[9] ECF Doc. 2326, at 8 (Friedman Decl., at Ex. 2, citing Theodore Eisenberg, Geoffrey P. Miller, Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, NYU Center for Law, Economics and Organization (Dec. 2016)).

> We continue to find a "scaling" effect, in the sense that fees as a percentage of the recovery tend to decrease as the size of the recovery increases – an effect that appears to be due to the economies of scale that can sometimes be achieved in very large cases. The key determinant of the fee continues to be the size of the class recovery: the amazingly regular relationship between these variables continues in the present data.

*Id.* at 1. To be certain, the empirical does *not* support Hagens fee request.

### C. As Reflected in Hagens Berman's Bid, the Market Would Not Allow a Fixed 23.8% of $180 Million.

Objector reiterates: this is not a car-wreck case, or a worker's compensation case, or even a relatively valuable medical-malpractice case. It is a major, international antitrust case where the damages, if proven, could total billions.

The market rate for cases like this is nowhere near 23.8% of a $180 million recovery. Able counsel are willing to work on high-stakes antitrust cases like this one in exchange for less than ten percent of a recovery. *In re Auction Houses Antitrust Litig.,* 197 F.R.D. 71, 84 (S.D.N.Y. 2000) (awarding lead-counsel status to Boies, Schiller & Flexner LLP); 2001 WL 170792 at * 1) (Feb. 22, 2001) (revealing counsel's fee as 4.7% of total recovery). They are even willing to negotiate a hard cap that prevents their fees from rising over 14% of the recovery and allowing the class to recover 100% of any recovery over a set amount. *In re Amino Acid Lysine Antitrust Litig.,* 918 F. Supp. 1190, 1198 (N.D. Ill. 1996) (sliding-scale recovery at capped $3.5 million with no additional fees for recovery over $25 million).

Indeed, we know the market would not support a fixed percentage here because Hagens Berman (as well as the Larson group) specifically bid a "fee percentage which . . . declines as the amount of the recovery rises. . . ."[10] And, as Judge Walker noted, that bid "presented a very impressive array of possible scenarios that suggest a high level of analysis of potential recoveries."[11] Class counsel should be bound by their bid, and not free to discard the promised fee methodology when it suits their financial interests. *In re Southwest Voucher Litigation* (7th Cir. 2015) 799 F.3d 701, 712) ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost").

Other lawyers in cases that were riskier and more complex got less. As Objector noted previously, the lawyers in the long-running *Cabell v. Salazar Indian-trust* litigation, who won almost $3.5 billion in direct and indirect relief for their clients. 679 F.3d 909, 914-15 (D.C. Cir. 2012). That case lasted for sixteen years and involved 24 written opinions and multiple appeals to the D.C. Circuit, a court with a higher benchmark-20% to 30% percent-that the Court. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993).

*Cobell* involved unprecedented, cutting-edge issues of rarely litigated Indian law statutes. The litigation, and its resolution, were complex enough that Congress had to

---

[10] ECF Doc. 96, at 6.

[11] *Id.* at 8.

pass a statute to approve the settlement. For all of this time, for all of that recovery, and for all of that risk, the *Cabell* lawyers received $99 million. *Cabell,* 679 F.3d at 916 n.5. Certainly, a $99 million-dollar award is nothing to sneeze at, but that represented 6.5% of the direct benefit of the settlement and only 2.8% of the total value. For recovering 28 times as much for their class, the *Cabell* lawyers received only 4 times as much as the lawyers seek here.

Although courts have some discretion over attorneys' awards, such awards typically "involve a sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increases." Court Awarded Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237, 256 (1985); *William B. Rubenstein,* NEWBERG ON CLASS ACTIONS §15.18 (5th ed.) ("empirical data on class action fee awards . . . demonstrates[s] that the percentage awarded to counsel decreases as the size of the fund increases"); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,* (2010) 7 J. EMPIRICAL LEGAL STUD. 811, 837 ("fee percentage is strongly and inversely associated with settlement size among all cases").

The Ninth Circuit has not yet taken the step of requiring a sliding scale. Nevertheless, this Court should adopt such an approach now, which should ultimately be adopted in the Ninth Circuit. Whatever approach is taken, considering the dramatic lodestar drop-off for the last $55.5 million of the aggregate $180 million, a 21% fee is too much.

