1   **LATHAM & WATKINS LLP**
      Daniel M. Wall (Bar No. 102580)
2      Belinda S Lee (Bar No. 199635)
      Brendan A. McShane (Bar No. 227501)
3   505 Montgomery Street, Suite 2000
    San Francisco, California 94111-6538
4   Telephone: +1.415.391.0600
    Facsimile: +1.415.395.8095
5   Email: *Dan.Wall@lw.com*
          *Belinda.Lee@lw.com*
6         *Brendan.McShane@lw.com*

7   *Counsel for Defendants Toshiba Corporation,*
    *Toshiba America Information Systems, Inc., and*
8   *Toshiba Samsung Storage Technology Corporation*

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14   IN RE OPTICAL DISK DRIVE PRODUCTS       Base Case No. 3:10-md-2143 RS
     ANTITRUST LITIGATION
15                                            MDL No. 2143

16   This document relates to:                **TOSHIBA AMERICA INFORMATION**
                                              **SYSTEMS, INC., TOSHIBA**
17   *All Indirect Purchaser Actions*          **CORPORATION, AND TOSHIBA**
                                              **SAMSUNG STORAGE TECHNOLOGY**
18   *Acer Inc. v. Lite-On IT Corporation, Case No.*  **CORPORATION'S NOTICE OF MOTION**
     *3:13-cv-04991-RS*                        **AND MOTION FOR SUMMARY**
19                                            **JUDGMENT**
     *Hewlett-Packard Company v. Toshiba*
20   *Corporation, Case No. 3:13-cv-05370-RS*   **ORAL ARGUMENT REQUESTED**
                                                 Date:      September 26, 2017
21   *Peter Kravitz, as Trustee for the RSH*      Time:      9:00 a.m.
     *Liquidating Trust v. Sony Corporation, Case*  Location: Courtroom 3, 17th Floor
22   *No. 3:15-cv-06325-RS*
                                              *[Proposed] Order Filed Concurrently Herewith*
23   *Alfred H. Siegel, as Trustee for the Circuit*
     *City Stores, Inc. Liquidating Trust v. Sony*
24   *Corporation No. 3:15-cv-03248 RS*

25

26             REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED
27               PURSUANT TO COURT ORDER (MDL DKT. 2322)

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1    **NOTICE OF MOTION AND MOTION**

2    TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on September 26, 2017, at 9:00 a.m., or as soon thereafter as

4    the matter may be heard, in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco,

5    California, before the Honorable Richard Seeborg, Toshiba America Information Systems, Inc.

6    ("TAIS"), Toshiba Corporation ("Toshiba Corp."), and Toshiba Samsung Storage Technology

7    Corporation ("TSST") will and hereby do move the Court, under Federal Rule of Civil Procedure

8    Rule 56(a), for an Order granting summary judgment in their favor as to all of above-captioned

9    plaintiffs' claims for relief.

10    This Motion is made on the following grounds:

11    1.      There is no triable issue of material fact regarding the existence of an industry-wide

12    and overarching price-fixing conspiracy involving TAIS, Toshiba Corp., and/or TSST.  Without

13    evidence of TAIS, Toshiba Corp., and TSST's participation in this alleged conspiracy, Plaintiffs'

14    claim of a massive overarching price-fixing conspiracy involving these parties between April 2003

15    and January 2010 is unsupported.

16    2.      There is no triable issue of material fact regarding whether Toshiba Corp. and/or

17    TSST can be held vicariously liable for the acts of their alleged co-conspirators that are purported

18    to have participated in a price-fixing conspiracy.

19    The evidence used to support this Motion is set forth in the accompanying Memorandum of

20    Points and Authorities.  This Motion is based on this Notice of Motion, the following

21    Memorandum of Points and Authorities in support thereof, the Declaration of Brendan A.

22    McShane (and exhibits), the Declaration of Hiroshi Suzuki (and exhibit), all evidence in the record

23    and the Court's file in these actions, the argument of counsel, and such other matters as the Court

24    may consider.

25    **STATEMENT OF THE ISSUE**

26    Whether TAIS, Toshiba Corp., and TSST are entitled to summary judgment under Rule

27    56(a) of the Federal Rules of Civil Procedure with respect to each of the various Plaintiffs' claims

28    for relief, because the undisputed evidence fails to create a genuine issue of material fact as to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

TAIS, Toshiba Corp., and TSST's participation in an alleged conspiracy to fix or stabilize prices of optical disk drives, given (1) the lack of evidence linking these entities to the alleged conspiracy, (2) the lack of evidence tending to exclude the possibility they were engaged in non-conspiratorial conduct, and (3) the lack of evidence that these Defendants had agency or alter-ego relationships with any of the alleged co-conspirators sufficient to assert any type of vicarious liability for the purported actions or conduct of any other entity.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     UNDISPUTED FACTS ........................................................................................ 2

      A.      The DOJ Investigation Did Not Concern TAIS, Toshiba Corp., Or
            TSST ............................................................................................................. 2

      B.      Plaintiffs File Follow-On Civil Complaints Against Dozens Of
            ODD Suppliers ............................................................................................ 3

      C.      Defendants Had Short-Lived And Limited Involvement In The
            ODD Industry ............................................................................................. 3

            1.      Toshiba Corp. Exited The Market By April 2004 ................................. 3

            2.      TSST Announced Its Exit From The ODD Business In Late
                2005 ............................................................................................................ 4

            3.      TAIS Operated Only As A Distributor, And Exited The
                ODD Business In 2005 .............................................................................. 5

            4.      TSSTK Was The Only Entity That Manufactured ODDs
                Throughout The Relevant Period ............................................................. 5

III.    LEGAL STANDARD ........................................................................................... 6

IV.     ARGUMENT ....................................................................................................... 8

      A.      Plaintiffs Have No Direct Or Circumstantial Evidence That TAIS,
            Toshiba Corp., Or TSST Participated In the Alleged Conspiracy ........................ 8

            1.      There is No Genuine Issue of Material Fact Regarding
                TAIS's Involvement In The Alleged Conspiracy ................................. 10

                a.      There Is No Direct Evidence Of TAIS's
                    Involvement .................................................................. 10

                b.      There Is No Circumstantial Evidence Of TAIS's
                    Involvement .................................................................. 10

            2.      The Evidence Does Not Raise A Genuine Issue Of Material
                Fact Regarding Toshiba Corp.'s Involvement In the
                Alleged Conspiracy .............................................................................. 11

                a.      There Is No Direct Evidence Of Toshiba Corp.'s
                    Involvement .................................................................. 11

                b.      There Is No Circumstantial Evidence Of Toshiba
                    Corp.'s Involvement ..................................................... 12

                c.      Toshiba Corp.'s Post-TSST Conduct Is Consistent
                    With Permissible And Legitimate Business Activity ................. 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

3. Plaintiffs Fail To Raise A Genuine Issue Of Material Fact With Respect To TSST's Involvement In The Alleged Conspiracy ...................................................................... 14

    a. There Is No Direct Evidence Of TSST's Involvement ................................................................ 14

    b. There Is No Circumstantial Evidence Of TSST's Involvement ................................................................ 14

B. Plaintiffs Cannot Establish Vicarious Liability Of Toshiba Corp. Or TSST For The Acts Of A Separate And Independent Entity ........................ 19

1. Legal Standard Governing Vicarious Liability ........................ 19

2. Toshiba Corp. Cannot Be Held Vicariously Liable For The Conduct Of TSST Or TSSTK As A Matter Of Law .............................. 20

    a. TSST Is Not The Alter Ego Of Toshiba Corp., Nor Did An Agency Relationship Exist Between The Two Entities ............................................................. 20

    b. TSSTK Was Not The Alter Ego Or Agent Of Toshiba Corp. ........................................................... 22

3. TSST And TSSTK Were Separate Entities And Operated Independently From Each Other ........................ 23

V. CONCLUSION .............................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
   181 F.3d 216 (2d Cir. 1999)...................................................................................... 8

*Aguilar v. Atl. Richfield Co.*,
   25 Cal. 4th 826 (2001) .............................................................................................. 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................................... 6, 7, 11

*California v. NRG Energy, Inc.*,
   391 F.3d 1011 (9th Cir. 2004) ................................................................................. 20

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................... 6

*City of Moundridge v. Exxon Mobil Corp.*,
   No. 04-940 (RWR), 2009 WL 5385975 (D.D.C. Sept. 30, 2009) ........................... 13

*County of Tuolumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) ............................................................................... 7, 8

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ................................................................................................ 20

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*,
   No. CV F 03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008).......... 20, 22, 24

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
   547 F.3d 266 (5th Cir. 2008) .................................................................................. 17

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999).............................................................................. 13, 16

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ..................................................................... 7, 9, 10, 14

*In re Citric Acid Litig.*,
   996 F. Supp. 951 (N.D. Cal. 1998) ................................................................. 8, 9, 12, 14

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).................................................................................... 7

*In re Vitamins Antitrust Litig.*,
   320 F. Supp. 2d 1 (D.D.C. 2004) ...................................................................... 13, 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
    394 F.3d 1143 (9th Cir. 2004) ................................................................. 20, 21, 23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................ 7, 19

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984) ........................................................................................ 7, 19

