UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION | Case No. 10-md-02143-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO STRIKE OR EXCLUDE EXPERT TESTIMONY**[1]<br><br>Re: Dkt. Nos. 2419, 2453, 2457, 2459 |

## INTRODUCTION

In addition to the dispositive motions filed in this matter, the parties have filed several motions to exclude or strike expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As with the Motion for Decertification of the Indirect Purchaser Plaintiff Class, these motions need not be adjudicated given the grant of summary judgment on the IPP and Circuit City and RadioShack actions. In any event, none of the experts' qualifications or methodologies lack the requisite reliability to be admitted under *Daubert*; instead, the parties' arguments go towards the weight to be accorded their opinions with only one exception.

## LEGAL STANDARD

Federal Rule of Evidence 702 tasks the district court with an important "gatekeeping role" in considering the testimony of expert witnesses. *Daubert*, 509 U.S. at 597. It provides that an expert witness

> by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier

---

[1] This is one of several orders issued contemporaneously addressing the dispositive motions in the *In re Optical Disk Drive Antitrust Litigation*, No. 10-md-02143. *See also* Summary of Rulings.

    of fact to understand the evidence or to determine a fact in issue;
 (b) the testimony is based on sufficient facts or data;
 (c) the testimony is the product of reliable principles and methods; and
 (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Accordingly, *Daubert* requires the trial judge to determine "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In making this determination, a trial judge may consider several factors, including "whether the scientific theory or technique can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," whether there is a "known or potential rate of error," and whether the theory or technique is "generally accept[ed]" within the relevant scientific community. *Id.* at 592–94. "Thus, trial judges are responsible for determining whether the knowledge of the expert, whether scientific, technical, or specialized, is based upon the application of reliable theories or techniques. The proponent of the testimony must establish admissibility by a preponderance of the evidence." *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1146 (N.D. Cal. 2003) (citing *Bourjaily v. United States*, 243 U.S. 171, 175–76 (1987)).

  The trial judge enjoys broad discretion in determining both how to assess reliability and whether it exists. *See Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 151–52 (1999). The court's focus at all times must be on the principles and methodology at issue, not the expert's conclusions. *See id.* at 152; *Daubert*, 509 U.S. at 595. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

## DISCUSSION

### I. IPPs' Expert Witnesses

#### A. Dr. Kenneth Flamm[2]

IPPs proffer the expert testimony of Dr. Flamm in support of their overcharge calculation

---

[2] The moving defendants are Samsung Electronics Co., Ltd.; BenQ Corporation; BenQ America Corp.; Toshiba Corporation; Toshiba Samsung Storage Technology Corporation; and Toshiba Samsung Storage Technology Corporation Korea. *See* Dkt. No. 2457.

2

as well as their pass-through theory.  Dr. Flamm's testimony was crucial to the IPPs' successful motion for class certification.  *See* Order Granting Renewed Mot. for Class Cert.  As in the past, Defendants' argue that the reliability of Dr. Flamm's direct overcharge opinion is based on an unreliable application of multiple regression analysis, and that his pass-through analysis is quantitatively and qualitatively unsupported and ignores record evidence.

With respect to Dr. Flamm's overcharge model, Defendants implicitly concede that his methodology (multiple regression analysis) is reliable in the abstract, and instead insist that his application of that method is unreliable here because of his use of certain variables and because his results are "nonsensical."  Dr. Flamm's report explains the bases for each of his analytical choices, and while open to attack on cross-examination, the report is not so fundamentally flawed as to render it unreliable.  *See, e.g.*, *In re High-Tech Employee Antitrust Litig.*, 289 F.R.D. 555, 580–82 (N.D. Cal. 2013) (denying *Daubert* motion challenging use of benchmarking regression analysis and certain control variables).  It is not surprising that the parties disagree on what variables should be entered into the overcharge calculation—but the methodology underlying that calculation, the multiple regression analysis, is sound.  *See Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 793 (6th Cir. 2002) (noting that regression analysis is a "generally accepted method[] for proving antitrust damages and citing cases).  Furthermore, Defendants' argument that Dr. Flamm's model is unreliable because it produces nonsensical results seeks to look beyond Dr. Flamm's principles and methodology, and instead to his conclusions, which is not the point of the inquiry.  *See Kumho Tire*, 526 U.S. at 152.

With respect to Dr. Flamm's pass-through analysis, Defendants argue that his theory is not supported by market facts or the record evidence.  These arguments again reiterate those already litigated at the class certification stage.  While Defendants are prevailing on their Motion for Summary Judgment that Dr. Flamm's theory was not supported by the record evidence as noted above, the theory itself is not unreliable and his method for measuring pass-through is not fundamentally flawed.  His hedonic regression analysis represents an acceptable method for calculating the pass-through overcharge, regardless of the IPPs inability to tie that calculation ultimately to sufficient evidence in this case.  *See* Order Granting Summary Judgment Against

United States District Court
Northern District of California

IPPs. For these reasons, Defendants' Motion to Strike the Testimony of Dr. Kenneth Flamm is denied.

