David M. Stern (State Bar No. 67697)
Michael L. Tuchin (State Bar No. 150375)
Robert J. Pfister (State Bar No. 241370)
Jonathan M. Weiss (State Bar No. 281217)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:   310-407-4000
Facsimile:    310-407-9090
Email:         dstern@ktbslaw.com
                   mtuchin@ktbslaw.com
                   rpfister@ktbslaw.com
                   jweiss@ktbslaw.com

Steven T. Gubner (State Bar No. 156593)
Jason B. Komorsky (State Bar No. 155677)
Michael W. Davis (State Bar No. 274126)
BRUTZKUS GUBNER ROZANSKY SEROR WEBER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: 818-827-9000
Facsimile: 818-827-9099
Email:         sgubner@brutzkusgubner.com
                   jkomorsky@brutzkusgubner.com
                   mdavis@brutzkusgubner.com

*Attorneys for Plaintiffs Alfred H. Siegel, as Trustee for the Circuit City Stores, Inc. Liquidating Trust and Peter Kravitz, as Trustee for the RSH Liquidating Trust*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION | Master File No.:  3:10-md-2143 RS |
| | Case Numbers:  3:15-cv-03248-RS<br>3:15-cv-06325-RS |
| This document relates to:<br><br>*Siegel v. Sony Corporation, et al.*<br>No. 3:15-cv-03248-RS<br><br>*Kravitz v. Sony Corporation, et al.*<br>No. 3:15-cv-06325-RS | **DECLARATION OF ROBERT J. PFISTER IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AGAINST CIRCUIT CITY TRUST AND RADIOSHACK TRUST**<br><br>Date:         September 26, 2017<br>Time:         9:00 a.m.<br>Location:    Courtroom 3, 17th Floor<br>Judge:        Honorable Richard Seeborg |

**PUBLIC VERSION OF DOCUMENT PREVIOUSLY FILED UNDER SEAL PURSUANT TO COURT ORDERS [DKT. NOS. 2721 & 2773]**

I, Robert J. Pfister, declare as follows:

1. I am a member of the bar of this Court and am one of the attorneys representing Alfred H. Siegel, as trustee for the Circuit City Stores, Inc. Liquidating Trust ("Circuit City"), and Peter Kravitz, as trustee for the RSH Liquidating Trust ("RadioShack") in the above-captioned litigation. This declaration is submitted in opposition to *Defendants' Joint Motion for Summary Judgment Against Circuit City Trust and RadioShack Trust* [Docket No. 2346] (the "Motion"). Capitalized terms used but not otherwise defined herein have the meanings ascribed in the concurrently-filed *Trustees' Opposition to Defendants' Joint Motion for Summary Judgment Against Circuit City Trust and RadioShack Trust* (the "Opposition"). This declaration is based on my own personal knowledge, and if called as a witness, I could and would testify competently to the matters set forth herein.

*The Evolution of Defendants' Arguments Concerning Player and Console Drives*

2. The Motion asserts that there is "undisputed record evidence that Defendants submitted in opposition to [the] Motion to Amend" that "contradicts" the Trustees' claims for damages based on drives incorporated into players and consoles. Mot. at 16:25–26. That is not accurate or complete.

3. In point of fact, defendants' arguments concerning drives incorporated into players and consoles have shifted throughout this case – starting first as an argument that the Court's prior rulings foreclosed damages claims based on such drives (not true, as the Court explained in the Motion to Amend Order); then shifting to a technological claim that the optical disc drives in players and consoles are fundamentally different in kind from their counterparts that are sold as standalone and computer drives (not true, as the Trustees' technology expert, Dr. Fontecchio, will explain to the jury); and now presented as an economic argument that the Trustees' damages expert retracted his damages calculations for such drives (not true, as set out in the Trustees' Opposition to the Motion and the concurrently-filed declaration of the Trustees' damages expert). The shifting nature of defendants' arguments are relevant because they belie the notion that that

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

there is any kind of "undisputed record evidence," Mot. at 16:25–26, on this point. I have thus set out below the pertinent history at some length.

