David M. Stern (State Bar No. 67697)
Michael L. Tuchin (State Bar No. 150375)
Robert J. Pfister (State Bar No. 241370)
Jonathan M. Weiss (State Bar No. 281217)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:    310-407-4000
Facsimile:    310-407-9090
Email:        dstern@ktbslaw.com
              mtuchin@ktbslaw.com
              rpfister@ktbslaw.com
              jweiss@ktbslaw.com

Steven T. Gubner (State Bar No. 156593)
Jason B. Komorsky (State Bar No. 155677)
Michael W. Davis (State Bar No. 274126)
BRUTZKUS GUBNER ROZANSKY SEROR WEBER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: 818-827-9000
Facsimile: 818-827-9099
Email:        sgubner@brutzkusgubner.com
              jkomorsky@brutzkusgubner.com
              mdavis@brutzkusgubner.com

*Attorneys for Plaintiffs Alfred H. Siegel, as Trustee for the Circuit City Stores, Inc. Liquidating Trust and Peter Kravitz, as Trustee for the RSH Liquidating Trust*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION | Master File No.:  3:10-md-2143 RS <br><br> Case Numbers:  3:15-cv-03248-RS <br> 3:15-cv-06325-RS |
| This document relates to: <br><br> *Siegel v. Sony Corporation, et al.* <br> No. 3:15-cv-03248-RS <br><br> *Kravitz v. Sony Corporation, et al.* <br> No. 3:15-cv-06325-RS | **DECLARATION OF JOHN B. HAYES IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AGAINST CIRCUIT CITY TRUST AND RADIOSHACK TRUST** <br><br> Date:       September 26, 2017 <br> Time:      9:00 a.m. <br> Location:  Courtroom 3, 17th Floor <br> Judge:     Honorable Richard Seeborg |

**PUBLIC VERSION OF DOCUMENT PREVIOUSLY FILED UNDER SEAL PURSUANT TO COURT ORDERS [DKT. NOS. 2721 & 2773]**

I, John B. Hayes, declare as follows:

1. I have been retained by counsel representing the Circuit City and RadioShack trustees to provide my expert analysis of the structure of competition and pattern of communications in the optical disk drive industry and determine whether these are likely to have facilitated and supported the successful formation and operation of a cartel. After examining the available data and applying economic principles that are well accepted in the field, I have concluded that there was, in fact, an effective conspiracy to fix the price of optical disk drives during the conspiracy period, and that contrary to defendants' arguments, it is likely that this conspiracy extended beyond procurement events involving Dell, HP, and Microsoft to the broader optical disk drive industry.

2. Nothing in this declaration is intended to alter or vary the analysis and conclusions that were presented in expert discovery, during which I prepared detailed expert reports (opening and rebuttal) and sat for two depositions (opening and rebuttal). I stand by my prior testimony in its entirety. Given the technical nature of the formal reports and the length of my deposition testimony, I submit this declaration merely to summarize the testimony that I will give at trial.

3. To briefly summarize my background, I am an economist who has been studying antitrust, innovation, and competitive strategy for more than 20 years. I specialize in the economics of industrial organization, which includes the study of markets and price formation, competitive strategy, intellectual property rights, antitrust, and regulatory policies. I received my doctorate in economics from the University of Wisconsin, and have previously worked at the U.S. Department of Justice's Antitrust Division. I have taught economics courses at Georgetown University, and have advised government officials in the United States and abroad on regulatory, antitrust, and competition policy. I am also a Senior Editor of the *Antitrust Law Journal*.

4. My work in this case (broadly speaking) concerns the behavior and interactions of economic agents and how economies work. In this case, I examined the structure of competition and pattern of communications in the optical disk drive industry, drawing on an established body of economic theory and a robust factual record that included communications regarding the

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

pricing and sale of optical disk drives from many firms spanning multiple years. My task was to determine whether the structure of the industry and the pattern of communications are likely to have facilitated the successful formation and operation of a price-fixing conspiracy.

5. My conclusion is that there was an effective conspiracy to fix the price of optical disk drives during the conspiracy period. Employees of the defendants and co-conspirators conveyed confidential, competitively sensitive information (such as prices charged to specific customers) to their ostensible competitors with the apparent intention and effect of reaching an agreement to elevate prices. These communications took place between and among firms producing a large share of the industry's output, over many years, and concerned prices charged to multiple drive customers.

6. In reaching this conclusion, I find significant the multiple structural characteristics of the optical disk drive industry that facilitated successful collusion, including the large share of sales for the leading producers of optical disk drives; the web of commercial relationships, such as joint ventures, manufacturing alliances, and supply agreements, that connected these producers and made it easier to monitor, detect, and deter deviations from the collusive agreement; the barriers to entry into the optical disk drive industry created by patents and scale economies in drive manufacturing; the inelastic demand for optical disk drives, which increased the profitability of collusion and decreased the potential gains to deviating from the collusive agreement; the commodity nature of optical disk drives, which made it easier to find common ground on collusive prices and monitor compliance with the agreement; and the contemporaneous conspiracies in other industries involving many of the same defendants and co-conspirators that created additional tools to deter deviations from the collusive agreement and enhanced the optical disk drive cartel's stability.

7. Contrary to the conclusions of defendants' experts, in my expert opinion it is likely that the conspiracy extended beyond specific procurement events at Dell, HP, and Microsoft to the broad optical disk drive industry. The improper communications among the defendants and their co-conspirators that I have examined extended well beyond the drive procurement auctions for

1  Dell and HP and the sales of drives to Microsoft, and are consistent with the existence of a broad
2  price-fixing conspiracy.  In addition, the characteristics of the optical disk drive industry that I
3  have identified as facilitative of an effective conspiracy existed broadly across the entire optical
4  disk drive industry and would have supported an industry-wide collusive agreement.  For example,
5  the defendants and their co-conspirators supplied a broad range of drives sold to many customers
6  and would have recognized that they could profitably apply the collusive conduct more broadly.
7  Moreover, fixing prices on only a few types of drives or to only a few customers would have
8  increased the likelihood that the conspiracy would be detected and prosecuted because customers
9  potentially could have observed low, non-collusive prices and learned they were being charged
10 supra-competitive prices.

11         8.      In their opposition expert reports, the defendants' experts offered several criticisms
12 of my opinions, to which I responded in my rebuttal expert report.  One of those criticisms was
13 skepticism that a vertically integrated defendant would have benefited from the conspiracy,
14 sometimes phrased in shorthand as disbelief that the conspirators would have "overcharged
15 themselves" (that is, that intra- and inter-defendant sales would have been affected by the price-
16 fixing conspiracy).  This critique is based on a fundamental misunderstanding of whether the
17 alleged conspiracy would raise or lower a vertically integrated firm's profits.  For Sony and
18 Toshiba, for example, the evidence shows that each had a strong incentive to participate in a
19 conspiracy that elevated ODD prices and in turn elevated downstream prices of personal
20 computers and other devices.  This is not accurately described as "overcharging themselves," nor
21 does it rest on a conspiracy to elevate the prices of the end products themselves.  Rather, it is a
22 well-recognized consequence or effect of the price-fixing conspiracy in that purchasers of the end
23 product that incorporates a price-fixed drive paid a higher price than they would have paid in the
24 absence of a successful conspiracy to raise the prices of optical disk drives.

25         I declare under penalty of perjury under the laws of the United States of America that the
26 foregoing is true and correct and was executed on this 10th day of August 2017.

27
28

1
2
3                                                              _____
4                                                              John B. Hayes, Ph.D.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000