David M. Stern (State Bar No. 67697)
Michael L. Tuchin (State Bar No. 150375)
Robert J. Pfister (State Bar No. 241370)
Jonathan M. Weiss (State Bar No. 281217)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:   310-407-4000
Facsimile:   310-407-9090
Email:       dstern@ktbslaw.com
             mtuchin@ktbslaw.com
             rpfister@ktbslaw.com
             jweiss@ktbslaw.com

Steven T. Gubner (State Bar No. 156593)
Jason B. Komorsky (State Bar No. 155677)
Michael W. Davis (State Bar No. 274126)
BRUTZKUS GUBNER ROZANSKY SEROR WEBER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367
Telephone: 818-827-9000
Facsimile: 818-827-9099
Email:       sgubner@brutzkusgubner.com
             jkomorsky@brutzkusgubner.com
             mdavis@brutzkusgubner.com

*Attorneys for Plaintiffs Alfred H. Siegel, as Trustee for the Circuit City Stores, Inc. Liquidating Trust and Peter Kravitz, as Trustee for the RSH Liquidating Trust*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>*Siegel v. Sony Corporation, et al.*<br>No. 3:15-cv-03248-RS<br><br>*Kravitz v. Sony Corporation, et al.*<br>No. 3:15-cv-06325-RS | Master File No.: 3:10-md-2143 RS<br><br>Case Numbers: 3:15-cv-03248-RS<br>3:15-cv-06325-RS<br><br>**DECLARATION OF JAMES T. McCLAVE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AGAINST CIRCUIT CITY TRUST AND RADIOSHACK TRUST**<br><br>Date:      September 26, 2017<br>Time:      9:00 a.m.<br>Location:  Courtroom 3, 17th Floor<br>Judge:     Honorable Richard Seeborg |

**PUBLIC VERSION OF DOCUMENT PREVIOUSLY FILED UNDER SEAL PURSUANT TO COURT ORDERS [DKT. NOS. 2721 & 2773]**

I, James T. McClave, declare as follows:

1. I have been retained by counsel representing the Circuit City and RadioShack trustees to provide expert analysis on the amount, if any, by which prices of optical disk drives were elevated on account of the alleged conspiracy to higher levels than would otherwise have prevailed in the absence of such conspiracy. As set out below, I have estimated that purchasers of optical disc drives such as Circuit City and RadioShack were overcharged by 13.5% during the damages period (that is, that they paid 13.5% more than they would have paid had there been no conspiracy), and I have further concluded that this 13.5% overcharge may be applied to all drives at issue in the case – including standalone drives, computer drives, and drives in players and consoles.

2. Nothing in this declaration is intended to alter or vary the analysis and conclusions that I previously presented in detailed expert reports (opening and rebuttal) and during two depositions (opening and rebuttal). I stand by my prior testimony in its entirety. Given the technical nature of the formal reports and the length of my deposition testimony, I submit this declaration merely to summarize the testimony that I will give at trial.

3. By way of (brief) background, I have a B.S. degree in physics and a Ph.D. in statistics. I taught at the university level for 20 years, both in departments of statistics and in business schools. The primary area of my research and consulting has been econometrics, which is the application of statistical and mathematical methods to economic issues. During the course of my academic career, I published peer-reviewed research in econometrics and statistics, and I have authored or co-authored six textbooks in statistics and econometrics, including Statistics for Business and Economics, now in its 12th edition, which has been and is currently adopted in many universities and colleges and translated into several foreign languages. In the course of my consulting practice over the past 40 years, I have analyzed price and bid data in the context of more than 100 markets.

4. The econometric analyses I performed in this matter used the defendants' own transactional data, as well as data from non-defendant co-conspirators. These data encompassed

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

records of millions of optical disc drive sales. My initial dataset included more than 1.4 million individual U.S. transactions. After expanding my dataset to include global and inter- and intra-defendant sales (in response to critiques by defendants' experts), my final dataset encompasses more than three million individual transactions.

5. To determine whether and how much prices of optical disc drives were elevated on account of the alleged conspiracy, I utilized a standard and widely accepted statistical methodology – multiple regression analysis – which allowed me to compare prices during the period affected by the alleged conspiracy (referred to as the damages period) to competitive prices (that is, prices during a time period unaffected by the conspiracy, referred to as the benchmark period) and thereby estimate the likely effect of the alleged conspiracy. My econometric analysis used January 2003 through December 2009 as the conspiracy period and January 2010 through December 2011 as the benchmark period. To isolate the price effects of defendants' collusion, I adjusted for differences unrelated to collusion, such as general economic conditions and drive characteristics.

6. In my opening expert report, which was based on my original 1.4-million-transaction dataset, I calculated an overcharge percentage of 15.3%. In response to this analysis, the defendants and their experts complained that my dataset did not encompass global data or inter- and intra-defendant sales, and further claimed that it did not include transactions for drives that were ultimately incorporated into players and consoles. In response to these criticisms, I expanded my analysis database to include global transactions and intra- and inter-defendant transactions, and I confirmed that the transaction data produced by defendants and their co-conspirators did in fact include transactions for drives that were incorporated into players and consoles. My analysis showed that prices for drives sold by Defendants to vertical affiliates and other Defendants were elevated to supracompetitive levels and that prices for drives used in non-computer products were closely related to computer drive prices. Further, my analysis showed that prices paid by retailers, including Circuit City and Radio Shack, were elevated to non-competitive levels.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

7. Applying my econometric model to this expanded 3-million-transaction dataset results in the estimation of an overcharge of 13.5%. In other words, on the basis of more than three million sales transactions, and controlling for non-conspiracy factors such as cost, demand, drive type, and general economic conditions, I have determined on the basis of a rigorous econometric analysis that prices during the conspiracy period were 13.5% higher than they would have been in the absence of the alleged conspiracy. I have further concluded that it is reasonable and appropriate to apply this 13.5% overcharge number to all drives at issue in this case – including standalone drives, drives that were incorporated into computers, and drives that were incorporated into players and consoles.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and was executed this 10th day of August 2017.

_____
James T. McClave