Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| *In Re Optical Disk Drive Products Antitrust Litigation* | Case No: 3:10-MD-2143-RS<br><br>MDL 2143 |

## OBJECTIONS OF CONNOR ERWIN

Hagens Berman secured lead class counsel status with a sliding-scale bid that would have netted 12% attorneys' fees from the prior two settlements.[1] The only way we know that is the firm's admission in its second fee motion.[2] The bid itself has not been disclosed to the class members even though Plaintiffs have now settled with 94% of the ODD market.[3] There is no compelling reason to keep the bid closed, while there is every reason to allow the class members to see it. *See In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001) (need for transparency is particularly important in

---

[1] ECF Docs. 52, 96, 2432.

[2] ECF Doc. 2432, at 20.

[3] ECF Doc. 2874, at 12.

class actions because "many members of the 'public' are also plaintiffs in the class action"); MODEL R. PROF'L CONDUCT R. 1.5(b) (requiring communication to the client of the "basis or rate of the fee … before or within a reasonable time after commencing the representation"); *see also* CA ST RPC Rule 3-500 (requiring attorneys to "keep a client reasonably informed about significant developments… including promptly complying with reasonable requests for information…."). Erwin renews his request for the bid to be unsealed.

Hagens' third motion for attorneys' fees should be denied outright. The firm was already paid for the third round of settlements and then some. To date, Hagens has taken $42.7[4] million of the common funds when it should have taken $21.6 million based on its bid.[5] The firm sought and recovered 23.8% of $180 million in two rounds of settlements ($31,125,000 of $124.5 million from the first and $11,655,000 of $55.5 million from the second), which amounts to nearly twice what it promised.

Once again, Hagens asks for more than what it promised, this time without even mentioning the bid. Hagens has not disclosed what percentage fee its bid would have allowed from the third settlement of $25 million likely because it would have been even lower than 12%.

The Court should give no credence to the latest claimed lodestar. Hagens previously double dipped by including the lodestar incurred from the first round in

---

[4] $31,125,000 + $11,655,000 = $42,780,000 fees from the first two rounds, which is 23.8% of the aggregate $180 million settlements.

[5] 12% x $180,000,000 = $21,600,000.

calculating lodestar for the second. It now triple dips by including its entire lodestar from inception of the case through the third settlement to arrive at a 1.59 multiplier.[6] The actual multiplier for the requested $5 million fee is 2.43 based on the $2,054,397 lodestar disclosed between the second settlement and the third.[7]

A 12% recovery of damages in this round of settlements[8] after losing a motion for summary judgment is not justification for awarding counsel 2 ½ times their hourly rates. Further, the steadily diminishing lodestar required to achieve each successive settlement, from $24 million,[9] to $3.7 million,[10] and now $2[11] million, is the exact predicate for application of the sliding-scale fee methodology which the firm promised in the first place.

## STANDING AND PROCEDURES TO OBJECT

Objectors' full name, addresses and telephone numbers are as follows:

Conner Erwin
10239 Scull Creek Dr.
Austin, Texas 33730
Tel: (512) 552-8333
Email: surfsolution@gmail.com

Objector is a class members who timely filed a claim on the initial settlements with Panasonic, NEC, Sony, and HLDS, and therefore has standing to make his

---

[6]  ECF Doc. 2874, at 3.

[7] ECF Doc. 2874, at 8.

[8] ECF Doc. 2874, at 12.

[9] ECF Doc. 1963, at 1

[10] ECF Doc. 2326, at 6.

[11] ECF Doc. 2874, at 8

objections. *See* Declaration of Conner Erwin, incorporated by reference as though set forth in full herein, attached hereto as Exhibit A.[12] *See also* ECF Doc. 1970-1. Mr. Erwin is represented by Timothy R. Hanigan, LANG, HANIGAN & CARVALHO, LLP and BANDAS LAW FIRM, PC. Christopher A. Bandas of Bandas Law Finn, P.C does not intend on making an appearance for himself or his firm, but reserves the right to do so. Objectors rely upon the documents contained in the Court's file in support of these objections.

Objector incorporates by reference the arguments and authorities contained in other filed objections, if any, made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

## OBJECTIONS

**I.     With 93.5% of the ODD Market Settled, There is No Compelling Reason for Keeping the Fee Bid Under Seal.**

As with his prior objections, Mr. Erwin requests that, as a matter of transparency, the Court unseal the bid, with appropriate redactions for work product. *See In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 975 (N.D. Cal. 2001) ("The bids were submitted under seal to ensure their confidentiality *up to the point of selection*, but are,

---

[12] According to the settlement website, no additional claim is necessary for those who previously filed claims. Mr. Erwin's prior claim will "be counted toward all of the settlements reached to date, as well as any future settlements…." *See* https://www.dollarsfordiskdrives.com/faqs (last visited on December 17, 2018).

with this order, unsealed to assure transparency of the selection process.") (emphasis added). Class members are entitled to know the difference in their recovery (and that of their attorney's) under their attorney's bid versus under the court's subsequent order. *Cf. Mercury Interactive*, 618 F.3d at 994–95 ("[w]hen the district court . . . denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class"). "Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 310 (6th Cir. 2016) (vacating settlement and remanding to the district for "an open and vigorous examination of the settlement's fairness to the class").

