1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | No.  3:10-md-2143 RS (JCS)<br><br>ORDER GRANTING FINAL APPROVAL OF INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT WITH DEFENDANTS SAMSUNG ELECTRONICS CO., LTD., TOSHIBA CORPORATION, AND TOSHIBA SAMSUNG STORAGE TECHNOLOGY CORPORATION, GRANTING MOTION FOR ATTORNEY FEES AND EXPENSES, AND DENYING OBJECTIONS<br><br>DATE ACTION FILED: Oct. 27, 2009 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | |

010177-12  974927V1

1    This matter comes before the Court on indirect purchaser plaintiffs' motion for final approval

2    of settlement (filed December 28, 2018) and motion for payment of attorneys' fees and

3    reimbursement of expenses (ECF No. 2874). A hearing on these motions was held on February 7,

4    2019.

5    The Court has carefully reviewed and considered the record in this matter, including the

6    memoranda and supporting declarations submitted in support of the motion for preliminary approval

7    and the exhibits attached thereto, such as the proposed settlement agreement and each of the class

8    notices; indirect purchaser plaintiffs' (IPPs) motion for final approval of the settlement agreement;

9    the memoranda and declarations in support of the motion for final approval submitted by IPPs; the

10   memoranda and declaration submitted in support of the fee petition; and all objections submitted to

11   the Court and IPPs' responses to those objections.

12   Good cause appearing, the Court orders as follows:

13                              **I.        BACKGROUND**

14   IPPs move for final approval of their settlement with defendants Samsung Electronics Co.,

15   Ltd., Toshiba Corporation, and Toshiba Samsung Storage Technology Corporation (Samsung and

16   Toshiba Defendants). On September 18, 2018, this Court granted preliminary approval of this

17   settlement, provisionally certifying the settlement class, preliminarily approving the settlement, and

18   ordering dissemination of notice to class members. ECF No. 2860.

19   The notice administrator provided notice in accordance with this Court's order. Out of the

20   millions of class members, only two class members requested exclusion from the class, and a total of

21   two objections were filed. The settlement will result in the recovery of $25 million for the indirect

22   purchaser class. Under the proposed schedule, the class is able to make claims until June 28, 2019, at

23   which point IPPs propose a well-accepted distribution plan – a pro-rata calculation taking into

24   account how many ODDs were purchased by each class member.

25

26

27

28

1

## II.   SUMMARY OF THE SETTLEMENT

2

### A.   Settlement Terms

3

The proposed settlement resolves all claims against the Samsung and Toshiba Defendants

4

stemming from the alleged conspiracy to restrain competition for ODDs. The settlement class is

5

defined as follows:

6

> All persons and entities who, as residents of Arizona, California,
> District of Columbia, Florida, Hawaii, Kansas, Maine, Massachusetts,

7

> Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New
> Hampshire, New Mexico, New York, North Carolina, Oregon,

8

> Tennessee, Utah, Vermont, West Virginia and Wisconsin and during
> the period April 2003 to December 2008, purchased new for their own

9

> use and not for resale: (i) a computer with an internal ODD; (ii) a
> stand-alone ODD designed for internal use in computers; or (iii) an

10

> ODD designed to be attached externally to a computer. ODD refers to
> a DVD-RW, DVD-ROM, or COMBO drive manufactured by one or

11

> more Defendants or their coconspirators. Excluded from the class are
> any purchases of Panasonic-branded computers.

12

ECF Nos. 2852-3, ¶ A(1). The proposed settlement class mirrors the class certified by this Court on

13

February 8, 2016. ECF No. 1783.

14

### B.   The Settlement Consideration

15

Under the proposed settlement, the Samsung and Toshiba Defendants will pay a total of $25

16

million in cash. The settlement fund is non-reversionary to the defendants.

17

### C.   Release of Claims

18

Plaintiffs and class members will release all federal and state-law claims against the Samsung

19

and Toshiba Defendants if the settlement becomes final, relating to the conduct alleged in plaintiffs'

20

complaint, including "claims under foreign antitrust or competition laws . . . that relate to or arise out

21

of the sale of any of the ODDs or any of the products containing ODDs" (ECF No. 2852-3, ¶ 14) that

22

are the subject of the complaint. The release does not preclude plaintiffs from pursuing their claims

23

against the other defendants (*Id*.). The settlement releases only those claims of class members who

24

will recover under the terms of the settlement.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Court must conduct a three-step inquiry to determine whether to approve a class action settlement. *First*, it must assess whether defendants met the notice requirements under the Class Action Fairness Act (CAFA). *See* 28 U.S.C. § 1715(d). *Second*, it must determine whether constitutional notice has been provided to the class, and whether the proposed settlement class should be certified. *Third and finally*, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phoenix. Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry). Each of these requirements is met here.

### A.   The Parties Have Complied with the Class Action Fairness Act

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]"28 U.S.C. § 1715(b).The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. 28 U.S.C. § 1715(d). Here, the Samsung and Toshiba Defendants provided the required CAFA notice (ECF No. 2878). No Attorneys General have submitted statements of interest or objections in response to these notices.

### B.   The Settlement Class Is Appropriate for Certification

In the Court's February 8, 2016 order (ECF No. 1783), it certified the IPP class pursuant to Rule 23(b)(3). The same analyses apply here, and the Court affirms its order certifying the IPP class for settlement purposes under Rule 23(e). *See Adoma*, 913 F. Supp. 2d at 974 (approving of settlement class where the "court previously certified classes in this matter under Rule 23(b)(3)").

### C.   The Parties Have Complied With the Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b )(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(l)(B). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice [of particular information] to all members who can be identified through reasonable effort[.]"

Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)). "[N]otice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*

The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. The notice administrator provided direct notice via email (obtained from retailers of the products at issue in this case) to approximately 12.8 million consumers, as well as via mail to those requesting mailed notice.  By October 17, 2018, the dedicated website created for the previous settlements in this case was updated to include information and new deadlines for the Samsung/Toshiba settlement, including the settlement agreement, the Court's order granting preliminary approval, the long form notice (in English and Spanish), and the claim form. A toll-free automated telephone support line has been available to provide answers to frequently asked questions by class members. The website includes IPPs' motion for attorneys' fees and expenses, and the accompanying declaration of Jeff D. Friedman. The notice administrators engaged in an extensive public notice campaign, including:

    a.  A party-neutral Informational Release to approximately 15,000 media outlets, including newspapers, magazines, national wire services, television, radio, and online media in all 50 states, including to the Hispanic newsline, which reaches over 7,000 U.S. Hispanic media contacts, including online placement of approximately 100 Hispanic websites nationally;

    b.  Digital banners and advertising on the Google Display Network, which served 259,534,502 impressions with 149,846 clicks through to the case website;

    c.  Sponsored search listings on Google, which were displayed 1,884,491 times, resulting in 1,256 clicks through to the case website;

    d.  Digital banners and advertising on Facebook, which served 181,610,971 impressions with 34,881 clicks through to the case website;

    e.  Digital banners and advertising on Pulpo Media (Hispanic), with Banner Notices in Spanish, which served 1,002,000 impressions with 912 clicks through to the website;

    f.  Digital banners and advertising on Oath Ad Network (formerly Yahoo! Ad Network), which served 55,024,462 impressions with 17,858 clicks through to the website; and

    g.  Toll-free telephone support services.

1    In total, the Banner Notices for this round of settlements generated over 497 million

2    impressions, directing over 203,497 clicks through to the case website. The notice administrator

3    confirms that the notice program reached at least 75% percent of all adults 25 years of age and older

4    who own a personal computer in the United States, the target audience to reach class members.

5    The Court previously found that the notice itself informed class members of the nature of the

6    action, the terms of the proposed settlements, the effect of the action and the release of claims, as

7    well as class members' right to exclude themselves from the action and their right to object to the

8    proposed settlements. ECF No. 2860. The Court finds that plaintiffs have complied with all of the

9    requirements of Rule 23.

10   **D.     The Proposed Samsung and Toshiba Settlement Is Fair, Adequate, and Reasonable**

11   This Court is entitled to exercise its "sound discretion" when deciding whether to grant final

12   approval. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

13   939 (9th Cir. 1981) ("Dismissal or compromise of a class action is left to the sound discretion of the

14   trial judge."). It is also well established in the Ninth Circuit that "voluntary conciliation and

15   settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*

16   *of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public

17   interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van*

18   *Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). A "presumption in favor of voluntary

19   settlement agreements" exists, and "this presumption is especially strong in class actions and other

20   complex cases . . . because they promote the amicable resolution of disputes and lighten the

21   increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs.*, 667 F.3d 273, 311 (3d

22   Cir. 2011) (internal quotations marks and citation omitted; ellipsis in original).

23   The settlement reached between IPPs and the Samsung and Toshiba Defendants satisfies all

24   criteria for a fair, adequate, and reasonable settlement. On December 1, 2018, amendments to

25   Federal Rule of Civil Procedure 23 went into effect that specify factors courts should consider to

26   assess whether a settlement is fair, reasonable, and adequate. The Advisory Committee Notes explain

27   that while "Courts have generated lists of factors to shed light on this concern," many of which

28   "focus on comparable considerations," the "goal of this amendment is not to displace any factor, but

rather to focus the court and the lawyers on the core concerns of procedure and substance that should

guide the decision whether to approve the proposal." "This amendment therefore directs the parties

to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the

primary procedural considerations and substantive qualities that should always matter to the decision

whether to approve the proposal." *See* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision

(e)(2) (2018).

Pursuant to the amended Rule 23(e)(2), courts should focus on whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

The Ninth Circuit also has instructed courts to weigh some or all of the following factors:

"(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of

further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction

of the class members of the proposed settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654

F.3d 935, 946 (9th Cir. 2011).

Considering the factors identified by the amended Rule 23(e)(2), as well as the *Bluetooth*

factors, the Court holds that the settlement reached between IPPs and the Samsung and Toshiba

Defendants satisfies all criteria for a fair, adequate, and reasonable settlement.

1       **1.    The class representatives and class counsel have adequately represented the**
2             **class, and negotiated this settlement at arm's length.**

3       The Court finds that the class representatives and class counsel have adequately represented

4   the Class, and negotiated this settlement at arm's length, satisfying Federal Rule of Civil Procedure

5   23(e)(2)(A) and (B). The Advisory Committee Notes explain that "[t]hese paragraphs identify

6   matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and

7   of the negotiations leading up to the proposed settlement." *See* Fed. R. Civ. P. 23, Notes of Advisory

8   Comm., Subdivision (e)(2), Paragraphs (A) and (B) (2018).

9       As an "example, the nature and amount of discovery in this or other cases, or the actual

10  outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an

11  adequate information base." *Id.* Ninth Circuit law, too, instructs courts to consider the "extent of

12  discovery completed and the stage of the proceedings." *Bluetooth*, 654 F.3d at 946. This is because

13  the extent of the discovery conducted to date and the stage of the litigation are both indicators of

14  counsel's familiarity with the case and of plaintiffs having enough information to make informed

15  decisions. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "A settlement

16  following sufficient discovery and genuine arms-length negotiation is presumed fair." *Knight v. Red*

17  *Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *10 (N.D. Cal. Feb. 2, 2009).

18      IPPs here – during eight years of litigation – obtained certification of the IPP class and

19  conducted extensive discovery, thoroughly testing the claims and defenses in this case. For example,

20  during fact discovery, IPPs took dozens of depositions, served voluminous discovery, and reviewed

21  millions of pages of documents.  After the close of fact discovery, IPPs opposed, among other

22  motions: a joint motion for summary judgment on all of IPPs' claims; individual summary judgment

23  motions by three defendant families; multiple *Daubert* motions seeking to strike the merits reports of

24  IPPs' experts; and a motion for decertification of the IPP class. Defendants' multipronged challenges

25  to IPPs' claims largely were rejected, although the Court found the IPPs provided insufficient

26  evidence to present to a trier of fact that defendants' price-fixing overcharges "passed-through" the

27  market chain of distribution to injure IPPs.  It was during IPPs' appeal of summary judgment that

28  IPPs reached the Samsung and Toshiba settlement.

1    Accordingly, class representatives and class counsel negotiating on behalf of the class has

2    great familiarity with the case and had enough information to make an informed settlement decision.

3    In such circumstances in particular, it is important to consider "the experience and views of counsel."

4    *Bluetooth*, 654 F.3d at 946.  Here, counsel for IPPs – experienced antitrust lawyers with many years

5    of experience – support the settlement.

