Guido Saveri (22349)
   *guido@saveri.com*
R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Cadio Zirpoli (179108)
   *cadio@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Chairman of the Executive Committee
for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION | Case No. 3:10-md-02143 RS<br><br>MDL No. 2143 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | **DECLARATION OF RACHEL CHRISTMAN RE CLAIMS PROCESSING AND DISTRIBUTION OF THE NET SETTLEMENT FUNDS** |

1   I, Rachel Christman, declare as follows:

2   1.   I am employed by Gilardi & Co., LLC ("Gilardi"), located at 3301 Kerner Blvd.,
3   San Rafael, California.  Gilardi was hired by Class Counsel as the Settlement Administrator in this
4   matter.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of
5   the facts set forth herein and, if called as a witness, could and would testify competently thereto.

6   2.   Gilardi was formed in 1984 to assist attorneys with securities, antitrust, consumer
7   protection class actions, and other similar matters.  Gilardi specializes in designing, developing,
8   analyzing, and implementing settlement administration plans that support due process.  During the
9   past 30 years Gilardi has administered class notice and class settlements in over 3,500 class
10  actions, and has distributed more than $20 billion in assets.

11  3.   I make this declaration to report on: (a) a summary of Notice Procedures; (b)
12  Gilardi's processes for reviewing, analyzing, and validating the claims received; (c) calculating the
13  total qualifying purchases for the initial distribution of the Net Settlement Funds; and (d)
14  calculating the *pro rata* share of the Net Settlement Funds to be distributed to each approved
15  claimant.

16  **Summary of Notice Procedures**

17  4.   As further outlined in the *Amended Declaration of Markham Sherwood re*
18  *Dissemination of HLDS Notice to Class Members and Requests for Exclusion*, filed August 2, 2013
19  (ECF No. 958), the *Declaration of Ross Murray In Support of Final Approval of Class Action*
20  *Settlement with Panasonic*, filed April 24, 2014 (ECF No. 1220-2), the *Declaration of Ross Murray*
21  *In Support of Final Approval of Class Action Settlement with Defendant NEC Corporation*, filed
22  July 24, 2014 (ECF No. 1358-2), the *Declaration of Ross Murray Regarding Dissemination of*
23  *Notice and Proof of Claim Forms to Potential Class Members*, filed April 23, 2015 (ECF No.
24  1570-1), and the *Declaration of Rachel Christman re Dissemination of BenQ, Pioneer, PLDS, QSI,*
25  *Sony, TEAC, TSST Notice to Class Members and Requests for Exclusion*, filed March 7, 2016 (ECF
26  No. 1809), Gilardi has performed outreach to potential Class Members in five phases:

a. Dissemination of HLDS Notice to Class Members and Requests for Exclusion ("HLDS Notice") took place on May 31, 2013. Gilardi mailed notice to 436,488 potential Class Members, and sent notice via e-mail to 274,847 potential Class Members. This notice provided Class Members with the opportunity to object to or request exclusion from the settlement with the HLDS Defendants (the "HLDS Settlement").

b. Dissemination of Panasonic Notice to Class Members and Requests for Exclusion ("Panasonic Notice") took place on December 13, 2013. Gilardi mailed notice to 325,278 potential Class Members. This notice provided Class Members with the opportunity to object to or request exclusion from the settlement with the Panasonic Defendants (the "Panasonic Settlement").

c. Dissemination of NEC Notice to Class Members and Requests for Exclusion ("NEC Notice") took place on May 8, 2014. Gilardi mailed notice to 325,312 potential Class Members. This notice provided Class Members with the opportunity to object to or request exclusion from the settlement with Defendant NEC Corporation (the "NEC Settlement").

d. The "Initial Claims Mailing" took place on March 23, 2015, wherein Gilardi mailed a notice and Proof of Claim form to 446,751 potential Class Members, and sent notice via e-mail to 176,866 potential Class Members. This notice provided Class Members with the opportunity to file a claim for payment from the HLDS, Panasonic, and NEC Settlements.

e. The "Second Claims Mailing" took place on January 7, 2016, wherein Gilardi mailed a notice and Proof of Claim form to 258,778 potential Class Members. This notice provided Class Members with the opportunity to object to or request exclusion from the settlements with Defendants PLDS (the "PLDS Settlement"), TSST (the "TSST Settlement"), Sony (the "Sony Settlement"), BenQ (the "BenQ Settlement"), TEAC (the "TEAC Settlement"), QSI (the "QSI Settlement), and Pioneer (the "Pioneer Settlement"), and with the opportunity to file a claim for payment from the settlements with all Defendants.[1]

---

[1] Claimants who had previously filed claims in the Initial Claims Mailing were advised it was not necessary to file a second claim in the Second Claims Mailing so long as no details on the claim had changed. All claims received in the Initial Claims Mailing were considered for payment alongside all claims submitted in the Second Claims Mailing.

