Timothy R. Hanigan (SBN 125791)
Lang, Hanigan & Carvalho, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372

Robert W. Clore (*Pro Hac Vice*)
Christopher Bandas (*Pro Hac Vice*)
802 N. Carancahua, Suite 1400
Corpus Christi, TX 78401
Tel: (361) 698–5200
Fax: (361) 698-5200
*Attorneys for Conner Erwin*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION<br><br>─────────────────────<br><br>This document relates to: ALL INDIRECT PURCHASER ACTIONS | Case No. 10-MD-02143-RS<br>MDL No. 2143<br><br>**ERWIN'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT, RETURN CLASS FUNDS, AND DISGORGE FEES**<br><br>Date: October 29, 2020<br>Time: 1:30pm<br>Dept.: Courtroom 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

1

# Table of Contents

Notice of Motion and Motion................................................................................ vi

Statement of Court Action Sought ........................................................................ vii

Memorandum of Points and Authorities.............................................................. 1

Preliminary Statement........................................................................................... 1

Statement of Issues ............................................................................................... 2

Statement of Facts ................................................................................................. 2

A.  Hagens Berman was paid $34,829,323.97 in fees and expenses by January 18, 2017 for the round 1 settlements.................................................................. 2

B.  Hagens Berman was paid $13,023,718.95 in fees and expenses by December 7, 2017 for the round 2 settlements. ....................................................... 3

C.  Hagens Berman was paid $5 million in fees by March 23, 2019 for the round 3 settlements. .................................................................................................. 3

E.  The Ninth Circuit vacated the entire $52.8 million Fee and Expense Award on May 15, 2020. .............................................................................................. 4

F.  Hagens Berman refuses to return the money to the Settlement Fund. .................. 5

Argument................................................................................................................ 5

I.  The Ninth Circuit emphasized the Court's role as guardian of the class...................... 5

II.  The Fee and Expense Awards were reversed and Hagens Berman received notice on May 15th................................................................................................ 6

III.  Nothing allows Hagens Berman to retain vacated Fee and Expense Awards.......... 9

IV.  Hagens Berman breached its fiduciary duty by violating at least three California Rules of Professional Conduct. ........................................................ 10

A.  McIntyre's Qualifications. ................................................................................ 10

B.  Breach of fiduciary duty. .................................................................................. 12

D.  Hagens Berman violated Rule 1.7(b) and breached their fiduciary duty by allowing their own interests to limit their obligations to their clients. .................................... 16

E.    Hagens Berman violated Rule 1.15(a) and breached their fiduciary duty by failing to put contingent funds into a trust account. ................................................................ 17

V.    Restitution is not a defense. ................................................................................. 19

VI.    The Court should order fee forfeiture. ................................................................. 20

A. Hagens' Berman's rule violations are clear and serious. ....................................... 22

B. Hagens Berman knowingly and willfully withheld class funds ............................... 23

C. Forfeiture is necessary to discourage similar misconduct. ..................................... 24

Conclusion ................................................................................................................. 25

1

2

**Table of Authorities**

3

**Cases**

4

5

*Alderman v. Hamilton* 205 Cal.App.3d 1033, 252 Cal.Rptr. 845 (1988) ................................ 7

6

*Anderson v. Eaton*, 211 Cal. 113 (1930) ................................................................ 16

7

*Arik v. Meyers*, No. 219CV01908JADNJK, 2020 WL 4331530 (D. Nev. July 24, 2020) . 22

8

*Ashker v. Newsom*, 968 F.3d 939 (9th Cir. 2020) ........................................................ 6

9

*Athearn v. State Bar*, 20 Cal. 3d 232, 571 P.2d 628 (1977) ............................................ 20

10

*Banning Ranch Conservancy v. Superior Court*, 193 Cal.App.4th 903 (2011) ........................... 7

11

*Benasra v. Mitchell Silberberg & Knupp LLP,* 123 Cal.App.4th 179 (2004) ........................... 17

12

*Bernstein v. State Bar,* 50 Cal.3d 221 (1990) .......................................................... 20

13

*City of Hobbs v. Nutmeg Ins. Co.*, 242 F.3d 388 (10th Cir. 2000) ..................................... 8

14

*Clark v. Millsap*, 197 Cal. 765 (1926) ................................................................ 21

15

*David Welch Co. v. Erskin & Tulley,* 203 Cal.App.3d 884 (1988) ................................... 12, 13

16

*Day v. Rosenthal*, 170 Cal.App.3d 1125 (1985) ......................................................... 21

17

*Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWX), 2019 WL 3035119 (C.D. Cal. Mar.
18

26, 2019) ................................................................................................ 13

19

*Fair v. Bakhtieri,* 195 Cal.App.4th 1135 (2011) .................................................... 12, 21

20

*Flatt v. Superior Court*, 9 Cal. 4th 275 (1994) ....................................................... 16

21

*Goldstein v. Lees*, 46 Cal.App.3d 614 (1975) .......................................................... 21

22

*Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal.App.3d 1139
23

(1989) .................................................................................................. 17

24

*Hardisty v. Hinton & Alfert*, 124 Cal. App. 4th 999, 21 Cal. Rptr. 3d 835 (2004), *as modified*
25

(Jan. 4, 2005) ........................................................................................... 7

26

*Herrera v. Stender*, 212 Cal.App.4th 614 (2012) ....................................................... 13

27

*In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015) ................................... 10

28

*In re Elliott,* 3 Cal. State Bar Ct. Rptr. 541 (Review Dept. 1996) .................................... 20

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ..................................... 6

*In re Occidental Financial Group, Inc.*, 40 F.3d 1059 (9th Cir. 1994) ........................................ 21

*In re Optical Disk Drive Prod. Antitrust Litig.*, 804 F. App'x 443 (9th Cir. 2020) ..................... 5

*In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020) ........... 5, 6, 17, 25

*In re Private Asset Grp., Inc.*, 579 B.R. 534 (Bankr. C.D. Cal. 2017) ........................................ 25

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ............................ 6

*Jackson v. State Bar,* 15 Cal.3d 372 (1975) ........................................................................... 23

*Johnson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-01273-PHX-JAT, 2019 WL 6888252 (D. Ariz. Dec. 18, 2019) ......................................................................................................... 8

