Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com

*Lead Counsel for Indirect
Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | No.  3:10-md-2143 RS (JCS) |
| | REPLY IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' RENEWED MOTION FOR ATTORNEYS FEES |
| | Date:   November 5, 2020<br>Time:  1:30 p.m.<br>Dept:   Courtroom 3, 17th Floor<br>Judge: Hon. Richard Seeborg |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | DATE ACTION FILED: Oct. 27, 2009 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................................1

II. ARGUMENT .........................................................................................................................3

    A. Erwin's argument that Hagens Berman is entitled to "no fee" is frivolous. ............3

    B. Erwin has waived any opposition to Hagens Berman's showing that this litigation was extremely risky and that it obtained an exceptional result for him and the Class. ......................................................................................................................4

    C. Hagens Berman has not asked this Court to "simply reaffirm the vacated awards." ...................................................................................................................5

    D. Erwin erroneously claims that various contingencies were contemplated by the bid. ..........................................................................................................................6

        1. There is no merit to Erwin's contention that contested expert analyses and *Daubert* motions "were baked into the bid." .............................................6

        2. Erwin's argument that an "adverse holding on certification was foreseeable and expressly contemplated in the bid" is meritless...................................7

        3. There is no merit to Erwin's contention that variance from the bid is impermissible because "Hagens Berman contemplated or should have contemplated extensive and contested discovery." ....................................10

        4. Erwin incorrectly contends that the "narrow focus on the governmental investigation" does not allow variance from the bid. ................................11

        5. Erwin erroneously claims that the IPPs' recovery exceeding DPPs is not a reason to depart from the bid. .....................................................................11

        6. There is no merit to Erwin's assertion that the length of this litigation does not justify the fees sought by Hagens Berman. ..........................................13

    E. The two securities cases cited by Erwin provide no basis to deny the fee request..................................................................................................................14

    F. This Court may consider Hagens Berman's net gain. .............................................15

    G. Erwin's motion to unseal other bids should be denied..........................................15

III. CONCLUSION ..................................................................................................................15

010177-12/1364812 V1

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Akaosugi v. Benihana Nat. Corp.*,
    2012 WL 1029546 (N.D. Cal. Mar. 26, 2012) ...........................................................................7

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...................................................................................................15

*California v. Infineon Technologies AG*,
    2008 WL 4155665 (N.D. Cal. Sept. 5, 2008).......................................................................9, 10

*In re Cylink Secs. Litig.*,
    274 F. Supp. 2d 1109 (N.D. Cal. 2003).....................................................................................14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir.2011) .......................................................................................................7

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................................................9

*I & U, Inc. v. Publishers Sols. Int'l*,
    652 Fed. App'x 558 (9th Cir. 2016) ............................................................................................6

*Massachi v. Astrue*,
    486 F.3d 1149 (9th Cir. 2007) ....................................................................................................4

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
    559 U.S. 229 (2010) ....................................................................................................................6

*Miller v. Ghirardelli Chocolate Co.*,
    2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) ..............................................................................1

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    959 F.3d 922 (9th Cir. 2020) ............................................................................................ *passim*

*In re Oracle Secs. Litig.*,
    829 F. Supp. 1176 (N.D. Cal. 1993)..........................................................................................14

*In re Oracle Secs. Litig.*,
    852 F. Supp. 1437 (N.D. Cal. 1994)..........................................................................................14

*S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994) ......................................................................................................................4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    264 F.R.D. 603 (N.D. Cal. 2009) ...............................................................................................7

010177-12/1364812 V1

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) .........................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ...........................................................................1

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013)............................................................................12

*United States v. Bhambra*,
   2016 WL 4070128 (N.D. Cal. July 29, 2016) ...........................................................................9

*United States v. Garde*,
   848 F.2d 1307 (D.C. Cir. 1988)................................................................................................4

*United States v. Munsingwear, Inc.*,
   340 U.S. 36 (1950) ...................................................................................................................4

*U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*,
   89 F.3d 574 (9th Cir. 1996).......................................................................................................2

**STATE CASES**

*Fair v. Bakhtiari*,
   195 Cal. App. 4th 1135 (2011)..................................................................................................1

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*,
   6 Cal. 5th 59 (2018)...................................................................................................................1

**OTHER AUTHORITIES**

Jill E. Fisch, *The Vanishing Precedent: Eduardo Meets Vacatur*,
   70 Notre Dame L. Rev. 325, 330 (1994)...................................................................................4

-iii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Lacking valid objections to the attorney's fees sought by Hagens Berman for obtaining $205 million in settlements for the indirect purchaser class (the "Class"), objector Erwin incorrectly claims that "[s]ince Hagens Berman are defiantly in possession of $52.8 million in vacated attorneys' fees belonging to their clients, 'the appropriate fee for the attorney[s] is zero.'" Erwin Br. at 1 (quoting *Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1151 (2011)).[1] In *Fair*, an attorney entered into real estate investments with a client without giving advisements required by the ethical rules. As the California Supreme Court later explained, the Court of Appeal in *Fair* held that the trial court properly found that "the attorney's conduct was 'fundamentally at war' with both ethical rules and statutory law and that it 'infected the entire relationship' between the attorney and his clients."[2]

