UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | Case No. 10-md-02143-RS<br>MDL No. 2143 |
| This document relates to: ALL INDIRECT PURCHASER ACTIONS | **ORDER GRANTING IN PART RENEWED MOTION FOR ATTORNEY FEES AND DENYING MOTION TO ENFORCE SETTLEMENT, RETURN CLASS FUNDS, AND DISGORGE FEES.** |

## I.  INTRODUCTION

In this massive Multi District Litigation ("MDL") proceeding that lasted nearly a decade, counsel for the so-called "Indirect Purchaser Plaintiffs" were awarded a total of $47,780,000 in attorney fees over the course of three rounds of settlements they negotiated with various groups of defendants. On consolidated appeals by three objectors, the Ninth Circuit vacated the fee awards, remanding for further findings and a more fulsome explanation of any fees awarded in excess of the amount counsel would have recovered under the terms of a "bid" they submitted at the outset of litigation, when seeking appointment as interim class counsel. *See In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 934 (9th Cir. 2020) (*ODD I*) (vacating first and second round fee awards for "further consideration and findings"); *See also In re Optical Disk Drive Prod.*

United States District Court
Northern District of California

*Antitrust Litig.*, 804 F. App'x 443, 444 (9th Cir. 2020) (*ODD II*) (vacating third round fee award "for further findings consistent with the standard set forth in [*ODD I*].") Counsel now moves for reinstatement of the total original amount awarded, omitting only the additional amounts allowed as "costs and expenses" in the first two settlement rounds.

At this juncture in the proceedings, "the parties" are counsel for the indirect purchasers, Hagens Berman, and objector Conner Erwin, who has filed his own motion to "Enforce Settlement, Return Class Funds, and Disgorge Fees." Additionally, 24 other persons representing they are class members have filed written objections, including Shiyang Huang, who has filed extensive briefing and an administrative motion seeking leave to file a "surreply."[1]

For the reasons explained below, Hagens Berman's fee application will be granted in the amount of $31,026,000, representing the amount its bid promised it would charge to represent the IPPs in this action, with an upward adjustment of 20% of the bid amount in recognition of circumstances not contemplated at the time of the bid, which Hagens Berman dealt with and achieved superior results, particularly in light of the ultimate determination that defendants who did not settle were entitled to summary judgment. Erwin's motion will be denied.

## II. BACKGROUND[2]

In 2009, the Department of Justice disclosed that it was conducting a criminal investigation into possible antitrust violations based on price-fixing within the optical disk drive (ODD) industry. As a result of the federal criminal investigation, Hitachi-LG Data Storage (Hitachi) and

---

[1] An entity called "Class Action Capital" purporting to act on behalf of approximately 592 class members has noticed a motion for July 29, 2021, seeking an order to permit distribution of the net settlement fund to class members now, without waiting for the resolution of any appeals of this fee award. Shiyang Huang and objector Christopher Andrews both vehemently objected to the timing of Class Action Capital's motion in an apparent mistaken belief that it would be heard on June 25, 2021, at the same time as the renewed motion for attorney fees and Erwin's motion. It was not.

[2] This summary of the facts borrows heavily from that set out in *ODD I*, as that opinion provides the blueprint for the analysis and resolution of the pending motions. *See* 959 F.3d 926-929.

1   several of its senior officials pleaded guilty to criminal antitrust violations. The DOJ investigation

2   resulted in significant fines and at least four prison terms.

3          Several putative class complaints ensued alleging civil antitrust violations arising from the

4   same activity that was the focus of the DOJ investigation. In April 2010, the panel on multidistrict

5   litigation consolidated the claims. The consolidated case was assigned to former Chief Judge

6   Vaughn Walker in this district. Two groups of plaintiffs sought class certification—direct

7   purchaser plaintiffs (DPPs) and indirect purchaser plaintiffs (IPPs). The former prospective class

8   comprised individuals and entities who purchased ODDs directly, such as personal computer

9   manufacturers; the latter included plaintiffs who purchased products containing ODDs. The IPPs

10  alleged that eleven groups of associated corporate defendants had conspired to restrain

11  competition for ODDs.

