Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Lead Counsel for Indirect Purchaser Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | No. 3:10-md-2143 RS (JCS) <br><br> INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO ERWIN'S MOTION FOR ATTORNEY'S FEES <br><br> DATE ACTION FILED: Oct. 27, 2009 |
| This Document Relates to: <br><br> ALL INDIRECT PURCHASER ACTIONS | |

010177-12 1584079v1

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

     A.    The hours sought should be reduced for failure to keep contemporaneous time records. ...................................................................2

     B.    The multiplier sought is not within the range granted for successful objections...................................................................................................6

     C.    There is no legal or factual basis for fee shifting. .....................................8

III.  CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Ackerman v. W. Elec. Co., Inc.*,
    643 F. Supp. 836 (N.D. Cal. 1986) (Schwarzer, J.) ................................................................ 4

*In re Anthem, Inc. Data Breach Litig.*,
    2018 WL 3067783 (N.D. Cal. Mar. 16, 2018) (Koh, J.) .......................................................... 5

*In re Anthem, Inc. Data Breach Litig.*,
    2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ......................................................................... 5

*Arroyo v. Raspados Xpress LA, Inc.*,
    2020 WL 6106314 (C.D. Cal. Aug. 10, 2020) ......................................................................... 4

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................................... 4, 6, 9

*Chamberlain v. Baker Hughes, a GE Co., LLC*,
    2020 WL 4350207 (E.D. Cal. July 29, 2020) ........................................................................... 4

*Chambers v. Whirlpool Corp.*,
    980 F.3d 645 (9th Cir. 2020) .................................................................................................... 6

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ............................................................................................ 9

*Hendricks v. Starkist Co.*,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ........................................................................ 9

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................................ 2

*J & J Sports Prods., Inc. v. Duong*,
    2014 WL 1478498 (N.D. Cal. Apr. 14, 2014) (Koh, J.) .......................................................... 4

*In re Lithium Ion Batteries Antitrust Litig.*,
    2020 WL 7261313 (N.D. Cal. Dec. 10, 2020) ........................................................................ 3

*McLeod v. Bank of Am., N.A.*,
    2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) ..................................................................... 6, 7

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................................................ 4, 5

*In re Optical Disk Drive Prod. Antitrust Litig.*,
    785 F. App'x 406 (9th Cir. 2019) ............................................................................................ 9

*In re Optical Disk Drive Prods. Antitrust Litig.*,
 804 F. App'x 443 (9th Cir. 2020) ............................................................................. 8, 9

*In re Optical Disk Drive Prods. Antitrust Litig.*,
 959 F.3d 922 (9th Cir. 2020) .................................................................................... 7, 8

*Rodriguez v. Disner*,
 688 F.3d 645 (9th Cir. 2012) ........................................................................................ 2

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ....................................................................................... 2

**STATUTES**

ERISA ................................................................................................................................ 9

**OTHER AUTHORITIES**

Local Rule 54-5 ................................................................................................................. 5

## I.   INTRODUCTION

In response to objector Conner Erwin's motion for attorney fees, Class Counsel seek to aid the Court in making the relevant findings in the interest of avoiding another appeal and possible remand in this lengthy litigation. To streamline the points in dispute, Class Counsel do not take issue with the hourly rates sought and leave to the Court's discretion the award proposed for Mr. Erwin. In three respects, however, the fee request is deficient and the findings should so reflect.

First, Mr. Erwin has not adequately documented his counsel's claimed hours. The motion concedes, while asserting nearly 700 hours were spent, that all three lawyers seeking fees did not keep contemporaneous time records. As a result, for time spent as far back as 2016, the hours have been "reconstructed" *post hoc*. Had Class Counsel submitted reconstructed time records, this tactic would have drawn objections—with good reason. Among the findings necessary to any fee award, the Court must determine a reasonable lodestar. It is difficult to make a finding of the hours reasonably spent, and to apply a lodestar crosscheck, when the moving party submits only hindsight-based time estimates. This defect was just as avoidable as it is now incurable. It effectively precludes both the class and Class Counsel from assessing the reasonableness of the claimed hours. Rather than billing the class for this glaring flaw in Mr. Erwin's documentation, the lawyers who failed to keep contemporaneous time records, contrary to standard practice in class actions, should bear the pecuniary consequences of their default. In similar circumstances, when determining the time component of the lodestar, courts have reduced the hours claimed.

