Timothy R. Hanigan (SBN 125791)
Lang, Hanigan & Carvalho, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, CA 91367
Tel: (818) 883-5644
Fax: (818) 704-9372

Robert W. Clore (*Pro Hac Vice*)
Christopher Bandas (*Pro Hac Vice*)
802 N. Carancahua, Suite 1400
Corpus Christi, TX 78401
Tel: (361) 698–5200
Fax: (361) 698-5200
*Attorneys for Conner Erwin*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | Case No. 10-MD-02143-RS MDL No. 2143 |
| This document relates to: ALL INDIRECT PURCHASER ACTIONS | **REPLY IN SUPPORT OF ERWIN'S MOTION, MOTION FOR ATTORNEY'S FEES AND INCENTIVE AWARD** |
| | Date:    August 26, 2021 Time:    1:30 p.m. Dept.:    Courtroom 3, 17th Floor Judge:    Hon. Richard Seeborg |

Case 3:10-md-02143-RS   Document 3054   Filed 08/06/21   Page 2 of 20

**Table of Contents**

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 3

I.      Erwin's 7% request is reasonable. ........................................................................................ 3

II.     Erwin's summary of lodestar information on cross-check is in keeping with Ninth Circuit authority, this Court's Local Rules, and Hagens Berman's own fee submissions. ................... 4

III.    Erwin's percentage-based fee request should not be diminished based on the method of documentation of hours ........................................................................................................ 8

IV.     The 2.9 multiplier is reasonable on cross-check. .................................................................. 10

V.      Erwin's request for a $1,500 incentive award is uncontested. ............................................. 12

VI.     Hagens Berman, not the class, should pay objector's attorneys' fees because it necessitated Erwin's involvement. .......................................................................................................... 13

Conclusion .................................................................................................................................... 15

i

**Table of Authorities**

**Cases**

*Arnett v. Bank of Am., N.A.*, No. 3:11-cv-1372-SI, 2014 WL 5419125 (D. Or. Oct. 22, 2014) ..............3

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal. 2015) ....................................... 6, 9

*Bond v. Ferguson Enterprises, Inc.,* No. 1:09–CV–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ........................................................................................................ 7, 9

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020).................................................................9

*Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020)..............................................................10

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2015)....................................................10

*Edwards v. Nat'l Milk Producers Fed'n*, 11-CV-04766-JSW, 2017 WL 4581926 (N.D. Cal. Sept. 13, 2017).................................................................................................................... 2, 11, 12

*Eubank v. Pella Corp.*, No. 06-CV-4481, 2019 WL 1227832 (N.D. Ill. Mar. 15, 2019) ...........................10

*Farrell v. Bank of America Corp.*, N.A., 827 Fed. Appx. 628, 630 (9th Cir. 2020)....................................7

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000)...................................................................8

*Hendricks v. Starkist Co*, 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 Fed. Appx. 510 (9th Cir. 2018) ........................................ 13, 14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................................7

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018).........................................................................................................................4

*In re Easysaver Rewards Litig.*, No. 09-CV-02094-BAS-WVG, 2021 WL 230013 (S.D. Cal. Jan. 22, 2021)...................................................................................................................1-4, 8

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019).................................................9

*In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7261313 (N.D. Cal. Dec. 10, 2020)..................... 9, 14

*In re Online DVD–Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir.2015)............................................6

*In re Optical Disk Drive Prod. Antitrust Litig.*, 785 F. App'x 406 (9th Cir. 2019)......................................14

*In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922 (9th Cir. 2020) ...............................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994)...............................................7

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993)........................................................................7

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) ...........................................................10

*McLeod v. Bank of Am., N.A.*, 2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) ............................................12

*MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986)................................................................7

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)...................................................................................10

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012)..................................................................................... 1, 3

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780 (9th Cir. 2007) .....................................................................10

*Stetson v. West Publishing Corp.*, No. 2:08-CV-00810-RGK-E, 2016 WL 5867434 (C.D. Ca. Aug. 11, 2016)..............................................................................................................................................................3

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................................... 4, 10

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016)............................................................7

**Other Authorities**

United States Courts for the Ninth Circuit, 2019 Annual Report...........................................................12

**Rules**

N.D. Civ. L.R. 54-5................................................................................................................................... 6, 7

