Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Lead Counsel for Indirect Purchaser Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE PRODUCTS ANTITRUST LITIGATION | No. 3:10-md-2143 RS (JCS) |
| | **INDIRECT PURCHASER CLASS'S SUPPLEMENTAL SUBMISSION REGARDING PLAN OF DISTRIBUTION** |
| | DATE ACTION FILED: Oct. 27, 2009 |
| This Document Relates to: ALL INDIRECT PURCHASER ACTIONS | |

010177-12/1856314 V1

In response to this Court's Order re Plan of Distribution (ECF No. 3080) (Order), indirect purchaser plaintiffs (IPPs) submit the declarations of the three vendors involved in notice and administration in this case, KCC Class Action Services, LLC (Murray Decl.[1]), Sipree, Inc., dba DigitalPay (Whipps Decl.[2]) and Epiq Class Actions & Claims Solutions, Inc. (Page Decl.[3]). This Court appointed each of these administrators on July 21, 2016, April 18, 2017, and September 18, 2018, respectively.[4] Hagens Berman Sobol Shapiro LLP (Hagens Berman) also submits a declaration regarding the negotiation of these contracts and detail regarding its uncompensated role in the administration process.[5]

In their declarations, the three vendors give detail regarding the costs associated with notice, processing claims and making distributions, as follows:[6]

|  | Amounts Invoiced | Amounts Paid | Amounts Invoiced but not yet Paid | Amounts Expected for Distribution | Total Notice and Administrative Costs |
|---|---|---|---|---|---|
| Epiq/Hilsoft | $673,263.44 | $611,279.33 | $61,984.11 | $115,669.49 |  |
| Sipree/DigitalPay | $1,326,084.93 | $1,326,084.93 | $0 | $200,000.00 |  |
| KCC/Gilardi | $1,272,789.39 | $1,272,789.39 | $0 | $0 |  |
| **TOTALS** | **$3,272,137.76** | **$3,210,153.65** | **$61,984.11** | **$315,669.49** | **$3,587,807.25** |

---

[1] Declaration of Ross D. Murray Regarding Administrative Fees Billed by Gilardi & Co. LLC and KCC Class Action Services, LLC, filed concurrently herewith.

[2] Declaration of Chris Whipps Regarding Order re Plan of Distribution [ECF No. 3080], filed concurrently herewith.

[3] Declaration of James Page on Epiq Class Action Claims and Solutions Fees and Expenses to Date, filed concurrently herewith.

[4] *See* Order Granting Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with Panasonic, NEC, Sony and HLDS Defendant Families and Dissemination of Class Notice, filed July 21, 2016 (ECF No. 1916); Order Granting Indirect Purchaser Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlements with PLDS and Pioneer Defendants and Dissemination of Class Notice, filed Apr. 18, 2017 (ECF No. 2284); Order Granting Indirect Purchaser Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlements with TEAC Defendants and Dissemination of Class Notice, filed Apr. 18, 2017 (ECF No. 2285); Order Granting Indirect Purchaser Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with Defendants Samsung Electronics Co. Ltd., Toshiba Corporation and Toshiba Samsung Storage Technology Corporation and Dissemination of Class Notice, as Modified by Court, filed Sept. 18, 2018 (ECF No. 2860).

[5] Declaration of Shana E. Scarlett in Support of Indirect Purchaser Class's Supplemental Submission Regarding Plan of Distribution, filed concurrently herewith.

[6] Gilardi & Co. was acquired by KCC in 2015, Hilsoft is Epiq's notice arm and Sipree relaunched as DigitalPay in 2020.

1    *See* Murray Decl., ¶ 2; Whipps Decl., ¶ 2; Page Decl., ¶ 2.

2    The projected costs of $3,587,807.25 represent a correction to the IPPs' original submission. The original submission contemplated that $4,856,401.30 in total costs would be needed. This included a mathematical error caused in large part by the complexity of the number of escrow accounts, vendors, bills and timeline involved. It was inadvertent. But the mistake and overstatement provided no benefit to Hagens Berman. No funds regarding notice and claims administration are ever paid to or from the accounts of Hagens Berman. These are entirely separate accounts from the litigation costs incurred through the litigation. Moreover, this mistake would have been caught prior to the second round of distribution. The schedule contemplated a report to the court after the first phase, and the costs expended for distribution would have been provided at that time, and any additional funds applied to the second round. *Id.*, ¶ 2.

