SHIYANG HUANG
2800 SW ENGLER CT.,
TOPEKA, KS 66614
(314) 669-1858
defectivesettlement@gmail.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: OPTICAL DISK DRIVE ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Indirect Purchaser Actions | Case No. 10-md-2143-RS (JCS)<br><br>MDL No. 2143<br><br>OBJECTING CLASS MEMBER SHIYANG HUANG'S MOTION FOR OBJECTOR AWARD RE DISTRIBUTION PLAN<br><br>**Hearing Date**: TBD<br>**Hearing Time**: TBD<br>**Dept**: Courtroom 3, 17th Floor<br>**Judge**: Hon. Richard Seeborg, Chief Judge |

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

NOTICE OF SHIYANG HUANG'S MOTION FOR OBJECTOR AWARD .............. 1

INTRODUCTION ............................................................................................................ 1

RELEVANT BACKGROUND ....................................................................................... 2

ARGUMENT .................................................................................................................... 4

    I.    Huang is entitled to an award, should he provide a material benefit to the Class. . 4

    II.    Huang added *at least* $1.25 million by scrutinizing administrative costs requested ................................................................................................................................. 5

    III.    A $100,000 award is reasonable for Huang's work on Plan of Distribution alone  8

CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Briseno v. Henderson,* 998 F.3d 1014 (9th Cir. 2021) ........................................................ 6

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016)
  *aff'd,* 980 F.3d 645 (9th Cir. 2020) .............................................................. 1, 6, 8

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, LP,*
  888 F.3d 455 (10th Cir. 2017) ........................................................................ 8

*Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46 (1st Cir. 1985) ..................................... 8

*Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) ........................................................ 6

*In re Resistors Antitrust Litig.*, 2019 WL 5298143 (N.D. Cal. Sept. 6, 2019) ............................... 6

*Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) ............................................. 5

*Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013) ........................................... 8

*Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364 (9th Cir. 1989) ............................... 5

*Rodriguez v. West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2009) ........................................... 8

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) .................................................... 6

**Other Authorities**

Alison Frankel,
  *Class counsel want to pay objector $25K to ditch appeal. Ted Frank is in their way*.
  Reuters.com (Feb. 11, 2022).
  https://reut.rs/35fggJh ........................................................................ 10

Reply Brief,
  *In re Lithium-Ion Batteries Antitrust Litig.*,
  No. 4:13-md-2420-YGR, Dkt. 2730 (N.D. Cal. Feb. 14, 2022) ...................................... 10

**NOTICE OF SHIYANG HUANG'S MOTION FOR OBJECTOR AWARD**

Class member and Objector Shiyang Huang hereby moves the Court to grant an objector award of $100,000 to Huang—to be paid by Hagens Berman—for his work reducing Hagens Berman's requested administrative costs by *at least* $1.25 million.[1] To maximize efficiency and expedite Plan of Distribution, Huang consents to disposition of this motion without oral argument under Local Rule 7-1(b). If Hagens Berman expedites its likely opposition, this Court may dispose both this objector award motion and the pending administrative cost requests at once. Under Local Rule 54-5(a) and (b)(1), Shiyang Huang e-mailed Class Counsel in attempt to meet-and-confer. Attorneys Berman and Scarlett both blocked Huang's email.

**INTRODUCTION**

Huang seeks an award of up to $100,000, to be solely paid by Hagens Berman, for his objection work on Distribution Plan, protecting over $1.25 million of Class fund. *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 906 (C.D. Cal. 2016), *aff'd,* 980 F.3d 645 (9th Cir. 2020) (awarding $100,000 for "substantial role" and "significant investment" of one named plaintiff).

Huang's sole scrutiny[2] of IPP's Plan of Distribution, Dkt. 3077, uncovered Hagens Berman's utter lack of evidence for their quietly un-noticed $1.5 million extra costs request, such that the firm has now reduced their request of class members' fund by *at least* over $1.25 million. Because Hagens Berman's "non-motion" for some $237,000 additional notice costs is still pending with Huang's opposition, so the Class still may recover more dollars from Huang's work, to have more dollars distributed into the hands of indirect purchaser class members.

---

[1] The current saving subtotal is **$1,268,594.05** ($1,506,401.30 less $237,807.25 still on request).

