

**FINANCIAL RECOVERY STRATEGIES**

Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

September 13, 2022

**BY MESSENGER**
Clerk of the Court
United States District Court
    for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

> *In re: Optical Disk Drive Products Antitrust Litigation*,
> Indirect Purchaser Actions
> No. 3:10-md-2143 RS (JCS) (N.D. Cal.)

Dear Madam or Sir:

Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") has been retained by 2,098 class members that accepted first round distribution payments in connection with the settlements obtained in the above-referenced action. FRS respectfully submits the accompanying pleading in connection with the pending application for a temporary restraining order (Dkt. No. 3108). Please enter the pleading on the docket and forward a copy to Judge Seeborg's chambers.

As the attached email demonstrates, FRS, as a result of the short time frame for response permitted by the Court's order (Dkt No. 3109), provided the accompanying pleading to IPP class counsel today at 12:00 pm PDT so that they would "have the opportunity, given the deadline for your response, to respond to it" by the 2:00 pm PDT deadline. For the same procedural reason, FRS's transmittal to IPP counsel also included the "request that, as a courtesy to the class members that retained FRS, you include our letter with your response or submit it separately." Unfortunately, IPP class counsel did neither, nor did they advise FRS that they would not accommodate our request. Also, even though IPP counsel had FRS's four-page pleading two hours prior to filing IPPs' response (Dkt. No. 3110), that response neither addressed the matters set forth by FRS nor alerted the Court to the fact that FRS had prepared a pleading that had been provided to IPP counsel.

FRS, which is located outside of California, is thus attempting by this letter to remedy IPP counsel's failure. The matters set forth in the accompanying pleading are highly relevant to the Court's consideration of the pending TRO application.



Clerk of the Court
September 13, 2022
Page 2

Thank you for your consideration of this matter.

Respectfully,

Jeffrey N. Leibell

Copy to:   All Counsel

## Jeffrey N. Leibell

| | |
|---|---|
| **From:** | Jeffrey N. Leibell |
| **Sent:** | Tuesday, September 13, 2022 3:03 PM |
| **To:** | Shana E. Scarlett |
| **Cc:** | Robin Niemiec |
| **Subject:** | RE: ODD Indirect- Second Distribution |
| **Attachments:** | ODD ndirect - FRS Letter to Judge Seeborg (2022-091-13)(2).pdf |

Shana,

I'm sorry that we could not reach agreement on the second distribution issue discussed below.

Given that, with the pending TRO application, circumstances have moved, we thought it best to provide to the Court a brief letter that sets forth FRS's reasons for using a pro rata approach rather than the flat amount approach currently planned. In this manner, when the Court considers the TRO application, it will have the benefit of all positions.

I am providing this to you directly so that you have the opportunity, given the deadline for your response, to respond to it. For the same procedural reason—that is, the lack of time, we request that, as a courtesy to the class members that retained FRS, you include our letter with your response or submit it separately.

Thanks,
Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn**

---



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

**From:** Shana E. Scarlett <shanas@hbsslaw.com>
**Sent:** Monday, September 12, 2022 1:14 PM
**To:** Jeffrey N. Leibell <jleibell@frsco.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>
**Subject:** RE: ODD Indirect- Second Distribution

****This Email Originated Outside of FRS. Use Caution When Clicking Links or Opening Attachments.****
Mr. Leibell,

Thank you for your correspondence.

To be clear, the first round distribution was based on the number of claimants and devices claimed. The second round will be a straight pro-rata distribution based on (1) the amount of uncashed or unredeemed funds remaining and (2) the number of claimants that actually cashed check or redeemed digital payments in the first round. We are under a deadline

of September 19 to begin the second round distribution and this is most straightforward way to meet that deadline. Trying to do an exact mirror of the first round based on the number of claimed devices would be significantly more complicated, would introduce weeks (if not months) of delay to perform the calculations, and would significantly increase the administrative costs to the class. For all of these reasons, we recommended the pro-rata distribution that we did.