**D. Class Counsels' Fee for the Latest Settlements Requires a 3.08 Multiplier.**

Class counsel's fee motion dedicates considerable discussion to the labor and risk that went into securing the first round of settlements. Only once do they mention that they incurred a mere $3.7 million in additional lodestar from the filing of their first request for fees in August 21, 2016.[12] Nowhere in their motion do they mention the number of hours incurred during this period.

Nor do class counsel mention that the multiplier required for their requested $11.6 million fee for *these* settlements is 3.08. Mr. Erwin again submits that Hagens should be limited to its lodestar, which is "presumptively reasonable," at least in the context of a fee under the lodestar method. *Keirsey v. eBay, Inc*, 12-CV-01200-JST, 2014 WL 644738, at *2 (N.D. Cal. Feb. 18, 2014) (citing *Bluetooth*, 654 F.3d at 942, 944). Enhancing a lodestar award should be limited to "extraordinary cases [] presented only in the rarest of circumstances." Perdue, 559 U.S. at 560 (Kennedy, J. concurring). There is nothing exceptional about the results not already captured in the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983).

The amount in controversy, the results obtained, the undesirability of the case, and fee awards in similar cases, do not support a multiplier here. The amount in controversy is tremendous, with the results being commensurate with the size of the class. Similar cases, as previously discussed, counsel a fee reduction. Lawyers doing

---

[12] ECF Doc. 2326, at 6.

more work for longer to greater benefit of the class have recovered fractions of the fees awarded here. Finally, undesirability means little in this case. There were no shortage of lawyers willing to kick over the bricks that the Department of Justice's wrecking ball hadn't already demolished. The MDL transfer order consolidated five separate actions, and referenced eight potential tag-along cases.[13] And, the coveted appointment as lead counsel was sought by two other highly respected firms besides Hagens.[14]

### E. There Has Been No Explanation Why the Fee Proposal Should Not be Disclosed in Some Redacted Form.

As with his prior objection, Mr. Erwin urges, as a matter of transparency, that the Court unseal at least some portion of the bid, with appropriate redactions for the most sensitive aspects that reasonably relate to strategy. *See In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 975 (N.D. Cal. 2001) ("The bids were submitted under seal to ensure their confidentiality *up to the point of selection*, but are, with this order, unsealed to assure transparency of the selection process.") (emphasis added). Hagens itself conceded that "[a]t most, the Court should disclose the *range* of percentages proposed by class counsel. . . ."[15]

Class members are entitled to know the difference in their recovery (and that of their attorney's) under their attorney's bid versus under the court's subsequent order.

---

[13] ECF Doc. 1, at 1 n. 1.
[14] ECF Doc. 96, at 1.
[15] ECF Doc. 51, at 562.

*Cf. Mercury Interactive*, 618 F.3d at 994–95 ("[w]hen the district court . . . denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class"). As the Sixth Circuit recently held, "[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310 (6th Cir. 2016) (vacating settlement and remanding to the district for "an open and vigorous examination of the settlement's fairness to the class").

The law, of course, disfavors the sealing of records. Generally, there is a recognized right to inspect public records and documents, including judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). The "compelling reasons" standard applies to the judicial records here. *Id.*; *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010); *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Cendant*, 260 F.3d at 193.

In response to Mr. Erwin's earlier objection, this Court observed "that unsealing the record now would provide the remaining defendants with work product of counsel for IPPs and insight into how Hagens Berman sees the valuation of this case at certain stages."[16] However, a sealing order "must be lifted at the earliest possible moment when the reasons for sealing no longer obtain." *See Cendant Corp.*,

---

[16] ECF Doc. 2133, at 18.

260 F.3d at 196. Continued sealing must be based on *current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm they claim. *See id.* (emphasis added).

Now that the parties have settled with defendants who possessed 75 percent of the total ODD market,[17] the remaining defendants clearly have a reasonable notion of the range in which Hagens evaluates the claims. Any concerns over class counsels' 2010 preliminary evaluation of this case are simply no longer a compelling justification for keeping the fee proposal sealed, particularly when that bid evaluation was ultimately disregarded.