*Rachel v. Banana Republic, Inc.*,
    No. C-85-3786-MPH, 1985 WL 26030 (N.D. Cal. Nov. 26, 1985) ..................... 22

*Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*,
    SACV 14-01665-JLS (DFMx), 2015 WL 12697655 (C.D. Cal. Mar. 11, 2015) ............... 22

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ....................................................... passim

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*,
    809 F.2d 626 (9th Cir. 1987) ................................................................................ 8

*The Jeanery, Inc. v. James Jeans, Inc.*,
    849 F.2d 1148 (9th Cir. 1988) .............................................................................. 7

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................... 19, 20, 22

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ............................................................................ 20

*Williamson Oil Co., Inc. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ............................................................................ 7

*Yoder v. Honeywell, Inc.*,
    104 F.3d 1215 (10th Cir. 1997) .......................................................................... 22

**STATUTES**

Fed. R. Civ. P. 56(a) ................................................................................................ 6

Fed. R. Civ. P. 56(c) ................................................................................................ 6

**OTHER AUTHORITIES**

Restatement (Third) of Agency § 1.01 (2006) ........................................................ 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3           Despite six years of discovery, thousands of hours of depositions, millions of documents,

4    and the aid of an ACPERA cooperator, there is no evidence that Toshiba America Information

5    Systems, Inc. ("TAIS"), Toshiba Corporation ("Toshiba Corp."), or Toshiba Samsung Storage

6    Technology Corporation ("TSST") (collectively, "Defendants") participated in any conspiracy in

7    violation of the antitrust laws.  Plaintiffs lack even circumstantial evidence that these Defendants

8    participated in the alleged six-year, "industry-wide" conspiracy to fix the prices of optical disc

9    drives ("ODDs").  This failure of proof warrants summary judgment.

10          Over the course of discovery, not a single witness testified to any anticompetitive

11   agreement involving TAIS, Toshiba Corp., or TSST.  Rather, the handful of witnesses who even

12   mentioned one these companies stated unequivocally that Defendants did not enter into any

13   agreements with competitors in the ODD market, and witness after witness from other participants

14   in the ODD market testified that they did not enter any agreement or even discuss competitive

15   information with anyone employed by these entities.  That testimony is unrebutted.  It is also

16   unsurprising because each of these companies were minor players in the ODD industry, and really

17   only for a brief period:  Toshiba Corp. exited the industry in April 2004, when it transferred its

18   ODD business to TSST, and TSST and TAIS followed suit shortly afterwards in October 2005.

19          There is no evidence—direct or circumstantial—that TAIS, Toshiba Corp., or TSST

20   entered into any conspiratorial agreements with competitors, or engaged in anything other than

21   legitimate business conduct.  The Supreme Court has ruled that conduct that is as consistent with

22   ordinary business activities as with a conspiracy cannot support an inference of illegal conduct.  A

23   corollary to this black letter law is that mere contacts with competitors, without more, are

24   insufficient to establish an antitrust violation because such contacts may just as easily be

25   innocuous, or even procompetitive.  Plaintiffs' case rests solely on limited, sporadic contacts with

26   other ODD suppliers by certain of the Defendants.  Without more, those contacts do not come

27   close to establishing the conspiracy alleged or satisfying the Supreme Court's standard.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   Plaintiffs also have no evidence to support their vague and conclusory allegations of

2   vicarious liability and, instead, simply ignore the separate corporate structure of each of these

3   entities.  None of the "critical facts" that might establish an alter-ego theory of liability exist, and

4   there is no evidence that the separate personalities of these defendants no longer exist.  Nor is there

5   any evidence that might establish "agency" liability, an extraordinary theory that is rarely applied.

6   Rather, the undisputed facts establish that TAIS, Toshiba Corp., and TSST are separate corporate

7   entities that operated independently from one another, observed corporate formalities, and did not

8   exercise control over any alleged participants in the conspiracy sufficient to establish vicarious

9   liability.  Indeed, IPPs and HP only added their allegations of "vicarious liability" *after* the entity

10  whose conduct they seek to impute, Toshiba Samsung Storage Technology Korea Corporation

11  ("TSSTK"), entered Korean bankruptcy proceedings in 2016.

12      Plaintiffs know that TAIS, Toshiba Corp., and TSST did not participate in the alleged

13  conspiracy.  Out of the over 50 defense witnesses deposed, Plaintiffs deposed just *three* of

14  Defendants' employees, two of them after the close of discovery.  The extensive record in this case

15  confirms why:  there is absolutely no evidence that TAIS, Toshiba Corp., or TSST participated in

16  the alleged conspiracy, and there is no theory under which they can be held liable.

17  **II.     UNDISPUTED FACTS**

18      **A.     The DOJ Investigation Did Not Concern TAIS, Toshiba Corp., Or TSST**

19      These cases began in the wake of a government investigation into potential anticompetitive

20  conduct in the ODD market.  *See* Order Denying Mot. Class Certification at 3, Oct. 3, 2014, ECF

21  No. 1444.  The Department of Justice ("DOJ") began investigating the ODD market in 2009 with

22  the assistance of amnesty applicant, and now ACPERA cooperator, Philips & Lite-On Digital

23  Solutions Corp. ("PLDS").  That investigation closed in 2014 with only a single ODD supplier,

24  Hitachi-LG Data Storage, Inc. ("HLDS"), and four of its employees pleading guilty.  The HLDS

25  indictments and plea agreements focused on price and bid agreements that HLDS allegedly

26  reached with respect to a defined set of factually distinct ODD procurement events held by three

27  ODD purchasers:  Dell, HP, and (in one instance) Microsoft.  DOJ did not allege any industry-

28  wide, overarching conspiracy to fix prices.  Critically, none of the counts to which HLDS or its

2

1   employees pleaded guilty related to TAIS, Toshiba Corp., or TSST.  Even with the benefit of full

2   cooperation from HLDS, DOJ never alleged or even intimated that HLDS's agreements concerned

3   any of these three Defendants.  In fact, the record is undisputed that none of TAIS, Toshiba Corp.,

4   or TSST even participated in any of those procurement events.  DOJ did not interview, indict, or

5   fine a single employee of TAIS, Toshiba Corp., or TSST.

6           **B.      Plaintiffs File Follow-On Civil Complaints Against Dozens Of ODD Suppliers**

7           Public disclosure of the DOJ investigation in 2009 led to the filing of numerous purported

8   class action complaints against essentially every company that sold ODDs between 2004 and 2009.

9   This included complaints on behalf of Indirect Purchaser Plaintiffs ("IPPs") and Direct Purchaser

10  Plaintiffs ("DPPs"), and later complaints filed by HP, Acer, and the trustees of the RadioShack and

11  Circuit City liquidating trusts.  Unlike the narrow conduct covered in the HLDS plea agreements

12  (none of which mentioned TAIS, Toshiba Corp., or TSST), the follow-on lawsuits seeking

13  monetary relief broadly allege that from as early as April 1, 2003 until as late as January 1, 2010,

14  dozens of ODD suppliers were engaged in a "single, continuous and overarching price-fixing

15  conspiracy."  Lumping TAIS, Toshiba Corp., and TSST in with every other entity that was at any

16  point involved in the supply of ODDs, Plaintiffs assert that all "Defendants" violated Section 1 of

17  the Sherman Act, California's Cartwright Act, state unfair competition law claims, and/or breached

18  various contracts.[1]

19          **C.      Defendants Had Short-Lived And Limited Involvement In The ODD Industry**

20                  **1.      Toshiba Corp. Exited The Market By April 2004**

21          Toshiba Corp. operated an ODD business for a number of years in the 1990s and early

22  2000s.  On January 13, 2004, Toshiba Corp. and Samsung Electronics Co., Ltd. ("Samsung")

23  entered into a Business Integration Agreement ("BIA"), the objective of which was to form a new

24  and separate set of corporate entities that would assume responsibility for any further ODD

25  operations.  *See* Declaration of Brendan A. McShane ("McShane Decl."), Ex. 1 (Ex. 1229).  Under

26  _____

27  [1]      Plaintiffs Acer, HP, Circuit City, and Radio Shack allege a conspiracy involving TAIS.
    Plaintiffs Acer, IPPs, HP, Circuit City, and Radio Shack allege a conspiracy involving Toshiba
28  Corp.  Plaintiffs Acer, IPPs, HP, Circuit City, and Radio Shack allege a conspiracy involving
    TSST.

3



Thus, as of April 1, 2004 when TSST became operational, Toshiba Corp. exited the ODD sales business.

### 2.      TSST Announced Its Exit From The ODD Business In Late 2005

By approximately September 2005, it was clear that TSST was not a viable business given the fierce competition surrounding next-generation ODD formats.  *See, e.g.*, McShane Decl., Ex. 2 (Morris Dep. at 193:13-23); McShane Decl., Ex. 3 (Suzuki Dep. at 50:3-13).  As such, TSST began winding down its business outside of Japan and largely exited the ODD business by March 2006, except to continue sales pursuant to certain preexisting customer agreements ("legacy sales").  *See* McShane Decl., Ex. 2 (Morris Dep. at 88:8-16); McShane Decl., Ex. 4 (Longfellow Dep. 12:13-21, 27:12-23); McShane Decl., Ex. 3 (Suzuki Dep. 24:24-25:11).[2]  TSST's legacy sales to non-U.S. customers under existing contracts ceased in December 2007, and the company

_____

[2] ████████████████  *See* Suzuki Decl., Ex. A (T-ODD-00000501).  HD-DVD was ultimately unsuccessful, and the "BluRay" format instead emerged as the "next generation" format.  Sales of HD-DVD were extremely limited.  IPPs do not include it in their class definition, and the other plaintiffs seek no damages for HD-DVDs.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

recorded its final sale in March 2008.  *See* McShane Decl., Ex. 5 (Objs. and Narrative Resps. to Pls.' Joint Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(6) ("Toshiba Corp. 30(b)(6) Narrative Resp.") at 32, Dec. 31, 2012).