### B. Dr. Luís Cabral[3]

Defendants also take issue with certain opinions of IPPs' expert witness Dr. Luís Cabral. They move to exclude (1) his opinion that defendants' conduct produced market-wide effects on the grounds that it lacks foundation in reliable facts or data and does not rest on reliable principles or methods, (2) his opinion that defendants participated in an industry-wide process of collusion on the basis that it rests on uncorroborated assumptions and faulty methodology, and (3) his opinion about the existence of a conspiracy as unreliable and improper because they attempt to substitute his judgment for the jury's.

Much of Defendants' briefing is dedicated to arguing that Dr. Cabral impermissibly opines as to the existence of a conspiracy and the intent of the alleged conspirators, which they contend is not the proper purview of an economic expert. As IPPs note, however, in complex antitrust matters such as this one, courts have allowed expert testimony "as to whether certain conduct is consistent with collusion or an entity or individual's self-interest." *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015); *see also In re Urethane Antitrust Litig.*, MDL No. 1616, 2010 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (allowing expert opinion that "particular events, assuming they occurred, are consistent with a conspiracy"). His opinion is admissible to identify and explain collusive conduct, but he may not offer opinions as to legal conclusions, such as whether or not a conspiracy existed.

Defendants properly take issue with Dr. Cabral's multi-market contact theory, or his theory that "collusion in one market extends to collusion in other markets where the same sellers interact." Simmons Decl. [Dkt. No. 2459-2] Ex. 1, at ¶ 146. They contend that this theory is neither grounded in sufficient facts and data, nor based on a reliable methodology. In opposition, IPPs do not contest that Dr. Cabral failed to identify any evidence of cross-market

---

[3] The moving defendants are Samsung Electronics Co., Ltd.; BenQ Corporation; BenQ America Corp.; Toshiba Corporation; Toshiba Samsung Storage Technology Corporation; and Toshiba Samsung Storage Technology Corporation Korea. *See* Dkt. No. 2459.

4

1   communications, but instead argue that Defendants' guilty pleas with respect to other products are
2   sufficient evidence of multi-market collusion, pointing to Defendants' guilty pleas in other cases
3   for other products (such as DRAM, CRTs, LIBs, and LCDs).  Defendants' activity with respect to
4   other products and guilty pleas or proceedings in other cases, however, has no bearing on this
5   litigation absent some evidence to the contrary, such as emails suggesting cross-market
6   punishment among firms, or other cross-market communications.  Because Dr. Cabral's multi-
7   market contact theory is not grounded in admissible evidence, he would not be permitted to opine
8   on this matter.  For these reasons, the motion to exclude his testimony is granted in part and
9   denied in part.

10   **II.     Defendants' Expert Witness Dr. Edward Snyder**[4]

11   IPPs move partially to exclude certain opinions and testimony of Defendants' expert
12   witness Dr. Edward Snyder.  They argue that Dr. Snyder uses improper target price "benchmarks"
13   to measure the alleged overcharge, his operating margin analysis is unreliable because it is based
14   on incomplete and misleading data, his opinions are the product of speculation rather than
15   reasoned analysis, and his testimony contradicts his own report.

16   IPPs' arguments attacking Dr. Snyder's report are similar to those Defendants use in
17   attacking Dr. Flamm's:  while IPPs contest Dr. Snyder's use of certain data inputs, they do not
18   contest the reliability of the methodology underlying his calculations, the "difference-in-
19   differences" technique.  IPPs do not point to any support for their contention that Dr. Snyder's use
20   of target prices as benchmarks is economically improper or unreliable, nor has it been shown that
21   such numbers were "tainted" by collusion, as evidence of collusion is a key issue in the motions
22   for summary judgment.  Nonetheless, this argument contests the appropriateness of Dr. Snyder's
23   chosen reference point, and not his methodology.  IPPs' challenge to Dr. Snyder's use of certain
24   data and assumptions also fails.  Because a perfect record with all of the relevant financial data
25   does not exist here and seldom does, Dr. Snyder generalizes from the data that is available and
26   discloses the assumptions he makes in doing so.  That IPPs would use different data and make

---

[4] IPPs move partially to exclude certain opinions and testimony of Edward Snyder.  *See* Dkt. No. 2453.