4. Shortly after the Trustees' pleadings were filed, the defendants asserted that the Trustees were alleging a conspiracy to fix the end prices of products containing optical disc drives, and that the Court had already ruled in connection with motions to dismiss the DPP class complaints that such allegations were deficient as a matter of law. *See* Letter from John F. Cove dated March 8, 2016 (the "Cove Letter"). A true and correct copy of the Cove Letter is attached hereto as **Exhibit 1**. In response, the Trustees clarified that the only price-fixing conspiracy being alleged was a conspiracy to fix the prices of optical disc drives themselves, and set out how the Court's ruling on sufficiency of the DPP class's amended complaint found that essentially identical allegations from the DPP class were sufficient and permitted those class plaintiffs to pursue damages for price-fixed drives that were ultimately incorporated into players and consoles *See* Letter from Robert J. Pfister dated April 1, 2016 (the "Response to the Cove Letter"). A true and correct copy of the Response to the Cove Letter is attached hereto as **Exhibit 2**. Defendants never replied to the Response to the Cove Letter.

5. After the Court initially construed the Trustees' pleadings to exclude damages for price-fixed optical disc drives included in players and consoles, the Trustees filed their Motion to Amend. The declaration in support of the Motion to Amend attached, *inter alia*, the Cove Letter and the Response to the Cove Letter, and demonstrated that defendants have been aware all along (as evidenced by such correspondence, as well as by their discovery requests) that the Trustees were in fact seeking damages for price-fixed player/console drives. The Motion to Amend observed that the Court had previously upheld the legal sufficiency of the DPP class's claims for damages for price-fixed player/console drives, and further set out how the DPP class settlements (the first tranche of which the Trustees participated in, the second tranche of which the Trustees opted out of) provided compensation for class members' purchases of price-fixed player/console drives.

6.      Days after the Trustees filed their Motion to Amend, counsel for certain defendants again wrote to the Trustees' counsel. *See* Letter from Steven Holtzman dated November 25, 2016 (the "Holtzman Letter"). A true and correct copy of the Holtzman Letter is attached hereto as **Exhibit 3**. This time, rather than basing their challenge on the Court's prior rulings (as the Cove Letter had), defendants introduced the argument that there is a fundamental technological distinction between optical disc drives ultimately incorporated into computers (referred to by shorthand as "computer drives") and optical disc drives incorporated into players and consoles ("player/console drives"). The Holtzman Letter attached the *Declaration of Masamichi Kondo* (the "Kondo Declaration"), a document submitted years before in connection with a discovery dispute, as putative support for such a fundamental technological distinction. In response, the Trustees explained why the Kondo Declaration did not, in fact, show the existence of a fundamental categorical distinction between standalone and computer drives, on the one hand, and player and console drives, on the other, and was extremely limited and narrow. *See* Letter from Robert J. Pfister dated December 2, 2016 (the "Response to the Holtzman Letter"). A true and correct copy of the Response to the Holtzman Letter is attached hereto as **Exhibit 4**. Once again, defendants never replied to the Response to the Holtzman Letter.

7.      The Court granted the Motion to Amend. The Court referenced the Cove Letter and the Response to the Cove Letter, *see* Motion to Amend Order at 2:1–5 ("Plaintiffs explain that they have always intended their claims to include" player/console drives and they "present evidence of communications among counsel showing that defendants have been on notice of plaintiffs' position since these two 'direct action' complaints were filed."), and further observed that "[t]here is … no doubt that" the DPP class's amended complaint "encompassed" player/console drives "and that the adequacy of the pleading as to those products was upheld when the motion to dismiss was denied," *id*. at 2:26–3:2. The Court explained that "[t]he crux of the parties' dispute appears to involve technical and factual questions" regarding the differences, if any, between standalone and computer drives, on the one hand, and player and console drives, on

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  the other, *id*. at 2:23–24, and that defendants are free to raise those technical and factual issues at

2  summary judgment or trial, *see id*. at 3:10–13.