The "compelling reasons" standard applies here and Hagens has failed to meet it. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010); *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006); *Cendant*, 260 F.3d at 193. With 94% of the market settled with agreements available for review online, the remaining defendants know very well how Hagens sees the valuation of this case. A sealing order "must be lifted at the earliest possible moment when the reasons for sealing no longer obtain." *See Cendant Corp.*, 260 F.3d at 196. Continued sealing must be based on *current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm they claim. *See id.* (emphasis added).

Any concerns over class counsels' 2010 preliminary evaluation of this case are simply no longer a compelling justification for keeping the fee proposal sealed, particularly when that bid evaluation was ultimately disregarded. At the very least, Erwin and the class members should be given access to the bid with appropriate redactions for work product. Along with disclosure of the bid, Erwin urges that the Court require reissuance of notice and an attendant opportunity to object after the disclosure of this crucial information.

## II.    Because Hagens Has Already Been Overcompensated by More than $21 Million, the $5 Million Fee Request Should be Denied Outright.

Even without unsealing the bid, an additional $5 million fee on top of the previous awards would be improper. "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation." *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 550, 130 S.Ct. 1662 (2010). That fee here was the sliding-scale bid promised by Hagens that would have produced a 12% fee.

By taking a 23.8% fee for the first two rounds of settlements, Hagens has taken an excess of $21 million belonging to the class. To the extent Hagens underbid itself, Hagens and not the class should have borne the risk of that miscalculation. *See In re Oracle Secs. Litig.*, 131 F.R.D. 688, 692 (N.D. Cal. 1990) (Walker, J.) ("it is inherently illogical for lawyers to undertake litigation on the basis of the risks and rewards they perceive at the beginning, yet be compensated on the basis of the risks and rewards the court perceives at the end of the litigation").

6

Given the surplus $21 million already in Hagens' hands, the Court should honor the bid at this stage and deny the motion for attorneys' fees altogether. To the extent the Court nevertheless entertains additional fees, nothing more than the amount promised in the bid (presumably below 12% considering the sliding-scale) should be allowed.

Courts within the Ninth Circuit have held in other circumstances that "[w]hen attorneys promise to restrict the fees to be sought in a fee petition, that *ex ante* promise should be honored, absent special circumstances." *Dugan v. Lloyds TSB Bank, PLC*, No. 12-2549 WHA, 2014 WL 1647652, at *8 (N.D. Cal. April 24, 2014). That is because "[w]hen an attorney makes a promise . . . to cap fees, it is meant for the benefit of the class." *Id.* at *3.

The notion that the bid can be disregarded because Hagens could not have anticipated the extent of the litigation is flawed. Judge Walker appointed Hagens specifically because *it did* anticipate the potential extent of the litigation.[13] Not to mention, certification issues and appeals to the Ninth Circuit are not "imponderable" in the context of this massive antitrust class action.

---

[13] ECF Doc. 96, at 8.

### III. Empirical Data Does Not Support Hagens' Requested Aggregate 23.3% From $205 Million.

Hagens continues to misinform the Court on reasonable fees for mega-fund settlements.[14] Empirical data does not support 23.8% fees from a $180 mega-fund nor 23.3% from $205 million. The broader scale is important because "court *must* consider the fund's size in light of the circumstances of the particular case" and "the 25 percent 'benchmark' is of little assistance in a case such as this." *Vizcaino*, 290 F.3d at 1047–48 (9th Cir. 2002) (emphasis added).

The anecdotal list of cases complied in *Vizcaino* involving $50-$200 million settlements between 1996-2001, with half allowing fees above 25%, is not representative of current figures. *See* V*izcaino*, 290 F.3d at 1052. Since then, courts and commentators have found fees from mega-funds are generally around 10-12%, which appropriately coincides with Hagens' bid. *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015).

Hagens notes that a study of cases between 2009 and 2013 placed fees for recoveries above $100 million between 16.6% and 25.5%.[15] Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: 2009-2013*, N.Y.U. L. Rev. 937, 947 (Oct. 2017). But the authors who compiled that study admitted those results were "probably due to the significantly smaller number of very large cases in [their]

---

[14] ECF Doc. 2874, at 10.