6    The Advisory Committee Notes to the amended Rule 23(e) also explain that "the actual

7    outcomes of other cases" "may indicate whether counsel negotiating on behalf of the class had an

8    adequate information base." *See* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (e)(2),

9    Paragraphs (A) and (B) (2018). IPPs had the benefit of knowing how much the direct purchaser

10   plaintiffs in this same litigation settled with the same defendants. The IPP settlement almost tripled

11   the direct purchaser settlement with the Toshiba and Samsung Defendants: $25 million for IPPs,

12   versus $9.2 million for DPPs (or 2.72x). And the total IPP settlements to date of $205 million are

13   also now more than 2.7 times greater than the total settlements ($74.9 million) recovered by the

14   direct purchasers.

15   Federal Rule of Civil Procedure 23(e)(2)(B) instructs courts also to consider whether "the

16   proposal was negotiated at arm's length." This settlement agreement was negotiated at arm's length

17   among experienced and sophisticated counsel. The Advisory Committee Notes state, "the

18   involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on

19   whether they were conducted in a manner that would protect and further the class interests." *See* Fed.

20   R. Civ. P. 23, Notes of Advisory Comm., Subdivision (e)(2), Paragraphs (A) and (B) (2018). Here,

21   the parties engaged in negotiations with the assistance of Eric Green, a nationally renowned, neutral

22   mediator.

23   The Advisory Committee Notes to Paragraphs (A) and (B) also state that the Court may look

24   at "treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee

25   award and its terms." The Ninth Circuit has identified three related signs as troubling and potentially

26   indicative that a proposed settlement is not in the class's interests: (a) when class counsel receive a

27   disproportionate distribution of the settlement; (b) when the parties negotiate a "clear sailing"

28   arrangement that provides for the payment of attorneys' fees separate and apart from class funds; or

1    (c) when the parties arrange for fees not awarded to plaintiffs' counsel to revert to the defendants

2    rather than the class. *Bluetooth*, 654 F.3d at 946. None of these potentially troubling signs are present

3    in this case. The proposed settlement is a common fund, all-in settlement with no possibility of

4    reversion. The funds will be used to cover costs and fees and compensate the class based on a *pro*

5    *rata* formula. There is no "clear sailing" provision, no payment of fees separate and apart from the

6    class funds, and no "kicker" provision which would allow unawarded fees to revert to the

7    defendants. The class notice informed class members that class counsel would make a request for

8    attorneys' fees up to 20 percent of the settlement fund. In sum, all procedural considerations support

9    final approval.

10               **2.       The relief provided by the settlement is adequate.**

11          The Court finds that the relief provided to the class by the settlement is adequate, pursuant to

12   examination of the factors enumerated in Federal Rule of Civil Procedure 23(e)(2)(C)(i) through (iv).

13   Subsection (i) of Rule 23(e)(2)(C) asks the court to consider the adequacy of the relief, "taking into

14   account" "the costs, risks, and delay of trial and appeal." This factor is analogous to Ninth Circuit's

15   consideration of the risk, expense, complexity, and likely duration of further litigation, while also

16   examining the strength of the plaintiffs' case, the risk of maintaining class action status throughout

17   the trial, and the amount offered in settlement. *Bluetooth*, 654 F.3d at 947-48.

18          Recovery of the $25 million offered in settlement for the indirect purchaser class from the

19   Samsung and Toshiba Defendants – 12 percent of the estimated damages attributable to them – is an

20   excellent result. Measured against the most direct benchmark, the direct purchaser settlements in the

21   case, the IPP settlements are superior, almost triple what DPPs recovered. Moreover, when combined

22   with the prior settlements negotiated by IPPs, settlements to-date of $205 million represent recovery

23   of 20 percent of the estimated damages attributable to the market share of these defendants, and more

24   than 19 percent of total estimated damages ($1.074 billion) suffered by indirect purchasers. IPPs are

25   also actively litigating their appeal against the BenQ and Quanta Defendants. If they prevail on

26   appeal, on remand IPPs could obtain additional recoveries from BenQ or Quanta either by settlement

27   or after trial. These defendants would be jointly and severally liable for the remainder of the damages

28   resulting from the conspiracy. The Ninth Circuit recognizes that "the very essence of a settlement is

compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). This settlement, while a compromise, represents an excellent result by any measure.

Moreover, there are great risks (and related potential costs and delay) in this case. "An antitrust class action is arguably the most complex action to prosecute. . . . The legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *34 (E.D. Pa. June 2, 2004) (internal quotation marks and citations omitted). IPPs took on substantial risk in bringing this case. Antitrust class actions are one of the most complex types of litigation – and here, IPPs allege a conspiracy spanning eleven defendant families, multiple continents, four languages, and involving a global conspiracy that started over a decade ago. Moreover, there is a risk of no recovery by the class. This Court denied IPPs' initial motion for class certification and granted defendants' motion for summary judgment. Thus, recovery of 12 percent of damages attributable to the Samsung and Toshiba Defendants (under the IPPs' damage calculations) at this stage is outstanding given that judgment has already been entered in these defendants' favor and the class would receive no recovery from them unless the IPPs were first to obtain a reversal on appeal and then prevail or obtain a favorable settlement thereafter.

When examining the adequacy of the relief, subsection (ii) of Rule 23(e)(2)(C) asks the Court also to take into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  The Court finds that current plan of distribution is likely to maximize the effectiveness of the distribution of the settlement proceeds, and is as follows: After the claims period is closed and the settlement is finally approved with relevant appeals finished, an email will be sent to the account on file of class members who have filed timely claims. The email will provide instructions on how to receive payments electronically via PayPal, Google Wallet, Amazon Balance, and other popular methods. The administrator also will mail physical checks to Settlement Class Members who have requested to receive compensation in that manner.

Subsection (iii) of Rule 23(e)(2)(C) directs the Court to take into account "the terms of any

1   proposed award of attorney's fees, including timing of payment." As explained *supra*, none of the

2   signs related to class counsel's fees the Ninth Circuit identified in *Bluetooth*, 654 F.3d at 946 as

3   troubling are present in the settlement agreement. Paragraph 24 of the IPP-Samsung/Toshiba

4   Settlement Agreement relates to "Class Counsel's Attorneys' Fees and Reimbursement of

5   Expenses." For example, it states in part that "(a) Class Counsel may submit an application or

6   applications to the Court (the 'Fee and Expense Application') for distribution to them based solely

7   from the Settlement Fund (the 'Fee and Expense Award')." The "(b) . . . Fee and Expense Award, as

8   approved by the Court, shall be paid solely from the Settlement Fund to an account designated by

9   Lead Counsel within 30 days of the Settling Defendants completing payment of the Settlement

10  Amount so long as the Court has already approved the Fee and Expense Award" (ECF No. 2852-3, ¶

11  24).