5.      In addition to the direct notice outreach described above, summary notice was published in the *Wall Street Journal* during each phase listed above, and a settlement website (www.ODDDirectPurchaserAntitrustSettlement.com), case-dedicated email address (info@ODDDirectPurchaserAntitrustSettlement.com), Post Office Box, and toll-free number (888-270-0759) were established, allowing potential Class Members access to additional information and documents about the settlements, including the settlement agreements, the Preliminary and Final Approval Orders, the Final Judgments, the Notices, Summary Notices, and a downloadable Proof of Claim form.

**Requests for Exclusion**

6.      Class Members were provided with the opportunity to request exclusion from individual settlements while maintaining their claims in the remaining settlements. Gilardi received requests for exclusion from 17 entities and 118 individual persons, a total of 135 requests. Of these, seven also filed a claim for payment from the Settlement Funds (referred to herein as "Opt-Out Claimants"). Attached hereto as Exhibit A is a list of all requests for exclusion along with detail from which settlement each request was made and identification of the seven Opt-Out Claimants.

**Collection and Evaluation of Claim Forms**

7.      Class Members who wished to file claims were able to do so by completing the Proof of Claim form in its entirety and mailing it to Gilardi no later than the postmark deadline of March 7, 2016. Class Members also had the option of visiting the settlement website and filing the Proof of Claim form electronically by March 7, 2016. The format of the Proof of Claim form was designed to be clear and simple so that potential claimants could easily fill out the form and provide information required in support of their claims. The Proof of Claim form instructions required that Class Members submit a summary of all Optical Disk Drives or Optical Disk Drive Devices (referred to collectively herein as "ODDs") purchased in the United States directly from any of the Defendant entities, or their subsidiaries or affiliates during Class Periods of January 1, 2004 through December 31, 2011 for the HLDS Settlement (the "HLDS Class Period"), and

1  January 1, 2004 through January 1, 2010 for the remaining settlements (the "non-HLDS Class
2  Period")[2].

3      8.    As of the date of this declaration, Gilardi received 28,146 claims. For quality control
4  purposes, each paper and electronic Proof of Claim form submitted was given a unique claim
5  number and entered into a database. The total amount of purchases claimed for these expressed in
6  terms of ODD Dollars[3] was $13,012,583,861.78. Of the 28,146 claims filed, 1,647 were filed after
7  the March 7, 2016 Claims Filing Deadline. To facilitate the greatest number of claims possible and
8  maximize the benefit to the Class, Gilardi recommends approving all late claims which are
9  otherwise valid, a total of 1,556 claims representing 1.65% of the approved ODD Dollars.

10      9.    As explained further below, after extensive claims analysis, Gilardi has verified that
11  25,424 submitted claims are eligible and valid.

12      10.    Gilardi reviewed each Proof of Claim form submitted for completeness and
13  determined that some claims were deficient or incomplete. Among the various types of deficiencies
14  found were: (a) claimants failed to provide a list of ODDs purchased from Defendants on the Proof
15  of Claim form or only partially completed the requested list on the Proof of Claim form; (b)
16  claimants failed to sign the Proof of Claim form; (c) claimants included ineligible purchases (such

---

[2] The two "Settlement Classes" are: 1) for the HLDS settlement: "All individuals and entities who, during the period from January 1, 2004 through December 31, 2011, purchased Optical Disk Drives and Optical Disk Drive Devices in the United States directly from the Defendants, their subsidiaries, or their affiliates. Excluded from the Class are Defendants and their parents, subsidiaries, affiliates, and all governmental entities", and 2) for the remaining settlements (referred to herein collectively as "non-HLDS"): "All individuals and entities who, during the period from January 1, 2004 until at least January 1, 2010 purchased one or more Optical Disk Drives or a laptop or desktop computer incorporating an ODD in the United States directly from the Defendants, their subsidiaries, or their affiliates. Excluded from the Class are Defendants and their parents, subsidiaries, affiliates, and all governmental entities.