*Kelly v. State Bar,* 45 Cal.3d 649, 656 (1988) ....................................................................... 23

*Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468 (5th Cir. 2011) ............................................ 10

*Knight v. Aqui,* 966 F. Supp. 2d 989 (N.D. Cal. 2013) ............................................. 13, 22, 23

*Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 376 P.3d 672 (2016) (J. Goodwin Liu, concurring) ......................................................................................................................... 25

*Lee v. Hanley,* 61 Cal.4th 1225 (2015) ................................................................................ 12

*Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007) ................................................................ 8

*Matter of Bolanos*, No. 15-O-10896, 2017 WL 2772192 (Cal. Bar Ct. June 12, 2017) ........ 15

*McKnight v. State Bar,* 53 Cal.3d 1025 (1991) ..................................................................... 23

*Meritage Homeowners' Ass'n v. Bank of New York Mellon*, No. 6:16-CV-00300-AA, 2018 WL 1787183 (D. Or. Apr. 13, 2018) ........................................................................................ 8

*M'Guinness v. Johnson*, 243 Cal. App. 4th 602, 196 Cal. Rptr. 3d 662 (2015) ................. 7, 14

*Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975 (9th Cir.2006) (per curiam) ........................ 7

*Monster Energy Co. v. Schechter*, 249 Cal.Rptr.3d 295, 444 P.3d 97 (2019) ........................... 6

*Mordirossian & Assoc. Inc. v. Ersoff,* 153 Cal.App.4th 257 (2007) ...................................... 20

*Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018) ...................................................................... 7

*Pringle v. LaChapelle*, 73 Cal.App.4th 1000 (1999) ............................................................ 20

*Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018)..... 8

*Severson & Werson v. Bolinger* 235 Cal.App.3d 1569, 1 Cal.Rptr.2d 531 (1991) ..................... 7

*Simmons v. State Bar of California*, 70 Cal. 2d 366, 450 P.2d 291 (1969) ................................ 20

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ............... 9

*Smith v. Lewis,* 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589 (1975) .............................. 23

*Stanley v. Richmond*, 35 Cal.App.4th 1070 (1995)................................................... 13

*Steel v. Stoddard*, No. 11-CV-2073-H-RBB, 2013 WL 12064547 (S.D. Cal. May 3, 2013)  13

*Stockton Theatres, Inc. v. Palermo*, 55 Cal. 2d 439, 360 P.2d 76 (1961) ...................... 7

*U.S. Cellular Inv. Co. of L.A. v. GTE Mobilnet, Inc.,* 281 F.3d 929 (9th Cir. 2002)............... 7

*United States ex. rel Verani v. Jerry M. Lewis Truck Parts & Equip., Inc.,* 89 F.3d 574 (9th Cir. 1996).............................................................................................. 21

*United States v. Sigma Int'l, Inc.,* 300 F.3d 1278 (11th Cir. 2002)................................ 8

**Rules**

Cal. R. Prof'l Cond. 1.15 ........................................................... 13-15, 17-19

Cal. R. Prof'l Cond. 1.7 .................................................................. 16, 17

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ..................................................... 8

Black's Law Dictionary (6th ed. 1990) .................................................. 8

Mark Tuft, *et al.*, *Professional Responsibility*, § 6:425.1a (The Rutter Group 2019) ............... 17

Restatement (Third) of the Law Governing Lawyers §§ 37, 52 (2000) ..................... 21-23

Vapnek, *et al.*, California Practice Guide: Professional Responsibility § 5:1026(2008)..... 21

**Notice of Motion and Motion**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 29, 2020 at 1:30pm, or as soon thereafter as this matter may be heard, before the Honorable Richard Seeborg, United States District Judge of the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, objecting class member Conner Erwin through his counsel of record will and hereby do move for the Court to enforce the settlement agreements, refund the Fee and Expense Award plus interest to the Settlement Fund, find Hagens Berman breached its fiduciary duty by knowingly withholding class funds, and order the entire Fee and Expense Award forfeited for the benefit of the class and to discourage future class action attorneys from misappropriating class funds.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations in support of the motion, argument by counsel at the hearing before this Court, any papers filed in reply, such oral and documentary evidence as may be presented at the hearing of this motion, and all papers and records on file in this matter.

PLEASE TAKE FURTHER NOTICE that, in accordance with Local Rule 7-2, a proposed Order is attached (Exhibit 3).

**Statement of Court Action Sought**

Erwin seeks for the Court to enforce the term of each settlement agreement that required Hagens Berman to return the Fee and Expense Awards, plus interest, within five business days after the Ninth Circuit vacated them on May 15, 2020. Erwin seeks for the Court to order Hagens Berman to provide an accounting of the Fee and Expense Awards, and for the Court to order the Fee and Expense Award, plus interest, to be deposited immediately into the Settlement Fund. Alternatively, Erwin seeks to have those amounts deposited into the registry of the Court. Finally, because Hagens Berman is knowingly withholding the Fee and Expense Awards and interest that belong to the class in violation of the California Rules of Professional Conduct, Erwin further seeks for the Court to find that the firm has breached its fiduciary duty to the class and order fee forfeiture.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Following the Ninth Circuit's vacatur of $52.8 million in attorneys' fees and expenses, Hagens Berman decided to keep the money paid to them years ago under a quick-pay provision even though the settlements require it returned with interest within five business days. This withholding of class funds violates several California Rules of Professional Conduct and amounts to a breach of fiduciary duty. Ex. 2, Declaration of Edward J. McIntyre. So does the apparent failure of Hagens Berman to place the funds in client trust accounts from the outset since the Fee and Expense Awards, under the terms of the quick-pay provision, were expressly contingent on them not being reversed or modified, and thus not fixed.

The Court should order the funds from the vacated Fee and Expense Awards returned immediately, including interest, and order an accounting. Further, since restitution is not a defense to a violation of the rules of ethics or to misappropriation, Hagens Berman should not be allowed to simply pay back the difference from any new award. Even if the Court were to award the same amount, the violations and breach of fiduciary duty remain. The flagrant violations and the enormity of the misappropriation here require fee forfeiture.