In contrast to *Fair*, Erwin does not prove any ethical violation, let alone a violation that infected the "entire relationship" between Hagens Berman and the Class. Instead, Erwin claims that more than a decade after this case was filed, Hagens Berman should have returned fees and expenses to escrow accounts pending resolution of the fee dispute. There is no merit to Erwin's vacillating arguments, as explained in section II(A), below, and in Hagens Berman's opposition to Erwin's motion to return fees.[3] Moreover, Erwin ignores that even if this Court were to find that Hagens Berman should return money to the escrow accounts until the fee dispute is settled, the proper remedy would be to order it to "repay to the Settlement Fund Account the amount received, plus interest that would have accrued had the money remained in the Settlement Fund Account."[4] And Erwin cannot claim that Hagens Berman would fail to make any repayments ordered by this Court.[5]

---

[1] "Erwin Br." refers to Erwin's Opposition to Indirect Purchaser Plaintiffs' Renewed Motion for Attorneys' Fees and Cross-Motion to Unseal Competing Bids, Oct. 15, 2020, ECF No. 2948.

[2] *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 92 (2018) (quoting *Fair*, 195 Cal. App. 4th at 1169).

[3] *See* Indirect Purchaser Plaintiffs' Opposition to Motion to Enforce Settlement, Return Class Funds, and Disgorge Fees ("HB Opp'n"), Oct. 7, 2020, ECF No. 2944.

[4] *Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at *5 n.4 (N.D. Cal. Oct. 2, 2014).

[5] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("there has been no showing by [the objector] that there has ever been a case where counsel, including counsel herein, have failed to repay fees").

-1-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Erwin's erroneous claim that Hagens Berman should be awarded zero dollars in fees after recovering $205 million for the Class is undermined by his citation to *U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574 (9th Cir. 1996). *See* Erwin Br. at 1. In *Virani*, the Ninth Circuit explained that an attorney's fee may be zero when there "is a conflict of interest between the attorney and the client . . . that pervades the whole relationship." *Virani*, 89 F.3d at 580. But when the client's contention is that a law firm "handled its fee arrangement in a way that might have the taint of some impropriety," courts "have simply refused to enforce the improper agreement itself," and the "attorneys were still allowed to recover the reasonable value of their services." *Id.* As a result, the Court held that "even if there were some impropriety in the fee arrangement," the law firm was "entitled to recover the reasonable value of its services." *Id.* Similarly here, if this Court were to find that Hagens Berman should return   funds to the escrow accounts and pay interest, it would still be entitled to substantial attorney's fees for obtaining an exceptional result the Class.

Erwin's remaining arguments fare no better. *First*, he does not respond on the merits to Hagens Berman's arguments that this litigation was risky and that the $205 million in settlements was an exceptional result, especially given that summary judgment eventually was entered against the Class. Instead of responding to those arguments on the merits, Erwin erroneously claims that a variance from the fee calculated under the bid can *only* "be supported [by] circumstances that were uncontemplated at the time of the bid," so that this Court purportedly may not consider the *Vizcaino* factors or a lodestar cross-check. Erwin Br. at 21. That argument is incorrect, because the Ninth Circuit held that this Court cited "factors that amply supported its determination that this litigation was very risky" and "did not err in assessing the *Vizcaino* risk factor."[6] If the *Vizcaino* factors were irrelevant, the Ninth Circuit would have said so. And nothing in the Ninth Circuit's opinion supports Erwin's *ipse dixit* that this Court cannot use a lodestar check.[7]

*Second*, Erwin again misunderstands the Ninth Circuit's opinion when he claims throughout his brief that various events in this litigation were "foreseeable" or "not unforeseeable." In essence,

---

[6] *In re Optical Disk Drive Prods. Antitrust Litig.* ("*ODD I*"), 959 F.3d 922, 935 (9th Cir. 2020).

[7] *See id.* at 932 (citing this Court's conclusion "that a lodestar cross-check 'confirms that an upward variance from the original proposed fee guidelines is amply justified'").

-2-

1    Erwin argues that any eventuality that was conceivable could not justify a variance from the bid fee.

2    But the Ninth Circuit did not use the word "foreseeable" even once. Instead, it held that "a district

3    court would likely not abuse its discretion by departing from a bid based on circumstances the bid

4    did not contemplate."[8] As explained in detail below, Erwin time and again makes erroneous *ipse*

5    *dixit* arguments that various events were foreseeable, without providing any evidence that they were

6    contemplated at the time of the bid. And Erwin routinely misrepresents facts in this case and other

7    litigation. For example, he falsely claims that "[t]he 57 discovery disputes in *CRT* are nearly twice as

8    many as here" (*see* Erwin Br. at 17), when in fact the filings he cites concern only eleven discovery

9    disputes involving indirect purchasers.

10          For these reasons and for the reasons set forth below and in Hagens Berman's opening brief,

11    there is no merit to any of Erwin's arguments.

12                              **II.      ARGUMENT**

13   **A.      Erwin's argument that Hagens Berman is entitled to "no fee" is frivolous.**

14          Erwin erroneously claims that Hagens Berman should receive no fee. *See* Erwin Br. at 5–6. In

15    addition to the ill-considered argument in his introduction, he incorrectly claims that Hagens Berman

16    "have no response" to his argument that it must return the fees because this Court's orders were

17    vacated. *Id*. at 6. Nonsense. Erwin moved this Court to order Hagens Berman to return fees on the

18    ground that "the settlements require it returned with interest within five business days."[9] As Hagens

19    Berman explained in its opposition to that motion, the settlement agreements require it to return fees

20    and pay interest only if the fee awards were "reversed or modified," not if the Ninth Circuit vacated

21    this Court's orders and remanded for further consideration. HB Opp'n at 2. Erwin now abandons his

22    argument that the fee awards were reversed or modified. *See* Erwin Br. at 5 (whether "'vacated' is

23    distinct from 'reversed' or 'modified' . . . is irrelevant").