12         As firms jockeyed to represent the putative class of IPPs in the consolidated action, Judge

13  Walker ordered prospective class counsel to propose terms for attorney fees and costs. Three

14  groups of attorneys, including Hagens Berman, applied for appointment as interim class counsel.

15  Motions to seal the three bids were granted because the applications contained attorney work

16  product and analysis of the case.

17         Hagens Berman proposed a sliding-scale award for both fees and costs based on the

18  percentage-of-recovery method, specifically citing the prior decisions of Judge Walker endorsing

19  that approach. The firm's sealed bid included a grid with a sliding-scale fee calculated as a

20  percentage of the class recovery. One axis of the grid comprised four stages of litigation. The grid

21  called for lower fees for earlier-stage recovery scenarios, and higher fees if the case proceeded to

22  trial and/or appeal. The grid's other axis depicted the size of the class recovery and showed a

23  lower fee percentage as the overall class recovery increased. The grid's maximum fee award was

24  fourteen percent of the class recovery from each defendant.

25         In June of 2010, Hagens Berman was appointed interim class counsel pursuant to  Federal

26  Rule of Civil Procedure 23(g)(3). Judge Walker's appointment order explained that the competing

27  firms' applications focused primarily on "their respective fee and cost proposals and an analysis of

28

United States District Court
Northern District of California

the prospects for a recovery." Without revealing the actual fee percentages in Hagens Berman's grid, the appointment order concluded that the fee proposals favored Hagens Berman, and explained that the firm proposed declining fees for larger recoveries, and its "proposal entail[ed] one fee that covers both compensation of attorneys [fees] and reimbursement of attorneys' out-of-pocket expenses." The order specifically observed that Hagens Berman had proposed "folding expense recovery into the fee."

The litigation was reassigned to the undersigned in October 2010, and the parties began extensive discovery and litigation practice. Four years later, motions for class certification filed by the IPP and DPP putative classes were both denied. After the Ninth Circuit denied interlocutory review, DPPs entered into settlement agreements resolving their claims. A settlement class was certified, and the settlements approved. Hagens Berman continued litigating on behalf of the putative IPP class, and eventually prevailed on its renewed motion for class certification in February 2016. The Ninth Circuit denied defendants' request for interlocutory review in June 2016.

During the period immediately before and after class certification, the IPP class reached tentative settlement agreements with four groups of affiliated corporate entities (Hitachi, NEC, Panasonic, and Sony) that yielded a common fund totaling $124.5 million. In its first motion for fees, Hagens Berman requested twenty-five percent of the total first-round recovery as attorney fees, or $31.125 million, and separately requested $3,704,323.97 for litigation expenses. The motion for fees and litigation expenses was filed six years after the original appointment order. The motion did not mention that the firm's sealed bid had proposed a different structure for fees and expenses. The motion stated that the request for a twenty-five percent fee equated to a 1.29 lodestar multiplier.

Class members objected that the requested fee was excessive because the common fund constituted a "megafund," and objector Conner Erwin asked to unseal class counsel's fee bid so the class could learn what fee arrangement the firm proposed when it sought appointment. In response to the objections, Hagens Berman stated that it would have been awarded twelve to

United States District Court
Northern District of California

1  thirteen percent of the first-round settlement fund pursuant to what it called its "fee proposal

2  structure." Class counsel also argued that Erwin and his attorney were professional objectors with

3  suspect motives.