Second, Mr. Erwin has not shown that a multiplier of nearly 3 would be reasonable. Both the Ninth Circuit and this Court rejected his extreme positions on the proper fee award for Class Counsel. A maximum multiplier of 1.6 is more appropriate and should be applied after downward adjustment of the lodestar for lack of documentation.

Third, Mr. Erwin has not established any basis to shift fees to Class Counsel. Although he does not seek compensation for his failed quest to prove ethical breaches, his proposal to shift fees is grounded on the same punitive rationale. Any objector fee should be paid by the beneficiaries—the class—on an unjust enrichment rationale as in other common fund situations.

## II.   ARGUMENT

**A.   The hours sought should be reduced for failure to keep contemporaneous time records.**

The Ninth Circuit instructs: "Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation."[1] The moving party seeking the fee award, however, "should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[2] Especially on the thin record offered by Mr. Erwin, this is appropriate here.

Timekeeping requirements vary by context but in this case, the failure of Mr. Erwin's attorneys to keep contemporaneous time records is inexcusable. As the Ninth Circuit held in a seminal class action fee opinion, "[t]he party petitioning for attorneys' fees 'bears the burden of submitting detailed time records justifying the hours claimed to have been expended.'"[3] In any complex class action in the Northern District of California, it is not reasonable to bill nearly 700 hours over five years, fail to record these hours contemporaneously, and then in summary fashion seek a fee exceeding $1.5 million by asking the class, Class Counsel and the Court to take their word for it.

As Mr. Erwin stated in one of his objections, "this global electronics antitrust litigation was always going to be drawn out."[4] If his filings are any guide, Mr. Erwin incurred most of his time between 2016, when he first objected, and 2019, when the first two fee appeals were briefed and argued. In this "five-year effort"—Mr. Erwin's own label—he fails to explain how his lawyers can exercise billing judgment, at this late stage, in documenting their time for work mostly performed several years ago.[5]

---

[1] *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012).

[2] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[3] *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (citation omitted).

[4] Erwin's Objection to Indirect Purchaser Plaintiffs' Renewed Motion for Attorneys' Fees and Erwin's Re-Urging of Cross-Motion to Unseal Competing Bids, Apr. 30, 2021, ECF No. 2998, at 21.

[5] Erwin's Notice of Motion, Motion for Attorney's Fees and Incentive Award, and Memorandum in Support ("Mot."), July 16, 2021, ECF No. 3042, at 12 .

Declining to keep contemporaneous time records falls short of the standard. Having filed at least 100 objections in other class actions, Mr. Erwin's counsel knew or should have anticipated as much.[6] For example, the Bandas firm represented a different objector in another MDL in the Northern District where the court awarded less than one-third of the fee sought mainly due to inadequate documentation. There, likewise, a "large number" of hours were "reconstructed."[7]

The sparse explanation of how Mr. Erwin's lawyers spent their time makes the point. The attorney claiming the lion's share of the hours, Mr. Clore, offers only this block billing description for years of work:

> My labor was spent reviewing Erwin's first objection, reviewing the extensive docket, conducting legal research and drafting Erwin's subsequent two objections to Hagens Berman's two additional fee motions, conducting legal research and drafting six appellate briefs over three appeals, engaging in appellate motion practice, preparing for, traveling to, and participating in the first oral argument in Portland, Oregon, preparing for and participating in the second oral argument via Zoom, reviewing Hagens Berman's renewed motion for attorneys' fees, conducing legal research and drafting an opposition and fourth objection, and preparing for and participating in the Zoom hearing on the same.[8]

This adds nothing to what a stranger could glean from simply reviewing the dockets in this action and the Ninth Circuit. With only an undifferentiated description provided, pinpointing the hours spent on stages of the litigation, much less particular tasks, is entirely speculative. Mr. Erwin does not even try, even though *some* breakdown is essential to determining the time reasonably spent. To take one illustration, because Mr. Erwin focused on the role of the bid, it would not be reasonable to bill the same quantity of hours for each fee objection and resulting appeal for the three settlement rounds. In both this Court and the Ninth Circuit, he was not reinventing the wheel—yet from his fee motion, there is no telling how much time his counsel spent on each round.