**Introduction**

It is indisputable that Erwin's objections and appeals conveyed a $21.8 million benefit to the class. But for Erwin's objections and appeals, Hagens Berman would have retained $52.8 million instead of $31.026 million, and the bid would still be under seal. The $21.8 million increase in the common fund was a direct "response to the Objector['s] arguments on appeal." *Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) ("*Rodriguez II*"). Consequently, Erwin is entitled to attorneys' fees. *Id.*

Hagens Berman's response does not challenge these facts, nor does it even contest Erwin's entitlement to fees and an incentive award. The firm also does not dispute that because the $21.8 million benefit is quantifiable, the Court should employ the percentage method. *In re Easysaver*, 09-CV-02094-BAS-WVG, 2021 WL 230013, at *3-4 (S.D. Cal. Jan. 22, 2021) (when the objector provides "a quantifiable benefit to the class[,]" the percentage "approach makes sense" because it appropriately "ties Objector's fee award to the benefit he obtained for the class and aligns their interests"). And it does not dispute that Erwin's requested 7% fee, less than a third of the 25% benchmark, represents a reasonable percentage.

Instead, Hagens Berman's response is threefold. First, relying exclusively on lodestar-method cases, the firm invites the Court to impose a higher burden on objectors for producing lodestar information on cross-check. Just like Erwin, Hagens Berman submitted a summary of its lodestar information in its first three fee motions and did not supply the Court or the class with detailed billing information. This Court found that submission reasonable and relied on it in conducting its lodestar cross-check. There is no reason to penalize successful objectors with a greater burden than

1

class counsel.[1] Regardless, the declaration and now supplemental declaration of Robert Clore provide sufficient detail to demonstrate that the requested 7% fee is reasonable and will not amount to a windfall relative to the hours worked on lodestar cross-check. *See* Ex. 1; Dkt. 3042-1 at ¶¶ 8, 12-14.

Second, even though the firm previously argued that a 3.08 multiplier on cross-check for itself would be reasonable,[2] Hagens Berman urges an arbitrary 1.6 cap for Erwin's achievements. Resp. at 1. Neither of the two cases cited come remotely close to the $21.8 million concrete benefit Erwin delivered. In *Easysaver*, no additional funds were directed to the class. The objectors simply increased *cy pres* distributions by $3.23 million. 2021 WL 230013, at *3. Plus, the 1.6 multiplier served as a cross-check for a 25% fee awarded on a percentage basis. Erwin's 7% fee request with a 2.9 multiplier on cross-check for a $21.8 million direct benefit to the class is modest by comparison.

*Edwards* involved a $4.3 million increase to the class members, but only required the objectors' arguments ahead of final settlement approval. *Edwards v. Nat'l Milk Producers Fed'n*, 11-CV-04766-JSW, 2017 WL 4581926, at *2 (N.D. Cal. Sept. 13, 2017). It took Erwin objecting over three rounds of settlements, prosecuting three appeals to the Ninth Circuit, arguing twice before the Ninth Circuit, and fighting Hagens Berman's renewed efforts for the same fee on remand to secure a five-times greater result. The 2.9 multiplier on cross-check is reasonable by comparison.

Third, Hagens Berman asks that the class members foot the bill for Erwin's work in setting aside the firm's overreaching $52.8 million fee. Hagens Berman's insistence that the class pay for its misconduct is a further manifestation of an actual conflict of interest between the firm and the class

---

[1] Only on remand, when the sole issue was whether uncontemplated circumstances supported a variance from the bid and the reasonableness of Hagens Berman's lodestar was not in question, did the firm submit its detailed lodestar. Hagens Berman's belated submission, after three prior motions in which it did not submit detailed billing records, should not demand Erwin meet a higher standard than required by the Ninth Circuit or the Civil Local Rules of this District.

[2] Dkt. 2432 at 18 (arguing that "even a lodestar [multiplier] of 3.08 for [the second] round of settlements would *still* be reasonable") (emphasis original).

2

members and represents an additional breach of fiduciary duty to the class. This Court undoubtedly has the equitable authority to fund the award from Hagens Berman's fee rather than the class member's common fund. *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (discussing the court's "broad equitable power" in the context of fees awarded under the common fund doctrine). Courts have routinely done so in this District and elsewhere.