Good cause exists for the deviation from the original reserves in the settlement agreements. As noted by the Court (Order at 2), the original settlement agreements called for $3,350,000 in administrative costs. The vendor estimates require an additional $237,807.25 beyond the original reserves in the settlement agreements (a 7.1% increase). *First*, addressing the 7.1% difference between the original reserves and the current estimate. At the time of any settlement, estimates are made for the costs of notice and administration. This is done because notice must be sent to the class in advance of final approval and, if a settlement were not approved, these amounts would not be returned to the defendant with the rest of the settlement monies. It is a protective measure that the defendant requires. It is often a point of negotiation between the parties, with the defendants requesting a lower number, and the plaintiffs trying to make a good faith estimate as to what the costs of notice and administration might be through final approval.

In this case, each of the reserves in the settlement agreements were made in good faith at the times of settlement (now between five to eight years ago), relating to the costs of providing notice to the indirect purchaser class. These estimates were made after consulting with vendors regarding the costs of notice. Because in a multi-defendant case such as this one, distribution is usually left to the end of the case because of its costs, the costs of distribution are difficult to know at the time of settlement. This is unlike the cost of notice, where a notice administrator is consulted at the time. It is

only after the number of claimants and the total value of the settlements is known, in addition to details about the number of hard copy checks versus digital distribution, that an accurate estimate of distribution costs can be made. In this case, an accurate assessment of distribution costs could not be made until January 2022, upon completion of the audit of the claims made on the settlement funds.[7] But it is common that the distribution phase will require additional funds to be used from the settlement accounts. Scarlett Decl., ¶ 3.

The Court requested that Hagens Berman strike any amounts for services provided by Hagens Berman employees. This request is misplaced. Hagens Berman is not compensated for any of the time spent overseeing the administrative and distribution phase of the case. To date, our staff and attorneys have expended hundreds (if not thousands) of uncompensated hours. We continue to respond to the inquiries of class members on a weekly basis, uncompensated. Our staff and attorney time is not included in any of the administrative expenses submitted to the Court. Hagens Berman does not bill any incurred expenses to the settlement escrow accounts. *Id.*, ¶ 4.

At every point in this case, class counsel has sought to be cost efficient for the class. In this case, as in most of the cases litigated by Hagens Berman, multiple vendors were requested to submit bids at each point during the notice and claims administration phases. The lowest cost vendor was selected in each instance, while ensuring that the vendor had sufficient expertise and staffing necessary to address a case of this size. *Id.*, ¶ 5.

---

[7] This Court questioned why the audits were not undertaken at the time of the Ninth Circuit's affirmance of final approval in May of 2020. Order at n.1. But in most cases, funds are not distributed during the pendency of an appeal to ensure that the Court of Appeals retains jurisdiction. *See e.g., In re City of Vallejo, CA,* 551 F. App'x 339 (9th Cir. 2013) (dismissing an appeal as moot because funds had been fully distributed, rendering the lower court unable to fashion effective and equitable relief); *In re Cathode Ray Tube Antitrust Litig.*, No. 07-CV-5944-JST, 2018 WL 11292347, at *2 (N.D. Cal. Nov. 8, 2018) (denying plaintiffs' motion to amend plan of distribution, reasoning "If there are other issues to be decided on appeal, this Court would rather have them decided before considering an amended settlement or plan of distribution."); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-CV-05295-MRP MANX, 2014 WL 3014343, at *1 (C.D. Cal. Mar. 10, 2014) (after appeal, approving distribution of $30 million in settlement funds that was held in abeyance during pendency of appeal); *Nickel v. Bank of Am. Nat. Tr. & Sav. Ass'n*, No. C 94-2716 SBA, 2009 WL 1270473, at *1 (N.D. Cal. May 6, 2009) (discussing an order staying distribution of funds pending resolution of objectors' appeal). It seemed evident at the time that there would be further appeals from the serial objectors involved in this case.