[2] Objector Erwin was focused on his pending appeal, plus questioning "why that audit was not commenced … when the Ninth Circuit affirmed the settlement approvals in May of 2020."

1

**RELEVANT BACKGROUND**

In July 2021, this Court granted Hagens Berman's motion for attorney's fee in part, awarding $31.026 million. Dkt. 3027. Although Objector Erwin appealed from that decision, his appeal cannot decrease the amount of funds available to class members. *Cf.* Dkt. 3080 at 1-2.

On September 9, 2021, this Court ordered—in addition to awarding Objector Erwin some $1.5 million fee for his objection work—that "the claims administrator is directed to make a distribution of the settlement fund pursuant to the previously approved procedures and requirements **at the earliest practicable time**, without waiting for resolution of any pending or further appeals." Dkt. 3062 at 6. "Class members … have waited long enough." *Id.* at 5.

Hagens Berman did not provide any Plan of Distribution, despite this Court's order, until March 7, 2022. Dkt. 3076. Hagens Berman mostly discusses how class members will be paid, while silently injecting a $4.8 million charge as settlement administration expenses. *Id.* at 1. The "Plan" also included a proposed order granting distribution plan, but with no mention of such. Huang received Dkt. 3076 via ECF at 3:24pm PST. In Huang's CST time zone, it was 5:24pm.

Upon reviewing Hagens Berman's filing, Huang saw an imminent risk that the Class will lose over $4.8 million that Hagens Berman's Plan did not provide any itemized evidence at all about.[3] Because Hagens Berman inexplicably filed the "Plan" as a non-motion, it was unclear whether the Class had 4 days to respond as in an administrative motion, or 14 days to respond as in a motion, or the proposed orders could be approved without waiting for any responses at all.

Huang set aside everything and immediately drafted a motion from scratch. Dkt. 3077. His motion was filed just 7 hours later, at 12:40am CST in Huang's time (10:40pm PST). In that

---

[3] Rather, Hagens Berman only first discussed previously-granted $3.3 million within their $4.8 million administrative costs demand, *in response to Huang's motion for clarification.* Dkt. 3079.

2

1 motion, Huang sought only one relief: to clarify whether Hagens Berman is authorized to reduce

2 class funds by a whooping $4.8 million charge, through the item of "administrative cost". *Ibid.*

3 Hagens Berman later filed a response to Huang's motion. Dkt. 3079. There, for the first

4 time, Hagens Berman conceded that their $4.8 million "administrative cost" subtotal included

5 "**$1,506,401.30 in administration costs exceeding the amount contemplated** by the settlement

6 agreements and preliminary approval orders based on the settlement agreements." *Id.* at 4

7 (emphasis added). Pressed by Huang's motion, Hagens Berman also first admits it "should have

8 explicitly requested Court approval for the additional $1.5 million in administration costs from

9 the settlement fund." *Id.* at 5. Nevertheless, Hagens Berman still asked for over $4.8 million

10 administrative costs. Dkt. 3079; Scarlett Decl. in response to Huang, Dkt. 3079-1 at ¶ ¶ 2-3.

11 But this Court picked up on Hagens Berman's admissions *in response to Huang's motion*.

12 In response to Huang's objections, Hagens Berman acknowledges it "should have
explicitly requested Court approval for the additional $1.5 million in
13 administration costs from the settlement fund." Indeed, it should have.

14 Order re Plan of Distribution, Dkt. 3080 at 2. This Court addressed Huang's "concerns" that

15 "Hagens Berman is reporting that the actual costs are anticipated to exceed the amount

16 previously approved by a whopping 31%, and it has not established reasonableness." *Id.* at 3.