Similar types of pro rata distributions in second rounds have been approved by other courts. It is an efficient way to ensure that the funds are returned to class members who took the necessary action to claim funds in the first round, and to disburse the funds in a fair and equitable way.

I hope this helps to explain our position.

Best regards,

Shana

Shana Scarlett | **Hagens Berman Sobol Shapiro LLP** | Direct: (510) 725-3032

**From:** Jeffrey N. Leibell <jleibell@frsco.com>
**Sent:** Monday, September 12, 2022 9:30 AM
**To:** Shana E. Scarlett <shanas@hbsslaw.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>
**Subject:** ODD Indirect- Second Distribution

Shana,

I am writing to express concern over what appears to be a plan to distribute to each claimant that accepted their first round distribution payment a second round payment that ignores the number of eligible units in each such claim. While there is no motion docketed that seeks approval of the flat amount distribution plan, paragraph 7 of the attached declaration submitted by Sipree's CEO (Dkt 3107) seems conclusive: "The Phase II second round distribution amount was determined to be a flat **$133.93** for the **249,574** class members who accepted their payment in the Phase I distribution."

Based on FRS's rough math, and assuming that the second round pro rata would be approximately 20% of the $3.81 first round pro rata (*i.e.*, the amount to be distributed in the second round, $33,426,766.89 (Dkt. 3107, ¶6) is 20% of the $167,197,144.48 that was distributed in the first round (Dkt. 3107, ¶5), that flat distribution amount plan would cost FRS's clients approximately $1,000,000.

FRS is not aware of any other class action settlement in which a flat distribution amount, rather than a pro rata amount based on eligible units, was used to conduct a second distribution of such a large proportion of the first distribution and when doing so would have such inequitable consequences, and I am not aware of any facts that would make a flat distribution appropriate here. There is nothing in the attached Order Approving [IPP]'s Revised Plan of Distribution and Schedule that suggests that a flat amount will be the mechanism for the second round distribution:

> **Report Results of Phase I**
>
> DigitalPay and Epiq to identify and report funds that have not yet been taken by payees. Final accounting report and reconciliation will be created, along with proposed Second Round Distribution amounts. A report on first round distribution will be filed with the Court with a proposed plan for Second Round Distribution.
>
> **Phase II: Second Round Distribution**
>
> Claims administrator DigitalPay securely delivers a final pro rata payment to all payees who took a payment in the Initial Payment Offering (Phase I). ...

Dkt. 3089, 1:25 - 2:7. Rather, the use of the terms "Second Round Distribution amount**s**" (emphasis added), and "final **_pro rata_** payment" (emphasis added), suggests otherwise.

2

I would like to discuss this with you at your earliest convenience so that we may avoid the necessity of an objection.

Thanks,
Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn**


**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main ¦ 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*
*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*
*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.



FINANCIAL
RECOVERY
STRATEGIES

Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

September 13, 2022

**BY CM/ECF**
Honorable Richard Seeborg
United States District Judge
United States District Court
   for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

> *In re: Optical Disk Drive Products Antitrust Litigation*,
> Indirect Purchaser Actions
> <u>No. 3:10-md-2143 RS (JCS) (N.D. Cal.)</u>

Dear Judge Seeborg:

Financial Recovery Services, LLC d/b/a Financial Recovery Strategies ("FRS") has been retained by 2,098 class members that accepted first round distribution payments in connection with the settlements obtained in the above-referenced action.[1] FRS was in the process of attempting to persuade IPPs to forgo the inequitable flat amount second distribution that they planned to conduct in favor of the "fair, reasonable and adequate" approach for which they advocated in connection with seeking approval of the plan of allocation and that has been required in substantially every distribution of a non-reversionary common fund class action settlement,[2] when we learned of the application for a temporary restraining order currently

---

[1] FRS's clients have determined that, rather than manage their own claims, it is more cost effective to retain FRS to do so, which enables them to focus on operating their own businesses. Since its founding in 2008, FRS has adhered to the highest ethical and professional standards in its sector (for FRS's "Code of Conduct & Professional Ethics," *see* www.frsco.com/about/code-of-ethics) to provide its clients, which number in excess of 21,000 and include "Fortune" household-name multinational conglomerates, with industry leading class action claims management services. FRS's professionals include five attorneys and eleven former claims administrators (for brief biographies, *see* www.frsco.com/teams) that together have spent decades prosecuting and settling class actions, administering class action settlements and managing class action claims.