At the very least, Mr. Erwin as a class member is entitled to the fee proposal in some redacted form. In this regard, there is zero transparency to the class about how their lawyers were able to secure their lead counsel status through their fee and expense proposal. *See Oracle Sec. Litig.*, 136 F.R.D. at 644-647; Model Rules of Professional Conduct, Rule 1.5(b)("[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. . . . Any changes in the basis or rate of the fee or expenses shall also be communicated to the client."); CA ST RPC Rule 3-500 (requiring attorneys to "keep a client reasonably informed about significant

---

[17] ECF Doc. 2326, at 1 (noting that "[t]hese new settlements bring the total amount recovered for the class to $180 million with claims still pending against defendants which possessed 25 percent of the total optical disk drive (ODD) market during the class period").

developments... including promptly complying with reasonable requests for information...."). Along with disclosure of the bid, Objector urges that the Court require reissuance of notice and an attendant opportunity to object after the disclosure of this crucial information.

### F. The Class Notice Should Have Informed the Class Members of the Allocation of Fees Among Class Counsel.

This Court should not defer allocating fees among the different firms to lead class counsel. *High Sulfur* rejects "the proposition that courts can delegate their duty to allocate a fee award to a committee of interested attorneys who have reached no agreement among themselves and then approve the allocation after a perfunctory review." *In re High Sulfur Content Gasoline Products Liability Litigaiton*, 517 F.3d 220, 233-34 (5th Cir. 2008). As *High Sulfur* explained, the direct conflict of interest of lead counsel in "dividing a limited fund among themselves and other firms . . . strongly suggests that *affording substantial deference is inappropriate.*" *Id.* at 235 (emphasis added). While "lead counsel may be in a better position . . . to evaluate the contributions of all counsel seeking recovery of fees[,]" the allocation should be supervised by the court in light of the inherent conflicts among the attorneys. *Id.* at 234-35 (citing *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (Ambro, J. concurring)) ("They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?").

Further, the fact that lead class counsel would be responsible for allocating fees among the firms was not, but should have been, disclosed to the class. *Cf. Mercury Interactive*, 618 F.3d at 988. There is no mention in Hagens' fee motion on how the other two firms will be paid, nor any discussion of any agreements on how counsel will divide fees. Due process concerns are implicated when a district court "deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion. . . ." *Id.* at 994-95. Similarly, due process should require notice and an equal opportunity to voice complaints over the allocation of funds among the attorneys who represented them.

To be certain, class members have an interest in the manner in which their common fund is distributed. *See Stetson v. Grissom*, 821 F.3d 1157, 1163 (9th Cir. 2016) ("in a class action, an objector need not establish standing to object to an award of attorney's fees by the district court"); *Cendant*, 232 F. Supp. 2d at 337 ("[i]In common fund cases, the fees paid to counsel come directly out of the recovery available to the interested parties, so that every dollar paid to counsel results in one less dollar for the plaintiffs"); *see also Dennis*, 697 F.3d at 865 ("in addition to asking 'whether the *class settlement*, taken as a whole, is fair, reasonable, and adequate to all concerned,' we must also determine 'whether the *distribution* of the approved class settlement complies with our standards governing *cy pres* awards'") (emphasis original). Class members have a direct interest in ensuring that those who are not deserving, not be provided a windfall on their behalf; and conversely, that those who provided exceptional

representation be compensated accordingly.

## CONCLUSION

Objector requests that the proposed award of attorneys' fees be rejected or, at minimum, substantially reduced. Objector further requests that the Court order Hagen Bermans' bid for class counsel status unsealed in redacted form as described herein.

DATED: July 14, 2017                              Respectfully submitted,

                                        /s/ Timothy R. Hanigan
                                        Timothy R. Hanigan (125791)
                                        LANG, HANIGAN &
                                        CARVALHO, LLP,
                                        21550 Oxnard Street, Suite 760
                                        Woodland Hills, California 91367
                                        (818) 883-5644
                                        trhanigan@gmail.com
                                        Attorney for Objector/Class Member

## Certificate of Service

The undersigned certifies that today he filed the foregoing Objection and attached exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: July 14, 2017

/s/ Timothy R. Hanigan
Timothy R. Hanigan