As of April 1, 2008, all TSST employees were transferred to Toshiba Corp.  *See* McShane Decl., Ex. 2 (Morris Dep. at 96:24-97:2).  Beginning in 2008 and continuing through the remainder of the relevant time period, TSST ceased operations and functioned solely as a holding company for its separately incorporated subsidiary, TSSTK.  *See* McShane Decl., Ex. 3 (Suzuki Dep. at 22:3-5, 26:1-16); McShane Decl., Ex. 6 (Def. TSST's Objs. and Resps. to IPPs' Fourth Set of Interrogs. at 7-8, Sept. 19, 2016).

### 3. TAIS Operated Only As A Distributor, And Exited The ODD Business In 2005

TAIS is a wholly-owned subsidiary of Toshiba America, Inc., which is itself a wholly-owned subsidiary of Toshiba Corp.  Neither TAIS nor its parent Toshiba America, Inc. have any ownership interest in either TSST or TSSTK.  TAIS served as the exclusive distributor in the United States of Toshiba Corp.'s (April 2003 to April 2004) and then TSST's (April 2004 to September 2005) ODD products.  *See* McShane Decl., Ex. 5 (Toshiba Corp. 30(b)(6) Narrative Resp. at 8-9); McShane Decl., Ex. 4 (Longfellow Dep. at 102:10-15).  TAIS's distribution arrangement with TSST was terminated on or around September 30, 2005, when TSST transferred what little remained of its ODD business to TSSTK and wound down its ODD business outside of Japan.  *See* Declaration of Hiroshi Suzuki ("Suzuki Decl."), Ex. A (T-ODD-00000501 at T-ODD-00000503).  In around October 2005, TAIS notified its customers that it was exiting the general ODD sales business and gave them notice to make last-time purchases.  *See, e.g.*, McShane Decl., Ex. 2 (Morris Dep. at 193:13-25); McShane Decl., Ex. 7 (Ex. 1775); McShane Decl., Ex. 8 (Ex. 1776); McShane Decl., Ex. 4 (Longfellow Dep. at 12:13-21).  From April 2006 through the end of the relevant period, TAIS had extremely limited legacy ODD sales.

### 4. TSSTK Was The Only Entity That Manufactured ODDs Throughout The Relevant Period

TSSTK—the separate, Korean entity created under the BIA—is the only entity with any connection to Defendants that sold significant quantities of ODDs during the relevant period.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   TSSTK operated independently of TAIS, Toshiba Corp., and TSST.  TAIS never negotiated prices

2   for, sold, or distributed any ODDs on TSSTK's behalf.  *See* McShane Decl., Ex. 4 (Longfellow

3   Dep. at 102:17-103:17); McShane Decl., Ex. 9 (TAIS's Objs. and Resps. to Ingram Micro Inc.'s

4   First Set of Interrogs. at 10, Nov. 14, 2016).  To the extent TSSTK sold ODDs into the United

5   States during the relevant time period, it did so through a separate company, TSSTK's exclusive

6   distributor in the U.S. (Samsung Semiconductor, Inc.).  Toshiba Corp. was also separate from

7   TSSTK.  Toshiba Corp. did not transfer or second any employees to TSSTK, never used TSSTK's

8   assets for its own purposes, and had no responsibility for or control over TSSTK's personnel or

9   finances.  McShane Decl., Ex. 2 (Morris Dep. at 49:25-50:12, 54:23-25, 70:12-71:4); McShane

10  Decl., Ex. 3 (Suzuki Dep. at 238:5-10, 240:16-19).  TSST was also separate from TSSTK.  Despite

11  initial hopes of synergies between TSST and TSSTK, the two companies never integrated and

12  always operated as separate and independent business entities.  McShane Decl., Ex. 3 (Suzuki Dep.

13  at 238:11-25); McShane Decl., Ex. 2 (Morris Dep. at 36:6-37:23, 185:11-19).  TSST was not

14  involved in or consulted about any pricing or bidding decisions made by TSSTK, and each

15  company sold distinct ODD products.  McShane Decl., Ex. 2 (Morris Dep. at 184:14-23, 186:9-

16  11); McShane Decl., Ex. 3 (Suzuki Dep. at 240:10-242:1).

17  **III.   LEGAL STANDARD**

18       Summary judgment is appropriate when there is "no genuine dispute as to any material

19  fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

20  moving party bears the initial burden of identifying those portions of "the pleadings, depositions,

21  answers to interrogatories, and admissions on file, together with the affidavits, if any," which it

22  believes demonstrate the absence of a genuine issue of material fact or the absence of evidence.

23  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986) (quoting Fed. R. Civ. P. 56(c)).  Where the

24  moving party makes such a showing, the burden shifts to the nonmoving party to identify specific

25  facts demonstrating the existence of genuine issues for trial.  *Id*. at 324.  This burden is significant.

26  The nonmoving party must show more than the mere existence of a scintilla of evidence,

27  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and must show more than some

28  "metaphysical doubt" as to the material facts at issue.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1  | *Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must present evidence from

2  | which a jury could reasonably render a verdict in its favor.  *Anderson*, 477 U.S. at 252.

3  |  To survive summary judgment, a plaintiff must present direct or circumstantial evidence

4  | that tends to prove that a defendant "had a conscious commitment to a common scheme designed

5  | to achieve an unlawful objective."  *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,

6  | 1155 (9th Cir. 2001) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984));

7  | *see also The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1155 (9th Cir. 1988) (noting that a

8  | "common scheme" or "meeting of the minds" is a prerequisite to Section 1 liability).  Direct

9  | evidence of a conspiracy "is explicit and requires no inferences to establish" that a party

10 | participated in the conspiracy.  *County of Tuolumne*, 236 F.3d at 1155 (citing *In re Citric Acid

11 | Litig. ("Citric Acid II")*, 191 F.3d 1090, 1093–94 (9th Cir. 1999); *In re Ins. Brokerage Antitrust

12 | Litig.*, 618 F.3d 300, 324, n.23 (3d Cir. 2010) (noting that direct evidence is "a document or

13 | conversation explicitly manifesting the existence of the agreement in question").

14 |  Where there is no direct evidence of conspiracy, a plaintiff may turn to circumstantial

15 | evidence to attempt to prove conspiracy.  However, "antitrust law limits the range of permissible

16 | inferences from ambiguous evidence."  *Matsushita*, 475 U.S. at 588.  Circumstantial evidence of a

17 | conspiracy that is "consistent with permissible competition" is insufficient to defeat summary

18 | judgment.  *Id.* at 597 n.21.  Plaintiffs are required to produce evidence that "tends to exclude the

19 | possibility" of non-conspiratorial conduct.  *Monsanto*, 465 U.S. at 764.  The proffered evidence

20 | must support the existence of a conspiracy *more strongly* than it supports permissible conduct.

21 | *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1300–01 (11th Cir. 2003) (citation

22 | omitted).  The Ninth Circuit applies a two-part test with respect to circumstantial evidence.  First,

23 | the defendant can "rebut an allegation of conspiracy by showing a plausible and justifiable reason

24 | for its conduct that is consistent with proper business practice."  *Sun Microsystems Inc. v. Hynix

25 | Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1176 (N.D. Cal. 2009); *Citric Acid II*, 191 F.3d at 1094

26 | (citation omitted).  The burden then shifts to the plaintiff to provide specific evidence tending to

27 | show that the defendant was not engaging in permissible competitive behavior.  *Citric Acid II*, 191

28 | F.3d at 1094–95; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 635 (9th

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   Cir. 1987) (granting summary judgment where plaintiffs could not set forth "specific facts" that

2   "tend to *exclude* the possibility that [defendant] acted independently").

3       Plaintiffs cannot use evidence concerning one entity to allege collusive behavior of another,

4   and courts are skeptical of attempts to blur corporate lines. *Sun Microsystems*, 608 F. Supp. 2d at

5   1194 (concluding that plaintiff "cannot meet its burden to defeat summary judgment, since it

6   cannot preliminarily tell the court which entity is responsible for which communication or act").

7   Rather, a plaintiff must present evidence specific to *each* entity to survive summary judgment. *Id.*;

8   *see also AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999)

9   (requiring "a factual showing that each defendant conspired in violation of the antitrust laws").