different assumptions is no surprise, but extrapolation from incomplete data is one of the tasks most commonly called upon for experts to do, and indeed it is exactly what IPPs ask of their own experts. Dr. Snyder's operating margin analysis, which applies the cost markup method, is a reliable methodology. *See In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *9 (N.D. Cal. Dec. 23, 2010) (noting that the "cost-margin analysis" approach is "well-established" and "find[s] support in the economic literature"). While IPPs also characterize Dr. Snyder's opinions as speculative, he draws reasonable inferences from the financial data, and IPPs offer no evidence that his opinions are in fact incorrect. These criticisms go to the weight of Dr. Snyder's opinions, but not their admissibility. IPPs would be free to attack his decisions and impeach him with his own "contradictory" testimony on cross-examination, but their motion to exclude his testimony is denied.

### III.   Circuit City and RadioShack Trustees' Expert Witnesses[5]

#### A. Dr. Adam K. Fontecchio

The trustees of Circuit City and RadioShack offer the testimony of Dr. Adam K. Fontecchio, who provides his expertise "on optical disc drive types, operation, manufacturing, and the similarity of products among manufacturers and products." Simmons Decl. [Dkt. No. 2419–2] Ex. 1, at ¶ 10. Defendants challenge that the products he uses in his selection of "Other Products" to analyze interchangeability are unreliable because of his "random" method of selection. His selection method appears somewhat questionable, but not altogether inappropriate for the task at hand, which was to analyze interchangeability across as many drives in the "Other Products" category as he could. There is no standard for selecting products in this context; Defendants do not point to any more reliable method for selecting products, nor do they dispute that he analyzed a wide breadth of products. Dr. Frankel's own admissions at deposition and his conclusions provide Defendants with ample impeachment material for defendants to use at cross-examination, but Defendants have failed to show why his opinion is so unreliable as to be altogether

---

[5] The moving defendants are Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Toshiba Corporation; Toshiba America Information Systems, Inc.; Toshiba Samsung Storage Technology Corporation; and Toshiba Samsung Storage Technology Korea Corporation. *See* Dkt. No. 2419.

1  inadmissible.

### B. Dr. James T. McClave

Defendants also challenge the testimony of Dr. McClave on the basis that he inappropriately relied on Dr. Fontecchio's opinion and failed to consider whether his data on drives in the "Other Products" category was a representative sample. As with Dr. Flamm, however, Defendants take issue with the data and assumptions underlying Dr. McClave's assumptions, but his calculation—based on regression analysis—is nonetheless reliable. While Defendants may disagree with Dr. McClave's assumption that standalone and computer optical disc drives are interchangeable with those in "Other Products," this issue is not appropriate for resolution under *Daubert*, but instead goes to the substantive merit of a key aspect of the Circuit City and RadioShack trustees' claims. Defendants' arguments that he relies on unrepresentative data are also more suited to undermining his credibility on cross examination. Again, while Dr. McClave would perhaps face an uphill battle defending his analytical decisions at trial, the methodology underpinning his calculations is not wholly unreliable under *Daubert*.

### C. Dr. Alan S. Frankel

Defendants move to strike Dr. Frankel's testimony, offered in the Circuit City and RadioShack cases, as speculative. While it seems clear that Dr. Frankel's opening report was subject to certain weaknesses, he addresses these weaknesses through his rebuttal report. He also admits that his report is based on various assumptions. These assumptions, however, are not fatal to the reliability of his opinion—while they may open his report to ample attack on cross-examination, they do not render the methodology of his calculation itself unsound. Dr. Frankel's opinion falls under the "[s]haky," but nonetheless "admissible" category. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. at 152.

### D. Dr. John B. Hayes

Finally, Defendants move to strike the expert testimony of Dr. Hayes, who the Circuit City and RadioShack trustees offer as a liability expert. While his opinion focuses only on evidence pertaining to ODDs in computers and not on "Other Products," he concludes that the conspiracy extended to the broader industry. In their characterization of his opinion, Defendants take issue

with the fact that Dr. Hayes does not include "Other Products" in his analysis, but they do not dispute that what he does look at is relevant and based on record evidence. Defendants again seek to look beyond the expert's principles and methodology, and instead to his conclusions, which is not the focus of the *Daubert* inquiry. *See Kumho Tire*, 526 U.S. at 152. For these reasons, defendants' motion to strike Dr. Hayes' testimony is denied.

## CONCLUSION

For the reasons stated above, the motions to exclude or strike the testimony of expert witnesses Dr. Flamm, Dr. Snyder, Dr. Fontecchio, Dr. McClave, Dr. Frankel, and Dr. Hayes are denied. The motion to exclude the testimony of expert witness Dr. Cabral is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: 12/18/17

_____
RICHARD SEEBORG
United States District Judge