3        8.      At the expert discovery stage, the defendants attempted to proffer evidence to

4  support their assertion that, as a technical and engineering matter, player/console drives are

5  fundamentally different in kind from standalone and computer drives. That is the topic that

6  defense expert Dr. Masud Mansuripur was retained to address. As explained in the Opposition,

7  however, Dr. Mansuripur's testimony was less technical/engineering than linguistic, as the very

8  same drive produced on the very same assembly line by the very same manufacturer is (according

9  to Dr. Mansuripur) an "optical disc drive" if it is sold as a standalone drive or incorporated into a

10  computer, but is merely a "box with optical functionality" if placed in a DVD or Blu-Ray player or

11  a game console such as the Sony PlayStation. A true and correct copy of Dr. Mansuripur's

12  complete deposition transcript is attached hereto as **Exhibit 5**. At deposition, Dr. Mansuripur

13  conceded that the term "optical functionality" was a bespoke term invented for this litigation, and

14  that "box with optical functionality" is not a term engineers or scientists use to refer to the optical

15  disc drives found in players and game consoles. *See, e.g.*, Ex. 5 at 34:18–35:7, 67:24–68:6;

16  69:20–70:3; 72:22–24.

17        9.      Defendants' Motion makes no reference to Dr. Mansuripur, and instead pivots to a

18  new argument for why the Trustees cannot recover damages for price-fixed player/console drives:

19  an economic argument that the Trustees' damages expert retracted his damages calculations for

20  such drives. That is not true, as set out in the Trustees' Opposition and the concurrently-filed

21  Frankel Declaration. There are, however, shades of the older technical/engineering argument in

22  the Motion, in the form of exhibits attached to the Gelott Declaration. These exhibits include

23  some discovery responses, the old Kondo Declaration, and some snippets of deposition testimony.

24  As required by the Local Rules, the Trustees' evidentiary objections to the consideration of these

25  exhibits is contained in the body of the Opposition. *See* Local Rule 7-3(a). One citation therein is

26  to excerpts of the deposition testimony of Darlo Perez attached hereto as **Exhibit 6**, which

27  Defendants quote incompletely, giving an entirely inaccurate picture of how he testified.

28

4                     PFISTER DECLARATION
                          Case No. 3:10-md-2143

*Defendants' Claims About Discovery*

10. The Motion implies that the Trustees have somehow "sandbagged" defendants in expert discovery by including new expert conclusions in their rebuttal reports. *See, e.g.*, Mot. at 5:22–26 ("Tellingly, in their opening reports, not one of these experts addressed the critical questions whether there is evidence of a collusive overcharge extending to inter- and intra-defendant sales or whether about 75 percent of CC/RS's damages claims are comprised of products that do not incorporate allegedly price-fixed ODDs." (emphasis omitted)). Defendants are incorrect and incomplete.

11. Circuit City and RadioShack have jointly retained four distinguished expert witnesses in this matter: John B. Hayes, Adam K. Fontecchio, James T. McClave, and Alan S. Frankel. As required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, each of these witnesses prepared a detailed written report setting out a complete statement of all opinions the witness will express and the basis and reasons for them, the facts and data considered by the witness in forming those opinions, all exhibits that will be used to summarize or support those opinions, the witness's qualifications, and the other matters required by the rules.

12. Under the *Case Management Order* [Docket No. 2211] (the "CMO"), opening reports were due February 1, 2017. On that date, Circuit City and RadioShack timely served four opening expert reports. A true and correct copy of Dr. Hayes's opening expert report is attached hereto as **Exhibit 7**. A true and correct copy of Dr. Fontecchio's opening expert report is attached hereto as **Exhibit 8**. A true and correct copy of Dr. McClave's opening expert report is attached hereto as **Exhibit 9**. A true and correct copy of Dr. Frankel's opening expert report is attached hereto as **Exhibit 10**.

13. Following the submission of opening expert reports, each of these expert witnesses was deposed at length by the defendants. At no point was any deposition cut short or curtailed; rather, all defendants had a full and fair opportunity to examine these witnesses – and opportunity of which they availed themselves. A true and correct copy of Dr. Hayes's opening expert deposition transcript is attached hereto as **Exhibit 11**. A true and correct copy of Dr. Fontecchio's

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Case No. 3:10-md-2143

opening expert deposition transcript is attached hereto as **Exhibit 12**.  A true and correct copy of Dr. McClave's opening expert deposition transcript is attached hereto as **Exhibit 13**.  A true and correct copy of Dr. Frankel's opening expert deposition transcript is attached hereto as **Exhibit 14**.