[15] ECF Doc. 2874, at 10.

data set" for those years. *Id.* More importantly, that study did not break down the numbers after $100 million, but the same authors in an earlier study found mean and median fees for settlements above $170 million fell between 12% and 10.2%. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: 1993–2008*, 7 J. Empirical Legal Studies 248, 266 (2010). And the more recent study confirmed "among cases with recoveries greater than $50 million, . . . fees did not increase over the 2003-2013 period." Eisenberg & Miller, N.Y.U. L. Rev. at 942. As a result, the 12% and 10.2% mean and median fees for settlements above $170 million (which coincide with Hagens' bid) remain in place.

## IV. The *Vizcaino* Factors Do Not Support Awarding Hagens Nearly Double its Bid.

Although the Ninth Circuit set forth six factors for consideration in awarding fees in *Vizcaino v. Microsoft Corp.*, the Court made clear that the threshold question on review is "whether in arriving at its percentage[, the court] considered all the circumstances of the case and reached a reasonable percentage." 290 F.3d 1043, 1048 (9th Cir. 2002). A fee that takes 23.3% of $205 million, or even 20% of $25 million, when Hagens promised 12% (or less), is inherently unreasonable.

Further, at least three of the *Vizcaino* factors counsel against the proposed 20% fee from this round of settlements. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (noting the *Vizcaino* factors "include the extent to which class counsel 'achieved exceptional results for the class,' whether the case was

risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis"). First, the 12% recovery of class damages from this latest round of settlements after summary judgment is not an exceptional recovery. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 SI, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013) (50 percent recovery of damages); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *1 (N.D. Ohio Feb. 26, 2015) (48% recovery of class damages). Given the $21 million excess Hagens has already recovered, a 20% fee here would demand spectacular results. Second, the market would not allow for the aggregate 23.3% fee from the three rounds of settlements. We know it would not because two of three firms submitted sliding-scale bid and Hagens prevailed with a 12% sliding-scale fee. Third, the costs and attorney hours have steadily diminished with each successive round of settlements.

## V.    The Precipitously Falling Lodestar Justifies Holding Hagens to its Sliding-Scale Bid.

Indeed, Hagens' lodestar has fallen off a cliff since the first settlement—from $24 million to $3.7 million to now $2 million for the latest settlement. Hagens attempts to hide this fact by lumping the lodestar together rather than segregating

The rationale for a diminishing fee in this context — *i.e.,* that costs diminish as

the size of the settlement increases — is obviously present. It took class counsel $24 million in lodestar to achieve the first $124 million.[16] Yet, it only took them $3.7 million to get the next $55 million,[17] and around half that lodestar ($2 million) to get the next $25 million. These falling costs are the exact predicate for applying a sliding scale, which of course, was promised by Hagens. *See Silverman v. Motorola Solutions, Inc.,* 739F.3d 956, 959 (7th Cir.2013) ("[t]here may be some marginal costs of bumping the recovery . . . but as a percentage of the incremental recovery these costs are bound to be low." Thus, in a $200 million settlement, it is "hard to justify awarding counsel as much of the second hundred" as the first); *In re NASDAQ Marketmakers Antitrust Litig.,* 187 F.R.D. 465, 486 (S.D.N.Y. 1998) ("It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case."). Again, Hagens' promised diminishing fee methodology recognizes that mega-fund settlements are, at some margin, a product of the magnitude of the class action rather than the work of the attorneys.

With this Court's prior 23.8% award from the $180 million settlement, Hagens has already been overcompensated. The 20% proposal here, while below the 25% benchmark, is still too much for a mega-fund, particularly when 12% was promised. Further, the aggregate $47.7 million fee from the three rounds of settlements is 23.3% of $205 million, a figure not within the range of reasonable fees for a mega-fund. Any

---

[16] ECF Doc. 2133, at 10.

[17] ECF Doc. 2326, at 6.

subsequent fees from forthcoming settlements with the remaining defendants will only expand that windfall.

## CONCLUSION

No fee should be awarded since Hagens has already been overcompensated in excess of $21 million. To the extent one is allowed, Hagens should be limited to 12% or less from the latest $25 million common fund. Further, this Court should unseal the bid for the benefit of the class.

DATED:  December 17, 2018              Respectfully submitted,

                                       */s/ Timothy R. Hanigan*
                                       Timothy R. Hanigan (125791)
                                       LANG, HANIGAN &
                                       CARVALHO, LLP,
                                       21550 Oxnard Street, Suite 760
                                       Woodland Hills, California 91367
                                       (818) 883-5644
                                       trhanigan@gmail.com
                                       Attorney for Objector/Class Member

## Certificate of Service

The undersigned certifies that today he filed the foregoing Objection and attached exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED:  December 17, 2018

/s/ *Timothy R. Hanigan*
Timothy R. Hanigan