12      Finally, subsection (iv) of Rule 23(e)(2)(C), the final subsection, instructs courts to consider

13  "any agreement required to be identified under Rule 23(e)(3)." There are no such agreements.

14      **3.    The settlement treats class members equitably relative to each other.**

15      This Court also finds that the settlement "treats class members equitably relative to each

16  other." Fed. R. Civ. P. 23(e)(2)(D). IPPs have proposed to distribute the funds *pro rata* to class

17  members based on: (1) the number of ODDs purchased by the class member; and (2) the number of

18  valid claims filed. There will be no reversion of unclaimed funds to any defendant. This equitable

19  treatment via a plan of allocation that reimburses class members based on the type and extent of their

20  injuries is generally considered reasonable. *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d

21  1152, 1154 (N.D. Cal. 2001); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal.

22  2008). *Pro-rata* distribution plans (as proposed here) have been approved in many prior antitrust

23  cases in this district. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944 JST,

24  2016 U.S. Dist. LEXIS 24951, at *229 (N.D. Cal. Jan. 28, 2016); *In re TFT-LCD (Flat Panel)*

25  *Antitrust Litig.*, No. 07-md-1827, 2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011).

26      The Advisory Committee Notes to the amended Rule 23 state that paragraphs (e)(2)(C) and

27  (e)(2)(D) "focus on what might be called a 'substantive' review of the terms of the proposed

28  settlements." Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (e)(2), Paragraphs (C) and

1   (D) (2018). The substantive considerations identified in these paragraphs support final approval of

2   the settlement.

3          **4.       The reaction of class members also supports final approval.**

4          The Ninth Circuit in *Bluetooth* held that the reaction of the class members to the proposed

5   settlement is also a relevant consideration. IPPs' notice program reached millions of consumers who

6   purchased the computers and ODDs involved in this case. Only two objections and two requests for

7   exclusion were received out of the millions of class members. The reaction of the class thus strongly

8   favors approval of the settlement. *See, e.g.*, *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577

9   (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent); *In re Linkedin*

10  *User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (finding "an overall positive reaction" by

11  the class where only 57 class members opted out and six objected out of a class of 798,000).

12                                  *       *       *

13         In summary, the Court finds that the proposed settlement is fair, reasonable, and adequate and

14  gives the settlements final approval. The Court will enter the final proposed judgment provided by

15  the settling parties.

16

17  **IV.    IPPS' REQUEST FOR ATTORNEY FEES OF 20 PERCENT OF THE COMMON**
         **FUND IS FAIR AND REASONABLE**

18

19         IPPs request: (1) an award of attorney fees in the amount of 20 percent of the $25 million

20  settlement fund; and (2) reimbursement of expenses IPPs' counsel have advanced to date on behalf

21  of the class.

22         In the Ninth Circuit, the district court has discretion in a common fund case to choose either

23  the "percentage-of-the-fund" or the "lodestar" method in calculating fees. *In re Online DVD-Rental*

24  *Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Regardless of what method is chosen as the

25  primary method to calculate attorneys' fees, the Ninth Circuit encourages district courts to conduct

26  "a cross-check using the other method." *Id.*

27

28

Hagens Berman requests 20 percent of the common fund – $5,000,000. Applying a lodestar cross-check, this would be a 1.59 multiplier from Hagens Berman's claimed lodestar of $30,031,834.70. The Court finds these fees to be fair and reasonable under either method.

**A.      The Request for Twenty Percent Is Appropriate**

When considering a request for attorney fees that is calculated using the percentage-of-recovery method, the Ninth Circuit instructs courts to consider the following factors: (1) whether counsel "achieved exceptional results for the class"; (2) whether the case was risky for class counsel; (3) whether counsel's performance "generated benefits beyond the cash settlement fund"; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and (6) whether the case was handled on a contingency basis. *Online DVD-Rental*, 779 F.3d at 954-55. The Ninth Circuit has instructed that although the benchmark of 25 percent "is not per se valid, it is a helpful 'starting point.'" *Id.* at 955.

**1.      Hagens Berman has achieved exceptional results for the class.**

Recovery of $25 million for the indirect purchaser class from the Samsung and Toshiba Defendants is an exceptional result. This Court certified 24 jurisdictions under California law (which are the same jurisdictions covered by the settlement), and IPPs' estimate of damages for those jurisdictions is approximately $1.074 billion (ECF No. 2457-2, ¶¶ 416-417 (Expert Report of Dr. Kenneth Flamm)). Considering each defendants' market share, the percent of recovery is as follows for all settlements achieved so far:

| Defendant Family | Contribution to Settlement Fund | Percent Share of ODD Market | Damages Attributed to Defendant Family | Percent Recovery for IPPs |
|---|---|---|---|---|
| HLDS | $73,000,000.00 | 26% | $283,483,200 | 26% |
| NEC/Sony (Joint Venture) | $35,000,000 | 10% | $107,380,000 | 33% |
| Panasonic | $16,500,000 | 12% | $128,856,000 | 13% |
| PLDS | $40,000,000 | 18% | $193,284,000.00 | 21% |
| Pioneer | $10,500,000 | 6% | $64,428,000.00 | 16% |
| TEAC | $5,000,000 | 2.5% | $26,800,000 | 19% |
| SEC/Toshiba Corp./TSST/TSSTK Samsung | $25,000,000 | 19% | $204,022,000 | 12% |
| **Total** | **$205,000,000** | **93.5%** | **$1,008,253,200** | **20%** |

These settlements of $205,000,000 represent recovery of 20 percent of the estimated damages attributable to the market share of these defendants, and more than 19 percent of total estimated damages ($1.074 billion) suffered by indirect purchasers. IPPs are also actively litigating their appeal against the BenQ and Quanta Defendants, and if they prevail on appeal, on remand IPPs could obtain additional recoveries from BenQ or Quanta either by settlement or after trial. These defendants would be jointly and severally liable for the remainder of the damages resulting from the conspiracy.