[3] As explained in the claim form, products containing Optical Disk Drives have been assigned certain dollar values to account for the portion of the product's price attributable to the Optical Disk Drives inside. To determine each claimant's claimed amount, their purchase data has been converted to "ODD Dollars" based upon these valuations. Specifically, Optical Disk Drives were valued at 100% of their purchase price, and ODD Devices were valued at the following fixed amounts: desktop or laptop computer: $32, Sony Playstation 2: $20, Sony Playstation 3: $73, CD player/recorder: $15, DVD player/recorder: $20, and each purchase of a Blu-Ray player/recorder: $73.

1   as indirect purchases at retail, purchases of electronics and/or other products which do not qualify
2   as ODDs, ODD purchases made outside of the applicable Class Periods, ODD purchases made
3   from non-Defendants, or ODD purchases made outside of the United States); (d) a Third Party
4   Filer (an entity that files a claim on behalf of a claimant pursuant to assignment or service
5   agreement) failed to provide a signed Service Agreement demonstrating agency, or sufficient claim
6   information or documentation of purchases by the assignor; (e) claimants submitted duplicate Proof
7   of Claim forms (including instances of potential fraudulent filings where numerous Proof of Claim
8   forms were submitted on behalf of a single entity, in many instances with an attempt to slightly
9   vary the claimant contact information in an attempt to avoid detection); or (f) claimants submitted
10  competing Proof of Claim forms (two completed Proof of Claim forms were submitted on behalf of
11  the same claimant by two separate entities).

12       11.   Deficiency Outreach: Where a claim exhibited one or more of the criteria addressed
13  in ¶¶ 10(a) – 10(d) herein, Gilardi mailed or emailed (where email addresses were available) a
14  Notice of Deficient Claim which outlined the deficiencies in the claim and provided claimants with
15  the opportunity to correct the deficiencies. Where no response was provided, the deficient claim
16  was rejected without further outreach. Where a response was provided, Gilardi reviewed the
17  response and corrected the deficiency accordingly. If the response was not sufficient to clear the
18  deficiency(ies) on a claim, no further outreach was performed by Gilardi unless requested by the
19  claimant.

20       12.   Duplicate Review: Where a claim fell into one or more of the categories addressed
21  in ¶¶ 10(e) – 10(f) herein, Gilardi reviewed the potential duplicate claims to remove complete
22  duplicates (where a single claimant inadvertently filed more than one identical claim) and to
23  consolidate partial duplicates (where a single claimant filed more than one claim with unique
24  purchase information; in such cases the purchase information from both claims was consolidated
25  into a single master claim with the second claim marked as a duplicate filing). Where competing
26  claims were filed, Gilardi defaulted to the claim filed by the claimant (where a competing claim
27  had been filed by a Third Party Filer) or reached out to both parties to identify the master and
28

1  duplicate claims. All complete duplicate, partial duplicate and competing claims have been
2  resolved.

3        13.    Fraud Review: Gilardi reviewed all filed claims and flagged submissions where
4  certain criteria were met (multiple claims filed using a single IP address, multiple claims filed with
5  a pattern of slight variance in the claim name, email address, and/or mailing address, or claims
6  filed by individuals who have been previously identified as fraudulent filers in other cases which
7  Gilardi has administered). Claims which were determined to be fraudulent were rejected and sent a
8  Notice of Rejected Claim. Claims which were identified as potentially fraudulent were sent a
9  Request for Documentation. Where no response was provided, the potentially fraudulent claim was
10 rejected without further outreach. Where a response was provided, Gilardi reviewed the response
11 and provided a determination.

12       14.    The notifications addressed in ¶¶ 11 – 12 above as well as the Requests for
13 Documentation addressed in ¶¶ 16 & 13 and the final determination notices addressed in ¶ 26
14 below were sent on a rolling basis as determinations were made. To the extent multiple claims
15 could be addressed in a single notice (for entities who filed claims on behalf of multiple claimants),
16 or where a notice served multiple purposes (for example, outlining a deficiency and also requesting
17 documentation), the notices were consolidated. As of the date of this declaration, Gilardi has sent
18 2,954 such notices addressing 3,093 claims, and the deadline to respond or dispute for each has
19 passed.