**Statement of Issues**

1.      Should the Court order an accounting of the $52.8 million in Fee and Expense Awards that Hagens Berman are willfully withholding in violation of the terms of the settlement agreements and the Ninth Circuit's orders vacating the awards? Should the Court enforce the settlements and follow the Ninth Circuit's mandates by ordering the money returned, with interest, to the Settlement Fund?

2.      Should the Court order fee forfeiture based on Hagens Berman's violations of California Rules of Professional Conduct 1.15(a), 1.15(d)(7), and 1.7 and their corresponding breaches of fiduciary duty to the class, including failure to place contingent funds in a client trust account, failure to deliver class funds promptly, and failure to provide conflict-free representation? Even if the Court were to award the same fees on remand (despite the Ninth Circuit's holding that the bid is the starting place for reasonableness), should it find Hagens Berman breached its fiduciary duty and disgorge fees since restitution is not a defense to violations of the rules of professional conduct or misappropriation?

**Statement of Facts**

### A. Hagens Berman was paid $34,829,323.97 in fees and expenses by January 18, 2017 for the round 1 settlements.

This Court awarded Hagens Berman $31,125,000 in attorneys' fees plus $3,704,323.97 in in expenses on December 19, 2016. Dkt. 2133. Those fees covered the Panasonic, NEC, Sony and HLDS settlement agreements. Dkt. 1898-4

(Panasonic); Dkt. 1898-5 (NEC); Dkt. 1898-6 (Sony); Dkt. 1898-7 (HLDS). Though some settlements provide for earlier payment, all fees and expenses would have been paid to Hagens Berman under the quick-pay provisions no later than thirty days after the granting of the Fee and Expense Award. Dkt. 1898-4 ¶ 23(a) (allowing payment within ten days); Dkt. 1898-5 ¶ 23(b); Dkt. 1898-6 ¶ 22(b); Dkt. 1898-7 ¶ 26(a). Consequently, Hagens Berman was paid $34.8 million in fees and expenses no later than January 18, 2017—nearly four years ago.

**B. Hagens Berman was paid $13,023,718.95 in fees and expenses by December 7, 2017 for the round 2 settlements.**

This Court further awarded Hagens Berman $11,655,000 in attorneys' fees and $1,368,718.95 in expenses on November 7, 2017. Dkt. 2691. Those fees covered the PLDS, Pioneer, and TEAC settlements. Dkt. 2246-3 (PLDS); Dkt. 2246-4 (Pioneer); Dkt. 2260-3 (TEAC).

Those settlements likewise provided for payment to Hagens Berman no later than thirty days after the Fee and Expense Award. Dkt. 2246-3 ¶ 23(b); Dkt. 2246-4 ¶ 22(b); Dkt. 2260-3 ¶ 22(b) (potentially allowing even quicker payment). So, Hagens Berman was paid $13,023,718.95 by December 7, 2017, nearly three years ago.

**C. Hagens Berman was paid $5 million in fees by March 23, 2019 for the round 3 settlements.**

The last award to Hagens Berman was $5 million with no expenses on February 21, 2019. Dkt. 2889. Those fees covered the Samsung Electronics Co., Ltd., Toshiba Corporation, and Toshiba Samsung Storage Technology Corporation

settlements. Dkt. 2852-3. They also provided for payment within 30 days of the Fee and Expense Award (*id.* at ¶ 24(b)), meaning Hagens Berman was paid $5 million for the last round by March 23, 2019, nearly a year and a half ago.

In total, Hagens Berman has been paid $52,853,042.92, most of which was paid to the firm nearly four years ago. Upon information and belief, none of the funds from the Fee and Expense Awards were put into a client trust account.

### D. Each settlement requires Hagens Berman to return fees and expenses, plus interest, if the Fee and Expense Awards are reversed or modified.

Each settlement agreement contains essentially identical language, approved by this Court, providing for return of the Fee and Expense Award to the Settlement Fund:

> In the event that … the order making the Fee and Expense Award is **reversed or modified**, **then Lead Counsel <u>shall</u> <u>within five (5) business days</u> from receiving notice from** … **a court of appropriate jurisdiction, <u>refund to the Settlement Fund the Fee and Expense Award</u> or any portion thereof previously paid to them <u>plus interest</u>** thereon at the same rate as earned by the account into which the balance of the Settlement Fund is deposited pursuant to Paragraph 17(c) above.[1]

### E. The Ninth Circuit vacated the entire $52.8 million Fee and Expense Award on May 15, 2020.

In two opinions entered on May 15, 2020, the Ninth Circuit vacated each of the three Fee and Expense Awards and remanded for proceedings consistent with the

---

[1] Dkt. 1898-4 ¶ 23(a) (emphasis added); *see also* Dkt. 1898-5 ¶ 23(b); Dkt. 1898-6 ¶ 22(b); Dkt. 1898-7 ¶ 26(a); Dkt. 2246-3 ¶ 23(b); Dkt. 2246-4 ¶ 22(b); Dkt. 2260-3 ¶ 22(b); Dkt. 2852-3 at 24(b).

published opinion. *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 934–35 (9th Cir. 2020); *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 F. App'x 443, 444 (9th Cir. 2020).[2] Class counsel were then obligated to return the Fee and Expense Award plus interest no later than May 22, 2020.[3]

### F.  Hagens Berman refuses to return the money to the Settlement Fund.

On August 20, 2020, Erwin's counsel emailed Hagens Berman to confirm they returned the Fee and Expense Award plus interest to the Settlement Fund. Ex. 1 & 1-A, Declaration of Robert Clore. Eventually, after a follow-up email on August 24, 2020, Hagens Berman responded that they believe allows them to keep the money. *Id.* According to Hagens Berman, they are entitled to keep the vacated $52.8 million Fee and Expense Award plus interest because the Ninth Circuit's vacatur is neither a "reversal" nor a "modification." *Id.*

### Argument

### I.  The Ninth Circuit emphasized the Court's role as guardian of the class.

In setting aside all three Fee and Expense Awards, the Ninth Circuit deemed it

---

[2] The Court articulated its finding for purposes of remand as follows, "We now hold that when class counsel secures appointment as interim lead counsel by proposing a fee structure in a competitive bidding process, that bid becomes the starting point for determining a reasonable fee." *Optical Disk*, 959 F.3d at 934-35.