24          Erwin now claims—incorrectly—that Hagens Berman must return the fees and is not

25    "entitled to hold $52.8 million in fees and expenses because *there are no fee and expense awards*."

26

27          [8] *Id.* at 935.

           [9] *See* Erwin's Notice of Motion and Motion to Enforce Settlement, Return Class Funds, and
28    Disgorge Fees, Sept. 23, 2020, ECF No. 2941.

-3-

1
2
3
4
5
6
7
8
9
10
11
12

Erwin Br. at 6. The cases he now cites (which he did not cite in his motion) are inapposite, because they concern whether a district court order should be vacated when the case becomes moot while on appeal, so that the appellate court has no opportunity to review the lower court order.[10] Here, in contrast, the Ninth Circuit fully considered this Court's orders and remanded this matter for further consideration, so that this Court can decide whether to award the same or different fees as before. As in another case cited by Erwin, this Court on remand can make "new finding[s]" on remand.[11] And if this Court or the Ninth Circuit ever reverses or modifies the fee awards, Hagens Berman can be told to return fees (with interest) to the escrow accounts. In the meantime, the Class will not suffer *any* harm, because no settlement amounts will be distributed until the fee dispute is fully resolved. So there is no merit to Erwin's contention that Hagens Berman's "defiance" in not acceding to his unsupported demands requires this Court to grant "zero" fees. *See* Erwin Br. at 1, 6. Hagens Berman is not in "defiance" of *any* ethical rule, Court order, or settlement agreement.

13
14

**B.**     **Erwin has waived any opposition to Hagens Berman's showing that this litigation was extremely risky and that it obtained an exceptional result for him and the Class.**

15
16
17
18
19
20
21
22
23

Erwin does not respond on the merits to Hagens Berman's showing that this litigation was very risky and that it obtained exceptional results for the Class. Instead, Erwin erroneously claims that under the Ninth Circuit's ruling, the "following considerations cannot, as a matter of law, support a variance from the bid: (1) that the fee is reasonable in light of other antitrust cases; (2) other *Vizcaino* factors; or (3) the lodestar cross-check. Any deviation can only be supported [by] circumstances that were uncontemplated at the time of the bid that would support a greater fee." *Id.* at 21. Whether the bid contemplated circumstances is only one factor this Court may consider. *See ODD I*, 959 F.3d at 935 ("We do not endeavor to create a comprehensive list of circumstances that may warrant departure from a fee bid, but we note that a district court would likely not abuse its

24
25
26
27

---

[10] *See S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *United States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988). Erwin also cites an irrelevant law review article, which states that "'postsettlement vacatur was virtually unknown in the profession'" and that "'[t]hose who were using vacatur to destroy decisions and manipulate case law were doing so in secret.'" Jill E. Fisch, *The Vanishing Precedent: Eduardo Meets Vacatur*, 70 Notre Dame L. Rev. 325, 330 (1994).

28

[11] *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007).

-4-

REPLY ISO IPPS' RENEWED MOTION FOR
ATTORNEYS FEES- Case No.: 3:10-md-2143 RS
010177-12/1360595 V1

1    discretion by departing from a bid based on circumstances the bid did not contemplate.").

2         Moreover, the Ninth Circuit clearly held that this Court can and should consider the *Vizcaino*

3    factors. After listing the six *Vizcaino* factors, the Court stated that "[u]ltimately, district courts must

4    ensure their fee awards are 'supported by findings that take into account all of the circumstances of

5    the case.' *Vizcaino*, 290 F.3d at 1048." *Id*. at 930. The Court then stated that "*Vizcaino* recognized

6    that in some class action litigation, 'lawyers compete for lead counsel status and may even bid in a

7    court-supervised auction,' but because counsel in *Vizcaino* had not submitted that type of fee

8    proposal, our court did not have occasion to consider how or whether such a bid should factor into

9    the analysis when requests for fees and expenses are considered." *Id*. Thus, the bid factors into this

10   Court's analysis but does not displace the *Vizcaino* factors. And the Ninth Circuit made abundantly

11   clear that the *Vizcaino* factors apply when it held that this Court cited "factors that amply supported

12   its determination that this litigation was very risky. Indeed, the last two non-settling defendants

13   ultimately prevailed over the class at the summary judgment stage. . . . Overall, the district court did

14   not err in assessing the *Vizcaino* risk factor." *Id*. at 935.

15        In light of Erwin's failure to address the *Vizcaino* factors, this Court should find that this

16   litigation was extremely risky and that the $205 million in settlements was an exceptional result.

17   Those factors support this Court's previous explanation that its "approval of fees at a higher rate than

18   specified in the bid . . . was predicated in part on the fact that the amount was still substantially lower

19   than would have been justified in the absence of the bid."[12]

20   **C.    Hagens Berman has not asked this Court to "simply reaffirm the vacated awards."**

21        Erwin's argument that "Hagens Berman cannot cite any authority for its suggestion that this

22   Court has jurisdiction to reinstate or reaffirm an award of attorneys' fees vacated by a Court of

23   Appeals" is a red herring. *See* Erwin Br. at 6. Hagens Berman does not ask this Court to "reinstate or

24   reaffirm" its previous fee awards. Instead, as Hagens Berman thoroughly argued in its opening brief,

25   this Court can award the requested fees after applying the standards adopted by the Ninth Circuit,

26   which remanded this matter for "further proceedings consistent with this opinion." *ODD I*, 959 F.3d

27

28   ───────────────
     [12] Third Approval Order, at 20, Feb. 21, 2019, ECF No. 2889.