4      The first-round settlements were approved following a fairness hearing in December 2016.

5  Counsel was awarded its requested fees and separate litigation expenses. The approval order did

6  not require unsealing of the bid. It overruled all objections and observed that the "original fee

7  structure does not apply." One objector appealed the approval of the first settlement: Christopher

8  Andrews. Three objectors appealed the order awarding fees and expenses for the first settlement:

9  Erwin, Andrews, and Barbara Cochran.

10     While the appeal of the first-round settlements was pending, the litigation continued, and

11  in 2017, the class entered into a second round of tentative settlement agreements with three

12  additional groups of affiliated defendants (PLDS, Pioneer, and Teac). The second-round

13  settlements resulted in an additional $55.5 million common fund. Hagens Berman moved for a fee

14  award of twenty-one percent of the common fund, or $11.655 million. The motion stated this was

15  equivalent to a lodestar multiplier of 1.53 for the cumulative fee award (a $42,905,000 fee for the

16  76,772 attorney and non-attorney hours that generated the cumulative, $180 million, common

17  fund). The motion also requested $1,368,718.95 for litigation expenses incurred after the first-

18  round settlements. As before, the firm's fee motion did not state that its request diverged from its

19  original fee and expense proposal. Several objections were filed, including one by Erwin, who

20  complained that the class still did not have access to class counsel's original bid. Erwin also

21  objected that the second lodestar cross-check should be limited to the hours invested since the last

22  fee award, or the additional $3.7 million that class counsel said it invested after its first motion for

23  fees. Erwin measured the requested fee against the $55.5 million common fund and calculated the

24  second lodestar multiplier at 3.08. In response to the objection that twenty-one percent was too

25  high, Hagens Berman represented that "[u]nder the interim lead counsel application, the fee guide

26  was 12 percent."

27     A second fairness hearing was held in September 2017, and again the settlements were

28

United States District Court
Northern District of California

approved and Hagens Berman awarded the fees and expenses it requested. The bid was not unsealed, and all other objections were overruled. The order relied in part on class counsel's lodestar cross-check, which used the cumulative lodestar (all time invested) measured against the total recovery ($180 million), but acknowledged that if the second settlement were viewed in isolation, the multiplier would be in line with Erwin's calculation.

Erwin appealed the order awarding fees and expenses for the second-round settlements. Andrews objected to the second-round settlement agreements, but did not assert specific objections to Hagens Berman's motion for fees and expenses arising from those settlements. Cochran did not object to the second-round fee award.

Hagens Berman filed a third motion for fees in 2018 after the IPP class reached settlement agreements with two additional defendant groups (Samsung and Toshiba). The ensuing order required unsealing of the page of the bid showing the sliding-scale fee grid and expressly noted that the prior awards had been substantially higher than called for by the terms of the bid. The order further observed that Hagens Berman's original bid offered to accept representation on the terms that no separate expense award would be made on top of any percentage-based fee award. The request for expenses was then denied "in light of the total fee and expense recovery to date, and given that Hagens Berman obtained the right to represent IPPs in part as a result of the payment structure it proposed." The order approved the requested twenty percent fee, an additional $5 million.

## III.  DISCUSSION

### A.  The Fee Motion

#### 1. *The Ninth Circuit's ruling and guidance*

The Ninth Circuit opinion in *ODD I* began by rejecting an argument that the prior fee awards had been made without sufficient consideration of the fact that the settlements at issue created a so-called "megafund." 959 F.3d at 933 ("We agree with objectors' contention that the district court was required to consider the size of the first- and second-round settlements, but the

United States District Court
Northern District of California

record does not support the objectors' assertion that the district court overlooked this factor.")

Next, the court rejected a suggestion that it should "adopt a new rule requiring a sliding-scale fee

award" to address megafund cases. *Id.*

The court then reached the heart of the issue on which its remand was ultimately based.

> Objectors separately argue that class counsel's fee grid was a critical
> factor in securing appointment as interim class counsel, and they
> argue the court erred by failing to consider it adequately. We agree
> that the proposed fee grid was a relevant circumstance the district
> court was required to consider . . . but the objectors do not
> persuasively argue that the district court was bound by it. Objectors'
> stronger argument is that the district court erred by failing to explain
> adequately the variance between counsel's fee grid and the actual
> awards.