---

[6] Serial Objector Index, https://www.serialobjector.com/persons?page=all (last visited July 26, 2021).

[7] *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7261313, at *2 (N.D. Cal. Dec. 10, 2020).

[8] Declaration of Robert Clore in Support of Objector Conner Erwin's Motion for Attorney's Fees and Incentive Award ("Clore Decl."), July 16, 2021, ECF No. 3042-1, at ¶ 13.

Making a surprising comparison, Mr. Erwin points to Class Counsel's contemporaneous time records to argue that his lawyers "worked far more efficiently" than Hagens Berman.[9] But, among the problems with this analogy, given Mr. Erwin's reliance on reconstructed time, a fair comparison (if legally relevant at all) is impossible. The contemporaneous time records of one party, which complied with the expected standard for timekeeping, cannot bootstrap a fee application that is defective on its face.

The lack of contemporaneous time records from Mr. Erwin puts the Court in a tough spot because guesswork will not do. The Ninth Circuit requires district courts to make an "explicit calculation of a reasonable lodestar amount," including "the number of hours ***reasonably*** expended on the litigation" to ensure "the reasonableness of the award."[10] Mr. Erwin asserts the hours have been "conservatively reconstructed" but, in light of the utter absence of documentation, there is no way to know with any reliability.[11] Unsurprisingly, the Ninth Circuit has frowned upon similarly vague descriptions of how lawyers supposedly spent hundreds of hours in a class action, where protecting the interests of absent class members has long been paramount.[12]

The impact of Mr. Erwin's default on a fee award here is readily apparent. "[A]bsent the submission of detailed contemporaneous time records justifying the hours claimed to have been expended," the Court should give "little weight to the figures provided" through reconstructed time estimates.[13] Mr. Erwin's inadequate evidentiary support calls for a significant reduction in the time claimed.[14]

---

[9] Mot. at 14.

[10] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 943-44 (9th Cir. 2011) (emphasis in original).

[11] Clore Decl. at ¶ 12.

[12] *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 991 (9th Cir. 2010).

[13] *J & J Sports Prods., Inc. v. Duong*, 2014 WL 1478498, at *3 (N.D. Cal. Apr. 14, 2014) (Koh, J.).

[14] *See Ackerman v. W. Elec. Co., Inc.*, 643 F. Supp. 836, 862-66 (N.D. Cal. 1986) (Schwarzer, J.) (detailing difficulties arising when documentation is inadequate and greatly reducing claimed hours as consequence); *Chamberlain v. Baker Hughes, a GE Co., LLC*, 2020 WL 4350207, at *7 (E.D. Cal. July 29, 2020) (collecting cases and awarding 60 of 110 hours sought due to insufficient documentation); *Arroyo v. Raspados Xpress LA, Inc.*, 2020 WL 6106314, at *3 (C.D. Cal. Aug. 10,

After taking sanctimonious positions on the need for transparency, Mr. Erwin says his lawyers have created "detailed time entries" not submitted with his motion, but these should be examined only *in camera*.[15] In *Yamada v. Nobel Biocare Holding AG*, the Ninth Circuit prohibited this concealment: "[T]he Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order."[16] *Yamada* sets forth a detailed process to follow if, as Mr. Erwin implies, he is able to supplement his motion with time records of some kind. Both the class and Class Counsel must be allowed "access to the timesheets, appropriately redacted to remove privileged information, so they can inspect them and present whatever objections they might have concerning the fairness and reasonableness" of the fee motion.[17] Judges in the Northern District routinely apply *Yamada* to ensure maximum transparency in class actions.[18]