## Argument

### I. Erwin's 7% request is reasonable.

Considering authority within the Ninth Circuit allows fees of 25%, Erwin's 7% fee request is clearly reasonable. *See Easysaver*, 2021 WL 230013, at *3-4 (awarding objector $805,000 in attorneys' fees, which was "right about at the 25% benchmark typically used in the percentage method"); *Arnett v. Bank of Am., N.A.*, No. 3:11-cv-1372-SI, 2014 WL 5419125, at *3 (D. Or. Oct. 22, 2014) (awarding objector's counsel 25% of increase to settlement fund); *Stetson v. West Publishing Corp.*, No. 2:08-CV-00810-RGK-E, 2016 WL 5867434, at *6 (C.D. Ca. Aug. 11, 2016) (awarding objectors 20% of the benefit). Hagens Berman does not quarrel with this percentage, nor does it dispute that the *Vizcaino* factors[3] support it. It couldn't since Erwin's counsel achieved far greater results—a $21.8 million increase to the common fund, nearly the size of the entire third round of settlements—than objector's attorneys who were awarded the 25% benchmark. *Easysaver,* 2021 WL 230013, at *2-3 (25% awarded based on $3.23 million increase distributed to *cy pres* beneficiaries); *Arnett*, 2014 WL 5419125, at *3 (25% awarded for identifying $38,267.11 in expenses that were not appropriate for reimbursement); *see also Stetson*, 2016 WL 5867434, at *6 (awarding 20% for $36,774.50 increase to the common fund).

---

[3] Erwin's discussion of how the *Vizcaino* factors support the 7% request is found in Dkt. 3042 at 13-14 and Dkt. 3042-1 at ¶¶ 4-10, 16, 18.

The firm also does not dispute that because the $21.8 million benefit is quantifiable, the Court should utilize the percentage method for calculating fees. *Easysaver*, 2021 WL 230013, at *3-4 (when the objector provides "a quantifiable benefit to the class[,]" the percentage "approach makes sense"). This method appropriately "ties Objector's fee award to the benefit he obtained for the class and aligns their interests." *Easysaver*, 2021 WL 230013, at *3 (citing *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018)). This Court should grant Erwin's uncontested percentage-based request and award him fees of 7% of the $21.8 million benefit.

## II. Erwin's summary of lodestar information on cross-check is in keeping with Ninth Circuit authority, this Court's Local Rules, and Hagens Berman's own fee submissions.

Erwin's submission provides ample information confirming that the 7% fee request will not produce a windfall. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (purpose of lodestar cross-check is to "provide[] a check on the reasonableness of the percentage award"). Hagens Berman concedes that Erwin's attorneys' hourly rates are reasonable (Resp. at 1), and only challenges Erwin's hours. Even that is remarkable considering Erwin's attorneys billed hundreds fewer hours for the same work. Hagens Berman cherry-picks a single paragraph from Clore's declaration to suggest inadequate explanation of the 687.6 hours accumulated. Resp. at 3 (citing Dkt. 3042-1 at ¶ 13). But Clore's declaration, in its entirety, provides sufficient detail to assure reasonableness of the requested 7% fee on cross-check:

> 8. Erwin's counsel litigated the objections and appeals efficiently with 687.6 hours of attorney time making up the lodestar. That lodestar was accumulated over five years and covers three objections to three Hagens Berman's fee motions, three appeals, two oral arguments in the Ninth Circuit, an opposition and objection to a renewed motion for attorneys' fees, and a hearing on the same. It excludes any time spent on this fee motion as well as all time spent in connection with Erwin's motion to enforce, return class funds, and disgorge fees. [This lodestar is] a reasonable expenditure of time for researching and drafting three objections and accompanying declarations, researching

4

and preparing six appellate briefs in three appeals in the Ninth Circuit, engaging in appellate motion practice (among other things, Hagens Berman opposed supplementing the appellate record with the unsealed bid), preparing for, traveling to, and attending one oral argument in Portland, Oregon, preparing for another oral argument via Zoom, preparing an opposition to a renewed motion for attorneys' fees, preparing an objection to the renewed motion, and preparing for and arguing at the hearing before this Court on the renewed motion for attorneys' fees. The nature of the objections and appeals required, under Ninth Circuit law, that we be familiar with the entire timeline of the case, including the bids submitted to Judge Walker at the outset of litigation, and to review and understand filings, orders, and transcripts in complex, global antitrust class action litigation with over 3,000 docket entries, many years before Erwin first objected in 2016. Erwin's three appeals involved hundreds of pages of briefing and thousands of pages of excerpts of record on appeal, including 838 pages of supplemental excerpts of record filed by Hagens Berman in the three appeals. *See In re Optical Disk*, Nos. 17-15065, 17-17439, & 19-15538 (9th Cir.).