The Court has requested that IPPs submit an amended schedule which: (a) provides for a revised schedule for the second distribution when more information is available regarding the likely timing and outcome of the appeal (Order at 2); (b) anticipates a ruling on distribution one week after responses to this submission are due.

IPPs note that the original schedule proposed two separate updates for the Court on July 22, 2022 (after Phase I distribution) and October 7, 2022 (after Phase II distribution), at which point updates were proposed to be given on the amount distributed to class members and the distribution costs. Those updates would include information regarding the costs of distribution incurred to date, and any new information regarding estimated costs. If the costs of distribution are less than estimated, they will be included in future rounds of distribution back to the class. Similarly, to answer the Court's concern, if additional attorneys' fees are returned to the class funds, those additional amounts will also be included in a distribution to the class. This second round will include the reversion of any uncashed checks from class members or unclaimed digital funds. It would also include the 2 percent reserve which was proposed to be held back from the first round for incidental funds or tax payments. The intent behind this plan was to return as much of the recovered funds as possible to class members prior to any escheatment in as efficient a method as possible.

A revised schedule is proposed below, based on the Court's instructions:

| EVENT | DATE FOR COMPLETION |
|---|---|
| **Warm Up**<br><br>DigitalPay emails claimants an initial notice (a "warm up") that communicates payment is soon coming and provides a date range of when payee will see payment. This email sets expectations and reinforces credibility of the payment to be received. | May 6 to June 4, 2022 |

| Event | Date for Completion |
|---|---|
| **Phase I: Payment Notification and Receipt**<br><br>DigitalPay issues payments ("payment notification") to claimants via email.  From this communication, claimants will be able to select where they would like to receive funds.  This action transfers funds from the settlement fund to the possession of the payee.<br><br>**Paper Checks Issued**<br><br>Claims administrator Epiq to mail paper checks week of June 6, with 60-day expiration. | June 6-17, 2022 |
| **Payment Expiration**<br><br>All digital payments issued in Phase I will expire (each digital payment will expire 35 days from the rolling notification; the vast majority of payments taken will occur in a ~72-hour window from notification). While a payment is active—but has not yet been taken—payees will receive four emails to remind them they have funds waiting. | July 22, 2022 |
| **Process Payment Exceptions**<br><br>Reissue digital payments as necessary and allow a further one week for expiration. | August 1-7, 2022 |
| **Report Results of Phase I**<br><br>DigitalPay and Epiq to identify and report funds that have not yet been taken by payees. Final accounting report and reconciliation will be created, along with proposed Second Round Distribution amounts. A report on first round distribution will be filed with the Court with a proposed plan for Second Round Distribution. | September 2, 2022 |
| **Phase II: Second Round Distribution**<br><br>Claims administrator DigitalPay securely delivers a final pro rata payment to all payees who took a payment in the Initial Payment Offering (Phase I). This card is the named property of the payee and delivers live funds.  No bank account is required to activate and use any of the cards delivered.  This final phase delivers funds to all entitled claimants | September 19-30, 2022 |

| EVENT | DATE FOR COMPLETION |
|---|---|
| with the intent of taking the settlement balance as closed to $0 as possible (except for outstanding physical checks issued by Epiq).<br><br>Claims administrator Epiq to send final pro rata checks to all payees who cashed a check in the Initial Payment Offering (Phase I). | |
| **Final Reporting**<br><br>Claims administrator DigitalPay to provide final report regarding the disbursement of the settlement funds.<br><br>Claims administrator Epiq to identify and report checks that have not been cashed 30 days from re-issuance.<br><br>Any remaining funds will be distributed to the Attorneys General for the Class jurisdictions for use in prosecuting consumer antitrust claims. | November 18, 2022 |

Dated this 25th day of March, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By   */s/ Shana E. Scarlett*
      SHANA E. SCARLETT
Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Lead Counsel for Indirect Purchaser Class*