17 Hagens Berman shall promptly submit appropriate declarations establishing how
the $4,540,731.81 incurred for providing notice to the class and administering the
18 claims process was spent. In the event any portion of that amount is for services
provided by Hagens Berman employees, those sums shall be deducted.
19

*Ibid.* This Court also set expedited schedules with 3-day deadline for response, as soon as
20
Hagens Berman submits papers establishing how the claims process spent money. Hagens
21
Berman was asked to "promptly" submit papers but was not required to file by any exact date.
22
After nearly two weeks, and after Huang's "reminder" for Hagens Berman (Dkt. 3081),
23
Hagens Berman finally submitted their papers on administrative costs. Dkt. 3082. Knowing
24

3

Objector Huang will closely scrutinize their submissions, Hagens Berman "correct[ed]" their extra cost request, reducing it from over $4.85 million to under $3.588 million. *Id.* at 2. Hagens Berman now claims discrepancies arose from some "mathematical error caused in large part by the complexity of the number of escrow accounts, vendors, bills and timeline involved." *Ibid.* In light of some $3.3 million previously awarded as costs, Hagens Berman's still-opposed request for extra costs was shaved from over $1.5 million down to ~$237,000—a $1.26 million reduction. $1.26 million—instead of leaving the Class fund—will now stay in that Class fund.

**ARGUMENT**

Huang discusses several key factors below, in support of his motion for award:

1. It is law-of-the-case that Huang can seek an award if he produces a benefit to the Class.

2. Huang's work on Plan of Distribution *did* create significant benefits to the Class—more than $1.25 million, besides his adversarial viewpoints that kept Hagens Berman in check.

3. The last question is what amount to award Huang. A $100,000 award to be paid by Hagens Berman is appropriate for its *fiduciary* failures. Further, the fact that $25,000 is Hagens Berman's going price for settling an appeal *with "zero impact"* to class members strongly supports that Huang—who delivered real relief—deserves more than $25,000.

**I. Huang is entitled to an award, should he provide a material benefit to the Class.**

This Court previously granted Huang an award "for the role he contends his post-remand objections played in increasing the fund to be distributed to the class by nearly $22 million." Dkt. 3067. That award to Huang—despite opposition from Hagens Berman—also came from Hagens Berman's pocket, so that the Class did not lose a single penny from Huang's award. *Ibid.*

Although Huang now seeks an award for an item entirely unrelated to the $22 million savings that the Class will already receive, many related issues are foreclosed by the law of the

4

case here.[4] "[T]he orderly administration of lengthy and complex litigation such as this requires the finality of orders be reasonably certain. This policy is served by the doctrine of law of the case, which counsels against reopening questions once resolved in ongoing litigation." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364. 369 n.5 (9th Cir. 1989). *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833 (9th Cir. 1982) (same). Thus, Huang will briefly note the relevant issues foreclosed by previous orders, and he will skip discussing them at length:

- Huang can be awarded, if he shows work that benefited class members. Dkt. 3067.
- Hagens Berman—not the Class—should pay for Huang's award. *Ibid.;* Dkt. 3062 at 4-5.

## II. Huang added *at least* $1.25 million by scrutinizing administrative costs requested

The next threshold question is whether Huang "contributed" in the Distribution Plan issue to "meaningfully benefit the class[.]" Dkt. 3067 at 2. The factual record shows that Huang *did*.

Starting with real dollars: Huang increased class recovery by at least $1.25 million, through his efforts scrutinizing Hagens Berman's initial "Proposed Plan of Distribution" submission. On causation, it is certain that Huang's motion *caused* Hagens Berman to first admit that they exceeded prior approvals of this Court and "should have" asked for $1.5 million additional costs (before later shaving $1.26 million from their "amended" request). Dkt. 3079 at 4. This Court agreed while disposing Huang's motion. Dkt. 3080 at 2. The outcome—*at least* $1.26 million more for class members—is rather difficult to achieve in this terminal stage of class-action settlements: because this Court's decision on fees is already on appeal, objectors—with no more fee issues in sight—are unlikely to involve themselves heavily here; but still,

---

[4] The amount of Huang's previous award is not relevant here for several reasons: (1) Objectors Erwin and Huang were *both* credited for their prior work; (2) Erwin was solely responsible for the appellate finding that Hagens Berman could not recover $5.7 million in expenses; and (3) there were few precedents supporting an award to Huang, which is no longer the case here.

5

"asymmetrical nature of discovery in class actions … can lead to excessive billing[.]" *Briseno v. Henderson,* 998 F.3d 1014, 1026 (9th Cir. 2021) (quoting *Chambers,* 980 F.3d at 665).[5] The IPPs Class—with Huang's advocacy—eliminated any risk of losing at least $1.26 million of their money. Huang's advocacy thus provided a material financial benefit to the Class.