[2] *E.g.*, IPPS' Mot. Final App. of Settle with PLDS, Pioneer & TEAC Defs., Dkt. 2432, at 12:17-19 & n.57 ("A plan of allocation that reimburses class members based on the type and extent of their

---



Honorable Richard Seeborg
September 13, 2022
Page 2

pending. [3] Given the current procedural posture of the issue—IPPs' response to the TRO Application is due today by 2:00 pm PDT, FRS determined that, rather than continue communicating with IPP counsel, we would provide a brief recitation of points and authorities to augment those, with which we concur, already provided in the TRO Application.[4]

### POINTS AND AUTHORITIES

The proposed flat amount plan, whereby each eligible claimant that accepted the first round distribution payment would receive the same $133.93, would treat similarly situated class members dissimilarly and contradicts not only this Court's Order Approving [IPP]'s Revised Plan of Distribution and Schedule,[5] as the TRO Application correctly points out, but universally applied precedent and Rule 23 of the Federal Rules of Civil Procedure. Under IPPs' current plan, a claim with 10 units will be treated the same as a claim with 100,000 units. Those claims with fewer eligible units would receive per eligible unit more – in many cases, substantially more – than would claimants with more eligible units. As an example, FRS's largest claim, which included 100,625 eligible units, would receive, under the legally required pro rata approach, approximately $76,475 rather than the $133.93 that IPPs propose.[6] That amounts to a wealth transfer from that class member to other class members of $76,341.07, or 99.8% of its rightful distribution. Taken together, FRS's 2,098 clients, which were paid in the first round distribution on a total of 1,837,237 eligible units, are entitled to roughly $1,396,300.12 in second round distributions but will receive under IPPs' flat amount plan just $280,985.14, which amounts to a wealth transfer from them to other claimants of $1,115,314.98, or approximately 79.9%, of their

---

injuries is generally reasonable.") (citing cases). FRS's email correspondence with IPP counsel is attached hereto.

[3] *See* Dkt. No. 3108 (the "TRO Application").

[4] Given the timing set forth in the Court's order, Dkt. No. 3109, we have requested that IPP counsel submit this letter together with their response.

[5] Dkt No. 3089.

[6] Based on FRS's rough math, and assuming that the second round pro rata would be approximately 20% of the $3.81 first round pro rata (*i.e.*, the amount to be distributed in the second round, $33,426,766.89 (Dkt. 3107, ¶6), is 20% of the $167,197,144.48 that was distributed in the first round (Dkt. 3107, ¶5), FRS estimates the second round distribution pro rata to be approximately $0.76.



Honorable Richard Seeborg
September 13, 2022
Page 3

rightful distributions. In FRS's view, there is no justification for taking from one set of claimants substantial sums to provide them to other claimants.

If the claims administrator needs more time to perform the necessary pro rata calculations, IPPs should seek an extension. Having substantial experience in claims administration from all angles, prosecuting and settling them, managing their settlement administrations, conducting those administrations and filing claims to recover from them, FRS is aware that pro rata calculations are routinely prepared and, though some require calculations that are more complicated than simply dividing the distributable cash amount by the number of participating claims, as IPPs propose, the pro rata calculations needed here would not take an unreasonable amount of time and effort. But even if they did, that delay is not a basis on which to provide to similarly situated class members grossly different pro rata amounts. As Judge Tigar held in *Elder v. Hilton Worldwide Hldgs., Inc.*,

> A court may approve a settlement only after considering whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Courts generally are wary of settlement agreements where some class members are treated differently than others." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) (citation omitted); *see also Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *8 (N.D. Cal. Apr. 6, 2012) ("[D]isparate treatment between class members increases the likelihood that the settlement agreement does not meet the Rule 23(e) standard." (citation omitted)).