10      The same standards apply to Plaintiffs' state law claims. *See Aguilar v. Atl. Richfield Co*.,

11  25 Cal. 4th 826, 852 (2001) ("Ambiguous evidence or inferences showing or implying conduct

12  that is as consistent with permissible competition by independent actors as with unlawful

13  conspiracy by colluding ones do not allow such a trier of fact so to find."); *Sun Microsystems*, 608

14  F. Supp. 2d at 1194 (granting partial summary judgment on Plaintiff's federal and state law

15  antitrust claims, and finding it unnecessary to address Plaintiff's derivative California Unfair

16  Competition Law claim).

17  **IV.    ARGUMENT**

18      **A.    Plaintiffs Have No Direct Or Circumstantial Evidence That TAIS, Toshiba Corp., Or TSST Participated In the Alleged Conspiracy**

19

20      Plaintiffs cannot identify a single piece of direct evidence linking TAIS, Toshiba Corp., or

21  TSST to the alleged conspiracy. There is nothing remotely approaching a "smoking gun" that

22  would be sufficient direct evidence of conspiracy. *See County of Tuolumne*, 236 F.3d at 1155

23  (direct evidence is "explicit and requires no inference" to establish conspiracy) (quotation

24  omitted). Indeed, affirmative and uncontroverted testimony establishes that the Defendants *did not*

25  participate in the alleged anticompetitive conduct. *See In re Citric Acid Litig. ("Citric Acid I")*,

26  996 F. Supp. 951, 955–56 (N.D. Cal. 1998) (finding testimony from admitted conspirators that the

27  defendant was not part of the conspiracy to be "quite probative" and "strong evidence" that

28

1   defendant did not participate).  That testimony is unrebutted and unsurprising based on each

2   Defendant's limited, short-lived participation in the ODD industry.

3       *Citric Acid* is instructive.  In *Citric Acid I*, four members of an alleged five-member

4   conspiracy pleaded guilty to antitrust violations and settled the follow-on civil suits.  996 F. Supp.

5   at 953.  The fifth alleged conspirator (Cargill) moved for summary judgment, relying heavily on

6   testimony from one of the settled-conspirators that Cargill was not a party to the conspiracy.  *Id.* at

7   955.  The district court found that such testimony, paired with the lack of any direct evidence

8   against Cargill, was "quite probative" that Cargill was not a member of the conspiracy.  The Ninth

9   Circuit affirmed, finding that attendance at meetings and sporadic communications with

10  conspirators amount to "no more than a scintilla of evidence."  *Citric Acid II*, 191 F.3d at 1106

11  ("We note that all four major citric acid manufacturers admitted to conspiring to fix prices but

12  none identified Cargill as a co-conspirator.").

13      Like *Citric Acid*, Plaintiffs' case suffers from an "utter lack" of direct evidence that TAIS,

14  Toshiba Corp., or TSST participated in the alleged conspiracy.  *Citric Acid I*, 996 F. Supp. at 956.

15  Neither PLDS (the ACPERA defendant) nor HLDS (who pleaded guilty to specific acts of bid-

16  rigging and agreed to cooperate with DOJ) testified or otherwise stated that TAIS, Toshiba Corp.

17  or TSST were parties to any alleged conspiracy.[3]  In fact, HLDS and PLDS employees

18  affirmatively testified that they never entered into agreements or *even communicated* with anyone

19  other than TSSTK in relation to the ODD sales at issue.[4]  This unrebutted testimony is telling

20  because, like the admitted conspirators in *Citric Acid I*, HLDS and PLDS do not "have any reason

21  to shield" TAIS, Toshiba Corp., or TSST, *id.*, and in fact each have motivation or responsibility to

22  provide as much evidence of a conspiracy as exists.[5]

23  _____

24  [3]     *See, e.g* McShane Decl., Ex. 32 (Wong Dep. (PLDS), at 341:8-11, 494:9-21) (confirming
25  his only communications were with TSSTK); McShane Decl., Ex. 33 (Reynolds Dep. (PLDS), at
    266:22-267:7) (same); McShane Decl., Ex. 34 (J. Kim Dep. (HLDS) at 666:22-667-11) (same).

26  [4]     *See, e.g.*, McShane Decl., Ex. 12 (Choi Dep. (HLDS) at 889:22-890:11) (stating he did
27  not have discussions with TSST, Toshiba Corp., or TAIS); McShane Decl., Ex. 10 (Chang Dep.
    (PLDS), at 264:12-23) (stating he had no discussions with TSST or Toshiba Corp.).

28  [5]     As the DOJ leniency applicant and ACPERA cooperator defendant, PLDS is under a
    continuing obligation to "provid[e] a full account . . . of all facts known to [it] . . . that are

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

9

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1       This dearth of direct evidence means Plaintiffs must try to prove their claims with

2   circumstantial evidence.  *Citric Acid II*, 191 F.3d at 1094.  Plaintiffs attempt to do so by pointing

3   to an extremely limited set of communications between TAIS, Toshiba Corp., or TSST and other

4   ODD suppliers.  However, as discussed below, these communications do not come close to

5   showing that TAIS, Toshiba Corp., or TSST participated in any conspiracy.

6          **1.   There is No Genuine Issue of Material Fact Regarding TAIS's
7   Involvement In The Alleged Conspiracy**

8          **a.   There Is No Direct Evidence Of TAIS's Involvement**

9       TAIS has no connection to the Dell or HP procurement events that are at the heart of

10  Plaintiffs' claims.  TAIS did not participate in any of those events, never negotiated ODD prices

11  for TSSTK, *see* McShane Decl., Ex. 4 (Longfellow Dep. at 102:17-103:17), and functioned purely

as a distributor for certain Toshiba Corp. and TSST ODDs delivered to the United States.

12      There is no "smoking gun" testimony regarding TAIS.  Plaintiffs deposed only *one* TAIS

13  employee who testified unequivocally that she "would never speak to a competitor," that she

14  "never" reached any agreement with a competitor regarding ODD prices or bidding, and that she

15  had no personal knowledge of any TAIS employee speaking with ODD competitors regarding

16  pricing or bidding or making any agreements to that effect.  *See* McShane Decl., Ex. 4

17  (Longfellow Dep. at 59:11-19, 116:17-117:8, 118:1-6).  No witness for any other party testified to

18  the existence of any anticompetitive agreements involving TAIS, or even to information exchanges

19  with TAIS.  Plaintiffs' own discovery responses confirm this lack of evidence.  *See* McShane Decl.

20  ¶ 55.

21         **b.   There Is No Circumstantial Evidence Of TAIS's Involvement**

22      Unable to identify any direct evidence, Plaintiffs resort to imprecise references to TAIS as

23  part of the "Toshiba Defendant Family."  *See, e.g.*, Circuit City Second Am. Compl. ¶ 27, ECF No.

24

25  ___

26  potentially relevant to the civil action" or risk losing the benefits of its cooperation.  ACPERA, Pub. L. No. 108-237, Title II, 118 Stat. 661.  HLDS's plea agreement similarly obligates it to provide its "full, truthful, and continuing cooperation" in this case.  HLDS Plea Agmt, ¶ 14, Case
27  No. 3:11-cr-00724-RS, ECF No. 5-1 (Oct. 28, 2011).  That neither PLDS or HLDS testified to any agreements with TAIS, Toshiba Corp., or TSST is therefore "quite probative."  *Citric Acid I*,
28  996 F. Supp. at 956.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1  2158 (alleging Toshiba Corp. and TAIS "are referred to individually and collectively herein as

2  'Toshiba'").. TAIS, however, is situated at the far end of one branch of Toshiba Corp.'s corporate

3  structure, unrelated to TSSTK and TSST except via attenuated corporate family connections.

4  Courts regularly reject claims that ignore corporate separateness. *See Sun Microsystems*, 608 F.

5  Supp. 2d at 1194.

6        There is no evidence linking TAIS to the conduct of any of the major ODD suppliers,

7  including TSSTK.  TAIS never negotiated prices for, sold, or distributed any ODDs on TSSTK's

8  behalf.  *See* McShane Decl., Ex. 4 (Longfellow Dep. at 102:17-103:17); McShane Decl., Ex. 2

9  (Morris Dep. at 183:6-184:23); McShane Decl., Ex. 9 (TAIS's Objs. and Resps. to Ingram Micro

10  Inc.'s First Set of Interrogs. at 10, Nov. 14, 2016).  Nor did TAIS have any relationship with

11  Toshiba Corp. or TSST related to the ODD industry other than acting as a distributor for portions

12  of the class period.  *See* McShane Decl., Ex. 5 (Toshiba Corp. 30(b)(6) Narrative Resp. at 46)

13  ("TAIS operates as its own independent business."); McShane Decl., Ex. 2 (Morris Dep. at 183:15-

14  16) ("[TAIS] continued to sell, although they were not a part of TSST.").

15        TAIS's distribution arrangement with TSST was terminated on or around September 30,

16  2005, when TSST began its exit of the ODD business.  *See* Suzuki Decl., Ex. A (T-ODD-

17  00000501 at T-ODD-00000503).  Any subsequent ODD sales were negligible.  McShane Decl.,

18  Ex. 2 (Morris Dep. at 97:19-22).  TAIS's limited role in the ODD market for a short period of time

19  defeats any inference of involvement in the multi-year, overarching conspiracy Plaintiffs allege.

20  Without *any* direct or circumstantial evidence tying TAIS to the alleged conspiracy, no reasonable

21  jury could render a verdict in Plaintiffs' favor.  *See Anderson*, 477 U.S. at 252.