14. Defendants' expert reports were served on April 3, 2017.  In their reports and in subsequent deposition testimony, defendants' expert witnesses offered certain critiques of the work performed by Dr. Hayes, Dr. Fontecchio, Dr. McClave, and Dr. Frankel.  To address these criticisms, each of the Circuit City and RadioShack expert witnesses prepared rebuttal expert reports – as specifically permitted by the operative scheduling order.  *See* CMO § B (setting May 12, 2017 as the "[l]ast day for plaintiffs to serve rebuttal expert reports on the merits").  A true and correct copy of Dr. Hayes's rebuttal expert report is attached hereto as **Exhibit 15**.  A true and correct copy of Dr. Fontecchio's rebuttal expert report is attached hereto as **Exhibit 16**.  A true and correct copy of Dr. McClave's rebuttal expert report is attached hereto as **Exhibit 17**.  A true and correct copy of Dr. Frankel's rebuttal expert report is attached hereto as **Exhibit 18**.

15. Following the submission of these rebuttal expert reports, each of these expert witnesses was *again* deposed by the defendants.  Circuit City and RadioShack did not object to the further depositions, and did not try to cut short or curtail defendants' examinations.  A true and correct copy of Dr. Hayes's rebuttal expert deposition transcript is attached hereto as **Exhibit 19**.  A true and correct copy of Dr. Fontecchio's rebuttal expert deposition transcript is attached hereto as **Exhibit 20**.  A true and correct copy of Dr. McClave's rebuttal expert deposition transcript is attached hereto as **Exhibit 21**.  A true and correct copy of Dr. Frankel's rebuttal expert deposition transcript is attached hereto as **Exhibit 22**.

16. The relevance of inter- and intra-defendant sales transactions was highlighted by Dr. Hayes in his initial report.  *See, e.g.*, Ex. 7 at § VII.F.1 ("[T]here were lots of inter-defendant sales.  This facilitated collusion because it provided multiple opportunities to coordinate across sellers on prices and output and because it enabled transfers between co-conspirators that could be used to redistribute profits as needed to maintain the collusive agreement."); *see also id.* at §§ VII.E n. 299, VII.H.2, Exhs. 6–8n (setting forth relevant inter- and intra-defendant sales data).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

Indeed, defense counsel extensively questioned Dr. Hayes on the topic during his initial depositions. *See, e.g.*, Ex. 11 at 82:14–84:4, 107:17–109:23, 287:23–289:25. When asked, for example, whether the "conspiracy alleged here encompass[es] manufacturers of products that build in optical read/write functionality" through vertical integration (that is, inter- and intra-defendant sales), Dr. Hayes answered affirmatively: "they are making optical disk drives, and they may be part of the conspiracy." *Id.* at 83:13–23. Dr. McClave also disclosed in his initial report that inter- and intra-defendant sales data were contained within the available dataset, *see* Ex. 9 at § 2.0 n.4, and was questioned on those sales at his initial deposition, see, e.g., Ex. 13 at 30:12¬–15, 43:3–45:6, 49:19–51:25. Moreover, Dr. Frankel, in his initial report, offered a damages opinion in respect of desktop and notebook computers (the products that incorporated the drives subject to the inter- and intra-defendant sales), *see* Ex. 10 at internal ex. 19.

17.     "Rather than simply speculating about whether 'ODDs that Defendants sold internally to subsidiaries/affiliates or to other vertically integrated ODD suppliers for incorporation into finished products were affected by the alleged conspiracy,'" *see* Ex. 17 at § 3.1, Dr. McClave "answer[s] the question" in his rebuttal report, which returns the inter- and intra-defendant data into the analysis dataset and concludes that "[t]hose sales were in fact impacted by the alleged conspiracy." *see id.* at § 3.1; *see also, e.g.*, *id.* at §§ 1.0, 2.0, 3.0, 3.1, 6.0 (discussing inter- and intra-defendant sales). Dr. Hayes likewise turned back to the topic of inter- and intra-defendant sales in his rebuttal report, discussing the incentives vertically integrated defendants had to participate in the alleged conspiracy. *See, e.g.*, Ex. 15 at § V, *see also id.* at Exh. 2A (setting forth certain inter- and intra-defendant sales data). Both experts were again questioned at length by defense counsel during their rebuttal depositions regarding such sales and their role in supporting the experts' analyses and conclusions. *See, e.g.*, Ex. 21 at 15:8–18:3, 51:7–14, 55:8–15, 55:18–56:23, 57:1558:7, 59:16–65:13; Ex. 19 at 79:14–101:13.