Measured against the most direct benchmark, the direct purchaser settlements in the case, the IPP settlements are superior. The IPP settlements almost triple the direct purchaser settlements with the Toshiba and Samsung Defendants: $25 million for IPPs, versus $9.2 million for DPPs (or 2.72x) (ECF No. 1724 at 2, 4).

The total IPP settlements to date of $205 million are also now more than 2.7 times higher the total settlements ($74.9 million) recovered by the direct purchasers.  The IPPs are requesting only 20 percent of the fees requested in these settlements, versus the 30 percent requested by and awarded to the direct purchasers in both of their fee motions. A comparison of the results obtained by Hagens Berman against the directly comparable benchmark provided by the DPP settlements shows that these settlements represent an excellent return for the IPP class.  In sum, this Court finds the results here to be exceptional on behalf of the IPP class.

### 2.    This case posed an enormous risk for class counsel.

The risk associated with this case plays an important role in determining a fair fee award. *Online DVD*, 779 F.3d at 955.  Here, those risks were substantial.  First, as explained *supra*, there was a real risk of no recovery by the class. This Court denied IPPs' initial motion for class certification and granted defendants' motion for summary judgment. Thus, recovery of an estimated 12 percent of damages attributable to the Samsung and Toshiba Defendants at this stage is outstanding given that judgment has been entered in these defendants' favor.

Second, these defendants have brought extensive resources to this litigation, including representation by highly skilled and experienced counsel. The resources available to opposing parties

are an important factor to be considered in the analysis of attorney fees. *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303-04 (W.D. Wash. 2001).

### 3.   The settlement generates benefits for the class beyond cash.

Counsel's performance has generated benefits beyond the cash settlement fund. The Samsung and Toshiba Settlement Agreement does not settle or compromise any of the IPPs' claims against any remaining defendant or co-conspirator. The settlement agreement states that Samsung's and Toshiba's sales should not be removed from the case, which is important because it preserves IPPs' claims for the remaining damages from the BenQ and Quanta Defendants (ECF Nos. 2852-3, ¶ 29).

### 4.   The market rate for antitrust lawyers with the experience of IPP counsel supports the request.

Hagens Berman's hourly rates are in line with market rates in this district. The most senior attorney on the case, Steve Berman, bills at an hourly rate of $975. This is well within the range of $200 to $1,080 charged by partners in California (ECF No. 2874-4). Other partners at Hagens Berman have hourly rates ranging from $550 to $950. Associates at Hagens Berman have hourly rates ranging from $300 to $825. Staff and contract attorneys have hourly rates ranging from $300 to $600. A number of these staff and contract attorneys were specifically hired because of their unique language skills (Korean, Japanese, and Chinese). Finally, translators, paralegals, and paralegal assistants have rates ranging between $125 and $325. All of these ranges are within the ranges accepted by other courts in this District and market surveys (ECF No. 2874-4).

### 5.   The burdens on class counsel support the request for attorney fees.

The Ninth Circuit instructs district courts to consider the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work). Here, this litigation has been pending for over eight years. In addition to the expenses reimbursed from the prior settlements, Hagens Berman has continued to advance costs. Many team members have been almost exclusively assigned to this litigation, billing thousands of hours reviewing documents, translating documents, and preparing for depositions. Team members prepared several complex and lengthy briefs in the summer and fall of 2017. This factor also supports the requested fee award.

6.      **Class counsel's litigation on a contingency basis.**

Hagens Berman accepted this case on a contingency basis. In negotiating the guilty pleas, the DOJ pointed to this civil litigation as the place where consumers would recover from their financial injury – emphasizing the importance of private litigation within the larger context of the enforcement of the antitrust laws. The contingent nature of this case means that Hagens Berman has a balanced set of interests – both to achieve excellent results for the class, and to achieve those results in as efficient manner as possible.

As noted by the judge presiding at the outset of this case, "potential recovery by indirect purchaser plaintiffs in this litigation is subject to a greater variety of imponderables" than other types litigation such as securities litigation under the PSLRA.[1]  A 20 percent fee award reasonably compensates Hagens Berman for the financial burden of this risky case. The fact that Hagens Berman bid for the right to represent the IPPs with a proposed fee structure that would have resulted in a lower fee is not dispositive, and is discussed in connection with the objections addressed below.

**B.      Using the Lodestar As a Cross-Check Further Supports the Requested Fees**

Indirect purchaser counsel have invested $30,031,834.70 in total attorney fees in this litigation. IPPs request for fees here would give them a 1.59 multiplier for the case overall, which is well within the range of multipliers awarded in other, similar litigation.

A lodestar is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. A court may give an upwards adjustment to a lodestar (though a positive multiplier) to reflect a host of "reasonableness" factors, including: (1) the amount involved and the results obtained, (2) the time and labor required, (3) the novelty and difficulty of the questions involved, (4) the skill required to perform the legal service properly, (5) the preclusion of other employment by the attorney due to acceptance of the case, (6) the customary fee, (7) the experience, reputation, and ability of the attorneys, and (8) awards in similar cases. *Id.* at 941-42. These are referred to as the *Kerr* "reasonableness" factors after

---

[1] Order at 8, June 4, 2010, ECF No. 96.

the Ninth Circuit's opinion in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Each of the factors supports the positive multiplier requested by IPPs' counsel.

### 1. Class counsel has achieved exceptional results for the IPP class.

The first factor, the results for the class, strongly supports an upwards adjustment from the lodestar. As outlined above, the results achieved on behalf of the class exceed those of the direct purchasers and are excellent by any measure.

### 2. IPPs' counsel have expended significant resources on behalf of the class.

Hagens Berman was appointed as sole lead counsel on behalf of the IPP class. As a result, Hagens Berman has staffed this case entirely with its own resources during the pendency of the eight years of litigation. In total, two partners at Hagens Berman have taken the lead questioning of 50 current and former employees of the co-conspirators deposed in this case. Hagens Berman committed the time of experienced antitrust litigators to this case, in addition to countless hours from staff attorneys to review documents and assist in the prosecution of this litigation. Hagens Berman attests that it committed substantial internal resources to the document review in this case – review of over 2.9 million documents, many of which were produced in foreign languages such as Chinese, Korean, and Japanese. Between June 1, 2017 and October 31, 2018, attorneys and professionals at Hagens Berman spent 5,322.30 hours working on this case. Hagens Berman also has $650,268.62 in unreimbursed expenses (in addition to the $5,073,042.92 in expenses previously awarded by this Court). This commitment of time, personnel, and money to the indirect purchaser class supports the requested award.