20       **Claim Documentation Review**

21       15.    Claimants were advised on the Proof of Claim form that documentation was not
22 required at the time of filing, though documentation may be requested at a later date. Though
23 documentation was not required, some claimants submitted unsolicited documentation along with
24 the filed Proof of Claim form. Regardless of the size of the claim, Gilardi reviewed all
25 documentation submitted with an original claim.

26       16.    Additionally, in collaboration with Class Counsel, Gilardi evaluated all filed claims
27 to establish a threshold at which claimants would be required to submit documentation to support
28

1  their claimed purchases. The threshold was set at $100,000 in claimed ODD Dollars. Claims which fall at or above the review threshold are referred to herein as "Top Claims," where claims which fall below the review threshold are referred to as "Basic Claims." Of the 28,146 claims filed, 230 claims (or 0.82% of the total count of claims) originally were treated as Top Claims, accounting for 99.45% of the total amount of ODD Dollars being claimed. Gilardi mailed or emailed (where an email address was available) a Request for Documentation to these claimants on a rolling basis as determinations were made.

17. Between November 10, 2016 and January 31, 2017, Gilardi received partial purchase records from Class Counsel. These records (referred to herein as the "Defendant Purchase Records") were comprised of Excel spreadsheets of known Optical Disk Drive and computer purchases from the Defendants by Class Members during the non-HLDS Class Period. Where a Top Claim included claim purchase information consistent with the Defendant Purchase Records, the claim was approved.

18. Top Claims which included claimed purchases in excess of the Defendant Purchase Records or which were comprised of purchases not addressed in the Defendant Purchase Records[4] were reviewed based on documentation submitted by the claimant. Claim documentation was reviewed to confirm that purchases were: 1) ODDs; 2) purchased directly from a Defendant; 3) purchased within the United States; and 4) purchased within the relevant Class Periods for each group of settlements. The majority of documentation submitted by Top Claims for review was in the form of internal recordkeeping in database format (such as Microsoft Excel). Additional documentation types provided included internal recordkeeping in pdf format, purchase orders, invoices, screen shots of computer images, bank records, bankruptcy documents and other such documentation. Where claimants did not respond to Requests for Documentation, they were

---

[4] The Defendant Purchase Records did not contain information pertaining to the purchase of Optical Disk Drive devices other than computers. To the extent a Top Claim included purchases of Blu-Ray player recorders, DVD player recorders, CD player recorders, Sony Playstation 2, or Sony Playstation 3, or where a Top Claim did not appear in the Defendant Purchase Records at all, additional document review was warranted.

notified that their claims were adjusted to the amount reflected in the Defendant Purchase Records or, if there was no such data, that the claim was denied.

19. The level of detail in this documentation varied from simple (e.g., 3-4 columns providing only the amount of information necessary to validate a claim) to highly complex (e.g., multiple tabbed databases with thousands of line items over dozens of columns constituting the full un-filtered internal recordkeeping for a claimant). Some documents provided a description of the product purchased (i.e., "DVD Player," "CD Player," etc.) where others provided only product numbers or serial numbers. Where no detailed description was available, Gilardi manually reviewed the product or serial numbers utilizing online searches to determine if the product was in fact qualifying. Gilardi manually reviewed thousands of line items of data across numerous Top Claims to determine eligibility.

20. Over the course of document review, a number of claims were added to and subtracted from the Top Claims category as a result of detailed review and correspondence with claimants. There were ultimately 259 claims reviewed as Top Claims, representing a collective claimed amount of $12,991,850,552.05 in ODD Dollars. After thorough review of both the Defendant Purchase Records and all relevant documentation submitted to support these claims, 6 have been withdrawn by claimants, 33 have been identified as duplicate filings and thus removed or consolidated, 42 have been rejected, and 8 have been revised downward to become Basic Claims and were approved. The remaining 170 Top Claims are being recommended for partial or complete approval. These claims represent a collective amount of $7,827,408,156.81 in approved ODD Dollars.

21. The remaining 27,887 Basic Claims represent a collective claim amount of $20,733,309.73 in ODD Dollars (0.16% of all ODD Dollars claimed). Of these, 358 have been withdrawn by claimants, 785 have been identified as duplicate filings and removed or consolidated, and 1,498 have been rejected. The remaining 25,246 Basic Claims are being recommended for approval. These claims represent a collective amount of $12,806,369.15 in approved ODD Dollars.