[3] The quick-pay provisions require repayment five business days after *notice* of reversal or modification; so May 15, 2020, the date of the orders vacating the Fee and Expense Awards, should be the operative date. The Ninth Circuit mandates were filed on June 8, and July 9, 2020, respectively, but Hagens Berman had notice well before the mandates. Even if the mandates started the clock, Hagens Berman is still holding class funds months after they should have been returned.

necessary, "given this record," to restate "the fiduciary duty the court owes to the class at the fee award stage[.]" *Optical Disk*, 959 F.3d at 934. Because of the conflict that arises between the class and class counsel in dividing up the settlement fund, "district courts assume a fiduciary role that requires close scrutiny of class counsel's request for fees and expenses from the common fund." *Id.* (citations omitted). "As a fiduciary for the class, the district court must 'act with a jealous regard to the rights of those who are interested in the fund....'" *Id.* (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)).

## II. The Fee and Expense Awards were reversed and Hagens Berman received notice on May 15th.

Jealous regard of the class property requires the Court to command the return of the vacated $52.8 million in fees and expenses, plus interest, immediately. The settlement agreements require it. Even if they did not, neither the settlement agreements nor anything else allows for retention of vacated fees. Hagens Berman are wrongfully in possession of funds that belong to the class.

California law governs interpretation of the agreements. *Eg.,* Dkt. 2852-3 ¶ 30. Under California law, "[a] settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." *Ashker v. Newsom*, 968 F.3d 939, 944 (9th Cir. 2020) (citing *Monster Energy Co. v. Schechter*, 249 Cal.Rptr.3d 295, 444 P.3d 97, 102 (2019)). Interpretation of a settlement contract is a matter of

law reviewed *de novo*. *Id.* (citing *Parsons v. Ryan*, 912 F.3d 486, 495 (9th Cir. 2018)).

"The fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 989 (9th Cir.2006) (per curiam) (quotation omitted). **Fee agreements** between attorneys and their clients "**are strictly construed against the attorneys**." *M'Guinness v. Johnson*, 243 Cal. App. 4th 602, 617, 196 Cal. Rptr. 3d 662, 673 (2015) (emphasis added) (citing *Alderman v. Hamilton* 205 Cal.App.3d 1033, 1037, 252 Cal.Rptr. 845 (1988); *Severson & Werson v. Bolinger* 235 Cal.App.3d 1569, 1572, 1 Cal.Rptr.2d 531 (1991)). "If ambiguities are present in the engagement agreement, they are to be resolved 'in favor of the client and against the attorney.'" *Id.* (citing *Banning Ranch Conservancy v. Superior Court*, 193 Cal.App.4th 903, 913 (2011)).

The settlements unambiguously provide that if the order "making the Fee and Expense Award is reversed or modified," Hagens Berman "**shall** … refund to the Settlement Fund the Fee and Expense Award … plus interest…." *E.g.*, Dkt. 1898-4 ¶ 23(a) (emphasis added). The clear intent of this provision is that any fees and expenses should promptly return to the class if an award is set aside.

Hagens Berman's strained reading of the provision as not applying to vacaturs ignores that reversing a judgment "means to entirely **vacate** it[.]" *Stockton Theatres, Inc. v. Palermo*, 55 Cal. 2d 439, 449, 360 P.2d 76, 82 (1961) (emphasis added); *Hardisty v. Hinton & Alfert*, 124 Cal. App. 4th 999, 1002, 21 Cal. Rptr. 3d 835, 836 (2004), *as modified* (Jan. 4, 2005) (noting that the effect of a reversal is to "vacate" the judgment

"and to leave the case 'at large' for further proceedings … as if no judgment had ever been rendered"). In fact, "reverse" is often defined as to "vacate." *See* Black's Law Dictionary 1319 (6th ed. 1990) (defining "reverse" as "[t]o … vacate"); *accord City of Hobbs v. Nutmeg Ins. Co.*, 242 F.3d 388 (10th Cir. 2000) ("[t]o 'reverse' a judgment means to overthrow, vacate, set aside, make void, annul, repeal or revoke it") (quotation omitted).

At the very least, the Ninth Circuit's opinion "modified" the Fee and Expense Awards because, in vacating the orders, the Court rendered them legal nullities. "Vacate" means to "nullify or cancel; make void; invalidate." Black's Law Dictionary p. 1688 (10th ed. 2014); *see Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) (vacated finding "no longer existed"); *Meritage Homeowners' Ass'n v. Bank of New York Mellon*, No. 6:16-CV-00300-AA, 2018 WL 1787183, at *14 (D. Or. Apr. 13, 2018) (noting "the legal effect" of vacating an order "was that it never existed"); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) ("by definition, vacating a decision divests that decision of legal force"). "When a decision is vacated, it is 'officially gone' and 'void,' and thus 'ha[s] no legal effect whatsoever." *Johnson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-01273-PHX-JAT, 2019 WL 6888252, at *6 (D. Ariz. Dec. 18, 2019) (quoting *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002)). It would be impossible to say that the Ninth Circuit's order vacating the Fee and Expense Awards did not modify them because they no longer exist. Hagens Berman was thus required to return the awards for all

three rounds of settlements, plus interest, by May 22nd. The Court should enforce the settlements (the terms of which the Court approved) and order the immediate return of this money to the Settlement Fund.

## III. Nothing allows Hagens Berman to retain vacated Fee and Expense Awards.

Even if (contrary to California law) the agreements were construed in Hagens Berman's favor and somehow the vacated orders could be interpreted as not "reversed" or "modified," nothing authorizes Hagens Berman to retain $52.8 million in vacated fees. The legal effect of vacatur is to return the parties to their position before the Fee and Expense Awards. *Massachi*, 486 F.3d at 1154; *Meritage Homeowners' Ass'n*, 2018 WL 1787183, at *14. Because the awards have been set aside as if they never existed, Hagens Berman has no legal right of possession.

To be sure, the settlements do not state that Hagens Berman gets to **keep** them in the event of vacatur. If such a provision had been included, it would have been surely met with vociferous objection. Since attorneys' fees under the settlement agreements are "paid solely from the Settlement Fund," (*see e.g.,* Dkt. 2852-3 ¶ 24(a)), it stands to reason that when they are vacated, they must return to the source from which they came. Indeed, "[t]he settlement-fund proceeds, having been generated by the value of the class members' claims, **belong solely to the class members**." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (emphasis added); *accord Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 475 (5th Cir.