REPLY ISO IPPS' RENEWED MOTION FOR
ATTORNEYS FEES- Case No.: 3:10-md-2143 RS
010177-12/1360595 V1

1    at 938. Nothing precludes this Court from awarding the same amount of fees that it previously

2    awarded, so long as this Court acts consistently with the Ninth Circuit's opinion.

3    **D.      Erwin erroneously claims that various contingencies were contemplated by the bid.**

4                Erwin claims, without justification, that the "extent of the work required, evolution of district

5    court caselaw, potential adverse holdings, and overcoming certification all would have been

6    contemplated at the time. None of the circumstances listed by Hagens Berman were unforeseeable,

7    and none justify paying the firm nearly twice as much as they bid." Erwin Br. at 10. In making that

8    argument, Erwin misunderstands the meaning of "contemplate." The word "contemplate" requires

9    expectation, not possibility. For example, the Supreme Court interpreted "contemplation" in a statute

10   by "reference to whether the *expectation* of filing for bankruptcy (and obtaining a discharge)

11   impelled the advice. We emphasize that awareness of the possibility of bankruptcy is insufficient to

12   trigger § 526(a)(4)'s prohibition."[13] Indeed, Erwin's arguments are inconsistent with Judge Walker's

13   explanation that "potential recovery by indirect purchaser plaintiffs in this litigation is subject to a

14   greater variety of imponderables" than in securities cases. Order at 8, June 4, 2010, ECF No. 96.

15                **1.      There is no merit to Erwin's contention that contested expert analyses and**
                 ***Daubert* motions "were baked into the bid."**

16

17                There is no merit to Erwin's *ipse dixit* that the full extent of expert analyses and *Daubert*

18   motions was somehow "baked into the bid." *See* Erwin Br. at 10. *First*, Erwin mischaracterizes

19   Hagens Berman's argument when he claims it is "disingenuous to say that the bid did not anticipate

20   hard-fought litigation or extensive expert analyses in addressing class-wide antitrust injury or pass-

21   through damages," and that "there was always going to be unique expert analyses." *Id*. at 11. Instead

22   of claiming that it did not contemplate hard-fought litigation and extensive expert work, Hagens

23   Berman argued in its opening brief that "the ***amount*** of analyses undertaken in *ODD* far exceeded

24   the evidentiary record in other cases." HB Opp'n at 6 (footnote omitted; emphasis added).

25

26                ───────────────
                 [13] *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 248 n.6 (2010) (emphasis

27   added). *See also I & U, Inc. v. Publishers Sols. Int'l*, 652 Fed. App'x 558, 559 (9th Cir. 2016)
     ("potential litigation was more than 'a mere possibility' and was 'contemplated in good faith and

28   under serious consideration'") (internal citation omitted).

REPLY ISO IPPS' RENEWED MOTION FOR
ATTORNEYS FEES- Case No.: 3:10-md-2143 RS
010177-12/1360595 V1

1

2

3

4

5

6

7

8

*Second*, Erwin misleadingly argues that it is "beyond naïve to believe that Hagens Berman did not have a sense of the extent of data involved and analysis required." Erwin Br. at 11–12. In support of that meritless argument, he says that Hagens Berman knew at the time of its bid that there were 1.2 billion ODD units and "at least 15 defendants" represented by experienced defense firms. *Id*. at 11. Putting aside Erwin's misleading implication that there were 15 *separate* defendants, which ignores that there were defendant families, the number of units sold is irrelevant to the analysis of different ODD *products* required to prove pass-through, which was far more than were analyzed in any other prior case, as discussed in more detail below.

9

10

11

12

13

*Third*, without any explanation, Erwin falsely suggests that extensive *Daubert* motions were a given. When Hagens Berman submitted its bid, the standard for assessing *Daubert* motions at class certification stage was lenient, so such motions were often bypassed and rarely granted.[14] It was only after Judge Walker accepted Hagens Berman's bid that the Supreme Court expressed "doubt" that a less rigorous *Daubert* analysis applies at the class certification stage.[15]

14

15

### 2.     Erwin's argument that an "adverse holding on certification was foreseeable and expressly contemplated in the bid" is meritless.

16

17

18

19

20

21

Erwin discusses the renewed class certification motion in two separate parts of its brief. *See* Erwin Br. at 7–10; 12–15. Neither argument is correct. *First*, Erwin erroneously claims that Hagens Berman is barred from even referring to the renewed motion. *See Id*. at 7–10. Specifically, Erwin erroneously contends that Hagens Berman "fail to provide *more* than what they presented to the Ninth Circuit" as to the renewed motion. *Id*. at 8. The Ninth Circuit stated that "[w]ithout more," the renewed motion does not justify a variance from the bid, because the bid "contemplated that Hagens

22

23

24

[14] *See*, *e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig*., 264 F.R.D. 603, 616 (N.D. Cal. 2009) ("At the class certification stage of the proceedings, 'robust gatekeeping' of expert evidence is not required; rather, the court must assess only whether expert evidence is useful in evaluating whether class certification requirements have been met.").