*Id.* at 933.

The court went on to discuss the arguments Hagens Berman had, to that point, raised to

justify the variance between the bid amount and the award.

> In the district court, part of class counsel's rationale in support of its
> fee award was its suggestion that it encountered unanticipated
> litigation challenges during the course of the litigation. Counsel
> cited the initial denial of its first class certification motion and the
> need to litigate a discovery dispute in an interlocutory appeal to our
> court. The latter was undertaken jointly with DPPs to affirm the
> district court's order allowing plaintiffs to subpoena records from
> DOJ's criminal investigation. The firm cited the need for multiple
> interim appeals, but only the discovery dispute concerning the DOJ
> investigation was litigated on an interlocutory basis—we denied
> interlocutory review of the district court's orders regarding class
> certification . . . .

*Id.* at 934.

The court was not persuaded that would suffice.

> It appears that both of these circumstances were contemplated by the
> stages of litigation incorporated into the fee grid, which called for a
> somewhat increased fee as the case advanced through the various
> stages of litigation . . . .

*Id.*

1    The Ninth Circuit similarly rejected the arguments Hagens Berman made on appeal to

2 support the upward variance.

> Here, class counsel argues that an upward departure from its bid was
> warranted in part because it did not anticipate the need to litigate a
> second class certification motion or interlocutory appeals. *Without
> more, these factors are insufficient to justify a variance of the
> magnitude approved in the first- and second-round fee awards.* The
> bid to become interim class counsel clearly contemplated that
> Hagens Berman would move to certify the plaintiff class and it is
> not unusual for interim class counsel to have to take more than one
> run at class certification. Finally, the proposed fee structure in this
> case explicitly contemplated appellate litigation.

*Id.* at 935 (emphasis added).

The ultimate holding in *ODD* is clear, and it governs here.

> We now hold that when class counsel secures appointment as
> interim lead counsel by proposing a fee structure in a competitive
> bidding process, *that bid becomes the starting point for determining
> a reasonable fee.* The district court may adjust fees upward or
> downward depending on circumstances not contemplated at the time
> of the bid, but the court must provide an adequate explanation for
> any variance . . . . We do not endeavor to create a comprehensive list
> of circumstances that may warrant departure from a fee bid, but we
> note that a district court would likely not abuse its discretion by
> departing from a bid based on circumstances the bid did not
> contemplate. Conversely, *departure from a bid based on
> circumstances that were known at the time the bid was filed may be
> an abuse of discretion* given the court's fiduciary duty to members
> of the class.

*Id.* at 935-35 (emphasis added).

### 2.  *The prior awards*

Although the Ninth Circuit's opinion left open the theoretical possibility that the amount of

the prior awards could be reaffirmed on remand if a sufficient explanation were provided to

support the degree of the variance from the bid amount, it also set out clear parameters for

exercising discretion in departing from that amount. Furthermore, the court announced as a rule

not previously articulated in circuit case law that "when class counsel secures appointment as interim lead counsel by proposing a fee structure in a competitive bidding process, that bid becomes the starting point for determining a reasonable fee." *Id.* at 934.

The prior awards were not made in the framework required by *ODD I.* All three prior awards gave some weight to the bid.[3] The analysis, however, in effect started by considering what might be a reasonable fee award in the absence of the bid, and then concluded the lesser amounts sought by Hagens Berman each round gave adequate acknowledgment to the bid. Accordingly, the prior awards cannot simply be reinstated with a more fulsome explanation of their basis.