Mr. Erwin's reliance on *In re Rite Aid Corp. Sec. Litig*. for his proposed *in camera* approach is mystifying.[19] The Ninth Circuit has provided clear and controlling guidance in *Yamada*. Even if there were a gap in Ninth Circuit law, *Rite Aid* does not remotely suggest, as Mr. Erwin represents, that "detailed time entries" may be provided *in camera* without disclosure in any form to opposing parties.[20] Mr. Erwin's reliance on Civil Local Rule 54-5 is also unavailing. That rule is fully consistent with *Yamada* and, in any event, could not supersede it or any other Ninth Circuit precedent on the due process right to inspect evidence offered to support a fee award.[21]

---

2020) (describing movant's "intentional decision to forego the maintenance of contemporaneous time records" as "extraordinarily troubling" and awarding one-third of fees requested).

[15] Clore Decl. at ¶ 17.

[16] 825 F.3d 536, 545 (9th Cir. 2016).

[17] *Id.* at 546.

[18] *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3067783, at *3 (N.D. Cal. Mar. 16, 2018) (Koh, J.) (noting *Yamada* and denying "motions to seal the entirety of the narrative descriptions in the billing records"); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *34 (N.D. Cal. Aug. 17, 2018) (explaining acceptable format of publicly disclosed time sheets with redactions to protect privileged communications and attorney work product).

[19] 396 F.3d 294 (3d Cir. 2005).

[20] Clore Decl. at ¶ 17.

[21] *See Mercury Interactive*, 618 F.3d at 995 n.2.

**B.     The multiplier sought is not within the range granted for successful objections.**

To evade his failure to keep contemporaneous time records, Mr. Erwin urges the Court to apply a percentage-based analysis to his fee request. As he recognizes, however, his counsel's lodestar is relevant, at a minimum, when applying a lodestar crosscheck. Although "courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."[22] Cross-checking the lodestar can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."[23] Even where an objection increases the common or settlement fund, as here, "a lodestar cross-check tends to reveal that the objectors' lawyers did not spend (or should not have spent) huge amounts of time on the objection and hence that a percentage award would generate too high a multiplier, or a windfall."[24]

The Ninth Circuit stated recently in a class action that "a multiplier is warranted only in 'rare and exceptional circumstances'" due to the "'strong presumption that the lodestar is sufficient.'"[25] The burden therefore is on Mr. Erwin as the moving party to justify his proposed multiplier of 2.9. His few cited decisions do not support it.

The multipliers collected in *Vizcaino v. Microsoft Corp.* are class counsel fee awards, not objector fee awards.[26] An objector award was also not at issue in *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, where the Ninth Circuit upheld a 3.66 multiplier for Hagens Berman.[27] In the same vein, a 3.5 multiplier was awarded to class counsel, not objectors, in *McLeod v. Bank of Am., N.A.*[28] Although a multiplier of six was awarded to an objector in *Eubank v.*

---

[22] *Bluetooth*, 654 F.3d at 942.
[23] *Id.* at 945 (internal quotation marks omitted).
[24] 5 Newberg on Class Actions § 15:94 (5th ed.).
[25] *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-52 (2010)).
[26] 290 F.3d 1043, 1052 (9th Cir. 2002).
[27] 768 F. App'x 651, 653 (9th Cir. 2019).
[28] 2019 WL 1170487, at *7 (N.D. Cal. Mar. 13, 2019).

*Pella Corp.*, that was a notorious case where class counsel labored under a conflict of interest generating a settlement so inadequate that they were replaced.[29]

The objector fee awards in the other cases cited Mr. Erwin are closer to the circumstances here. In *In re Easysaver Rewards Litig.*, the objector "succeeded in convincing the Court to reduce class counsel's fee award from $8.7 million to $3.42 million."[30] The *Easysaver* court awarded a multiplier of 1.62.[31] In *Edwards v. Nat'l Milk Producers Fed'n*, the objector "contributed in some measure to the savings to the class of $4,333,333" by reducing class counsel's fee award there to $13 million.[32] The *Edwards* court awarded a multiplier of 1.6.[33] As that court explained, a 1.6 multiplier was "appropriately proportional to the lesser degree of risk" assumed by the objector "in comparison to class counsel, the lesser degree of novelty of the issues addressed at the settlement and attorneys' fees stage of this case compared with earlier proceedings, and the shorter time period over which the work was performed, but fair given" the objector's "contributions to the Court's analysis and the skillful work performed by his attorneys."[34]

Notably, there were no documentation issues in *Easysaver* or *Edwards*. By way of Mr. Erwin's own analogy, then, a 1.6 multiplier is the maximum that should be awarded here.