\* \* \*

12. I billed 642.3 hours in this case. Mr. Bandas billed 21.8….

\* \* \*

13. In general, Mr. Bandas' labor was spent communicating with Mr. Erwin, conducting legal research, reviewing the docket, drafting and preparing Erwin's objection to Hagens Berman's first motion for attorneys' fees in 2016, and assisting Mr. Clore in preparation for the first oral argument in Portland, Oregon. My labor was spent reviewing Erwin's first objection, reviewing the extensive docket, conducting legal research and drafting Erwin's subsequent two objections to Hagens Berman's two additional fee motions, conducting legal research and drafting six appellate briefs over three appeals, engaging in appellate motion practice, preparing for, traveling to, and participating in the first oral argument in Portland, Oregon, preparing for and participating in the second oral argument via Zoom, reviewing Hagens Berman's renewed motion for attorneys' fees, conducing legal research and drafting an opposition and fourth objection, and preparing for and participating in the Zoom hearing on the same.

14. Mr. Hanigan billed 23.5 hours at $450 per hour, keeping his time through recordkeeping software. These hours were primarily spent reviewing, editing, and filing Erwin's objections and supporting papers, as well as communicating with Mr. Clore regarding the same.

Dkt. 3042-1 at ¶¶ 8, 12-14. That sworn testimony from Clore is not speculative; it is clear, descriptive evidence, and complies with Civil Local Rule 54-5's requirement of a statement "of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person[.]" N.D. Civ. L.R. 54-5(2). Nevertheless, out of an abundance of caution, Mr. Clore attaches hereto a supplemental declaration that provides further elaboration on the hours spent by stages of litigation. Ex. 1 at ¶¶ 4-8.

Hagens Berman's argument that Erwin must submit detailed billing records, despite moving for fees under the percentage method, is undermined by the firm's own submissions. Like Erwin, Hagens Berman produced a "Summary of … Lodestar" in support of each of three fee motions, listing hours worked by timekeeper, hourly rates, and total lodestar. Dkt. 1963-1 at 13-14; Dkt. 2326 at 6-8; Dkt. 2874-1 at 3-6. All the criticisms that Hagens Berman now lodges against Erwin's submission could be applied equally to its first three fee motions. Yet, with those summaries this Court found that "Hagens Berman's lodestar more than adequately supported the requested award[.]" Dkt. 2133 at 21. As a successful objector, Erwin should not be saddled with a higher burden than class counsel. *See Rodriguez II*, 688 F.3d at 658 (successful objectors "may claim entitlement to fees on the same equitable principles as class counsel").

In any event, Hagens Berman's claim that Ninth Circuit requires detailed billing records for a lodestar cross-check is simply wrong.[4] *See In re Online DVD–Rental Antitrust Litig.,* 779 F.3d 934, 955 (9th Cir.2015) (explaining the district court compared the percentage of the fund amount to the summary lodestar numbers provided by class counsel); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that the lodestar cross-check calculation need

---

[4] Erwin produced the same material Hagens Berman relied on for its three fee motions, consistent with Ninth Circuit precedent. That does not render Erwin's call for transparency of the bid which Hagens Berman used to become class counsel "sanctimonious" (Resp. at 5) considering the result was an additional $21.8 million in the class members' common fund.

entail neither mathematical precision nor bean counting ... courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (internal quotations and alterations omitted); *Bond v. Ferguson Enterprises, Inc.,* No. 1:09–CV–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (recognizing that where "the lodestar is being used here as a cross-check, the court may use a rough calculation of the lodestar"); N.D. Cal. Civ. L.R. 54-5 (requiring "[a] statement of the services rendered by each person for whose services fees are claimed together with a *summary* of time spent by each person")[5] (emphasis added). In fact, the Ninth Circuit doesn't even require a lodestar cross-check at all when awarding fees under the percentage method. *Farrell v. Bank of America Corp.*, N.A., 827 Fed. Appx. 628, 630 (9th Cir. 2020) (citations omitted).