Besides real dollar gain, Huang provided—and is still providing—nonfinancial benefits to class members. His involvement allowed this Court to "exploit[] the free-wheeling energies of counsel and place[] them in adversary confrontation before [this Court.]" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 & n.3 (2020) (Ginsburg, J.); *Eubank v. Pella Corp.,* 753 F.3d 718, 720 (7th Cir. 2014) (Posner, J.) (American courts "expect the clash of the adversaries to generate the information that the judge needs to decide the case. And so when a judge is being urged [to grant relief without opposition,] he's at a disadvantage")

Much of Huang's "concerns" yielded savings for the Class. Dkt. 3080 at 3. His work highlighted $1.5 million in costs that Hagens Berman never obtained approval to take away from the Class *Id.* at 2 ("*In response to Huang's objections,* Hagens Berman acknowledges it 'should have explicitly requested Court approval for the additional $1.5 million in administration costs from the settlement fund.'") (emphasis added).[6] Additionally, Huang's opposition to Hagens

---

[5] For example, when Hagens Berman first introduced the $4.8 million figure in Dkts. 3076, 3076-1, there was *zero* explanation of how that sum came about. *Cf. In re Resistors Antitrust Litig.*, 2019 WL 5298143, *2 (N.D. Cal. Sept. 6, 2019) ("Hagens Berman are in effect asking that they be paid whatever they think is fair, no questions asked.") Now, Hagens Berman simply call it "bad math," as much as they also blamed the Ninth Circuit for 6 months of audit delays.

[6] Hagens Berman might complain that Huang's advocacy was not precise enough and conflated "expenses" that their bid stipulated to absorb with settlement-related "administrative costs" that $3.3 million were previously approved for. But three factors cut against such argument: **(1)** whether his argument was precise or not, he zoomed into exactly the $4.8 million administrative costs that warranted scrutiny; **(2)** he was pressed for time, with less than 7 hours to act before

6

1  Berman's renewed $237,000 request (Dkt. 3083) is still pending, which may still provide
2  additional monies refunded to class members: In addition to the possibility of denying all
3  supplemental costs, Huang flagged a key issue that Hagens Berman should return any notice
4  costs solely caused by their renewal of initially defective fee petitions. But Huang will not seek
5  any more awards regarding his Plan of Distribution objections, except this instant motion itself.[7]

6  Huang's adversarial presentation, though, came with his personal sacrifices: he flagged
7  the costs issue in *just 7 hours*—or else Hagens Berman needs not respond until a weekend later;
8  For expediting distribution to the Class after Hagens Berman's 6-month delays, Huang agreed to
9  the compressed 3-day response despite having oral argument elsewhere this Monday; and since
10 Hagens Berman was not required to file by any certain date, Huang could not even have any safe
11 weekend plans until Hagens Berman made its filing: Because Hagens Berman did not inform
12 anyone when they will submit the papers, Huang had to be constantly on alert for Hagens
13 Berman's filing in this case (not knowing when they might ever arrive), so that he has enough
14 time to both scrutinize their filings deeply, and, prepare an articulated response in this Court.

15  In summary, Huang provided concrete class relief (over $1.26 million, with likelihood for
16 more), plus adversarial presentations that mostly turned into real protections of the Class fund.
17 Since Huang provided material benefit for the Class on the Plan of Distribution issue, *alone*,
18 Huang's objection work warrants an award equitably paid by Hagens Berman. Dkt. 3067.

---

next court day, because Hagens Berman's non-motion style makes it uncertain of whether there was any response deadline; and **(3)** because Hagens Berman submitted the $4.8 million figure without any explanations whatsoever (*see supra.* at p.6 n.5), Huang could not be sure whether Hagens Berman was repeating its past behaviors requesting awards that their fee grid prohibited.

[7] Although Huang submitted Dkt. 3083 rather expeditiously, it is obvious that Huang did not write it from blanks overnight. Over the past two weeks, Huang spent time daily drafting many parts of his argument irrespective of Hagens Berman's submission before editing further.