Case No. 16-cv-00278-JST, 2020 WL 11762284, at *7 (N.D. Cal. Apr. 29, 2020).

The proposed flat amount approach also does not comply with Rule 23(e)(2)(D), which requires a court to ensure that "the proposal treats class members equitably relative to each other." The Rule 23 Advisory Committee points out that, among the concerns that paragraph (e)(2)(D) is designed to address is that "the apportionment of relief among class members takes appropriate account of differences among their claims."[7] Because IPPs' proposed flat amount approach will treat every claimant with pro rata payments less than $133.93 preferentially to every claimant with pro rata payments greater than that amount, it violates

---

[7] *See* Fed. R. Civ. P. 23 Adv. Comm. Notes 2018 Amend., Subd. (e)(2) &¶¶ (C) & (D); *accord* Newberg §13:56 (5th ed.) (Westlaw Dec. 2021) ("A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others.").



Honorable Richard Seeborg
September 13, 2022
Page 4

fundamental requirements for plans of allocation, violates Rule 23 and violates longstanding and broadly applied precedent that prohibits favoring some class members at the expense of others.[8]

\*   \*   \*   \*   \*

Based on the foregoing, FRS respectfully requests that the Court order IPPs to employ the same pro rata approach that the Court previously approved.

Respectfully,

Jeffrey N. Leibell

Copy to:  All Counsel

---

[8] *See, e.g., Thompson v. Transamerica Life Ins. Co.*, Case No. 2:18-cv-05422-CAS-GJSx, 2020 WL 6145105, at \*12 (C.D. Cal. Sept. 16, 2020) ("Pro rata settlement allocation, with no class member being favored over others, such as proposed here, has repeatedly been deemed fair, adequate, and reasonable.") (citing, *inter alia, In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at \*6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at \*19 (S.D.N.Y. Nov. 26, 2002) ("[P]ro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("[P]ro rata distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at \*8 (N.D. Cal. Dec. 17, 2015) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits. ... The Court finds that this plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (citations omitted); *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at \*11 (C.D. Cal. June 10, 2005) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. ... A plan of allocation ... fairly treats class members by awarding a pro rata share to every Authorized Claimant.") (citations and quotations omitted)).

## Jeffrey N. Leibell

| | |
|---|---|
| **From:** | Shana E. Scarlett <shanas@hbsslaw.com> |
| **Sent:** | Monday, September 12, 2022 1:14 PM |
| **To:** | Jeffrey N. Leibell |
| **Cc:** | Robin Niemiec |
| **Subject:** | RE: ODD Indirect- Second Distribution |

****This Email Originated Outside of FRS. Use Caution When Clicking Links or Opening Attachments.****

Mr. Leibell,

Thank you for your correspondence.

To be clear, the first round distribution was based on the number of claimants and devices claimed. The second round will be a straight pro-rata distribution based on (1) the amount of uncashed or unredeemed funds remaining and (2) the number of claimants that actually cashed check or redeemed digital payments in the first round. We are under a deadline of September 19 to begin the second round distribution and this is most straightforward way to meet that deadline. Trying to do an exact mirror of the first round based on the number of claimed devices would be significantly more complicated, would introduce weeks (if not months) of delay to perform the calculations, and would significantly increase the administrative costs to the class. For all of these reasons, we recommended the pro-rata distribution that we did.

Similar types of pro rata distributions in second rounds have been approved by other courts. It is an efficient way to ensure that the funds are returned to class members who took the necessary action to claim funds in the first round, and to disburse the funds in a fair and equitable way.

I hope this helps to explain our position.