22        **2.    The Evidence Does Not Raise A Genuine Issue Of Material Fact
           Regarding Toshiba Corp.'s Involvement In the Alleged Conspiracy**

23

24             **a.    There Is No Direct Evidence Of Toshiba Corp.'s Involvement**

25        As with TAIS, not a single witness testified that Toshiba Corp. participated in the alleged

26  conspiracy.  Instead, witnesses who testified about Toshiba Corp. explicitly stated that they did not

27  exchange information or make agreements with Toshiba Corp.  *See, e.g.*, McShane Decl., Ex. 10

28  (Chang Dep. at 264:18-23); McShane Decl., Ex. 11 (Tsai Dep. at 246:23-247:9); McShane Decl.,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

Ex. 12 (Choi Dep. at 888:21-890:6).  Despite a six-year discovery period, Plaintiffs deposed only

two Toshiba Corp. witnesses, both solely pursuant to Rule 30(b)(6).  The unrebutted testimony

from these depositions is that Toshiba Corp. did not speak to or have agreements with competitors.

*See, e.g.*, McShane Decl., Ex. 3 (Suzuki Dep. at 70:10-17, 73:10-20); *see also Citric Acid I*, 996 F.

Supp. at 955 (finding direct testimonial evidence from defendant's employees denying it was

involved in a price-fixing conspiracy to be "convincing").

### b.   There Is No Circumstantial Evidence Of Toshiba Corp.'s Involvement

In their written discovery responses, Plaintiffs point to documents that purport to show that

Toshiba Corp. engaged in collusive behavior prior to its exit from the ODD business in April 1,

2004.  *See* McShane Decl. ¶ 55.  Many of these documents do not concern or even mention

Toshiba Corp.  *See, e.g.*, McShane Decl., Ex. 13 (Ex. 632); McShane Decl., Ex. 14 (ODDCIV-

001022121); McShane Decl., Ex. 15 (ODDCIV-001022474); McShane Decl., Ex. 16 (PNA-CIV

0000250253); McShane Decl., Ex. 17 (ODDCIV-001029271); McShane Decl., Ex. 18

(HLDS_CIV0042719); McShane Decl., Ex. 19 (HLDS_CIV0873694); McShane Decl., Ex. 20

(HLDS_CIV0873977); McShane Decl., Ex. 21 (TSSTK-0222840).  In fact, one document not only

does not concern Toshiba Corp. but also has nothing to do with optical disk drives.  *See, e.g.*,

McShane Decl., Ex. 22 (ODDCIV-001021801) (concerning monitor screens).

Critically, the documents Plaintiffs identify show nothing but permissible, non-

conspiratorial conduct.  In the few documents containing Toshiba Corp. price or bidding

information, the source of the information is either not Toshiba Corp. or is unidentified.  *See*

McShane Decl., Ex. 23 (Ex. 1400); McShane Decl., Ex. 24 (Ex. 1903); McShane Decl., Ex. 25

(Ex. 631); McShane Decl., Ex. 26 (HLDS_CIV1167193); McShane Decl., Ex. 27 (TSSTK-

0222776); McShane Decl., Ex. 28 (HLDS_CIV0019549); McShane Decl., Ex. 29 (Ex. 1090)

Moreover, mere possession of a competitor's pricing information does not "tend to exclude

legitimate competitive behavior," because "[t]here are many legal ways in which [the defendant]

could have obtained pricing information."  *Citric Acid I*, 191 F.3d at 1103; *see also In re Baby*

1  *Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("[I]t makes common sense to obtain as

2  much information as possible on the pricing policies and marketing strategy of one's

3  competitors.").

4       Plaintiffs also identify various Toshiba Corp. patent license agreements as circumstantial

5  evidence of Toshiba Corp.'s collusion. *See* McShane Decl., ¶ 56. But licensing agreements with

6  third parties are not circumstantial evidence of conspiracy or the kind of "information exchange"

7  Plaintiffs claim furthered the alleged conspiracy. *See City of Moundridge v. Exxon Mobil Corp.*,

8  No. 04-940 (RWR), 2009 WL 5385975, at *11 (D.D.C. Sept. 30, 2009).

9                  **c.      Toshiba Corp.'s Post-TSST Conduct Is Consistent With**

10                        **Permissible And Legitimate Business Activity**

11       Plaintiffs' evidence of Toshiba Corp.'s allegedly collusive conduct *after* it exited the ODD

12  business is even more deficient. It is incontrovertible that Toshiba Corp.'s PC business operated

13  independently from its ODD business, and Toshiba Corp. continued to be a major seller of PCs

14  after its April 2004 transfer of its ODD business to TSST. Many of the documents Plaintiffs use as

15  evidence of "collusion" actually concern a legitimate vendor-purchaser relationship whereby

16  Toshiba Corp. was purchasing ODDs from suppliers for the PCs it manufactured. *See, e.g.*,

17  McShane Decl., Ex. 36 (PNA-CIV 0000201409) (referring to Toshiba personnel as "customers");

18  McShane Decl., Ex. 37 (Tzeng Dep. at 114:19-117:22) (testifying that Ex. 2129 reflects a meeting

19  between QSI and its customer, Toshiba Corp.). Toshiba Corp.'s meetings with ODD or HDD

20  suppliers in its role as a PC manufacturer are evidence of a *vertical relationship*, and are irrelevant

21  to Plaintiffs claims. *See In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 20 (D.D.C. 2004).

22       Plaintiffs also advance the extraordinary theory that, following its exit from the ODD

23  industry, Toshiba Corp. was both a participant in *and* a victim of the alleged conspiracy, and

24  Plaintiffs point to documents that allegedly show this paradoxical role. *See, e.g.*, McShane Decl.,

25  Ex. 38 (Omnibus Ex. B to Dell's Third Suppl. Objs. and Resps. to TSSTK's First Set of Interrogs.

26  at 119) (asserting Toshiba Corp. in HLDS_CIV1884670 (Ex. 920) is both the "Defendant[]

27  Involved in [the] Collusive Act" *and* the "OEM / Customer"). As this Court has observed, the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

notion that a party is a victim of the alleged conspiracy is "flatly incompatible" with the idea that it is a co-conspirator.  Order Granting Mot. to Dismiss at 9, Aug. 3, 2011, ECF No. 393.

### 3.   Plaintiffs Fail To Raise A Genuine Issue Of Material Fact With Respect To TSST's Involvement In The Alleged Conspiracy

#### a.   There Is No Direct Evidence Of TSST's Involvement

As with TAIS and Toshiba Corp., there is no direct evidence that TSST participated in the alleged conspiracy.  Again, not a single witness testified to any agreement with TSST regarding prices or bids for ODDs, *see Citric Acid I*, 996 F. Supp. at 955, and instead testified affirmatively that they did not have any agreements, *or even contacts*, with TSST.[6]  *See* McShane Decl., Ex. 10 (Chang Dep. (PLDS) at 264:12-17); McShane Decl., Ex. 12 (Choi Dep. (HLDS) at 889:22-890:1). Plaintiffs chose to depose just *two* witnesses from TSST.  The unequivocal testimony is that TSST was not involved in any conspiracy, and never made agreements with competitors related to ODD prices or bidding.  *See* McShane Decl., Ex. 3 (Suzuki Dep. at 47:3-12) ("I can say with confidence that at J-Co, there was never such an agreement . . . ."); McShane Decl., Ex. 10 (Chang Dep. at 264:12-17) (testifying he had no information exchanges or agreements with TSST); McShane Decl., Ex. 11 (Tsai Dep. at 246:23-247:1) (testifying he did not enter into any agreements with TSST).  No other witness testified to having reached any agreements with TSST.

#### b.   There Is No Circumstantial Evidence Of TSST's Involvement

The few emails Plaintiffs identify that purport to contain communications between TSST and another ODD supplier are consistent with "proper business practice," and therefore do not "tend[ ] to exclude the possibility that [TSST] acted independently."  *See Citric Acid II*, 191 F.3d at 1095.  The burden is thus shifted to Plaintiffs to present "specific evidence" excluding such lawful, independent action.  *Id*. at 1094.  No such evidence exists.  As in *Citric Acid I*, witnesses from companies that admitted to bid-rigging testified that they did not reach any agreement *or even have communications* with TSST.  *See* McShane Decl., Ex. 10 (Chang Dep. (PLDS) at 264:12-14);

---

[6]   References to "TSST" in the record are almost always references to the separate Korean entity, TSSTK.  *See, e.g.*, McShane Decl., Ex. 35 (Hur Dep. at 827:15-828:1) (noting that references to TSST were, except in "very limited cases," references to TSSTK); McShane Decl., Ex. 33 (Reynolds Dep. at 266:22-267:2); McShane Decl., Ex. 32 (Wong Dep. at 494:9-24).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   McShane Decl., Ex. 12 (Choi Dep. (HLDS) at 889:22-890:1).[7]  That alone warrants summary

2   judgment.