18.     With respect to non-computer products, such as players and consoles, Dr. Frankel calculates damages for such products in both his initial report, *see* Ex. 10 at § 4.2, Exhs. 19a–19h, and in his rebuttal report, *see* Ex. 18 at § 4.2, Exh. 10. Dr. Frankel was also questioned

extensively regarding these products during his initial deposition , *see, e.g.*, Ex. 14 at 126:16–128:4, 203:12–205:20, 211:15–212:5, 213:8–17, 214:13–215:9, 215:23–225:12, 226:7–267:18, 268:1–3 (discussing audio players, clock radios, CD players, DVD players, camcorders, portable players, game consoles, and the issue of optical disc drives as compared to optical disc drive functionality), and again during his rebuttal deposition, *see, e.g.*, Ex. 22 at 14:6–27:20, 31:10–33:6, 37:8–55:3, 60:9–63:16, 71:13–74:1, 91:7–110:6, 111:1–117:15, 118:21–121:8, 121:16–141:14, 144:1–148:2, 151:9–153:6 (discussing damages analysis for non-computer products).

19.     Dr. Fontecchio also addressed such non-computer products extensively in his initial report*, see, e.g.*, Ex. 8 at § 3 at ¶ 12, § 8 at ¶ 130 (summarizing Dr. Fontecchio's opinions regarding "Optical disc drives (drives), including those used in audio devices, CD players, DVD players, Blu-Ray players, desktop computers, notebook computers, internal standalone drives, external standalone drives, and game consoles"), § 3 at ¶ 13, § 5.1 at ¶ 31, § 6 at ¶¶ 59–61, § 6.1 at ¶ 63, § 6.1.4 at ¶ 72, § 7.2 at ¶¶ 82–83, § 7.3.4 at ¶¶ 89–92, § 7.3.5 at ¶¶ 93–100 (discussing characteristics of audio devices, CD players, DVD players, Blu-Ray players, and game consoles), and in response to questions on the subject from defense counsel at his initial deposition, *see, e.g.*, Ex. 12 at 21:11–25, 32:19–35:5, 36:21–48:16, 49:3–65:5, 71:2–81:13, 84:15–87:16, 105:22–108:7, 108:20–114:18, 117:14–125:7, 125:25–143:17, 144:11–162:1, 162:11–166:2, 183:17–185:19, 188:9–19.  In his rebuttal report, Dr. Fontecchio again discusses these products and responds to arguments advanced by defense experts with respect thereto,  *See, e.g.*, Ex. 16 at § 3 at ¶ 5, § 8 at ¶ 83 (summarizing Dr. Fontecchio's opinions regarding "Optical disc drives (drives), including those used in audio devices, CD players, DVD players, Blu-Ray players, desktop computers, notebook computers, internal standalone drives, external standalone drives, and game consoles"), § 3 at ¶ 6, § 4.2 at ¶¶ 17–47, § 5 at ¶¶ 48–75, § 6 at ¶¶ 77, 79, § 7 at ¶¶ 80–82, § 4.1 at ¶¶ 8–16  (discussing characteristics of audio devices, CD players, DVD players, Blu-Ray players, and game consoles and concluding there is "no technical basis" for the "claim that non-PC products that read optical disks (e.g. CD, DVD, and Blu-Ray players and recorders, game consoles, combo TV's) do not contain optical disc drives"); and again discussed these products in

response to questions on the subject from defense counsel at his rebuttal deposition, *see* Ex. 20 at 25:7–30:5, 33:16–58:9, 58:24–81:25, 83:18–92:7, 92:19–100:6, 101:18–108:14, 110:10–21, 111:19–158:9, 160:4–194:17, 195:19–199:22.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct on this 11th day of August 2017.

                                        */s/ Robert J. Pfister*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

9

PFISTER DECLARATION
Case No. 3:10-md-2143