### 3. This case has presented novel and difficult questions, requiring extraordinary skill by IPPs' counsel.

The third and fourth *Kerr* factors – the novelty of the questions presented by the litigation and the skill required to perform the legal services properly – both support the requested award. IPPs have faced vigorous defense advocacy. Defendants have claimed that "no case has certified a class" on the same basis and record as this case.[2] Regarding this Court's choice-of-law analysis, defendants

---

[2] Petition for Permission to Appeal the District Court's Order Granting Class Certification at 1, *Wagner, et al. v. Hitachi Ltd., et al.*, No. 16-80026 (9th Cir. Feb. 22, 2016), ECF No. 1.

argued to the Ninth Circuit that "[n]either this Court nor the California Supreme Court has ever addressed whether the Cartwright Act can be applied across-the-board to all jurisdictions with '*Illinois Brick* repealer' statutes."[3] In litigating against TSST-Korea and the TSST-Korea employee "John Doe," IPPs addressed the unique issue of whether DOJ recordings were "grand jury" materials.

IPPs also faced numerous complex, challenging, and non-routine issues in opposing defendants' summary judgment motions, *Daubert* motions, and motion for decertification in the summer and fall of 2017. These issues included defending against myriad challenges to the methods and conclusions of IPPs' experts, demonstrating that fact disputes precluded summary judgment on the issue of the existence of the alleged conspiracy, successfully opposing the decertification motion, and showing that proper application of the FTAIA would not reduce the amount of IPPs' damages should they succeed on the merits.  All of these issues have required advocacy and skill beyond routine litigation.

### 4.    Other potential employment.

Hagens Berman represents that it has dedicated a core team of individuals to the litigation of this action, and that as a consequence, many of these professionals worked nearly exclusively on this case for some number of years. Ten attorneys have dedicated over a thousand hours each to this litigation, and many of those attorneys have devoted many thousands of hours (ECF No. 2874-1, ¶ 8). Hagens Berman's choice to commit the resources of its firm, potentially forgoing other cases and other projects, supports the request for fees.

### 5.    The requested fee is reasonable when compared to fees in similar litigation.

The sixth and eight *Kerr* factors – the customary fee and awards in similar cases – both support Hagens Berman's fee request. IPPs request a multiplier of 1.59, which is well within the range of other similar cases. *See, e.g.*, *Vizcano v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (upholding a 28% fee award that constituted a 3.65 multiple of lodestar); *id*. at 1052-54 (noting district court cases in the Ninth Circuit approving multipliers as high as 6.2, and citing only 3

---

[3] *Id*. at 20.

of 24 decisions with approved multipliers below 1.4); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 96 (2d Cir. 2005) (finding 3.5 multiplier reasonable); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *10 (finding that a multiplier of 1.96 was well within the range of acceptable multipliers); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (finding that the lodestar cross check, with a 1.6 multiplier, confirmed the reasonableness of the percentage-based calculation); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (finding a 2.83 multiplier appropriate); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *31 (N.D. Cal. Mar. 18, 2013) (finding that a lodestar multiplier of 1.66 confirmed the reasonableness of the percentage-based attorneys' fees calculation, 25% of the settlement fund); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 U.S. Dist. LEXIS 57765, at *10 (N.D. Cal. May 24, 2010) (finding that a multiplier of 2 should be applied).

**6.      The reputation and ability of Hagens Berman supports the requested fee.**

Hagens Berman is a highly-respected class action litigation firm and has litigated some of the largest class actions in history, including the tobacco litigation, *In re Visa MasterCard Litigation*, and the *In re Toyota Motor Corp. Unintended Acceleration Litigation*. Its abilities and willingness to litigate on behalf of the class is unquestionable.

*      *      *

In conclusion, the Court finds that under either measurement – lodestar or percentage-of-the-fund – the IPPs' request for attorney fees is fair and reasonable. The Court awards Hagens Berman the requested amount of $5,000,000 in attorney fees.

**V.      SEPARATE REIMBURSEMENT OF EXPENSES WILL BE DISALLOWED**

Attorneys who create a common fund for the benefit of a class ordinarily are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary, and directly related to the prosecution of the action. *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In connection with the prior settlements awards for such expenses were included, notwithstanding the fact that Hagens Berman's bid submitted at the outset of this litigation offered to accept representation on the terms that no separate

1   expense award would be made on top of any percentage-based fee award. In its discretion, the Court

2   allowed expense recovery as part of the prior fee awards, just as it determined that recovery at a

3   higher percentage rate than specified in the bid was appropriate. The approval of fees at a higher rate

4   than specified in the bid, however, was predicated in part on the fact that the amount was still

5   substantially lower than would have been justified in the absence of the bid. Here, while the fee

6   request itself (20%) still reflects a rate that is lower than might otherwise be supportable under the

7   law and the facts but for the bid, a further adjustment to the overall request is warranted in light of

8   the total fee and expense recovery to date, and given that Hagens Berman obtained the right to

9   represent IPPs in part as a result of the payment structure it proposed. Accordingly, no separate out-

10  of-pocket expense reimbursement will be allowed in connection with this round of settlements.

11

12  **VI.    THE REQUESTED ADMINISTRATIVE EXPENSES SHALL BE PAID FROM THE
         SETTLEMENT FUND**

13
14          This Court in its order preliminarily approving the Toshiba/Samsung Settlement and

15  dissemination of class notice, held that "[a]ll reasonable expenses incurred in identifying and

16  notifying members of the Settlement Classes, as well as administering the Settlement Fund, shall be

17  paid as set forth in the Settlement Agreement" (ECF No. 2860, ¶ 16). The Toshiba/Samsung

18  Settlement Agreement permits use of a maximum of $700,000 of the Settlement Fund towards the

19  costs of administration (ECF No. 2852-3, ¶ 20(a)).

20          Class Counsel requests approval of payment from the settlement fund of what it attests to be

21  the actually-incurred and future estimated $545,000 in notice and administrative costs associated

22  with the current settlement (ECF No. 2874-1, ¶ 37). This would leave a remaining amount of

23  $155,000 in reserve from the $700,000 originally allocated for notice and administrative costs in this

24  settlement.