22. During the course of the deficiency and documentation review, Gilardi had thousands of email exchanges and telephone conversations with claimants in an effort to resolve deficiencies and anomalies on the filed claims and to complete the claim documentation review. In addition, to the extent a claimant submitted a response within a reasonable time after a given deadline, Gilardi considered those responses to be timely if they resolved the deficiencies or provided necessary documentation for a claim.

23. The final status of claims received by Gilardi as of the date of this declaration are detailed as follows:

24. Approved Claims: Gilardi has identified 25,424 valid claims, with total qualifying and payable purchases amounting to $7,840,620,146.96 in ODD Dollars. Gilardi's detailed and thorough review process therefore identified and eliminated invalid claims or portions of claims equaling $5,171,963,714.82 in ODD Dollars, or 39.75% of the ODD Dollars originally claimed.

25. Of the 2,722 remaining invalid claims, 364 have been withdrawn by the claimant, 818 have been identified as Duplicate Claims, and 1,540 have been rejected for the reasons identified below:

- 636 claims were rejected because the claimant's response to the Notice of Deficient Claim and/or the Request for Documentation did not provide sufficient information or documentation to substantiate the claim, or the claimant did not respond;
- 442 claims were rejected because incomplete claims filed by third party agencies, where the claims did not provide sufficient information to calculate a claimed amount and where the third party agencies did not provide such information when requested;
- 421 claims were rejected because the claim was deemed to be fraudulent;
- 34 claims were rejected because the entirety of the purchases claimed were either indirect purchases of ODDs manufactured by the Defendants, or were ODDs manufactured by a non-defendant;
- 3 claims were rejected because the entirety of the purchases claimed were made outside of the HLDS and non-HLDS Class Periods;

- 2 claims were rejected because the entirety of the purchases claimed were from outside of the United States;
- 1 claim was rejected because the entirety of the purchases claimed were not ODDs; and
- 1 claim was rejected because the claimant had opted out of the NEC Settlement, and included only claimed purchases of Sony/NEC products.

A list of these 2,722 ineligible claims identifying the reason for ineligibility for each is attached hereto as Exhibit B.

26. Gilardi has notified all Top Claims and all rejected claims (both Basic and Top) of the final determination of their claims. Such notices were sent via email where an email address was provided, or mailed where an email address was not provided or where such email was returned as undeliverable.

**Net Settlement Funds Amounts**

27. Gilardi has performed a thorough audit of the individual settlement funds and can confirm that after the deduction of requested attorney fees and expenses, litigation expenses and costs, and the class representative plaintiff awards, the balance of Settlement Funds to be distributed is $47,931,511.35 as of the date of this declaration. This breaks out to:

- $16,638,441.86 from the HLDS Settlement (the "HLDS Fund")
- $559,947.56 from the BenQ Settlement (the "BenQ Fund")
- $3,679,655.41 from the Panasonic Settlement (the "Panasonic Fund")
- $2,687,748.30 from the Pioneer Settlement (the "Pioneer Fund")
- $9,599,101.07 from the PLDS Settlement (the "PLDS Fund")
- $255,976.03 from the QSI Settlement (the "QSI Fund")
- $3,839,640.43 from the Sony Settlement (the "Sony Fund")
- $3,935,631.44 from the NEC Settlement (the "NEC Fund")
- $847,920.59 from the TEAC Settlement (the "TEAC Fund")
- $5,887,448.66 from the TSST Settlement (the "TSST Fund")

28. To date, Gilardi has billed and been paid $1,445,805.10. This amount represents the cost to facilitate the five notice phases addressed in ¶ 4 herein. With the exception of notice related costs, Gilardi has not been paid for additional work done from March 18, 2015 through January 31, 2019 in the amount of $235,764.80. This amount represents the cost of Collection and Evaluation of Claim Forms and Claim Documentation Review as discussed in ¶¶ 7 – 22 herein. Finally, Gilardi estimates that the remaining work will cost $117,863.63 in additional administration fees. This amount represents the cost of distribution to Class Members and the closing of the case in Gilardi's files. Attached hereto as Exhibit C is an accounting of the amounts incurred but not paid as well as the estimated amount of administration fees remaining.