2011) ("the settlement funds are the property of the class"); *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015) (same). Quite simply, the funds do not belong to Hagens Berman. While it may not yet be appropriate to distribute the funds to the class, there is no legal justification for Hagens Berman withholding from the Settlement Fund the $52.8 million that the Ninth Circuit vacated. Immediate return of the funds is required.

## IV. Hagens Berman breached its fiduciary duty by violating at least three California Rules of Professional Conduct.

According to ethics expert Edward J. McIntyre, Hagens Berman has breached its fiduciary duty to the class in three respects. Ex. 2, Declaration of Edward J. McIntyre. *First*, Hagens Berman violated Rule 1.15(d)(7) by failing to return class funds to the Settlement Fund promptly after vacatur of the Fee and Expense Award. *Second*, Hagens Berman violated its duty to provide conflict-free representation under Rule 1.7(b) by willfully withholding $52.8 million belonging to the class. *Third*, since the Fee and Expense Awards were not "fixed" but rather contingent (they must be returned in the event of reversal or modification), Hagens Berman violated California Rule of Professional Conduct 1.15(a) and former rule 1-400(A) by not immediately placing the funds from the Fee and Expense Award into a client trust account. Each of these ethical violations amounts to a breach of fiduciary duty under California law.

### A. McIntyre's Qualifications.

McIntyre, whose curriculum vitae is attached to his declaration, is a Special

Deputy Trial Counsel for the State Bar of California and focuses his practice exclusively on issues of legal ethics, professional responsibility, standard of care and risk mitigation, including the reasonableness of lawyers' fees. Ex. 2 ¶4.

McIntyre writes and lectures regularly on issues of professional responsibility and risk mitigation.

McIntyre has been a member of the SDCBA Legal Ethics Committee—an invitation-only committee—for 25 years. *Id.* ¶10. He has served several times as its chair and on its executive committee. *Id.* Additionally, the California State Bar Board of Trustees appointed him to a three-year term (2008-2011) on the State Bar's Standing Committee on Professional Responsibility and Conduct. *Id.* ¶11. In July 2015, the State Bar appointed him, Special Deputy Trial Counsel (SDTC) to investigate and prosecute cases involving alleged violations of the standards of professional conduct ("Rule 2201 cases"). *Id.* ¶12.

In August 2016, the Board of Trustees' Committee on Regulation and Discipline (RAD) appointed him to serve as Administrator for all Rule 2201 cases statewide and to oversee twenty SDTC. *Id.* ¶13. In January 2019, another SDTC assumed the role of Administrator; and McIntyre continues to serve as a SDTC and as deputy Administrator. *Id.* As Administrator, he screened all Rule 2201 matters to determine whether they met State Bar criteria to initiate a discipline investigation. *Id.* ¶14. He was responsible as gatekeeper in the first instance for more than 400 State Bar complaints, determining whether to close them or assign them to a SDTC for

investigation and possible prosecution. *Id.*

In his roles as a Special Deputy and as the Administrator for Rule 2201 cases statewide, he saw recurring themes, which include: a lawyer's obligation to provide conflict-free representation; a lawyer's obligation to obey court orders; and a lawyer's obligations properly to handle funds entrusted to the lawyer. *Id.* ¶15. As a consequence of his training and experience in legal ethics, professional responsibility and professional integrity; the practice in which he is presently engaged and the cases in which he has been engaged and testified as an expert; his role as both the chair of Solomon Ward's litigation department and its general counsel, and his forty-year experience as a trial lawyer, he is familiar with the ethical and professional responsibility standards governing lawyers. *Id.* ¶22. Accordingly, he is qualified to opine on Hagens' Berman's conduct in this case.

## B. Breach of fiduciary duty.

"The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity—*uberrima fides.*" *David Welch Co. v. Erskin & Tulley,* 203 Cal.App.3d 884, 890 (1988), *overruled on other grounds, Lee v. Hanley,* 61 Cal.4th 1225 (2015); *see Fair v. Bakhtieri,* 195 Cal.App.4th 1135, 1140-1141 (2011) (same). Although a "violation of a rule does not itself give rise to a cause of action for damages," (California Rule of Professional Conduct 1.0(b)(3)), "[t]he scope of an attorney's fiduciary duty may be determined as a matter of law

based on the Rules of Professional Conduct[4] which, together with statutes and general principles relating to other fiduciary relationships, all help define ... the fiduciary duty which an attorney owes to his [or her] client." *Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWX), 2019 WL 3035119, at *12–13 (C.D. Cal. Mar. 26, 2019) (quoting *Stanley v. Richmond*, 35 Cal.App.4th 1070, 1086 (1995) (internal quotation marks omitted); *see also Knight v. Aqui*, 966 F. Supp. 2d 989, 996 (N.D. Cal. 2013). Further, in California, "[v]iolation of the rules [of professional conduct] can be used … to establish a breach of fiduciary duty." *Herrera v. Stender*, 212 Cal.App.4th 614, 632 (2012); *see also Estakhrian*, 2019 WL 3035119, at *12.

Expert testimony is generally used to prove a breach of a fiduciary duty, but it is not required. *Steel v. Stoddard*, No. 11-CV-2073-H-RBB, 2013 WL 12064547, at *2 (S.D. Cal. May 3, 2013) (citing *Stanley*, 35 Cal. App. 4th at 1086; *Welch*, 203 Cal. App. 3d 884 at 892-93)).

## C. Hagens Berman violated Rule 1.15(d)(7) and breached their fiduciary duty by willfully refusing to return the Fee and Expense Award promptly after vacatur.

McIntyre's expert testimony is that Hagens Berman violated their ethical obligations under Rule 1.15(d)(7) when they willfully refused to return to the Settlement Funds the fees and expenses promptly following the Ninth Circuit's vacatur as required under the settlement agreements. Ex. 2 ¶ 82.

---

[4] Under Local Rule 11–3(a), every attorney practicing in the Northern District of California must comply with "the standards of professional conduct required of members of the State Bar of California."