25

26

27

28

[15] *See*, *e.g.*, *Akaosugi v. Benihana Nat. Corp*., 2012 WL 1029546, at \*2 (N.D. Cal. Mar. 26, 2012) ("Plaintiffs urge that a *Daubert* analysis of expert testimony is inappropriate at the class-certification stage. Not so. Recently, the Supreme Court stated in *Wal–Mart Stores, Inc., v. Dukes*, [564 U.S. 338, 354] (2011), '[t]he District Court concluded that *Daubert* did not apply to expert testimony at the certification stage of class-action proceedings. We doubt that is so. . . .' And our court of appeals, in a post-*Dukes*, decision, likewise concluded that Daubert applies at the class-certification stage. *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 982 (9th Cir.2011).") (Alteration and ellipsis in original.)

REPLY ISO IPPS' RENEWED MOTION FOR
ATTORNEYS FEES- Case No.: 3:10-md-2143 RS
010177-12/1360595 V1

1
2
3
4

Berman would move to certify the plaintiff class and it is not unusual for interim class counsel to have to take more than one run at class certification." *ODD I*, 959 F.3d at 935. Hagens Berman provides "more" in two ways. First, the grid contemplated the class certification but did not refer to the need for extensive work to support a renewed motion after *denial* of class certification.

5
6
7
8
9
10
11
12
13
14

       *Second*, Hagens Berman has provided substantial evidence that it is rare in antitrust cases for the plaintiffs to move for class certification, to have class certification denied, and then to succeed under a renewed motion for class certification, other than in the settlement context.[16] Erwin claims that "Professor Davis's opinion that it is rare to succeed under a renewed certification motion is immaterial and should be excluded." Erwin Br. at 9. But the Ninth Circuit opinion does not preclude Hagens Berman from providing "more" on this issue, which has never been litigated in this matter. And there is no merit to Erwin's argument that Professor Davis "does not reconcile his opinion with Hagens Berman's contingency grid that expressly contemplated the possibility that certification could be denied." *Id.* While the grid contemplated that a motion for class certification, nothing in the grid addresses the likelihood of a renewed motion.

15
16
17
18
19
20
21
22
23
24
25

       *Second*, Erwin mischaracterizes Hagens Berman's argument when he erroneously claims that a "majority of Hagens Berman's argument is premised on the idea that it could not foresee this Court's 2014 denial of certification based on the law as it existed in 2010." *Id.* at 12. Hagens Berman accurately claims that nothing in the bid contemplated denial of class certification *followed by extensive work to support a renewed motion*. Instead of addressing that question, Erwin misleadingly claims that, "many of the analyses were performed as part of the *first* motion for class certification and thus clearly anticipated." *Id.* If Hagens Berman had simply repackaged its arguments in a second class certification motion, it would have lost. In permitting a renewed motion, this Court said that "while I'm inclined to entertain another opportunity for the parties to present a request to certify a class, I also will expect and will consider an argument from the defense that this is really nothing different than what you saw last time; and if I'm convinced that it's nothing different than I saw last

26
27
28

---

[16] Declaration of Professor Joshua P. Davis ("Davis Report"), ¶¶ 50-52, Sept. 28, 2020, ECF No. 2942-3.

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

time, I'm going to make the same ruling."[17] And Erwin ignores that in support of Hagens Berman's renewed motion for class certification, Dr. Flamm "measured pass-through rates for over 273 million ODD products."[18] The econometric showing that Dr. Flamm and Hagens Berman made in the second class motion was far greater in scope than in any other litigation, as shown in the opening brief.

Rather than address that extensive, uncontemplated work, Erwin plays a game of "gotcha" by latching onto a typo to falsely argue that "Hagens Berman mislead the Court in one key respect," because "Judge Alsup did not deny certification in *GPU* after the [fee] bid." Erwin Br. at 12–13 (quoting opening brief as stating that Judge Alsup denied class certification on "August 7, 2018"). Hagens Berman apologizes for mistakenly writing "2018" rather than "2008." But two factors show that Hagens Berman plainly did not mean to mislead the Court. *First*, Hagens Berman cited to that case as: "*In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 491 (N.D. Cal. 2008)."[19] *Second*, the "2018" mistake came in a paragraph stressing that, before the bids were filed, "four cases other than DRAM presented Hagens Berman with what it reasonably believed was a pathway to certification of an indirect purchaser class in this case"[20] So Hagens Berman plainly did not try to mislead the Court into believing that Judge Alsup rendered his opinion *after* Hagens Berman filed the initial motion for class certification in this case but instead cited that opinion as providing a pathway *before* it filed its bid or sought class certification.[21]

Finally, Erwin relies on an inapposite case. In *California v. Infineon Technologies AG*, 2008 WL 4155665, at *9 (N.D. Cal. Sept. 5, 2008), the court found that Dr. Flamm's analysis did not support class certification, because he lacked "a sufficiently detailed explanation as to ***how*** he actually proposes to apply any particular methodology to specific facts or data *in this case*."

---

[17] *See* Jan. 29, 2015 Hr'g Tr. at 7 (ECF No. 1513).

[18] *See* Declaration of Dr. Kenneth Flamm in Support of Indirect Purchaser Plaintiffs' Revised Motion for Class Certification, ¶ 174, Mar. 3, 2016, ECF No. 1808-4.