    3.  *The amount of the bid*

The *ODD I* opinion noted there appeared to be some discrepancies in how Hagens Berman had applied the "grid" at different points in the prior trial court proceedings and in the various appeals when stating what percentage recovery would apply under the bid. *See* 959 F.3d at 935-36. Hagens Berman now presents a calculation that uses the grid to calculate the fees for each settling defendant family, based on the amount of each settlement. *See* Berman Decl., para. 6, Dkt. No. 2942-1. This approach is appropriate. *See* 959 F.3d at 936 ("The text above the grid on the single unsealed page of the firm's proposal permits this approach.") Accordingly, Hagens Berman contends the bid would permit it to recover 14% of the settlements from certain defendants, 13% from other defendants' larger settlements, 12% from the largest settlement, and no fee from one settlement that did not meet the minimum threshold for recovering fees. Hagens Berman calculates the total fees it would be entitled to under the bid as $25,855,000.

Objector Shiyang Huang, in an argument belatedly joined by Erwin, contends the correct

---

[3] The statement in the first approval order that the bid "does not apply" was intended to mean only that the award was not fixed by the bid. The second approval order expressly noted the bid was relevant to the assessment of the fee amount, and the third approval order directly applied the provisions of the bid to decline to award costs, and otherwise took the bid into account in making the fee award.

1    calculation under the bid would result in a total fee $3,650,000 lower than that asserted by Hagens

2    Berman. Huang argues that because the grid called for no fees on the "first" $5 million recovery,

3    the entire chart was intended to reflect marginal recovery rates. *See In re Quintus Sec. Litig.*, 148

4    F. Supp. 2d 967, 974–75 (N.D. Cal. 2001) (Walker, J.) ("[t]he court intended the fee proposals to

5    take the sliding scale format familiar to everyone who has filled out a federal income tax form.

6    Under the sliding scale approach, the fee percentage corresponding to the first $4 million of

7    recovery always applies to that $4 million, even if recovery exceeds $4 million.").

8           While it might not be unreasonable to interpret the bid as providing for such a sliding scale

9    approach with marginal rates, it does not unambiguously do so. That Judge Walker may have

10   expressed a desire for such a structure in other cases is also not dispositive. There is no indication

11   he did so in this case, or that he accepted the Hagens Berman bid on an understanding that the bid

12   was set up in that manner. Accordingly, Hagens Berman has made an adequate showing that it

13   would be entitled to $25,855,000 under its bid, and that will be the starting point.[4]

14

15           4. *Adjustment to the bid*

16           While purporting to use the bid as a "starting point," Hagens Berman's motion urges

17   reinstatement of the full amount it was previously awarded in attorney fees.[5] It is manifest that

18   _____

19   [4]  While the difference that would result from interpreting the bid as requiring marginal rates is
20   not *de minimus*, the bid itself would remain only a starting point. The amount awarded by this
      order is reasonable under all the circumstances regardless of the precise calculation of that starting
21   point.

22   [5]  The Ninth Circuit arguably left the door open a small crack to permit the prior cost awards
      made in the first two settlement rounds to be reaffirmed on remand, if those awards had been made
23   as an exercise of informed discretion and were otherwise justifiable. *See* 959 F.3d at 937. Hagens
      Berman has wisely elected to forgo any claim to those costs. As implied in the Ninth Circuit's
24   opinion, Hagens Berman's initial fee application fell short of meeting its full duty of candor when
      it made the motion without any express mention of the bid, particularly when it knew the judge
25   tasked with evaluating the fee application had not been involved in "accepting" the bid. Even
      when it acknowledged the existence of the bid and disclosed the fee percentages set out therein, it
26   inexcusably failed to call attention to the fact that it was requesting costs notwithstanding
      language in its bid suggesting that such costs would be absorbed in the fee recovery.
27

28

United States District Court
Northern District of California

Hagens Berman is still working backwards, attempting to justify the fee percentages it previously elected to claim, rather than starting at the bid amount and working forward, as required by the Ninth Circuit's rulings in *ODD I* and *ODD II.*