Also bearing on any multiplier, Mr. Erwin overstates the success of his objections. He took rigid positions that were not adopted. The Ninth Circuit concluded that "the objectors do not persuasively argue that the district court was bound by" the bid.[35] By holding that the bid was the "starting point," but not the end point, for a reasonable award in the competitive bidding context, the Ninth Circuit agreed with Hagens Berman that this Court had some discretion.[36] Then on remand, Mr. Erwin pursued a diversionary "motion to enforce" urging this Court, despite the Ninth Circuit's

---

[29] 2019 WL 1227832, at *7 (N.D. Ill. Mar. 15, 2019).
[30] 2021 WL 230013, at *2 (S.D. Cal. Jan. 22, 2021).
[31] *Id.* at *4.
[32] 2017 WL 4581926, at *2 (N.D. Cal. Sept. 13, 2017).
[33] *Id.*
[34] *Id.*
[35] *In re Optical Disk Drive Prods. Antitrust Litig.* ("*ODD I*"), 959 F.3d 922, 933 (9th Cir. 2020).
[36] *Id.* at 934.

mandate, to award no fee at all—no compensation for $205 million recovered in settlements. He was more than $31 million off from his proposed award of zero. This Court found: "Erwin has failed to establish Hagens Berman was under a clear duty created by the settlement agreements or otherwise to return the funds immediately upon the Ninth Circuit's rulings in *ODD I* and *ODD II* becoming final."[37] The motion to enforce, grounded on claimed ethical violations unsupported by any pertinent authority, achieved nothing beyond unfairly tarring Hagens Berman in the legal press.

Mr. Erwin also misstates the odds of obtaining a remand from the Ninth Circuit. His "one chance in ten" argument includes the low reversal percentage in administrative agency appeals.[38] In "non-government civil cases," the relevant category, the rate was 16.3 percent.[39] Even more precisely, as Class Counsel observed previously, given the requirement that fee awards be adequately explained, it is not unusual for the Ninth Circuit to vacate and remand for more detailed findings as occurred in this case.[40]

### C. There is no legal or factual basis for fee shifting.

Mr. Erwin suggests any fee award to his lawyers should be paid from Class Counsel's reduced award, but he has not established grounds for shifting fees.

As Mr. Erwin acknowledges, under Ninth Circuit law, where "'objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel.'"[41] He argues that his objections led to a "$21.8 million benefit to the class members."[42] This directly implicates the common fund rationale for awarding fees. The

---

[37] Order Granting in Part Renewed Motion for Attorney Fees and Denying Motion to Enforce Settlement, Return Class Funds, and Disgorge Fees, July 2, 2021, ECF No. 3027, at 14. *ODD II* refers to the subsequent memorandum disposition in *In re Optical Disk Drive Prods. Antitrust Litig.*, 804 F. App'x 443 (9th Cir. 2020).

[38] Mot. at 10.

[39] United States Courts for the Ninth Circuit, 2019 Annual Report, at 57 https://www.ca9.uscourts.gov/judicial-council/publications/AnnualReport2019.pdf (last visited July 27, 2021).

[40] Indirect Purchaser Plaintiffs' Opposition to Motion to Enforce Settlement, Return Class Funds, and Disgorge Fees, Oct. 7, 2020, ECF No. 2944, at 9-11.

[41] Mot. at 9 (quoting *Rodriguez*, 688 F.3d at 658).

[42] *Id.* at 1.

"purpose of the common-fund exception" to the American rule is "to avoid the unjust enrichment of those who benefit from the fund that is created, protected, or increased by the litigation and who otherwise would bear none of the litigation costs."[43] In this situation, fees are spread among the beneficiaries, not shifted to another party.