Hagens Berman obfuscate by relying exclusively on lodestar-method cases in which more detail is necessarily required. Resp. at 5-6. *Yamada v. Nobel Biocare Holding AG* required a production of timesheets to opposing counsel only where the "district court relied [on them] in issuing a fee award" under the lodestar method. 825 F.3d 536, 542 (9th Cir. 2016). Likewise, the cases cited by *Yamada* for this proposition are lodestar-method cases in which detailed time records are imperative. *Id.* (citing *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986)); *see In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (citation omitted) (placing burden to produce detailed time records on an applicant under the lodestar method)*; see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (same). Since Erwin seeks fees as a percentage of the benefit earned for the class (and Hagens Berman does not advocate against this methodology), the firm's argument for detailed time records is misplaced.

---

[5] To the extent the Court nevertheless requires detailed time records, Civil Local Rule 54-5(b)(2) contemplates "*in camera* inspection[.]"

**III.    Erwin's percentage-based fee request should not be diminished based on the method of documentation of hours.**

Hagens Berman also challenges Erwin's reliance on reconstruction of attorney time instead of contemporaneous time records. Resp. at 1, 3-4. That is not a valid basis for denying a fee request. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see Easysaver*, 2021 WL 230013, at *4 (awarding full request of objector fees where reconstructed hours were submitted in support of lodestar cross-check). As the Ninth Circuit has made clear, "fee requests can be based on reconstructed records developed by reference to litigation files." *Fischer*, 214 F.3d at 1121. Clore's and Bandas' time were reconstructed in this manner. Dkt. 3042-1 at ¶ 12. Hagens Berman does not suggest discrepancies,[6] and in falsely characterizing Clore's declaration as "guesswork," completely fail to cite *Fischer*.

Hagens Berman argues that if it had submitted reconstructed time records, the firm "would have drawn objections[.]" Resp. at 1. In fact, it submitted *no* time records apart from the summary required in Local Civil Rule 54-5 for its first three fee motions, and this Court found that submission fully supportive of the request.

Hagens Berman remarks that "there were no documentation issues in *Easysaver* or *Edwards*." Resp. at 7. That is true. In *Easysaver*, a significant portion of the lodestar was documented through reconstructed billing.[7] Nevertheless, the Court found that the full 847 hours were "reasonably expended on the litigation" and fully "adopt[ed] Objector's proposed lodestar[.]" *Easysaver*, 2021 WL 230013, at *4. Further, objectors' counsel submitted lodestar in summary fashion in both *Easysaver*

---

[6] Hagens Berman remarks that Erwin "was not reinventing the wheel" on the role of the bid in each objection and brief. But, Hagens Berman's arguments in relation to the bid and the ultimate disclosure of it were constantly evolving throughout the process. Ex. 1 ¶9. If Erwin had simply cut and paste his arguments from one brief to the next, as Hagens Berman seemingly suggests, he would not have succeeded in securing the $21.8 million benefit for the class. *Id.*

[7] *In re Easysaver Rewards Litig.*, No. 3:09-cv-2094, Dkt. 38-1 at ¶ 17 (S.D. Cal. May 15, 2020 Declaration of Theodore H. Frank).

and *Edwards*, and the courts made no reduction on this basis.[8] Thus, *Easysaver* and *Edwards* confirm the reasonableness of Erwin's documented lodestar.

And Hagens Berman simply makes up facts in suggesting that a court in another MDL awarded the Bandas Law Firm "less than one-third of the fee sought mainly due to inadequate documentation." Opp. at 3 (citing *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7261313, at *2 (N.D. Cal. Dec. 10, 2020)). In fact, the Bandas Law Firm did not move for fees in that case. In *Lithium*, the full fee request was not granted because the objector did not actually obtain "an 'increase' to the settlement fund, since it shifted available funds from one portion of the class to another." 2020 Wl 7261313, at *1. Under those facts, the lodestar method was appropriate. As the court explained, "[t]he Ninth Circuit has held that, in situations where the benefit to the class is not easily quantified, the district court has "discretion to award fees based on how much time counsel spent and the value of that time." *Id.* (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020) (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019)). This case is different because Erwin achieved a quantifiable $21.8 million benefit for the class, making the percentage method appropriate to align interests. *Easysaver*, 2021 WL 230013, at *3. Since the lodestar method does not apply as in *Lithium*, the emphasis on billing records is lessened and should not serve as a basis for diminishing fees. *Easysaver*, 2021 WL 230013, at *4 (awarding full request of objector fees under the percentage method despite reconstructed hours on lodestar cross-check); *Bellinghausen,* 306 F.R.D. at 264; *Bond*, 2011 WL 2648879, at *12.