7

### III. A $100,000 award is reasonable for Huang's work on Plan of Distribution alone

The last question addresses what amount of award is reasonable to Huang's Plan of Distribution objection here, which added *a minimum of* $1.26 million to class members. As an equitable matter, "if the [objector's] services are greater, her incentive award likely will be greater." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, LP,* 888 F.3d 455, 468 (10th Cir. 2017) (citing *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1081 (7th Cir. 2013)); *cf. Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 960 (9th Cir. 2009) (incentive award should not be "untethered to any service or value [the objector] provide[s] to the class").

Huang asks for up to $100,000, which can surely be lowered to a number that this Court may feel more suitable of. But Huang argues that even $100,000 is reasonable in light of Hagens Berman's non-compliances, invoking Huang's rush hours: Hagens Berman never filed a motion for *any* extra costs. *See supra* 6 n.6. instead, it submitted the Plan without evidence, until Huang's advocacy started peeling the onion. Although the firm says "mistake and overstatement provided no benefit" on paper words, the firm's ***quiet non-motion to withdraw costs from Class fund*** was a step on top of their later math problems. To such a class "*fiduciary",* an "outside-chance opportunity for a megabucks prize must cost [$100,000] to play." *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985). *See* Dkt. 3083 at 5-6 (same).

Further, $100,000 was the exact award approved in *Chambers*. In *Chambers,* 214 F. Supp. 3d at 906-907, the district court approved a $4,000 service award for 13 plaintiffs; but the 14th one, received a $100,000 award in exchange for selling a website extensively related to the litigation. *Ibid.* The court considered the "substantial role" and "significant investment" of the plaintiff's website to approve that a $100,000 award. *Ibid.* On appeal, the Ninth Circuit left the $100,000 award undisturbed despite adequacy-of-representation challenges. 980 F.3d at 670-71.

8

A recent (denied) objector settlement covered by Reuters also provides a baseline benchmark on reasonable awards to objectors. *See* Alison Frankel, *Class counsel want to pay objector $25K to ditch appeal. Ted Frank is in their way*. Reuters.com (Feb. 11, 2022). https://reut.rs/35fggJh. There, Hagens Berman (and their co-counsel) offered $25,000 to an objector in exchange for dropping his appeal in the Ninth Circuit. *Ibid.* Hagens Berman *et al.* described the deal as paying an objector "$25,000 from its own funds—with zero impact on the settlement funds to be paid to class members." Reply Brief, *In re Lithium-Ion Batteries Antitrust Litig.,* No. 4:13-md-2420-YGR, Dkt. 2730 at 1 (N.D. Cal. Feb. 14, 2022). Notably, the "zero impact" (*ibid.*) means that *Lithium* Class would get *nothing more* as benefit. But "zero impact," according to Hagens Berman *et al.,* was worth $25,000 for settling with an objector.

Awarding Huang $100,000 is supported by all above. *First,* a $100,000 award would serve as a reminder that *fiduciary* Counsel who got caught by Objectors needs to pay a price for failing to protect class's money. *Second,* Huang's work here is not done by any other objector or named plaintiff—just as $100,000 went to solely one *Chambers* plaintiff who maintained the website, but not anyone else. *Third*, *Lithium-Ion* also sets up the right baseline reasonableness for awarding objectors that delivered *material* benefits to the Class: If the *Lithium-Ion* objector who provided "zero impact" to the Class (except dismissing an appeal) was worth $25,000 to Hagens Berman, then it is logically reasonable to award more than $25,000 to Huang, who *did* provide real monetary relief (besides still voicing issues that could provide even more Class benefit).

## CONCLUSION

For the foregoing reasons, this Court should award Objector Huang—who added *at least* $1.25 million to class members in his Plan of Distribution objection—for an amount of $100,000 (or another amount this Court finds reasonable), to be solely paid by Hagens Berman.

Date:   March 27, 2022                              Respectfully Submitted,

/s/ SHIYANG HUANG
　　SHIYANG HUANG
　　2800 SW ENGLER CT
　　TOPEKA, KS 66614
　　*(314) 669-1858*
　　*[Defectivesettlement@gmail.com](mailto:Defectivesettlement@gmail.com)*

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 27, 2022, I filed the foregoing notice via this Court's CM/ECF system, from which participants in the case will be served.

/s/ Shiyang Huang