Best regards,

Shana

Shana Scarlett | **Hagens Berman Sobol Shapiro LLP** | Direct: (510) 725-3032

**From:** Jeffrey N. Leibell <jleibell@frsco.com>
**Sent:** Monday, September 12, 2022 9:30 AM
**To:** Shana E. Scarlett <shanas@hbsslaw.com>
**Cc:** Robin Niemiec <rniemiec@frsco.com>
**Subject:** ODD Indirect- Second Distribution

Shana,

I am writing to express concern over what appears to be a plan to distribute to each claimant that accepted their first round distribution payment a second round payment that ignores the number of eligible units in each such claim. While there is no motion docketed that seeks approval of the flat amount distribution plan, paragraph 7 of the attached declaration submitted by Sipree's CEO (Dkt 3107) seems conclusive: "The Phase II second round distribution amount was determined to be a flat **$133.93** for the **249,574** class members who accepted their payment in the Phase I distribution."

Based on FRS's rough math, and assuming that the second round pro rata would be approximately 20% of the $3.81 first round pro rata (*i.e.*, the amount to be distributed in the second round, $33,426,766.89 (Dkt. 3107, ¶6) is 20% of the $167,197,144.48 that was distributed in the first round (Dkt. 3107, ¶5), that flat distribution amount plan would cost FRS's clients approximately $1,000,000.

FRS is not aware of any other class action settlement in which a flat distribution amount, rather than a pro rata amount based on eligible units, was used to conduct a second distribution of such a large proportion of the first distribution and when doing so would have such inequitable consequences, and I am not aware of any facts that would make a flat distribution appropriate here. There is nothing in the attached Order Approving [IPP]'s Revised Plan of Distribution and Schedule that suggests that a flat amount will be the mechanism for the second round distribution:

**Report Results of Phase I**

DigitalPay and Epiq to identify and report funds that have not yet been taken by payees. Final accounting report and reconciliation will be created, along with proposed Second Round Distribution amounts. A report on first round distribution will be filed with the Court with a proposed plan for Second Round Distribution.

**Phase II: Second Round Distribution**

Claims administrator DigitalPay securely delivers a final pro rata payment to all payees who took a payment in the Initial Payment Offering (Phase I). ...

Dkt. 3089, 1:25 - 2:7. Rather, the use of the terms "Second Round Distribution amounts" (emphasis added), and "final ***pro rata*** payment" (emphasis added), suggests otherwise.

I would like to discuss this with you at your earliest convenience so that we may avoid the necessity of an objection.

Thanks,
Jeff

**Jeffrey N. Leibell**
Chief Legal & Financial Officer
201.853.1246 | jleibell@frsco.com | **LinkedIn**



**Financial Recovery Strategies**
80 Wesley Street, South Hackensack, NJ 07606
201.853.0300 Main | 201.853.0301 Fax | www.FRSCO.com

*This email message is for the sole use of the intended recipient(s), and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email, and destroy all copies and attachments of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.*

*The above communication is not intended to provide any tax advice. If you wish to obtain tax advice concerning any matter described or referred to in this email message, you should contact your tax advisor.*

*Financial Recovery Strategies (FRS) is a third-party class action settlement claims recovery consulting firm; we are not class counsel or a claims administrator. Class members may always file claims on their own without retaining FRS, and may contact class counsel and the claims administrator for information about a settlement and for claims filing assistance. FRS, if retained, works on an agreed-upon contingent commission basis.*

PRIVILEGED & CONFIDENTIAL: This e-mail message (and any attachments) is for the exclusive use of the intended recipient(s) and likely contains confidential and privileged information. It is the property of the law firm Hagens Berman Sobol Shapiro LLP. Do not disseminate this email, its content, or any attachments without approval of Hagens Berman. If you are not the intended recipient, please do not read, distribute, or take any other action in reliance upon this message. If you have received this email in error, please notify the sender immediately by return e-mail and promptly delete this message and its attachments from your computer system. Be advised that no privileges are waived by the transmission of this message.