3          The dearth of documentary evidence is equally probative.  In all of the evidence adduced in

4   this case and identified by Plaintiffs, the closest Plaintiffs come to identifying supposed

5   "circumstantial evidence of improper conduct" is Exhibit 1913, an email by Masanori Komiya of

6   TSST.  Plaintiffs' translation of that Japanese email states in full:

> Last week, when I visited Kco, I checked Dell Net Auction's system. There is an
> assistance system (program) to determine ranking together with Kco production
> capacity and Dell TAM quantity. After Mr. Huang gives the instructions, MNA
> sales general manager Mr. David Kim will enter the auction with his subordinate
> and implement [Huang's order].
> It would require Mr. Huang's approval if the price were to go under the already
> determined bottom price. In the beginning, Mr. Huang also participated in the
> auction, but the price became too aggressive and dropped too much that Mr.
> Huang stopped directly involvement to the auction.
> Regarding the current business trip to Taiwan, I met with Lite-on president, and
> received his agreement on avoiding further excessive price competition, Mr.
> Huang also agreed saying that for models other than DVD-WRITER, the major
> participants of the Dell auction consisted of only three companies - SONY-
> LITEON, HLDS and KCO; thus, these three companies should not provide
> unnecessary competition. I think if we can make the right adjustments, it may be
> possible for us to improve our profitability in the medium-term.
> I also think we should prepare for the current crazy price competition to continue
> for DVD-WRITER until participating companies drop to 3 or 4.

17  *See* McShane Decl., Ex. 39 (Ex. 1913B).[8]  This email—which concerns a single business trip and

18  one isolated procurement event—does not support Plaintiffs' allegations of a multi-year, multi-

19  party conspiracy.[9]  Even as to the specific events described in the email, there is no evidence that

20  any anticompetitive agreement was reached.  With respect to the referenced meeting with Lite-On,

21  there is no evidence suggesting the parties actually avoided "excessive price competition" or what

---

[7]     *See also* McShane Decl., Ex. 32 (Wong Dep. (PLDS) at 341:8-11, 494:9-24) (confirming that his inter-defendant communications were only TSSTK); McShane Decl., Ex. 33 (Reynolds Dep. (PLDS), at 266:22-267:2) (same); McShane Decl., Ex. 34 (J. Kim Dep. (HLDS) at 666:22-667-11) (same).

[8]     In another translation of this document that Plaintiffs introduced, Mr. Komiya wrote that Lite-On's president agreed he would "like to avoid more aggressive price competition."  McShane Decl., Ex. 39 (Ex. 1913A).

[9]     Toshiba's Hiroyuki Sato is copied on the email.  *Id.*  However, there is no evidence that Mr. Sato or any other Toshiba employee read or responded to this email or participated in the underlying conversations.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   the scope of such an agreement would have been (*e.g.*, what ODDs, customers or procurement

2   events would have been included, or how the parties would enforce the agreement). There are no

3   documents reflecting efforts to implement a price-fixing agreement following this meeting, and no

4   Lite-On (PLDS) witness testified that there was any agreement related to this document. Nor do

5   Plaintiffs have evidence as to any supposed agreement between Sony, Lite-On, HLDS, and TSSTK

6   to avoid "unnecessary competition" in the Dell auction. The "Mr. Huang" referenced in the email

7   is a TSSTK employee, and the email states expressly that the auction became "too aggressive,"

8   which is flatly inconsistent with the notion of a price-fixing conspiracy.

9          Notably, Plaintiffs never requested to depose the author of this email, Mr. Komiya, or any

10  of the recipients of the email. Plaintiffs did depose multiple witnesses from ACPERA cooperator

11  Lite-On (PLDS) and none, despite their ACPERA obligations, testified as to any meeting or

12  agreement with TSST. *See, e.g.*, McShane Decl., Ex. 40 (Tseng Dep. at 406:22-407:3).

13  Accordingly, this document at worst reflects that employees of two ODD suppliers hoped that

14  price competition would not be excessive, but it is not evidence of an agreement to participate in

15  the *overarching, six year-long conspiracy* Plaintiffs allege. *See In re Vitamins Antitrust Litig.*, 320

16  F. Supp. at 11 (holding that a discussion regarding "the desirability of a price increase" did not

17  indicate knowledge of or agreement to participate in an overarching conspiracy).

18         Plaintiffs' other supposed "circumstantial evidence" is even more deficient and at most

19  shows sporadic communication with competitors. It is well established that communications with

20  competitors, even when frequent, often have procompetitive justifications. *See In re Baby Food*

21  *Antitrust Litig.*, 166 F.3d at 126 ("Communications between competitors do not permit an

22  inference of an agreement to fix prices unless those communications rise to the level of an

23  agreement, tacit or otherwise.") (quotation omitted). Such communications alone cannot support

24  an inference of anticompetitive conduct, and certainly not TSST's participation in the wide-

25  ranging theory of collusive behavior alleged by Plaintiffs. *See id.* Moreover, TSST's corporate

26  representative testified that competitor contacts were often for *procompetitive* purposes like

27  technical partnerships, joint developments, or joint ventures. *See, e.g.*, McShane Decl., Ex. 3

28  (Suzuki Dep. at 46:6-13; 228:1-229:11).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1    The documents cited by Plaintiffs show these procompetitive rationales—including the

2    legitimate business conduct of industry standard-setting organizations.  For example, Plaintiffs cite

3    Exhibit 1905 as evidence of collusive conduct.  The referenced meeting, however, is of the

4    "Recordable DVD Council," which TSST's Rule 30(b)(6) representative, Hiroshi Suzuki, testified

5    was a DVD standards-setting meeting.  *See* McShane Decl., Ex. 41 (Ex. 1905); McShane Decl.,

6    Ex. 3 (Suzuki Dep. at 84:22-85:15).  Mr. Suzuki similarly testified that communications between

7    TSST and Sony Optiarc referenced in Exhibit 1920 related solely to the development and

8    promotion of the next generation format, HD-DVD, in order to compete with Blu-Ray.  *See*

9    McShane Decl., Ex. 42 (Ex. 1920); McShane Decl., Ex. 3 (Suzuki Dep. at 185:1-186:13).  These

10   legitimate industry meetings cannot be used to infer a broad price-fixing conspiracy.  *See Golden*

11   *Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 273 (5th Cir. 2008).

12        Plaintiffs also point to documents reflecting potential future meetings and discussions

13   between TSST and competitors, but have no evidence that any conversations actually occurred or

14   what was discussed.  *See Sun Microsystems*, 608 F. Supp. 2d at 1193 (shifting the burden back to

15   plaintiffs where the evidence merely showed "the possibility of past or future exchanges without

16   any indication of when, or whether the past or future exchanges actually occurred").  For example,

17   one document reflected a discussion between Yasuhiko Oota of Panasonic and Akiko Fukuda of

18   TSST regarding an "end-of-year party."  *See* McShane Decl., Ex. 43 (Ex. 1550).  There is no

19   indication that this "end-of-year party" was anything but a social gathering, something plainly not

20   barred by the antitrust laws.  Moreover, the document does not indicate that the party actually

21   occurred, and it certainly contains no references to anything discussed at such a party.  *See*

22   McShane Decl., Ex. 3 (Suzuki Dep. at 176:20-23) (testifying he did not know whether any such

23   party occurred); McShane Decl., Ex. 44 (Hiraoka Dep. at 32:19-22) (testifying that he did not

24   recall attending any party); *see also* McShane Decl., Ex. 45 (Ex. 1921); McShane Decl., Ex. 46

25   (Suzuki Dep. at 154:9-16) (noting that it was unclear whether the meeting mentioned in Ex. 1916

26   actually occurred); McShane Decl., Ex. 47 (Suzuki Dep. at 89:24-90:8) (noting that, while Ex.

27   1906 mentioned an information exchange, it did not say whether the exchange even occurred).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1    Other documents submitted by Plaintiffs indicate that competitive information was often

2 obtained from sources other than TSST's competitors, including ODD customers and survey

3 companies like TSR.  *See Sun Microsystems*, 608 F. Supp. 2d at 1193 (shifting summary burden

4 back to plaintiffs where, among other things, the documents showed that "the defendants' OEM

5 customers provided [defendant's] pricing information—which is perfectly legal").  The ODD

6 industry is remarkably transparent, and there are numerous sources of information that inform

7 suppliers' and customers' business decisions.  *See, e.g.*, McShane Decl., Ex. 48 (Expert Report of

8 Kevin Murphy at Appendix D) (collecting evidence of customers sharing information with

9 suppliers); McShane Decl., Ex. 49 (Yambao Dep. at 67:14-68:9); McShane Decl., Ex. 50 (Rao

10 Dep. at 193:1-21).  Thus, documents where the source of the competitive information is not TSST

11 or is not apparent on its face cannot be interpreted as evidence of conspiratorial conduct.  *See Sun*

12 *Microsystems*, 608 F. Supp. 2d at 1193; *see also, e.g.*, McShane Decl., Ex. 51 (Suzuki Dep. at

13 113:21-114:5) (testifying that such "high level" information in Ex. 1912 could be obtained from

14 "survey companies and parts manufacturers"); McShane Decl., Ex. 52 (Suzuki Dep. at 162:6-22)

15 (noting that information in Ex. 1917 could have been obtained from customers).

16    TSST's limited participation in the ODD market further undermines any inference that it

17 entered into a wide-ranging conspiracy that is alleged to have spanned from 2003 through 2009.