25          The Ninth Circuit has approved of settlement administration and award procedures where

26  money from a settlement fund was used for the costs of notice and administration. *See Online DVD-*

27  *Rental*, 779 F.3d at 940, 949-56. This Court approves of the request for payment from the settlement

28  fund of $545,000 toward notice and administrative costs. The amount of $155,000 shall remain in

1    reserve from the $700,000 originally allocated for notice and administrative costs in this

2    settlement. Class Counsel may request approval from the Court of the use of these funds for notice

3    and administrative costs at the appropriate time, should such need arise. If not needed, this amount

4    will be included in the net Settlement fund to be distributed to the Class.

5                    **VII.    THE OBJECTIONS ARE OVERRULED**

6            Two objectors have filed objections to the fairness of the settlement. Neither objection has

7    merit. To the extent that an objection is not directly addressed below, this Court has considered the

8    objection and it is overruled.

9    **A.      Objections by Connor Erwin**

10           One of the objections is filed by Connor Erwin (unofficially represented by Christopher

11   Bandas) (ECF No. 2877). This Court overruled Erwin's objections to the previous two rounds of

12   settlements. Plaintiffs have introduced evidence suggesting that Erwin and Bandas frequently object

13   to class action settlements, engaging in practices like those that have been condemned by many

14   courts. *See, e.g.*, *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d 1330, 1361 n.30 (S.D. Fla.

15   2011) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax

16   that has no benefit to anyone other than to the objectors.") (alteration in original; internal citation

17   omitted); *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F.Supp.2d 1107, 1109 (D. Minn. 2009)

18   (reprimanding professional objectors whose "goal was, and is, to hijack as many dollars for

19   themselves as they can wrest from a negotiated settlement"); *In re Cathode Ray Tube (CRT)*

20   *Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (reprimanding objector for working with

21   attorney who "routinely represents objectors purporting to challenge class action settlements, and

22   does not do so to effectuate changes to settlements, but does so for his own personal financial gain;

23   he has been excoriated by Courts for this conduct") (footnote omitted).  As Erwin points out,

24   however, Rule 23 now requires court approval of any payment or consideration provided to an

25   objector in exchange for forgoing or withdrawing an objection to a proposed settlement, or for

26   forgoing, dismissing, or abandoning an appeal from a judgment approving the settlement, thereby

27   ameliorating at least some of the concern that objectors may act from questionable motives.

28

1

**1.      Erwin's objections regarding attorney fees.**

2

The Ninth Circuit "has established 25% of the common fund as a benchmark award for

3

attorney fees." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "That percentage

4

amount can then be adjusted upward or downward depending on the circumstances of the case." *de*

5

*Mira v. Heartland Emp't Serv., LLC*, No. 12-CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal.

6

Mar. 13, 2014).  As Courts in this district have recognized, "'in most common fund cases, the award

7

exceeds the benchmark.'" *Id.* (alteration omitted) (quoting  *Omnivision*, 559 F. Supp. 2d at 1047).

8

And "[w]hile the benchmark is not per se valid," the Ninth Circuit has recognized that requesting

9

"the 25% benchmark award only" demonstrates the reasonableness of a fee request.  *In re Online*

10

*DVD*, 779 F.3d at 955. Courts in this district have held similarly. *See Buccellato v. AT & T*

11

*Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *1 (N.D. Cal. June 30, 2011) (holding

12

that fee request was "reasonable under the percentage of the common fund method, as it is equal to

13

this Circuit's benchmark of 25 percent").

14

The most comparable cases to this one are the large antitrust class actions involving cartels of

15

electronics manufacturers (often involving many of the same defendants here) that have been

16

litigated in this district. In those cases, courts have routinely awarded between 25-30 percent for

17

attorney fees: *CRT* (30 percent); *TFT-LCD* (30 percent); *TFT-LCD* (30 percent); *TFT-LCD* (28.6

18

percent); *SRAM* (30 percent); *DRAM* (25 percent).[4]

19

Hagens Berman has requested only 20 percent of the total amount recovered in attorneys'

20

fees. This is below the comparable benchmark (25 percent) established by the Ninth Circuit.

21

Moreover, as explained *supra*, the six factors identified by the Ninth Circuit in *Online DVD-Rental*

22

23

---

[4] *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 183285, at *2-3 (N.D. Cal. Jan. 14, 2016) (30 percent); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) (30 percent); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 SI, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) (30 percent); *In re TFT-LCD (Flat Panel) Antitrust Litig. (LCD)*, No. M 07-1827 SI, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013) (28.6 percent); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. June 30, 2011), ECF No. 1370 (30 percent); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486, 2007 WL 2416513 (N. D. Cal. Aug. 16, 2007) (25 percent).

24

25

26

27

28

support an award of at least 20 percent of the settlement. Erwin argues that three of these factors do not support the requested award.  The $25 million settlement with Samsung and Toshiba, however, constitutes an exceptional return for the class, as compared to the most direct comparable benchmark, the DPP settlements in this case; considering the difficulties and risks posed in this litigation; and as part of an overall recovery that compares favorably to other cases in this District and elsewhere.  Erwin also argues that the burden to achieve the current settlement does not justify a 20 percent award because of the smaller lodestar between the second and third round of settlements (in fact, more than $2 million), as compared to the lodestar from the case's inception to the first and second rounds of settlements. It is reasonable to conclude, however, that all of the work done – hours spent and expenses incurred – earlier in the case was necessary to achieve the settlement with Samsung and Toshiba. Finally, contrary to Erwin's argument, the "market rate for the particular field of law (in some circumstances)" factor supports the award; Hagens Berman's hourly rates are in line with market rates in this District. The three other *Online DVD-Rental* factors not challenged by Erwin also support the 20 percent fee award.