29. Additionally, a reserve of $250,000 is being held out of the Net Settlement Funds for any unforeseen concerns or tax liability. Should the requested administrative fees be approved, the funds remaining for distribution to approved claimants after withholding the reserve and administrative fees[5] will be $47,327,882.92.

**Calculation of Approved Claim Amounts**

30. To calculate the amounts payable to Approved Claims, Gilardi first evaluated each Approved Claim to remove non-payable purchases, as described above in ¶ 10. Gilardi also removed all purchases from Opt-Out Claimants of products purchased from the Defendant(s) from whose settlement an Opt-Out Claimant had excluded itself (*i.e., if an Opt-Out Claimant had excluded itself from the Panasonic Settlement, any Panasonic purchases included in the claim were removed*). Opt-Out Claimants likewise did not receive a *pro rata* share from the Settlement Fund from which the claimant opted out.

31. After removal of the non-payable purchases, the sum of payable purchases was converted to ODD Dollars to arrive at the approved amount for each approved claim (referenced to herein as either the "HLDS Approved Claim" for ODD Dollars (see footnote 3) calculated during the HLDS Class Period for purchases covered by the HLDS Settlement or the "non-HLDS

---

[5] To the extent this reserve is not required, these funds would be combined with the funds from uncashed checks and distributed in like manner in accordance with the instructions provided by the Court for uncashed checks.

1  Approved Claim" for ODD Dollars calculated during the non-HLDS Class Period for purchases
2  covered by the non-HLDS Settlements). The HLDS Approved Claims and the non-HLDS
3  Approved Claims were divided by the available amount in the Net Settlement Funds to determine
4  each claimant's *pro rata* share of each settlement fund. Attached hereto as Exhibit D is a schedule
5  of all approved claimants and each approved claimant's proposed payment.

6      32.    A strict *pro rata* distribution of the Net Settlement Funds would result in 24,591
7  claimants receiving payments of less than $10.00, ranging from $9.98 to $0.03. Based on Gilardi's
8  previous experience, checks of less than $10.00 are less likely to be cashed. In addition, the value
9  of some checks issued according to a strict *pro rata* distribution would be less than the
10 administration costs to issue and mail the check. Uncashed checks often result in additional delays
11 as well as administration costs related to tracking uncashed, expired checks and reissuing checks to
12 replace them. (The estimated future administration costs set forth in Exhibit C hereto are based on
13 the issuance of checks valued at $10.00 or more; if checks of lesser value are issued, Gilardi's
14 estimate for such costs would increase.) Class Counsel therefore has recommended that each
15 claimant be paid at least $10.00. Gilardi thus re-calculated the payment for each of the 24,591
16 claims (96.72% of all approved claims) that would have resulted in a payment of less than $10.00
17 under a strict *pro rata* distribution. The proposed distribution amount for each approved claimant is
18 listed in Exhibit D. The proposed distributions total $47,327,650.10.

19     33.    A schedule of all claimants with each approved claimant's strict *pro rata* share of
20 each Settlement Fund is attached hereto as Exhibit E. For each Settlement Fund, the schedule
21 indicates the total amount of approved purchases claimed, in ODD Dollars calculated as described
22 in footnote 3 above, as well as the proposed funds to be distributed from it:

- $16,422,694.58 from the HLDS Fund
- $567,931.80 from the BenQ Fund
- $3,644,229.06 from the Panasonic Fund
- $2,650,348.41 from the Pioneer Fund
- $9,465,530.02 from the PLDS Fund

1. - $236,638.25 from the QSI Fund
2. - $3,786,212.01 from the Sony Fund
3. - $3,880,867.31 from the NEC Fund
4. - $851,897.70 from the TEAC Fund
5. - $5,821,300.96 from the TSST Fund

These fund amounts, also listed in Exhibit E, total $47,327,650.10 which is the sum of the Net Settlement Funds less administration costs and the proposed reserve, and accounting for the re-calculation described in ¶ 32 above, less $232.82 due to rounding.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed this 2nd day of August, 2019.

*Rachel Christman*
_____
RACHEL CHRISTMAN

DECLARATION OF RACHEL CHRISTMAN RE CLAIMS PROCESSING AND DISTRIBUTION OF THE NET SETTLEMENT FUNDS; Case No. 3:10-md-02143 RS