Rule 1.15(d)(7) requires lawyers to "promptly distribute, as requested by the client or other person, any undisputed funds or property in the possession of the lawyer or law firm that the client or other person is entitled to receive." Cal. R. Prof'l Cond. 1.15(d)(7). Once the Ninth Circuit vacated the Fee and Expense Awards on May 15th, it was incumbent upon Hagens Berman under the terms of the settlements to return the $52.8 million to the Settlement Fund within five business days. Ex. 2 ¶¶ 84-86; *e.g.,* Dkt. 1898-4 ¶ 23(a) (Hagens Berman "shall within five (5) business days from receiving notice from … a court of appropriate jurisdiction, refund to the Settlement Fund the Fee and Expense Award … plus interest").

McIntyre concludes that "there is no difference between 'vacated and remanded' and 'reversed or modified'" for purposes of Hagens Berman's ethical obligations. Ex. 2 ¶76. "[E]ither way, the awards as made were nullified, canceled, and invalidated." *Id.* ¶80. Hagens Berman thus "had the ethical obligation to comply with the 'Quick Pay' provision of the court- approved settlement agreements and return the awarded fees and expenses to the respective Settlement Funds." *Id.* ¶81.

Hagens Berman's position that they can keep $52.8 million in vacated attorneys' fees because the Ninth Circuit did not use their preferred terminology is an unreasonable interpretation in favor of themselves at the expense of their clients. Hagens Berman, a sophisticated class action law firm, would certainly have known that such agreements "are strictly construed against the attorneys." *M'Guinness*, 243 Cal. App. 4th at 617. Yet, they hold the funds as if the Ninth Circuit had not spoken.

Of course, even if Hagens Berman "had reservation about the language difference in the settlement agreements and the Ninth Circuit's judgments—'reversed' and 'modified' versus 'vacated and remanded'—because of the Ninth Circuit's decision vacating and remanding the award orders, they could not longer ethically continue to hold those funds." *Id.* ¶89. The only bases for Hagens Berman holding the funds are the three now non-existent Fee and Expense Awards. *Id.* ¶90. "Once the Ninth Circuit judgments nullified the only authority for receiving the fee and expense awards, [Hagens Berman] had the ethical obligation under rule 1.15(d)(7) to distribute those funds to the person entitled to receive them, namely the identified Settlement Funds." *Id.* ¶92. Accordingly, even if Hagens Berman's contrived and self-serving interpretation were right, their willful refusal to return the funds promptly is still a violation of Rule 1.15(d)(7). *Id.* at ¶¶82, 93. Further, by willfully refusing to promptly deliver the Fee and Expense Awards, Hagens Berman breached their fiduciary duty to the class. *Id.* ¶117; *Lawyers as Fiduciaries*, 53 St. Louis U.L.J. 553, 586 (2009) ("A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations."); *Matter of Bolanos*, No. 15-O-10896, 2017 WL 2772192, at *10 (Cal. Bar Ct. June 12, 2017) (lawyer's "unreasonably and unjustifiably withholding the clients' property or money" inconsistent with "his professional and fiduciary obligations")

### D. Hagens Berman violated Rule 1.7(b) and breached their fiduciary duty by allowing their own interests to limit their obligations to their clients.

McIntyre also concludes that Hagens Berman violated their ethical obligation to provide conflict-free representation under California Rule of Professional Conduct 1.7 by ignoring the requirement to return the $52.8 million in vacated fees to the Settlement Fund. Ex. 2 ¶104-107. When an attorneys' self-interest conflicts with the client's own interests, the duty of loyalty owed by the attorney is compromised. *Id.* ¶57-59. "The conflicting interests impair the client's legitimate expectation of loyalty that his or her lawyers will devote their 'entire energies to [their] client's interests.'" *Id.* ¶ 58 (quoting *Flatt v. Superior Court*, 9 Cal. 4th 275, 288 (1994); *Anderson v. Eaton*, 211 Cal. 113, 116 (1930)). The California Supreme Court regards an attorneys' duty of loyalty as sacrosanct:

> [O]ne of the principal obligations which bind[s] an attorney is that of fidelity … It is also an attorney's duty to protect his client in every possible way, and it is a violation of that duty to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. *By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests.* Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.

*Flatt*, 9 Cal. 4th at 289.

16

As with failing to return property belonging to the class under Rule 1.15(d)(7), a lawyer's breach of the duty of loyalty under Rule 1.7(b) gives rise to a breach of fiduciary duty. Ex. 2 ¶60 (citing Mark Tuft, *et al.*, *Professional Responsibility*, § 6:425.1a, p. 6-176 (The Rutter Group 2019); *Benasra v. Mitchell Silberberg & Knupp LLP,* 123 Cal.App.4th 179, 1189 (2004); *Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg*, 216 Cal.App.3d 1139, 1151 (1989)). In vacating fees, the Ninth Circuit flagged the "adversarial" relationship between class counsel and the class at the fee-setting stage involving a common fund. *Optical Disk*, 959 F.3d at 930 (citations omitted). Hagens Berman was on notice "to make sure that their own interests did not materially limit their obligations to the class, as rule 1.7(b) prohibits." Ex. 2 ¶¶73, 105. When Hagens Berman "refused to pay the fee and expenses awards to the Settlement Funds and instead to retain, or not replace those funds if already disbursed or spent, they violated rule 1.7(b), by allowing their own interests materially to limit their obligations to their clients—the class members." *Id.* ¶107. This also amounts to a breach of fiduciary duty. *Id.* ¶¶116-17.

### E. Hagens Berman violated Rule 1.15(a) and breached their fiduciary duty by failing to put contingent funds into a trust account.

Hagens Berman also violated their obligation of safekeeping of the funds under Rule 1.15(a) to the extent they did not place all $52.8 million awarded from the Fee and Expense Awards into a trust account for the benefit of the client. Rule 1.15(a) requires "[a]ll funds received or held by a lawyer or law firm for the benefit of a

client" to be deposited into a trust account. Cal. R. Prof'l Cond. 1.15(a). Rule 1.15(c) further explains that "[f]unds belonging to the lawyer or the law firm shall not be deposited or otherwise commingled with funds held in a trust account except: … **funds belonging in part to a client … and in part presently or potentially to the lawyer or the law firm**, in which case the portion belonging to the lawyer or law firm must be withdrawn at the earliest reasonable time after the lawyer or law firm's interest in that portion **becomes *fixed***. However, if a client or other person disputes the lawyer or law firm's right to receive a portion of trust funds, the disputed portion shall not be withdrawn until the dispute is finally resolved." Cal. R. Prof'l Cond. 1.15(c)(2) (emphasis added).