[19] *See* Indirect Purchaser Plaintiffs' Notice of Renewed Motion and Renewed Motion for Attorneys' Fees at 10 n.47, Sept. 28, 2020, ECF No. 2942.

[20] *Id*. at 10.

[21] *See United States v. Bhambra*, 2016 WL 4070128, at *3 (N.D. Cal. July 29, 2016) ("These typos [concerning dates] do not in any way evidence a larger plot to defraud the court. . . ."), *aff'd*, 2017 WL 7310635 (9th Cir. Sept. 29, 2017).

-9-

(Emphasis in original.) The court explained that Dr. Flamm failed to "offer specific methodologies that purport to adequately demonstrate impact for all class members across customer, product, and procurement type." *Id.*, at *10. In contrast, Dr. Flamm presented detailed analyses to this Court.

> **3.    There is no merit to Erwin's contention that variance from the bid is impermissible because "Hagens Berman contemplated or should have contemplated extensive and contested discovery."**

Erwin makes three arguments about Hagens Berman's discovery efforts, each of which is frivolous. *First*, Erwin asserts that it "is beyond disingenuous to suggest massive discovery was not expected from the outset." Erwin Br. at 15. Hagens Berman never suggested it did not contemplate extensive discovery. Instead, as Hagens Berman showed in its opening brief, it did not contemplate the vast amount of discovery that would be required for class certification.

*Second*, Erwin falsely asserts that Hagens Berman "should have anticipated more subpoenas" than in *DRAM* and *TFT-LCD*. *Id*. at 16. Erwin tries to support that argument with sleight of hand, stating that Hagens Berman "performed pass-through estimates on 194 million ODD products ahead of the first motion for certification," so it is "underwhelming that there were 100 non-party subpoenas here compared to 30 in *DRAM* or 50 in *TFT-LCD*." *Id.* Erwin fails to show that, *when Hagens Berman filed its bid*, it knew that such a huge number of ODD products would have to be analyzed or that such extensive discovery from third parties would be required, or that Dr. Flamm would have to measure pass-through rates for 273 million ODD products for the renewed motion.

*Third*, Erwin misleadingly claims that "[t]he 57 discovery disputes in *CRT* are nearly twice as many as here." *Id*. at 17. In fact, only eleven of the *CRT* filings cited by Erwin concern discovery disputes involving indirect purchasers. Erwin cites to Judge Walker's statement that he submitted 25 recommended orders and reports, with nine motions still pending.[22] But Judge Walker's order shows that only seven of those filings involved indirect purchasers (with one filing withdrawn), and that the rest involved disputes by the direct purchaser class or opt-out direct purchasers.[23] Erwin also

---

[22] Report and Recommendations of Special Master re Discovery and Related Matters at 2, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944, (N.D. Cal. July 16, 2015), ECF No. 3915.

[23] *See id*. at Tables 1 & 2.

-10-

1

2

3

4

5

6

7

8

misleadingly states that there "appear to have been at least 23 additional discovery disputes," citing *CRT* docket numbers in a footnote. *See* Erwin Br. at 16-17 & n.8. The vast majority of those filings did not involve indirect purchasers but instead concerned the direct purchaser class and opt-outs. Specifically, of the 23 documents cited by Erwin, only four concerned discovery disputes involving indirect purchasers. While nine filings related to indirect purchasers,[24] four of those nine filings were orders granting extensions of time.[25] And two others are a recommendation and order concerning one discovery dispute.[26] Erwin's misleading discussion of the discovery disputes in *CRT* undermines his argument.

9

10

**4.       Erwin incorrectly contends that the "narrow focus on the governmental investigation" does not allow variance from the bid.**

11

12

13

14

Erwin mischaracterizes Hagens Berman's argument when he claims that "Hagens Berman should not be excused from their fee bid because the Department of Justice didn't do more work for them." Erwin Br. at 17. Hagens Berman does not complain that the DOJ did not do "more work for them." Instead, Hagens Berman contends that the defendants affirmatively used the guilty plea and shaped the criminal proceedings to undermine class certification. Erwin ignores that argument.

15

16

**5.       Erwin erroneously claims that the IPPs' recovery exceeding DPPs is not a reason to depart from the bid.**

17

18

19

20

21

22

23

24

25

Erwin misunderstands indirect purchaser claims when he incorrectly claims that Hagens Berman "cannot justify a deviation from the bid based on the results in the Direct Purchaser litiga-tion. As the Zelle Group's application recognized, '[t]he Indirect-Purchaser class is substantially larger than that of the Direct Purchasers.' Dkt. 4 at 5." *Id*. at 18. While the *number* of indirect purchasers inevitably is larger than the number of direct purchasers, the total damages suffered by indirect purchasers cannot be larger than the damages suffered (and passed on) by direct purchasers. And Erwin ignores that while the direct purchaser plaintiffs ("DPPs') in this litigation settled on behalf of a national class, class settlements for indirect purchasers were limited to purchasers in the

26

27

28

---

[24] S*ee* ECF Nos. 832, 877, 882, 1077, 1082, 1089, 1104, 2734, 3130.

[25] *See* ECF Nos. 832, 1077, 1089, 1104.

[26] ECF Nos. 877, 882.

-11-

REPLY ISO IPPS' RENEWED MOTION FOR
ATTORNEYS FEES- Case No.: 3:10-md-2143 RS
010177-12/1360595 V1

1    23 states (and the District of Columbia) that allow indirect-purchaser claims.