Hagens Berman points to six broad categories of circumstances it contends were not contemplated at the time of the bid.[6] First, Hagens Berman asserts there was simply more expert work to be done than could have been known. Second, and closely related, Hagens Berman contends the unanticipated burden it faced, and overcame, in obtaining class certification on its renewed motion was largely unprecedented, and certainly not contemplated at the time of the bid. Third, Hagens Berman contends it did not contemplate "novel litigation regarding the discoverability of the FBI recordings." Fourth, Hagens Berman argues the role of the criminal proceedings also acted as "an unpredictable force" on these proceedings, that was not foreseen. Fifth, Hagens Berman insists the sheer volume of discovery was unprecedented and unanticipated. Finally, Hagens Berman contends the length of this case was never contemplated.

The challenge for Hagens Berman is that most of the categories of things it points to as "not contemplated" are, at least at a general level, the very kind of things that arise in litigation all the time—planning for such events, and taking the risk if the budgeting proves wrong, is the very point of fee proposals. That the court might issue unfavorable rulings—regardless of how strong Hagens Berman thought its positions were—is hardly unforeseeable, and therefore should not have been uncontemplated. It follows that the potential need to do additional work in response to unfavorable rulings cannot have been uncontemplated either. Furthermore, several of the things Hagens Berman now invokes as uncontemplated merely expand slightly on points the Ninth Circuit already stated would not support a large deviation from the bid amount.[7]

---

[6] Hagens Berman continues to reference Judge Walker's use of the term "imponderables." As *ODD I* pointed out, Judge Walker used that term to refer to the fact that that the ultimate size of class recovery was unknowable. 959 F.3d at 931 n.8

[7]  Hagens Berman also repeatedly compares the results it achieved to those of the DPPs. To be sure, counsel for the DPPs recovered a higher percentage of the settlement fund without correspondingly better results. Counsel for the DPPs, however, did not obtain the right to represent

1    All that said, Hagens Berman has shown that the *cumulative* effect of the factors it faced

2    took this litigation beyond what actually was, or reasonably could have been, contemplated at the

3    time of the bid—and beyond the risk Hagens Berman can be charged with having assumed in

4    making the bid. If there were reason to believe that the litigation dragged out for nearly a decade

5    as the result of any lack of diligence or inefficiency on the part of Hagens Berman, the result

6    might be different. But that is not the case. This was long and hard-fought litigation involving a

7    series of circumstances that, taken together, were never contemplated.

8    *ODD I* cautioned that certain aspects of the litigation, "without more" would not justify the

9    upward variance from the fee bid "of the magnitude approved in the first- and second-round fee

10   awards." 959 F.3d at 935. The cumulative effect and resulting length of the litigation is "more"—

11   and more importantly, the amount awarded by this order will not be based on a percentage of the

12   fund that is nearly double that called for by the bid. Rather, Hagens Berman will be awarded the

13   amount of its bid, together with a premium of 20% of that amount, in recognition of the additional

14   uncontemplated work it undertook, with positive results. While the 20% figure is necessarily to

15   some degree arbitrary, it is intended to represent reasonable compensation for the extra hours the

16   firm expended, without producing a windfall or releasing it entirely from the consequences of its

17   bid.[8]

18   One further point bears consideration. Although it is not strictly an "uncontemplated

19   circumstance" and it was not known at the time of the original fee awards, it surely bears on the

20

21   the class through a bid. While the DPPs' recovery and fee award might support the reasonableness

22   of a higher percentage for Hagens Berman in the absence of the bid, it is not an "uncontemplated
     circumstance" relevant to the analytical framework prescribed by *ODD I* and *ODD II* to be applied

23   here.