The common fund theory applies squarely to Mr. Erwin's fee request. None of his cited authorities, which he makes no effort to analyze, involved a common fund from which an objector attorney fee could be paid. In two cases, objector fees were awarded for changes to a classwide release.[44] In *Parker v. Time Warner Ent. Co., L.P.*, the objections focused on class notice and the settlement specified that "[a]ny objector fees, expenses and awards authorized by the Court will be paid by Class Counsel."[45] There is no fee shifting provision here. The unreported fee order in *Pecover v. Elec. Arts Inc.*, consisting of two sentences, granted an unopposed objector motion for a *de minimus* award ($33,975).[46] It is not authority for anything, much less shifting over $1.5 million from Class Counsel's award.

Indeed, Mr. Erwin offers no tenable justification to depart from the common fund theory. He observes that Class Counsel "fought vigorously" to keep the bid under seal, but he no longer contends, and the Ninth Circuit did not hold, that this was error or an abuse of discretion.[47] To avoid disclosing strategic assessments of potential settlement value, the Court soundly maintained most of the bid under seal until liability was conclusively decided. This did not occur until November 2019, when the Ninth Circuit affirmed the grant of summary judgment for the remaining defendants who had not settled.[48] After the affirmance, Class Counsel agreed the bid should be unsealed and it was.[49]

---

[43] *Bluetooth*, 654 F.3d at 941 (internal quotation marks omitted).

[44] *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 415 (E.D. Wis. 2002) (objector obtained "modified release" in securities class action settlement preserving unrelated ERISA claims); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *15 (N.D. Cal. Sept. 29, 2016) (objections to settlement release "substantially enhanced the benefits to the Class").

[45] 631 F. Supp. 2d 242, 277-78.

[46] No. 4:08-cv-2820, ECF No. 467 (N.D. Cal. Jun. 19, 2013).

[47] Mot. at 19.

[48] *In re Optical Disk Drive Prod. Antitrust Litig.*, 785 F. App'x 406, 407 (9th Cir. 2019).

[49] *ODD II*, 804 F. App'x at 444.

Had the bid been disclosed to defendants while liability remained up in the air, a successful litigation strategy that recovered $205 million for the class would have been undermined.

Calling Class Counsel's original fee requests "excessive," Mr. Erwin appears to contend that the final result of his objections itself warrants fee shifting.[50] But this rationale is circular and, again, Mr. Erwin cannot have it both ways. As he admits: "The weight to be afforded a bid used to secure class counsel was a matter of first impression before the Ninth Circuit, as was the issue of the class members' entitlement to see it."[51] There is no bad faith or wrongful conduct in litigating a question of first impression or, even more far-fetched, declining to foresee how the Ninth Circuit would resolve it. As discussed above, moreover, the Ninth Circuit rejected Mr. Erwin's inflexible position that the bid was binding. He cites no authority for the proposition that litigating a matter of first impression supports the substantive equivalent of fee sanctions.

As in any litigation, there are things Class Counsel would have done differently with the benefit of hindsight. Contrary to Mr. Erwin's suggestion, however, equities are weighed holistically, not selectively based on his preferred view of events. The bigger picture is an outstanding outcome for the class. Without co-counsel to shoulder a massive financial risk, Hagens Berman expended over $30 million in lodestar, doggedly pushing this case for many years, to recover more than $200 million on antitrust claims that failed as a matter of law.

Few firms could have achieved this result. It does not warrant fee shifting.

### III.   CONCLUSION

If Mr. Erwin is unable to provide more detailed and reliable documentation, the hours claimed should be significantly reduced for failure to keep contemporaneous time records. Any time records he does submit, reconstructed or otherwise, should be made available to both Class Counsel and the class after following the redaction procedures the Ninth Circuit has specified.[52] Any multiplier should not exceed 1.6, with fees made payable from the settlement fund.

---

[50] Mot at 2.

[51] *Id.* at 15.

[52] *Yamada*, 825 F.3d at 548.

DATED: July 30, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By    */s/ Shana E. Scarlett*
      SHANA E. SCARLETT

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Lead Counsel for Indirect Purchaser Class*