Ultimately, Hagens Berman's concern with Erwin's counsels' 687.6 hours is feigned. The firm does not contest that it spent at least 1,133.8 hours on motions for attorney's fees and

---

[8] *Easysaver Rewards Litig.*, No. 3:09-cv-2094, Dkt. 368-1 at ¶¶ 19-24 (S.D. Cal. May 15, 2020 Declaration of Theodore H. Frank); *Easysaver*, 2021 WL 230013, at *4; *Edwards v. National Milk Producers Fed'n*, No. 11-cv-04766, Dkt. 488-2 at ¶ 22 (N.D. Cal. Aug. 18, 2017 Declaration of Anna St. John); *Edwards v. Nat'l Milk Producers Fed'n*, 11-CV-04766-JSW, 2017 WL 4581926, at *2 (N.D. Cal. Sept. 13, 2017) (awarding full lodestar to objector represented by St. John).

expenses, Erwin's three appeals, and oral arguments in the Ninth Circuit. *See* Dkt. 3042-1 at ¶ 16. In fact, it is more likely that the firm likely spent hundreds of more hours because it did not document most of its time preparing its first fee motion. *Id.* Either way, Erwin's counsels' 687.6 hours represent far less time and far greater efficiency for the same work. Further, as Clore's declaration explained, the reconstructed billing resulted in understated billing through substantial write offs of actual time expended. *Id.* at ¶ 12. The hours are modest given the work described and the relative number of hours Hagens Berman expended for the same work.

## IV.   The 2.9 multiplier is reasonable on cross-check.

The 2.9 lodestar multiplier "falls within the Ninth Circuit's presumptively acceptable range of 1.0-4.0." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2015) (approving 2.83 multiplier) (citing *Vizcaino*, 290 F.3d at 1051 & n.6). Hagens Berman again resort to lodestar-method cases where multipliers are rare. Resp. at 6 (citing *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (reversing fee awarded under the lodestar method) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546-52 (2010)). Yet the firm repeatedly advised the Court when petitioning for percentage-based fees that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." Dkt. 2432 at 15; *see* Dkt. 2432-1 at 19 ("The Ninth Circuit, for example, has explicitly affirmed a multiplier of 6.85, holding that it 'falls well within the range of multipliers that courts have allowed'" (quoting *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007)); Dkt. 2879 at 21 (same).

Although there is no reason to exclude from consideration multipliers awarded to class counsel as opposed to objectors who "claim entitlement to fees on the same equitable principles[,]" *Rodriguez II*, 688 F.3d at 658, a multiplier below 3 is reasonable in either category. *See e.g., Eubank v. Pella Corp.*, No. 06-CV-4481, 2019 WL 1227832, at *9 (N.D. Ill. Mar. 15, 2019) (awarding objectors' counsel "a multiplier of six"); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 663 (E.D. Pa. 2015)

(allowing 2.28 multiplier on cross-check). Hagens Berman attempts to distinguish the 6 multiplier in *Pella* because class counsel was ultimately removed based on a conflict of interest. Resp. at 6-7. But it wasn't the notoriety of the case that entitled the objectors to a 6 multiplier in *Pella*. The objectors justified the multiplier with the results of their efforts on appeal—improving the settlement by an estimated \$15-\$22 million. *Pella*, No. 1:06-cv-00481, Dkt. 683, Motion for Attorneys' Fees and for Incentive Award, and Memorandum of Law in Support, of Theodore Frank, Attorney for Objector Michael Schulz, at 1, 8, 11. Erwin's efforts on appeal and remand achieved a concrete \$21.8 million improvement to the common fund, on the extreme high end of the estimated benefit in *Pella*. Given the comparable and more quantifiable benefit here, Erwin's request for less than half the multiplier in *Pella* is more than reasonable.