18 TSST actively participated in the ODD business only between April 2004 and early 2006.  *See*

19 McShane Decl., Ex. 6 (TSST's Objs. and Resps. to IPPs' Fourth Set of Interrogs. at 7, Sept. 19,

20 2016).  TSST never obtained significant market share during this period.  Between early 2006 and

21 December 2007, TSST's only sales outside of Japan were "legacy sales" made pursuant to

22 preexisting contracts or to preexisting customers.  *See* McShane Decl., Ex. 53 (Ex. 1235 at T-

23 ODD-00002952).  TSST made its final sale in early 2008.  Since early 2008, TSST's only

24 functions have been limited to engineering, technical support, and quality assurance for certain of

25 TSST's legacy customers in Japan.  *See* McShane Decl., Ex. 6 (TSST's Objs. and Resps. to IPPs'

26 Fourth Set of Interrogs. at 8, Sept. 19, 2016).

27    Where, as here, an antitrust plaintiff relies purely on circumstantial evidence at summary

28 judgment, he or she "must present evidence 'that tends to exclude the possibility' that the alleged

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1    conspirators acted independently." *Matsushita*, 475 U.S. at 588 (citing *Monsanto*, 465 U.S. at

2    764).  None of Plaintiffs' proffered evidence meets that standard or reflects anything more than

3    legitimate—or even procompetitive—business conduct.  The burden is on Plaintiffs to supply

4    specific evidence sufficient to support an inference of conspiratorial conduct as to *each* distinct

5    entity, and their inability to do so is a "fundamental flaw" worthy of summary judgment.  *See Sun*

6    *Microsystems*, 608 F. Supp. 2d at 1194.

7        **B.    Plaintiffs Cannot Establish Vicarious Liability Of Toshiba Corp. Or TSST For**
              **The Acts Of A Separate And Independent Entity**

8

9            Attempts to assert vicarious liability only appeared last year, more than six years after this

10   litigation began.  Until last year's amended complaints, Plaintiffs' entire focus had been on

11   TSSTK, the Korean entity that participated in Dell and HP procurement events and sold ODDs

12   throughout the relevant period.  However, when TSSTK's Foreign Representative filed a Chapter

13   15 petition in the Delaware Bankruptcy Court seeking recognition of rehabilitation proceedings

14   against TSSTK in Korea, *see* Ch. 15 Pet. for Recognition of a Foreign Proceeding, No. 16-bk-

15   11602, Dkt. 1 (D. Del. July 5, 2016), IPPs and HP scrambled to add allegations about TAIS's,

16   Toshiba Corp.'s, and TSST's relationship with TSSTK and purported "vicarious liability" for

17   TSSTK's conduct.  IPPs' Sixth Am. Compl. ¶¶ 215-22, ECF. No. 2005; HP Second Am. Compl.

18   at ¶¶ 156-62, No. 3:13-cv-05370-RS, ECF No. 101.  Only after those amendments did Plaintiffs

19   depose TAIS, Toshiba Corp., and TSST pursuant to Rule 30(b)(6).  No other employees were

20   deposed.

21           Plaintiffs' attempt to salvage their claims against the now-bankrupt TSSTK through hasty

22   assertions of "alter ego" and "vicarious liability" are insufficient.  As described below, there is no

23   genuine issue of triable fact as to Toshiba Corp. or TSST's vicarious liability.

24           **1.    Legal Standard Governing Vicarious Liability**

25           "It is a general principle of corporate law deeply 'ingrained in our economic and legal

26   systems' that a parent corporation (so-called because of control through ownership of another

27   corporation's stock) is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524

28   U.S. 51, 61 (1998).  In fact, the independence of a subsidiary from a parent corporation "is to be

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

presumed" by courts.  *See California v. NRG Energy, Inc*., 391 F.3d 1011, 1024 (9th Cir. 2004), rev'd on other grounds by *Powerex Corp. v. Reliant Energy Servs., Inc*., 521 U.S. 224 (2007).  The presumed separateness of independent corporate entities can only be overcome if specific facts are established to overturn that presumption.

*Alter-Ego Liability*.  This theory requires that one company is a mere shell of, and under the complete control of, the other.  Alter-ego liability is a "rare exception" that should be applied only in "exceptional circumstances," such as when "corporate separateness is illusory."  *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).  Plaintiffs must show that:  "(1) there is such unity of interest and ownership that the separate personalities of the two entities no longer exist; and (2) failure to disregard their separate identities would result in fraud or injustice."  *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (quotation omitted).

*Agency Liability*.  This theory is equally stringent.  A Plaintiff must show:  (1) that there was a manifestation by the principal that the agent would act on its behalf; (2) the agent's acceptance or consent to act on the principal's behalf; and (3) that it was understood that the principal would be in control of the agent's undertaking on its behalf.  *E. & J. Gallo Winery v. EnCana Energy Servs., Inc*., No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *6, (E.D. Cal. May 27, 2008); Restatement (Third) of Agency § 1.01 (2006)).  Agency liability applies only if the parent company moved beyond establishing general policy and direction for the subsidiary and instead took over performance of the subsidiary's day-to-day operations.  *E. & J. Gallo Winery*, 2008 WL 2220396, at *11 (quotation omitted).  Ownership of stock, supervision of "finance and capital budget decisions," setting of general policies and procedures, and appointing directors are insufficient to establish an agency relationship between parent and subsidiary.  *Id.* at *10 (citing *Bestfoods*, 524 U.S. at 72).  Rather, Plaintiffs must prove that "the parent company [had] the right to substantially control its subsidiary's activities."  *Williams*, 851 F.3d at 1024–25.

**2.      Toshiba Corp. Cannot Be Held Vicariously Liable For The Conduct Of TSST Or TSSTK As A Matter Of Law**

**a.      TSST Is Not The Alter Ego Of Toshiba Corp., Nor Did An Agency Relationship Exist Between The Two Entities**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1    At no time during their existence was there a "unity of interest" between Toshiba Corp. and

2    TSST such that their separate corporate personalities no longer existed.  None of the "critical

3    facts" which might otherwise support a finding of alter-ego liability such as inadequate

4    capitalization, commingling of assets, or disregarding of corporate formalities are present.  *See*

5    *Katzir's*, 394 F.3d at 1149 (quotation omitted).

6    The record clearly establishes that Toshiba Corp. and TSST operated as separate entities

7    and observed corporate formalities.  Toshiba Corp. formed TSST as an independent entity to

8    function autonomously from Toshiba Corp.  TSST held its own board meetings and maintained

9    separate corporate records.  McShane Decl., Ex. 3 (Suzuki Dep. at 235:13-21).  Toshiba Corp. did

10   not give performance reviews of TSST employees.  McShane Decl., Ex. 2 (Morris Dep. at 51:6-

11   52:2).  Directors and officers of Toshiba Corp. have never been directors or officers of TSST.

12   McShane Decl., Ex. 3 (Suzuki *Dep.* at 236:8-19).

13   *See* McShane Decl.,

14   Ex. 1 (Ex. 1229 at T-ODD-00000197).  Toshiba Corp. also maintained financial independence

15   from TSST.  It provided only one loan to TSST that TSST repaid within a year, and did not rely on

16   TSST for revenue production.  *See* McShane Decl., Ex. 2 (Morris Dep. at 54:3-10, 70:22-71:4).

17   Nevertheless, IPPs and HP make various unfounded or irrelevant allegations, including that

18   "TSST's website illustrates the relationship as 'Samsung + Toshiba => TSST'"; "Toshiba and

19   Samsung set the prices for its products that TSST was obliged to pay"; "TSST was also required to

20   apply the human resources policies in effect at Samsung and Toshiba to the transferred

21   employees"; "Toshiba owned 51% of the issued shares and voting rights of TSST"; and "TSST

22   was required to use the brand names 'Toshiba Samsung,' 'Toshiba,' or 'Samsung' for its

23   products."  *See* IPPs' Sixth Am. Compl. ¶¶ 219-21, ECF. No. 2005; HP Second Am. Compl. ¶¶

24   159-62, No. 3:13-cv-05370-RS, ECF No. 101.  None of these allegations come close to meeting

25   the required standard.

26   First, many of these statements are simply false.  For instance, Toshiba Corp. was never

27   consulted by TSST as to what prices TSST would offer, (McShane Decl., Ex. 3 (Suzuki Dep.

28   242:21-243:8)), and Toshiba Corp. neither paid nor had any say in the bonuses given to TSST

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   employees, and did not give performance reviews of TSST employees, (McShane Ex. 2 (Morris

2   Dep. at 51:6-52:2)).  Even if true, these alleged facts are not enough to prove alter ego.  The mere

3   fact of a parent-subsidiary relationship between two corporations does not alone make one liable

4   for the acts of its affiliate.  *See Bestfoods*, 524 U.S. at 61 (quotation omitted); *see also Rachel v.*

5   *Banana Republic, Inc.*, No. C-85-3786-MPH, 1985 WL 26030, at *7 (N.D. Cal. Nov. 26, 1985)

6   (explaining that "[s]tock ownership alone is not enough" to hold a parent corporation liable for the

7   acts of its subsidiary), aff'd in part, rev'd in part, 831 F.2d 1503 (9th Cir. 1987).  And the

8   interchangeable use of names and logos "on letterhead, business cards, contracts and invoices" has

9   been held insufficient to establish alter-ego liability.  *Rainbow Sandals, Inc. v. Liberty Mut. Ins.*

10  *Co*., SACV 14-01665-JLS (DFMx), 2015 WL 12697655, at *3 (C.D. Cal. Mar. 11, 2015); *Yoder v.*

11  *Honeywell, Inc.*, 104 F.3d 1215, 1222 (10th Cir. 1997).