Erwin states that the requested fees would lead to windfall profits for Hagens Berman. As recognized by the court in *CRT*, "[r]ather than abandon the percentage-of-recovery method, the best way to guard against a windfall is first to examine whether a given percentage represents too high a multiplier of counsel's lodestar." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07- 5944 JST, 2016 U.S. Dist. LEXIS 102408, at *70 (N.D. Cal. Aug 3, 2016). In *CRT*, the court decided that a 2.89 multiplier for the lead counsel was reasonable and rejected objections based on the "megafund" principle.[5] The Ninth Circuit in *Vizcaino* surveyed attorney's fees in common funds between $50-200 million and found that multipliers in 20 of 24 cases were between 1.0 and 4.0. *See Vizcaino*, 290 F.3d at 1051 n.6. Indeed, "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (collecting cases); *accord, e.g., In re Aremissoft Corp. Secs. Litig.*,

---

[5] Corrected Special Master's Report & Recommendation re Allocation of IPP Class Counsel Attorneys' Fees, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal. Oct. 24, 2016), ECF No. 4976.

210 F.R.D. 109, 134-35 (D.N.J. 2002) (awarding 28 percent of a $194 million settlement, resulting in a lodestar multiplier of 4.3).

Hagens Berman's lodestar would be 1.59, at the low end of the range defined by the Ninth Circuit in *Vizcaino*.  Hagens Berman's fees are reasonable under all the ordinary considerations.

### 2.   The "megafund" issue.

Erwin objects that this case is a "mega-fund" case, requiring an automatic reduction in attorney fees. But there is no automatic rule in the Ninth Circuit which requires an automatic percentage – instead, the Ninth Circuit requires a comprehensive analysis of the reasonableness of any award. *See Vizcaino*, 290 F.3d at 1047 (rejecting categorical "megafund" rule); *Online DVD-Rental*, 779 F.3d at 949 (courts should avoid "mechanical or formulaic" rules in awarding fees in favor of totality of circumstances analysis); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 U.S. Dist. LEXIS 51271, at *67 (N.D. Cal. Mar. 29, 2013) (rejecting similar megafund objections). IPPs provided this Court with a detailed analysis of their lodestar, which would yield a reasonable 1.59 multiplier. As recognized by the court in *CRT*, "[r]ather than abandon the percentage-of-recovery method, the best way to guard against a windfall is first to examine whether a given percentage represents too high a multiplier of counsel's lodestar." *CRT*, 2016 U.S. Dist. LEXIS 102408, at *70. This Court has performed that analysis here.

### 3.   Erwin's objections regarding the lodestar.

Erwin argues that the fees Hagens Berman are receiving are too high because the firm completed only $2,054,397 million of additional fee work since the last round of settlements, but has now recovered an additional $25 million. The current settlement, however, necessarily depended in substantial part on the work done from the outset of the case. As long as the total fee recovery is reasonable in light of the total monetary recovery for the class and the total lodestar cross-check, it is not relevant that settlements have been reached with various groups of defendants at different points in time. Even though hours included in the lodestar at the time of earlier fee awards also underlie the cross-check lodestar in subsequent awards, no risk of double recovery exists because the original work, combined with new work, has created additional benefits to the class. Looking only to the work done between the last settlement and the current one would distort the analysis and create a

1   disincentive to settle in multi-defendant litigation, as anything less than a settlement with all

2   defendants would penalize plaintiffs.

3       In other cases involving multiple defendants, courts have calculated the reasonableness of

4   attorney fees based on a consideration of the total work that attorneys have done up to the point of

5   settlement. *TFT-LCD*, No. M 07-1827 SI, 2013 WL 1365900, at *7 (evaluating reasonableness of fee

6   request at the end of litigation following multiple rounds of settlements and looking at cumulative

7   lodestar as a cross-check on reasonableness). The same approach is warranted here, and the resulting

8   lodestar of 1.59 is at the low end of the range of comparable settlements.

9       Furthermore, a lodestar of 2.43 for this round of settlements would still be reasonable.  The

10  Ninth Circuit in *Vizcaino* found a general range of lodestar multipliers between 1.0 and 4.0 for

11  settlements between $50 and $200 million. A 2.43 lodestar here would be in the middle of that range

12  identified by the Ninth Circuit.

13      **4.      Erwin's objection regarding Hagens Berman's lead counsel submission.**

14      Erwin renews the objections he made to the prior settlement rounds that the fee award should

15  be limited by the proposal Hagens Berman submitted at the outset of the litigation in connection with

16  its bid to be appointed IPP counsel.  Erwin contends no further fees should be awarded at this

17  juncture because the amounts awarded to date already exceed what Hagen Berman would recover at

18  this stage were the original proposal enforced. In its discretion, the Court has looked to the original

19  proposal as supporting the fact that the fees awarded at each round of settlement have been

20  substantially less than would have been justified absent that proposal, although admittedly

21  substantially higher than had the terms of that proposal been strictly followed. At this round,

22  unreimbursed expenses have been disallowed in further recognition of the proposal. As set out in the

23  prior approval orders, however, under all the circumstances present here, the fees requested and

24  awarded are reasonable.  The explanations for that conclusion set out in the prior orders are adopted

25  and incorporated here.

26      Finally, Erwin again requests that proposal be unsealed.  IPPs continue to object that

27  unsealing the proposal would provide the remaining defendants with attorney work product and

28  insight into how Hagens Berman saw the valuation of this case at certain stages.  At this juncture,

there is still good cause to maintain the proposal as a whole under seal.  Hagens Berman, however, has already disclosed the basic structure of the fee proposal, and some of the specific percentages.  It is now appropriate to unseal page 10, and only page 10 of Hagen Berman's *In Camera* Submission In Support of Appointment as Interim Lead Counsel for Indirect Purchasers, filed under seal as of May 13, 2010. (Dkt. No. 114)  The IPPs are directed to publicly efile a copy of that page forthwith.

**B.    Objections by Barbara Cochran**

Objector Barbara Cochran's two paragraph objections are nearly identical to the objections she raised to the first round of settlements.[6] This Court overruled those objections (ECF No. 2133 at 24), and does so again here. Cochran argues that the notice does not explain the claims process, including that it may impose "unreasonable documentation requirements," but no receipt is required to make a claim. She also objects to the attorneys getting paid more than their lodestar, without raising any further specific objection to the request for attorney fees.  An objector "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged." *McGrath v. Cty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995), and Cochran has not met that burden here.

IT IS SO ORDERED.

DATED:  2/21/19

_____
RICHARD SEEBORG
United States District Judge

---

[6] *Compare* Objection of Barbara Cochran, Dec. 11, 2018, ECF No. 2876, *with* Objection of Barbara Cochran, Oct. 27, 2016, ECF No. 1986.