Because Hagens Berman's holding of the Fee and Expense Awards was, under the express terms of the agreements, not fixed, but rather contingent upon the Ninth Circuit not reversing or modifying the awards, Rule 1.15(a) required that the funds be placed in a trust account. Ex. 2 ¶¶94-103.[5] Indeed, McIntyre's testimony is that the prospect of having to return the funds five business days after reversal or modification of the Fee and Expense Award was "a contingency that required [Hagens Berman] to have those funds almost immediately available because those funds were held, at least contingently, for the benefit of the class." *Id.* ¶106.

---

[5] Former rule 4-100(A) (now found at Rule 1.7(b)) also required that the funds be placed in a client trust account. Ex. 2 ¶¶48, 51.

Hagens Berman's interest never became "fixed," meaning the funds should have always been in a client trust account. Furthermore, the Fee and Expense Awards were disputed, which required at least the disputed portion to be placed in trust. Cal. R. Prof'l Cond. 1.15(c)(2). Although Hagens Berman have not disclosed whether the funds were placed in trust accounts, their refusal to return the funds as required all but confirms they never were. The Court should order an accounting of the Fee and Expense Awards to address this issue, whether Hagens Berman spent the money, and to confirm that they have not returned it. Hagens Berman have thus breached the fiduciary duty to the class in failing to put contingent funds in trust as required by Rule 1.15. Ex. 2 ¶114.

## V.    Restitution is not a defense.

It is no defense for Hagens Berman to say that the Court can just award the same $52.8 million or some lesser amount and they will return the difference. As McIntyre notes, Hagens Berman have committed each of these violations and breached their fiduciary duties to the class irrespective of whether the funds are returned to the class or the court ultimately awards an that amount withstands Ninth Circuit scrutiny. Ex. 2 ¶127-29. "No harm, no foul" is simply not recognized in legal ethics. Hagens Berman were required to place the money in client trust accounts in 2017 and 2019, were further required to return all of it, plus interest, to the Settlement Funds five business days after the Ninth Circuit gave notice of its vacatur.

Restitution is not a defense to misappropriation of client funds, and it is not a

defense to a violation of the rules of professional conduct. *Bernstein v. State Bar,* 50 Cal.3d 221, 232 (1990) (California Supreme Court observing that professional misconduct is not excused by the lack of harm); *Simmons v. State Bar of California*, 70 Cal. 2d 361, 366, 450 P.2d 291, 294 (1969) ("Restitution is no defense in a disciplinary proceeding, but the conduct of the attorney in making the client whole, as well as the timeliness and manner of restitution, may have a bearing on discipline"); *Athearn v. State Bar*, 20 Cal. 3d 232, 237, 571 P.2d 628 (1977) ("While petitioner's restitution of the misappropriated money is a factor in mitigation, it cannot be urged as a defense in a disciplinary proceeding"); *In the Matter of Elliott,* 3 Cal. State Bar Ct. Rptr. 541, 544 (Review Dept. 1996) (restitution not a defense to misappropriation; rather it would be a mitigating circumstance to support reduction in discipline). Even if the Court were to award the exact same amount in fees and expenses (it should not), Hagens Berman has willfully violated three rules of professional conduct in relation to safekeeping of client property and the duty of loyalty, all to their decided pecuniary gain.

## VI.  The Court should order fee forfeiture.

The egregious breaches of fiduciary duty, including wrongful retention of $52.8 million plus interest demands stern punishment. "In certain circumstances, a violation of the Rules of Professional Conduct may result in a forfeiture of an attorney's right to fees." *Mordirossian & Assoc. Inc. v. Ersoff,* 153 Cal.App.4th 257, 278 (2007); *Pringle v. LaChapelle*, 73 Cal.App.4th 1000, 1005-1006 (1999) ("there must be a serious violation of the attorney's responsibilities before an attorney who violates an ethical rule is

required to forfeit a fee"); *see also In re Occidental Financial Group, Inc.*, 40 F.3d 1059, 1062-1063 (9th Cir. 1994). "California courts have often held that when the ethical violation in question is a conflict of interest between the attorney and the client … the appropriate fee for the attorney is zero." *Fair*, 195 Cal.App.4th at 1151; *see also United States ex. rel Verani v. Jerry M. Lewis Truck Parts & Equip., Inc.,* 89 F.3d 574, 579 (9th Cir. 1996); *Day v. Rosenthal*, 170 Cal.App.3d 1125, 1162 (1985); *Goldstein v. Lees*, 46 Cal.App.3d 614, 617-18 (1975); *Clark v. Millsap*, 197 Cal. 765, 785 (1926); Vapnek, *et al.*, California Practice Guide: Professional Responsibility § 5:1026 (2008).

While compensatory damages for breach of fiduciary duty serve to make the plaintiff whole, forfeiture of fees "deters attorney misconduct and recognizes that damage caused by attorney misconduct is often difficult to assess." *Fair*, 195 Cal. App. 4th at 1153; *see* Restatement (Third) of the Law Governing Lawyers § 37 (2000). "It [also] prevents fiduciaries from profiting from their fiduciary breach and disloyalty." *Id.* (citation omitted).

Forfeiture requires a clear and serious violation of a duty to a client, or one that severely impairs the client-relationship and thereby the justification for compensation.