2         Erwin further undermines his argument when he argues that "though it may be uncommon,

3    the IPPS in *TFT-LCD* recovered far in excess of what the DPPs did." *Id*. DPPs in that case settled for

4    $405,022,242. *See In re TFT-LCD (Flat Panel) Antitrust Litig*., 2011 WL 7575003, at *1 (N.D. Cal.

5    Dec. 27, 2011). DPP counsel received 30% of the settlement amount in fees of $121,506,672.60,

6    which was "confirmed by a lodestar 'cross-check,' which reveals a fair and reasonable lodestar

7    multiplier of 1.096." *Id.* In comparison, the court found that "the ultimate result achieved by IPP

8    counsel, a settlement of approximately $1.08 billion in cash, is exceptional." *In re TFT-LCD (Flat*

9    *Panel) Antitrust Litig*., 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013). The Court awarded "a

10   total amount of IPP Class Counsel attorneys' fees of $309,725,250, which represents 28.6% of the

11   Settlement Fund." *Id*., at *20. Moreover, the lodestar multiplier for all plaintiffs' firms "averag[ed]

12   between 2.4–2.6." *Id*., at *8. The court noted "the significant contribution that the Gray Plant firm

13   has made to this litigation," finding that a "5.22 multiplier" was justified for that firm. *Id*., at *13.

14        Thus, IPP counsel received 2.55 times more in fees than DPP counsel ($309,725,250 versus

15   $121,506,672.60), where the IPP settlements were approximately 2.67 times greater than the DPP

16   settlements ($1.08 billion versus $405,022,242). Moreover, the average lodestar was approximately

17   2.5 greater for IPP counsel than for DPP counsel (an average between 2.4–2.6 versus 1.096). And the

18   lodestar for a lead firm (Gray Plant) was approximate five times greater than DPP counsel's lodestar.

19        Here, the total indirect purchaser settlements of $205 million are more than 2.7 times higher

20   than the total settlements ($74.9 million) recovered by the direct purchasers. Nonetheless, under

21   Erwin's proposal that Hagens Berman be awarded $25,855,00 *at most*, the Class would receive

22   **87.4%** of the total settlements. In contrast, the DPP class received only **65.2%** of the DPP settlements

23   of $74.9 million after $26,072,124.65 in attorney's fees and expenses were deducted. If this Court

24   were to award $47,780,000 in fees, as requested by Hagens Berman, the IPP Class would still receive

25   **76.7%** of the total settlements of $205 million. And Hagens Berman's requested lodestar multiplier

26   of 1.59 (or 1.42 after expenses are deducted) is far below the average multiplier of 2.4–2.6 for IPP

27   class counsel in *TFT-LCD*, let alone the 5.22 multiplier for one plaintiffs' firm, and much closer to

28   the 1.096 multiplier awarded to DPP counsel in that litigation.

-12-

1
2
3
4
5
6
7

All of this demonstrates that, using the fee grid as a starting point, this Court would be well within its discretion to award the fees sought by Hagens Berman. And it shows that Erwin misses the mark when he argues that "it is irrelevant that DPP's Counsel received a higher percentage fee. They did not secure their position with a 12.6% fee bid. Hagens Berman did." Erwin Br. at 18. That argument ignores that Hagens Berman does not seek the same percentage fee as DPP counsel but instead seeks a variance from the fee bid that is justified by the exceptional results it obtained for Erwin and the Class compared to the DPP settlements.

8
9

### 6.   There is no merit to Erwin's assertion that the length of this litigation does not justify the fees sought by Hagens Berman.

10
11
12
13
14
15
16
17

Erwin erroneously argues that the requested fees are unreasonable because "this global electronics antitrust litigation was always going to be drawn out." *See Id.* at 19. In particular, there is no merit to Erwin's assertion that Professor Davis's "opinions on the length of litigation are misinformed" and that the "lion's share of the $205 million settlements were finally approved years ahead of what Davis believed." *Id.* In fact, Professor Davis was *exactly* correct. As Erwin admits, Davis stated that while almost two-thirds of antitrust class actions are finally approved within five years after filing, this action was pending for about nine years before it reached the final settlement. *See Id.* And Erwin admits that the first fee was awarded more than six years after this case started. *Id.*

18
19
20
21
22
23
24
25

Erwin again engages in sleight of hand when he states that the "length of time between commencement of this global electronics antitrust case and the potential distribution of attorneys' fees from settlements is hardly unusual." *Id.* at 19 n.10 (citing *TFT-LCD* and *CRT* litigation). The filings cited by Erwin do not establish when fees were paid in those cases.[27] And more importantly, the issue is not how long it took plaintiffs' attorneys to be paid but rather how long it took to litigate the merits of the case. Similarly, there is no merit to Erwin's argument that Hagens Berman cannot seek a variance from the bid because "[t]hey were paid most of their fees in 2016." *Id.* at 19-20. When Hagens Berman was first paid has nothing to do with how long it took to litigate this case on

26
27
28

---

[27] Erwin falsely claims that "in *CRT* (filed in 2008), no attorneys fees from settlements have been distributed to date. *See, e.g.*, Order, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944-JST (Dkt. 5823, N.D. Cal. Aug. 27, 2020)." Erwin Br. at 19 n.10. That order says *nothing* about payment of fees but instead denies a motion to intervene.

-13-

1   the merits. As Professor Davis has explained, "fewer than 10% of antitrust class actions last more

2   than eight years before final approval."[28] Erwin has no response to that fact.