24   [8] The court tentatively settled on a 20% premium *prior* to reviewing Hagens Berman's claimed
     lodestar. Although a more detailed review of the lodestar would be necessary if it were the basis of

25   the award, the fact that it is very close to the amount being awarded serves as a cross-check both
     of the reasonableness of the award and that the premium fairly represents compensation for the

26   uncontemplated hours of work Hagens Berman incurred. That the award does not include a
     significant multiplier is a consequence of the fee bid.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

equities that summary judgment was subsequently entered in favor of all defendants who did not settle, and that judgment was affirmed on appeal. At heart, the objectors are contending Hagens Berman is getting overpaid for negotiating $205 million in settlements for a case that ultimately was found on summary judgment to have no merit. There is tension in the claim that the lawyers got somewhat too much money when, at the end of the day, the facts and law were that, but for the settlements, class members would have been entitled to nothing.

5. *Objections*

Twenty-one individuals have submitted largely conclusory objections to Hagens Berman recovering fees in excess of the bid and/or in all but a much smaller amount or none. Except to the extent that the reduced amount being awarded is responsive to those objections, they are overruled.

Huang's and Erwin's objections regarding calculation of the bid amount have been rejected above. Huang's objections to the notice given to the class of the renewed fee motion are overruled.

Huang's and Erwin's objections to Hagens Berman recovering fees in excess of the bid have been taken into account insofar as the award provides only a relatively small premium over the bid amount. The objections are otherwise overruled.

Finally, Huang's, Erwin's, and Christopher Andrew's objections that Hagens Berman should forfeit all fees as a penalty for one or more alleged ethical violations are overruled. Objectors have not established that any serious, material, ethical breach took place, or that fee forfeiture would be an appropriate remedy for the alleged violations.

B.  Erwin's Motion

Erwin's motion, brought shortly before the renewed motion for attorney fees was filed, sought to compel Hagens Berman to refund the fee and cost awards, with interest, immediately. Erwin contends that under the terms of the "quick-pay" provisions of the court-approved settlement agreement, Hagens Berman agreed to repay the monies upon any reversal by the

appellate court, and that its failure to do is a breach of the settlement agreement and an ethical violation.[9]

The parties squabble over the variety of language used in case dispositions and succeed in showing only that the courts are not always consistent in their terminology. Ultimately, however, Erwin has failed to establish Hagens Berman was under a clear duty created by the settlement agreements or otherwise to return the funds immediately upon the Ninth Circuit's rulings in *ODD I* and *ODD II* becoming final.

Furthermore, Erwin has not shown what practical difference it makes, or what prejudice the class is suffering. Had Hagens Berman returned the funds, they presumably would be sitting in an account controlled by the settlement administrator, earning interest. Instead, Hagens Berman will now be required to pay back, with interest, the portion of the funds it previously received that exceeds the new award. Unless Hagens Berman proves insolvent, it will have made no difference that the funds were being held by Hagens Berman effectively in trust, rather than by the administrator in trust.[10] Hagens Berman shall, however, return the excess funds it received, with interest, within 10 days of issuance of this order.

## IV.  CONCLUSION

The renewed motion for attorney fees is granted in the amount of $31,026,000. The motion of Conner Erwin to Enforce Settlement, Return Class Funds, and Disgorge Fees is denied. All

---

[9] Erwin offers an expert opinion that Hagens Berman breached provisions of the California Rules of Professional Conduct. Apart from the fact that the proffered expert is presenting a legal conclusion regarding the ethical rules, his opinion is premised on an assumption that the terms of the settlement agreement in fact required repayment upon an appellate disposition of this nature. That is also a legal conclusion, and not one as to which an "ethics" expert has any special knowledge or expertise.

[10] Erwin contends Hagens Berman was ethically obligated to hold the funds in an actual client trust account, which of course would render the quick-pay provisions (to which Erwin never previously objected) meaningless. Even assuming Hagens Berman was required to do so, but did not, Erwin has not shown that warrants fee forfeiture.

pending motions for leave to submit additional materials are granted, although those materials have not altered the conclusions of this order.

**IT IS SO ORDERED**.

Dated: July 2, 2021

_____
RICHARD SEEBORG
Chief United States District Judge