This Court should not limit Erwin to the 1.6 multiplier in *Easysaver* and *Edwards* as Hagens Berman propose. The results here are far superior to *Easysaver*, where the class received no direct benefit from the objectors' services. In *Easysaver*, the objectors' arguments resulted in a \$3.23 million distribution to third-party *cy pres* beneficiaries. *Easysaver*, 2021 WL 230013, at \*2. Since those dramatically inferior results warranted a 1.62 multiplier, the \$21.8 million benefit distributed directly to the class members easily supports Erwin's requested 2.9 multiplier. Even more so since the objectors in *Easysaver* received 25% of the benefit relative to Erwin's requested 7%.

Erwin's efforts and results also surpass *Edwards* many times over. In *Edwards*, multiple objectors made arguments ahead of final settlement approval that contributed to a \$4.3 million reduction in class counsels' fee and resulting increase to the common fund. *Edwards*, 2017 WL 4581926, at \*1. Unlike Erwin in this case, the objectors in *Edwards* did not have to make separate objections over three rounds of settlements, prosecute and prevail in three appeals, argue before the Ninth Circuit on two occasions, and persuade the Court to return \$21.8 million to the class members on remand. This is simply not a case like *Edwards* with a minimal degree of risk and

11

novelty, and which involved a much "shorter time period over which the work was performed." *Id.* at \*2. Further, in *Edwards* "the Court's own review would likely have resulted in a fee award to class counsel that was lower than the amount sought." *Id.* Here, the $21.8 million benefit only materialized due to Erwin's objections and appeals. The results, complexity and novelty of the issues, and the risk of nonpayment all support the 2.9 lodestar multiplier on cross-check.

The relevant factors— "the quality of representation, the result obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" — all support Erwin's requested fee and multiplier on cross-check. *McLeod v. Bank of Am., N.A.*, 2019 WL 1170487, at \*4 (N.D. Cal. Mar. 13, 2019). Hagens Berman cannot dispute that Erwin prevailed in an issue of first impression in the Ninth Circuit. While Hagens Berman takes issue with Erwin's numbers on the likelihood of overturning the three awards in the Ninth Circuit, its own numbers reveal Erwin had an 83.7% chance of failure.[9] Resp. at 8 (observing that for "the relevant category, the rate was 16.3%"). Otherwise, the firm's rhetoric that there is nothing unusual about the Ninth Circuit vacating three orders and articulating a new standard on attorneys' fees relative to a bid for lead class counsel is unsupported and clearly mistaken.

**V.    Erwin's request for a $1,500 incentive award is uncontested.**

Hagens Berman's response makes no mention of Erwin's requested $1,500 incentive award for his willingness to oppose the excessive fee requests over multiple rounds of settlements. That amount is reasonable relative to the awards in this case ($4,500 for round 1 and $138,000 over two rounds in the aggregate). Dkt. 2133 at 17-18; Dkt. 2133 at 17-18; Dkt. 2691. It is well within the range of reasonable incentive awards. *See e.g., Easysaver*, 2021 WL 230013, at \*3-4 ($2,500 for

---

[9] United States Courts for the Ninth Circuit, 2019 Annual Report, at 57 https://www.ca9.uscourts.gov/judicial-council/publications/AnnualReport2019.pdf (last visited Aug. 6, 2021).

objector's participation in the case). As with his counsel, Erwin's efforts towards increasing the settlement fund by $21.8 million should be rewarded.

**VI. Hagens Berman, not the class, should pay objector's attorneys' fees because it necessitated Erwin's involvement.**

Just as courts in this District and elsewhere have done, this Court should exercise its "broad equitable power" under the common fund doctrine, *Rodriguez*, 688 F.3d at 659, and award objector attorneys' fees from Hagens Berman's $31,026,000 fee. Not because Hagens Berman sought an "excessive" fee. Opp. at 10. Erwin's intervention was only necessary because of Hagens Berman's lack of candor with the Court. As the Ninth Circuit observed, Hagens Berman's motion "was submitted over six years after [Hagens Berman]'s was appointed interim class counsel, and nearly 2,000 district court docket entries later, but it included just one reference to counsel's bid: 'Had this case been successfully certified originally according to typical proceedings projected at the outset of the case, [Hagens Berman] lodestar and total attorneys' fees for resolution at that stage would have been less.'" *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930-31 (9th Cir. 2020). As to Hagens Berman's supporting twenty-page declaration, "the closest it came to mention the fee bid was the acknowledgement that 'Judge Walker appointed Hagens Berman as sole lead counsel on behalf of the indirect purchaser class in a contested leadership fight." *Id.* at 931.