12          Nor is there any evidence of a principal-agent relationship between Toshiba Corp. and

13  TSST.  Plaintiffs' complaints make only conclusory allegations without any specific facts.  *See,*

14  *e.g.*, HP Second Am. Compl. ¶ 52, No. 3:13-cv-05370-RS, ECF No. 101.  Such allegations are not

15  enough.  *See E. & J. Gallo Winery*, 2008 WL 2220396, at *6 (requiring manifestation and

16  acceptance that the agent would act on the principal's behalf).  Plaintiffs have no evidence that

17  Toshiba Corp. manifested to TSST that TSST would act on its behalf, or that TSST accepted such

18  an arrangement, and no witness testified that any such delegation occurred.  Critically, witnesses

19  who testified on the matter stated that Toshiba Corp. *lacked* control over TSST's business affairs.

20  *See, e.g.*, McShane Decl., Ex. 3 (Suzuki Dep. at 242:2-243:8) (testifying Toshiba Corp. was never

21  involved or even consulted about TSST or TSSTK pricing or bidding decisions).  Accordingly,

22  there is no triable issue regarding Toshiba Corp.'s vicarious liability for TSST.

23          **b.      TSSTK Was Not The Alter Ego Or Agent Of Toshiba Corp.**

24          At no time during TSSTK's existence was there a "unity of interest" between TSSTK and

25  Toshiba Corp. such that their separate corporate identities no longer existed.  To the contrary,

26  Toshiba Corp. and TSSTK had almost no connection except for on paper.  All of TSSTK's initial

27  employees were transferred from Samsung—Toshiba Corp. never transferred a single employee to

28  TSSTK, or had authority or responsibility for hiring, managing, or evaluating TSSTK employees.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1    McShane Decl., Ex. 30 (Yun 30(b)(6) Dep. (TSSTK), at 112:17-113:11); McShane Decl., Ex. 2

2    (Morris Dep. (TSST), at 49:25-50:12); McShane Decl., Ex. 3 (Suzuki Dep. (Toshiba Corp.) at

3    240:16-19).  Toshiba Corp. also did not sponsor visas for any TSSTK employees dispatched to the

4    United States.  McShane Decl., Ex. 30 (Yun 30(b)(6) Dep. at 84:20-85:12, 129:21-130:4) (stating

5    that "only" Samsung Semiconductor, Inc. sponsored U.S. visas for TSSTK employees).  Nor did

6    Toshiba Corp. have any involvement in the sale or distribution of TSSTK's products.  McShane

7    Decl., Ex. 30 (Yun 30(b)(6) Dep. at 41:3-9) (confirming that "because TSSTK had no foreign

8    offices, it had to rely on the global network of Samsung Electronics for ODD sales.").

9          The record is also devoid of the "critical facts" which might otherwise support a finding of

10   alter-ego or agency liability such as inadequate capitalization, commingling of assets, or

11   disregarding corporate formalities.  *See Katzir's*, 394 F.3d at 1149.  Rather, Toshiba Corp.

12   maintained financial independence from TSSTK, never used TSSTK's assets for its own purposes,

13   did not rely on TSSTK for revenue production, and never made or received any loans from

14   TSSTK.  McShane Decl., Ex. 2 (Morris Dep. at 54:23-25; 70:12-19).  TSSTK also maintained its

15   own corporate records separate from Toshiba Corp., and TSSTK never shared directors or officers

16   with Toshiba Corp.  *Id.* at 237:12-238:4.  Finally, unrebutted testimony confirms that Toshiba

17   Corp. had no control over, or even insight into, TSSTK's day-to-day activities.  *See, e.g.*, McShane

18   Decl., Ex. 3 (Suzuki Dep. at 242:2-243:8) (stating that Toshiba Corp. was "never" involved in or

19   "ever consulted by [TSSTK] as to what prices [TSSTK] would bid"); McShane Decl., Ex. 31 (D.

20   Kim Dep. (TSSTK) at 224:4-11) (testifying that he never sought approval for pricing from anyone

21   at Toshiba Corp.).  Summary judgment on this claim is therefore appropriate.

### 3.     TSST And TSSTK Were Separate Entities And Operated Independently From Each Other

24         TSST also cannot be vicariously liable for TSSTK's conduct.  While TSST and TSSTK

25   were both created by the BIA, they were separately incorporated entities with headquarters in

26   different countries (TSST in Kawasaki, Japan, and TSSTK in Suwon, Korea).  McShane Decl., Ex.

27   1 (Ex. 1229 at T-ODD-00000192-93).  While there were early hopes the companies might one day

28   work together, instead, TSST and TSSTK "operated very distinctly, separately."  McShane Decl.,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

Ex. 2 (Morris Dep. at 184:20-186:8).  TSST was staffed by Japanese employees seconded from Toshiba Corp., while TSSTK was staffed by Korean employees transferred by Samsung.  *Id.* Cultural differences caused tension and prevented successful coordination; TSSTK employees "had a very high or strong sense of rivalry against Japan," which made cross-management between the two companies "not possible."  McShane Decl., Ex. 3 (Suzuki Dep. at 239:21-240:15). Personnel hiring, management, reviews, and compensation were handled independently.  McShane Decl., Ex. 30 (Yun 30(b)(6) Dep. at 112:11-16, 119:18-120:2); McShane Decl., Ex. 3 (Suzuki Dep. at 102:5-18). ███████████████████████████████████████████████████████████ ███████ *see* McShane Decl., Ex. 30 (Yun 30(b)(6) Dep. at 30:4-13); McShane Decl., Ex. 2 (Morris Dep. at 61:1-7), tensions prevented any true integration.

The two companies had no involvement in each other's business or sales operations. McShane Decl., Ex. 3 (Suzuki Dep. at 239:1-7).  TSST and TSSTK independently developed their product roadmaps, and used different component suppliers to manufacture ODDs.  *Id.* at 240:23-241:3; McShane Decl., Ex. 2 (Morris Dep. at 185:21-186:11).  The pricing process was also completely separate—TSST had no involvement in TSSTK's pricing decisions and "never" participated or was consulted regarding TSSTK's ODD bidding.  McShane Decl., Ex. 3 (Suzuki Dep. 241:9-242:1); McShane Decl., Ex. 2 (Morris Dep. at 186:9-11).  Far from having the right to substantially control TSSTK's activities, the record shows that, during the short time that TSST remained active in the ODD industry, TSST and TSSTK ODD products actually competed. McShane Decl., Ex. 3 (Suzuki Dep. at 102:11-12).

Rather than actually prove control of TSSTK by TSST, Plaintiffs instead try to capitalize on the similarity in their names by ignoring their separate corporate status and lumping them together at every opportunity.  *See, e.g.*, IPPs' Sixth Am. Compl. ¶ 216, n.48, ECF. No. 2005; Acer's Second Am. Compl. ¶ 47, ECF No. 1361 ("Defendants Toshiba Samsung Storage Technology Corporation and TSST Korea are referred to individually and collectively herein as 'TSST.'").  One cannot avoid summary judgment by fabricating labels and ignoring corporate separateness.  Plaintiffs are required to prove the requisite control of TSSTK by TSST, and cannot do so.  *Cf. E. & J. Gallo Winery*, 2008 WL 2220396, at *10 ("Proof that the parent corporation

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS

1   appoints members to the subsidiary's board of directors or hires its officers is [] not sufficient to

2   establish a principal/agent relationship.") (citation omitted).

3   **V.      CONCLUSION**

4        Plaintiffs had ample opportunity to build cases against TAIS, Toshiba Corp., and TSST if

5   such evidence existed.  It does not.  Plaintiffs cannot now ignore these entities' corporate

6   separateness in the hopes that an undifferentiated showing of purportedly actionable conduct might

7   create "a picture of culpability greater than the sum of each entity's individual part in the matter."

8   *See Sun Microsystems*, 608 F. Supp. 2d at 1194.  Such a tactic is insufficient as a matter of law.

9   TAIS, Toshiba Corp., and TSST respectfully request that this Court grant their motion for

10  summary judgment.

11  Dated: June 30, 2017            Respectfully submitted,

12                              LATHAM & WATKINS LLP

13

14                              By: _____/s / Belinda S Lee_____

15                          Daniel M. Wall (Bar No. 102580)
                                 Belinda S Lee (Bar No. 199635)

16                          Brendan A. McShane (Bar No. 227501)
                           505 Montgomery Street, Suite 2000

17                         San Francisco, California 94111-6538
                         Telephone: +1.415.391.0600

18                         Facsimile: +1.415.395.8095

19                         *Counsel for Defendants Toshiba Corporation,*
                         *Toshiba America Information Systems, Inc., and*

20                         *Toshiba Samsung Storage Technology*
                         *Corporation*

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

TAIS, Toshiba Corp. and TSST's
Motion for Summary Judgment
CASE NO. 3:10-MD-2143 RS