*Id.*[6] The Restatement identifies four factors in considering fee forfeiture: "(1) '[t]he extent of the misconduct,' (2) '[w]hether the breach involved knowing violation or conscious disloyalty to a client,' (3) whether forfeiture is 'proportionate to the seriousness of the offense,' and (4) '[t]he adequacy of other remedies.'" *Arik v. Meyers*, No. 219CV01908JADNJK, 2020 WL 4331530, at *6 (D. Nev. July 24, 2020) (quotation omitted); Restatement (Third), § 37 cmt d. "[F]or flagrant violations, forfeiture is justified even where no harm is proved, but for minor violations, merely reducing the fee may be warranted." *Id.*

### A. Hagens' Berman's rule violations are clear and serious.

Withholding $52.8 million from clients, and failing to put the funds in trust accounts, are clear and serious violations of the rules of professional conduct and amount to egregious misappropriation. In fact, Erwin's counsel was unable to locate any case involving a larger sum of funds misappropriated by attorneys. "Misappropriation of client funds has long been viewed as a particularly serious ethical violation.... It breaches the high duty of loyalty owed to the client, violates basic notions of honesty, and endangers public confidence in the legal profession." *Knight*, 966 F. Supp. 2d at 997 (quoting *McKnight v. State Bar,* 53 Cal.3d 1025, 1035

---

[6] Section 37 of the Restatement (Third) of the Law Governing Lawyers, entitled "Partial or Complete Forfeiture of a Lawyer's Compensation," provides that "[a] lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. Considerations relevant to the question of forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies."

(1991) (quoting *Kelly v. State Bar,* 45 Cal.3d 649, 656 (1988)); *Jackson v. State Bar,* 15 Cal.3d 372, 383 (1975).

Hagens Berman cannot avoid forfeiture by claiming that they kept the money in good faith—their decision must have also been reasonable. *Knight*, 966 F. Supp. 2d at 1000. "The standard does not depend on [a] subjective state of mind, but on the well-established objective negligence standard. Restatement (Third) of Law Governing Lawyers § 52 cmmt. B; § 54 ("A lawyer is not liable under § 48 or § 49 for any action or inaction the lawyer *reasonably* believed to be required by law, including a professional rule.") (emphasis added). The position that Hagens Berman was not required to return class funds is not "an arguable one upon which reasonable lawyers could differ." *Smith v. Lewis,* 13 Cal.3d 349, 357, 118 Cal.Rptr. 621, 530 P.2d 589 (1975), *overruled on other grounds by In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, (1976). A vacated fee is indisputably reversed or modified. Even accepting Hagens Berman's specious reading, they still had no reasonable or lawful claim to any funds under the now-vacated awards. No reasonable lawyer could differ on this position, particularly when the fees are taken from clients' funds.

**B. Hagens Berman knowingly and willfully withheld class funds.**

As the email exchange with Hagens Berman demonstrates, their violations were made knowingly and deliberately despite the terms of the settlement and two Ninth Circuit opinions vacating the awards. Ex. 1 & 1-A. The firm's decision not to return the money was calculated and not inadvertent.

Hagens Berman isn't simply avoiding having to pay back $52.8 million that should have been placed into a trust account under Rule 1.15(a) from the outset, but likely was not. They are profiting by taking interest that would have been earned on the Fee and Expense Awards. *See e.g.,* Dkt. 1898-4 ¶ 23(a) (requiring class counsel to refund the Fee and Expense Award "plus interest thereon at the same rate as earned by the account into which the balance of the Settlement Fund is deposited").

**C. Forfeiture is necessary to discourage similar misconduct.**

Forfeiture is a drastic punishment, but Hagens Berman's breaches of fiduciary duty are flagrant. They willfully withheld $52.8 million plus interest from their clients in violation of the settlements and Ninth Circuit's orders. Forfeiture is needed to dissuade the class action plaintiff's bar from doing the same thing elsewhere.

It's one thing to allow attorneys to receive immediate payment of attorneys' fees under a quick-pay provision. It's quite another to allow them to retain these fees when an appellate court has ordered them vacated.[7]

Context is also important. The ethical violations involving class funds follow the Ninth Circuit's vacatur of fees after the firm petitioned for more than twice what it bid to secure appointment as interim lead counsel—all without informing the Court of the bid until Erwin raised the issue. Even then, the firm failed to acknowledge that the bid "clearly offered to absorb [the $5 million in] litigation expenses." *Optical Disk*,

---

[7] According to McIntyre, Hagens Berman's failure to comply with court orders are also violations of the State Bar Act, Business and Professions Code 6103. Ex. 2 ¶ 54-55, 71, 74-75.

959 F.3d at 937. Hagens Berman's retention of the vacated awards and interest is just the latest effort to siphon more funds for themselves at the expense of the class.

"Public confidence in the fairness of attorney compensation in class actions is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 511, 376 P.3d 672, 692 (2016) (J. Goodwin Liu, concurring). Allowing attorneys to get paid before the class through a quick-pay provision and then retain their fees and expenses (more than twice the amount they bid), while ignoring the pay-back terms in the settlements and Ninth Circuit's mandates, reinforces public's skepticism of class actions and attorney compensation. *Cf. In re Private Asset Grp., Inc.*, 579 B.R. 534, 543 (Bankr. C.D. Cal. 2017) (weighing "the Court's need to impose sufficiently large penalties in the form of disgorgement to maintain the integrity of the bankruptcy system" in considering appropriate punishment based on impropriety in a bankruptcy proceeding).

## Conclusion

Erwin requests that the Court order an accounting of the Fee and Expense Awards, enforce the settlement agreements, and order Hagens Berman to return the awards, plus interest, to the Settlement Fund immediately. Alternatively, Erwin requests that those amounts deposited into the registry of the Court. Finally, because Hagens Berman is willfully withholding funds that belong to the class in violation of the California Rules of Professional Conduct, Erwin further seeks for the Court to find that the firm has breached its fiduciary duty and order fee forfeiture.

Dated:  September 23, 2020

Respectfully submitted,

*/s/ Robert W. Clore*
Robert W. Clore
Christopher Bandas
BANDAS LAW FIRM, P.C.
802 N. Carancahua, Suite 1400
Corpus Christi, TX 78401
Tel: (361) 698–5200
Fax: (361) 698-5222
Admitted *Pro Hac Vice*

Timothy R. Hanigan (125791)
Lang, Hanigan & Carvalho, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

*Counsel for Conner Erwin*

**Certificate of Service**

The undersigned certifies that today he filed the foregoing on ECF which will

send electronic notification to all attorneys registered for ECF-filing.

DATED:  September 23, 2020

/s/ *Robert W. Clore*
Robert W. Clore