3   **E.      The two securities cases cited by Erwin provide no basis to deny the fee request.**

4   Erwin cites two securities cases in which fee bids were used to erroneously argue that Hagens

5   Berman's fee request should be denied. *See* Erwin Br. at 20. Erwin ignores that in granting Hagens

6   Berman's fee bid, Judge Walker explained that he "understood fully that counsel, at this early stage

7   of litigation, have limited information concerning the probability of a recovery and the amount or

8   range of such recovery."  Order at 7 (ECF No. 96). Judge Walker also explained that "[b]y contrast,

9   plaintiffs' counsel in a fraud-on-the-market securities class action typically have more readily

10  available information to size up potential recovery than do counsel here." *Id*. at 7-8. Judge Walker

11  then stated that in contrast to securities cases, "potential recovery by indirect purchaser plaintiffs in

12  this litigation is subject to a greater variety of imponderables." *Id*. at 8. *See also id*. at 6 n.1 ("'the

13  court cannot readily predict the recovery at the time it selects counsel'") (citation omitted). Thus,

14  awards in securities cases are of little, if any, relevance to this case.

15  Moreover, class counsel in those cases received substantial fees for minimal effort compared

16  to Hagens Berman's work in this case. In the *Oracle* securities case, the complaint was filed in

17  March 1990, and "in December 1992, the parties notified the court that they had reached settlements

18  for the class and derivative actions."[29] Thus, settlements were reached far more quickly, with far less

19  litigation, than here. Nonetheless, the court awarded $4,800,000 in fees, which was 19.2% of the $25

20  million settlement and represented a "risk multiplier of approximately 1.25."[30] And in the *Cylink*

21  litigation, the court approved class counsel on February 4, 2002, less than a year before the case

22  settled on September 10, 2002.[31] The court certified the class on November 15, 2002, *after* the

23  parties settled for $6.2 million on September 10, 2002. *Id.* Class counsel sought, and were awarded,

24  "$932,500 in fees, a figure roughly 15% of the gross settlement amount." *Id*. at 1115. So even if

25

26  [28] Davis Report, ¶¶ 55, 56; *id*., Figure 3 (from 2018 Antitrust Report).

[29] *In re Oracle Secs. Litig*., 829 F. Supp. 1176, 1178 (N.D. Cal. 1993).

27  [30] *In re Oracle Secs. Litig*., 852 F. Supp. 1437, 1458 (N.D. Cal. 1994).

28  [31] *In re Cylink Secs. Litig*., 274 F. Supp. 2d 1109, 1115 (N.D. Cal. 2003).

-14-

1    Judge Walker's distinction between securities and antitrust cases were ignored, the fees sought by

2    Hagens Berman are justified in comparison to the fee awards in those two cases.

3    **F.      This Court may consider Hagens Berman's net gain.**

4              Erwin erroneously claims that "the Court should disregard Hagens Berman's efforts to

5    manufacture a lower percentage by offsetting fees with expenses they promised to forego [sic]."

6    Erwin Br. at 22. Erwin ignores the Ninth Circuit's statement in *In re Bluetooth Headset Prods. Liab.*

7    *Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), that "where awarding 25% of a 'megafund' would yield

8    windfall profits for class counsel in light of the hours spent on the case, courts should adjust the

9    benchmark percentage or employ the lodestar method instead." And while Hagens Berman no longer

10   seeks reimbursement of expenses, that does not mean that this Court cannot consider the expenses it

11   is forgoing in assessing the reasonableness of the requested fee.

12   **G.      Erwin's motion to unseal other bids should be denied.**

13             For two reasons, there is no merit to Erwin's motion to unseal other bids. *See* Erwin Br. at

14   22–23. *First*, the Ninth Circuit focused on circumstances "contemplated by the stages of litigation

15   incorporated into the fee grid."[32] Thus, the Court focused on what Hagens Berman contemplated, *not*

16   what other firms contemplated. Because Hagens Berman has never seen the other bids, the other bids

17   are irrelevant to what it contemplated. *Second*, Erwin's motion is improper, because he has not made

18   the other firms aware that he seeks bids that they filed *in camera*.

                                         **III.     CONCLUSION**

20             Hagens Berman respectfully requests that this Court award $47,780,000 in fees. Erwin has no

21   response to Hagens Berman's showing that this litigation was extremely risky, and that it obtained an

22   exceptional result for the Class. And Erwin fails to rebut Hagens Berman's showing that when it

23   made its fee bid, it did not contemplate extensive work required to obtain $205 million for him and

24   the Class.

25

26

27

_____

28   [32] *ODD I*, 959 F.3d at 934.

-15-

1    DATED: October 26, 2020              HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                         By _____s/ Steve W. Berman_____
                                                STEVE W. BERMAN

4                                         Steve W. Berman (*Pro Hac Vice*)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
5                                         1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
6                                         Telephone: (206) 623-7292
                                          Facsimile:  (206) 623-0594
7                                         steve@hbsslaw.com

8                                         Shana E. Scarlett
                                          715 Hearst Avenue, Suite 202
9                                         Berkeley, CA 94710
                                          Telephone: (510) 725-3000
10                                        Facsimile:  (510) 725-3001
                                          shanas@hbsslaw.com
11
                                          *Lead Counsel for Indirect Purchaser Class*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -16-
REPLY ISO IPPS' RENEWED MOTION FOR
ATTORNEYS FEES- Case No.: 3:10-md-2143 RS
010177-12/1360595 V1