Even when forced to acknowledge the significantly lower fee that would have resulted under the bid, Hagens Berman "inexcusably failed to call attention" to its promise not to seek reimbursement of expenses. Dkt. 3027 at 10 n. 5 (noting Hagens Berman failed to fulfill "its full duty of candor"). Since Hagens Berman's failings necessitated Erwin's objections and appeals, it follows that the firm, and not the class, should be responsible for the compensation. *Hendricks v. Starkist Co*, 13-CV-00729-HSG, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 Fed. Appx. 510 (9th Cir. 2018) (awarding objector's fees "directly from class counsel's fee award" was "an appropriate and justified result" because "[i]f not for class counsel's"

13

actions, the objectors "would not have needed to become involved at this level."); *Lithium*, 2020 WL 7261313, at *2 ("the award should be paid out of class counsel's fee award" because "class counsel's initial acquiescence" to the improper distribution necessitated the objection).

Even now, in suggesting the firm agreed to unseal the bid once liability was conclusively decided, Hagens Berman is less than candid. Resp. at 9. The Ninth Circuit affirmed summary judgment in November 2019. *In re Optical Disk Drive Prod. Antitrust Litig.*, 785 F. App'x 406, 407 (9th Cir. 2019). With Erwin's appeals pending, Hagens Berman waited until oral argument before the Ninth Circuit on April 14, 2020, to concede, finally, that the class was entitled to see it.[10] Still, the firm still didn't take efforts to unseal it until July 31, 2020 (Dkt. 2933), eight months after the rationale for keeping it under seal expired.

Hagens Berman attempts to marginalize authority doing exactly what Erwin asks by suggesting that none of it "involved a common fund from which an objector attorney could be paid." Resp. at 9. That is not true. *Hendricks* involved a settlement fund of $8 million cash and $4 million in vouchers, with class counsels' attorney's fees taken from the aggregate $8 million cash fund. 2016 WL 5462423, at *16; *Hendricks*, No. 13-cv-00729-HSG, Dkt. 187-1 at ¶2.3(d). The court could have, but did not, take the objector's fee from the $8 million fund. The fact that the objector benefitted the class with an improved release is a distinction without a difference. The point is the objector secured a benefit for the class and their intervention was made necessary to class counsels' acquiescence to an unfair arrangement. The court in *Lithium* also chose class counsels' fee as the appropriate source rather than the class member's common fund. *Lithium*, 2020 WL 7261313, at *2. Since the impetus for these holdings was mere acquiescence by class counsel to an unfair arrangement, Hagens Berman's deliberate, self-serving lack of candor to the detriment of the class presents a more compelling reason to tax the firm in this case.

---

[10] https://www.ca9.uscourts.gov/media/audio/?20200407/19-15538/.

14

## Conclusion

Conner Erwin renews his request for $1,500 as an incentive award and $1,524,180 in attorneys' fees for his role in conferring a $21,827,042 benefit to the class. Again, this sum should be funded from class counsels' fees, or alternatively from the common fund.

Dated:  August 6, 2021                              Respectfully submitted,

                                                    */s/ Robert W. Clore*
                                                    Robert W. Clore
                                                    Christopher Bandas
                                                    BANDAS LAW FIRM, P.C.
                                                    802 N. Carancahua, Suite 1400
                                                    Corpus Christi, TX 78401
                                                    Tel: (361) 698–5200
                                                    Fax: (361) 698-5222
                                                    Admitted *Pro Hac Vice*

                                                    Timothy R. Hanigan (125791)
                                                    Lang, Hanigan & Carvalho, LLP
                                                    21550 Oxnard Street, Suite 760
                                                    Woodland Hills, California 91367
                                                    (818) 883-5644
                                                    trhanigan@gmail.com

                                                    *Counsel for Conner Erwin*

15

**Certificate of Service**

The undersigned certifies that today he filed the foregoing on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED:  August 6, 2021

/s/ *Robert W. Clore*
Robert W. Clore